UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)


| | | |
|---|---|---|
| ROBERT HUNTER BIDEN, | ) | CASE NO: 2:23-cv-09430-SVW-PDx |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| PATRICK M. BYRNE, | ) | Wednesday, July 31, 2024 |
| | ) | |
| Defendant. | ) | (10:13 a.m. to 12:56 p.m.) |


INFORMAL DISCOVERY CONFERENCE (VIA ZOOM)
AND ORDER RE DEPOSITION OF PLAINTIFF NOTICED BY DEFENDANT

BEFORE THE HONORABLE PATRICIA DONAHUE,
UNITED STATES MAGISTRATE JUDGE


<u>APPEARANCES</u>:

| | |
|---|---|
| For Plaintiff: | ZACHARY HANSEN, ESQ. |
| | Early Sullivan Wright Gizer & McRae |
| | 6420 Wilshire Boulevard, 17th Floor |
| | Los Angeles, CA 90048 |
| | 323-301-4660 |
| | |
| For Defendant: | MICHAEL C. MURPHY, ESQ. |
| | 2625 Townsgate Road, Suite 330 |
| | Westlake, CA 91361 |
| | 805-494-8929 |
| | |
| Court Reporter: | Recorded; CourtSmart |
| | |
| Courtroom Deputy: | Isabel Verduzco |
| | |
| Transcribed by: | Exceptional Reporting Services, Inc. |
| | P.O. Box 8365 |
| | Corpus Christi, TX 78468 |
| | 361 949-2988 |


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    **Los Angeles, California; Wednesday, July 31, 2024; 10:13 a.m.**

2                        **(Call to Order)**

3              **THE CLERK:**  This court is now in session, the

4    Honorable Patricia Donahue presiding.

5              Calling Case Number CV-23-9430-SVW-PDx, *Robert Hunter*

6    *Biden versus Patrick M. Byrne.*

7              Counsel, please state your appearances beginning with

8    Plaintiff.

9              **MR. HANSEN:**  Good morning, Your Honor, Zachary Hansen

10   on behalf of Plaintiff Robert Hunter Biden.

11             **THE COURT:**  Good morning.

12             **MR. MURPHY:**  Good morning, Your Honor, Michael Murphy

13   appearing on behalf of Defendant Patrick Byrne.

14             **THE COURT:**  All right.  Good morning.

15             We're here for an informal discovery conference

16   pursuant to the email from the parties on July 26th of 2024 and

17   the issue here is the scheduling of the Plaintiff deposition.

18   Since the email, have Counsel had any further discussions on

19   this topic?

20             **MR. MURPHY:**  No, Your Honor.

21             **MR. HANSEN:**  No, Your Honor.

22             **THE COURT:**  All right.  Let me begin by saying it is

23   my strong preference to let the parties set the deposition

24   schedule.  I do not like ordering when a deposition should go

25   forward.  You know your schedule obviously far better than I.

1    And so I very much prefer when the parties are able to work

2    together to arrange a discovery schedule and specifically a

3    deposition schedule that works for them and don't require the

4    Court to wade in.

5            I see from the docket in the criminal matter pending

6    against Mr. Biden that the trial in this case is set to begin

7    on September 5 of 2024.  Is that correct?

8            **MR. HANSEN:**  That's correct, Your Honor.

9            **THE COURT:**  All right.  And how long is that trial

10    estimated to last?

11            **MR. HANSEN:**  The parties and the Court have indicated

12    that that criminal trial is estimated to last anywhere from

13    three to four weeks.

14            **THE COURT:**  All right.  So looking at the calendar,

15    you're going to begin on September 5 and one, two, three, four

16    weeks from that date is October 3rd, essentially a -- that's a

17    Thursday.  All right.  So really -- and I will note that the

18    trial date was set -- the order in the criminal case setting

19    the trial date is May 22nd.

20            So you all have known since May 22nd that the trial

21    in this matter was going forward on September 5 and was going

22    to last three to four weeks.  Why was it not possible to work

23    out taking the deposition in this case, the civil case, either

24    in June or July given that both parties have known since May

25    22nd when this criminal case was going forward?

4

```
1              And I can -- the reason I ask is because I am very
2    much not inclined to order a deposition to go forward of an
3    individual while he is in a criminal case.  And looking at the
4    schedule here, that seems like that is an entirely avoidable
5    outcome.  So I am inclined --
6              MR. MURPHY:  Did you want to hear --
7              THE COURT:  Yes.  I'm just telling you my views.
8    It's -- today is the -- July 31st.  There is -- I believe in
9    the criminal matter, the pretrial conference is August 21st.
10   The case goes forward on September 5.  It seems that reasonable
11   Counsel should be well be able to schedule a deposition in a
12   civil case in and around a criminal -- the criminal trial
13   without -- as I say, without my wading into it.  But here we
14   are.
15             So let me hear, I guess, why the deposition could not
16   have gone forward in June or July and why it now must go
17   forward at the same time as the criminal trial.
18             MR. MURPHY:  Okay.  First of all, Your Honor, we're
19   not a party in the criminal case.  So we're not given notice of
20   when it's set or not set.  If we're going to know anything
21   about it at all, it's going to be in the media.  We were not
22   contacted by Counsel and told, oh, there -- here is our trial-
23   setting conference for the criminal case and here it is in May
24   of 2024.  I only --
25             THE COURT:  It's on the public docket.  The docket is
```

5

1   public.  I can access it in about 30 -- under 30 seconds.

2           **MR. MURPHY:**  Well, but we were not provided any

3   information on it.  It never became an issue until we wanted to

4   take the Plaintiff's depo.  There was -- I did not substitute

5   into this case until May and we started written discovery and

6   we have not received back the written discovery from them.

7   They have sent written discovery to us.  We responded to some

8   of it.  We've agreed we owe them more responses and we're

9   working on a protective order.

10          And as a part of our discovery, when I went out, I

11  believe in June, we set a date in August so that it was far

12  enough out to get the written discovery responses and any

13  documents we asked for so we could take the deposition.  There

14  isn't any reason why we can't take the deposition in August.

15  There isn't anything that is telling where he's specifically

16  tied up every day of the month.  He's been able to live his

17  life normally out here.  In July, they have photographs of him

18  online going out with his wife to go shopping and visiting with

19  people and traveling around with the Secret Service.

20          The date that we selected is not unreasonable.  It

21  doesn't interfere with the criminal case.  The criminal case is

22  weeks later.  Normally under the Federal Rules, we're only

23  allowed to do a seven-hour depo.  The concern that we have --

24  there's two major concerns that we have delaying this until

25  after the criminal case.

1          The first one is, when the gun case came up, I guess

2    there was some deferral maybe by my previous Counsel where they

3    agreed to defer it but then there was a guilty verdict in that

4    and the sentencing hearing is in October.  And if -- and I'm

5    not casting any aspersions on the Plaintiff.  I don't know

6    anything about the criminal cases but I'm just looking at them

7    in terms of scheduling.

8          There is a hearing on October 7th for his sentencing.

9    Then if he is sentenced and he is ordered to do time, now we're

10   put in a position where we have to go depose him probably at a

11   prison facility and go through all those additional costs and

12   expenses.

13         The other concern that we have is right now he is

14   available.  We can get whatever discovery he needs to give us

15   and then he can go on and handle his criminal case.  And if we

16   need to do any follow-up discovery with third parties between

17   now and the middle of October, we can do that discovery.  We

18   aren't going to know what additional discovery to do until such

19   time as he's been deposed and we've heard his testimony.

20         So I don't think that our handling of the case has

21   been dilatory at all.  I've come in and I've aggressively done

22   our written discovery, our requests to produce, notice of depo

23   but set it out far enough to give them a chance to give us our

24   discovery.  Then we should not be jammed on the back side of

25   the case where all of a sudden now we depose him in the middle

1    of October and find out, oh, there's other witnesses we need to

2    depose or there are documents we need to subpoena.

3           But basically we would only have about three weeks to

4    do that work because we have a pretrial on December 2nd and the

5    Court requires filings and everything to be submitted to the

6    Court in advance of that hearing, I think, about a week to 15

7    days in advance.

8           The trial judge was given notice of these criminal

9    cases during the case management conference.  My understanding

10   is Counsel all agreed to work with the Plaintiff and if we

11   needed a trial continuance or a pretrial continuance, we would

12   have agreed to it, too.  I understand the situation.  But the

13   trial judge said, I'm not moving my dates.  Once I set them,

14   that's it.  They're on my calendar and I expect you to meet

15   them and be ready to go to trial on that date.  I don't care

16   what's on anybody else's calendar or what their problems are.

17          And then we also have to factor in the other thing

18   and that is this isn't the only case that we're handling.  We

19   handle a lot of other cases.  Many of them are complex

20   litigation.  We have trials coming up in October and November

21   also.  We don't know if those cases are going to settle or

22   what's going to happen either.  Obviously, you take on

23   business.  You do the best you can to handle what you have.

24          But I don't think our request to take a deposition

25   this month is unreasonable and --

1          **THE COURT:**  When did you notice the -- when did you

2    send notice of the deposition for the August 14 date?

3          **MR. MURPHY:**  I'll tell you.

4          **MR. HANSEN:**  Pardon me, Your Honor.  It was July 9,

5    same day that they served their initial discovery for the first

6    time.

7          **MR. MURPHY:**  Yeah, it was July 9th.  We worked on the

8    discovery and we sent it out on July 9th.

9          **THE COURT:**  All right.  Did you --

10          **MR. MURPHY:**  It was on the 9th of August.

11          **THE COURT:**  -- did you reach out to the Plaintiff to

12    discuss the proposed deposition date to sort out if it would

13    work for them?  Generally, it works best when the parties reach

14    out informally and discuss convenient dates.

15          **MR. MURPHY:**  I did not but, Your Honor, and what I do

16    is I always work with Counsel.  We'll pick a date.  We'll put

17    it on our calendar.  If it works, great.  If it doesn't, we'll

18    work with them.  And looking at what we have, we just sent it

19    all out but I also had indicated to Counsel that if the 14th

20    was bad and he wanted another date, we would pick another date.

21    So we're not trying to be hardball on the date.  We're just

22    trying to get the deposition scheduled.

23          And they just said they're not available at all at

24    any time during this month of August or any time even now.  And

25    they're blaming it all on the criminal case.  So they're all

1  tied up and busy on the criminal case.

2          But the Plaintiff has, I think, several lawyers on

3  the criminal case that are representing him and he has three

4  law firms in this case representing him.  So it's not like the

5  Counsel in this case are being pulled over into the criminal

6  case and have to handle it.  The civil attorneys are different

7  from the criminal case attorneys.

8          **THE COURT:**  So, Mr. Hansen, obviously you all knew as

9  of May 22nd that this case -- the criminal case was going to

10 trial on September 5.  I'm surprised that you didn't

11 communicate that to the Defense in this case and try and work

12 out a schedule of discovery in this case that would fit most

13 well with the -- with your deadlines in the criminal case.

14         **MR. HANSEN:**  Well, Your Honor, we have been in

15 constant contact with Defendant's various attorneys.  As

16 Mr. Murphy pointed out, he took over recently in May.  There's

17 been several other attorneys that have represented Defendant

18 before that.  We -- upon learning of the scheduling of our

19 case, we were in the middle of the criminal case.  We were in

20 the middle of pursuing discovery in this case.

21         We first propounded our discovery requests in March.

22 After multiple extensions, we didn't even receive responses

23 until late May which were severely deficient and no documents

24 were produced whatsoever despite promises that there would be a

25 production.  To date, there's only been one document produced.

1    So we've been dealing with discovery issues on that front, Your

2    Honor.

3            My client also was going through the Delaware

4    criminal case in June that took up a decent portion of his time

5    but to your point, it's Defendant's burden to reach out and

6    coordinate the scheduling of Plaintiff's deposition in this

7    case.  They didn't do that at all until July 9th when Plaintiff

8    noticed -- unilaterally noticed my client's deposition for a

9    date in August.

10            Counsel and I had set up a meet-and-confer call

11    regarding Defendant's deficient discovery responses and on that

12    call at the very end of it, I was the one who brought up my

13    client's deposition and informed Counsel that because my client

14    was going into a criminal trial starting in the beginning of

15    September, his trial team is busy preparing him for that

16    criminal trial.  That criminal trial starts in five weeks from

17    tomorrow and only three weeks after the proposed deposition

18    date.

19            I told Counsel at that time that we would not be able

20    to produce my client before that criminal trial begins because

21    to take his focus off of that trial for a week because it would

22    take that long to get him prepared and coordinate schedules and

23    get everything ready.  And despite Counsel's assertion that the

24    criminal team and the civil team are different, it's not true.

25    Mr. Abbe Lowell is listed as a Counsel of record on both cases.

1    He will be actively -- he is actively involved in preparing my

2    client for his criminal case.  He will also be involved in this

3    case.

4            And we're still trying to determine based on

5    schedules but he will most likely be attending the deposition

6    of my client in this matter.  And so this wasn't even brought

7    up until July 9th.  It was unilaterally noticed.  When I

8    brought it up to Counsel on our July 19th meet-and-confer call,

9    I specifically told him, we will produce our client as soon as

10   that criminal trial is finished.  We will produce him for

11   deposition.

12           This case was filed in November 2023.  They did not

13   even commence discovery until earlier this month, just a few

14   weeks ago on July 9th whereas Plaintiff has been pursuing

15   discovery since March.   And when I proposed to Counsel that we

16   would be producing my client after his criminal trial and told

17   him that my client and his trial team were busy preparing for

18   that trial, Defendant's response was essentially immediately,

19   well, we're going to file a motion to compel.  He didn't

20   propose any other dates and didn't accommodate my request to

21   move the date at all.

22           I concur with Your Honor's position that this date

23   should be something that the parties should be able to

24   schedule.  That's what I've been trying to do.  I have told

25   Counsel I will make my client available after that trial.

1          As for client's assertion regarding the potential for

2   my client to be incarcerated following his criminal trial, I

3   have already explained it to Counsel that I've spoken with my

4   client's criminal team and they explained to me that the

5   sentencing for the Delaware case will not happen until sometime

6   in October.  No matter what happens there, he would still

7   remain out of jail pending his appeal if a jail sentence is

8   even imposed.

9          I'm not sure where Counsel is getting this October

10   7th date from that he included in his statement because no date

11   has been set for sentencing for that case yet.  I confirmed

12   that this morning with my client's criminal trial team.

13          Moreover, any sentence in the California case would

14   not occur until sometime in December or even later which is the

15   month of this trial and, therefore, would not impact my

16   client's ability to appear for his deposition at all.

17          Counsel didn't counter this.  Instead, he then

18   pivoted to his argument now which is that he will not have

19   enough time to conduct discovery in this case if he has to wait

20   until October to take my client's deposition.  This argument is

21   curious for a couple of reasons.  First, as I pointed out, the

22   Defense only just started discovery efforts a few weeks ago.

23   So that argument is nullified by their own inaction.

24          Number two, the discovery delays in this case are --

25   have been purely on Defendant's side.  We served -- and there's

13

1    evidence that we served initial discovery in March.  There's

2    been multiple extensions.  We got severely deficient responses

3    and we've only received one document despite multiple promises

4    that there would be subsequent documents produced in this case

5    which is a matter for another day obviously but we may need to

6    come back for an IDC on that if the delay tactics continue in

7    that front.

8         But the fact remains, Your Honor, that my client will

9    be severely prejudiced if he's required to appear for his

10   deposition in this case before the criminal trial concludes.

11   To require him to switch that focus on the eve of trial will

12   severely prejudice him, not only in this case but potentially

13   in his Federal criminal case as well.

14        In light of some of the discovery requests that

15   Defendant has propounded that address issues regarding the tax

16   matters involved in my client's upcoming criminal trial and

17   public comments about the same by Defendant despite being

18   entirely irrelevant to this case, those types of inquiries at a

19   deposition while he's leading up to a criminal trial in just a

20   few weeks could be potentially damaging to his criminal trial

21   and may elicit information that endangers my client's Fifth

22   Amendment rights leading up to that criminal trial.

23        Whereas Defendant suffers no prejudice as we've

24   agreed to produce our client for deposition by the second week

25   of October.  That's the week we're aiming for which would be

14

1    after that trial which would give us enough time to prep our

2    client and have him ready on a mutual -- mutually available

3    date that works for Counsel and myself and our team.

4            And we'll do all that we can to enable discovery to

5    occur before trial.  We feel that trial as set in December,

6    we'll still be able to proceed.  We will be able to take care

7    of all discovery that we need to take care of.  And we're

8    willing -- we're trying to move this case forward for trial in

9    December.

10           Your Honor, I'd also like to just correct a couple of

11   inaccuracies, the independent statements to the Court.  Again,

12   first, I never said that we were going to wait until after the

13   sentencing in the Delaware case to produce my client.  I just

14   said that we were going to wait until after the criminal case

15   in California.  As I stated previously, I'm not quite sure

16   where Counsel got the October 7th date from but I confirmed

17   with trial Counsel this morning that no date has been set for

18   sentencing yet.

19           Second, Counsel claimed that Plaintiff indicated at

20   the initial disclosures that he's -- that Plaintiff is his only

21   witness.  That's not true.  Again, I'm not really quite sure

22   where that comes from.  In considering in Plaintiff's initial

23   disclosure, we identified multiple witnesses and then last

24   week, we served a supplemental disclosure of additional

25   witnesses.  This was before Counsel's statements to the Court

1    in the IDC email.

2           Beyond Defendant, Plaintiff has identified five

3    third-party witnesses and we're actively pursuing serving

4    subpoenas and getting those depositions noticed in the

5    meantime.

6           Finally, Defendant's statements that Plaintiff has

7    been enjoying his life in Los Angeles with his wife and going

8    shopping and having a Secret Service detail and that he

9    traveled to D.C. to see his father are completely irrelevant.

10   Regardless of that, he's been diligently preparing for his

11   criminal case with his trial team and will continue to do so

12   until that trial commences.

13          That's taking up all of his time right now but he

14   also has a family, Your Honor, and is allowed to spend time

15   with them while he prepares for the criminal trial.  The fact

16   that he has a Secret Service detail is of no consequence

17   whatsoever.  That's just simply due to the fact that his father

18   holds the highest office in the United States.

19          Also, regardless of how many lawyers Plaintiff has on

20   his criminal team, Plaintiff himself is the most important

21   aspect of that trial preparation and to require him to appear

22   for his deposition, as I stated, Your Honor, will take at least

23   a week away from that preparation.  We are five weeks away from

24   that trial starting right now and my client will be severely

25   prejudiced.

1          All that we are asking and all that we -- our

2    position is that we will -- we'll agree to produce our client

3    on a mutually available date in this case after the conclusion

4    of the criminal trial.  Nothing prevents other discovery from

5    occurring in the meantime to prepare for trial.  We can take

6    third-party witness depositions.  Counsel is still waiting on

7    our discovery responses which are due on, as he indicated,

8    August 9th.

9          And as soon as that criminal trial wraps up, we will

10   produce him for his deposition and we're ready to propose a

11   date now and set a date now that would work for Counsel.  I

12   think this Court doesn't need to issue an order to schedule

13   this.  I think this is something that the parties should be

14   able to figure out but Defendant's unwillingness to accommodate

15   this very reasonable request to put out his deposition beyond

16   the conclusion of the criminal trial necessitates this

17   conference today, Your Honor.

18          **THE COURT:**  All right.

19          **MR. MURPHY:**  May I respond?

20          **THE COURT:**  Yes.  Let -- just let me confirm with

21   you.  I'm looking at the docket in this case.  What is the date

22   of the pretrial conference in this case?

23          **MR. MURPHY:**  December 2nd.

24          **THE COURT:**  All right.  And --

25          **MR. MURPHY:**  The trial is like a week later.  It's

1    December 10th.

2         **THE COURT:**  All right.  So the dates set by the

3    District judge in this case right now are December 2 pretrial

4    conference and December 10 is the trial.  All right.  And I'm

5    sure you're already -- I think it's -- Mr. Murphy already

6    alluded to those dates are highly unlikely to be continued in

7    this matter.

8         All right.  So, Mr. Murphy, what is the basis for

9    your belief that the sentencing in the Delaware case will be

10   October 7th?

11        **MR. MURPHY:**  It's my understanding from reading an

12   Internet article about the sentencing and they said that the

13   Court had -- there was a verdict rendered.  There are some

14   post-trial motions in that criminal case and there was an

15   Internet article and it said that the judge indicated that the

16   Plaintiff will be sentenced by no later than October 7.  And

17   that's kind of the date that I believe that Counsel has also

18   indicated that would happen.

19        And I don't know why -- I don't have any involvement

20   in that proceeding other than seeing stuff online but that's

21   what it said.  And I think they were waiting to do the

22   sentencing until after the criminal trial that's before this

23   Court on September 5.  And so I don't know if they're trying to

24   do the sentencing for both at the same time or they want to

25   take into consideration if Mr. Biden does get convicted in the

1    September case that they will take that into consideration as

2    something they have to weigh at sentencing.  I don't know.  I

3    don't practice criminal law but that is what the Internet

4    article said.

5            As far as the 26 --

6            **THE COURT:**  Hold on one moment.

7            Mr. Hansen, do you have the case number on the

8    Delaware criminal case?  I'm going to try and find it on the

9    docket.

10           **MR. HANSEN:**  I can find it.  If you give me just a

11   moment, Your Honor, I believe I can locate it.  I also don't

12   practice criminal law but let me see here.

13           **THE COURT:**  All right.  My very speedy law clerk

14   found it.  23-CR-61 in the District of Delaware.  Let's see.

15        **(Pause)**

16           I don't see any order on the docket identifying the

17   sentencing date.

18           **MR. HANSEN:**  Yes, and that's my understanding as

19   well, Your Honor, in talking with my client's criminal defense

20   team in that case.

21           **MR. MURPHY:**  All I can do is tell you what I read on

22   the Internet and it allegedly quoted the judge as saying it

23   will happen by no later than October 7.  They had not set a

24   date but the judge had indicated in that case in court that the

25   sentencing would occur by no later than October 7 which would

19

1  obviously be after the criminal trial in Los Angeles is

2  completed.

3          **THE COURT:**  All right.  I assume there is an entry

4  order on June 11 which states that Defendant is found guilty on

5  all counts.  Sentencing in this matter will be scheduled at a

6  later time.  That's at docket entry -- text entry on the docket

7  June 11, 2024 and I don't, just from a review of the docket,

8  see any other order referencing the sentencing date.

9          **MR. HANSEN:**  That's -- Your Honor, that's my

10 understanding as well and as I stated, in talking with my

11 client's criminal defense team, they stated that even if my

12 client is sentenced to jail time -- and, again, I don't

13 practice criminal law.  I don't know what the likelihood of

14 that is.  So I won't even opine on that.

15         But if he was, considering the nature of that case,

16 his criminal defense team has assured me that even if he's

17 sentenced to be incarcerated, he would remain out on an appeal.

18 There would be an appeal immediately after that and it would

19 take time, significantly longer than this case would take to be

20 resolved in order for that appeal to be resolved as well.  And

21 my understanding is that --

22         **THE COURT:**  Well, let me just tell you.  Regardless

23 whether the Court -- if there is a custodial sentence imposed,

24 regardless of whether the Court grants any motion to remain out

25 of custody pending the appeal, it seems unlikely that the Court

1   would order forthwith incarceration in any event.  It would

2   seem the Court would set a surrender date.

3           So I don't think that we need to be concerned here

4   that he would be somehow in custody and that the deposition in

5   this case would have to occur in custody.  I think that just

6   given the timing here, I think that that seems quite unlikely

7   regardless of whether there's a -- he's allowed to -- would be

8   allowed to remain out on appeal.  It's seems the Court would

9   very likely set a surrender date into the future after the

10  sentencing date which the docket does not contain.  So -- all

11  right.

12          As I said, I think that the dates in this case, the

13  pretrial and the trial are very unlikely to move and the

14  parties will have to have accomplished their discovery in

15  advance of that.

16          So, Mr. Murphy, what are the depositions that you

17  intend to notice or to take in this case?  Obviously, the

18  Plaintiff.  Who else?

19          **MR. MURPHY:**  Okay.  It's very difficult for us to

20  answer that question at this time because when we got their

21  initial Rule 26(f) disclosure statement that was filed with the

22  court, the only witnesses that were listed were Plaintiff,

23  Defendant and Michael Flynn for the Plaintiff.

24          Then for the Defendant witnesses, in the disclosure

25  statement, it was Plaintiff and Defendant.  I wasn't attorney

 1    of record in the case when that was filed and I did not attend

 2    the Rule 26 hearing that the Court had subsequently.

 3           When we got involved in the case, Counsel's correct.

 4    All during June, the Plaintiff was tied in a criminal case in

 5    Delaware dealing with a gun case.  We came in.  We finally got

 6    the Court to approve an order appointing us to come in.  It

 7    looks like some of the other attorneys were not removed and

 8    then we started our discovery.  And we sent that out on July

 9    9th.

10           We even did a subsequent Rule 26(f) disclosure to

11    Counsel and provided them the names of the witnesses we had

12    identified in answers to their interrogatories.  And I'm not

13    sure if we need to depose any of our witnesses.  But we did not

14    get a list of any of their other witnesses until last Friday, I

15    believe it was.  They submitted a supplemental Rule 26(f).

16           We have four more names.  We don't know who they are.

17    We don't have their addresses and phone numbers and we don't

18    know what information they have that's pertinent to the case

19    yet.  We're going to have to work on that but we only just

20    recently got that just prior to this hearing.  So I don't know

21    which of those witnesses we need to depose or not depose.  I

22    have forwarded them to my client and we need to have a meet-

23    and-confer with the client to find out who these people are.

24           I don't even know if he knows who those people are.

25    But the concern that we have is not --

1           **THE COURT:**  Wait.  This was a supplemental Rule 26

2    disclosure?

3           **MR. MURPHY:**  Yeah.  We received that -- I believe it

4    was by email last Friday or Thursday by email.

5           **THE COURT:**  Is that on the docket?  No.

6           **MR. MURPHY:**  It hasn't been filed yet.  We also did

7    one but we did it by way of email.  When we did ours, it was

8    about two or three weeks ago and I'm guesstimating.

9           **THE COURT:**  Okay.  So right now as of today, the

10   witnesses, as far as the Defense is concerned, would be the

11   Plaintiff, who you would want to depose -- potentially four

12   individuals who are identified by the Defense.

13          **MR. MURPHY:**  By the Plaintiff.

14          **THE COURT:**  I'm sorry.  Excuse me.  Who were

15   identified by the Plaintiff last week?

16          **MR. MURPHY:**  Yeah.

17          **THE COURT:**  All right.  And then I think you said one

18   other individual, Mr. Flynn, who was identified in the

19   Plaintiff's initial disclosures?

20          **MR. MURPHY:**  Right.

21          **MR. HANSEN:**  Your Honor, may I make a clarification,

22   please?

23          **MR. MURPHY:**  I would like to --

24          **THE COURT:**  One minute.

25          **MR. MURPHY:**  -- have a chance to also talk and I

```
1    haven't had a chance to respond to anything Counsel has said.

2         THE COURT:  You'll -- both sides will have full

3    opportunity to --

4         MR. MURPHY:  Thank you.

5         THE COURT:  -- respond.  Of course.  I'm just trying

6    to sort out what meets -- what is the scope of the discovery

7    here and how this disputed deposition fits into that.  And so

8    on the Defense side, you're looking at potentially five --

9    taking five depositions in addition to the Plaintiff's

10   deposition; is that correct?

11        MR. MURPHY:  And I would have to say, assuming we are

12   going to take those, what I believe the whole number would be

13   might be five to six because the ones that they sent us were

14   four additional ones, I believe, and then if we added on

15   Plaintiff, that would make it five.  And then, of course,

16   there's the issue of expert witnesses, too.

17             That's the other concern we have.  We also need

18   Plaintiff's deposition on -- to question him.  He's the one

19   that's claiming in this case that his reputation has been

20   damaged throughout the country and that he has lost business

21   opportunities and all these other things.  And he's the one

22   that's going to be the most competent to be able to testify on

23   those issues and we need to have those issues clarified so that

24   we can designate an expert that we intend to bring in.

25             If we don't get that information, they're
```

24

1  acknowledging that in the criminal cases in Los Angeles that's

2  coming up on September 5, that's not going to be done until

3  October 5.  It's still around the estimated time that was

4  bandied about on the Internet that the sentencing hearing would

5  be heard by no later than October 7.

6       So then the concern becomes being able to get his

7  information, retaining an expert, having that expert do

8  extensive work that needs to be done for presentation,

9  designating that expert, having expert witness designations and

10 depositions being done not just the percipient witnesses.  And

11 all that expert witness work is being held up and it -- we had

12 planned to do quite an extensive job with our expert.

13      But we need Plaintiff's deposition because he's the

14 only one that can really testify about has his reputation been

15 damaged, what business opportunities he's lost, what his

16 damages are?  Those are very important issues in this case and

17 we can't delve into them until two months from now based on

18 what they're proposing.

19      That's why the deposition is important and that's why

20 we are being prejudiced by only then being given a few weeks

21 after this October 5th date to be able to depose him and do all

22 this other work.  And there's no reason for it to be held up.

23 I mean, he's the one that put these issues in the case and they

24 haven't indicated what he's required to do that he needs to be

25 with his attorneys every single day.

1           He's not trying the case.  He's not examining or

2   cross examining witnesses.  He's not bringing pretrial motions.

3   There's a question about whether he'll even testify.  So -- and

4   during trial, obviously, they'll be able to do additional and

5   supplemental work with his lawyers.  But there's no reason that

6   he can't be deposed in this case.  We're not asking for a

7   deposition for day to day for several weeks.  In most Federal

8   cases, you only have seven hours.

9           So why can't he find a hole in his calendar between

10  now and the end of August for seven hours?  That's all we're

11  talking about at this point and that's all we're allowed to do

12  under the Federal Rules.  What is he doing every single day of

13  the week that he's working on his criminal case?  And then as

14  far as their Counsel is concerned, we have three of the largest

15  law firms in Los Angeles representing him in this case.  And we

16  have three of the largest law firms probably somewhere else

17  representing him in the criminal case.

18          So he's got plenty of lawyers.  He's got plenty of

19  help.  There's plenty of things they could do without him.

20  Clients generally don't get involved in preparing jury

21  instructions and other things that need to be done.  Why can't

22  he provide us with seven hours?  And that way then, we can work

23  with our expert and do things we need to do.

24          And, also, we may need to find other witnesses that

25  are disclosed by him where he says, well, this damaged my

26

1    reputation.  Well, who did you talk to?  Well, those people

2    that he talked to may not be on the Rule 26(f).  And he may

3    say, oh, I spoke to these ten people.  Maybe he doesn't

4    consider them witnesses.  Maybe we do.

5         Or there may be documents that he has that haven't

6    been produced where we may need to do follow-up on documents

7    and then decide, oh, we may want to have a damages expert.  But

8    for us to make these kinds of decisions, we need to be able to

9    do this discovery now.  Counsel admitted that in the entire

10   month of June, he was tied up in a criminal case.  We couldn't

11   have deposed him.  I substituted in in May.  I couldn't have

12   done anything with him.  He wasn't here.  He wasn't here the

13   entire month of June because of that case.

14        And it's unfortunate.  Like I said, I'm not casting

15   aspersions on him.  And then we started our discovery in July

16   and set a date but we've always been open to picking any date

17   and time that's convenient.  We never ever said, that's our

18   date and you have to appear on that date.  Our request is to

19   set a date during August on a time when he's available and his

20   Counsel is available.  And I'm willing to work with him on any

21   of those dates or times to make it convenient.

22        But we're talking about seven hours in an entire

23   month and that's not something that's unreasonable.  And he's

24   the one that brought the case.  We didn't and we have to defend

25   it.  And we have to be able to have enough time to do our work.

27

1    As the Court knows, trial preparation in a Federal case is way

2    much, much harder and more involved and requires a lot of work

3    between Counsel that doesn't happen in a State court case.

4         And we have to meet and confer. We have to prepare

5    joint documentation for the Court. We have to prepare jury

6    instructions. We have to give the Court instructions on what

7    we want the judge to ask the jury because judges select the

8    jury, not Counsel. We have all of that work to do -- briefing

9    on the law, briefing on the issues we agree on and don't agree

10   on.

11        And then we have a hearing with the judge that could

12   last two or three hours while we go through all this stuff. We

13   have motions in limine. How are we going to know what motions

14   in limine we want to bring until we depose the Plaintiff? And

15   then once again, expert witness work could be really involved

16   in a case like this where you're talking about the -- a claim

17   for damages to the reputation of somebody. Is it nationwide?

18   Okay. Then we need to do a lot of work to verify that that's

19   truly the case and if it's a function of our client's conduct

20   as opposed to something else.

21        And delaying and delaying and delaying and giving us

22   a few weeks to do all of this work is unreasonable. It's

23   unfair. We've also offered as an alternative -- he can dismiss

24   his case without prejudice and refile it. Then he can take

25   care of all the criminal stuff and get it behind him. We've

```
1   offered that as an alternative, too, to try to be fair and
2   reasonable.
3           But we can't be jammed and not allow our expert to do
4   any work until October and be jammed and not be able to obtain
5   evidence we need.  And the issues that we have in discovery
6   with Counsel, we're going to easily resolve those.  And I have
7   been very polite in my dealings with him and professional, he
8   has with me.  We've been able to talk on the phone.  We've been
9   able to exchange emails.  We're not attacking each other.  We
10  just have a professional disagreement.  That's all.
11          THE COURT:  I believe --
12          MR. HANSEN:  May I, Your Honor?
13          THE COURT:  Hold on.  Yes.  As I said, both sides
14  will have plenty of opportunity.
15          With regard to the deadline set by the district
16  judge, the only two deadlines are the two in December that we
17  discussed earlier.  There is no discovery cutoff or other
18  deadline set by the district judge in this case; is that
19  correct?
20          MR. MURPHY:  That is correct.  But even though the
21  dates haven't been set, we still have to complete the work in
22  enough time --
23          THE COURT:  Yeah, no, I understand.  I was looking --
24  the parties filed -- the joint 26(f) report that was filed on
25  March 11 in this case sets forth proposed discovery cutoff,
```

29

1   expert discovery cutoff, a lot of other deadlines,

2   contemplating the trial date that the district judge in fact

3   set.  And so I'm just looking at that and --

4       **MR. MURPHY:**  It's surprising because this is my first

5   federal case where a judge has not set those dates.  And every

6   other federal case I've been involved in -- and I'm not

7   (inaudible) of our judge.  I'm just saying that no dates were

8   set.

9       I've dug and dug and dug.  I called all the previous

10  counsel.  I called the counsel at -- this counsel's office.  I

11  spent time with another attorney from his office who's also a

12  very fine gentleman, very professional.  And he said there

13  weren't any dates set.

14      And I went -- even went in and checked the docket,

15  all that the court set was pretrial and trial.

16      **THE COURT:**  That is -- yes, that is what the court

17  has -- I was looking at the dates that the parties had proposed

18  because although the district judge didn't set these, the

19  deadlines proposed in this joint Rule 26(f) report, the

20  district judge did essentially adopt the trial date that the

21  parties proposed, which suggests the district judge anticipates

22  the parties accomplishing the discovery, you know, on or

23  approximately on these proposed dates, which the -- which has

24  the non -- well, the defense proposed the non-expert discovery

25  cutoff being September 12.

1          The Plaintiff proposed the non-expert discovery

2    cutoff being July 12.  This was in the -- this is at the -- at

3    docket number 31 in this case.

4          But it looks like, you know, both parties proposed

5    dates to accomplish the actual pretrial and trial date that the

6    district judge set in this case.  All right.

7          Mr. Murphy, what is it that you need to depose the

8    Plaintiff about?  Because the defense raises potential Fifth

9    Amendment concerns with -- if you take the deposition before

10   trial about asking him obviously under oath about matters that

11   potentially would be relevant or could be the subject of

12   testimony in the criminal case.

13         And I don't see any briefing about that subject on

14   this docket.  I don't know if there's been briefing about that

15   subject in the criminal matter pending in this district.

16         But I'm not -- I'm looking at the complaint that was

17   filed in this case and I'm not entirely sure that your

18   deposition would overlap with the topics in the criminal case.

19         But I'd like to hear from you about what it is that

20   you -- subject matters that you propose asking the Plaintiff.

21         **MR. MURPHY:**  You know, the criminal cases exist.  We

22   don't need to question him about what he's discussing with his

23   lawyer, what he anticipates are going to happen.  We're not

24   going to be doing any of that.

25         What we are concerned about is -- and it's undisputed

1  that this article he's suing over was published.  So what we're

2  interested in is how it damaged -- how he believes that article

3  damaged his reputation.

4          THE COURT:  Okay.

5          MR. MURPHY:  And where is the geographical area he

6  believes his reputation was damaged?  And then what we'd like

7  to do is get into how it damaged his reputation, his viewpoint.

8          We can bring up other things that has happened in his

9  life that also affect his reputation that are out there and

10  have him do a comparative analysis for us of that.

11          Yeah, the criminal cases are there.  But once again,

12  we're not going to get into anything that's going on with him

13  and his lawyers or the court.

14          We can get him to confirm those are there.  We could

15  ask him if he believes those affected his reputation.

16          We would want to know -- he say she's lost business

17  opportunities.  We'd want to question him about who those

18  business opportunities are with, what deals he's made, what he

19  anticipated making on those deals, what documents he has to

20  support those claims.

21          We'd want to know if he has an emotional --

22          THE COURT:  Hold on a moment.  Did we lose defense

23  counsel?

24          MR. MURPHY:  I hope we didn't.

25          THE COURT:  Plaintiff's counsel, sorry, I apologize.

32

1           **MR. MURPHY:**  No, it's okay.

2           **THE COURT:**  I don't see him on the screen, Isabel.

3           **THE CLERK:**  Looks like we lost him.  I --

4           **MR. MURPHY:**  You want me to email him?  I could send

5      him a quick email.

6           **THE COURT:**  Sure.

7           **MR. MURPHY:**  Let's do that.

8           **THE COURT:**  I want to make sure he's heard

9      everything.

10          **MR. MURPHY:**  Sure, he has to.  Let me get --

11          **THE CLERK:**  Oh, he's calling back.  Let me --

12          **THE COURT:**  Okay.

13      **(Pause)**

14          **THE CLERK:**  Almost here.

15          **MR. MURPHY:**  Okay.  I also asked him to reconnect.

16          **THE COURT:**  All right.  Thank you.

17          **MR. MURPHY:**  You're welcome.  Maybe I could also try

18      to reach him on his mobile.  I'll -- I'm going to stay on the

19      camera.  I'll mute myself so you can't hear --

20          **THE COURT:**  Oh, --

21          **MR. MURPHY:**  -- (inaudible) talking to him.  I'll

22      give him a call also --

23          **THE CLERK:**  He's --

24          **MR. MURPHY:**  -- on his --

25          **THE CLERK:**  He's --

33

1           **MR. MURPHY:**  I have his direct line.

2           **THE CLERK:**  He's on.  But maybe he's having problems

3    with his video.  Maybe he can say what's going on.

4           Mr. Hansen, can you hear us?

5           **MR. HANSEN:**  (No audible response.)

6           **MR. MURPHY:**  Oh, there he is.  He's coming back on.

7    Okay.

8           **THE CLERK:**  I don't think his video will be working.

9    Let's see what he says.  What's going on?

10        **(Pause)**

11          **MR. MURPHY:**  Let me -- I'll buzz him.  I'm going to

12   mute but I'll stay on camera.

13          **THE CLERK:**  Looks like he's --

14          **THE COURT:**  All right.  Thank you.

15          **THE CLERK:**  Looks like he's joining now.  Looks like

16   -- there he is.

17          **MR. HANSEN:**  Hello, Your Honor.  I'm sorry about

18   that.  I had my internet just completely drop off there.  My

19   apologies.

20          **THE COURT:**  All right.  That's all right.  So

21   Mr. Murphy was speaking.

22          Mr. Murphy, I'm just going to have you go back to the

23   beginning of what you were saying.  I want to make sure that

24   Mr. Hansen has an opportunity to hear everything that you had

25   to say.

34

```
 1          MR. MURPHY:  I'll pick up where I left off, and that

 2   was so then we're also interested in the claimed damages.

 3          And if he's saying that he suffered emotional

 4   distress, getting into all of that because once again, that's

 5   only something that he's (inaudible) qualified to render an

 6   opinion on.

 7          And we don't plan to do an independent psychological

 8   exam of him.  I don't think it's warranted in this case.  But

 9   he certainly could talk about our client's alleged conduct and

10   causing him to be humiliated or embarrassed or whatever it is,

11   and dive into that and understand those damages.

12          So that's really what we're talking about.  But, once

13   again, to have an expert and be able to do some of this work,

14   or maybe a couple of them, we need the information now so we

15   can get them the information and have them doing that work.

16          And what we're proposing to do with the Plaintiff

17   doesn't stop any other work that's being done in the case.  We

18   owe them discovery responses.  We owe them documents, we're

19   going to get those to them.

20          We're working on a stip. for a protective order which

21   we're almost done.  I mean, we're down to two minor issues.  So

22   we don't want this stuff being leaked out in the press.  We

23   want everybody litigating the case within the court system

24   where it belongs.  And nobody will be embarrassed by what we're

25   doing.
```

1          And it can be designated attorneys only if we have to

2     do it that way, or it could be designated confidential where

3     only the attorneys and the parties and the experts can see

4     stuff.

5          So we're keeping everything out of the public view.

6     This case should not be litigated in the press.  It should be

7     litigated in court where it belongs.

8          And both sides have an interest because we may be

9     producing stuff that's also confidential, my client's eyes, and

10    we want it kept that way, too.  So there's an interest with

11    both parties on doing that.

12         So what we're looking at is seven hours.  And

13    obviously you don't include in the seven hours' time you take

14    for lunch or breaks.  And but seven solid hours of deposition

15    time.

16         And it may be, depending upon how the Plaintiff

17    answers the questions, it may take less.

18         I'm a very surgical, methodological deposition taker.

19    I don't need to go into hours and hours of background

20    information and all that kind of stuff to get to where I need

21    to go.

22         So that's what we're talking about, just seven hours.

23         And we're certainly willing to cooperate on the

24    setting of the other depositions.  If their counsel are tied up

25    in September and they can't do any discovery, I'll work with

1   them.

2           I'm hoping we don't have the case sitting around

3   without anything going on and that we need to prepare.

4           And then we need to also be given an (inaudible) to

5   know, hey, should we settle this case?  I don't know enough to

6   be able to give my client an analysis.

7           But sitting around for almost two months and doing

8   this other discovery is not helpful because it's the

9   Plaintiff's claim, and we need to understand it.

10          And talking to other people, okay, we can give some

11  credence to it.  But in the end, it's -- he's going to be the

12  star witness in their case.

13          And we're not going to be abusive or nasty or rude or

14  mean.  I don't practice law that way.  I'm very professional in

15  my demeanor and how I deal with counsel.

16          I don't believe in this letter writing emails and

17  accusing people of things.  It's nonproductive, it's

18  unprofessional.  And I believe in being civil in how I conduct

19  myself.

20          So that's what we want is seven hours.  And then we

21  can get our experts going.  And trying to get them to start

22  doing something in middle of October is very, very difficult.

23  You need to have some leeway.

24          Experts are all busy, too.  Even if you hire one,

25  they're in other cases, they're handling other trials.  They're

1   just like lawyers.  You have to work around their schedule.  So

2   that's the concern that we have.

3          **THE COURT:**  All right.  Mr. Hansen, I'll hear from

4   you.  And I would like you to address that concern.

5          I particularly want to hear your point that you don't

6   think that the -- they will suffer prejudice to the delay

7   because although the district judge here did not set any

8   deadlines other than the pretrial or the trial, those dates

9   most likely are quite firm, very unlikely to be continued.

10          And the district judge will expect the parties to

11   have accomplished the discovery and to be ready to go, and I

12   think probably has already indicated regardless of what

13   other -- what is happening in other cases.

14          So I'd like you to address that as well as anything

15   else obviously that you'd like to argue.

16          **MR. HANSEN:**  (Inaudible) Honor.  And I appreciate

17   counsel's concern of trying to get these items done.

18          Like I said numerous times, we're not going to --

19   we're going to produce our client.  We're willing to work with

20   them on that.  We're willing to work on scheduling so that we

21   can do that efficiently and in a timely manner.

22          However, all of the issues that counsel is

23   describing, all of these delays that he is now facing are a

24   matter of their own dilatory conduct.

25          It -- this matter was filed in November.  We

38

1   propounded our initial discovery in March.  They then waited

2   four months to do anything.

3          The first discovery that was propounded was July 9th.

4   Even on a 30-day timeline we -- our responses aren't even due

5   for another week and a half.

6          So if -- and with respect to the pretrial deadlines

7   that were proposed by respective counsel to the Court,

8   Plaintiff proposed a non-expert discovery deadline of July

9   because we wanted to get those issues taken care of because

10  there was these other criminal matters pending and we wanted to

11  move this along.  That -- the court did not set that date.

12         And Defendants waited around for literally four

13  months after we propounded our discovery to do anything in that

14  regard, all the while delaying the entire time.

15         They asked for numerous extensions and then finally

16  produced deficient response (inaudible) May with zero document

17  production.

18         Despite several indications from counsel that

19  document production would be forthcoming, they didn't then

20  produce anything, any documents until right around the

21  beginning of July.  I believe it was the first week of July or

22  right around then.  And it was one document.

23         Counsel then conditioned any amended responses and

24  any further document production on entering into a

25  confidentiality agreement.

39

1          I was on vacation that week, as I indicated to

2     counsel.  I took the time out of my vacation to have a meet-

3     and-confer call with him on the 19th.

4          And then last week, on Tuesday, which would have been

5     the 23rd, I think, or the 22nd, I'm not quite sure, 23rd, I

6     sent back my very, very minor (inaudible) to the

7     confidentiality agreement.

8          They -- the totality of those edits were that

9     Plaintiffs -- the parties themselves don't need to sign the

10    agreement.  Counsel can sign the agreement.

11         And then the other was that it was written in a way

12    that the parties would enter into this agreement, and then if a

13    discovery dispute came up, we would then file the agreement

14    with the Court for approval.

15         I merely suggested (inaudible) execution let's file

16    it so it's entered and ready to go.  Those are literally the

17    only two comments I provided.  It's now been eight days and we

18    still don't have any comments.

19         Counsel said he needed to talk to his client.  I'm

20    not sure about what considering his client is not an attorney.

21    And that doesn't require client approval to approve very, very

22    minor, non-substantive edits like that.

23         So counsel's delaying discovery by using this

24    confidentiality agreement as an excuse.

25         I followed up with him numerous times.  I have yet to

40

1  receive a -- I followed up with him on Monday.  I followed it

2  up with him again this morning.  I have not received a response

3  to either of those emails.  So --

4        **THE COURT:**  All right.  So hold on.

5        **MR. HANSEN:**  -- these delays --

6        **THE COURT:**  Mr. Murphy, what's up?

7        **MR. MURPHY:**  We worked on the stipulation for

8  protective order.  I have to submit it to my client.  My client

9  has been traveling.  He was out of the country in Saudi Arabia.

10  He's not going to be back until today.

11        Also, I was tied up in depositions.  Counsel was on

12  vacation.  I also took some time off and was out of town.  But

13  I told him I would work on it.

14        There are two important issues.  One of them is we

15  want the clients to sign the agreement.  We want them to be

16  bound because if counsel sign it, clients can say, well, I'm

17  not bound and I didn't authorize my lawyer to bind me.

18        And then the other thing is we agree it should be

19  filed with the Court.  It's our preference if this -- if you,

20  Your Honor, is willing to do it, you would sign off on an

21  order, that would be perfectly fine with us.  We would rather

22  have an order in place.

23        I know the federal system and the rules, I checked

24  into it, that generally judges don't sign those unless there's

25  some kind of an issue.  But we don't mind if the Court signs

41

1      the whole thing.

2                **THE COURT:**  All right.

3                **MR. MURPHY:**  And we could submit it.

4                **THE COURT:**  So I'll just cut to the chase.  Counsel

5      routinely submits stipulated protective orders to me.  In fact,

6      I have a stipulated -- a protective order on my webpage that

7      the parties are certainly not required to follow but are free

8      to.

9                Let me suggest a theme to both of you.  I'm going to

10     say it again.  The district judge is unlikely to move any of

11     the dates that are set in this case.

12               The district judge will absolutely not appreciate

13     delay by either side, won't countenance it, and won't -- this

14     is not going to extend the deadlines, regardless of whose fault

15     it is.

16               So I think I would strongly advise both of you to

17     approach the case to accomplish your discovery.  Delays for

18     whatever reason won't be countenanced.

19               You'll simply be proceeding without whatever

20     information -- without the information or at you -- at your

21     client's prejudice.

22               It is highly unlikely that any of these dates are

23     going to get moved.

24               Looking at this docket it does appear that the

25     defense commenced discovery quite late in the process.  The

42

```
 1   complaint was filed on November 8.  And I -- the answer was
 2   filed on February 13.
 3           And why then discovery did not commence until July --
 4   or the defense didn't commence discovery until July seems
 5   unlikely that whatever the reason that was is going to cause
 6   any delay of the trial date or the pretrial conference in this
 7   case.  So I just alert you both to that.
 8           That being said, I also think just given the posture
 9   of this case, it's unlikely -- it seems it would -- it's -- if
10   at all possible, you all ought to expeditiously accomplish all
11   of your discovery.
12           And I do think on balance it probably -- there's no
13   easy answer here.  But I do think, Mr. Hansen, this deposition
14   of your client should go forward before the second week of
15   October.  That puts both of you perilously close to the
16   December pretrial and trial dates.
17           And I believe the district judge have in his order
18   discovery disputes are all to be brought -- if they're
19   unresolved, I think they're to be brought to his attention, if
20   my memory serves, I think it's three weeks before trial.  I'm
21   just looking.  He's got a civil order here at docket 39.
22           Discovery disputes of a significant nature should be
23   brought promptly before the magistrate judge as provided in the
24   Court's standing order.
25           The Court does not look favorably upon delay
```

43

1  resulting from unnecessarily unresolved discovery disputes.

2  Any discovery disputes that are not resolved three weeks prior

3  to the scheduled trial date should be brought promptly and

4  directly to the attention of this Court.

5           So look at your trial date, back that up three weeks,

6  and that's a deadline for you all to have to bring your

7  discovery dispute to the district judge.

8           So I think just in light of this -- the district

9  judge's order here, I think that you all should accomplish this

10  deposition of the Plaintiff before this -- your currently --

11  current plan for the second week in October.

12           I think just unfortunately that just puts you just

13  too close to these deadlines that are set by the district judge

14  here.

15           As far as when you conduct it, I would leave that

16  entirely up to you.

17           But I am concerned that you're both going to have

18  significant deadline problems in this case if really the -- one

19  of the most important depositions in the case doesn't happen

20  until the middle of October when you have a December 10 trial.

21           **MR. HANSEN:**  Your Honor, I -- there was a few other

22  points I wanted to hit on before --

23           **THE COURT:**  Absolutely.  Yeah, and I said that now so

24  that you can also comment on the things that I said because I'm

25  making those comments sort of in light of looking at the docket

44

1   in this case and seeing the deadlines and knowing that the

2   district judge will be -- I -- absolutely deeply unhappy with

3   the delay on the part of the defense for months after filing

4   the answer and starting discovery.

5          And so I think the defense needs to get moving very

6   quickly.  And the delay about the protective order and why it's

7   taking so long, frankly, Mr. Murphy, I don't understand.  But I

8   don't think it's going to serve you well here.

9          Anyway, go ahead, Mr. Hansen.

10          **MR. HANSEN:**  Just to finish my point on your last

11   point, Your Honor, (inaudible) protective order, based on

12   counsel's comments it sounds like the only issue is whether or

13   not the parties themselves need to sign.

14          I think that that's something that, one, his client,

15   he doesn't need to get approval for his client on.  That's a

16   decision that an attorney can make themselves.

17          Two, if that's the only issue, a simple email to me

18   last week explaining that, we probably could have had this done

19   within the day.

20          So the fact that we're just stalling that out

21   indicates that this is just another pattern of their delay

22   tactics which have been going on since we started discovery and

23   are still going on.

24          Like I said, we've only received one document which

25   was a self-serving declaration.

45

1              Your Honor, all of the various items that counsel is

2      explaining at length that the parties need to do leading up to

3      a federal case, all of those apply for my client's criminal

4      federal case.  And that case is set for trial, what is it,

5      three months before this case is set for trial.

6              At no fault of Plaintiff the defense waited months

7      and months after the answer was filed to commence any discovery

8      whatsoever.

9              Now Plaintiff is being put in a position where he's

10     going to have to take time away from prepping for this very

11     important federal criminal case which does have counsel that

12     are on both cases.

13             It's not just like Plaintiff can just jump over and

14     do the deposition and that's that for seven hours, as counsel

15     has said repeatedly.  We have to prep him.  It takes at least a

16     day, more than that probably.

17             Then we need to coordinate schedules.  And as I said,

18     his criminal trial counsel's going to be involved in this case

19     as well.

20             And so it's more than just Mr. Biden taking seven

21     hours out of a random day to appear for his deposition.  That's

22     just simply not the reality of the situation.

23             **THE COURT:**  (Inaudible)

24             **MR. HANSEN:**  And when we filed this case in November

25     of 2023, the California criminal case hadn't even -- he hadn't

46

1   even been indicted yet.  He was indicted in December of 2023.

2   That case was then set for trial.

3           We have been expeditiously working on this case since

4   its commencement.  There have been delays on the defense side,

5   whether it be changing attorneys or pushing off discovery and

6   then not responding appropriately.

7           That should not prejudice Plaintiff to the point

8   where he is then having to sit for a deposition and take time

9   away from his preparation for his criminal trial because of

10  Defendant's delays.

11          That being said, Your Honor, I'd also like to correct

12  what counsel represented to the Court, that they only have a

13  couple of witnesses, I think he said Plaintiff and Defendant

14  listed on their initial disclosures.

15          There are actually eight witnesses listed on their

16  initial disclosures.  One is Plaintiff.  The other seven are

17  third party individuals.  They -- FBI agents and various

18  senators.

19          And so these are all discovery matters that can be

20  taken on while my client's criminal case is going.  We could --

21  we can handle all these other discovery matters, the deposition

22  of third party witnesses, for instance, can all occur leading

23  up to this.

24          If Your Honor thinks that the second week of October

25  is too late and too close to trial for us to produce our client

47

1  for deposition, as I said, the California criminal case is

2  estimated to last three to four weeks.

3          If it lasts three weeks, then that would put us at --

4  it starts on September 5th.  Three weeks would be September

5  26th.

6          If we could then -- let's just -- I know I'm playing

7  with hypotheticals here, but if we could agree to then produce

8  him within that first week of October, that buys us some more

9  time.

10          And we would do everything we can on our end to get

11  this deposition scheduled and appear for it as soon after the

12  conclusion of the criminal trial as possible.

13          But the fact remains that if Defendants had been

14  diligent about their discovery efforts, they could have noticed

15  this trial or this deposition to occur.

16          They could have noticed it in April or May and this

17  thing could have been done immediately following my client's

18  Delaware criminal case, and it could have been done in July.

19          Unfortunately they delayed that.  They've waited

20  until July to propound any discovery and move anything forward.

21          **MR. MURPHY:**  (Inaudible) --

22          **MR. HANSEN:**  They are engaging in --

23          **MR. MURPHY:**  I'd like to respond.

24          First of all, using (inaudible) --

25          **MR. HANSEN:**  I wasn't finished, counsel.

**EXCEPTIONAL REPORTING SERVICES, INC**

48

1          **THE COURT:**  (Inaudible) at a time.

2          **MR. MURPHY:**  Okay.  Using his analysis of the -- are

3    you done, counsel?  I'm sorry.

4          **MR. HANSEN:**  No, I'm not done.  Thank you, though.

5          And all of these items that counsel's listing off of

6    all of these things that need to occur are all the things that

7    my client is currently doing in his criminal case.  That starts

8    in five weeks.  They are preparing for it.

9          My client is also an attorney, so he's actively

10   involved in his own defense, unlike many other clients may be.

11   He is actively involved in it.

12         There -- this -- the preparation for that case takes

13   significant time.  And it's taking up all of their time right

14   now to be able to accomplish that.  That's the word I have from

15   the criminal defense team.

16         And it's quite frankly just unreasonable to make my

17   client face the prejudice that he will face if he's forced to

18   appear before his criminal trial for his deposition purely

19   because of Defendant's delay tactics in this regard.

20         And so I think, Your Honor, if Your Honor's inclined

21   to this, I think the parties could agree to a deposition

22   schedule, the third party deponents over the next two months to

23   accomplish all of those.

24         We'd be willing to stipulate to -- because we also

25   plan on taking the deposition of the Defendant himself, we

49

1  could also stipulate to conducting both of those depositions

2  the same week, after the conclusion of the criminal trial.

3  Therefore, both parties are in the same position.

4           And then we can work diligently to accomplish any

5  other remaining discovery that needs to occur thereafter.

6           We can request at those depositions for expedited

7  transcripts which, if you do so, it's typically only a few

8  days.

9           And as long as -- and I would concur with what

10  counsel has said before, that we've had good discourse and a

11  professional relationship.  And I believe that that will

12  continue.

13          And I think that we could just get to a stipulation,

14  enter into a joint stipulation for this deposition schedule,

15  and that we would produce our client and they would produce

16  their client the same week for deposition or shortly thereafter

17  so that we're in the same position.

18          And then execute any remaining discovery that's

19  needed to be done after that.

20          Additionally, Your Honor, we still have pending

21  discovery requests that are out to Defendants -- or to

22  Defendant right now, second set.

23          And we are still waiting on their amended and initial

24  discovery, which their initial discovery was severely

25  deficient.

50

1          I met and conferred on nearly every single request.

2    And counsel, to his credit, agreed to amend them appropriately.

3    We're working through those issues.

4          I think that we can take care of the third party

5    discovery and remaining issues in the meantime, and then know

6    that as soon as the criminal trial is finished, hopefully by

7    the last week of September, we can schedule my client and

8    schedule his client for deposition so the parties are in the

9    same -- on the same footing in that regard, and then work

10   diligently towards trial.

11         That negates any prejudice that my client may suffer

12   from having to appear before his criminal trial.

13         And I'll just reiterate again that their discovery

14   requests delved into a lot of issues that have nothing to do

15   with this case, including issues that are going to be relevant

16   in the criminal case.

17         And it's -- just given the nature of this case in

18   general and the parties' feelings towards each other, that

19   deposition is going to delve into issues that are privileged

20   and are -- that are subject to Fifth Amendment objections.

21         And if we wait until after the criminal trial,

22   defense counsel would be better served taking the deposition

23   and being able to delve into some of those items (inaudible)

24   resolution of the criminal case.

25         And it would also protect my client's constitutional

1    rights in that regard.

2         **MR. MURPHY:**  May I respond?

3         **THE COURT:**  All right.  Yes, you may.

4         **MR. MURPHY:**  Using counsel's analysis, oh, we have a

5    criminal case so we can't do any discovery, we can't depose his

6    client, well, we could have deposed him in May because he had

7    an upcoming criminal case coming up in June.

8         We couldn't depose him in June because he was tied up

9    in the criminal case.  The decision on that didn't come down

10   until early July.

11        So we send out our discovery to now try to depose his

12   client, now he's using the LA criminal case as an excuse to

13   (inaudible) us from doing any discovery of his client during

14   August.

15        He still has not provided this Court with any

16   specific reason why his client can't be produced for a seven-

17   hour deposition during an entire 30-day month period.

18        We're now -- we're not even on August 1 yet, and he's

19   saying, oh, he needs every day of the month, all of the time

20   from August 1 all the way until September 5, and he won't be

21   (inaudible) anything other than work on his criminal case.

22        Well, he's the one that brought this lawsuit.  He's

23   the one that has the duty to diligently prosecute it.  Under

24   FRCP 41, we don't have a duty to diligently prosecute the case.

25        They have to move it along.  And as a part of their

52

```
1   diligence and prosecuting the case, they have to conduct

2   discovery.

3           It's not just a matter of the parties not liking each

4   other.  Parties never like each other.  That's why they're in a

5   lawsuit.

6           What we're concerned about is getting information our

7   expert needs.  And that information, once our expert has it,

8   it's going to take time for that expert to do that work.

9           And my concern is he's saying September 26.  We don't

10  even know if it'll be September 26.  He admitted earlier the

11  case may not end or -- complete until the first week of

12  October.

13          And so the end result is, okay, now we're hustling

14  around, we're trying to take depos and hurry up.  It still

15  hasn't helped solve our problem with our experts that we need

16  to hire because we don't have the Plaintiff's information

17  obtained from his deposition.

18          And one of the issues going to be, well, when you did

19  your expert witness work, did you consider anything the

20  Plaintiff had to say?

21          Well, no, we did not because we didn't have his

22  deposition.  Well, what -- you didn't have his deposition, well

23  why not?  Because we -- you wouldn't let us take it.

24          And so that's really what we're talking about.  We're

25  talking about seven hours.
```

53

1          I don't need to dwelve (sic) into the criminal cases

2     or go into the detail of those cases for what we need to obtain

3     in conducting that discovery.

4          But once again, whether it's the 26th of September or

5     the 7th, we're still really, really close on those deadline

6     dates.

7          And the judge has already made it clear he doesn't

8     care what's on any of counsels' calendars or the parties'

9     calendars, those are his dates, that's when we're going.

10         And I'm not going to wait until three weeks before

11    those dates and have a motion pending, oh, I didn't have enough

12    time to get our expert to do his work as Plaintiffs wasn't

13    (inaudible) his deposition until October because he was in a

14    criminal case, when the judge has said, I don't care about

15    those dates, you have to meet my dates.  So that's what we're

16    trying to do.

17         I was not counsel in this case until May.  We sat on

18    it because of the criminal case in June.  We started our

19    discovery in July when the criminal case was over.  Based on

20    counsel's standards, that's reasonable.

21         And we're not asking a lot from his client.  And

22    we're not asking him to take weeks and days and months away

23    from whatever he needs to do with his lawyers.

24         But he has a lot of lawyers on the criminal case,

25    he's got three law firms on this case, and we've got a basic,

54

```
1   standard, garden variety defamation lawsuit that easily can

2   have a (inaudible) taken and completed in seven hours.

3         And there isn't any reason why a lawyer from one of

4   those counsels' offices can't be there to represent him.  They

5   could easily do that.

6         They can't cut him off from answering questions.  If

7   questions cross the line, they can object and instruct him not

8   to answer.

9         But you don't need the lead trial attorney for the

10  criminal case to be at his deposition.  He could have any of

11  the lawyers that are designated from those law firms on the

12  caption, any of them could show up and attend his depo.

13        And there's been no evidence presented that none of

14  those attorneys are available.  Plaintiff has not presented any

15  evidence that he's not available for a seven-hour depo at any

16  time during August.

17        And all we want to do is get that work done so we can

18  proceed with our expert witness work.  And we have these really

19  tight deadlines that the judge does not care about.

20        And then with respect to our discovery, I just

21  recently got in the case.  We provided responses.  I think our

22  objections to their discovery requests were well-taken.

23        The way they were drafted, they were using defamatory

24  statement and then making -- drafting questions where we had to

25  admit that to provide them with answers.  So we objected.
```

55

1          But we had a meet-and-confer, we agreed to resolve

2     that issue, and we're providing further responses.  We're

3     providing documents.  And we're going to resolve the protective

4     order.

5          But my client asked to see the protective order, and

6     I have to get his input back on it, which I'm planning on

7     getting today.

8          But we do want the clients to sign that document so

9     that everybody's bound by it, not only the attorneys but also

10     the clients so they all have a duty to keep this case out of

11     the internet, litigate this case in court.

12          And if there's something confidential, not to release

13     it to anybody in the case except those involved in the case.

14     They can't take it and give it to somebody else or some

15     publication or some other lawyer involved in some other case

16     someplace else.

17          And that's why we're asking for this.  So what we're

18     asking for is not unreasonable.

19          They haven't shown they will be prejudiced by a

20     seven-hour depo.  They haven't shown it.

21          They've complained about us.  Well, I just got in

22     this case.  I'm working with him, he admits it.  And we're

23     going to get whatever issues pending between us.

24          But that doesn't cut us off from the right of being

25     able to depose his client in the interim, or have them give us

56

1    their discovery responses which are coming due.

2            And so we should move forward on all fronts and do

3    whatever we need to do to handle this case and get it done and

4    work it up.

5            And if the parties can't settle, great.  And if they

6    want to go to an MSE and try to settle, then that's fine, too.

7            We can't even make a recommendation on settlement or

8    an analysis on liability or damages because we don't have the

9    information.  It's not my fault.  I just came into the case.

10           If you look at the docket, I didn't come in until

11   mid, late May.  I haven't been in it that long and I've been

12   moving it along to the best of my ability.

13           **MR. HANSEN:**  Your Honor, I would just represent that

14   the verdict came down in the Delaware case on June 11th.  If

15   client -- if counsel had acted diligently, propounded this

16   deposition, it could have happened in later June or July.  Fact

17   remains that they didn't do so until the second week of July.

18           Counsel's also saying that he's been moving discovery

19   along.  I think the record of what I've already shown shows

20   that that's not true.

21           The fact -- there's also not three law firms on this

22   case.  There are two law firms.  There are two different

23   offices from Winston, Strawn working on this case.

24           Counsel also doesn't get to choose which attorneys

25   are going to defend the deposition.  That's going to be

57

```
 1   determined by our team and what's going to be most

 2   advantageous.

 3          Then there's nothing preventing the defense from --

 4   now that they have finally started their discovery efforts from

 5   continuing those discovery efforts and deposing the third

 6   parties.

 7          While counsel represents that he has no idea who the

 8   four people that Plaintiff included on the supplemental

 9   disclosures are, I think it's very easy to figure out

10   considering the fact that one is the CEO and editor and chief

11   of the publication at issue.

12          The other three are listed as contributors on the

13   front page of the article that was attached to our complaint.

14   They are people that based on social media, Defendant routinely

15   interacts with and was obviously featured in their magazine on

16   their inaugural issue.

17          I think tracking them down on the defense side is not

18   going to be a problem.  That's going to be a problem on our

19   side is tracking those individuals down, which we are

20   diligently doing.

21          I'll repeat myself again saying that while the

22   criminal case is pending against my client, we can handle all

23   the other discovery issues.

24          We could take these third party depositions of these

25   individuals.  Whatever depositions that counsel wants to take,
```

1    we can schedule them, we can stipulate to a schedule.

2           And then after that trial we can then produce our

3    client and they could produce theirs so that it's fair and

4    we're on the same footing in that regard.

5           But clients -- or counsel keeps complaining about

6    that we're not allowing them enough time to complete discovery

7    in this case.  Then they should have -- quite frankly they

8    should have started discovery much earlier than they did.

9           They're in this position because of their own making.

10   So that argument is completely nullified by them sitting on

11   their hands for months.

12          Now, because of that, my client is stuck between a

13   rock and a hard place here.  He's either going to have to take

14   time away from preparing for his criminal trial along with the

15   criminal defense team, appear for this deposition which, again,

16   is not just seven hours, it's preparing for it, it's going over

17   things.

18          It's going to be several days at least.  I would -- I

19   usually like to have a week to prepare for different things.

20          If the Court is not inclined to that given the

21   proximity of the trial date, I understand, and Plaintiff's team

22   is willing to work in order to get that done as soon as we can.

23          But it's not like nothing's going to happen over the

24   next two months.  As long as defense counsel acts diligently,

25   all of the other remaining discovery issues can be resolved.

59

1          Those are not -- they're not going to suffer

2    prejudice because of our willingness to produce our client

3    after his criminal case.  They're just not.

4          The criminal case is (inaudible) set for trial, has

5    been set for trial since May.  They could have noticed this at

6    any time leading up to this case and -- or leading up to now,

7    and they just -- they did not.  That's a situation of their own

8    making.

9          And I think that Plaintiff is being incredibly

10   reasonable here in proposing to take all the other depositions,

11   stipulate to a trial schedule, and even more reasonable in --

12   to make this as fair as possible by suggesting that Defendant

13   and Plaintiff be deposed around the same time.

14         So it's not like Plaintiff is taking Defendant's

15   deposition two months before Plaintiff is deposed.

16         And then we -- if necessary, if there are other

17   witnesses that are within Plaintiff's control to produce

18   thereafter given his testimony, we will -- given the proximity

19   of the trial (inaudible) we will work with counsel to produce

20   them in a timely manner.

21         I hope that the same will be said for their side.

22         But the fact remains, Your Honor, that everything

23   that counsel's saying about delays are of his own making.

24   That's just the facts.

25         The Plaintiff has been diligent about discovery from

60

1    the beginning.  And had Defendant engaged in discovery process

2    in good faith and answered the -- provided the document

3    production and been timely about it, we would have had this --

4    those issues resolved long time ago.

5            But we don't really need to get into the

6    confidentiality agreement.  I've made my point clear on this.

7    This IDC is not about that.

8            However, given the fact that it's been eight days

9    since it was sent to counsel with extremely minor edits, and

10   the fact that he conditioned amended responses and the document

11   production on being entering into that agreement, which

12   Plaintiff is in agreement that it needs to go into place, and

13   the fact that the only issue appears that whether or not the

14   parties need to sign, can tell you right now that's something

15   that we can resolve.

16           I could give you authority myself right now to

17   resolve that issue.  But defense, as has become a pattern, is

18   kicking the can down the road on that because it's self-serving

19   for them.  They can then prevent -- they can then delay their

20   document production and discovery responses.

21           I'd only bring that up, Your Honor, to show that

22   Plaintiff has been acting reasonable and diligent in this case

23   from the beginning.

24           There is this criminal case that got scheduled.  It

25   was with -- outside of Defendant's control.  We did not know

61

```
1   about this case when we filed -- we did not know about the

2   criminal case when we filed this case.

3            And we're juggling various issues right now on our

4   side.  There are -- the criminal team and the civil team on

5   these cases overlap.

6            So it's not as if there's two separate teams working

7   (inaudible) Defendant just hop over, get into civil mode in

8   this case real quick.

9            He is in the middle of preparing for a criminal

10  trial.  It is incredibly important and has very, very serious

11  charges that have been leveled against him.  That takes

12  precedence right now, especially because of the timeline and

13  that trial is in five weeks.

14           I understand this Court's need to push the docket

15  along.  And we plan to do so.  I'm not proposing that we need

16  to kick the trial date out at all.  We plan to proceed with

17  trial and get a resolution to this matter, and we plan to do so

18  diligently.

19           And in pursuit of that, as I suggested, I think that

20  we could take all of the other depositions leading up to the

21  end of the criminal trial, and then produce our client

22  immediately thereafter to continue to move this case along

23  (inaudible) --

24           MR. MURPHY:  (Inaudible) --

25           MR. HANSEN:  -- there isn't (inaudible) --
```

62

1          **THE COURT:**  Mister --

2          **MR. HANSEN:**  -- discovery --

3          **MR. MURPHY:**  -- sorry.

4          **THE COURT:**  Mr. Hansen, so I'm just looking at the

5    calendar.  The criminal trial -- say the criminal trial ends

6    the first week in October.

7          That would -- yeah, reasonably then under your

8    proposal the most likely time for the deposition in this case

9    would be the week beginning October 7.

10          **MR. HANSEN:**  Correct, Your Honor.  And we would be

11    willing to --

12          **THE COURT:**  Well let me tell you --

13          **MR. HANSEN:**  -- produce him earlier --

14          **THE COURT:**  Well, I know.  But you don't -- you can't

15    predict that.

16          And so if it is the week of October 7, that is eight

17    weeks before your pretrial conference in this case, because

18    your pretrial conference is December 2nd.

19          And the -- what I hear the defense argument is that

20    they want to hear the Plaintiff's -- the Plaintiff's testimony

21    will inform their discussions with expert witnesses.

22          Their expert witnesses will need time to analyze the

23    testimony, prepare a report, and then be the subject of expert

24    witness notices, and then potentially deposed.

25          And eight weeks is -- from the deposition date, even

63

1   with expedited transcripts, is an extremely compressed

2   timeframe to accomplish all of that.

3            In particular, the trial I believe you said is

4   December 9.  Three weeks before that is November 18.  And so

5   the parties have to notify the district judge by November 18 of

6   any unresolved discovery disputes, which is, you know, six

7   weeks potentially after the Plaintiff's deposition.

8            So I hear your argument.  But I am looking at the

9   calendar.

10           And I understand the defense argument that there is

11  simply an insufficient amount of time to take the deposition,

12  provide the information to an expert witness, have the expert

13  prepare a report, disclose the report, for you all frankly to

14  provide a responsive expert, and for the expert discovery to be

15  accomplished in light of the deadline here.

16           And it may be that, you know, you all seek whatever

17  remedy you can substantively for sort of the discovery failures

18  here.

19           But just looking at the calendar, I don't

20  realistically see how you all accomplish what you need to

21  accomplish between the first week of October and December 2nd.

22           And so that really is the -- other than your

23  argument, you're right, the defense was dilatory and therefore

24  -- at the beginning of the case and therefore I guess your

25  argument is if they don't have time to accomplish their

64

1    experts, then they don't and it's their own fault.

2              But I don't necessarily --

3         **MR. MURPHY:**  Your Honor, --

4         **THE COURT:**  -- read the rules that way.  And so I

5    think the only real -- I hear you.  But the deposition of the

6    Plaintiff it sounds like is the most important for them in

7    order to accomplish retaining their experts.

8              And under the timetable you propose, that is an

9    extremely compressed period.  That is really the prejudice that

10   I hear the defense articulating.

11             And I hear your argument back that essentially it's

12   their own fault.  But I'm not sure that's sufficient.  And so

13   that is sort of one factor.

14             On the other side, yes, taking this deposition before

15   the criminal trial, inevitably there are going to be -- it's

16   going to be -- issues will come up as to which it seems likely

17   that the defense won't get answers.

18             Obviously this would be cleaner, shorter, and vastly

19   more efficient if the deposition went forward after the trial.

20   But I don't know enough about the -- maybe you can enlighten me

21   about the expert witness.

22             But I -- as I said, I'm concerned about the very

23   compressed timeframe, that that allows frankly both parties to

24   accomplish expert and reciprocal expert discovery.

25        **MR. HANSEN:**  Yes, Your Honor.  And in counsel's own

65

1    words, you know, this is the (inaudible) it's defamation.  This

2    is a cut and dried defamation case.

3         I'm not -- I don't think there's going to be a ton of

4    expert work that needs to be done on this case.  Maybe a

5    damages expert, that's probably it.

6         But, again, if there were such a -- if they were so

7    worried about preparing their experts and getting the

8    information on time, etcetera, then why did they wait until

9    nearly mid-July to first propound discovery, five months before

10   trial was set to begin?

11        I think that that argument is just belied by that.

12        And they -- the discovery that they have propounded

13   touch on all the issues that counsel said he needs to get

14   information at the deposition.  That's damages, it's to the

15   extent his reputation has been damaged.

16        They propounded interrogatories, request for

17   production, and request for admissions, all of which touch on

18   those issues.

19        Our client's -- there's nothing preventing them,

20   based on our clients' responses, from engaging an expert,

21   starting that expert review, and having that expert ready to go

22   pending Plaintiff's deposition.

23        The deposition being the last piece which, quite

24   frankly, is going to reiterate most of the same things that are

25   going to be in the discovery responses on the relevant issues.

66

1    Anything outside of the relevant issues are going to be

2    objected to on relevance ground obviously.

3           And so I think the issues here are pretty narrow.

4    And Defendant's discovery requests are going to address most of

5    them and enlighten their approach enough, or should, to be able

6    to hire an expert and get that expert prepared.

7           Again, I don't mean to keep beating a dead horse

8    here, but because of Defendant's dilatory discovery in this

9    case, Plaintiff is now being -- is going to be forced to bear

10   all of the prejudice, and not only in this case but the

11   prejudice resulting from the criminal case and of course just

12   by the nature of who Plaintiff is, the resulting media backlash

13   afterwards.

14          So that's our position, Your Honor.  I really

15   appreciate Your Honor's time in considering both sides of this

16   issue and letting counsel talk at length, both of us.  So I

17   really appreciate it.  And I feel like I'm repeating myself now

18   so --

19          **THE COURT:**  All right.

20          **MR. HANSEN:**  -- I just wanted to make that clear

21   (inaudible) --

22          **THE COURT:**  Mr. Murphy, I just want to hear from you

23   really specifically how many experts and what would be the --

24   because the -- really that's what I hear you on the prejudice

25   is you have that two-month window in order to accomplish --

67

1    provide the information to an expert and have the expert ready

2    to go.

3            How many experts, what is the topics, specifically

4    what is it that you would be seeking to do that you would not

5    be able to accomplish essentially during the month of October,

6    assuming you were able to get the deposition with an expedited

7    transcript (inaudible) --

8            **MR. MURPHY:**  Okay.  Again, answering interrogatories

9    and getting answers to the interrogatories, those answers raise

10    more questions than they answer.

11            And then you don't have the opportunity to ask

12    follow-up questions.  What it's going to do is kind of

13    enlighten us on the gist of the claim, but we can't drill down

14    into the claim itself.

15            And everybody knows that you can't rely on just

16    written discovery and say, okay, we have enough, we can now

17    take the risk of doing what we're doing in the (inaudible).

18            There are two potential experts in this case.  One

19    deals with the reputation of the Plaintiff.  And we need to

20    understand how the Plaintiff is claiming his reputation was

21    damaged and we (inaudible) down on that so we have an

22    understanding of that.

23            Then what we do is we give that information to our

24    expert and then our expert can then do their work on whether or

25    not in fact his reputation was damaged based on what he said in

68

1    his deposition by doing independent studies.

2           And those studies and those surveys and analysis take

3    a lot of time.  They're very expensive.  And so we need to have

4    more specific information than just something that's written in

5    answer to an interrogatory.

6           Then when that survey is all completed and done, then

7    the report needs to be made.  But it takes time to do that

8    work.  You can't just do it within a month and say, okay, we're

9    done, we've done a good job.

10          We may also want to use a psychologist.  We're not

11   asking for an independent psychological evaluation.  But he's

12   saying that based on our client's conduct, it cost him

13   humiliation and upset.

14          Well, then we have to look at the other things that

15   have gone on in his life and have him explain those and compare

16   those with what our client did and assess a value on those, and

17   then give that to a psychologist to say, well, did it really

18   cause him damages on his humiliation or is his whole life

19   upside down?

20          I don't know.  And I'm not trying to judge the

21   gentleman.  But we're just looking at the basis of his claim.

22          And then he said he lost business opportunities he

23   alleges in the complaint.  So who are those business

24   opportunities with, what is the income that he lost, who was he

25   -- who did he have those deals with that were canceled, what

69

```
1   documents does he have to back up those opportunities?
2           And that requires a further analysis and we may want
3   to bring --
4           THE COURT:  You can ask for all of that in written
5   discovery.  Have you already asked for that?
6           MR. MURPHY:  We've asked for the information but we
7   have not received it.  And we can't rely on just written
8   discovery.  We need to be able to drill down and do follow-up
9   questioning on it.
10          He could provide us with a very general answer and
11  that's not going to be helpful.  We need to get into the
12  details of those things.
13          So that's really what we're looking at in terms of
14  his depo, and that's why we say seven hours.  I believe I can
15  do it in seven hours.
16          If I get the written discovery questions and he
17  produces some documents, then we can go forward and drill down
18  in these areas, and then I can give it to our experts.
19          We can have our experts start their work right after
20  the depo.  And we'll have plenty of time to do the work, and we
21  then have plenty of time to complete all of it.
22          Their opinions are going to be more reliable and not
23  subject to attack because they haven't received the Plaintiff's
24  information.
25          When you do a survey and somebody claims they've been
```

70

1   damaged, one of the critical pieces of evidence you give that

2   expert is the Plaintiff's testimony in their depo.  If we don't

3   do that, they can argue our survey isn't reliable.  So that --

4            **THE COURT:**  What do you (inaudible) survey?  What

5   does that mean?

6            **MR. MURPHY:**  Well, what we would do is --

7            **THE COURT:**  (Inaudible)

8            **MR. MURPHY:**  -- we would go out and we would take

9   whatever elements that our expert thinks is appropriate and go

10  out and do a survey.  We may -- and we don't even know what

11  geographical area he's claiming his reputation was damaged in

12  by what our client did.

13           Our client wrote an article, and it was published in

14  a third rate publication that probably the vast majority of

15  people in the world have never heard of.  And then he allegedly

16  put something on X.

17           So what we have to do is look and see, first of all,

18  what people out there are aware of that.

19           And then the second thing is based on what the

20  Plaintiff is saying about how it damaged his reputation,

21  correlate it with those factors to see if in fact it really

22  harmed his reputation.

23           So that takes a lot of work.  This isn't something

24  where, you know, you give some accounting records to an expert

25  and they can look at it and say, yeah, they've been damaged or

1    not, they can spend five hours and come up with an opinion.

2         You may have to do multiple surveys to get an answer,

3    too.  One is analysis of the article.  The other one is an

4    analysis of his testimony and what he says happened to him.

5         And then we have the public record sitting out there.

6         It's a very -- the case is simple in terms of an

7    article was published and he's suing for defamation.  The

8    complexities of the case are did what our client do damage his

9    reputation.  That's the issue.

10        We don't need to dive into the -- we can say the

11   criminal cases exist, but we don't need to dive into those and

12   what he discussed with his lawyers.  We don't even need to ask

13   him what happened in court.  We don't need to -- that's not the

14   big part of it.

15        The big part of it is all the other things, too, that

16   are out there.  And --

17        **MR. HANSEN:**  Your Honor, --

18        **MR. MURPHY:**  -- (inaudible) -- I'm not finished.

19        So it's going to require a lot of work.

20        And I can't take the risk of taking a depo on October

21   7th and then that gives us 30 days, you know, to try to get the

22   transcript, do the work, and then if there's a problem, run to

23   the judge and beg him for more time.  I don't want to take that

24   risk.

25        And then of course, too, his testimony about how it

72

1    emotionally impacted him and his life and what happened and

2    everything else, that goes to the psychologist.

3            And we're not asking for a independent psychological

4    exam.  But certainly we need to drill down on that and give the

5    psychologist what they need to say, well, notwithstanding what

6    happened with this article, taking into consideration all these

7    other variables, it didn't really harm him.

8            You know, that could be a position of an expert.  And

9    we have to have an opportunity to present that.

10            So, once again, we're only (inaudible) for seven

11    hours.  They still haven't shown how they can't give us seven

12    hours between now and September 5.  They (inaudible) --

13        **THE COURT:**  No, Mr. Murphy, it -- you and I both well

14    know that the preparation takes considerably more than seven

15    hours.  This is not just simply seven hours.  So I hear you.

16    But I -- that's --

17        **MR. MURPHY:**  Well, he's got good counsel there.  He's

18    got Mr. Hansen or other people --

19        **THE COURT:**  Yeah, he's obviously going to have to

20    spend more than time outside of the deposition preparing.  So I

21    don't find that the -- this is only seven hours, this is not

22    really persuasive.

23            But --

24        **MR. HANSEN:**  Your Honor, --

25        **THE COURT:**  -- Mr. Hansen, --

73

1          **MR. HANSEN:**  -- if I may?

2          **THE COURT:**  Yeah.

3          **MR. HANSEN:**  I'll just note really quickly that we

4   haven't even responded to their initial discovery yet because

5   they propounded it so late.

6          So everything that counsel's saying about what he

7   anticipates he needs experts for and the timeline for what he

8   needs them for, he's basing that off of the allegations in the

9   complaint.

10          Therefore, upon filing of the complaint in November,

11   Defendant was apparently aware of exactly what he needed for as

12   of right now what counsel's explaining in terms of experts.  He

13   knew that nearly a year ago and did nothing.

14          If it was going to take so much time and they needed

15   to do these surveys that were going to, you know, take a ton of

16   time, as counsel said and elaborated just how much time this is

17   going to take, then that is all based on his analysis of the

18   complaint itself.

19          That's simply a fact.  There's been no other

20   information that has been provided besides the complaint.  The

21   initial disclosures don't contain much way of anything in terms

22   of the factual allegations.  It's the complaint.

23          So, again, it brings us back to Defendant was

24   dragging their feet for months and months.  They apparently

25   knew exactly what they needed, these experts that they needed

74

1   to hire to start looking into this.  They needed to do these

2   surveys, etcetera.

3          And yet that argument is completely nullified by

4   their own lack of diligence in this case.  They waited -- this

5   was filed on November 8th.  They filed discovery on July 9th,

6   2024.  I'm not great at math but I believe that's eight months

7   off the top of my head, and they did absolutely nothing.

8          I appreciate that Mr. Murphy was not in this case

9   until May.  But that doesn't change the fact that Defendant had

10  a slew of attorneys that have appeared in this case throughout

11  the beginning of it.  There's nothing that prevented them from

12  serving discovery requests.

13         Counsel has pointed to the Delaware criminal trial as

14  being something that prevented them from pursing discovery.

15  That's not true.  They could have very easily served requests

16  while that trial was pending.

17         And counsel could have worked on them and gotten

18  responses to them in a timely manner.  The -- answering

19  discovery requests is different than a deposition.

20         Moreover, if counsel had served initial discovery in

21  a timely manner, let's say around the time Plaintiff did in

22  March, they would have received responses in a timely manner

23  and could have done follow-up questions at that time.

24         Because of their own delay tactics, they have now

25  reduced their discovery window to a point where they are only

75

 1    going to be able to serve one set of discovery and then take

 2    the deposition.

 3              They could have followed up on various issues that

 4    were outlined in the initial responses.  But because of the

 5    delays, they've not allowed themselves any time.

 6              So, quite frankly, it seems like the defense is the

 7    one that's in need of a trial continuance here, not Plaintiff.

 8    So if the defense wants to seek a trial continuance with the

 9    district judge, then that's their prerogative.

10              But Plaintiff's not asking for a trial continuance

11    here.  Plaintiff is proposing a very reasonable discovery

12    schedule that would put the parties on the same footing.

13              And as long as counsel is willing to continue to work

14    in good faith, we could take care of the remaining discovery

15    issues in a diligent manner.

16              It'll just take timeliness and, quite frankly, for

17    counsel to be responsive to emails, which hasn't been the case

18    in the past regarding discovery issues.

19              So as long as those things change and they show that

20    they are going to actively be involved in discovery in a two-

21    way street here, then I don't see any reason why the case

22    cannot proceed on -- in December, as scheduled, based on

23    Plaintiff's proposition of taking all of the other discovery,

24    all the other depositions that are needed before that, so that

25    by the time Plaintiff is available to take -- to appear for his

76

1    deposition in this case, we're near the finish line.

2            And counsel can retain experts and get them working

3    on stuff.  I don' see why -- again, he seems to have a very

4    keen understanding of exactly what he needs his expert to look

5    into.  So I don't see why there's anything preventing him from

6    hiring an expert and getting that going.

7            I highly doubt the taking of my client's deposition

8    is going to change which expert he hires or -- he listed out

9    two:  one reputation expert and a psychologist.

10            Both of those people can get started, and

11   specifically the reputation expert it sounds like because the

12   surveys are going to need a significant amount of time.

13   There's nothing stopping him from starting that process now.

14            And then when they get the deposition transcript of

15   my client, that will fill in the remaining pieces which should

16   be minimal because we are going to substantively answer the

17   discovery requests.

18            We're going to produce documents in a timely manner,

19   something that they have not done and to this date have still

20   not done.

21            And assuming counsel gets back to me on the

22   confidentiality agreement, over a week now since I sent my

23   comments, we'll hopefully be getting that document production.

24            But, again, it's -- Plaintiff has been diligently

25   moving this case forward.

77

1              Defense is bold excuses as to why their delays are of

2    no consequence here and that they should put my client in a

3    position where he's going to be severely prejudiced not only in

4    this case but in his criminal case.

5              **THE COURT:**  Well, on --

6              **MR. HANSEN:**  And --

7              **THE COURT:**  -- that point, tell me what it is,

8    specifically what it is that you are alleging it will be the

9    prejudice to your client if the deposition is required to go

10   forward in August.

11             I absolutely would not order a deposition to go

12   forward while the case is in trial.  So the deposition clearly

13   would -- while the criminal case is in trial.

14             So obviously if the deposition is going to go

15   forward, it would have to be sometime in August on a date

16   determined by the Plaintiff to be convenient.

17             What is the -- specifically the prejudice to the

18   Plaintiff from that?

19             **MR. HANSEN:**  Your Honor, the prejudice is from again

20   the fact that when counsel first proposed this date, this was

21   two weeks ago now, I reached out to criminal -- our criminal

22   defense team immediately and we started discussing whether this

23   was going to be possible.

24             That time they had already commenced preparations for

25   this criminal case.  They've been doing it for weeks.  They are

78

1    actively working on it all the time.  I know this for a fact.

2              We have other cases that are related that are taking

3    a back seat right now because of the work that's going on on

4    the criminal case.

5              I'm not a criminal attorney so I can't speculate on

6    exactly what they're doing on a day-to-day basis.  But I was

7    told in no uncertain terms that it is next to impossible for

8    them to -- for my client to be produced prior to that criminal

9    case.

10             **THE COURT:**  Why?

11             **MR. HANSEN:**  Not only is it taking --

12             **THE COURT:**  Why?

13             **MR. HANSEN:**  -- time away from the preparation --

14   because not only does it take away the time from the

15   preparation, it's a complete shift in the focus of what they're

16   thinking about.

17             He would need to completely drain himself of

18   everything that's getting prepped for the criminal case,

19   prepare for this civil matter, which is completely not related

20   to the criminal case whatsoever and all the issues involved in

21   this matter.

22             And then we'd have to prep and then appear for the

23   deposition.  They've noticed it at counsel's office in person

24   so that counsel and my client would have to travel to counsel's

25   office for this deposition.  It's just the logistics of all of

79

1    that.

2          Moreover, in terms of matters that are (inaudible)

3    delve into the criminal trial, like I said, some of the

4    discovery requests touch on matters relating to the tax case.

5          They ask things like admit that your pending tax

6    evasion case in California, what'd it say, tarnished your

7    reputation in the public domain.

8          And then Defendant posted on X about three weeks ago

9    -- I'm pulling it up right now.  He said I can -- I understand

10   I'm going to be deposing you in about three weeks, hoorah.

11   Wait until you see what I have on you.  Let's see how much more

12   prison time I can get you.

13         That's what we're facing here.  He's out to try to

14   get my client more prison time by -- based on (inaudible) own

15   public admissions.

16         So to produce him for deposition before that criminal

17   trial, by Defendant's own admissions, apparently counsel has to

18   rely on his client so much that he needs approval on a purely

19   legal matter on the confidentiality agreement, presume he's

20   going to take his client's advice on what's asked my client at

21   this trial.

22         He's apparently got stuff up his sleeve that he

23   thinks is going to send my client to prison.  And by forcing my

24   client to appear for a deposition for that criminal trial can

25   only assume is a tactic to try to elicit incriminating comments

80

```
1   (inaudible) --

2          THE COURT:  Mr. Hansen?

3          MR. HANSEN:  (Inaudible)

4          THE COURT:  Mr. Hansen, you're cutting in and out.

5          MR. HANSEN:  -- client or the media and -- can you

6   hear me?

7          THE COURT:  Yeah.  You're cutting --

8          MR. HANSEN:  Can you hear me, Your Honor?

9          THE COURT:  -- in and out (inaudible).

10         MR. HANSEN:  I'm sorry.

11         THE COURT:  Okay.

12         MR. HANSEN:  Can you hear me now?

13         THE COURT:  Yes.

14         MR. HANSEN:  So I'm not sure where I left off on

15  that.  But I think I made my point that --

16         THE COURT:  Yeah.

17         MR. HANSEN:  -- Defendant is obviously trying to

18  elicit comments that are going to be incriminating and in his

19  mind get my client more prison time.

20         MR. MURPHY:  I'd like to respond.

21         My client's not taking the deposition.  I am.  And

22  I'm the one that's going to control the questioning.  And that

23  is not my goal and that is not what I'm going to do.  And I've

24  even indicated to the Court that is not what I'm going to do.

25         With respect to coming to my office, we never talked
```

EXCEPTIONAL REPORTING SERVICES, INC

81

1    about logistics.  If you wanted to do a Zoom deposition, I'd be

2    happy to do that.  Normally we notice them for here, but 99 out

3    of ten times we do Zoom.

4             So your client could go to your office and have his

5    laptop, and you could be in another office and have a laptop so

6    the computers don't clash.  We can depose him.

7             And then if you need to consult with him about

8    something, you're there readily available.

9             We would videotape it because if something happened

10   to him, we've got to have something we can use at trial.

11            But I'm the one that's taking the deposition, not my

12   client.  And that's not the way I practice law.  My client may

13   be mad at him, but that should not deprive him of the right to

14   properly depose your client through me, his attorney.

15            The second thing is the Plaintiff is a lawyer, and he

16   also has extensive litigation experience.  And before he got

17   involved in any of this stuff he worked for a law firm in

18   Washington --

19            **MR. HANSEN:**  (Inaudible) that's not true (inaudible)

20   litigation experience.

21            **MR. MURPHY:**  He worked for a law firm and he worked

22   on multiple client matters.  And to say he can't multitask

23   between his criminal case and this case that he's litigating is

24   simply untrue.

25            Yes, he did have some litigation experience.  And, in

82

1    fact, he also worked with a law firm to defend somebody in

2    Washington, D.C.  So he can multitask.

3           And all of us as lawyers multitask.  We have multiple

4    cases and we have to prepare for multiple depositions and

5    multiple trials.

6           And he's one of those people that would be doing

7    that.  And that puts him in a unique position where he should

8    be able to multitask and give us the discovery we need.

9           With respect to the witnesses they recently disclosed

10   after we did the original disclosure, those (inaudible) are

11   publication witnesses.

12          They're not going to be able to testify about

13   anything dealing with the Plaintiff's reputation or his damages

14   or his deals that were ruined.

15          They'll be able to confirm the publication occurred

16   or that they had conversations with my client.

17          And we may not have an interest in deposing them.

18   They may have.  I don't think there's any dispute the article

19   was published.

20          But if they want to do those depositions, that's

21   fine, we'll cooperate with that.  But that does not provide any

22   enlightenment whatsoever on what Plaintiff's damages are and

23   how the article has allegedly affected him.

24          But I intend on doing a very professional deposition.

25   And I'm not here to put anybody in prison or jail or anything

83

1    like that.

2           And, once again, I've even offered a protective order

3    so whatever's done in the depo can't be disclosed.  And if they

4    do, somebody's going to go to jail for disclosing it.

5           They can take that protective order and make it a

6    part of the deposition transcript.

7           And I'm more than happy to submit it to this Court

8    (inaudible) it's signed.  If we have one that's agreed to, I'm

9    more than happy to have it signed by the judge so that we don't

10   have those problems.

11          I want the parties to sign so that they can't claim

12   they're not bound by it.  That's all.

13          **THE COURT:**  All right.

14          **MR. HANSEN:**  We're still waiting on that agreement.

15          And like I said, if you had properly met and

16   conferred with me on that, we could have resolved the signature

17   of the parties issue, we could have resolved whether or not the

18   deposition is going to be remote.

19          Upon my initial comment that my client was not going

20   to be available (inaudible) an issue that I brought up in a

21   meet-and-confer call regarding (inaudible) discovery issues, I

22   brought up at the very end my one comment saying that we're not

23   going to be able to produce my client before that deposition,

24   counsel immediately went to, well, we're filing a motion to

25   compel and this is where we're going.

84

```
 1            We're going to get an IDC and we plan on filing a
 2   motion to compel on August 19th.  Without meeting and
 3   conferring at all further, that's where we went.
 4            So we could have resolved, you know, whether or not
 5   there was -- it was going to be remote or in person.  We're not
 6   objecting.  We already submitted objections.  We didn't object
 7   to the location of the deposition in those objections.
 8            So we (inaudible) this could have been resolved with
 9   a proper meet-and-confer.  I didn't make that a part of this
10   conference because I'd rather just get this resolved rather
11   than deal with minor procedural issues like that.
12            But I think I've talked at length.  And it just -- it
13   all comes back to we're in this position right now because of
14   Defendant's delays.  And (inaudible) --
15            MR. MURPHY:  I didn't delay.  I think that we're in
16   this position because of the (inaudible) --
17            THE COURT:  No, no, no, no, one at a time.
18            MR. HANSEN:  Thank you, Your Honor.
19            Because of Defendant's delays, my client is now being
20   (inaudible) position where he has to appear for his deposition
21   before trial.
22            They have done numerous trials, I'm sure as counsel
23   has.  When you are leading up -- and mine are all civil trials,
24   you know, (inaudible) involving money, not jail time.
25            A criminal trial has much more severe penalties and
```

85

1    repercussions.  The preparations, as we all well know, are

2    immense.

3            And with this trial on our doorstep, now, because of

4    Defendant's delays, my client is going to be forced to appear,

5    step away from that trial, completely (inaudible) himself from

6    the preparations in that case, and prepare for this case.

7            The fact that my client was a practicing attorney

8    until I believe 2011 or 2010 is when he stopped, it was a long

9    time ago, he hasn't practiced since.

10            And despite counsel's representation, he does not

11    have litigation experience.  He doesn't -- he wasn't a

12    litigator.  He worked for a large law firm.  But that's

13    irrelevant to this matter.

14            The fact remains he has a criminal trial, a federal

15    criminal case that is going to trial on September 5th.  The

16    preparations for that are ongoing and are extremely intricate,

17    and are taking up as much time as possible.

18            Believe me, I've asked.  I've tried to figure out a

19    way that we can find a resolution here to avoid where we are

20    right now.  I'm just telling you that it's not possible because

21    of the preparations for this criminal case.

22            So that's our position, Your Honor.

23            **THE COURT:**  Okay.  I'm just --

24            **MR. HANSEN:**  It's --

25            **THE COURT:**  -- looking.  Mr. Murphy, the motion to

86

1  withdraw as counsel for Defendant that was filed in April, it

2  states that the parties represented the firm is -- to alleviate

3  any prejudice to Mr. Byrne, the firm has been diligently

4  attempting to gather evidence to comply with the existing

5  discovery deadlines and move the case toward trial in December

6  of 2024.

7          Mr. Byrne will not be prejudiced by the firm's

8  withdrawal.  He has other counsel, he's in the process of

9  retaining counsel.

10         Trial is not scheduled for eight months.  Discovery

11 is in the early stages as only Plaintiff has propounded his

12 first set of discovery.

13         And I see in the docket based on those

14 representations, on May 16 the district judge granted the

15 request to withdraw.

16         And the Court specifically found Mr. Byrne will not

17 suffer any prejudice from the aforementioned counsel

18 withdrawing from this case in its early stage with regard to

19 the -- that was in May.  But then discovery wasn't served until

20 July.

21         All right.  I appreciate the very thorough arguments

22 from counsel.  Is there anything further from the Plaintiff?

23         **MR. HANSEN:**  No, Your Honor.  I think I've explained

24 our position at length.  So I appreciate the Court's time, and

25 I appreciate counsel's arguments in return.

87

1          **THE COURT:**  All right.  Is there anything further

2    from the defense?

3          **MR. MURPHY:**  Yes.

4          When we met and conferred, counsel would not give me

5    any date at all or any location at all or any time at all.

6          This is not a situation where I came in and I said,

7    you absolutely have to be deposed on the 14th or all of our

8    terms and conditions, our notice have to be met.

9          I was very liberal about how to do this deposition.

10   We got no cooperation at all.

11         I did not check the website, and I thought I had to

12   bring the discovery motion before the judge.  And I looked at

13   the rules and I have 21 days to file a motion and have it be

14   heard and do a stip. with counsel.

15         And I did not want to have the time period of August

16   go by and now the Court's hearing a discovery motion and

17   they're in trial.  Then it defeats the purpose in trying to get

18   this resolved promptly.

19         But then when I noticed on the website that we had to

20   go to the magistrate judge, which is you, I notified counsel,

21   we're not doing the stip., let's do the IDC, that's what we're

22   required to do.  And we came here in good faith.

23         So we're not trying to jam anybody with a motion.

24   But we have a very tight timeline, too.  And it's a stipulated

25   motion.  It's not a standard notice a motion.

88

1          And we got to comply with those rules and give the

2   Court enough time to analyze everything and rule on it.

3          Counsel, once again, they have not provided us with a

4   reasonable basis to allow us to take a seven-hour depo of his

5   client.

6          There's a whole month and a half -- well, almost a

7   whole month sitting there, well, more than that, a month and

8   probably five days that his client should be able to come and

9   be deposed on the areas that I discussed.

10          That testimony's critical for preparing an expert

11   witness.

12          To then design a proper survey, we can't just go out

13   and do surveys and then redesign them.  They're designed in

14   part about from what the Plaintiff says.

15          And to say, well, that we've caused this problem, no,

16   they've also caused the problem, too.  Their client has been in

17   one criminal case, was unavailable the entire month of June to

18   be deposed.

19          They would have objected on the same grounds to him

20   being deposed in May like they're doing now when we're deposing

21   he be deposed before the criminal trial in September.

22          And we feel that we should be able to depose him

23   sometime in August and before the criminal trial starts so that

24   we're not jammed on the back end because we will be severely

25   prejudiced and jammed on the back end.

89

1          And the Plaintiff is the one that's suing.  We're not

2    suing.  The Plaintiff has the duty to diligently prosecute the

3    case under Federal Rule of Civil Procedure 41.

4          The Plaintiff has the duty to provide us with updated

5    disclosures under 26(f), which and those disclosures are not

6    helpful to what we're trying to obtain to be able to do our

7    expert witness work.

8          And all we want to do is get our discovery so that we

9    can do the work we need to do to prepare the case for trial and

10   without having any problems with the judge either with the

11   pretrial and then having evidentiary (inaudible) rule against

12   us because discovery isn't done at the pretrial and then going

13   to trial without the evidence we need.

14         And we're not trying to harm anybody or hurt anybody

15   or put anybody in jail.

16         **MR. HANSEN:**  May I just respond, Judge?

17         **THE COURT:**  Mr. Hansen, yeah, I'll let you respond.

18   Yes.

19         **MR. HANSEN:**  So I just want to address a couple of

20   misrepresentations.

21         First, my client wasn't predisposed the entire month

22   of June.  The verdict was rendered on June 11th.  The case

23   lasted, I believe, a week and a day.  So there was no

24   representation that my client was going to be out the entire

25   month of June.  That's just something that counsel is using to

1    his advantage.  It's not true.  The verdict was rendered on the

2    11th.  That's plain and simple.  There was plenty of time for

3    them to have noticed this deposition and to have conducted it.

4         With respect to his claim that we've been delaying

5    the deposition, that's also not true.  We had a meet and confer

6    call regarding Defendant's discovery responses on July 19th,

7    which was a Friday.  I was on vacation but I made myself

8    available so that it could be done.  During that meet and

9    confer call regarding my client's deposition I told him our

10   position, he told he his, I said I would need to talk to my

11   team and I will get back to you.  We had agreed to speak on --

12   I proposed first to have comments on the confidentiality

13   agreement to him on Monday.  I didn't promise him a response on

14   the deposition on Monday.  He apparently took it that way

15   because I got a very heated email from him accusing me of lying

16   to him about that and immediately threatening a motion to

17   compel.  That was one day.  We had a conversation on the

18   afternoon of the 19th.  We had the weekend.  I got back from

19   vacation on Saturday.  And by Monday he's threatening a motion

20   to compel.

21        So that's -- there's no delay there at all.  We got

22   back to him with comments on the confidentiality agreement on

23   the 22nd.  I was able to speak to my team.  And because

24   counsel, instead of meeting and conferring with me further

25   about this issue, he immediately ran to file a motion to compel

1   and noticed this IDC.  I appreciate the time restraints that he

2   was working under in that regard, but to then accuse us of

3   delaying is, quite frankly, a misrepresentation to the Court.

4   We haven't delayed at all.

5            We got comments to him on the confidentiality

6   agreement, I turned around with objections to the deposition

7   notice and I -- all of the Rules, Rule 41 and Rule 26, that

8   Plaintiff has obligations to provide -- to push the case

9   forward and prosecute it and also provide disclosures,

10  Plaintiff has done so, has diligently worked this case up,

11  provided disclosures, and done all of what is required of him

12  under the Rules of Civil Procedure in this case.

13           It is -- so it's just -- it's a misrepresentation to

14  say that there's been a delay on Plaintiff's part at all.  I

15  simply told him that my client would not be able to be produced

16  before his criminal trial and that we would work with him on a

17  mutually available date immediately thereafter and make sure

18  that it happened.  I told him I need to talk to the trial team

19  and see if there's any maneuvering on that.  He gave me no time

20  to do so.  We had that conversation on Friday.  By Monday he's

21  accusing me of lying to him and not -- and threatening a motion

22  to compel.  There were no further meet and confer discussions

23  in this regard.  It has been just gung ho all the way ever

24  since this occurred.

25           Had I not even brought up my client's deposition in

1    that Friday, July 19th date, we were just about to hang up and

2    I was like one more second, there's one more issue I'd like to

3    discuss.  We were about to hang up and not even discuss it.  So

4    for them to claim that there's been a delay on our part or that

5    they've been acting diligently in trying to resolve this issue

6    is just plainly false.  It's not true at all.

7             So I just want to make that clear to the Court.  And

8    the representation that he was -- my client was predisposed all

9    of June is also not true.  The verdict came down on June 11th.

10   That's what it says on the docket.  He would have been

11   available.  There's a six-week period, probably like seven-week

12   period, through the end of July -- or through the end of June

13   and July that my client could have been deposed.  Because they

14   didn't act diligently and didn't notice the deposition until

15   July 9th, a month after the verdict in the Delaware case, my

16   client is now in this position where he either has to appear on

17   the date that they are requiring or face immense prejudice.

18   And I just, I think that -- I wanted to correct the

19   misrepresentations on counsel's part.

20            I'm not accusing him of intentionally

21   misrepresenting.  I'm sure that it was a good faith

22   misunderstanding.  But I just wanted to correct those for the

23   Court because they're simply not true.

24            **MR. MURPHY:**  And I need to correct the meet and

25   confer.  We had a meet and confer when he was on vacation and

1    we discussed our discovery and we agreed we were going to

2    provide supplemental responses and give them more documents.

3    We talked about the protective order and then we also discussed

4    his client's deposition because it implicates the protective

5    order and we discussed the fact that we had noticed it to be

6    taken on the 14th of August.

7           He told me he wanted to wait until after the criminal

8    case was over and I said that would be prejudicial to us and I

9    explained to him the reasons why, which are the same ones I

10   articulated here today, and I said we need to get this resolved

11   because there's deadlines on bringing motions and doing all

12   this other stuff and we don't want to be prejudiced by the

13   delay.

14          So he said he would get back to me on everything on

15   Monday.  I waited until Monday afternoon.  I didn't hear

16   anything from him.  So I dropped him a quick note and I said,

17   hey, you know, we were going to discuss the protective order,

18   your client's deposition and when we can take it and when we

19   can proceed with it and I haven't heard anything from you.  So

20   what he did was he wrote back an email to me and said we did

21   not discuss it and if I wanted to discuss it with him and have

22   a meet and confer, I had to write him an independent letter and

23   wait seven whole days before he would talk to me about the

24   deposition.

25          Now, why is he doing that?  Because that's taking

94

1    away time from us maybe having to bring a motion.

2          So I wrote back to him and I said, no, we already

3    discussed it.  There isn't any need to do a letter.  It was

4    already a part of our meet and confer.  Get back to me.  He

5    insisted on I had to do a letter.

6          So I had already written to him in May on that

7    Monday.  I had discussed it with him on Friday.  I waited seven

8    days, because it was in a letter.  And tried to approach him

9    again and got nowhere.

10          They didn't just object to the day, they didn't want

11    to produce him at all and they didn't care what the conditions

12    were.  And we discussed this and it's been 12 days later since

13    we had our meet and confer and we still don't have a reasonable

14    date and time to take that deposition so we're not prejudiced.

15    And what they're saying is, is, oh, if we don't do the

16    discovery in timelines they think are reasonable we waive our

17    right to do the discovery when we need to or when we want to

18    and where it won't prejudice our client.

19          The discovery rules don't even allow for what he's

20    proposing.  They don't.  Even the Court has said the discovery

21    rules, complaints about delay you consider them but you also

22    the rules do not allow them to say, well, since they delayed

23    set the discovery so it prejudices them and if they're out of

24    luck and they can't have a fair trial, so be it.  I don't think

25    any Court is -- especially when we're dealing with discovery

95

1    issues, would consider that reasonable or fair.

2            I've never ever made any misrepresentations to

3    counsel, but I did have a misunderstanding about having to do

4    an IDC first and when I realized I made the mistake I said to

5    him, hey, I can't do the stipulation I was working on, we have

6    to do an IDC and we've done the IDC.

7            **MR. HANSEN:**  I provided dates in response to

8    counsel's request for IDC dates the same day, while I'd been

9    waiting over a week for this confidentiality agreement I'll

10   note.

11           The seven days that I was proposing is because the

12   Local Rules, Rule 37 and its subsections, require a formal meet

13   and confer via letter before you can have an IDC or file a

14   motion to compel.  I didn't invent those rules.  I'm not doing

15   it as a delay tactic.  If I was doing anything for a delay

16   tactic I would have just waited to give him IDC dates.  I gave

17   him -- I gave them to him the same day, which was last Friday.

18           And I have been responsive to everything in this case

19   and I will reiterate once again that I in no way, shape, or

20   form promised a response regarding my client's deposition on

21   Monday, the 21st or the 22nd, following my return from

22   vacation.  I simply didn't do that.  I told him I can get you

23   comments on the confidentiality agreement probably by Monday.

24   His response was, well, if it's not Monday it's not a big deal,

25   don't worry about it, I know you're just getting back from

96

1   vacation and it can take a while to get caught up on things, so

2   if it's a couple days later don't worry about it.  It ended up

3   being Tuesday morning that I got him comments on that.  And

4   because he -- because he rushed to make this an issue with the

5   Court and wanted to file a motion to compel and an IDC we

6   didn't get a chance to further discuss deposition dates.

7          As I said previously in this conference, I was still

8   prepared to have dates.  I have dates ready to go.  If counsel

9   had met and conferred with me properly and we had a discussion

10  about it, rather than running to the Court to resolve this

11  issue, we could have set it for a date.  Granted, it's not the

12  date that he wants because it's after my client's criminal

13  trial, but I'm willing to be as flexible as I possibly can.

14         We understand he has a case to prepare, as do we.

15  And we have been diligently pursuing our prosecution of this

16  case and will continue to do so.  The only thing that has come

17  up on Plaintiff's side is that my client has this criminal

18  trial.  I told counsel I would work with him on dates, I would

19  meet and confer with him on whatever.  I didn't make the

20  location an issue.  We objected to the videotaping of the

21  deposition because that's just out of course.  That's what you

22  typically do is you object to it to the extent that it's going

23  to be used for any purposes beyond those permitted by the Rules

24  of Evidence or the Federal Rules of Civil Procedure.  That was

25  our objection.

1         There -- really it's all based on (indisc.)
2   insistence on taking my client's dep after waiting months and
3   months and months to do anything in this case, delaying their
4   own discovery production saying that we'll produce it by "X"
5   date, that date is gone and there has been nothing.  There have
6   been empty promises consistently.  Once again, we still don't
7   have the confidentiality agreement over a week later that
8   counsel has conditioned the production of amended responses on,
9   which I don't think is valid at all.  I think he could still
10  produce amended responses without violating the confidentiality
11  agreement considering he produced initial responses without
12  one.  And it's all on -- the ball is in his court on that.  We
13  need documents.  We haven't received any documents.
14        Plain and simple, the delays have been purely one
15  sided.  Plaintiff has been and will continue to be willing to
16  negotiate a resolution to any of these matters, but
17  unfortunately this is something that Plaintiff feels is going
18  to incredibly prejudice him.  And I don't think that the Court
19  thinks that I'm making any representations or that I'm taking a
20  stand that the Defendant shouldn't be allowed to conduct the
21  discovery that he wants -- that they want to do.  Obviously,
22  that's not the case.  He can conduct any reasonable discovery
23  that he wants and he's entitled to do so.  The fact remains
24  that he waited months and months before commencing those
25  activities.  So based on nothing but his own inaction he now

98

1    finds himself in the position that he's in now.

2             We knew as early as May that we were going to have

3    this criminal trial on September 5th.  I think it's just a

4    matter of common sense to know that he's not going to be able

5    to be produced a week or two weeks or three weeks before a very

6    intense criminal trial with a lot of very serious charges

7    leveled against him to appear for a deposition.  Had -- and as

8    counsel or as Your Honor pointed out earlier, we're not

9    required to provide notice of scheduling in other cases.

10   That's a matter of public information.  If counsel didn't know

11   that the trial was set for September 5th when it was set in

12   May, I don't know what to tell him.  But we have no obligation

13   to provide notice of scheduling in other cases.

14             So this is -- again, I feel like I've repeated myself

15   over and over again but we're in this position purely because

16   of the Defendant's inaction and I'm asking the Court to please

17   take the reasonable stance here to have the parties stipulate

18   to a deposition schedule of all the other witnesses to occur,

19   we'll have my client and his client be deposed the same week as

20   soon as they're able to and then we'll work diligently,

21   weekends if necessary, to take care of all other remaining

22   discovery matters.

23             Nothing is preventing counsel from hiring experts and

24   getting their work done.  I understand he says that these

25   surveys take a lot of time and they need to be redone after

99

1    they get deposition testimony.  I tend to disagree with that

2    because his discovery requests are very, very focused on the --

3    on if my client's reputation was impacted based on other

4    extraneous conduct six years ago.  Regardless, we're providing

5    responses to those.

6           Those are requests for admission.  Admit or deny.  If

7    he wanted to ask more in depth questions, he had the

8    opportunity to do an interrogatory.  He could have done so in

9    March and then followed along with a second set, a third set,

10   et cetera.  The fact is none of that happened.  We're sitting

11   here now at the end of July, all responsive discovery is still

12   not even due for another week and a half.  And by that time,

13   presumably counsel wants the discovery responses before taking

14   my client's deposition, by that time we're at mid-August and

15   we're going to be three weeks before a very important criminal

16   trial and simply put it's because of Defendant's own inaction.

17   So that's --

18           THE COURT:  So when are the Plaintiff's --

19        (Voices overlap)

20           MR. HANSEN:  -- I'll respond --

21           THE COURT:  Mr. Hansen, when are the Plaintiff's

22   responses to the Defense discovery, written discovery due?

23           MR. HANSEN:  They were propounded on July 9th and so

24   by my calculation that would actually be August 8th, given that

25   July has 31 days.

1          **THE COURT:**  Okay.

2          **MR. HANSEN:**  And we plan on propounding with

3     substantive responses and full document production on that

4     date.  That's our plan as of now.  Which I'll just note

5     Defendant didn't do and still hasn't produced any documents,

6     even though we served our responses back in March 22nd I

7     believe is the date.

8          **THE COURT:**  All right.  And then Mr. Murphy, the

9     Defense plan was to take the deposition --

10          **MR. MURPHY:**  I have noticed it for the --

11          **THE COURT:**  -- of Plaintiff after --

12          **MR. MURPHY:**  I have noticed it --

13          **THE COURT:**  Yeah, hold on, let me finish.  After

14     getting the discovery responses?

15          **MR. MURPHY:**  Right, I had set it for the 14th.  I was

16     willing to do it anytime after the 14th because then we would

17     have the discovery and we could work with their schedule.

18          So we can do it anytime -- if they can get us their

19     discovery responses and documents, we're willing to do it

20     anytime after that.  They can pick a date, you know, and we can

21     do our seven hours.  And that would allow them the most time --

22     it would also then allow them time to prepare whatever they

23     need to do.

24          I don't think this case -- and I've done over a

25     thousand depositions, I don't think the preparation in this

101

1    case of their client should take 40 hours to do.  The issues

2    are pretty straightforward.  And if it would take 40 hours to

3    prepare him, it would take us three days to depose him.  That

4    isn't going to happen.  We don't need more than seven hours.

5            And we can't do the surveys that our expert needs to

6    do until we depose the Plaintiff because that's going to help

7    us then to define the type.  Otherwise, we're spending tons and

8    tons of money doing surveys that could end up being worthless

9    and we've got to conserve judicial resources.

10            **MR. HANSEN:**  I should just quickly note for the Court

11   that I'm going to be out on vacation August 12th through the

12   15th and then a couple more days at the end of August.

13   Obviously, if I can make my client available I will do so.  But

14   it's my first vacation with my wife since we had our baby, so

15   I'd really like to not have to take time away from that.

16   But --

17            **MR. MURPHY:**  We'll work with you on your vacation.

18            **THE COURT:**  Mr. Murphy --

19            **MR. MURPHY:**  We'll work with you --

20            **MR. HANSEN:**  I appreciate that, Counsel.

21            **THE COURT:**  It just occurred to me you're doing

22   surveys about the public impact so --

23            **MR. MURPHY:**  Yeah, first of all the Plaintiff --

24            **THE COURT:**  No, no, I understand.

25            **MR. MURPHY:**  Okay.

1          **THE COURT:**  He's going to be in a trial, a very

2    public trial, in September, so how good are your surveys anyway

3    going to be if they predate that trial?

4          **MR. MURPHY:**  Because the surveys don't just involve,

5    there's a lot of other things in his life besides the two

6    criminal cases.  If that's all it was, it would be fairly

7    simple.  But there's a lot of other things that have gone on in

8    his life that have affected his reputation that are out in the

9    social media.  So we have all of those things --

10          **THE COURT:**  You don't need the deposition testimony

11    to send that out.  You already know all that because all of

12    that --

13          **MR. MURPHY:**  We need his opinion --

14          **MR. HANSEN:**  (inaudible).

15       **(Voices overlap)**

16          **MR. MURPHY:**  That's not true.  We need -- otherwise

17    we wouldn't need to depose him at all.  That's not true.  We

18    need Plaintiff's opinion on how we damaged his reputation, how

19    our article damaged his reputation, what it did to affect the

20    relationship he has with other people and his family, how --

21    these business deals that he said he lost as a result of that

22    article.  All of that stuff you can't just ignore and run out

23    and do.  We need to have all of that analyzed.

24          As I said, we need potentially an accountant for his

25    business deals.  I don't know what those are.  We have a

1   psychologist to talk about humiliation and emotional distress,

2   not psychiatric injury.  And then we've got the survey on did

3   it damage his reputation.  And to the extent he's claiming it

4   did, it also goes to his damages.

5           So we --

6           **MR. HANSEN:**  Your Honor --

7           **MR. MURPHY:**  -- we need -- if I may, Counsel.  We

8   need --

9           **MR. HANSEN:**  Sorry.

10          **MR. MURPHY:**  -- that information.  We'll work with

11  counsel on whatever dates he has with vacation.  I also would

12  like to take a vacation too.  I haven't had one in three years.

13  But once again, I'm willing to work with everybody to get this

14  depo done and out of the way.  And I'm certainly willing to

15  work with counsel on any depos he wants to take and get him his

16  discovery, get that protective order done and move forward.

17  And then we need to obviously set up a time to designate

18  experts and produce reports and make them available for

19  depositions.

20          **MR. HANSEN:**  Your Honor, the standard on defamation

21  and harm in the community is an objective standard.  It's not

22  going to be based on my client's subjective view of it.  His

23  subjective view of it's going to be entirely different than

24  what the public's view of it is.  And my -- the nature of the

25  conduct that my -- that counsel is describing is a very unique

104

1   nature in this case because of who my client is in that he

2   can't step on a leaf outside without it being reported in the

3   media.  He has people camped out on his front door constantly

4   and he needs help -- that's how counsel knows that he's been

5   going shopping and going with a Secret Service detail and has

6   gone to his lawyer friend's house, as he put it.  These are all

7   things because he's constantly followed everywhere he goes by

8   media.

9          Everything that counsel is talking about, the

10  conduct, the past conduct, that's all years in the past.

11  Nothing has occurred in the past several years other than these

12  two criminal cases coming down.  Surely not since his dad

13  became the President of the United States.  And so those are

14  all matters that his experts can do the survey on now.  He

15  could have started it the second we filed our Complaint because

16  all of those things have been widely reported on in the media.

17  This isn't just some type of citizen where we have to get his

18  deposition as to all the various conduct that we don't know

19  about may have occurred.  This is all widely publicized and, as

20  counsel even admitted, it's all over social media.

21          So there's nothing that my client's deposition is

22  going to enlighten in terms of if his representation was

23  damaged given the subjective standard under a defamation claim

24  that he's going to need from my client's deposition.  There's

25  just simply not.  It's -- they're trying to force my client

1    into a position to be prejudiced, to appear for his

2    deposition -- this is something that my client -- obviously, my

3    client and his legal team feel very strongly about, this

4    deposition, and I believe that it would be very stupid to force

5    my client into doing something that's uncomfortable and to be

6    prejudiced --

7              **MR. MURPHY:**  Your Honor --

8              **MR. HANSEN:**  -- I really just don't see any other

9    reason for it.  And so I think -- like I said, to Your Honor's

10   point, the objective standard is -- the expert analysis that

11   needs to be done to satisfy that does not need my client's

12   deposition to (inaudible) that.

13             **MR. MURPHY:**  Your Honor, I disagree.  And if

14   counsel's not stipulating that his client can't offer a

15   subjective opinion about his reputation at trial, if he's

16   just -- he's not willing to stipulate to a court order his

17   client can't get up on the stand and say how this has damaged

18   his reputation and what his damages are, he's not agreeing to

19   that, so we have to inquire into that.  And that is also

20   something that an expert needs to look at too to be fair and

21   reasonable and take into consideration whatever he has to say

22   about it.

23             But counsel's not stipulating to an order his client

24   can't offer a subjective opinion and there's no body of case

25   law that says that a plaintiff's subjective opinion is

1    inadmissible in a defamation case.  They're allowed to get on

2    the stand and they're allowed to say how they believe it's

3    affected them, their reputation, how it's damaged them, injured

4    them, humiliated them, if they suffered financial losses, they

5    have a right to testify to all that stuff.  And that's

6    something we need for our experts.  Our experts can't just say,

7    well, he's alleging so we're just going to kind of guess at

8    what he's talking about.

9           And everybody knows when you get written discovery

10   responses they're in there but they're vague.  They don't

11   really get into the meat and the details.  If we look at their

12   Rule 26(f) disclosure statement about what his damages are,

13   well, we're seeking punitive damages and we're seeking damages

14   to our reputation and we're seeking emotional distress from

15   what -- what he did and we want all these punitive damages.

16   That's all they say.  That doesn't really tell us anything.  It

17   tells us generally, okay, this is what he's claiming.  But to

18   get to the heart of it and to understand it and to be fair and

19   allow us to understand it and know what we need to confront

20   when he gets up on the stand we have to depose him.

21          And we also need to do it for our experts.  Our

22   experts can't come in and say, well, they kind of put this in

23   their disclosure statement and they've given us some answers to

24   some interrogatories, but we can't drill down on it.  We have

25   to drill down on it.  It's essential so that we can use our

1    experts at trial and we can come back and respond to the

2    contentions he's making, not only in his answers but also his

3    subjective opinion.  Those are extremely important.

4        **MR. HANSEN:**  And I'll just comment, my client's not

5    going to be able to testify at trial or deposition about other

6    people's opinions of him.  That's simply not the case.  It

7    would be objected to on both fronts.  That is an expert opinion

8    and it's also outside of personal knowledge.  He's not in a

9    position to be able to testify in a reasonable way that the

10   Defendant could then prove that he hasn't been harmed in an

11   objective sense in the public domain.  All that matters on that

12   front is what the public domain and the people in it think, not

13   what my client thinks about it.

14       And I will reiterate we're not proposing to deny

15   Defense counsel the opportunity to depose my client.  We are

16   100 percent going to produce him to be deposed in this case.

17   It just needs to be on a date that -- as I've already said, if

18   they had noticed his deposition earlier we could have gotten it

19   done in June or July and this would have been a nonissue, their

20   experts could have proceeded accordingly.  But that didn't

21   happen.  I can't notice my own client's deposition.

22       So that didn't happen.  It didn't happen until way

23   late in the game.  And we're -- I think Plaintiff has been very

24   reasonable here, has been very responsive to every request.

25   And to client's point again that discovery responses are vague,

1    well, then that's why you propound them early in the case so

2    that you can then follow them up with reasonable supplemental

3    requests and take the deposition sufficiently in advance of

4    trial to be able to prepare for this.  They didn't do any of

5    this and now we're in the position that we're in.

6         So again, I don't think there's anything that's going

7    to prevent their experts from looking into if his reputation

8    was damaged within the public domain.  There's just simply not.

9         **MR. MURPHY:**  I disagree.  Our expert needs his

10   subjective opinion.  What they're saying is, is, oh, we didn't

11   ask for a depo before and we have four months left in the case

12   so we should only be allowed about three weeks to get this

13   discovery all completed with experts and be ready to go to

14   trial and that that's the standard.  If there's a delay, then

15   you're out of luck.  That's not what the law says on discovery.

16   That's not what the Rules of court say.  And in the matter of

17   equity and fairness, no, that isn't so.

18        And he has -- once again, he can produce his client.

19   These issues don't require one week's worth of prep time.  And

20   he could easily prepare his client for a seven hour depo and

21   they can pick the time when they want to do it and I'm happy to

22   do it by Zoom.  But they should be required to do it before the

23   criminal case so that -- because we can't depose him during the

24   criminal case and when the criminal case is over until there's

25   a verdict we can't depose him and we don't know how long the

1   jury's going to be.  Then there's a sentencing hearing in

2   Delaware and here in L.A.  Then we've got that problem.

3          So we've got all of these issues.  These issues and

4   these criminal cases were not caused by us.  He chose to sue us

5   when he knew these criminal cases were pending.  He knew they

6   were pending before --

7       **(Voices overlap)**

8          **THE COURT:**  Counsel, no, his criminal case is now

9   pending --

10         **MR. HANSEN:**  That's not true.

11         **THE COURT:**  -- his criminal case -- come on,

12  Counsel --

13         **MR. MURPHY:**  I think the gun case was pending.  I

14  think the gun case was pending and then they filed the other

15  case.  And we went -- when the parties went to the case

16  management conference both cases were pending.

17         **THE COURT:**  All right.  Is there anything further

18  from the Plaintiff?

19         **MR. HANSEN:**  No, Your Honor.  I think I've made

20  myself very clear about the prejudice that my client's going to

21  face and I don't think that -- I think it's just lip service

22  and excuses on the Defense side as to what prejudice they're

23  going to face.  They just want an excuse to make my client say

24  uncle and claim that they forced him to appear for a

25  deposition.  I'll be watching on Twitter for his client's tweet

1    about it that I'm sure is forthcoming.

2            **THE COURT:**  All right, is there anything further from

3    the Defense?

4            **MR. MURPHY:**  Yeah, I disagree with his contention

5    we're acting in bad faith or we're trying to play games or that

6    stalling and delaying is our fault and we should be jammed.  I

7    just disagree with that.

8            **THE COURT:**  All right.

9            **MR. MURPHY:**  And we have attempted to meet and confer

10   before coming here multiple times to try to set a depo in

11   August.

12           **THE COURT:**  All right.  Obviously, both parties feel

13   very strongly.  Both sides have presented extensive and

14   compelling arguments.  Clearly this is a very close call.

15   However, I'm going to give you a ruling today and then I'll

16   tell you procedurally my suggestion as to how you maybe want to

17   proceed from there.

18           I think that, given that the criminal trial is going

19   to occupy the entire month of September and given the deadlines

20   in this case, which I don't think the District Judge is going

21   to move, I think this deposition does have to go forward at

22   some point prior to the criminal trial.

23           I fully recognize the argument that the Plaintiff is

24   making and I am making this ruling based on the dates that are

25   set by the District Judge in this case.  Obviously, if those

1    dates were different that would change my ruling.  My ruling is

2    necessarily tied to the dates that are set by the District

3    Judge.

4         The deposition absolutely cannot go forward while the

5    criminal case is in session; therefore, it needs to happen

6    before September 5th.  The Defense will make every

7    accommodation possible with regard to the date, the time, the

8    location, whether it is in person, whether it is by Zoom.  The

9    Defense will be as respectful as possible with regard to the

10   timing in recognition of the complexities involved in taking

11   the deposition in an entirely separate civil case so close to

12   the commencement of the criminal trial.

13        So Mr. Murphy, that means every accommodation with

14   regard to date, time, location, anything else pertaining to the

15   logistics.  Do you understand that?

16        **MR. MURPHY:**  Yes, and I agree to it and I would also

17   once again offer Zoom if counsel want to do that.

18        **THE COURT:**  They will respond to you with regard to

19   that, but you must make every accommodation in that regard.

20        The parties are strongly encouraged to produce

21   substantive discovery timely, to respond quickly.

22   Gamesmanship, delays, neither of you have time for that simply

23   based on the deadlines in this case, which I don't think are

24   going to change, much less taking into account everything else

25   that is going on.

112

1          So I'm certainly not going to set a specific date,

2    time, or location.  I leave all of that up to the parties.  It

3    needs to take place before the criminal trial begins.

4          Given the fact, given the compressed timeframe here,

5    I've allowed extensive argument.  I'm making this ruling on the

6    record so that -- and I'll issue a Minute Order essentially

7    that states for all of the reasons articulated on the record

8    this is the -- this is my ruling.  Obviously, it is the

9    Plaintiff's prerogative to seek review from the District Judge

10   of my Order so I will place the Minute Order on the docket

11   today.  I don't want my -- I don't want to delay any further.

12   If you all want to take this up with the District Judge you can

13   order an expedited transcript of today's proceeding and with my

14   Minute Order and seek the review under the Local Rules.

15         I allowed -- given the timeframe, I allowed extensive

16   argument today rather than my normal practice, which is at the

17   conclusion of an informal discovery conference to allow the

18   parties, if you wish, to file a Local Rule 37 joint

19   stipulation.  There is time built into that briefing schedule

20   and I think that time is going to eat into your month and it's

21   possible that -- in any event the time could be much better

22   spent just focusing on the substantive case rather than that.

23   But I'll leave that to you all.

24         And so that is my ruling based on the arguments that

25   were submitted today.

113

1          With regard to the protective order and with regard

2     to discovery responses generally, I do strongly encourage both

3     sides to respond thoroughly and substantively and rather than

4     engage in sort of any tactics that would delay, given the fact

5     that it seems not likely that the December deadlines set in

6     this case, that a request to move those would necessarily be

7     granted.  But I'll leave that to your judgment.

8          All right, is that clear?  Are there questions?

9          **MR. HANSEN:**  I just have one point of clarification.

10         **THE COURT:**  Go ahead, Mr. Hansen.

11         **MR. HANSEN:**  My clarification, Your Honor, is just

12    that, notwithstanding the Court's ruling right now, that

13    doesn't impact Plaintiff's ability to, for instance, move for a

14    continuance or move for a stay of the matter or potentially --

15         **THE COURT:**  Absolutely.  It is not prejudiced at all

16    to that.  And the deadlines in this case, the deadlines are set

17    by the District Judge.  The District Judge refers discovery

18    matters to Magistrate Judges generally and specifically that's

19    what occurred in this case.  The deadlines that are set by the

20    District Judge, that is entirely within the District Judge's

21    prerogative, and this ruling is absolutely without prejudice to

22    either party seeking whatever relief you feel appropriate

23    before the District Judge.

24         **MR. HANSEN:**  Thank you, Your Honor.

25         **THE COURT:**  Mr. Murphy?

114

1          **MR. MURPHY:**  Real quick question.  On the protective

2    order, if we agree to it and do the whole thing, and I think we

3    can do it fairly quickly, can we get it submitted to you for

4    signing?

5          **THE COURT:**  Yes.

6          **MR. MURPHY:**  Good.

7          **THE COURT:**  I --

8          **MR. MURPHY:**  Well then that takes care of --

9      **(Voices overlap)**

10         **THE COURT:**  -- in my --

11         **MR. MURPHY:**  -- as long as -- go ahead.  I'm sorry.

12         **THE COURT:**  -- experience, parties frequently submit

13   stipulations for a protective order along with a proposed

14   order.  I of course will review it.  If I have questions, I

15   will set a proceeding to inquire.  If I approve it, you will

16   see it on the docket.

17         **MR. MURPHY:**  Quick question.  In submitting it to you

18   do we use the email address that we did to set this up?  Do you

19   want it through the electronic filing system?

20         **THE COURT:**  You file it.  You go on CM, you file it

21   on the docket, and you submit it.  My local procedures explain

22   the submission of the Word form to the chamber's email.  But it

23   first goes on the docket.

24         **MR. MURPHY:**  And do we send -- I know we would hand

25   deliver a copy of it to you and it goes to your chambers, but

1   do we also then also electronically serve it on you like we do

2   the other Judges that ask for electronic copies too?  Or do we

3   just submit you a hard copy and file it?

4          THE COURT:  Look at my procedures.  I have everything

5   emailed to chambers.  I don't require hard copies of virtually

6   anything.

7          MR. MURPHY:  Okay.  All right, I'll follow your

8   procedures.

9          THE COURT:  All right.  Is there anything further?

10          MR. MURPHY:  No.

11          THE COURT:  All right, thank you, Counsel.

12          MR. HANSEN:  Thank you, Your Honor.

13          MR. MURPHY:  Thank you, Your Honor.

14          MR. HANSEN:  Thank you very much for your time.

15          THE COURT:  Certainly.

16          MR. HANSEN:  Mr. Murphy, I'll await your comments on

17   the confidentiality agreement as we have for (inaudible).

18          MR. MURPHY:  Yeah, we do.  I think we're fine.  Let

19   me get back to it.  I'll get ahold of you.  I don't want to

20   hold it up.  I really don't.

21          THE COURT:  All right.  Thank you, Counsel.

22      **(This proceeding was adjourned at 12:56 p.m.)**

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                              **August 2, 2024**

            Signed                                                  Dated


                        *TONI HUDSON, TRANSCRIBER*