1    PAUL B. SALVATY (SBN 171507)
     PSalvaty@winston.com
2    WINSTON & STRAWN LLP
     333 S. Grand Ave., 38th Fl.
3    Los Angeles, CA 90071-1543
     Telephone:   (213) 615-1700
4    Facsimile:   (213) 615-1750

5    ABBE DAVID LOWELL (admitted *pro hac vice*)
     AbbeLowellPublicOutreach@winston.com
6    WINSTON & STRAWN LLP
     1901 L St., N.W.
7    Washington, D.C. 20036-3508
     Telephone:   (202) 282-5000
8    Facsimile:   (202) 282-5100

9    BRYAN M. SULLIVAN (SBN 209743)
     bsullivan@earlysullivan.com
10   ZACHARY C. HANSEN (SBN 325128)
     zhansen@earlysullivan.com
11   EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
     6420 Wilshire Boulevard, 17th Fl.
12   Los Angeles, California 90048
     Telephone: (323) 301-4660
13   Facsimile: (323) 301-4676

14   Attorneys for PLAINTIFF
     ROBERT HUNTER BIDEN

15                   **UNITED STATES DISTRICT COURT**

16                   **CENTRAL DISTRICT OF CALIFORNIA**

17                          **WESTERN DIVISION**

18
     ROBERT HUNTER BIDEN, an          | **Case No. 2:23-cv-09430-SVW-PD**
19   individual,                      |
                                      | *Hon. Stephen V. Wilson*
20          Plaintiff,                |
                                      | **JOINT STATEMENT OF**
21          vs.                       | **UNRESOLVED DISCOVERY**
                                      | **ISSUES**
22
     PATRICK M. BYRNE, an individual, | Date:     October 4, 2024
23                                    | Time:     9:00 A.M.
            Defendant.                | Ctrm.:    580 of the Royal Federal
24                                    |           Courthouse
25                                    | Complaint Filed:    November 8, 2023
                                      | Trial Date:         December 10, 2024
26
27
28

**TO THE HONORABLE COURT**, pursuant to the Court's September 25, 2024 Minute Order (Dkt. No. 75), Plaintiff Robert Hunter Biden ("Plaintiff") and Defendant Patrick M. Byrne ("Defendant") (collectively, the "Parties") hereby submit the following Joint Statement of Unresolved Discovery Issues, in advance of the Informal Discovery Conference scheduled for October 4, 2024, at 9:00 A.M. in Courtroom 580 of the Roybal Federal Courthouse in Los Angeles, California.

## I.    NEUTRAL STATEMENT OF EACH ISSUE IN DISPUTE

- Dispute No. 1: Defendant's Deposition and Court-Ordered Declaration;
- Dispute No. 2: Defendant's Responses to Plaintiff's Requests for the Production of Documents (Sets Three and Four);
- Dispute No. 3: Plaintiff's Medical Records Production;
- Dispute No. 4: Defendant's Rule 26 Disclosures;
- Dispute No. 5: Plaintiff's Responses to Defendant's Third Set of Requests for the Production of Documents

## II.    EACH PARTY'S RESPECTIVE POSITIONS ON THE DISPUTES

### A.    Plaintiff's Positions[1]

#### 1.    *Dispute No. 1: Defendant's Deposition and Court-Ordered Declaration*

Prior to the September 18, 2024 Informal Discovery Conference ("September 18 IDC") before this Court, and after weeks of discussions regarding the scheduling of Defendant's deposition, counsel for Defendant made written representations to Plaintiff's counsel that Defendant had moved his permanent residence to Dubai, United Arab Emirates ("U.A.E."), and could not travel to the United States for his deposition because he "was recently notified by the United States DEA that the Venezuelan

---

[1] For Plaintiff, Zachary Hansen, Esq., will appear in person on October 4, 2024, but Abbe Lowell, Esq., who previously argued the deposition issue at the September 18, 2024 IDC and resides in Washington D.C., cannot attend because, among other reasons, he will be observing the religious holiday of Rosh Hashanah that day.  In his place, Mr. Salvaty, also of Winston & Strawn LLP and counsel of record in this matter, will appear alongside Mr. Hansen.

government has a $25,000,000 on his head." (See Exhibit 1.) Then, at the September 18 IDC, defense counsel made the same representations to the Court, this time on the record: "[Defendant] had been involved in some covert activities in Venezuela, and he was informed by the DEA that there is a $20 million bounty on his head, and he also had been receiving death threats because of that activity." (See September 18 IDC Trans., at 7:9-15.) At the September 18 IDC, the Court then ordered Defendant to "submit a declaration as to where he is currently located, as to **whether he has any plans to be anywhere within the United States between today and the date the case sets for trial** and stating the reason why he cannot return to the United States between now and then and **provide the identifying information and contact information for whoever it is that has conveyed to him that he should not return to the United States between now and the trial**[.]" (See September 18 IDC Trans., at 18:15-25) (emphasis added.)

However, in direct violation of the Court's Order, Defendant's court-ordered Declaration does not even mention the DEA, nor does it provide any additional details about his Venezuela claim, and does not provide any identifying information or contact information for anyone sufficient to allow Plaintiff to confirm Defendant's claims in this regard. Instead, for the first time, and in direct contrast with defense counsel's prior claims to Plaintiff's counsel and to the Court, Defendant's declaration[2] states that in August 2024, Defendant was in Ghana cooperating with an official with the Ghanian Ministry of Security who informed Defendant that "criminals in West Africa were cooperating to get me in a position where I could be kidnapped." Defendant further states that in addition to news about the West African kidnapping scheme, Defendant

---

[2] Defendant's Declaration was marked as "Highly Confidential" by Defendant and therefore Plaintiff was unable to attach the actual Declaration hereto without first seeking the Court's permission to file under seal pursuant to the Stipulated Protective Order (Dkt. No. 63) and there was not enough time between the Court's Order scheduling the IDC and the date this Statement was due. As such, Plaintiff's counsel will bring a copy of Defendant's Declaration to the IDC for the Court to review in-person.

JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES

1  was also informed that Venezuela was attempting to kidnap him and had put a
2  $25,000,000 bounty on his head." Defendant then states that when he finished his
3  travels he decided not to return to the United States because local police in the United
4  States "cannot provide me with the safety I need for my personal safety", so he moved
5  to Dubai and does not plan to return to the United States "anytime between now and
6  November 10, 2024."

7        Accordingly, Defendant also failed to state that he will not be returning to the
8  United States between September 18 and trial, and instead limited his declaration in this
9  regard to just November 10, 2024. Accordingly, defense counsel made several
10 misrepresentations to the Court and Plaintiff's counsel regarding his DEA claim, and
11 Defendant violated the Court's order by (1) failing to provide identifying and contact
12 information for whomever informed Defendant of the information which forms the
13 basis of his claims that he cannot return to the United States, and (2) failing to state
14 whether he has any plans to return to the United States between the date of the
15 September 18 IDC and trial. Notably, at the September 18 IDC, defense counsel
16 specifically represented to the Court that "[w]ith respect to [Defendant] coming back,
17 obviously, he'll be back here for trial[.]" (September 18 IDC Trans., at 8:15-16.)

18       Upon the production of Defendant's court-ordered Declaration, Plaintiff's
19 counsel pointed these deficiencies out to defense counsel, who refused to amend the
20 Declaration, insisted on its accuracy, and admitted his misrepresentation with respect to
21 the DEA claim[3]. (See Exhibit 2.) As such, defense counsel and Defendant have not
22 satisfied either Plaintiff's or the Court's inquiries regarding the basis for Defendant's
23 claims that he cannot return to the United States for his deposition in this matter.

24       Moreover, immediately after the September 18 IDC, Plaintiff's counsel, Mr.
25 Lowell, requested that Defendant also include in his declaration details which defense
26

27 [3] On September 30, 2024, in an email to Plaintiff's counsel, defense counsel again
   admitted that he was "mistaken when I thought the DEA spoke to our client. In fact, it
28 was the Ghana Security Department that informed our client of the threats on his life."

**JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES**

counsel stated on the record to the Court, including: (1) that Defendant was residing in Dubai on August 20, 2024 when discussions regarding his deposition began (September 18 IDC Trans., at 4:6-19); and (2) where Defendant was when he appeared virtually for Plaintiff's deposition on August 16, 2024.  In response, defense counsel stated "[w]e are going to send you the declaration the court ordered. We are not required to do anything else."  (See Exhibit 3.)

Defense counsel also falsely represented to the Court that when Plaintiff's counsel first brought up the scheduling of Defendant's deposition on August 20, 2024, that he was on vacation and "wasn't in any position to deal with it until I got back, which was about two weeks later."  (September 18 IDC Trans., at 7:18-21.)  However, in defense counsel's August 20, 2024 email in response to Plaintiff's counsel's  initial proposal for Defendant's deposition, defense counsel stated he "will be returning to the office on Monday August 26, 2024" and that he would need to discuss the details of his client's deposition with Defendant "when I get back next week[.]"  (See Exhibit 4.) This is yet another example of defense counsel's misrepresentations to the Court.

With respect to the Parties' applicable research regarding the legality of conducting a deposition in Dubai, at the September 18 IDC, the Court asked defense counsel whether he had performed any research into the laws pertaining to conducting a deposition in Dubai, either in-person or by videoconference, to which defense counsel said he had.  (September 18 IDC Trans., at 9:21-10:21.)  However, when he produced this "research" to Plaintiff's counsel on September 20 and September 23, defense counsel's research was comprised of two different marketing pamphlets for deposition servicing companies in Dubai that did not contain citations to any laws or legal authority whatsoever, and a third marketing pamphlet for a travel agency advertising tourism in Dubai, which apparently was meant to prove it was safe for U.S. Citizens to travel to Dubai.  (See Exhibit 5.)  These advertising pamphlets come up as the initial "search results" in a simple Internet search on Google.  No other legal research was, or has since been, produced by Defendant's counsel in this regard.  None of these promotional

JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES

materials provide any legal, relevant or reliable basis to confirm defense counsel's claims that a deposition can legally or logistically occur in Dubai for use in a U.S. lawsuit, either in-person or virtually by videoconference.

The research Plaintiff's counsel has conducted, however, and that was provided to defense counsel on September 20, 2024, demonstrates that: (1) there are no laws or procedures in Dubai regarding conducting depositions in Dubai for use in a foreign lawsuit, let alone such legal authority which authorizes the same; (2) there is no body of international law which provides any guidance in this regard; and (3) serious safety implications exist for U.S. citizens traveling to Dubai currently (and the region generally). In fact, relevant case law from multiple federal districts indicates that conducting a deposition in Dubai for a lawsuit pending in the United States is not practical and various important factors must be considered. Specifically, *US v. SLH2021 S.A.*, No. 23-2305, 2023 WL 5146470 (E.D. La. Aug. 10, 2023), involved a deponent employee for the defendant that was located in Dubai. The Plaintiff wished to compel the deponent to appear in Louisiana for his deposition where the action was pending, while the defendant argued the deposition should occur where the deponent resided in Dubai. (*Id.*) The Court ultimately ordered the deponent to appear in Louisiana for his deposition after consideration of the following factors: (1) "**the absence of any provisions for the taking of witness evidence for use in another jurisdiction in the UAE Code of Civil Procedure**"; (2) "**the U.S. Department of State's warning to U.S. citizens about traveling in the Gulf and Arabian Peninsula**"; (3) "given that this Court has been called upon twice to address discovery disputes in this barely five-week old case, the need for court intervention during the deposition appears high. **With Dubai's 9-hour time difference … locating the depositions [in Dubai] renders it virtually impossible for this Court to intervene should any issues arise during the depositions**"; and (4) the fact that the defendant's counsel of record was located and had his principal place of business in the district where the matter was pending in the U.S. (*Id.* at *6-7) (emphasis added.) All of these factors are aptly relevant in our case

because (1) there are no provisions in the U.A.E.'s Civil Code, Code of Civil Procedure, or Evidence Law pertaining to taking depositions in Dubai for use in the United States; (2) as noted below, the U.S. State Department's level 2 warning and designated threat level regarding travel for U.S. Citizens remains in effect; (3) given the repeated, ongoing discovery disputes in this matter and multiple requested IDC's, the chance of the Parties will need Court intervention due to a dispute at the deposition of Defendant is high, and if conducted in Dubai, the Parties would be unable to resolve that issue in a timely manner without requiring a second session of the deposition (and another trip to Dubai); and (4) defense counsel's law firm is located in Westlake Village, California – the same district in which this case is located.

Moreover, *In re Outsidewall Tire Litigation*, 267 FRD 466 (E.D. VA 2010), the Court acknowledged that in determining whether it was appropriate to conduct a deposition of a party in Dubai, several factors must be considered, including whether "some facet of Dubai law might operate to hinder or obstruct plaintiffs in taking the depositions in Dubai" (i.e., the Court noting in *U.S. v. SLH2021* that there is an absence of any provisions for the taking of witness evidence for use in another jurisdiction in the U.A.E. Code of Civil Procedure and not being a party to the Hague Convention on Taking Evidence Abroad in Civil Matters, as outlined below), and "whether defendants' conduct in discovery suggests that they or the deponents will be uncooperative or obstructionist if the depositions occur in Dubai." Once again, both of these factors are aptly relevant here.

Plaintiff's research also confirmed that the U.A.E. has: (1) no applicable laws or procedures regarding the collection of evidence in the UAE to support foreign litigation; (2) no applicable laws or procedures available to obtain evidence from a witness in the UAE; and (3) no laws or procedures to enforce a request from a foreign court for witness or documentary evidence in the U.A.E. In fact, from the legal authorities Plaintiff's counsel reviewed on this issue, it is clear that the U.A.E. does not recognize the procedures for depositions in the same manner that courts in the United States do, or

**JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES**

other Western countries do.  The word "deposition" or "oral testimony" do not appear in the U.A.E.'s Civil Procedure Code (UAE Law No. 11 of 1992), Evidence Law (UAE Law No. 10 of 1992), or Civil Code (UAE Law No. 5 of 1985).

Also, unlike the United States, and many other Western countries, such as the United Kingdom and France, the U.A.E. is not a party to the Hague Convention on Taking Evidence Abroad in Civil Matters. As such, the U.A.E. is not bound by international law with respect to the collection of evidence in civil matters in the same way other Hague Convention signatory countries are bound, such as the United States, either for in-person depositions or remote depositions by videoconference.  If they were, then their specific agreements and procedures for conducting such discovery in the U.A.E. would be clearly defined.  It is not.  For instance, in 2018 the Hague Convention released a synopsis of responses from signatory countries to the Hague Convention on Evidence regarding the procedures they recognize and accept for taking evidence by video-link (i.e., virtual depositions).  This document clearly defines each signatory country's accepted procedures.  Plaintiff's counsel has been unable to locate any such set of procedures that the U.A.E. accepts for remote depositions by videoconference. This is concerning because even if Defendant's deposition were to occur remotely by videoconference while he is in Dubai, Fed. R. Civ. Proc. 30(b)(4) provides that a deposition by remote means is deemed to "take place where the deponent answers the questions." Which means by conducting a remote deposition with the deponent in Dubai, the Parties would be subjecting themselves to the laws and procedures in Dubai, which, as described above, has no procedures for collecting evidence for foreign litigation.  Moreover, Fed. R. Civ. Proc. 28 recognizes that in some countries it is customary not to place a deponent under oath or to take a verbatim transcript. That is simply not an option here and Plaintiff has no legal authority showing Dubai will allow a deposition to occur within its borders under the procedures required in United States Federal Court cases, such as this.

Additionally, the document attached as "Exhibit 6" is titled "Rules of evidence

including crossborder evidence in civil proceedings Q&A United Arab Emirates" and was prepared by an international law firm, Bird & Bird LLP. Exhibit 6 lists several questions and responses starting on page 8 regarding the U.A.E.'s procedures for allowing evidence to be obtained in the U.A.E. specifically for the purpose of being used in a foreign litigation. The U.A.E.'s response to almost every such question is "The UAE is not a party to the Hague Evidence Convention" or other vague statements confirming the U.A.E. has no applicable procedures or laws authorizing such evidence collection.

Finally, there are also safety implications that must be considered as well. Currently the U.S. State Department lists the U.A.E. as a Level 2 threat for U.S. citizens traveling abroad and has issued a travel advisory in this regard citing the "threat of missile or drone attacks and terrorism." (See U.S. State Dep't page for U.A.E. travel, *available at* https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/UnitedArabEmirates.html). These are unnecessary safety risks that are perhaps the most important considerations, especially in light of the ongoing international conflicts that are occurring in the Middle East (Dubai is located about 100 miles across the Persian Gulf from Iran).

Accordingly, Plaintiff maintains that Defendant's deposition should occur in-person in the United States. "'Although the federal rules do not prevent plaintiff's designating any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment.'" *Willis v. Mullins,* No. CV F 04-6542 AWILJO, 2006 WL 302343 (E.D. Cal. Feb. 8, 2006) (quoting *Grey v. Continental Marketing Assocs.,* 315 F.Supp. 826, 832 (N.D. Ga. 1970)). If the parties cannot resolve any disputes regarding a party's deposition, "[t]he Court is permitted to exercise broad discretion in determining the appropriate place for examination[.]" *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D.N.C. 1988). Defendant admitted in his Answer to the Complaint that he is a resident of Florida (Dkt. No. 27, at

¶10), signed his verifications for his discovery responses with "STATE OF FLORIDA,
COUNTY OF JUPITER" listed at the top (most recently on August 9, 2024), and,
according to a public records search, Defendant owns real property in West Palm Beach,
Florida and Bethesda, Maryland, and is registered to vote in Florida.  Indeed, when
Plaintiff's counsel first proposed that Defendant's deposition should occur in Florida in
the Parties' September 2, 2024 meet and confer conference call, defense counsel
actually offered to find a location for the deposition to occur in Florida.

All Plaintiff seeks from Defendant is a way for Plaintiff's counsel to verify that
there is any valid reason for Defendant's deposition not to be held somewhere in the
United States before trial.  However, to date, Defendant has provided zero verifiable
reasons why he is unable to travel to the United States between now and trial for his
deposition.  Indeed, Defendant has provided different excuses to Plaintiff and the Court.
Consequently, if defense counsel is able to satisfy the Court and Plaintiff's counsel of
his claims that there is a valid basis as to why Defendant is unable to travel to the United
States for his deposition, which so far he has been unable to do and has misled both the
Court and Plaintiff on that issue multiple times, then and only then, will Plaintiff
consider another location for the deposition, such as London or Paris.  However,
Plaintiff's counsel is unwilling to propose alternative locations outside of the United
States at this time.  If defense counsel is unable to satisfy the foregoing concerns, then
Plaintiff insists the deposition must occur in the United States.

All of the legal, equitable, safety, and practical factors outlined above are real-
world considerations that must be taken into account and which the marketing
pamphlets defense counsel provided as his "research" into the laws and procedures in
Dubai do not address.

## 2.    *Dispute No. 2: Defendant's Responses to Plaintiff's Requests for the Production of Documents (Sets Three and Four)*

On September 5, 2024, Defendant served only objections to Plaintiff's Third Set
of Requests for the Production of Documents, and in response to Plaintiff's counsel's

September 6, 2024 meet and confer email asking for confirmation that Defendant plans to serve amended, substantive responses, no response from Defendant was received. Moreover, Defendant's responses to Plaintiff's Fourth Set of Requests for the Production of Documents were due to be served on September 20, 2024, however Defendant failed to serve any timely responses or objections thereby waiving all objections (see *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("Failure to object to discovery requests within the time required constitutes a waiver of any objection"; FRCP 34.) As of the date of this correspondence and despite defense counsel's promise to serve responses by end of day on Monday September 23, 2024, Defendant has not served substantive, code-compliant responses to either of these sets of discovery or any corresponding document production, and therefore Plaintiff requests that the Court order Defendant to produce substantive responses and responsive documents to Plaintiff's Third Set of Requests for the Production of Documents, and substantive responses without any waived objections and responsive documents, including copies of Defendant's passports between 2020 and the present (as sought by Request No. 95) in response to Plaintiff's Fourth Set of Requests for the Production of Documents.

### 3.    *Dispute No. 3: Plaintiff's Medical Records Production*

At his deposition Plaintiff identified his treating psychiatrist with respect to his claimed emotional distress damages and then served a timely response to Defendant's second set of Interrogatories further identifying this individual. In response to Defendant's second set of Requests for the Production of Documents Nos. 18, 20, 21, 22, and 27, which sought production of medical records, Plaintiff provided a true and code-compliant response which states that he does not have any such documents within his possession, custody, or control, but that, to the extent they exist, Plaintiff believes his medical providers would have such documents. As such, in order to obtain documents from third parties that Plaintiff himself has affirmed he does not have in his possession, custody, or control, Defendant must serve a Rule 45 subpoena on those third

parties, and Plaintiff has already confirmed in writing to defense counsel that when that subpoena is served and timely notice is provided to Plaintiff, he will execute any necessary HIPPA Authorization forms required to release such documents.

### 4.    *Dispute No. 4: Defendant's Rule 26 Disclosures*

Despite Defendant's repeated demands, and Plaintiff's compliance therewith, to serve supplemental Rule 26 disclosures, Defendant had failed to do the same in response to Plaintiff's repeated requests, which were initially discussed during the Parties' September 2, 2024 meet and confer conference call, until Defendant finally produced his Supplemental Rule 26 Disclosures on September 30, 2024. However, Defendant's newly produced Supplemental Rule 26 Disclosures include never-before identified witnesses, despite multiple specific discovery requests asking for Defendant to identify all persons with knowledge of every aspect of this case, and new documents which Defendant has not produced in this litigation yet. As such, Defendant should be ordered to amend all applicable discovery responses to (1) properly identify all persons with relevant knowledge of the various requested issue, and (2) to produce all previously unproduced documents, to include all of the newly disclosed information and documents in Defendant's Supplemental Rule 26 Disclosures.

### 5.    *Dispute No. 5: Plaintiff's Responses to Defendant's Third Set of Requests for the Production of Documents*

Defendant's Requests No. 30 and 31 seek for Plaintiff to produce all documents "reflecting any and all calculations for the total amount of" (1) economic damages, and (2) loss of book sales, attributable to this matter. Due to the fact that both of these requests seek documents "reflecting any and all calculations" of Plaintiff's damages, they are necessarily seeking only attorney work product and thus were properly objectionable on that basis, particularly in light of the vagueness of each Request. However, in response to various other Requests for the Production of Documents (Nos. 2, 12, 25, 29) which sought documents supporting Plaintiff's various damages claims, Plaintiff produced all documents evidencing both economic damages and lost book

sales attributable to this matter that were in his possession, custody, or control.

**B.    Defendant's Positions:**

       **1.    *Dispute No. 1: Defendant's Deposition and Court-Ordered Declaration***

On August 17, 2024, Defendant's counsel sent Plaintiff's counsel an e-mail and notified him that pursuant to FRCP 56 that Defendant intended to bring a motion for summary judgment and/or for summary adjudication of issues. (Exhibit "A") On August 20, 2024, and while on vacation, Defendant's counsel sent an e-mail to Plaintiff's counsel regarding discovery issues in this case and with a request for an IDC. (Exhibit "B.") On August 27, 2024, and after Defendant's counsel had returned to his office from vacation, he sent an e-mail to Plaintiff's counsel to try and set up a meet and confer to discuss discovery issues in this case. (Exhibit "C") On August 27, 2024, Defendant's counsel sent a second e-mail to Plaintiff's counsel and tried to set up a meet and confer with Plaintiff's counsel to discuss discovery issues. (Exhibit "D") On August 30, 2024, Plaintiff's counsel had still not provided any dates for the meet and confer requested by Defendant's counsel and Defendant's counsel requested that they meet and confer the following Monday. (Exhibit "E")

On September 1, 2024, Defendant's counsel sent Plaintiff's counsel an e-mail with their agenda for their meet and confer to occur the next day. Included in that agenda was Defendant's deposition scheduling. (Exhibit "F") On September 4, 2024, Defendant's counsel sent Plaintiff's counsel an e-mail requesting an IDC. In that e-mail he confirms that Plaintiff's counsel insisted on an in-person deposition of Defendant instead of a zoom deposition. (Exhibit "G") On September 6, 2024, Defendant's counsel sent Plaintiff's counsel an e-mail and objected to the bad faith litigation tactic by Plaintiff's counsel of failing and refusing to honor his extension agreements on due and owing written discovery and for forcing Defendant to spend thousands of dollars preparing objections to all of Plaintiff's pending discovery to protect his right to object and to preserve objections based on privilege. (Exhibit "H.") On September 11, 2024,

**JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES**

Defendant's counsel notified Plaintiff's counsel that Defendant resided out of the country and was available to attend his in-person deposition where he resided with an offer from Defendant to pay all attorney's fees and costs except for time spent at his deposition. (Exhibit "I")

On September 16, 2024, Defendant's counsel offered to produce Defendant for a zoom deposition which would save all the parties and counsel time and costs. Defendant's counsel also expressed concern about getting the deposition scheduled because Defendant wanted to proceed with his motion for summary judgment. (Exhibit "J)

On September 18, 2024, and after the court's IDC, Defendant's counsel was contacted by e-mail by Plaintiff's counsel Abbe Lowell, Esq. twice at 8:00 p.m. and three hours after the close of business with two requests that Defendant provide the court in Defendant's Declaration with information the court did not order Defendant to provide it. Defendant's counsel properly refused the request of Mr. Lowell because (1) Mr. Lowell is not the Judge Magistrate in this case that issued the IDC order, (2) Defendant's counsel is not employed by Mr. Lowell, and (3) Mr. Lowell was contacting Defendant's counsel on a non-emergency basis in the evening long after the close of business and when Defendant's counsel was trying to enjoy his time with his family. Mr. Lowell personally attended the IDC hearing and had the opportunity to make his requests to the court as to what was to be inserted in the court's IDC order.

On September 23, 2024, Plaintiff's counsel filed a request for IDC regarding Defendant's deposition and Declaration. He claimed that the Declaration was defective and not in compliance with the court's order because it did not contain all the contact information required by the court and whether or not Defendant intended to appear at trial. On September 24, 2024, Plaintiff's counsel only provided Defendant's counsel with partial transcripts of the IDC hearing relating to the Declaration and refused to provide the defense with a complete copy of the IDC transcript so the Declaration could be corrected. On September 24, 20204, Defendant's counsel notified the court of

Plaintiff's counsel's refusal to promptly provide the defense with the entire transcript of the IDC held on September 18, 2024, and he demanded that Defendant's counsel pay him for one half of the transcript and only after personally receiving payment would he send the defense the entire IDC transcript. (Exhibit "K".)

Defendant's counsel finally received the hearing transcript from Plaintiff's counsel after waiting two more days. After reviewing the hearing transcript, Defendant's counsel then prepared and caused Defendant to approve and sign his revised Declaration dated September 30, 2024. In that Declaration, the Defendant added the contact telephone number for the contact person. He also indicated that he did not know if he would be back for trial and had not made that decision. These two errors in the Declaration that were raised by Plaintiff's counsel were promptly corrected after Plaintiff's counsel finally produced the entire hearing transcript. The court is requested to file the Defendant's Declaration under seal pursuant to the Stipulation for Protective Order dated August 9, 2024. (Exhibit "L")

The facts contained in the Declaration of Defendant are undisputed. He moved and resides outside of the United States due to concerns for his personal safety based on information he received from a foreign government official while in that country. He does not know when he will return to the United States. He has agreed to submit to an in-person deposition where he resides and has also agreed to pay for all the attorney's fees and costs incurred by Plaintiff for that accommodation.

Attached as Exhibits "A" and "B" to Defendant's declaration are online brochures published by two reputable and local court reporters confirming that there are no laws where Defendant resides that would impede in any way the deposition of Defendant from being taken where he resides. Plaintiff's counsel has offered no evidence or even any law that prohibits or impairs Defendant's deposition from being taken where he resides. Defendant also agrees that the Federal Rules of Civil Procedure and Federal Rules of Evidence apply to his deposition and the transcript and videotape of it can be used at trial subject to any proper objections made at the deposition that will

1    need to be ruled on by the court during the pretrial conference.

2    There are daily nonstop airline flights to where our client resides. The return

3    flights are also nonstop. There is no need to make any aircraft stops. The court's ruling

4    in the case of <u>In Re Outsidewall Tire Litig.</u> (ED Vir. 2010) 267 F.R.D. 466, 471-472

5    indicates that the Defendant's preference to be deposed where he resides is appropriate

6    except under exceptional circumstances. The court in that case did indicate that the court

7    could consider factors such as the cost of travel, access to the court if there is a discovery

8    dispute and time to travel.

9    Plaintiff proposes alternatively London, England and Paris, France as locations

10    to take the deposition of Defendant. Plaintiff offers no dates or times for when this

11    deposition is to be taken although his counsel has been repeatedly requested Plaintiff's

12    counsel provide that information. Plaintiff's objections to taking the deposition of

13    Defendant where he resides due to attorney's fees incurred, costs incurred, time

14    travelling, lack of access to the court here if there is a discovery dispute, and personal

15    safety of all attending due to terrorism in that region of the world also apply equally to

16    having Defendant's deposition taken in London, England, Paris, France, or anywhere

17    else for that matter. There is a current safety advisory worldwide that is applicable to

18    travel to Europe and there are safety concerns applicable to travel to Europe due to the

19    current Middle East conflict. Plaintiff has not even offered to pay for any attorney's

20    fees, accommodations, and travel costs Defendant and his counsel would incur to travel

21    to Europe and back or anywhere else to attend Defendant's deposition.

22    The Exhibit "7" rules that Plaintiff's counsel heavily relies on that are published

23    by the Bird law firm, (an excellent commercial litigation firm), are not helpful.  The

24    Hague Convention Rules and other rules cited in Exhibit "7" are not relevant or of any

25    concern because the deposition is not being taken of a foreign citizen where Defendant

26    resides and this case does not involve foreign litigation and involvement of the courts

27    where Defendant resides.

28    Plaintiff offers no law, facts or argument relating to the viability of taking

**JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES**

Defendant's deposition by zoom. Plaintiff does not indicate at all whether this court has authority to order Defendant's zoom deposition. As was previously mentioned, Defendant has agreed to submit to a zoom deposition. He also agrees that the Federal Rules of Civil Procedure and Federal Rules of Evidence will apply to his zoom deposition. He also agrees that the transcript and videotape of his deposition can be used at trial subject to any proper objections made during the deposition that will need to be ruled on by the court during the pretrial conference.

Defendant agreed to take Plaintiff's zoom deposition at the request of Plaintiff and counsel. Plaintiff then submitted to a zoom deposition. Counsel and the parties saved thousands and thousands of dollars by having Plaintiff's deposition taken by zoom. There is no reasonable excuse for the prolonged failure and refusal of Plaintiff's counsel to make the same courtesy available to Defendant and to agree to take his deposition by zoom. The court has the legal authority order that Defendant's deposition be taken by zoom.

Under <u>Federal Rule of Civil Procedure</u> 30(b)(4), this court has the legal authority to order that a deposition be taken by telephone or other remote means. The court can order a remote deposition be taken when there is good cause for an order to depose by remote means. (*Estate of Gerasimenko v. Cape Wind Trading Co.* (SD NY 2011) 272 FRD 385, 390-394.) A desire to save money constitutes good cause to depose out of state witnesses by remote means. The burden is on the opposing party to show how they would be prejudiced. (*Cressler v. Neuenschwander* (D KS 1996) 170 FRD 20, 21.) The court favorably approved in <u>United States v. Fargesen</u> (SDNY 2022) 2022 U.S. Dist. LEXIS 203103; 2022 WL 166647005 the taking of the depositions of witnesses that reside where Defendant resides using a videoconferencing procedure such as zoom.

Plaintiff has known for almost two months that Defendant intends to proceed with a motion for summary judgment. The failure and refusal of Plaintiff to act in good faith and to proceed with the deposition of Defendant using the same remote deposition zoom procedure that Defendant used to take Plaintiff's deposition almost two months

1  ago and instead with the use multiple excessive obtuse e-mails and IDCs to stall and

2  delay the taking of Defendant's deposition is nothing but a litigation tactic that is

3  designed to try and oppose Defendant's motion for summary judgment that will not be

4  successful because this case has been pending for almost one year.

5      ***Dispute No. 2: Defendant's Responses to Plaintiff's Requests for the***

6  ***Production of Documents (Sets Three and Four)***

7      Defendant will be providing responses without objection to Plaintiff's Requests

8  for Production of Documents Sets Four before the IDC hearing and will bring his

9  production of documents to the hearing. Defendant was forced to timely object to

10  Plaintiff's Third Request to Produce because Plaintiff's counsel withdrew his agreement

11  extending the time to respond to all discovery. (Exhibit "H") Defendant is requesting

12  that during the IDC hearing that the court order counsel to have a meet and confer on

13  the Plaintiff's Third Request to Produce at the courthouse cafeteria because no such

14  meet and confer has occurred as required by the local rules and counsel can then confirm

15  to the court the results of that meet and confer and the court can make any appropriate

16  rulings to resolve the matter.

17      ***Dispute No. 3: Plaintiff's Medical Records Production***

18      Defendant seeks the production of Plaintiff's medical records and bills in his

19  Second Request to Produce at requests 18, 20, 21, 22 and 27 because they are needed

20  by his expert to conduct Plaintiff's IME on October 11, 2024. There is no dispute that

21  the medical records of Plaintiff can be sought with a request to produce but Plaintiff

22  simply contends that his medical records are not in his possession, custody or control

23  and must be sought by a subpoena which is ridiculous because Plaintiff must sign a

24  HIPPA consent before his medical records can be produced by his doctor so all

25  requested documents should be ordered produced by Plaintiff on Monday October 7,

26  2024 by personal delivery to Defendant's counsel's office by Plaintiff to ensure

27  Defendant's IME expert can receive and use them before October 8, 2024 to prepare

28  for the Plaintiff's IME which is scheduled to be held on October 11, 2024.

1

### *Dispute No. 4: Defendant's Rule 26 Disclosures*

2   This issue is nothing but litigation strategy and tactics by Plaintiff. Plaintiff does

3   not identify what witnesses and documents on Defendant's recent Rule 26f disclosures

4   are new and he knew nothing about them until he received Defendant's disclosures or

5   even any law that requires Defendant to provide amended responses to Plaintiff's

6   written discovery requests and the identification of the specific discovery requests by

7   set and number that require amended responses. The reason Plaintiff does not reveal

8   that information to the court is because Plaintiff already is aware of and has the

9   information Defendant disclosed in his recent Rule 26f disclosures and the court cannot

10  order Defendant to supplement his discovey responses with information plaintiff

11  already has in his possession, custody and control such as his book and witnesses that

12  he has sued in other pending litigation and/or for which Plaintiff did not request such

13  disclosed information from Defendant.

14

### *Dispute No. 5: Plaintiff's Responses to Defendant's Third Set of Requests for the Production of Documents*

15  Plaintiff objected to requests 30 and 31 in Defendant's Third Set of Requests to

16  Produce on the ground that the information sought relating to his damages calculations

17  and Plaintiff claims that information is protected by the attorney-client and work

18  product privileges. Plaintiff did not produce a detailed privilege log of those documents

19  and should be ordered to produce a detailed privilege log of those documents. Then

20  Defendant can then bring a motions in limine to preclude Plaintiff from using those

21  "privileged" documents listed in detail on his privilege log, the information contained

22  in them, or even referring to them during the trial of this case because a privilege

23  objection cannot be used to hide evidence during discovery and then waived on the eve

24  of trial to now use that privileged information at trial to unfairly sandbag the Defendant

25

26

27

28

**JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES**

Dated:  October 2, 2024

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP

By:  */s/  Zachary C. Hansen*
BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

PAUL B. SALVATY (State Bar No. 171507)
PSalvaty@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave., 38th Fl.
Los Angeles, CA 90071-1543 Telephone: (213) 615-1700 Facsimile:    (213) 615-1750

ABBE DAVID LOWELL (*pro hac vice* forthcoming)
AbbeLowellPublicOutreach@winston.com
WINSTON & STRAWN LLP
1901 L St., N.W.
Washington, D.C. 20036-3508
Telephone:    (202) 282-5000 Facsimile: (202) 282-5100

*Attorneys for Plaintiff Robert Hunter Biden*

JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES

1    Dated: October 2, 2024                    LAW OFFICES OF MICHAEL C.
                                               MURPHY
2

3                                              */s/ Michael C. Murphy*
4                                                Michael C. Murphy, Esq.
                                                 Michael C. Murphy, Jr., Esq.
5                                                *Attorneys for Defendant,*
6                                                *Patrick Byrne*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    5788757.1

26

27

28

**JOINT STATEMENT OF UNRESOLVED DISCOVERY DISPUTES**