1   PAUL B. SALVATY (SBN 171507)
    PSalvaty@winston.com
2   WINSTON & STRAWN LLP
    333 S. Grand Ave., 38th Fl.
3   Los Angeles, CA 90071-1543
    Telephone:   (213) 615-1700
4   Facsimile:   (213) 615-1750

5   ABBE DAVID LOWELL (admitted *pro hac vice*)
    AbbeLowellPublicOutreach@winston.com
6   WINSTON & STRAWN LLP
    1901 L St., N.W.
7   Washington, D.C. 20036-3508
    Telephone:   (202) 282-5000
8   Facsimile:   (202) 282-5100

9   BRYAN M. SULLIVAN (SBN 209743)
    bsullivan@earlysullivan.com
10  ZACHARY C. HANSEN (SBN 325128)
    zhansen@earlysullivan.com
11  EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
    6420 Wilshire Boulevard, 17th Fl.
12  Los Angeles, California 90048
    Telephone: (323) 301-4660
13  Facsimile: (323) 301-4676

14  Attorneys for PLAINTIFF
    ROBERT HUNTER BIDEN

15                  **UNITED STATES DISTRICT COURT**

16                  **CENTRAL DISTRICT OF CALIFORNIA**

17                       **WESTERN DIVISION**

18

19   ROBERT HUNTER BIDEN, an          **Case No. 2:23-cv-09430-SVW-PD**
     individual,
20                                     *Hon. Mag. Judge Patricia A. Donahue*
            Plaintiff,
21                                     **JOINT STATEMENT RE:**
            vs.                        **DEFENDANT PATRICK M.**
22                                     **BYRNE'S DEPOSITION**
     PATRICK M. BYRNE, an individual,
23                                     Complaint Filed:   November 8, 2023
            Defendant.                 Trial Date:        December 10, 2024
24

25   `

26

27

28

# TABLE OF CONTENTS

**Page**

I.    EACH PARTIES' POSITIONS ON THE ISSUES: ............................................4

    A.    Plaintiff's Statement ...................................................................4

        1.    Plaintiff's Position re: Location .........................................4

        2.    Plaintiff's Position re: Remote Deposition ...................12

        3.    Plaintiff's Response to Defendant's Position ................14

    B.    Defendant's Positions: ..............................................................22

        1.    Defendant's Reply to Plaintiff's Positions ....................27

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Balk v. New York Institute of Technology*, 974 F.Supp.2d 147 (E.D.N.Y. 2013) .................................................................................................. 11

*Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005) ............... 6

*Cressler v. Neuenschwander* (D KS 1996) 170 FRD 20, 21 ................................ 25

*Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000) .................................................................................................... 6

*E.I DuPont de Nemours & Co. v. Kolon Industries, Inc.*, 268 F.R.D. 45, 54 (E.D. Va. 2010) ................................................................................ 5

*Estate of Gerasimenko v. Cape Wind Trading Co.* (SD NY 2011) 385, 390 .................................................................................................. 25

*Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D.N.Y. 2006) .................................................................................................. 11

*Fausto v. Credigy Serv. Corp.* 251 F.R.D. 427, 429 (N.D. Cal. 2008) ............. 4, 27

*Grey v. Continental Marketing Assocs.*, 315 F.Supp. 826, 832 (N.D. Ga. 1970) ........................................................................................ 22, 25, 28

*Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) ........................... 4, 5

*In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010) .......... 5, 10, 18

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee* 105 FRD 435, 445 (S.D.N.Y. 1984) ................................................................... 23, 25, 30

*Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 523 (D. Colo. 2003) .................................................................................................. 11

*Pirtle v. Netflix, Inc.*, 2024 WL 99072 at *4 (C.D. Cal. Feb. 16, 2024) .............. 13

*S.E.C. v. Banc de Binary*, No. 2:13-cv-993-RCJ-VCF, 2014 WL 1030862 (D. Nev. Mar. 14, 2024) ............................................................ 5, 6, 18

*Societe Nationale Industrielle Aeropatiale v. U.S. Dist. Ct. S.D. Iowa* 482 U.S. 522 (1987) ............................................................... 23, 25, 30

*Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 384 (M.D. N.C. 1988) ............................................................................................ 7

*U.S. v. Fargesen*, No. 21-cr-602, 2022 WL 16647005 (S.D.N.Y. Nov. 3, 2022) .................................................................................................. 13

*United States v. Johnson* (9th Cir. 1984) 735 F.2d 1200, 1202 ..................... 24, 28

*US v. SLH2021 S.A.*, No. 23-2305, 2023 WL 5146470 (E.D. La. Aug. 10, 2023) ................................................................................................. 9, 18

*Vasquez v. Draper and Kramer Mortgage Corp.*, No. 20-cv-06635-YGR, 2021 WL 229313 at *5, fn. 4 (N.D. Cal. Jan. 22, 2021) ........................ 13

*Willis v. Mullins,* No. CV F 04-6542 AWILJO, 2006 WL 302343 (E.D. Cal. Feb. 8, 2006) ................................................................................ 22

**STATUTES**

28 U.S.C. § 1783............................................................................8, 10

28 U.S.C. § 1783(a)...............................................................................11

Fed. R. Civ. Proc., Rule 1.......................................................................7

Fed. R. Civ. Proc., Rule 26(b)(1)...........................................................6

Fed. R. Civ. Proc. 28.............................................................................12

Fed. R. Civ. Proc. Rule 28(b)................................................................21

Fed. R. Civ. Proc., 28(c)..........................................................................9

Fed. R. Civ. Proc. 30(b)(4)....................................................12, 25, 30

**OTHER AUTHORITIES**

UAE Law No. 11 of 1992.......................................................................18

UAE Law No. 10 of 1992…………………………………………….18

UAE Law No. 5 of 1985.........................................................................18

**TO THE HONORABLE COURT**, pursuant to the Court's October 4, 2024 Minute Order (Dkt. No. 79), Plaintiff Robert Hunter Biden ("Plaintiff") and Defendant Patrick M. Byrne ("Defendant") (collectively, the "Parties") hereby submit the following Joint Statement of Unresolved Deposition Discovery Issues, for the court's consideration in ruling on each party's respective positions on these Issues.

## I.    EACH PARTIES' POSITIONS ON THE ISSUES:

### A.    PLAINTIFF'S STATEMENT

#### 1.    Plaintiff's Position re: Location

Due to the arguments set forth in greater detail below, and the lack of any clearly delineated legal authority authorizing the taking of the deposition of Defendant in Dubai, either in-person or remotely via videoconference, Plaintiff maintains that the deposition should occur in-person somewhere in the United States, or, alternatively, at Winston & Strawn LLP's offices in either London, England or Paris, France.

District Courts have "wide discretion to establish the time and place of depositions." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994). There is a general presumption that natural-person defendants should be deposed in the district of his or her residence. See *Fausto v. Credigy Serv. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008). Defendant admitted in his Answer to the Complaint that he is a resident of Florida (Dkt. No. 27, at ¶10), he signed his verifications for his discovery responses with "STATE OF FLORIDA, COUNTY OF JUPITER" listed at the top (most recently on August 9, 2024), and, according to a public records search, Defendant owns real property in West Palm Beach, Florida, Salt Lake City, Utah, and Potomac, Maryland, is registered to vote in Florida, and has over two dozen business entities associated with him that are located throughout the United States, for which he holds various titles such as President, Chief Executive Officer, Manager, Director, and Officer. Indeed, when Plaintiff's counsel first proposed that Defendant's deposition should occur in Florida in the Parties' September 2, 2024 meet and confer conference call, defense counsel actually offered to find a location for the deposition to occur in Florida. Additionally,

as explained further below, Defendant has failed to provide any reliable and verifiable explanation as to why he claims he moved his residence to Dubai, and has also failed to provide any valid explanation as to why he is unable to travel to the United States for his in-person deposition in any district in which he resides, is employed, or has a principal place of business.    Accordingly, Plaintiff maintains that Defendant's deposition should be held in-person somewhere in the United States, preferably in the Southern District of Florida.

District Courts have compelled defendant deponents that live abroad to appear for their deposition in the United States and other locations after consideration of various factors.  In *S.E.C. v. Banc de Binary*, No. 2:13-cv-993-RCJ-VCF, 2014 WL 1030862 (D. Nev. Mar. 14, 2024) the Court set forth the various factors Federal courts, including the Ninth Circuit, rely upon in determining that the founder of the corporate Defendant, who was a United States citizen and lived in Israel, should appear in the United States for his deposition.  See also *E.I DuPont de Nemours & Co. v. Kolon Industries, Inc.*, 268 F.R.D. 45, 54 (E.D. Va. 2010).  The Court explained that except for the "wide discretion" Federal Rule of Civil Procedure 26 grants district courts to establish a deposition's location (see *Hyde & Drath*, *supra*, 24 F.3d at 1166), "[t]he Federal Rules of Civil Procedure are otherwise silent with regard to choosing a deposition's location … [and] [w]here, as here, there is no place that appears convenient for the parties, the task of deciding the proper location falls on the court." *S.E.C.*, 2014 WL 1030862 at *3 "In developing this standard, courts consider whether 'circumstances exist distinguishing the case from the ordinary run of civil cases.'" (*Id*. (quoting *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010)).

When making this determination courts in the Ninth Circuit apply a five-factor test (the *Cadent* factors)[1]: (1) the location

---

[1] Both *S.E.C. v. Banc de Binary* and *Cadent Ltd. v. 3M Unitek Corp.* involved corporate defendants and the depositions of corporate deponents rather than individual defendants.

**JOINT STATEMENT RE: DEFENDANT'S DEPOSITION**

of counsel for the parties in the forum district; (2) the number
of corporate representatives a party is seeking to depose; (3)
the likelihood of significant discovery disputes arising which
would necessitate-resolution by the forum court; (4) whether
the persons sought to be deposed often engage in travel for
business purposes; and (5) the equities with regard to the
nature of the claim and the parties' relationship.

*S.E.C.*, 2014 WL 1030862 at *3 (quoting *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D.
625, 629 (C.D. Cal. 2005)).

However, evaluation of the *Cadent* factors "is not the only test" because Courts
must also consider "whether the deposition would be impeded by the foreign nation's
laws or would affront the nation's judicial sovereignty."  *S.E.C.*, 2014 WL 1030862 at
*3-4 (citing *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind.
2000) ("If a federal court compels discovery on foreign soil, foreign judicial sovereignty
may be infringed").)  This means "Rule 28(b) must also be considered" because "Rule
28(b) governs depositions in foreign countries and prescribes four methods for taking
depositions abroad." (*S.E.C.*, 2014 WL 1030862 at *4.)  These four methods are:

(A) under an applicable treaty or convention;

(B) under a letter of request, whether or not captioned a 'letter
rogatory';

(C) on notice, before a person authorize3d to administer oaths
either by federal law or by law in the place of examination; or

(D) before a person commission by the court to administer
any necessary oath and take testimony.

(Fed. R. Civ. Proc., Rule 26(b)(1).)    The Court in *S.E.C. v. Banc de Binary* further
explained that the Court must also consider Federal Rule of Civil Procedure 1, which
instructs courts "to construe and administer the rules 'to secure the just, speedy, and
inexpensive determination of every action and proceeding" and which "[c]ourts

routinely apply [] when determining whether to locate a deposition." *S.E.C.*, 2014 WL 1030862 at *4 (quoting Fed. R. Civ. Proc., Rule 1; citing *Cadent*, 232 F.R.D. at 630). Based on the foregoing tests, the Court in *S.E.C. v. Banc de Binary* concluded that "the governing law requires the court to make three distinct inquiries: (1) whether the parties claims and contacts with the forum warrant locating the deposition at home or abroad; (2) whether a foreign deposition will offend or infringe that nation's judicial sovereignty; and (3) whether less expensive and more reasonable alternatives exist." *S.E.C.*, 2014 WL 1030862 at *4.

Applying the *Cadent* factors shows Dubai is not a practical and logical location for Defendant's in-person deposition. The first factor considers the location of counsel for the parties in the forum district. Defendant's counsel is located in Westlake Village, California in the Central District of California; Plaintiff's two sets of counsel also both have offices in Los Angeles, California in the Central District of California. Regardless, all counsel for all parties are located in the United States, and Plaintiff's counsel are willing to travel within the United States as far as the Southern District of Florida to take this deposition. The second factor considers the number of corporate representatives that must be deposed. This factor does not fit in this case considering Defendant is an individual, however, because of this fact, only one deposition will need to occur outside of Dubai. The third factor considers the likelihood of discovery disputes arising during the deposition which would necessitate Court resolution. This factor does not apply here because this Court informed the Parties' counsel at the October 4, 2024 Informal Discovery Conference ("IDC") that it does not make itself available to resolve disputes that arise during depositions. The fourth factor considers whether the deponent often engages in travel for business purposes to the proposed situs of the deposition including whether "the defendant reached into the forum where the deposition" was set to occur. *Id*. at *7 (citing *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 384 (M.D. N.C. 1988)). While Defendant's social media posts make it clear he travels extensively throughout the World, including to Florida specifically,

**JOINT STATEMENT RE: DEFENDANT'S DEPOSITION**

by causing his defamatory statements at issue in this lawsuit to be published on the Internet and throughout the United States and by not refuting this Court's personal jurisdiction over him, it is fair to say Defendant has purposely reached into the forum in which the deposition is set to occur – both the Southern District of Florida and the Central District of California.

Finally, the fifth factor considers the equities with regard to the nature of the claim and the parties' relationship and is perhaps the most influential factor in this case. As the Court in *S.E.C. v. Banc de Binary* noted, "[e]stoppel is an equitable principle that precludes a party from asserting something contrary to a previous assertion." *Id*. at *7. In *S.E.C. v. Banc de Binary* the Court noted that the defendant corporation had advertised itself as being based in the United States despite being incorporated in Cyprus, Israel, and the Seychelles, and that "[p]ermitting Banc de Binary to now benefit from its status as a foreign corporation after it has exploited its appearance as an American company would be fundamentally inequitable." (*Id*. at *7.) The Court also noted that the founder of the defendant corporation was an American citizen and that "[c]itizenship includes responsibilities … [including] the obligation to return home and testify at a deposition [citing 28 U.S.C. § 1783]." (*Id*. at *9.) The Court ultimately found in this regard that the defendant deponent:

> [I]s an American citizen who, by virtue of his citizenship, retains certain responsibilities to the country while abroad. It would be fundamentally inequitable to allow [the defendant deponent] to have enjoyed the benefits of his citizenship as he operated his businesses at home, and then excuse him of any associated responsibilities because he happens to live abroad.

*Id*. at *9. This factor is aptly relevant here. Defendant is an American citizen who has numerous business located throughout the United States, took advantage of the First Amendment's freedom of speech and freedom of press to cause his defamatory statements to be published throughout the United States, appeared in this action and admitted in his Answer that he was a resident of Florida (see Dkt. No. 27, at ¶10), and

now is refusing to travel back to the United States to appear for a lawful deposition regarding his actions in the United States. This is grossly inequitable.

The second test is that of the Federal Rules of Civil Procedure, which require a party arguing that a deposition must occur abroad to show compliance with Rule 28(b). (See Fed. R. Civ. Proc., 28(c).) Defendant cannot satisfy Rule 28(b) here and therefore this mitigates against conducting the deposition in Dubai. As set forth in detail below: (1) there is no treaty or convention that the U.A.E. is a member of which provides any authorization for a deposition of a U.S. citizen to occur in Dubai for use in a U.S. lawsuit; (2) the parties would be required to seek permission from the government of the U.A.E. via a letter of request or letter rogatory for the deposition to occur and there is no indication that can or will occur; (3) there is no authority which demonstrates that a deposition can lawfully occur within the U.A.E. before a person authorized to administer oaths under federal law, which must be the governing body of law for any deposition in this matter; and (4) there is no authority to show that a person commissioner by the Court to administer any oaths and take testimony are legally allowed to do so in the U.A.E. for use in a U.S. lawsuit.

Other federal districts have engaged in similar evaluations to determine whether a deposition can lawfully and practically occur in Dubai for use in a U.S. lawsuit. Specifically, *US v. SLH2021 S.A.*, No. 23-2305, 2023 WL 5146470 (E.D. La. Aug. 10, 2023), involved a deponent employee for the defendant that was located in Dubai. The Plaintiff wished to compel the deponent to appear in Louisiana for his deposition where the action was pending, while the defendant argued the deposition should occur where the deponent resided in Dubai. (*Id*.) The Court ultimately ordered the deponent to appear in Louisiana for his deposition after consideration of the following factors: (1) "the absence of any provisions for the taking of witness evidence for use in another jurisdiction in the UAE Code of Civil Procedure"; (2) "the U.S. Department of State's warning to U.S. citizens about traveling in the Gulf and Arabian Peninsula"; (3) "given that this Court has been called upon twice to address discovery disputes in this barely

five-week old case, the need for court intervention during the deposition appears high. With Dubai's 9-hour time difference … locating the depositions [in Dubai] renders it virtually impossible for this Court to intervene should any issues arise during the depositions"; and (4) the fact that the defendant's counsel of record was located and had his principal place of business in the district where the matter was pending in the U.S. *Id*. at *6-7.    These factors are aptly relevant in our case because (1) there are no provisions in the U.A.E.'s Civil Code, Code of Civil Procedure, or Evidence Law pertaining to taking depositions in Dubai for use in the United States; (2) as noted below, the U.S. State Department's level 2 warning and designated threat level regarding travel for U.S. Citizens remains in effect; (3) as noted above, the Court at the October 4, 2024 IDC informed the Parties' counsel that it does not make itself available to resolve discovery disputes that arise during a deposition, so this factor is nullified here; and (4) defense counsel's law firm is located in Westlake Village, California – the same district in which this case is located.

Moreover, *In re Outsidewall Tire Litigation*, 267 F.R.D. 466 (E.D. VA 2010), the Court acknowledged that in determining whether it was appropriate to conduct a deposition of a party in Dubai, several factors must be considered, including whether "some facet of Dubai law might operate to hinder or obstruct plaintiffs in taking the depositions in Dubai" (i.e., the Court noting in *U.S. v. SLH2021* that there is an absence of any provisions for the taking of witness evidence for use in another jurisdiction in the U.A.E. Code of Civil Procedure and not being a party to the Hague Convention on Taking Evidence Abroad in Civil Matters, as outlined below), and "whether defendants' conduct in discovery suggests that they or the deponents will be uncooperative or obstructionist if the depositions occur in Dubai."  Once again, both of these factors are aptly relevant here.

Finally, 28 U.S.C. § 1783 authorizes district courts to order the issuance of a subpoena requiring "a national or resident of the United States who is in a foreign country" to appear before it or a court officer (i.e., deposition reporter) to provide

deposition testimony, if (1) the particular testimony "is necessary in the interest of justice"; and (2) "it is not possible to obtain his testimony in admissible form without his personal appearance." 28 U.S.C. § 1783(a); see also *Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D.N.Y. 2006); *Balk v. New York Institute of Technology*, 974 F.Supp.2d 147 (E.D.N.Y. 2013).   Under this statute, testimony is deemed "necessary" in the "interest of justice" if it is discoverable under the Federal Rules of Civil Procedure.  See *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 523 (D. Colo. 2003).  The testimony of Defendant in this case clearly satisfies this requirement.  Further, given the utter void of any legal authority to support the premise that a deposition of a U.S. citizen for use in the U.S. federal lawsuit can lawfully occur in Dubai (see, *infra*), it is not possible to obtain Defendant's testimony in admissible form without the Court ordering his personal appearance somewhere other than the United Arab Emirates ("U.A.E.").  The decision to issue a subpoena under this statute is left to the Court's sound discretion.  See *Klesch & Co. Ltd.*, 271 F.R.D. at 523.

Unlike the U.A.E., both France[2] and England[3] are signatories to the Hague Convention on Taking Evidence Abroad in Civil Matters[4], and thus each country allows depositions of willing U.S. Citizens to take place in those countries for use in U.S. lawsuits.[56]

---

[2] https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/France.html

[3] https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/UnitedKingdom.html

[4] https://www.hcch.net/en/instruments/specialised-sections/evidence

[5] "Attorneys seeking to depose witnesses in England & Wales . . . can either do so (1) voluntarily by agreement or (2) by compulsion under subpoena by order of the English High Court.  A voluntary deposition can be on terms agreed between the parties, including as to the applicable law and procedure; the parties are at liberty to agree [to] anything they want."  Cooley LLP, *What US Lawyers Should Know About Taking a Deposition in England and Wales* (May 14, 2015), https://www.cooley.com/news/insight/2015/what-us-lawyers-should-know-about-taking-a-deposition-in-england-and-wales

[6] "In England, however, depositions may be conducted or documents procured voluntarily. Where such evidence cannot be obtained by agreement, recourse to an English court is necessary."  Ronald E. Myrick, *Obtaining Evidence Abroad For Use in United States Litigation*, 15 Suffolk Transnat'l L.J. 1 (1991), https://1.next.westlaw.com/Link/Document/FullText?findType=Y&serNum=0102204588&pubNum=0001241&originatingDoc=I710b7cb9b02f11d997b78566edId337f&re

---

11

1  Accordingly, the Court has the power and the discretion to order Defendant's in-person

2  deposition to occur in the United States, or even in France or England.

3          **2.      Plaintiff's Position re: Remote Deposition**

4          With respect to the possibility of conducting Defendant's deposition remotely by

5  videoconferencing, there is also a complete lack of any governing legal authority in

6  Dubai which provides guidance, and the relevant foregoing legal authority must still be

7  complied with.  Unlike the United States, and many other Western countries, such as

8  the United Kingdom and France, the U.A.E. is not a party to the Hague Convention on

9  Taking Evidence Abroad in Civil Matters. As such, the U.A.E. is not bound by

10 international law with respect to the collection of evidence in civil matters in the same

11 way other Hague Convention signatory countries are bound, such as the United States,

12 either for in-person depositions or remote depositions by videoconference.  If they were,

13 then their specific agreements and procedures for conducting such discovery in the

14 U.A.E. would be clearly defined.  It is not.  For instance, in 2018 the Hague Convention

15 released a synopsis of responses from signatory countries to the Hague Convention on

16 Evidence regarding the procedures they recognize and accept for taking evidence by

17 video-link (i.e., virtual depositions).  This document clearly defines each signatory

18 country's accepted procedures.  Plaintiff's counsel has been unable to locate any such

19 set of procedures that the U.A.E. accepts for remote depositions by videoconference.

20 This is concerning because even if Defendant's deposition were to occur remotely by

21 videoconference while he is in Dubai, Fed. R. Civ. Proc. 30(b)(4) provides that a

22 deposition by remote means is deemed to "take place where the deponent answers the

23 questions." Which means by conducting a remote deposition with the deponent in

24 Dubai, the Parties would be subjecting themselves to the laws and procedures in Dubai,

25 which, as described above, has no procedures for collecting evidence for foreign

26 litigation.  Moreover, Fed. R. Civ. Proc. 28 recognizes that in some countries it is

27 _____

28 fType=LR&originationContext=document&transitionType=DocumentItem&ppcid=d
   7ac2fd1fa8044f1b7c6924f8bc583e3&contextData=(sc.Search)#co_pp_sp_1241_8

1  customary not to place a deponent under oath or to take a verbatim transcript. That is

2  simply not an option here and Plaintiff has no legal authority showing Dubai will allow

3  a deposition to occur within its borders under the procedures required in United States

4  Federal Court cases, such as this.

5      Additionally, the Court noted in *S.E.C. v. Banc de Binary* that "[i]f the parties

6  stipulate to videoconferencing, they are ordered to comply with Rule 28(b) to avoid

7  infringing in Cyprus, Israel, or the Republic of Seychelles' judicial sovereignty."

8  *S.E.C.*, 2014 WL 1030862 at *11, fn. 16.   While not binding in this case, given

9  Defendant's inability to show that the parties can conduct a deposition in Dubai that

10  complies with Rule 28(b), as noted above, this mitigates against conducting a remote

11  deposition by videoconference while Defendant is located in Dubai.   Moreover, as set

12  forth in detail below, there is no body of law that prescribes what procedures the U.A.E.

13  authorizes for conducting a remote deposition of a U.S. citizen in Dubai for use in a

14  U.S. lawsuit.   Further, the case *U.S. v. Fargesen*, No. 21-cr-602, 2022 WL 16647005

15  (S.D.N.Y. Nov. 3, 2022) shows that in order to take the deposition of two defendants

16  located in Dubai by remote means, the prosecutors were required to send a Letter

17  Rogatory to the U.A.E. government to ask their permission under the condition that the

18  deposition must occur at the U.S. Embassy in the U.A.E.   This further emphasizes the

19  complexity of conducting a remote deposition with Defendant located in Dubai.

20      Further, at Plaintiff's remote deposition, defense counsel repeatedly stopped the

21  deposition without notice to call his client and ask for additional questions, thereby

22  making Plaintiff, his counsel, and the court reporter all wait for indefinite periods of

23  time while Defendant coached his own attorney.   Plaintiff would like to avoid this and

24  an in-person deposition, regardless of the location, would obviate these concerns.

25  Regardless, despite the increase in use of remote depositions recently "[i]n-person

26  depositions are [still] the preferred course[.]" *Vasquez v. Draper and Kramer Mortgage

27  Corp.*, No. 20-cv-06635-YGR, 2021 WL 229313 at *5, fn. 4 (N.D. Cal. Jan. 22, 2021);

28  see also *Pirtle v. Netflix, Inc.*, 2024 WL 99072 at *4 (C.D. Cal. Feb. 16, 2024).

Additionally, in a defamation case such as this where Defendant's propensity to engage in dishonesty and to lie are directly at issue, Plaintiff has a significant and valid interest in conducting the deposition in-person so that Defendant's reactions, facial expressions, and body language can be more readily and clearly observed. In addition, during the deposition of Mr. Biden, plaintiff and his counsel were in communications "off line" on various occasions. A remote deposition of a party allows this sort of interaction to occur which would not be known or possible in person. If the Defendant is ordered to travel for his deposition, then an in-person deposition of Defendant in whatever location he is ordered to travel to is Plaintiff's preferred course of action.

### 3.    Plaintiff's Response to Defendant's Position

Defendant has maintained for nearly a month now that he has moved his permanent residence to Dubai out of fear for his life and, as a result, Plaintiff must either travel to Dubai to take his deposition or Plaintiff must capitulate to conducting Defendant's deposition by remote means, despite the lack of legal authority authorizing such a deposition to occur in Dubai of a U.S. citizen for use in a U.S. lawsuit. In this regard, after weeks of discussions regarding the scheduling of Defendant's deposition, counsel for Defendant made written representations to Plaintiff's counsel for the first time on September 11, 2024 that Defendant had moved his permanent residence to Dubai, United Arab Emirates ("U.A.E."), and could not travel to the United States for his deposition because he "was recently notified by the United States DEA that the Venezuelan government has a $25,000,000 on his head." (See Exhibit 1.) Then, at the September 18, 2024 IDC, defense counsel made the same representations to the Court, this time on the record: "[Defendant] had been involved in some covert activities in Venezuela, and he was informed by the DEA that there is a $20 million bounty on his head, and he also had been receiving death threats because of that activity." (See Exhibit 2 ("September 18 IDC Trans."), at 7:9-15.) At the September 18 IDC, the Court then ordered Defendant to "submit a declaration as to where he is currently located, as to whether he has any plans to be anywhere within the United States between today and

the date the case sets for trial and stating the reason why he cannot return to the United States between now and then and provide the identifying information and contact information for whoever it is that has conveyed to him that he should not return to the United States between now and the trial[.]"  (See September 18 IDC Trans., at 18:15-25.)

However, in violation of the Court's Order, Defendant's court-ordered Declaration did not even mention the DEA, nor did it provide any additional details about his Venezuela claim, and it did not provide any identifying information or contact information for anyone sufficient to allow Plaintiff to confirm Defendant's claims in this regard.  Instead, for the first time, and in direct contrast with defense counsel's prior claims to Plaintiff's counsel and to the Court, Defendant's declaration now states that in August 2024, Defendant was in Ghana cooperating with an official with the Ghanian Ministry of Security who informed Defendant that "criminals in West Africa were cooperating to get me in a position where I could be kidnapped."  Defendant further states that in addition to news about the West African kidnapping scheme, Defendant was also informed that Venezuela was attempting to kidnap him and had put a $25,000,000 bounty on his head.  Defendant then states in his declaration that when he finished his travels he decided not to return to the United States because local police in the United States "cannot provide me with the safety I need for my personal safety", so he moved to Dubai and does not plan to return to the United States "anytime between now and November 10, 2024."  (See Defendant's Declaration.)

Accordingly, Defendant failed to state that he will not be returning to the United States any time before trial and failed to provide identifying and contact information for whomever informed Defendant of the information which forms the basis of his claims that he cannot return to the United States.  Notably, at the September 18 IDC, defense counsel specifically represented to the Court that "[w]ith respect to [Defendant] coming back, obviously, he'll be back here for trial[.]"  (September 18 IDC Trans., at 8:15-16.)  As such, to date, Defendant has failed to provide sufficient reliable and verifiable

evidentiary support to his claims that form the basis for his demand to have the deposition occur in Dubai and his refusal to travel to the United States for the deposition. As a result, Plaintiff is left with the options of accepting the claims of a defendant whose propensity to be dishonest and to lie is directly at issue in this case and proceeding with a deposition in Dubai despite no legal authority demonstrating that to do so is legal or proper, as shown below, or to insist on an alternative location for the in-person deposition to occur legally.

With respect to the Parties' applicable research regarding the legality of conducting a deposition in Dubai, at the September 18 IDC, the Court asked defense counsel whether he had performed any research into the laws pertaining to conducting a deposition in Dubai, either in-person or by videoconference, to which defense counsel said he had. (September 18 IDC Trans., at 9:21-10:21.) However, when he produced this "research" to Plaintiff's counsel on September 20 and September 23, defense counsel's research was comprised of two different business marketing pamphlets for deposition servicing companies in Dubai that did not contain citations to any laws or legal authority whatsoever, and a third marketing pamphlet for a travel agency advertising tourism in Dubai, which apparently was meant to prove it was safe for U.S. Citizens to travel to Dubai. (See Exhibit 3.) These advertising pamphlets come up as the initial "search results" in a simple Internet search on Google. No other legal research was, or has since been, produced by Defendant's counsel in this regard.

Instead, Defendant now submits the Declaration of Kimberlee Carmen ("Ms. Carmen"), from Optima Juris International Deposition Agency, which was one of the companies Defendant initially provided a marketing pamphlet for in support of his argument at the October 4, 2024 Informal Discovery Conference. First, it should be noted that Ms. Carmen's declaration does not contain citations to any legal authority, nor does it include an attestation that Ms. Carmen is a legal professional. Instead this declaration is being made by an employee of a for-profit company about its own capabilities to arrange depositions abroad to solicit clients, which makes it unreliably

biased.  As such, just like the marketing pamphlets Defendant submitted previously, Ms. Carmen's declaration has zero legal relevance whatsoever.    However, this declaration does further underscore Plaintiff's argument here because Ms. Carmen confirmed that the research she and her company do to confirm whether depositions can legally occur in Dubai for use in the United States District Courts is limited to simply checking the U.S. State Department's website to review the applicable rules and procedures that each country requires.  Plaintiff's counsel already reviewed the U.S. State Department's webpage for the U.A.E. at the very beginning of this research and found it to be unhelpful.  In fact, Ms. Carmen confirmed what Plaintiff's counsel already knew, that there are no Hague Convention requirements that apply (because the U.A.E. is not a signatory) and there are no rules, laws, or procedures for taking a deposition in Dubai for use in a U.S. lawsuit.  This is exactly Plaintiff's point.  There are no laws or procedures in Dubai which provide clarity as to the legality of conducting a deposition there, either in-person or remotely, and the Parties simply cannot proceed in that regard without this much needed clarification.  Accordingly, none of the marketing materials Defendant has submitted to date provide any legal, relevant ,or reliable basis to confirm defense counsel's claims that a deposition can legally or logistically occur in Dubai for use in a U.S. lawsuit, either in-person or virtually by videoconference.

The research Plaintiff's counsel has conducted, however, and that was provided to defense counsel on September 20, 2024, demonstrates that: (1) there are no laws or procedures in Dubai regarding conducting depositions in Dubai for use in a foreign lawsuit, let alone such legal authority which authorizes the same; (2) there is no body of international law which provides any guidance in this regard; and (3) serious safety implications exist for U.S. citizens traveling to Dubai currently (and the region generally).    In fact, relevant case law from multiple federal districts indicates that conducting a deposition in Dubai for a lawsuit pending in the United States is not practical and various important factors must be considered[7].  Plaintiff's research also

---

[7] See *S.E.C. v. Banc de Binary*, No. 2:13-cv-993-RCJ-VCF, 2014 WL 1030862 (D. Nev.

confirmed that the U.A.E. has: (1) no applicable laws or procedures regarding the collection of evidence in the UAE to support foreign litigation; (2) no applicable laws or procedures available to obtain evidence from a witness in the UAE; and (3) no laws or procedures to enforce a request from a foreign court for witness or documentary evidence in the U.A.E.  In fact, from the legal authorities Plaintiff's counsel reviewed on this issue, it is clear that the U.A.E. does not recognize the procedures for depositions in the same manner that courts in the United States do, or other Western countries do. The word "deposition" or "oral testimony" do not appear in the U.A.E.'s Civil Procedure Code (UAE Law No. 11 of 1992), Evidence Law (UAE Law No. 10 of 1992), or Civil Code (UAE Law No. 5 of 1985).

Additionally, the document attached hereto as "Exhibit 4" is titled "Rules of evidence including crossborder evidence in civil proceedings Q&A United Arab Emirates" and was prepared by an international law firm, Bird & Bird LLP.  Exhibit 4 lists several questions and responses starting on page 8 regarding the U.A.E.'s procedures for allowing evidence to be obtained in the U.A.E. specifically for the purpose of being used in a foreign litigation.  The U.A.E.'s response to almost every such question is "The UAE is not a party to the Hague Evidence Convention" or other vague statements confirming the U.A.E. has no applicable procedures or laws authorizing such evidence collection.

There are also safety implications that must be considered as well. Currently the U.S. State Department lists the U.A.E. as a Level 2 threat for U.S. citizens traveling abroad and has issued a travel advisory in this regard citing the "threat of missile or drone attacks and terrorism." (See U.S. State Dep't page for U.A.E. travel, *available at* https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/UnitedArabEmirates.html). These are unnecessary safety risks that are perhaps the most important considerations, especially in light of the

Mar. 14, 2024), *US v. SLH2021 S.A.*, No. 23-2305, 2023 WL 5146470 (E.D. La. Aug. 10, 2023) and *In re Outsidewall Tire Litigation*, 267 F.R.D. 466 (E.D. VA 2010).

1    ongoing international conflicts that are occurring in the Middle East (Dubai is located
2    about 100 miles across the Persian Gulf from Iran).

3        When Plaintiff recently proposed to Defendant a stipulation to conduct his in-
4    person deposition in either London, England or Paris, France, Defendant refused. (See
5    Exhibit 5.)  In doing so, defense counsel reiterated the false claim that permission must
6    be obtained from the French and English governments to conduct a deposition in either
7    country.  While such permission is required for deposing French or English citizens or
8    nationals in either country, the research Plaintiff set forth above shows that the
9    deposition of a witness who is a U.S. citizen and is voluntarily appearing for their
10   deposition, may be conducted pursuant to stipulation to abide by the Federal Rules of
11   Civil Procedure without the need for any such government approval.  Defendant's
12   Exhibits "A" and "B" in support of his claim that such permission must be obtained are
13   red-herrings.  On page two of both Exhibits "A" and "B" the drop-down tab for
14   "Obtaining Evidence in Civil and Commercial Matters" is opened and referenced by
15   Defendant, however, just below that the drop-down tab for "Taking Voluntary
16   Depositions of Willing Witnesses" is not opened and is in fact the portion that clearly
17   states that voluntary depositions of a witness may occur in either country without
18   additional formalities.  Plaintiff cited to both of these same websites in footnotes 2 and
19   3 above (see, *supra*, pg. 8, at fn. 2-3) and provided links thereto for the Court to view
20   for itself.  If the Parties were to agree for the deposition of Defendant to occur in either
21   location, then it would qualify as the taking of a "voluntary deposition of a willing
22   witness" and none of the formalities Defendant cites to under the Hague Convention
23   would be required; rather the Parties could simply proceed on stipulation to abide by
24   the Federal Rules of Civil Procedure, Federal Rules of Evidence, and Central District
25   of California local Rules.  Moreover, attorneys in Plaintiff's counsel's offices located
26   in both Paris, France and London, England have confirmed this informal procedure
27   without foreign court or government involvement occurs often in complete compliance
28   with the laws of those countries.

We have no similar confirmation for the U.A.E.  Instead, once again, defense counsel maintains that a deposition can occur in Dubai without any formalities, which as set forth previously herein, is a position without any evidentiary support and is contrary to the vast amount of authority cited by Plaintiff herein.  Also, Defendant's position that the Court has the ability to order the deposition to occur in Dubai, or remotely with Defendant located in Dubai, assumes there is the required legal authority showing that a deposition of a U.S. citizen for use in a U.S. Federal lawsuit can legally occur in Dubai, either in-person or remotely via Zoom.  However, to date Defendant has failed to produce any such legal authority and thus his arguments in that regard are nullified thereby.

Additionally, defense counsel claimed he would not agree to a deposition in either England or France because Plaintiff did not offer to pay for his travel fees.  It should be noted that while Defendant offered to pay upwards of $70,000 to $80,000 to pay for Plaintiff's counsel, a court reporter, and videographer to travel to Dubai and take his deposition his deposition, if he had accepted Plaintiff's proposal he would only be paying for himself and his attorney to travel to France or England, thereby saving thousands of dollars.  Also, this proposal would allow more of Plaintiff's attorneys to attend (Defendant only offered to pay for one attorney for Plaintiff to fly to Dubai), would generally be more convenient for all involved, and would locate the deposition in a western country that recognizes U.S. litigation procedures.  Finally, once again defense counsel insisted the deposition of Defendant occur remotely via zoom with Defendant in Dubai and counsel for the Parties located in the United States.  And once again, defense counsel has still failed to provide any legal authority which shows it is both legal and practical to conduct such a remote deposition in Dubai.  Without such authority, this is simply not an option at this time.  Plaintiff would also like to avoid any coaching of the witness that a remote deposition would make possible, which occurred during Plaintiff's deposition, as noted previously herein.

Next, Defendant's response to Plaintiff's positions is comprised of

**JOINT STATEMENT RE: DEFENDANT'S DEPOSITION**

misrepresentations of Plaintiff's research and the facts, as well as improper assumptions apparently meant to fill in the gaps left by the lack of legal authority on this issue as Defendant sees fit.  Defendant's argument that this issue is the result of Plaintiff's delay tactics could not be further from the truth as the record clearly shows Plaintiff's counsel has been diligently pursuing scheduling this deposition since August 20, 2024, and their efforts have been stymied by Defendant's own delays, particularly their failure to inform Plaintiff's counsel that Defendant moved to Dubai until nearly a month later on September 11, 2024.  Moreover, Defendant's claim that he has been delayed in filing a motion for summary judgment because his own deposition has not occurred is a red-herring because defense counsel could very easily obtain a declaration from his client stating all facts he would need to support such a motion.  It is Plaintiff that is being prejudiced by the ongoing delays in scheduling Defendant's deposition – not Defendant. Likewise, Defendant's claims that Plaintiff has not submitted any new research or legal authority than that which was submitted prior to the October 4, 2024 Informal Discovery Conference is clearly false, as a simple review of Plaintiff's positions makes clear.  In this additional research, contrary to Defendant's claims, Plaintiff does in fact address Fed. R. Civ. Proc. Rule 28(b) in depth and does address each of the various methods for taking a deposition set forth thereunder.  Plaintiff also sets forth extensive case law and analysis that is directly relevant to this issue.  Plaintiff also never states the Hague Convention rules must be followed for a deposition in Dubai.  Rather, Plaintiff's entire argument is based on the fact that no such laws exist and the Hague Convention does not apply.  In addition, Defendant takes the quantum leap in reasoning to conclude that because the U.A.E. is not a signatory to the Hague Convention this means there are no laws or rules in the U.A.E. pertaining to taking depositions of U.S. citizens to be used in a U.S. Federal lawsuit.  Defendant has utterly failed to produce any actual relevant, applicable legal research to support this argument.

Finally, Defendant's claim that because Plaintiff's deposition was taken remotely, Defendant's deposition should be taken remotely too misstates the factual

**JOINT STATEMENT RE: DEFENDANT'S DEPOSITION**

record.  The reason why Plaintiff's deposition was held remotely was to streamline the scheduling of his deposition prior to the start of his criminal trial in September as Defendant demanded, and the Court ordered the deposition of Plaintiff to be held remotely so as to accomplish this end at the first Informal Discovery Conference in this matter.  As such, the scheduling of Defendant's deposition cannot in good faith be compared to Plaintiff's deposition scheduling because these two issues are predicated on different facts and circumstances.

Accordingly, Plaintiff maintains that Defendant's deposition should occur in-person in the United States, or alternatively, at the offices of Winston & Strawn LLP located in either Paris, France or London, England.  "'Although the federal rules do not prevent plaintiff's designating any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment.'" (*Willis v. Mullins,* No. CV F 04-6542 AWILJO, 2006 WL 302343 (E.D. Cal. Feb. 8, 2006) [quoting *Grey v. Continental Marketing Assocs.*, 315 F.Supp. 826, 832 (N.D. Ga. 1970)].)  If the parties cannot resolve any disputes regarding a party's deposition, "[t]he Court is permitted to exercise broad discretion in determining the appropriate place for examination[.]" (*Turner*, *supra*, 119 F.R.D. at 383.)  All of the legal, equitable, safety, and practical factors outlined above are real-world considerations that must be taken into account and which the marketing pamphlets defense counsel provided as his "research" into the laws and procedures in Dubai do not address.  In the end, Dubai is simply not a practical location for Defendant's deposition, either in-person or remotely, for the reasons stated herein and the Court should order the deposition to occur either in the United States or at Winston & Strawn LLP's offices in Paris, France or London, England.

**B.    DEFENDANT'S POSITIONS:**

Generally, when one party to a U.S. litigation case seeks evidence from another party, the Federal Rules of Civil Procedure govern, even when the evidence is located in a foreign jurisdiction. (*Societe Nationale Industrielle Aeropatiale v. U.S. Dist. Ct.*

*S.D. Iowa* 482 U.S. 522 (1987); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee* 105 FRD 435, 445 (S.D.N.Y. 1984).

The Hague Convention is an international treaty designed to facilitate the taking of evidence abroad. The Hague Convention streamlines the procedures for seeking evidence abroad using the United States Courts to request evidence taking procedure such as depositions with letters rogatory that are sent directly to the foreign country's designated authority and to allow the bypass of diplomatic channels. These discovery procedures for those countries that are parties to the Hague Convention Treaty are set forth on the United States State Department website. The letters rogatory issued by the Federal Court and that are required by the Hague Convention applicable to a foreign country that is a signatory on the treaty are issued pursuant to 28 U.S.C. Sec. 1781 and Federal Rule of Civil Procedure Section 28(b). They are then provided to the designated authority. The State Department currently estimates that it could take up to six months to a year, depending on the country, to obtain permission to obtain evidence such as a deposition in that applicable country.

The United States Department of State publishes Legal Assistance Information for each country on their procedures under the Hague Convention to conduct discovery in that country. Pursuant to Federal Rule of Evidence 201(b), this court is requested to take judicial notice of Exhibit "A" which contains the United States State Department Judicial Assistance Information for the Hague Convention procedures for the taking of depositions in the United Kingdom. This court is requested to take judicial pursuant to Federal Rule of Civil Procedure 201(b) of Exhibit "B" which contains the United States State Department Judicial Assistance Information for the Hague Convention procedures for the taking of depositions in France and Exhibit "C" which contains the United States State Department Judicial Assistance Information for taking depositions in the United Arab Emirates in Dubai which is not a signatory to the Hague Convention and where there are no formal procedures that must be followed to take depositions in Dubai.

As the court can see, the United Kingdom and France are signatories of the Hague

Convention. They require letters rogatory and strict procedures that must be followed to obtain those two country's consents to take depositions involving a witness or party in a United States civil case in that country. It could take weeks if not months to obtain the consents from France or the United Kingdom to take depositions in their countries involving a United States Court civil case. No such requirements exist for the United Arab Emirates for the taking of depositions in Dubai because it is not a signatory or party to the Hague Convention Treaty.

Unless the district court is required to use the Hague Convention procedures to obtain discovery in a foreign country, discovery may be obtained from persons outside the United States under appropriate provisions of the Federal Rules of Civil Procedure. More specifically, under Federal Rule of Civil Procedure 28, the court can order the taking of a deposition abroad either by following the Hague Conventional Rules, **or** before a commissioned person by the court; **or** pursuant to letters of request (rogatory), **or** under notice before a person authorized to administer oaths (court reporter) where the deposition is being held. (*Federal Rule of Civil Procedure* 28(b)(1).)

A district court may order the issuance of a subpoena requiring a U.S. national or resident to return to the U.S. to testify before the district court or any person or body designated by the court. Such an order may be issued upon findings that particular testimony is necessary in the interest of justice, **and** it is **not** possible to obtain his testimony in admissible form without his personal appearance. (28 U.S.C. Sec. 1783(a).) The court must order travel expenses be tendered to the deponent with the service of the subpoena.

The district court has the discretion to deny issuance of a Section 1783(a) subpoena if it finds that the interests of justice can be served by a deposition in a foreign country. Legislative history shows that Section 1783(a) was intended to guarantee not only that in proper cases a subpoena will always be available, but also that burdens upon U.S. citizens and residents abroad will not be imposed without a compelling reason. (*United States v. Johnson* (9th Cir. 1984) 735 F.2d 1200, 1202.) Normally, a defendant

must be deposed where he resides and if another place is requested or designated, Defendant's objections to the location designated by Plaintiff should be sustained absent some unusual circumstances to justify putting defendant to such inconvenience. (*Grey v. Continental Marketing Assocs., Inc.* (ND GA 1970) 315 F. Supp. 832.)

As was previously mentioned, the <u>Federal Rules of Civil Procedure</u> govern depositions to be taken in a foreign jurisdiction. (*Societe Nationale Industrielle Aeropatiale v. U.S. Dist. Ct. S.D. Iowa* 482 U.S. 522 (1987); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee* 105 FRD 435, 445 (S.D.N.Y. 1984). Therefore, under <u>Federal Rule of Civil Procedure</u> 30(b)(4), this court can order that the deposition of Defendant who resides in Dubai can be taken remotely and using zoom.

Generally, there is good cause for the court to order a remote zoom deposition procedure for the taking of a deposition when the plaintiff will not be prejudiced and there is a desire to save attorney's fees and costs that would otherwise be incurred using a normal deposition procedure such as an in-person deposition procedure. (*Federal Rule of Civil Procedure* 30(b)(4); *Estate of Gerasimenko v. Cape Wind Trading Co.* (SD NY 2011) 385, 390; *Cressler v. Neuenschwander* (D KS 1996) 170 FRD 20, 21.

On October 4, 2024, this court ruled that Defendant resides in Dubai. The defendant has agreed to be deposed in person in Dubai. He has agreed to pay for one of Plaintiff's lawyers and the deposition professionals' travel expenses, accommodation, and travel time to go to Dubai to depose him there but not including the time spent at his deposition. Since Dubai is not a member of the Hague Convention treaty and is not bound by its procedures, Defendant's deposition can be taken right away. Defendant agrees that the Federal Rules of Civil Procedure and the Federal Rules of Evidence govern his deposition to be taken in Dubai. He also agrees that the deposition transcript of his deposition can be used as evidence during the trial of this case.

Alternatively, **and as his first choice**, Defendant requests that the court order a zoom deposition of Defendant. The defendant agrees that the Federal Rules of Civil Procedure and the Federal Rules of Evidence govern his deposition taken in Dubai. He

also agrees that the deposition transcript of his deposition can be used as evidence during the trial of this case. The Plaintiff's deposition was taken by zoom. The parties and counsel will save a lot of money on attorney's fees, costs, and travel time by taking Defendant's deposition by zoom. The deposition can also be taken right away and without the long delay that would be caused trying to take it in France or the United Kingdom with the required strict compliance with the Hague Treaty rules or with some delay to make travel arrangements to Dubai.

Plaintiff wants the Defendant to come to the United States or possibly France or the United Kingdom to be deposed in person. The Plaintiff has not demonstrated a willingness at any time during these proceedings to pay Defendant's and his counsel's attorney time and travel expenses to leave Dubai and go elsewhere for the taking of his deposition. Both England and France have complicated and time-consuming Hague Convention rules that must be complied with to take a deposition in those countries and it remains to be seen if Defendant can be compelled to attend a deposition in either country where he does not reside in either France or the United Kingdom. Plaintiff has not shown how or why an in-person deposition of Defendant is more effective all around than simply taking it by zoom. Use of Zoom technology is very effective in cross-examining a witness or party during a deposition as well as using exhibits either in the share function of the program or using the chat function on Zoom. Court reporters and videographers are well trained to assist with the taking of Zoom depositions.

What this is all about is Plaintiff's and his counsel's stall and delay tactics. They want to hinder and impair the motion for summary judgment the Defendant intends to file as soon as these deposition issues are resolved by the court.

On August 17, 2024, Defendant's counsel sent Plaintiff's counsel an e-mail and notified him that pursuant to FRCP 56 that Defendant intended to bring a motion for summary judgment and/or for summary adjudication of issues. They have known for almost two months of Defendant's intent to proceed with his motion for summary judgment. In response, Plaintiff has not reasonably cooperated and has not acted

promptly to take Defendant's deposition using the easiest, most efficient, and most cost-effective method to depose Defendant. Instead, they have proposed taking an in-person deposition of Defendant using the most time consuming and expensive methods of deposing him which requires compliance with complicated Hague Convention rules and foreign country rules, travel and substantial expense of the parties in attorney's fees, accommodations, travel expenses and costs while also hoping to use their self-imposed delay to try and block Defendant's motion for summary judgment because they have not taken Defendant's although this case has been pending for almost ten months.

Submitted with this Brief is the Declaration of Kimberly Carman who is the Director of Operations for Optima Juris International Deposition Agency which specializes in setting up and helping its customers take international depositions. The court is requested to review and consider that Declaration. The court is also respectfully requested to order that Defendant's deposition be taken by zoom or alternatively and an in-person deposition be taken of Defendant in Dubai where he resides.

### 1.    Defendant's Reply to Plaintiff's Positions

In preparing his positions above, all that Plaintiff did was take his previous briefing that was filed with the court and cut and pasted it into this document. It is repetitive of the previous briefing and does not contain much in the way of new argument and law that the court requested to address the issue of how and where Defendant's deposition should be taken. The reason little to no real new law and argument has been submitted by Plaintiff is because the actual laws and rules applicable to Defendant's deposition are not helpful to Plaintiff's positions.

First, Plaintiff ignores the court's clear ruling at the last hearing that Defendant resides in Dubai. Plaintiff makes argument without any supporting evidence that Defendant does not live in Dubai but some other states in the United States.

Second, Plaintiff admits that Defendant is entitled to be deposed where he resides and cites the case of <u>Fausto v. Credigy Serv. Corp.</u> 251 F.R.D. 427, 429 (N.D. Cal. 2008) in support of that admission. Defendant's objections to a location other than the

location of his residence should be sustained absent some unusual circumstances to justify putting Defendant to such inconvenience. (*Grey v. Continental Marketing Associates, Inc.* (ND GA 1970) 315 F. Supp. 832.

Then the Plaintiff falsely contends that the law is silent with regard to choosing the location where the defendant is to be deposed but ignores altogether the provisions of <u>Federal Rule of Civil Procedure</u> 28(b) which sets forth the rules for the taking of the deposition of a party or witness that lives abroad.

Third, Plaintiff suggests that if the United Arab Emeritas is not a signatory to the Hague Convention that Defendant's deposition cannot be taken in Dubais when (a) the United States State Department website (Exhibit "C") shows that there are no rules or laws pertaining to the United Arab Emeritas including the Hague Convention which actually impairs the taking of Defendant's deposition in Dubai. (See concurrently filed Declaration of Kimberly Carman).

Fourth, Plaintiff admits that the court can issue a subpoena requiring Defendant to come here for his deposition under 28 U.S.C. 1783, but he ignores the provisions of this code that require Plaintiff to pay for Defendant's travel expenses to come here which he is unwilling to pay. Moreover, the Legislative history of Section 1783 was intended to guarantee that the burdens imposed by such a subpoena will not be imposed without a compelling reason and when a Defendant's deposition can be taken instead where he resides. (*United States v. Johnson* (9th Cir. 1984) 735 F.2d 1200, 1202.) Defendant has agreed that his deposition if taken in Dubai will be governed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence and the deposition transcript is admissible and can be used during the trial of this case.

Plaintiff falsely claims that the Hague Convention rules must be followed to take a deposition in Dubai and cites to <u>Federal Rule of Civil Procedure</u> 28(b). However, that code section has not been properly or fairly cited by Plaintiff. Under <u>Federal Rule of Civil Procedure</u> 28, the court can order the taking of a deposition abroad either by following the Hague Conventional Rules, ***or*** before a commissioned person by the

court; **or** pursuant to letters of request (rogatory), **_or_** under notice before a person authorized to administer oaths (court reporter) where the deposition is being held. (*Federal Rule of Civil Procedure* 28(b)(1).)

There is no need to follow Hague Convention rules if there are none. There is no need for letters rogatory unless required by a country's rules. The court does not need to order commission a person to take a deposition overseas. The court can simply order a deposition taken in a foreign country by a court reporter authorized to administer oaths in this case and to go to where the deposition is being held to take it. (*Federal Rule of Civil Procedure* 28(b)(1).

Plaintiff chose to cut and paste old arguments in previous briefs instead of even attempting to determine if in fact there are any rules or Hague Convention requirements that must be met and with the court required to issue a letter rogatory for Defendant's Deposition to be taken in Dubai. Exhibit "C" to Defendant's deposition and for which this court has been requested to take Judicial Notice pursuant to Rule of Evidence 201(b) which is the United States State Department's publication on the requirements to take a deposition in Dubai confirms there are no Hague Convention requirements or United Arab Emirates rules that must be complied with for the court to order a court reporter authorized to issue the oath to go to Dubai and take Defendant's in person deposition.

The Declaration of Kimberly Carman who is the Director of Operations Juris International Depositions also confirms that nothing is required to take a deposition in Dubai other than travel plans, bringing a court reporter authorized to administer the oath to record the deposition and then going there to take it. She confirms that there are no local rules or laws or Hague Convention requirements to take a deposition in Dubai. She has been involved in the setting up of the taking of hundreds of depositions in Dubai including for cases that are United States Court civil litigation cases. She relies on the United States State Department website publication which she always uses to schedule depositions in foreign countries to ensure that all rules of the foreign jurisdiction are

29

1  complied with including Hague Convention rules.

2  As was previously mentioned, the Federal Rules of Civil Procedure govern

3  depositions to be taken in a foreign jurisdiction. (*Societe Nationale Industrielle*

4  *Aeropatiale v. U.S. Dist. Ct. S.D. Iowa* 482 U.S. 522 (1987); *Int'l Soc'y for Krishna*

5  *Consciousness, Inc. v. Lee* 105 FRD 435, 445 (S.D.N.Y. 1984). Therefore, under

6  Federal Rule of Civil Procedure 30(b)(4), this court can order that the deposition of

7  Defendant who resides in Dubai can be taken remotely and using zoom.

8  Plaintiff does not deny that Federal Rule of Civil Procedure 30(b)(4) can be used

9  by the court in this court to order Defendant's deposition by zoom. Defendant has

10  agreed that the deposition will be governed by the Federal Rules of Civil Procedure, the

11  Federal Rules of Evidence and the deposition transcript is admissible and can be used

12  during the trial of this case.

13  Finally, Plaintiff argues that equities should apply in the court's decision but

14  Plaintiff only wants all equities to militate in his favor. He does not want to pay for

15  Defendant's travel expenses or for the travel time and expenses of Defendant's counsel.

16  Plaintiff's deposition was taken by zoom to enable Plaintiff to save thousands of dollars

17  in attorney's fees and costs. The sole reason Plaintiff wants to force Defendant to travel

18  is run up his costs. Plaintiff infers that he wants an in-person deposition of Defendant

19  so his counsel can confront him but does not explain how Defendant's counsel was

20  hindered in his ability to depose Plaintiff which was not hindered by a zoom deposition.

21  Defendant should be given in equity the same opportunity Plaintiff had to be deposed

22  by zoom to save him thousands of dollars in costs and attorney's fees.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**JOINT STATEMENT RE: DEFENDANT'S DEPOSITION**

1   Dated:  October 9, 2024                    EARLY SULLIVAN WRIGHT GIZER
2                                              & MCRAE LLP

3

4                              By:   */s/Zachary C. Hansen*

5                                    BRYAN M. SULLIVAN (State Bar No.
6                                    209743)
                                     bsullivan@earlysullivan.com
7                                    ZACHARY C. HANSEN (State Bar No.
                                     325128)
8                                    zhansen@earlysullivan.com
                                     EARLY SULLIVAN WRIGHT GIZER
9                                    & McRAE LLP
                                     6420 Wilshire Boulevard, 17th Fl.
10                                   Los Angeles, California 90048
                                     Telephone: (323) 301-4660
11                                   Facsimile: (323) 301-4676

12                                   PAUL B. SALVATY (State Bar No.
13                                   171507)
                                     PSalvaty@winston.com
14                                   WINSTON & STRAWN LLP
                                     333 S. Grand Ave., 38th Fl.
15                                   Los Angeles, CA 90071-1543
                                     Telephone:   (213) 615-1700
16                                   Facsimile:   (213) 615-1750

17                                   ABBE DAVID LOWELL (*pro hac vice*
                                     forthcoming)
18                                   AbbeLowellPublicOutreach@winston.com
19                                   WINSTON & STRAWN LLP
                                     1901 L St., N.W.
20                                   Washington, D.C. 20036-3508
                                     Telephone:   (202) 282-5000
21                                   Facsimile:   (202) 282-5100
                                     *Attorneys for Plaintiff Robert Hunter*
22                                   *Biden*

23   Dated: October 9, 2024                    LAW OFFICES OF MICHAEL C.
                                               MURPHY
24

25                                   */s/ Michael C. Murphy*

26                                   Michael C. Murphy, Esq.
27                                   Michael C. Murphy, Jr., Esq.
                                     *Attorneys for Defendant,*
28                                   *Patrick Byrne*

31

**JOINT STATEMENT RE: DEFENDANT'S DEPOSITION**