# EXHIBIT 2

```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                   WESTERN DIVISION - LOS ANGELES

 3

 4   ROBERT HUNTER BIDEN,           )  Case No. CV 23-9430-SVW (PDx)
                                    )
 5         Plaintiff,               )  Los Angeles, California
                                    )  Wednesday, September 18, 2024
 6            v.                    )  3:33 P.M. to 4:45 P.M.
                                    )
 7   PATRICK M. BYRNE,              )  VIDEOCONFERENCE
                                    )
 8         Defendant.               )
     _____)

 9

10

11

12

13                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE PATRICIA DONAHUE
14                UNITED STATES MAGISTRATE JUDGE

15

16   Appearances:                   See Page 2

17   Deputy Clerk:                   Isabel Verduzco

18   Court Reporter:                 Recorded; CourtSmart

19   Transcription Service:          JAMS Certified Transcription
                                     16000 Ventura Boulevard #1010
20                                   Encino, California  91436
                                     (661) 609-4528
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
1   APPEARANCES:

2

3   For the Plaintiff:        Early Sullivan Wright Gizer and McRae
                              By:  ZACHARY HANSEN
4                             6420 Wilshire Boulevard, 17th Floor
                              Los Angeles, California  90048
5                             (323) 301-4660
                              zhansen@earlysullivan.com
6
                              Winston and Strawn LLP
7                             By:  ABBE D. LOWELL
                              2901 L Street NW
8                             Washington, D.C.  20036-3509
                              (202) 282-5000
9                             abbelowellpublicoutreach@winston.com

10
    For the Defendant:        Law Office of Michael Murphy
11                            By:  MICHAEL C. MURPHY
                              2625 Townsgate Road, Suite 330
12                            Westlake Village, California  91361
                              (805) 494-8929
13                            murphylaw5@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA, WEDNESDAY, SEPTEMBER 18, 2024, 3:33 P.M.

2         (Call to Order of the Court.)

3         THE CLERK:  Calling Case No. CV 23-9430-SVW (PDx),

4    *Robert Hunter Biden v. Patrick M. Byrne.*

5         Counsel, please state your appearances beginning

6    with plaintiff.

7         ZACHARY HANSEN:  Zachary Hansen from Early Sullivan

8    Wright Gizer and McRae on behalf of the plaintiff, along with

9    my co-counsel Mr. Lowell from Winston and Strawn.

10        And, Your Honor, Mr. Lowell is appearing -- he will

11   be the one taking the deposition of Mr. Byrne, and so he may

12   jump in at points on the depo issue, just to inform the

13   Court.

14        THE COURT:  All right.  Good afternoon.

15        MICHAEL C. MURPHY:  Good afternoon, Your Honor.

16   Michael Murphy appearing on behalf of Defendant

17   Patrick Byrne.

18        THE COURT:  All right.  Good afternoon.

19        We are here for an informal discovery conference

20   based on the parties' email from September 17, which lists

21   seven disputes.  The first is the scheduling of the

22   defendant's deposition.  When was the deposition notice

23   served?

24        MR. HANSEN:  Your Honor, because the parties had

25   agreed to meet and confer with respect to scheduling

1   depositions, the parties have been engaged in trying to

2   negotiate a date and a location of the deposition.  So no

3   notice has been served yet, but I first raised the issue of

4   defendant's deposition -- the scheduling location -- on

5   August 20th via email.

6          THE COURT:  All right.  And on August 20th, when

7   the plaintiff first raised this issue, where did the

8   defendant reside?

9          MR. MURPHY:  My understanding is, is that the

10  defendant at that point was staying in Dubai.  The activity

11  --

12         THE COURT:  I'm sorry.  Let me just -- in --

13  August 20th he was in Dubai?

14         MR. MURPHY:  Yes, Your Honor.  That's my

15  understanding.

16         THE COURT:  All right.  So the entire time this --

17  you all have discussed the defendant's deposition, the

18  defendant has been located in Dubai; is that correct?

19         MR. MURPHY:  That is correct, Your Honor.

20         And by the way, the conversation that counsel and I

21  had on August 20th -- I was on vacation in Lake Tahoe.

22         THE COURT:  All right.  So then it would appear

23  that the deposition taking place at the defendant's location

24  in Dubai is something that's been contemplated from the

25  beginning?

1          ABBE D. LOWELL:  Your Honor, this is Abbe Lowell.

2          I don't have any reason to doubt where he might

3     have been on the 20th, other than he did participate by video

4     -- and then by audio -- in Mr. Biden's deposition.  I didn't

5     think he was in Dubai as he was in and out.  That would be

6     curious to me.  But from the beginning, the conversation

7     between us and Mr. Murphy had no reference to Dubai until

8     much later.  Indeed, to begin with we were talking to

9     Mr. Murphy about two locations.  He didn't mention Dubai.  We

10    talked about Los Angeles, where the case is pending, and then

11    he mentioned Florida, where Mr. Byrne has his residence and

12    where he has property and where, I believe, he's registered

13    to vote.

14          And so I don't know that he was in Dubai at any

15    particular point.  I do know that in the conversation that

16    this would be an in-person deposition, both counsel for us

17    and counsel for Mr. Byrne talked about two locations,

18    Los Angeles or Florida.  That occurred in the end of August.

19    It occurred in the back and forth between Mr. Hansen and

20    Mr. Murphy until Dubai was first raised, I think, for the

21    first time in the very beginning of -- in September.  So I

22    don't --

23          MR. HANSEN:  September 11.

24          THE COURT:  All right.  And the deposition as of

25    today still has not been noticed, then; is that correct?

1          MR. LOWELL:  That's right.  Because of two reasons:

2    one is that the date that we first proposed, the 24th or

3    25th, which was what was in the framework of what was

4    possible, they then said wasn't possible.  So then we said

5    the 30th, and that was the operative date until they threw in

6    that they wanted it in Dubai, and then as you saw in some of

7    the back and forth, we have come to this point.

8          Again, I want to point out -- so -- that's so

9    important to this record anyway -- that until the 11th, which

10   means for a full two weeks in the back-and-forth that

11   Mr. Murphy was responding to Mr. Hansen, there was no mention

12   of anyplace other than in the United States and in a place in

13   which he's a resident.  Now, I know that Mr. Murphy says that

14   Mr. Byrne was and now is in Dubai, but I don't know that

15   that's, quote, "his residence" and especially given that, as

16   I said, he has property -- he said in his pleadings and

17   confirmed in his pleadings in terms of the Answer to the

18   Complaint and others when we were listing him as a citizen of

19   Florida is where he confirmed he was.  It's where one of his

20   deposition discovery answers and responses were certified to

21   be.

22          And so we said to him once this Dubai thing came

23   up, "Well, wait.  Is he ever going to, between now and the

24   end of discovery" -- which based on the Court's schedule

25   would be sometime in November, probably November 10th or so

1  -- "be back in the U.S. for any purpose?"  We haven't gotten

2  an answer to that.  We haven't got an answer as to whether or

3  not he has now changed his residence and no longer resides in

4  Florida to now live permanently in Dubai or any of those

5  things that would indicate why we can't do this, even if not

6  on the 30th, at some other date before November 10th.

7          THE COURT:  All right.  Mr. Murphy, where does your

8  client now reside?

9          MR. MURPHY:  My current client currently resides in

10  Dubai, and he does business in Dubai.  And the concern that

11  he has is he got death threats at the end of July because he

12  had been involved in some covert activities in Venezuela, and

13  he was informed by the DEA that there is a $20 million bounty

14  on his head, and he also had been receiving death threats

15  because of that activity.  When I was notified of that, I

16  notified counsel.

17          The attorney that I've been dealing with on this

18  issue is not Mr. Lowell.  It's been Mr. Hansen.  And first of

19  all, when the issue of taking the deposition came up, I was

20  on vacation.  I wasn't in any position to deal with it until

21  I got back, which was about two weeks later.  Then there was

22  a kick-around where there was discussions of well, they

23  wanted to do an in-person depo, and they wanted to do it in

24  Florida or have my client come here, and then I had to

25  communicate with my client and find out what he wanted to do,

1    and it was at that point that I learned from him that he was

2    in Dubai because of these death threats.

3            So then I notified counsel of his concerns.  I said

4    we would still -- the September 30th date was fine with us --

5    and we could adjust the date.  I didn't play hardball with

6    the date, but I said that date was good and that my client,

7    as an accommodation, would pay all of the expenses for

8    everybody to go to Dubai.  That would be one of their

9    attorneys, the court reporter, the videographer.  They would

10   also pay for some of their attorney time because it would be

11   longer travel than, let's say, to just go to Florida and I --

12   it would also include the cost of me, and those costs are

13   almost $60,000, which he was prepared to spend, at which

14   point then they said, no, they wouldn't agree to that.

15           With respect to him coming back, obviously, he'll

16   be back here for trial, but we can't have any assurances yet

17   about when he will come back because of these threats, and he

18   has to deal with him, and he has a legitimate concern about

19   not being harmed.

20           THE COURT:  All right.  So your client obviously --

21           MR. MURPHY:  And so --

22           THE COURT:  No.  Let's just cut to the chase.

23   There are a lot of issues here, and I certainly don't have a

24   tremendous amount of time.

25           So on this issue, the defendant certainly will be

1    back in the United States -- in Los Angeles -- for the trial

2    in the Central District of California.  Does the defendant

3    have any plans right now at all to be in the United States at

4    any point between now and the trial in this case?

5            MR. MURPHY:  My understanding is -- I'm unable to

6    get a commitment like that.  No.

7            THE COURT:  Your client is located in Dubai.  Your

8    client is willing to have his deposition taken in this case

9    in person in Dubai; is that correct?

10            MR. MURPHY:  That is correct.  And he would pay --

11            THE COURT:  Do you know whether there are any

12    prohibitions, restrictions, or laws at all in Dubai that

13    govern the taking of a deposition in a case pending in a

14    foreign country?

15            MR. MURPHY:  My understanding is there would be no

16    prohibitions because of the fact that we would bring the

17    court reporter there.  We would bring the videographer there.

18    We don't need to go get some kind of a commission from courts

19    there.  They would bring what they need there, and it could

20    be done in that manner, and he would agree to --

21            THE COURT:  All right.  So you've researched it,

22    and there's no prohibition under the law in Dubai that would

23    prevent a deposition being taken there in connection with a

24    lawsuit pending in the United States?

25            MR. MURPHY:  Yeah.  I was unable to find any laws

1   that prohibited it.  And --

2          THE COURT:  All right.

3          MR. LOWELL:  When it's available, I'd like to

4   respond to that, please.

5          THE COURT:  Of course.  Of course.

6          All right.  And does the defense have any objection

7   to having a deposition taken -- being deposed via Zoom from

8   Dubai?

9          MR. MURPHY:  No.  Not at all.  In fact, we have

10  requested it in our response.  We said a good alternative was

11  to do Zoom.  We did the plaintiff's deposition by Zoom so we

12  could accommodate him.

13         THE COURT:  All right.  And --

14         MR. MURPHY:  So that was the other alternative --

15         THE COURT:  No.  And then my question is whether

16  there is any provision in the law in Dubai regarding the

17  taking of a deposition by Zoom in a case in a foreign

18  country?  Have you looked into that?

19         MR. MURPHY:  I've looked, and I haven't been able

20  to find any law that prohibits a deposition being taken there

21  of any kind.

22         THE COURT:  All right.  So now let me ask the

23  plaintiff.  I understand that you want to take the deposition

24  in person.  If you're asking me to order the defendant to

25  travel from Dubai to the United States for his deposition,

1    you're going to have to cite me some authority --

2            MR. LOWELL:  And -- yeah --

3            THE COURT:  -- this issue --

4            MR. LOWELL:  That was --

5            THE COURT:  -- court order --

6            MR. LOWELL:  Sorry.

7            THE COURT:  -- requiring presence in the

8    United States, but I'd like to hear the plaintiff's position

9    regarding the defendant's offer to pay, at least, some of the

10   costs of the deposition and, secondly, the defendant's offer

11   to have the deposition conducted via Zoom.

12           MR. LOWELL:  Right.  Let me start with your more --

13   I thought the most important question.  Actually, the

14   research we did doesn't make it anywhere near as certain as

15   Mr. Murphy has just told you, and if that is an issue that we

16   should get back to you about it in the next day.  In fact, we

17   understand that there are rules, both as to whether you take

18   your own videographer or your own stenographer, you're still

19   in the other sovereign, and you're still dealing with

20   somebody who claims to be a resident there.  Second of all,

21   in terms of, again, various laws of -- that occur in the

22   Middle East and in Europe about privacy, et cetera, Zoom may

23   not be the answer, but knowing that that's now been raised,

24   let us get back to you on that as well.  So that's the most

25   important part of what you said because nobody on this call

1  wants to become close to the line of any violation of what

2  would be the laws.

3          Now, having said that, there is a change in

4  Mr. Murphy's positions both from what he just said and what

5  he said in email.  By that I mean, the other day -- day or

6  two ago -- whatever -- as I read it, he was now saying he

7  would not do it in person because we didn't immediately

8  agree.  We didn't immediately agree because now I'm hearing

9  something different.  To go and do a one-day, seven-hour --

10 however -- deposition in Dubai, Your Honor knows that that's

11 going to be a four-day event in terms of getting there,

12 coming, being, taking, return --

13         THE COURT:  Yeah.

14         MR. LOWELL:  -- as opposed to a one-day event if it

15 was in the United States.  His offer to pay the expenses of

16 one person plus whatever the expenses are was one person, not

17 two, and of course -- I'm sorry.  There's background noise.

18 Hold on.  I'm so sorry.

19         And then of course there's a -- usually you have a

20 person and more than one person for documents, et cetera, to

21 facilitate.  He did not offer to pay for two people to

22 travel.  And he did not offer to pay the time that would be

23 added.  I don't expect him to pay for the six or seven hours

24 of the deposition, but if he's going to say this is the way

25 to do an in-person and insists on it being in Dubai, then it

1   should cover the hours necessary to get there and come back,

2   which are hours that I would either have to bill the client

3   for or eat, and that's not something we should do in a normal

4   case.  So there's that issue.

5         As to the Zoom possibility, I guess it is

6   theoretically possible, but I think we have the natural right

7   to try to have an in-person.  It's more efficient.  It works

8   easier.  It's better to be able to do it that way.  That

9   would be the last alternative.

10         And so -- the other point is, and I know Mr. Murphy

11  has made representations on the record -- or at least now --

12  I also asked, if this whole thing is happening because

13  Mr. Byrne claims to have had a call or a communication from

14  the DEA that says whatever it is that Mr. Murphy said, I

15  asked for confirmation of that.  I asked for a contact at the

16  DEA.  I mean, obviously, this whole case is about Mr. Byrne

17  saying things that turn out not to be true -- at least that's

18  our allegations -- and the idea that he's now saying he's,

19  you know, James Bond and he's being doing overt -- covert

20  things in Venezuela and has a $20 million bounty on his head

21  so he can't come back to a deposition to the place he calls

22  home in Florida because that's been done, we should not just

23  accept that.  We should find out from the U.S. Government

24  that that's in fact what they said, and if that's what they

25  said and that's the reason, then we can go ahead and say,

1  "Okay.  Fine.  We won't make him come back to the U.S."

2         I am at least skeptical about that, and I'd like

3  that to be confirmed as well, that, a, he's never coming back

4  between now and the date of trial.  That seems important that

5  he has to say, and I'd like him to declare that, and then I'd

6  like him to make sure that, if he does come back, we know

7  that he's done that.  Second, that if this is the reason --

8  that he says that that's the reason, that it be his

9  declaration that says so and he gives us a contact person to

10  confirm that.  And then, if those two things happen and the

11  law is as Mr. Murphy thinks -- and as I think it's not that

12  simple -- then we should, maybe, revisit this issue by email

13  or otherwise with the Court.

14         Finally, if all else fails, before we get to a

15  Zoom, if I understand Mr. Murphy's reciting Mr. Byrne's

16  concern, another way that we could do in-person if we had to

17  -- and I'm not offering it yet until I understand what the

18  record will say about my three questions -- is that my office

19  does have locations in Paris and in London, which would be

20  less onerous to get to, quicker, that I could then minimize

21  the expense of.  So, if he can't come back to the U.S., I'm

22  sure he could get to one of those two locations.  And I do

23  know that in England, for example, we could take this

24  deposition, and I do know in Paris you could.  I don't know

25  about Dubai.  But I'm not there yet, Your Honor, for the

1    reasons I said.

2              THE COURT:  All right.  Well --

3              MR. MURPHY:  Your Honor --

4              THE COURT:  Hold on.  As both arguments make --

5    have made clear here, it is vastly more efficient for you all

6    to work together and come up with what is the least

7    inconvenient way to do this.  It is far less efficient to

8    litigate this and have me make a decision and order the

9    logistics of your deposition.  I don't like ordering

10   deposition logistics -- date, time, location.  You all are

11   professionals, and I think you all can sort it out with your

12   knowledge of the case far more efficiently for you and your

13   clients than I can.  So I don't need to have --

14             MR. LOWELL:  I don't disagree with you about that

15   at all.  And --

16             THE COURT:  Yeah.  So we can have more back-and-

17   forth here, but, yes, we will go to briefing.  I will

18   definitely seek a declaration from the defendant --

19   absolutely -- as to where he is currently located, that he

20   has no plans to return to the United States before the trial,

21   and declaring the reason why he is in Dubai, and providing a

22   mechanism by which opposing counsel can verify that

23   information.  That's for starters.

24             I'll also need briefing on the applicable law in

25   Dubai to assure that this can go forward in Dubai.  It is, of

1   course, more convenient to have it in some other -- in a

2   Western country, like you suggest -- in London or in Paris --

3   again, something that I think you all could work out much

4   more easily than I can, but if you want me to rule on this,

5   then you all can submit the evidence and the applicable law.

6           MR. LOWELL:  Can I make a suggestion, Your Honor,

7   then --

8           THE COURT:  Sure.

9           MR. LOWELL:  -- and I think what you say is

10  (inaudible) the way to proceed.

11          If Mr. Murphy will provide us with those things, we

12  don't have to bother the Court yet.  In other words, I do

13  want a declaration from Mr. Byrne, and I think that might be

14  in something that we submit to the Court on those three or

15  four topics.

16          I do want my own research on the issue of the law

17  that would govern a deposition of a case pending in the

18  United States in these locations.  We will take that on

19  ourselves.  I don't mind discussing that with Mr. Murphy as

20  long as he commits to doing what Your Honor said.  If we need

21  to then involve the Court by submitting that as part of a

22  brief, we will.  Otherwise, we could also work with him as to

23  whether or not there is an alternative to what he had

24  suggested, as well as to the flexibility of time, because I

25  think in that last exchange he basically said, "Since you

1   didn't agree to Dubai, a, it's got to be Zoom, and; b, it's
2   got to be on the 30th," neither of which makes sense under
3   the circumstances since we're willing to be flexible.
4           So, if that makes senses to Your Honor, we'll try
5   it one more time with counsel but, you know, may be back in a
6   brief to you pretty soon.
7           MR. MURPHY:  Your Honor, may I be heard just on a
8   couple of things.
9           First of all, I've never made any
10  misrepresentations about anything.  Secondly, I've been fully
11  cooperative.  I've made different offers and different
12  alternatives on how to handle this, and I got nowhere.
13  Number three, I haven't been dealing at all with Mr. Lowell
14  on any of this.  I've only been dealing with Mr. Hansen.
15          So -- and Mr. Lowell's offer to go to Paris is a
16  very good one, and also England is a very good one, and I
17  think we might be able to do that too.  So that's, maybe,
18  something we also can consider, but they never came forward
19  with any proposals.  It was Florida or we're coming here, and
20  even when we offered to shell out almost $60,000 in costs, we
21  still ran into a wall.
22          But if the Court wants us to supply them with a
23  declaration, we'll be happy to do that.  We'll be happy to
24  meet and confer with them.  I still think, in lieu of the
25  fact that we've had these disagreements, Zoom is the easiest

1  way to go, and we can certainly check the law in Dubai again

2  just to make sure there shouldn't be a problem with doing a

3  Zoom deposition.  We did it with the plaintiff.  It worked

4  very well.  And I've taken over a thousand depositions using

5  Zoom.  It's very cost effective.  It's favored in the case

6  law that we supplied the Court.  There's even a code section

7  that allows the Court to order it.  So I'm saying that's the

8  other alternative, but we'll do whatever the Court wants.

9        THE COURT:  All right.  Well, I'm not going to

10  order a Zoom deposition right now.  As I said, my preference

11  is for you all to work out the logistics.  If you don't, I

12  will absolutely order all of the logistics that you need

13  because the plaintiff is certainly entitled to take the

14  defendant's deposition.

15        I do think the defendant needs to submit a

16  declaration as to where he is currently located, as to

17  whether he has any plans to be anywhere within the

18  United States between today and the date that the case sets

19  for trial and stating the reason why he cannot return to the

20  United States between now and then and provide the

21  identifying information and contact information for whoever

22  it is that has conveyed to him that he should not return to

23  the United States between now and the trial, and that should

24  be provided -- let's see.  Today is the 18th.  That should be

25  provided by Friday, by the -- September 20th because you have

1  very little time here before trial and a lot to accomplish.

2          All right.  That's Dispute 1.

3          MR. LOWELL:  Thank you, Judge.

4          Judge, would you allow me to excuse myself?  I was

5  going to address the deposition.  Mr. Hansen has the others.

6  Just because of the time difference and my need to pick up a

7  kid?

8          THE COURT:  Yeah.  That's fine.

9          MR. LOWELL:  I appreciate it.  And I appreciate

10 your consideration.  Thank you.

11         THE COURT:  Uh-huh.  You're welcome.

12         All right.

13         MR. HANSEN:  Thank you, Your Honor.

14         THE COURT:  Dispute 2, the defense states that

15 responding to an interrogatory would require him to violate

16 code sections pertaining to classified information.  Does the

17 -- my understanding from the email is that the interrogatory

18 is seeking the identity of two witnesses.

19         Mr. Hansen, is that correct?

20         MR. HANSEN:  Correct to a certain extent.  There

21 are a couple -- there are several interrogatories that are at

22 issue here, Your Honor, and I'll start with the fact that

23 during counsel and I's meet-and-confer call -- extensive

24 meet-and-confer call regarding all outstanding issues on

25 September 2nd, we mutually agreed to amend all discovery

1    responses, and that included defendant's responses to Set One

2    of interrogatories, which I'll note were first propounded in

3    March, and we didn't even get responses until July.  We've

4    been going back and forth about amended responses.  The

5    current interrogatories at issue are Nos. 3 through 8, 10 and

6    11, and 13 through 17, and while --

7              THE COURT:  Are those all within Dispute 2?

8              MR. HANSEN:  Yes, they are.  Because plaintiff's --

9    or, defendant's responses are currently evasive and not code

10   compliant.  While some do request --

11             THE COURT:  Okay.  What are the numbers, again?

12   These -- interrogatories?  Tell me again.

13             MR. HANSEN:  3 through 8, 10 through 11, and

14   13 through 17, Your Honor.

15             THE COURT:  All right.  And these are plaintiff's

16   Set One --

17             MR. HANSEN:  First set.

18             THE COURT:  -- interrogatories.  All right.  So let

19   me --

20             MR. HANSEN:  Yes, Your Honor.

21             THE COURT:  We're not going through all of -- we're

22   not going to spend hours here.

23             Mr. Murphy, are you intending to provide

24   supplemental responses to the Interrogatories 3 through 8,

25   10, 11, and 13 through 17?

21

1          MR. MURPHY:  I've agreed to do all of that except
2    with respect to the two witnesses.  That's the only issue and
3    how to handle it.   I do --
4          THE COURT:  Which two interrogatories are the
5    witnesses responsive to?
6          MR. MURPHY:  The witnesses are involved in all of
7    these.  These are the only ones that are at issue.  We would
8    have to disclose them in answering all of these
9    interrogatories.  That's what --
10         THE COURT:  Other than identifying those two
11   witnesses, has the defendant fully responded to these
12   interrogatories?
13         MR. MURPHY:  I did not because of the concern over
14   the witnesses, but I could respond to them without the
15   witnesses.  It's just I would be giving an incomplete
16   response, but I could do that.  I could provide them with
17   further responses on 3 through 8, 10 through 11, and
18   13 through 17 without the witness information.  I mean, I
19   could confirm who those -- you know, that he spoke to those
20   witnesses.  I could call them "Doe 1" and "Doe 2," and I
21   could indicate where he spoke with him and that kind of thing
22   -- and how they relate to the case.  I could certainly do
23   that --
24         THE COURT:  Okay.  And when is the earliest that
25   you could accomplish that?

1          MR. MURPHY:  I could get him the responses, I

2     believe, by Friday.

3          THE COURT:  All right.  So that -- then that's the

4     --

5          MR. HANSEN:  Your Honor, if I may?

6          THE COURT:  No.  Just a minute.  We're going to

7     break this -- so he's going to provide supplemental responses

8     to Interrogatories 3 through 8, 10, 11, and 13 through 17 by

9     Friday, September 20th, that -- those responses will not

10     state the identities of the two individuals.

11          All right.  Now, with regard to the identities of

12     the two witnesses, I do not understand how responding to the

13     interrogatory would require you to violate these classified-

14     information sections, but setting that aside, the defense

15     contends that you need U.S. Government permission to disclose

16     these witnesses' names in response to these interrogatories;

17     is that correct?

18          MR. MURPHY:  Well, the statutes that we have say

19     it's a crime to do it, and I have an attorney --

20          THE COURT:  A crime to do what?  Because the --

21          MR. MURPHY:  Disclose the names --

22          THE COURT:  -- names are classified?

23          MR. MURPHY:  Yes.  Covert agents -- if you know who

24     they are and you disclose the names, it's a violation of the

25     federal statute, and there's criminal ramifications for that.

```
 1                 Now, I wanted to --

 2                 THE COURT:  So these two individuals are covert --

 3      are agents who --

 4                 MR. MURPHY:  International --

 5                 THE COURT:  -- covertly for the U.S. Government?

 6                 MR. MURPHY:  International covert agents that are

 7      working for the U.S. Government.

 8                 Now, I'm not leaving us out in the cold.  I am

 9      working with an attorney that works for the U.S. Government

10      that is involved with classified information and covert

11      agents.  She does the work here domestically, and she does it

12      full time, and they prosecute people that violate those laws.

13      They give clearances -- they handle all of that.  And I've

14      been in communication with her, and she's going to check

15      through her boss and through officials through the Department

16      of Justice to find out where we can go to get assurances

17      that, if we disclose who these people are, my client won't

18      get criminally prosecuted.  And if we can get a letter --

19      some kind of confirmation to that effect, that takes care of

20      that, and we're working on that, and we hope to have some

21      kind of response back from her by next Monday.  And then --

22                 THE COURT:  Why would the disclosure implicate the

23      classified -- the statutes that pertain to classified

24      information?

25                 MR. MURPHY:  Because what you're doing is you're
```

24

1    giving the name of somebody, and you're -- they're also

2    asking not just for the name, their address, their phone

3    number, and if they're a covert agent, and they're working

4    for our Government -- working for our Government on our

5    Government's behalf, they could be treated as a spy in that

6    country and then --

7            THE COURT:  How is the fact that they're working

8    for the U.S. Government relevant?

9            MR. MURPHY:  Because of the fact that's who our

10   client spoke to, to -- that got -- where -- that's where he

11   got the information that's on the article that plaintiff is

12   suing over.  He went back there on a government mission, and

13   while he was there, he was speaking to these people in

14   connection with that government mission, and they, in turn,

15   provided him with the information that's in the article.

16           THE COURT:  That he then repeated?

17           MR. MURPHY:  He repeated what they told him in the

18   article -- on the Hunter Biden information.

19           MR. HANSEN:  Your Honor, if I may respond?

20           MR. MURPHY:  And then -- let me -- if I may finish.

21           THE COURT:  Yes.

22           MR. MURPHY:  And then, also, he told me and we've

23   produced -- there are three voicemail tapes of somebody who

24   also -- was a different individual who also was involved in

25   this.

25

1          So his concern is being prosecuted, violating those

2    statutes.  All I'm trying to do is confirm he won't get

3    prosecuted.  If he won't get prosecuted, then the only other

4    concern he has is to make sure that the information of these

5    witnesses is kept confidential and is not disclosed and

6    there's no harm brought to them.  That's the only other

7    concern.

8          THE COURT:  Who are you speaking with at the

9    Department of Justice?

10          MR. MURPHY:  I haven't yet.  I'm speaking with an

11    attorney who works for a division of the U.S. Government that

12    deals with classification of information and deals with

13    covert people that are operating within the United States.

14          THE COURT:  Oh, they're not -- oh, so it's not a

15    DOJ employee?  Who -- what -- who --

16          MR. MURPHY:  I don't know --

17          THE COURT:  -- (inaudible)?

18          MR. MURPHY:  I don't know what division she works

19    for.  She was referred to me.  I know she's done this work.

20    I've spoken to her in the past about her work.  I'm just not

21    exactly sure of the name of her department.  I know that

22    that's all she does full time is work on this stuff dealing

23    with -- you know, if you want to get a -- be able to review

24    classified information, she has to clear you.  If you violate

25    the law and you release classified information, then they

1    prosecute.  She's involved in the prosecution.  And she does

2    work dealing with this stuff on a domestic basis, not an

3    international basis.  So she said that she doesn't do

4    international work but she could go in and find out who we

5    need to contact within the Department of Justice -- or

6    whatever department is there on this -- to get it cleared

7    that we're going to be okay.

8            MR. HANSEN:  Your Honor, can I make a point,

9    please?

10           THE COURT:  Yes.

11           MR. HANSEN:  So first of all, there are several

12   interrogatories that have nothing to do with disclosing

13   covert information:  13, 14, and 17.  13 asks for defendant

14   to identify every person that interviewed him for the

15   publication, to which he responded Michael Flynn and then

16   later retracted that comment and said Flynn had no knowledge

17   whatsoever and involvement in drafting the article beyond the

18   introduction.  So I'm only asking for who's involved with

19   interviewing him for the publication.  Presumably, it wasn't

20   covert agents.

21           THE COURT:  That's 13, 14, and 17?

22           MR. HANSEN:  That's No. 13.  No. 14 asks --

23           THE COURT:  Okay.  Hold on.

24           Mr. Murphy, so No. 13 doesn't sound like it

25   requires the names of these covert agents.

1            MR. MURPHY:  Well, I've agreed to provide a

2    response to that.  I wasn't --

3            THE COURT:  No, no.  A full response.  I -- my

4    question --

5            MR. MURPHY:  Right.

6            THE COURT:  -- to you was -- you have to provide a

7    full response.  The only issue here is whether you have to

8    identify the -- if answering would require you to identify

9    the name of a covert agent.

10           MR. MURPHY:  I've already agreed to --

11           THE COURT:  -- that, full response to 13 by Friday.

12           All right.  What about --

13           MR. MURPHY:  I've agreed to provide a full response

14   to all of the interrogatories -- that's what I said -- except

15   for the identity of these witnesses to the extent it's being

16   sought or would have to be disclosed.

17           THE COURT:  All right.  So, Mr. Hansen, do we have

18   to go through all of them, then?  He's going to give you a

19   full response by Friday except this issue, and I want to hear

20   the plaintiff's position on this issue regarding these

21   individuals whose identities the defendant believes he cannot

22   disclose.

23           MR. HANSEN:  Yes, Your Honor.  And I won't go

24   through all of them.  I just want to point out two others

25   that obviously do not involve covert agents.

1    No. 14 asks whether -- if he contends that the
2    defamatory statements -- and "defamatory statements" was a
3    defined term as the statements made by defendant in the
4    publication that are the subject of this litigation.  Instead
5    of providing a whole response, he just objected to the word
6    "defamatory statements" and just said, "I didn't make any
7    defamatory statements.  Everything is true."  That asks for
8    him to state all facts supporting that contention that
9    they're true.  He has not provided that.

10    No. 17 asks for him to identify every time the
11    defamatory statements were published or republished.  Again,
12    I do not believe that that's going to involve the --
13    identifying any covert agents as he claims.

14    My next point, Your Honor, is that these
15    interrogatories were propounded in March.  We are now in late
16    September.  If these were such legitimate concerns that
17    counsel had to contact a lawyer that deals with the DOJ and
18    covert agents and is waiting on getting a response back -- or
19    whatever he's waiting on -- a letter -- it seems like this
20    could have been done months ago.  Given counsel's and
21    defendant's repeated and consistent delays in discovery, I
22    find it hard to believe that this is going to happen in any
23    timely manner.

24    Number two -- or, number three, the defendant has
25    produced one declaration that is self-serving from some

1    individual that basically recites all of the same defamatory

2    statements and three voicemails that are unauthenticated.  We

3    have no idea who's speaking, when they were recorded, what

4    they're even about because they don't mention my client or

5    anything related to this case whatsoever, and we don't know

6    --

7              THE COURT:  Well, wait a minute.  Are these in

8    response to the interrogatories?

9              MR. HANSEN:  These are in response to requests for

10   production --

11             THE COURT:  Okay.

12             MR. HANSEN:  -- but they are referenced in the

13   interrogatories as --

14             THE COURT:  All right.

15             MR. HANSEN:  I asked for documents -- identify all

16   documents that support various claims.  Those are some of the

17   other ones that would potentially, as counsel claims,

18   identify these covert agents.  He specifically identified

19   these three voicemails.  They have no authenticating

20   information -- identifying information at all.  We are asking

21   for them simply to provide that information so that we can

22   authenticate them and get more than just a file with somebody

23   talking on it about whatever they're talking about.

24             THE COURT:  All right.  And has Mr. Murphy refused

25   to provide that information?

1          MR. HANSEN:  Yes.  He has refused --

2          MR. MURPHY:  No.  I have not.  That's not true.

3          MR. HANSEN:  -- to provide that information and --

4          THE COURT:  All right.

5          MR. MURPHY:  That's not true.

6          THE COURT:  So let me --

7          MR. HANSEN:  Please let me finish speaking,

8  Counsel.

9          MR. MURPHY:  Yeah.  I'll let you finish, and then

10  I'd like to have a lot of time to respond.

11          THE COURT:  All right.  I don't have a lot of time

12  and so --

13          MR. MURPHY:  There you go.

14          THE COURT:  -- if we're going to send these

15  discovery disputes to briefing if we can't reach a resolution

16  here.

17          So I understand that you have a history -- that

18  there's a history to all of these disputes.  Now, Mr. Murphy

19  is going to produce no later than Friday, September 20th,

20  full and complete responses to Interrogatories 3 through 8,

21  10, 11, and 13 through 17, with the exception of identifying

22  the covert agents.  To the extent that that is responsive to

23  the interrogatory, he can refer to them as "Doe 1" and

24  "Doe 2" -- other than that, full and complete responses.  And

25  as I think I've said before in this case, it's unlikely there

31

1   will be any extensions, and you can imagine that if discovery

2   is not timely produced, I can assure you there will be

3   preclusion orders in this case at trial.  So I strongly urge

4   you both to simply fully and completely respond.

5          All right.  So that -- are there any -- is there

6   anything else in connection with Dispute No. 2?

7          MR. HANSEN:  One request, Your Honor.  Given the

8   late stage of this case before trial, would Your Honor be

9   inclined to propose a date by which counsel can provide this

10  letter that he speaks of and -- based on his conversations

11  with this other attorney?

12         I'll also mention we have a protective order in

13  place that should cover any sort of concerns that counsel has

14  regarding the disclosure of these identities.  I haven't

15  heard a legitimate --

16         THE COURT:  Well, I don't know.  What letter are

17  you referring to?

18         MR. HANSEN:  The letter that counsel said that he

19  is talking with this other attorney and he can get a letter

20  that basically gives him permission from the U.S. Government

21  to disclose these identities.

22         THE COURT:  All right.  I find it extremely

23  unlikely that by Monday, or anytime soon, if this truly does

24  pertain to classified information, that there's going to be a

25  disclosure order.  I don't know the particulars.

1          I guess, Mr. Murphy, what is the name of the

2    attorney with whom you are speaking, and to your knowledge,

3    where is this person employed?

4          MR. MURPHY:  Okay.  Let me look up her name.  I've

5    got it right here.

6          MR. HANSEN:  Would plaintiff's counsel be permitted

7    to --

8          MR. MURPHY:  Her --

9          MR. HANSEN:  -- contact this individual,

10   Your Honor --

11         THE COURT:  Hold on.

12         MR. MURPHY:  Her name is --

13         MR. HANSEN:  -- (inaudible)?

14         MR. MURPHY:  -- Aubre DeAngelis.  She works for the

15   federal Government.  She works in an office, but most of the

16   time she works out of her home.  My understanding is most of

17   the time she's a remote employee, but she does --

18         THE COURT:  Okay.  Can you spell it?  Spell it.

19         MR. MURPHY:  Yeah.  I'd be happy to.  Aubre --

20   A-u-b-r-e.  The second word is capital D-small e -- De -- and

21   then the last name -- part is Angelis, A-n-g-e-l-i-s.

22         THE COURT:  Okay.  And what agency does she work

23   for?

24         MR. MURPHY:  My understanding is, is that she is --

25   she's always kind of kept her job secret.  I know she does

1   this stuff.  She works for a -- the federal Government, and

2   she works on cases where people have violated their

3   classification and disclosed confidential information or

4   covert agent information illegally, and they prosecute them.

5   She works on revocation of companies' classification

6   statuses, if they leak information out of their company in

7   documents.  I know that she does all of this kind of work.

8   So I reached out to her, and she said that she believes going

9   through her boss she can probably, because she does that

10  work, refer me, then, to somebody either within the

11  Department of Justice or some other intelligence agency where

12  we can go to them and get clearance on this so we don't have

13  a problem.

14       THE COURT:  It appears she works for the

15  U.S. Department of Defense.

16       MR. MURPHY:  I think it's either U.S. Department of

17  Defense or she works for the Department of Justice.  I'm not

18  sure which, but it deals with classifications -- issuing

19  classifications so people can see classified information and

20  also disclosure -- illegal disclosure of classified

21  information and covert agents.

22       THE COURT:  Is there a way in which you all can

23  respond to the interrogatories --

24       (Pause.)

25       MR. HANSEN:  May I propose --

```
1              THE COURT:  Hold on -- or more broadly address the
2    issues in this case without disclosing the identities of
3    these two individuals?
4              MR. MURPHY:  Yes.  And I'm prepared to do that, and
5    I said I would with the further responses this Friday.
6              THE COURT:  No.  That's not my question.
7              MR. MURPHY:  Oh, okay.
8              THE COURT:  My question is, is it -- and this is
9    really, I think, more a question for you, Mr. Hansen.
10             Is it possible to -- do you have sufficient
11   information in discovery if you get all of the information
12   other than the identities of these two individuals?
13             MR. HANSEN:  Well, I would say that I have not
14   received sufficient information.  There's been deficient
15   responses throughout.  But if defendant doesn't have any
16   further information to provide, then I think a reason why
17   this -- a way that we could resolve this is defendant just
18   stipulates to the fact that he will not rely on or mention or
19   otherwise disclose whatsoever at trial or rely on in his
20   defense any information that these individuals have.  Because
21   he's hiding behind these grandiose claims of covert ops, and
22   as my co-counsel said -- Mr. Lowell -- this entire case boils
23   down to allegations that Mr. Byrne makes untrue statements
24   publicly.
25             And I'll note the fact that these individuals have
```

1    covert identities, he's worried about violating the statutes

2    didn't prevent him from publishing and republishing over and

3    over and over again the statements in which they -- these --

4    this information that was told to him.  So, if he's going to

5    show up at trial and all of a sudden have a declaration from

6    somebody that was never disclosed despite our repeated and

7    numerous efforts to obtain that information, that's going to

8    greatly prejudice plaintiff.  So if he'll agree to a

9    stipulation --

10            THE COURT:  Oh, yeah.  That won't happen.  He'll be

11    precluded from presenting any of that if he doesn't produce

12    it in discovery.  So that --

13            MR. HANSEN:  I understand.

14            THE COURT:  That's not going to happen.

15            All right.  So, Mr. Murphy, you need to

16    expeditiously determine to what extent it will be possible

17    for you to disclose the identities of these two individuals

18    in discovery in this litigation, and you will share with

19    plaintiff's counsel your contact information, the individuals

20    you've spoken with on this issue, and what they have advised.

21            MR. MURPHY:  I will do that.

22            MR. HANSEN:  Your Honor, are you inclined to put a

23    deadline on that disclosure of when he will provide that

24    information?  Because, as I've said, with respect to

25    deposition -- defendant's deposition, I followed up almost

1    daily and got hit with no response whatsoever.

2            THE COURT:  Well, he --

3            MR. HANSEN:  So I'm concerned about further --

4            MR. MURPHY:  You know what?  This constant --

5            THE COURT:  He just --

6            MR. MURPHY:  I want to say something.

7            This constant misrepresentations to the Court that

8    we aren't conducting discovery and we're not giving them

9    information and we're being evasive and we're liars and we're

10   misrepresentative people is outrageous.  We have done tons of

11   discovery in this case, and we have provided a lot of

12   information, and the fact that we have a dispute over, maybe,

13   5 or 6 interrogatories out of a total of almost 50 that were

14   sent to us is ridiculous.  We've also responded to 58 request

15   for admissions, and we've also responded to three sets of

16   special interrogatories and a request to produce.

17           And I'd like the Court to know that counsel

18   confirmed in writing to me that the responses for some of

19   this discovery were not due until September 5, and we agreed

20   to move it to the 21st of September, and then counsel turned

21   around and said, "No.  I don't have that agreement with you,

22   and you waive all objections and all rights on the request

23   for admissions."  In looking at that, I went back and found

24   the email, and I had one day to respond and object to all of

25   this discovery so we wouldn't have any waivers.

1        So counsel's statements, Oh, we're misrepresenting

2   things and we're dishonest and we're stalling and delaying --

3   this has been caused by him, by virtue of the fact that he

4   had agreed we would have until the 5th of September.  And

5   this was agreed to prior to me going on vacation and then to

6   come back and find out we really don't have a deal.  And if

7   the Court would like to see the emails that I exchanged with

8   counsel, I'll be happy to share them.

9        THE COURT:  All right.  I'm very busy, I have a lot

10  of other matters, and so I don't need to hear accusations

11  flung from either of you.  Let's either through and resolve

12  the disputes that are in the email.  It's a waste of your

13  time and mine to fling accusations.

14        Now, with regard to Dispute No. 2 --

15        MR. MURPHY:  Well, I've agreed on --

16        THE COURT:  -- Mr. Murphy has --

17        MR. MURPHY:  Yeah.

18        THE COURT:  Mr. Murphy has already provided the

19  name of the individual that he is speaking with to try and

20  determine the extent to which his client will be able to

21  disclose the identity of these covert agents.  He's provided

22  that.

23        The order is on an ongoing basis.  As the

24  communications occur and as you obtain information about this

25  process, Mr. Murphy, please share it with Mr. Hansen so that

38

1    you all can determine the extent to which, if at all, these

2    identities can be disclosed in connection with this

3    litigation.

4            Other than that, I think we've addressed

5    Dispute No. 2.

6            Dispute No. 3 pertain [sic] to the requests for

7    admission.  Defendant's RFAs ask plaintiff to admit, one,

8    that he is a public figure and; two, that the alleged

9    defamatory statements are a matter of public concern, to

10   which plaintiff objected on the basis that they improperly

11   seek a legal conclusion.

12           All right.  They obviously do seek a legal

13   conclusion, but in any event, the defense then states that

14   they're not seeking a further response to the request for

15   admission.  So there's nothing to rule on.  So this dispute

16   is entirely resolved and didn't need to be in the email;

17   correct?

18           MR. MURPHY:  Agreed.

19           MR. HANSEN:  No, Your Honor.  I would --

20           THE COURT:  All right.  What's not resolved?

21           MR. HANSEN:  Under Federal Rule of Civil Procedure

22   37, if a -- an RFA is properly objectionable, no sanctions

23   award will be issued.

24           THE COURT:  Right.

25           MR. HANSEN:  Counsel is threatening a sanctions

 1  award for us -- our refusal to answer these questions.  So I
 2  would like to resolve this issue right here and now that
 3  these objections are proper and that no sanction award will
 4  be issued on that basis.  Because I want to avoid this issue
 5  down the road is essentially my contention, and so I stand on
 6  these objections.  And I'll also note that opposing counsel
 7  did demand, initially, further responses.  When I said I was
 8  going to stand on these objections, several different times,
 9  he has now pitted to "We're going to file a sanctions
10  motion," forcing us to prove up these matters.  So I would
11  just like to nip this issue in the bud right now.
12           MR. MURPHY:  Your Honor, the case law is clear --
13  and also the code that we cite in our responses -- is an
14  issue for the trial judge.  These issues do not come up and
15  they're not ruled on until the end of trial.  It's not a
16  discovery issue --
17           THE COURT:  That's not necessarily the case, but if
18  you -- I'm certainly not going to entertain any request for
19  sanctions.  If the defense wants to file a motion, they can
20  follow Local Rule 37.
21           MR. MURPHY:  Good.  Thank you, Your Honor.
22           THE COURT:  All right.  Dispute No. 4: Defendant's
23  Interrogatory 9 asks for plaintiff to identify certain
24  witnesses with relevant information regarding defendant's
25  alleged defamatory statements.  The -- well, first of all,

40

1  let me make sure.  This is still -- this dispute is still

2  live; is that correct?

3          MR. MURPHY:  Yes.

4          THE COURT:  All right.  And the defense contends

5  that the plaintiff has failed and refused to fully respond

6  specifically to Special Interrogatory No. 9.

7          All right.  Has the plaintiff -- does the plaintiff

8  intend to supplement the response to Interrogatory No. 9 or

9  no?

10          MR. HANSEN:  Your Honor, plaintiff has supplemented

11  this response already and has provided a code-compliant

12  response that says, despite a reasonable and good faith

13  effort, he is not aware of the contact information for the

14  four individuals at issue.  These four individuals --

15          THE COURT:  Okay.

16          MR. HANSEN:  -- are listed as contributors to the

17  article in which defendant's statements were published.  We

18  have been unable to identify any contact information.  We

19  have had a P.I. looking for this information.  We are of the

20  belief that these names may even be pseudonyms.  We're not

21  sure, but we have been unable to identify any of these

22  people.

23          I will note one of these people who is listed as

24  the CEO and editor in chief of the publication at issue,

25  based on social media, has commented on and interacted with

1    defendant on social media on numerous occasions, including in

2    one of our documents that we produced in discovery.  And

3    presumably this would be information that defendant would

4    know.  This relates back to the issue regarding defendant's

5    deficient responses to plaintiff's interrogatories in which

6    we asked for the identities of every individual who

7    interviewed him and contributed to the article.

8         On the front page of this article, it lists these

9    four individuals as, quote-unquote, "contributors."  There's

10   nothing more for plaintiff to do in this regard.  We have

11   satisfied our discovery obligations.  If and when we become

12   aware of their contact information, we will provide it as

13   required under the discovery code.

14        THE COURT:  All right.  So, Mr. Murphy, I can't

15   order them to provide what they don't have.

16        MR. MURPHY:  Okay.  Then they also have this on

17   their Rule 24 -- Rule 26 disclosure, where they're listing it

18   as potential witnesses they're calling at trial.  So I --

19        THE COURT:  Well, of course they do.  But that

20   doesn't --

21        MR. MURPHY:  Well, then --

22        THE COURT:  -- they have the contact information.

23        MR. MURPHY:  -- they should be able to provide the

24   contact information.  We answered --

25        THE COURT:  You just heard that they don't have it.

1          MR. MURPHY:  Your Honor, they have a duty to go get

2     it if they're going to list it as a potential witness for

3     trial.  They're going to list a trial witness and not tell us

4     their address and phone number?

5          THE COURT:  Do you have it?  Does your client know

6     this information?

7          MR. MURPHY:  No.  Because they were not

8     contributing editors to what we wrote.

9          And in answers to their interrogatories -- what

10    they don't tell you is that we said nobody was involved in

11    drafting the particular article which is involved in this

12    case other than my client and providing --

13         MR. HANSEN:  That's not stated anywhere in

14    discovery.

15         MR. MURPHY:  If I may --

16         THE COURT:  All right.

17         MR. MURPHY:  If I may not be interrupted.

18         We answered in one of their special interrogatories

19    that my client drafted a composite of the article and

20    supplied it to the publication to publish that particular

21    article.  The article that we're talking about is the one

22    where the plaintiff claims he was defamed.  This magazine has

23    a whole slew of other articles in it about my client and his

24    history and other things that have nothing to do with the,

25    quote-unquote, "defamatory article" --

43

```
 1              THE COURT:  My question simply was whether your
 2   client had the contact information.
 3              MR. MURPHY:  We don't even know who these people
 4   are, and yet they're listing them as potentially calling as
 5   witnesses at trial.
 6              THE COURT:  Yes.  You heard that they don't have
 7   the contact information.  So I can't order them to produce
 8   what they don't have.  If you -- they have an obligation --
 9   an obligation to supplement discovery responses.  The duty to
10   respond to discovery is ongoing.  Obviously, if the plaintiff
11   acquires that information, they're required to produce it to
12   the defense.  All right.
13              MR. HANSEN:  Your Honor, as an example of the
14   defendant's hiding the ball on discovery, this is the first
15   time I've heard that defendant himself drafted the article
16   and sent it in.  That is listed nowhere in discovery nor has
17   it ever been disclosed, and if counsel contends that I am
18   wrong on that, I would like him to point out which discovery
19   request specifically it is mentioned in.
20              THE COURT:  All right.
21              MR. MURPHY:  You can go read our responses to your
22   discovery requests.  They're in there.  You just didn't --
23              MR. HANSEN:  I've read them thoroughly.
24              MR. MURPHY:  You just didn't read them.
25              THE COURT:  All right.  Stop.  I'm not having this
```

1    -- I'm not.  I don't have time for this.  We're going to

2    continue to the disputes.  Both -- stop.

3              Dispute No. 5: The defense claims that plaintiff's

4    Rule 26(f) disclosures are deficient.  Is this the same

5    witnesses -- is this the same as number -- as the prior --

6              MR. MURPHY:  Well, there's --

7              THE COURT:  No. 4?

8              MR. MURPHY:  There's three issues on this.  Number

9    one, they're the -- the witnesses where we don't have the

10   information are the same in No. 9 for --

11             THE COURT:  All right.  Well, then obviously that's

12   the same --

13             MR. MURPHY:  Okay.

14             THE COURT:  -- the same response there.  What --

15             MR. MURPHY:  But there are also deficiencies

16   because they're required in this disclosure statement to

17   state all of the bases of their claims against our client and

18   provide a listing by category of documents they have to

19   support those contentions.  In addition, they're supposed to

20   provide us with a breakdown of their damages by dollar

21   amounts, and they have to provide us with a listing of the

22   documents that support their claim for damages, and we have

23   not received any information on this disclosure statement

24   from them, and we're -- this case has been pending for ten

25   months, and they didn't put it in their initial disclosure

1   statement that was submitted to the court, and they haven't

2   provided any kind of information since then, and they should

3   be ordered to supplement and provide this essential

4   information that's required by the code.

5            THE COURT:  All right.  I see that the plaintiff

6   states that the defendant is seeking this information

7   prematurely.  It's the middle of September.  The case is set

8   for trial in December.  So it's not premature.

9            MR. HANSEN:  Well, Your Honor, we're still waiting

10  on amended responses to our first set of discovery.  Their

11  second, third, and fourth responses are due next week.

12  They've been pushed out, and I've granted extensions on the

13  second and third.  We have been unable to conduct the

14  deposition of defendant, in which we are going to obtain

15  significant amount of this information.

16           Our initial disclosures specifically say that -- we

17  listed (reading): The calculation of damages will based upon

18  information that includes but is not limited to the number of

19  times the defendant published the defamatory statements --

20  we've already discussed that.  He hasn't provided it -- the

21  various channels through which defendant's defamatory

22  publications have occurred -- have not received any of that;

23  the total number of persons who were exposed to the

24  defamatory statements and other factors.  We also list that

25  because defendant's defamatory statements constitute

1   defamation per se, we're seeking general damages as presumed

2   as a matter of law.  We're also seeking actual damages

3   according to proof --

4           THE COURT:  Yes, I know.  I can read that.  So is

5   your -- are what you saying here is that you're waiting for

6   the defense to provide the information that you're going to

7   use to prove your damages claim?  Setting that aside, other

8   than the information that you are waiting on to receive from

9   the defense, you must have other information that you're

10  going to use to --

11          MR. HANSEN:  Yes.

12          THE COURT:  -- prove your damages.  It's responsive

13  and needs to be produced.  When is the earliest you can

14  produce it?

15          MR. HANSEN:  Your Honor, we have produced over

16  440 pages of documents --

17          THE COURT:  No.

18          MR. HANSEN:  -- which include citations to Bates

19  numbers.  They asked for -- and specifically in those

20  document requests, they asked for documents proving damages.

21  We responded to all of them.  We cited the Bates numbers.  We

22  have produced documentation that include, in part,

23  Mr. Biden's book sales, his art sales that are going to be

24  used as part of the computation of damages.  We have agreed

25  to submit our client to an independent medical examination at

1  defendant's request, which is scheduled for October 11th.

2  That will then delve into the emotional damages that

3  Mr. Biden is alleging.  There hasn't been any expert

4  discovery that has occurred yet.  We -- I'll also mention

5  that plaintiffs have not --

6          MR. MURPHY:  Your Honor, what he's saying is --

7          THE COURT:  Stop.

8          MR. HANSEN:  -- that plaintiffs have not designated

9  an expert on emotional distress damages.  So we will be

10  appointing a rebuttal expert, possibly, after the conclusion

11  of the independent medical examination.

12          However, Your Honor, if Your Honor wants us to

13  supplement these -- our initial disclosures with the

14  additional information that we have, which I would argue that

15  we've already done.  I'll also argue that -- I'll also point

16  that defendant's pending special interrogatories, which are

17  due on Monday, specifically ask for all of this information.

18  We plan on responding with verified responses -- substantive

19  verified responses on Monday, on the date that they are due.

20          THE COURT:  All right.  So you're going --

21          MR. MURPHY:  We'll --

22          THE COURT:  No.

23          The plaintiff is going to respond by Monday,

24  September 23rd, with the information in -- currently in the

25  plaintiff's possession, custody, or control that's responsive

```
 1   to -- let's see.  Well, this is a Rule 26 disclosure.  The --
 2             MR. MURPHY:  It says claims --
 3             THE COURT:  -- Interrogatory No. 9 that is
 4   responsive --
 5             MR. MURPHY:  -- claims -- it would be the claims --
 6             THE COURT:  No.  No.
 7             MR. MURPHY:  I'm sorry.
 8             THE COURT:  I'm sorry.  I'm speaking.
 9             MR. MURPHY:  Okay.
10             THE COURT:  So the -- by September 23, 2024, all of
11   the information in the plaintiff's possession, custody, or
12   control "currently" that is responsive to -- this pertains to
13   Interrogatory No. 9; is that correct?
14             MR. MURPHY:  Yes.
15             THE COURT:  All right.  This -- obviously there is
16   -- discovery is ongoing and so if the --
17             MR. HANSEN:  Your Honor, Interrogatory No. 9 --
18             THE COURT:  -- obtains information in the future --
19             MR. HANSEN:  -- pertains to individuals.
20             THE COURT:  -- information in the future --
21             MR. MURPHY:  I'd love to be able to be heard.
22             This is Rule 26(f).  He has to tell us what his
23   claims are.  He has to tell us what his damages are.  We
24   aren't going to know that.
25             MR. HANSEN:  We have done so.
```

49

1          MR. MURPHY:  Your Honor, you can't evade responding

2     to 26(f) by saying, "Well, I gave you some stuff in

3     interrogatory answers."  The reason the 26(f) disclosure is

4     important is because that's what you're saying that you may

5     rely on at trial. That's the difference between answering an

6     interrogatory and providing a Rule 26(f) disclosure.

7          THE COURT:  All right.  As to Interrogatory No. 9,

8     the response, as I said -- the supplemental response has to

9     be provided by September 23, 2024 --

10          MR. HANSEN:  Your Honor, really quickly, we're

11     confusing issues --

12          THE COURT:  -- discovery obligation is ongoing.

13          MR. HANSEN:  Interrogatory No. 9 was Issue No. 4

14     pertaining to the identities of the contributors to the

15     article.  It has nothing to do with --

16          THE COURT:  I'm looking at Dispute No. 5.

17          MR. HANSEN:  Well, with respect to the Rule 26

18     disclosures -- yeah, defendant's Interrogatory No. 9 is

19     asking for the identities of the --

20          THE COURT:  Of the same -- all right.  So --

21          MR. MURPHY:  9 only deals --

22          MR. HANSEN:  (Inaudible.)

23          MR. MURPHY:  Your Honor, 9 only deals with the

24     witnesses.  We need the 26(f) disclosures on all claims, all

25     documents that support those claims, all damage --

1          THE COURT:  Oh, I see.  Dispute No. 5 is the 26(f)

2    disclosures.  All right.

3          MR. MURPHY:  Yeah.

4          THE COURT:  When is the earliest that that full

5    26(f) disclosure can be done, Mr. Hansen?

6          MR. HANSEN:  Well, we're going to be responding to

7    their special interrogatories on Monday, the 23rd, as we

8    said.  I will -- can we have until Tuesday, the 24th, to

9    provide an additional amended response, to the extent there's

10   anything to disclose, with everything that is in our client's

11   possession, custody, or control at this time?

12          THE COURT:  Yes.  Yes.

13          MR. MURPHY:  We're not going to stipulate that

14   except for what's provided in discovery he doesn't have to

15   give us anything.  We want a full response so we know what

16   he's going to be using at trial.  So, if he's already given

17   it to us in an "interrog," it's worthless for knowing what we

18   need to know to prepare the case for trial.  So he needs to

19   give us a full response for all of the things that he's

20   required to do in 26(f), and that's information on his claims

21   with documents, information on his damages broken down by

22   category, calculations, and any evidence -- any documents he

23   has.  And his damages are damage to his reputation, emotional

24   distress -- or whatever -- he's got to provide that

25   information that he plans -- he believes he may be using at

1  trial.

2          THE COURT:  All right.  The supplemental Rule 26

3  disclosure by the plaintiff has to be provided by

4  September 24, 2024.  All right.

5          MR. HANSEN:  To the extent it's within our

6  knowledge -- possession, custody, or control; correct,

7  Your Honor, because defendant's deposition --

8          THE COURT:  Yes.  Obviously, if -- you can't

9  produce it if it's not in your possession, custody, or

10 control.  If you get information subsequently, then you have

11 a duty to provide it when you receive it.

12         MR. HANSEN:  Yeah.  And my concern is just that

13 with respect to the prior issue, there have been demands --

14 we've gone to an IDC now -- about stuff that we've said in a

15 verified response we do not have within our possession,

16 custody, and control.  So I'm just --

17         MR. MURPHY:  Sure.

18         MR. HANSEN:  -- seeing an issue where we will

19 produce what we have in our possession, custody, and control

20 on Tuesday and the defense is going to take issue it with it

21 regardless of whether or not we don't have it.

22         THE COURT:  All right.

23         MR. HANSEN:  We can't conjure up information we

24 don't have.

25         THE COURT:  Let's move on to Dispute No. 6:

1   Defendant's RFP 4 seeks all documents, evidencing any threats

2   plaintiff has received in connection with the defamatory

3   statements at issue in this case.  The --

4           MR. MURPHY:  It's the Secret Service documents.

5           THE COURT:  All right.  If the documents are not in

6   the plaintiff's possession, custody, or control, then

7   obviously the plaintiff cannot produce them.  If they are in

8   the possession of a third party, then Federal Rule of Civil

9   Procedure 45 sets forth the requirements for issuing a third-

10  party subpoena.

11          MR. MURPHY:  I'd like to address the possession,

12  custody, and control.  The Secret Service agents that he

13  deals with guard him on a regular basis.  They're the ones

14  that provide him with this information.  So it would be in

15  his possession, custody, and control.  He would say to them,

16  "Hey, do you have any documents of any threats?" and they

17  could give it to him.  We don't know who his Secret Service

18  agents are and who's protecting him, but it would be in his

19  possession, custody, and control because they would report

20  those to him and they would provide him with that

21  information.

22          THE COURT:  Well, I have no idea whether the

23  Secret Service takes documents that are in its possession,

24  custody, or control and turns them over to its protectees and

25  so --

1        MR. HANSEN:  I do, Your Honor.

2        THE COURT:  If you would like to litigate that

3  issue, it seems to be awfully time consuming, and it would be

4  far more efficient to simply issue a subpoena to the

5  government agency that has possession, custody, or control,

6  rather than litigate presumptions about what the

7  Secret Service does and doesn't share.  But if the plaintiff

8  doesn't have this, he can't produce it, and I can't order him

9  to produce something that he doesn't have, and I'm certainly

10 not going to make a finding that the Secret Service documents

11 are in the plaintiff's possession, custody, or control.

12        All right --

13        MR. HANSEN:  Your Honor, I've spoken with my client

14 directly about this issue, and I've confirmed that the

15 Secret Service doesn't operate that way.

16        THE COURT:  Right.  I --

17        MR. HANSEN:  They don't work on behalf of their

18 charges --

19        THE COURT:  Right.

20        MR. HANSEN:  -- the people that they guard.  They

21 simply do not.  If -- the only means of obtaining those

22 documents are, potentially, through a subpoena.  I don't even

23 know if they'll respond to that.  But I just want to make

24 that clear, that I have asked my client that, I've asked him

25 to look into it, and he has confirmed to me that that's

1   simply not how the Secret Service works.  And I've informed

2   the defense of that, and our discovery responses state that,

3   after a reasonable and diligent search, plaintiff has not

4   located any of these documents and that he's informed and

5   believed to the extent they exist, the United States

6   Secret Service would have them in their possession.

7          THE COURT:  All right.  Well, that's a sufficient

8   response.  I'm certainly not going to order any supplemental

9   response to that.

10          All right.  Dispute No. 7: Defendant's responses to

11  plaintiff's RFPs 37 to 44 seek all documents supporting

12  defendant's affirmative defenses.

13          MR. MURPHY:  Okay.

14          THE COURT:  Has defense provided a supplemental --

15  has the defense fully responded, in the defendant's view, to

16  this -- these RFPs?

17          MR. MURPHY:  Yeah.  The 34 through -- 37 through 44

18  we've only responded with a code-compliant response, and we

19  said the defendant shall produce any and all documents in its

20  possession, custody, and control.  That's what the code

21  requires.

22          Now, on some of the other requests to produce, they

23  asked us to produce documents, and we said, "We'll produce

24  these documents," and we identified them, and we did not make

25  it clear that we were producing all documents that we have in

1  our possession, custody, and control.  So on those other

2  request for admissions -- or requests to produce that were a

3  part of this No. 7, we went ahead and served and cleaned up

4  all of those responses.  We also confirmed that we weren't

5  withholding anything privileged and there was no need for a

6  privilege log, but on these, we just didn't give an

7  appropriate response that was code compliant, and to say

8  "Defendant shall produce all requested documents in its

9  possession, custody, or control" is a code-compliant

10  response.  We shouldn't have to provide an additional

11  response.

12         THE COURT:  So what is that the --

13         MR. HANSEN:  Your Honor --

14         THE COURT:  Are all the -- have all the documents

15  been produced?

16         MR. MURPHY:  So far, yes.  Everything that we have

17  that they've asked for we've produced.

18         THE COURT:  All right.  So the issue --

19         MR. HANSEN:  -- declaration (inaudible).

20         THE COURT:  Pardon me, Mr. Hansen?  So what is the

21  issue here?

22         MR. HANSEN:  They -- the issue is with respect to

23  other -- their current response is concerning because with

24  respect to other responses, they specifically identified

25  documents that they were going to produce, and then they also

1   those are all the documents in his possession, custody, and

2   control; no other documents exist.  This response leaves the

3   door open, that they "shall produce" all requested documents

4   in his possession, custody, and control.

5         To date, we've received a two-page declaration and

6   three completely unauthenticated recordings.  That is it.

7   These exact same discovery requests -- these request for

8   production have been pending since March.  I'll reiterate

9   that.  So, if he's going to -- "shall produce" infers, to me,

10   that that will happen at some identified time in the future.

11   The deadline for them to produce has long past.  I'm simply

12   asking for the same unequivocal statement that he provided in

13   response to these -- the other requests stating that no other

14   documents exist.  That's all I'm requesting.

15         THE COURT:  All right.  So in -- regarding RFPs 37

16   through 44, Mr. Murphy, has the defense produced all of the

17   documents in --

18         MR. MURPHY:  Yes.

19         THE COURT:  -- possession, custody, or control?

20         MR. MURPHY:  The defense has produced all of the

21   documents, and our only obligation in responding to these

22   with a code-compliant response is the one that we've given.

23         On the other ones, he was right.  We had to provide

24   additional information because they asked for a category of

25   documents, and we said, "Oh, okay.  We're producing these

57

1    documents," and we listed them.  And we did not confirm that

2    we were producing everything that we have.  It was not a

3    code-compliant response.  So on those, yeah, he was entitled

4    to a further response, and we gave those to him, and they're

5    -- he's not complaining about them.  He's just saying we

6    should have to give more than what we're required to under

7    the code, and that's the code-compliant response.  He's

8    admitting we provided a code-compliant response.

9            MR. HANSEN:  I'm merely asking why --

10           THE COURT:  All right.  I'm at a loss.  What is

11   that you -- I'm at a loss for what this dispute is.  The --

12           MR. HANSEN:  Your Honor --

13           THE COURT:  You want the -- just what is it that

14   the defendant hasn't given you that you think you're entitled

15   to?

16           MR. HANSEN:  With respect to -- he is correct.  He

17   amended his other responses to the requests for production,

18   and I was satisfied with them.

19           With respect to these which all -- asks for all

20   documents supporting his various affirmative defenses, these

21   are very important requests.  His request to me -- and if the

22   Court isn't inclined to order it, that's fine.  I do agree

23   it's a code-compliant response.  I'm just -- it's curious

24   that in response to these ones, there's the wording defendant

25   "shall produce" all requested documents, inferring that it'll

1    happen at some unidentified point in the future.  Whereas in

2    response to --

3         THE COURT:  All right.  So, Mr. Murphy, when you

4    said you "shall produce," are you stating that you're going

5    to be producing documents in the future in response to these

6    RFPs?

7         MR. MURPHY:  If we run into any -- the way this

8    works is, if we run into anything else where we find

9    additional evidence and it fits within their requests to

10   produce or interrogatories, we have a duty to supplement

11   them, and we will, and the same thing --

12        THE COURT:  No, no, no.  Not if you "run into

13   anything."  If it's currently in your client's possession,

14   custody, or control --

15        MR. MURPHY:  We've given everything --

16        THE COURT:  -- has to be produced now.

17        MR. MURPHY:  We've given everything that's in our

18   client's possession.

19        THE COURT:  All right.

20        MR. MURPHY:  And then there's one other thing I

21   wanted to mention to alleviate counsel's concerns.  We

22   notified counsel that we're going to be providing him with a

23   further code-compliant 26(f) disclosure, just as we've

24   requested of them.  And so what -- it will reveal to him the

25   witnesses and documents we have -- either we received them

1   from his client or documents that we produced that we may be

2   intending to use at trial.  So we're going to list all of

3   that stuff so he'll see where we stand.  It'll give him an

4   update on any concerns that he has.  All he had to do was

5   write me an email and say, "Hey, have you given me

6   everything?" and I would have answered it, but to say, well,

7   I've got to amend all of these responses isn't appropriate.

8           THE COURT:  All right.  So that's --

9           MR. HANSEN:  I've sent multiple letters --

10          THE COURT:  No.

11          MR. HANSEN:  -- and emails.

12          THE COURT:  All right.  I've -- that takes care of

13  all of the disputes that are set forth in the email.  You all

14  are coming rapidly upon your trial date.  So I would strongly

15  encourage you to cooperate and get your discovery completed.

16          MR. HANSEN:  Your Honor, can I just note --

17          THE COURT:  All right.

18          MR. HANSEN:  -- one other thing?

19          Defendant's responses to the second, third, and

20  fourth sets of discovery requests -- as you noted, trial is

21  rapidly approaching.  They're all due either next week or the

22  week after.  We have been met with continuous, repeated

23  delays throughout this entire litigation.  Counsel can refute

24  that.  The record speaks for itself.  I have all the emails

25  showing it.  And I would just suggest that, because of the

1   impending trial date, can the Court, please, order the

2   defendants to produce responses on a timely basis, on the

3   date that they are due, to each and every one of those

4   responses -- those various sets of requests?

5              MR. MURPHY:  Your Honor, that's not an appropriate

6   request.  I can't trust counsel to give me an extension.  He

7   told me I had an extension until September 5, and then he

8   said the 21st, and he confirmed it in writing, and then later

9   he said, "Oh, no.  I made a mistake.  You don't have the

10  extension to the 21st, and by the way, all your objections

11  are waived on the request for admissions are now deemed

12  admitted," when they weren't --

13             MR. HANSEN:  I made a good faith --

14             MR. MURPHY:  Let me --

15             MR. HANSEN:  I made a good faith position --

16             THE COURT:  All right.

17             MR. HANSEN:  -- based on what I understood the --

18             MR. MURPHY:  -- and they weren't done --

19             MR. HANSEN:  -- to be.

20             MR. MURPHY:  You're interrupting me, and I didn't

21  finish.

22             MR. HANSEN:  And I admitted my mistake --

23             MR. MURPHY:  And what happened was --

24             MR. HANSEN:  -- immediately --

25             THE COURT:  Okay.

1          MR. MURPHY:  -- on September 5 --

2          THE COURT:  Stop.  Both of you.

3          MR. MURPHY:  -- email and had to object to all that

4    discovery because there was no way I could answer it in one

5    day, and I relied on his extension.

6          THE COURT:  All right.

7          MR. MURPHY:  So for him to complain that there's

8    delays when his gamesmanship on his extensions, and I have

9    emails on it -- and I even responded to his emails and was

10   polite when I was on vacation.  I was in a boat --

11         THE COURT:  All right.

12         MR. MURPHY:  -- in the middle of Lake Tahoe, and I

13   was responding to his emails.  So for him to say --

14         MR. HANSEN:  He responded and demanded that I be --

15         MR. MURPHY:  -- we're not diligent --

16         MR. HANSEN:  -- removed from this case --

17         MR. MURPHY:  -- and we're not working on this --

18         MR. HANSEN:  -- and then he refused --

19         THE COURT:  Stop.

20         MR. MURPHY:  -- and we're hiding information --

21         MR. HANSEN:  -- to communicate with me and he --

22         MR. MURPHY:  -- is utter nonsense.

23         MR. HANSEN:  -- about any discovery disputes.

24         THE COURT:  All right.  I think you both need to

25   stop.

```
 1              MR. HANSEN:  That was his response.
 2              THE COURT:  I think you both need to stop.  This
 3    squabbling is completely unhelpful.  It's not good advocacy
 4    on behalf of either of your clients, and it does absolutely
 5    nothing for either one of your clients.  I refer you both to
 6    the "Civility and Professionalism Guidelines," which are on
 7    the website of the Central District of California.  It
 8    specifically itemizes discovery and encourages counsel to be
 9    civil and professional.  I very strongly encourage both of
10    you to do that.  I am not issuing any orders other than what
11    are in response to the informal discovery conference today.
12              MR. MURPHY:  Thank you, Your Honor.
13              THE COURT:  You have trial rapidly approaching.
14    You would both be well served to just conduct your discovery
15    and stop the irrelevant, unhelpful squabbling.
16              MR. MURPHY:  Thank you, Your Honor.
17              THE COURT:  All right.
18              MR. HANSEN:  Thank you, Your Honor.
19              THE COURT:  All right.  I think that ends all --
20    that is -- are all of the disputes that are in the email.  My
21    rulings are as set forth on the record.
22              MR. MURPHY:  Thank you, Your Honor.
23              THE COURT:  You're welcome
24              MR. HANSEN:  Thank you for your time, Your Honor.
25          (Proceedings adjourned at 4:45 p.m.)
```

1

2

3

4                              CERTIFICATE

5        I certify that the foregoing is a correct transcript

6   from the electronic sound recording of the proceedings in the

7   above-entitled matter.

8   /s/ Julie Messa                September 23, 2024
    Julie Messa, CET**D-403         Date
9   Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25