1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>       Plaintiff,<br><br>      vs.<br><br>PATRICK M. BYRNE, an individual,<br><br>      Defendant. | Case No. 2:23-cv-09430-SVW-PD<br>**AMENDED JOINT PROPOSED JURY INSTRUCTIONS**<br>FPC Date: 2/24/2025<br>Time:     1:30 p.m.<br>Dept.:    Courtroom 10A<br>Trial Date: 3/4/2025<br>Time:     8:30 a.m.<br><br>Judge:  Hon. Stephen V. Wilson |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5802889.2

# NUMBERED INDEX

## 1.    Jointly Agreed Upon Jury Instructions

| 1. | JCCCJI 1706 | Definition of Statement | Page 26 |
|---|---|---|---|
| 2. | JCCCJI 1707 | Fact versus Opinion | Page 27 |
| 3. | JCCCJI 1720 | Affirmative Defense - Truth | Page 28 |

## 2.    Plaintiff's Jury Instructions and Proposed Verdict Form

| 4. | JCCCJI 1700 | Defamation per se—Essential Factual Elements (Public Figure) | Page 30 |
|---|---|---|---|
| 5. | JCCCJI 1723 | Common Interest Privilege—Malice (Civ.Code, § 47(c) | Page 33 |
| 6. | Special Instructions No. 1 | | Page 34 |
| 7. | NCMCJI 4.4 | Agent and Principal - Definition | Page 35 |
| 8. | NCMCJI 4.5 | Agent – Scope of Authority Defined | Page 36 |
| 9. | NCMCJI 4.7 | Ratification | Page 37 |
| 10. | NCMCJI 4.8 | Act of Agent is Act of Principal – Scope of Authority Not in Issue | Page 38 |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| 11. | NCMCJI 4.10 | Principal Sued but Not Agent – No Issue as to Agency or Authority | Page 39 |
|---|---|---|---|
| 12. | JCCCVF 1700 | Defamation per se (Public Figure) | Page 40 |

**3. Defendant's Proposed Jury Instructions and Proposed Verdict Form**

| 12. | Special Jury Instruction No. 2 | | Page 45 |
|---|---|---|---|
| 13. | Special Jury Instruction No. 3 | | Page 46 |
| 14. | Special Jury Instruction No. 4 | | Page 47 |
| 15. | Jury Instruction 1.2 | Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial) | Page 49 |
| 16. | Jury Instruction 1.3 | Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies) | Page 50 |
| 17. | Jury Instruction 1.4 | Duty of Jury (Court Reads and Provides Written Instructions at End of Case) | Page 51 |
| 18. | Jury Instruction | Claims and Defenses | Page 52 |

| | | 1.5 | | |
|---|---|---|---|---|
| 19. | Jury Instruction 1.7 | Burden of Proof- Clear and Convincing Evidence | Page 53 |
| 20. | Jury Instruction 1.9 | What is Evidence | Page 54 |
| 21. | Jury Instruction 1.10 | What is Not Evidence | Page 55 |
| 22. | Jury Instruction 1.11 | Evidence for Limited Purpose | Page 56 |
| 23. | Jury Instruction 1.12 | Direct and Circumstantial Evidence | Page 57 |
| 24. | Jury Instruction 1.13 | Ruling on Objections | Page 58 |
| 25. | Jury Instruction 1.14 | Credibility of Witnesses | Page 59 |
| 26. | Jury Instruction 1.15 | Conduct of the Jury | Page 60 |
| 27. | Jury Instruction 1.16 | Publicity during Trial | Page 62 |
| 28. | Jury Instruction 1.17 | No Transcript Available to Jury | Page 63 |
| 29. | Jury Instruction 1.18 | Taking Notes | Page 64 |
| 30. | Jury Instruction 1.19 | Questions to Witnesses by Jurors During Trial | Page 65 |
| 31. | Jury Instruction 1.20 | Bench Conferences and Recesses | Page 66 |



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5802889.2

4

PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

| 32. | Jury Instruction 1.21 | Outline of Trial | Page 67 |
|---|---|---|---|
| 33. | Jury Instruction 2.0 | Cautionary Instructions | Page 68 |
| 34. | Jury Instruction 2.2 | Stipulations of Fact | Page 69 |
| 35. | Jury Instruction 2.3 | Judicial Notice | Page 70 |
| 36. | Jury Instruction 2.4 | Deposition in Lieu of Live Testimony | Page 71 |
| 37. | Jury Instructions 2.5 | Transcript of recording in English | Page 72 |
| 38. | Jury Instruction 2.9 | Impeachment Evidence-Witness | Page 73 |
| 39. | Jury Instructions 2.11 | Use of Interrogatories | Page 74 |
| 40. | Jury Instruction 2.11(a) | Incomplete, Evasive and/or Objections to Interrogatories | Page 76 |
| 41. | Jury Instruction 2.12 | Use of Requests for Admission | Page 78 |
| 42. | Jury Instruction 2.13 | Expert Opinion | Page 79 |
| 43. | Jury Instruction 2.14 | Charts and Summaries Not Received in Evidence | Page 80 |
| 44. | Jury Instruction 2.15 | Charts and Summaries Received in Evidence | Page 81 |

| 45. | Jury Instruction 2.16 | Evidence in electronic Format | Page 82 |
|---|---|---|---|
| 46. | Jury Instruction 3.1 | Duty to Deliberate | Page 83 |
| 47. | Jury Instruction 3.2 | Consideration of Evidence-Conduct of the Jury | Page 84 |
| 48. | Jury Instruction 3.3 | Communication with Court | Page 86 |
| 49. | Jury Instruction 3.4 | Readback or Playback Comment | Page 87 |
| 50. | Jury Instruction 3.5 | Return of Verdict | Page 88 |
| 51. | Jury Instruction 3.6 | Additional Instructions of Law | Page 89 |
| 52. | Jury instruction 3.7 | Deadlock Jury | Page 90 |
| 53. | Jury Instruction 3.8 | Continuing Deliberations after Juror is Discharged | Page 91 |
| 54. | Jury Instruction 3.9 | Post-Discharge Instruction | Page 92 |
| 55. | Jury Instruction 5.1 | Damages - Proof | Page 93 |
| 56. | Jury Instruction 5.2 | Measures of Types of Damages | Page 95 |
| 57. | Jury Instruction 5.3 | Damages--Mitigation | Page 97 |
| 58. | Jury Instruction | Damages Arising in the | Page 98 |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| | | | |
|---|---|---|---|
| | 5.4 | Future-Discount to Present Cash Value | |
| 59. | Jury Instruction 5.5 | Punitive Damages | Page 100 |
| 60. | Special Jury Instruction No. 1 | Preliminary Admonitions | Page 102 |
| 61. | Jury Instruction 5.6 | Nominal Damages | Page 103 |
| 62. | CACI 203 | Party Having Power to Produce Better Evidence | Page 105 |
| 63. | CACI 204 | Willful Suppression of Evidence | Page 106 |
| 64. | CACI 205 | Failure to Explain or Deny Evidence | Page 107 |
| 65. | CACI Instruction 1700 | Defamation per se—Essential Factual Elements (Public Figure) | Page 109 |
| 66. | JCCCJI 1706 | Definition of Statement | Page 113 |
| 67. | JCCCJI 1707 | Fact Versus Opinion | Page 114 |
| 68. | JCCCJI 1720 | Affirmative Defense – Truth | Page 115 |
| 69. | CACI Instruction 1723 | Common Interest Privilege—Malice (Civ.Code, § 47(c) | Page 117 |
| 70. | Special Verdict Form VF-1700 | Defamation per se (Public Figure) | Page 120 |



# UN-NUMBERED INDEX

## 1.    Jointly Agreed Upon Jury Instructions

| | JCCCJI 1706 | Definition of Statement | Page 26 |
|---|---|---|---|
| | JCCCJI 1707 | Fact versus Opinion | Page 27 |
| | JCCCJI 1720 | Affirmative Defense - Truth | Page 28 |

## 2.    Plaintiff's Jury Instructions and Proposed Verdict Form

| | JCCCJI 1700 | Defamation per se—Essential Factual Elements (Public Figure) | Page 30 |
|---|---|---|---|
| | JCCCJI 1723 | Common Interest Privilege—Malice (Civ.Code, § 47(c) | Page 33 |
| | Special Instructions No. 1 | | Page 34 |
| | NCMCJI 4.4 | Agent and Principal - Definition | Page 35 |
| | NCMCJI 4.5 | Agent – Scope of Authority Defined | Page 36 |
| | NCMCJI 4.7 | Ratification | Page 37 |
| | NCMCJI 4.8 | Act of Agent is Act of Principal – Scope of Authority Not in Issue | Page 38 |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| | NCMCJI 4.10 | Principal Sued but Not Agent – No Issue as to Agency or Authority | Page 39 |
|---|---|---|---|
| | JCCCVF 1700 | Defamation per se (Public Figure) | Page 40 |

**3.    Defendant's Proposed Jury Instructions and Proposed Verdict Form**

| | Special Jury Instruction No. 2 | | Page 45 |
|---|---|---|---|
| | Special Jury Instruction No. 3 | | Page 46 |
| | Special Jury Instruction No. 4 | | Page 47 |
| | Jury Instruction 1.2 | Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial) | Page 49 |
| | Jury Instruction 1.3 | Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies) | Page 50 |
| | Jury Instruction 1.4 | Duty of Jury (Court Reads and Provides Written Instructions at End of Case) | Page 51 |
| | Jury Instruction | Claims and Defenses | Page 52 |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| | | | |
|---|---|---|---|
| | **1.5** | | |
| | **Jury Instruction 1.7** | **Burden of Proof- Clear and Convincing Evidence** | **Page 53** |
| | **Jury Instruction 1.9** | **What is Evidence** | **Page 54** |
| | **Jury Instruction 1.10** | **What is Not Evidence** | **Page 55** |
| | **Jury Instruction 1.11** | **Evidence for Limited Purpose** | **Page 56** |
| | **Jury Instruction 1.12** | **Direct and Circumstantial Evidence** | **Page 57** |
| | **Jury Instruction 1.13** | **Ruling on Objections** | **Page 58** |
| | **Jury Instruction 1.14** | **Credibility of Witnesses** | **Page 59** |
| | **Jury Instruction 1.15** | **Conduct of the Jury** | **Page 60** |
| | **Jury Instruction 1.16** | **Publicity during Trial** | **Page 62** |
| | **Jury Instruction 1.17** | **No Transcript Available to Jury** | **Page 63** |
| | **Jury Instruction 1.18** | **Taking Notes** | **Page 64** |
| | **Jury Instruction 1.19** | **Questions to Witnesses by Jurors During Trial** | **Page 65** |
| | **Jury Instruction 1.20** | **Bench Conferences and Recesses** | **Page 66** |


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| | | | |
|---|---|---|---|
| | Jury Instruction 1.21 | Outline of Trial | Page 67 |
| | Jury Instruction 2.0 | Cautionary Instructions | Page 68 |
| | Jury Instruction 2.2 | Stipulations of Fact | Page 69 |
| | Jury Instruction 2.3 | Judicial Notice | Page 70 |
| | Jury Instruction 2.4 | Deposition in Lieu of Live Testimony | Page 71 |
| | Jury Instructions 2.5 | Transcript of recording in English | Page 72 |
| | Jury Instruction 2.9 | Impeachment Evidence-Witness | Page 73 |
| | Jury Instructions 2.11 | Use of Interrogatories | Page 74 |
| | Jury Instruction 2.11(a) | Incomplete, Evasive and/or Objections to Interrogatories | Page 76 |
| | Jury Instruction 2.12 | Use of Requests for Admission | Page 78 |
| | Jury Instruction 2.13 | Expert Opinion | Page 79 |
| | Jury Instruction 2.14 | Charts and Summaries Not Received in Evidence | Page 80 |
| | Jury Instruction 2.15 | Charts and Summaries Received in Evidence | Page 81 |

| | | | |
|---|---|---|---|
| | **Jury Instruction 2.16** | **Evidence in electronic Format** | **Page 82** |
| | **Jury Instruction 3.1** | **Duty to Deliberate** | **Page 83** |
| | **Jury Instruction 3.2** | **Consideration of Evidence- Conduct of the Jury** | **Page 84** |
| | **Jury Instruction 3.3** | **Communication with Court** | **Page 86** |
| | **Jury Instruction 3.4** | **Readback or Playback Comment** | **Page 87** |
| | **Jury Instruction 3.5** | **Return of Verdict** | **Page 88** |
| | **Jury Instruction 3.6** | **Additional Instructions of Law** | **Page 89** |
| | **Jury instruction 3.7** | **Deadlock Jury** | **Page 90** |
| | **Jury Instruction 3.8** | **Continuing Deliberations after Juror is Discharged** | **Page 91** |
| | **Jury Instruction 3.9** | **Post-Discharge Instruction** | **Page 92** |
| | **Jury Instruction 5.1** | **Damages - Proof** | **Page 93** |
| | **Jury Instruction 5.2** | **Measures of Types of Damages** | **Page 95** |
| | **Jury Instruction 5.3** | **Damages--Mitigation** | **Page 97** |
| | **Jury Instruction** | **Damages Arising in the** | **Page 98** |



5802889.2

PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

| | | | |
|---|---|---|---|
| | **5.4** | **Future-Discount to Present Cash Value** | |
| | **Jury Instruction 5.5** | **Punitive Damages** | **Page 100** |
| | **Special Jury Instruction No. 1** | **Preliminary Admonitions** | **Page 102** |
| | **Jury Instruction 5.6** | **Nominal Damages** | **Page 103** |
| | **CACI 203** | **Party Having Power to Produce Better Evidence** | **Page 105** |
| | **CACI 204** | **Willful Suppression of Evidence** | **Page 106** |
| | **CACI 205** | **Failure to Explain or Deny Evidence** | **Page 107** |
| | **CACI Instruction 1700** | **Defamation per se—Essential Factual Elements (Public Figure)** | **Page 109** |
| | **JCCCJI 1706** | **Definition of Statement** | **Page 113** |
| | **JCCCJI 1707** | **Fact Versus Opinion** | **Page 114** |
| | **JCCCJI 1720** | **Affirmative Defense – Truth** | **Page 115** |
| | **CACI Instruction 1723** | **Common Interest Privilege—Malice (Civ.Code, § 47(c)** | **Page 117** |
| | **Special Verdict Form VF-1700** | **Defamation per se (Public Figure)** | **Page 120** |



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**

Pursuant to the Court's March 20, 2024 Civil Trial Preparation Order, Defendant Patrick M. Byrne, here submit the following proposed special jury instructions for the claims and defenses being asserted in this case.

In regard to the disputed jury instructions and verdict forms, Plaintiff's positions are as follows:

- Plaintiff objects to Defendant's request that Ninth Circuit Jury Instructions 1.2, 1.3, 1.4, 1.5, 1.7, 1.9, 1.10, 1.11, 1.12, 1.13, 1.14, 1.15, 1.16, 1.17, 1.18, 1.19, 1.20, 1.21, 2.0, 2.2, 2.3, 2.4, 2.5, 2.9, 2.11 be read to the jury on the grounds that it is improper here because the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*." Plaintiff further objects to these requests because, as written by Defendant, they are incomplete.

- Plaintiff objects to Defendant's request that the Addendum Ninth Circuit Jury Instruction 2.11 be read to the jury on the grounds that it is improper here because the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*." Plaintiff further objects to this request because, as written by Defendant, it is vague and confusing, and is an improper instruction.

- Plaintiff objects to Defendant's request that the Addendum Ninth Circuit Jury Instructions 2.12, 2.13, 2.14, 2.15, 2.16, 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 3.8, 3.9, 5.1, 5.2, 5.4, 5.6,  be read to the jury on the grounds that it is improper here because the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*." Plaintiff further objects to these requests because, as written by Defendant, many of these jury instructions are incomplete.

- Plaintiff objects to Defendant's request that the Addendum Ninth Circuit

Jury Instruction 5.2 be read to the jury on the grounds that it is improper here because the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*." Plaintiff further objects to this request because, as written by Defendant, the jury instruction is incomplete.

• Plaintiff objects to Defendant's request that the Addendum Ninth Circuit Jury Instruction 5.5 be read to the jury on the grounds that it is improper here because the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*." Plaintiff further objects to this request because, as written by Defendant, the jury instruction is incomplete and the single change to the jury instruction eliminates a fundamental right that a jury has to make a determination of punitive damages imposing an obligation on them contrary to law.

• Plaintiff objects to Defendant's request for Special Jury Instruction No. 1 on the grounds that it is not a proper jury instruction. Indeed, Defendant's own cited case, *Finney v. Lockhart*, 35 Cal.2d 161, 164 (1950), recognized that the rule cited by Defendant is for the Court to determine on review of the trial court proceedings: "The rule that the exemplary should bear a reasonable relation to the actual damages is only for the purpose of guarding against excess. [Citations omitted]. But these cases also state that there is no fixed ratio by which to determine the proper proportion between the two classes of damages." Defendant's other cited case also relies on misinterpretations of the case law cited by Defendant. In *Liodas v. Sahadi*, Cal.3d 278, 284 (1977), merely re-stated that rule in ruling a re-trial on damages due an erroneous jury instructions given to the jury, stating: "…in view of the erroneous damages instructions it is not possible to determine on what basis liability was predicated."

• Plaintiff objects to Defendant's request for Special Jury Instruction No. 3 on the grounds that it is not a proper jury instruction as phrased and misstates the applicable law. Indeed, Defendant's own cited case, *Bindrim v Mitchell*, 92 Cal.App.3d 61 (1979) provides: "Where the publication comes from a known reliable source and there is nothing in



the circumstances to suggest inaccuracy, there is no duty to investigate. [citation] … *investigatory failure alone* is insufficient to find actual malice." (emphasis added.)  The California Supreme Court in *McCoy v. Hearst Corp.*, 42 Cal.3d 835, 867 (1986) clarified that "in the constitutional malice context, failure to investigate does not in and of itself establish bad faith." Moreover, a defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice, including, among other factors, (i) *a failure to investigate*, (ii) anger and hostility toward the plaintiff; (iii) reliance upon sources known to be unreliable; or (iv) reliance on sources known to be biased against the plaintiff. *See Reader's Digest Assn. v. Superior Court,* 37 Cal.3d 244, 257–258 (1984); *see also Sanders v. Walsh*, 219 Cal.App.4th 855, 873 (2013). Such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication. *Id.; Young v. CBS Broadcasting, Inc.*, 212 Cal.App.4th 551, 563 (2012).

- Plaintiff objects to Defendant's request for Special Jury Instruction No. 4 on the grounds that it is not a proper jury instruction as phrased and misstates the applicable law.  Indeed, Defendant's own cited case, *St. Amant v. Thompson*, 390 U.S. 727, 731–732 (1968), provides: "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice. … The finder of fact must determine whether the publication was indeed made in good faith. *Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports*."  (emphasis added.)  The California Supreme Court in *McCoy v. Hearst Corp.*, 42 Cal.3d 835, 867 (1986) clarified that "in the constitutional malice context, failure to investigate does not in and of itself establish bad faith." Moreover, a defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice, including, among other factors, (i) a failure to investigate, (ii)

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

anger and hostility toward the plaintiff; (iii) reliance upon sources known to be unreliable; or (iv) reliance on sources known to be biased against the plaintiff. *See Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 257–258 (1984); *see also Sanders v. Walsh*, 219 Cal.App.4th 855, 873 (2013). Such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication. *Id.; Young v. CBS Broadcasting, Inc.*, 212 Cal.App.4th 551, 563 (2012).

- Plaintiff objects to Defendant's request that CACI Jury Instructions 203, 204, and 205 be read to the jury on the grounds that it is improper here because the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*."

- As to Defendant's objection to Plaintiff's requested CACI Jury Instructions 1700 and Verdict Form 1700 that punitive damages are included, Defendant's only basis for objection is that Defendant has requested bifurcation of the trial on liability and damages in the Final Pre-Trial Conference Order, but not through a motion for bifurcation. No such bifurcation has been ordered.

- As to Defendant's objection to Plaintiff's requested CACI Jury Instruction 1723, Defendant's objection is misplaced and confuses the term "actual malice" for defamation of a public person with actual malice for the qualified privilege under California Civil Code section 47. For the purposes of section 47's qualified privilege, actual malice means that the defendant (1) was motivated by hatred or ill will towards the plaintiff, or (2) lacked reasonable grounds for its belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights. *Schep v. Capital One, N.A.*, 12 Cal.App.5th 1331, 1337 (2017). "[M]alice [as used in Civil Code section 47(c)] has been defined as 'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.' " *Brown v. Kelly Broadcasting Co.*, 48 Cal.3d 711, 723 (1989) (internal citation omitted); *Cornell v. Berkeley Tennis Club,* 18 Cal.App.5th 908, 951 (2017) ("[M]alice focuses upon the defendant's state of mind, not his [or her] conduct."). "[I]f malice is shown, the privilege is not merely overcome; it never arises in the first instance." *Brown*, 48 Cal.3d at 723, fn. 7.

- As to Defendant's objections to Plaintiff's proposed Ninth Circuit Model Civil Jury Instructions Nos. 4.4, 4.5, 4.7, 4.8, and 4.10, Defendant's objections are misplaced and without merit on the grounds that Defendant contends these instructions are each related to the liability of corporations and partnerships and thus have no bearing on this case. This is incorrect. Each of these Ninth Circuit Model Civil Jury Instructions are not limited to corporate entities, but rather, based on the plain language of each instruction, are intended for use by individuals as well, and therefore are applicable in this case. Moreover, the Defendant here has claimed in discovery that he provided authority to others to act on his behalf in various ways that are material to this case, including, but not limited to, posting defamatory and malicious content about Plaintiff online. Accordingly, these instructions on agency principles are indeed necessary and applicable in this case.

- As to Defendant's objection to Plaintiff's proposed Special Jury Instruction No. 1, Defendant's objection is misplaced and without merit. In fact, Defendant recites the very standard set forth in both *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) and *Kaelin v. Globe Communications Corp.,* 162 F.3d 1036, 1040 (9th Cir. 1998), which supports the validity of Plaintiff's proposed Special Jury Instruction No. 1. That is, circumstantial evidence of "a story [that] is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call…" or "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports[]" is proper to prove actual malice. *St. Amant*, 390 U.S. at 731. Moreover, a review of the totality of the circumstances, as *Kaelin* stands for, is the definition of circumstantial evidence, which is a proper basis for finding actual malice.

In regard to the disputed jury instructions and verdict forms, Defendant's positions are set forth as follows:

- Plaintiff's objections to Defendant's request that Ninth Circuit Jury Instructions 1.2, 1.3, 1.4, 1.5, 1.7, 1.9, 1.10, 1.11, 1.12, 1.13, 1.14, 1.15, 1.16, 1.17, 1.18, 1.19, 1.20, 1.21, 2.0, 2.2, 2.3, 2.4, 2.5, 2.9, 2.11 be read to the jury lack merit. Although the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*" the order does not preclude



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Defendant from engaging the court with the reading of these instructions to ensure that they are read and to know which ones are being read to prepare this case for trial. The Court will edit these instructions.

- Plaintiff objections to Defendant's request that the Addendum Ninth Circuit Jury Instruction 2.11 be read to the jury lack merit. Although the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*" the order does not preclude Defendant from engaging the court with the reading of this instructions to ensure that it is read and to prepare this case for trial. Defendant's request for the supplemental 2.11 is appropriate. The jury should understand if a party objects to an interrogatory that they cannot automatically be criticized if the party asking the question failed to bring a motion to obtain a further response. The instruction as written is not vague and confusing.

- Plaintiff objections to Defendant's request that the Addendum Ninth Circuit Jury Instructions 2.12, 2.13, 2.14, 2.15, 2.16, 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 3.8, 3.9, 5.1, 5.2, 5.4, 5.6, be read to the jury lack merit. Although the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*" the order does not preclude Defendant from engaging the court with the reading of these instructions to ensure that they are read and to prepare this case for trial. The court edits these instructions as it deems appropriate.

- Plaintiff objections to Defendant's request that the Addendum Ninth Circuit Jury Instruction 5.2 be read to the jury lacks merit. Although the Court's March 20, 2024 Civil Trial Preparation Order (2:5-8) specifically states, "Counsel need only submit proposed substantive jury instructions, the Court propounds its own general instructions and essentially follows the format set out in the *Ninth Circuit Model Jury Instructions*" the order does not preclude Defendant from engaging the court with the reading this instruction to ensure that it is read and to prepare this case for trial. Defendant provides a proposed instruction 5.2 with recommended edits but the court will undertake that task.

1

2    • Plaintiff objections to Defendant's request that the Addendum Ninth
3    Circuit Jury Instruction 5.5 be read to the jury lacks merit. Although the
     Court's March 20, 2024 Civil Trial Preparation Order (2:5-8)
4    specifically states, "Counsel need only submit proposed substantive jury
     instructions, the Court propounds its own general instructions and
5    essentially follows the format set out in the *Ninth Circuit Model Jury
6    Instructions*" the order does not preclude Defendant from engaging the
     court with the reading this instruction to ensure that it is read and to
7    prepare this case for trial. The single change to the jury instruction that
8    Defendant is requesting will ensure that Defendant will receive a fair
     trial on Plaintiff's punitive damages claim eliminates a fundamental right
9    that a jury because the jury must (and not may) consider the relationship
10   of any award of punitive damages to any actual harm suffered by Plaintiff
     under the California Supreme Court rulings of <u>Liodas v. Sahadi</u> (1977)
11   19 Cal.3d 278, 284 and <u>Finney v. Lockhart</u> (1950) 35 Cal.2d 161, 164
12   and this standard as stated in revised 5.5 does not purport to state the sole
     consideration the jury is to evaluate when assessing punitive damages.
13   This is a mandatory consideration of the jury.

14
15   • Plaintiff objections to Defendant's request for Special Jury Instruction
     No. 1 lacks merit. Plaintiff misinterprets the California Supreme Court's
16   rulings in <u>Finney v. Lockhart</u> (1950) 35 Cal.2d 161, 164 and <u>Liodas v.
     Sahadi</u> (1977) 19 Cal.3d 278, 284 (1977) but admits that these cases both
17   stand for the proposition that "The rule that the exemplary should bear a
18   reasonable relation to the actual damages is only for the purpose of
     guarding against excess. These cases also state that there is no fixed ratio
19   by which to determine the proper proportion between the two classes of
20   damages. Plaintiff has cite to no fact or law that support his distorted
     arguments regarding these two cases.
21
22   • Plaintiff objections to Defendant's request that CACI Jury Instructions
     203, 204, and 205 be read to the jury lack merit. These instructions are
23   not contained in the Ninth Circuit Model Instructions and pursuant to
24   <u>Federal Rule of Evidence</u> 302 the court is properly requested by
     Defendant to read them to the jury since the Ninth Circuit Rules do not
25   have these evidentiary standards contained in them. Plaintiff makes no
26   contention that these instructions are not proper statements of applicable
     California law.
27
28   • As to Defendant's objection to Plaintiff's requested CACI Jury

Instructions 1700 and Verdict Form 1700 that punitive damages are included, Defendant's request for bifurcation of Plaintiff's punitive damages claims was raised in its Memorandum of Contention and law, its supplemental brief on the issue that is being filed today and in the Proposed Pretrial Order. The court needs to rule on the issue and then determine how CACI Instruction 1700 and related Verdict Form 1700 should be modified to comply with the court's order.

- Defendant objects to Plaintiff's Proposed CACI jury instruction 1723 and on the ground that he is not asserting a privilege defense based on Civil Code 47(c) and the instruction is not relevant to any defenses by the Defendant. This instruction will confuse the jury as to the standard they must use which is set forth in CACI 1700 to decide this case which is Plaintiff must prove by clear and convincing evidence that Defendant made a statement knowing it was false or made a statement having serious doubts that it is true. The jury should not be subjected to such confusion.

- Defendant objects to Plaintiff's Proposed Special Jury Instruction No. 1 on the grounds that it is not a proper jury instruction, but a misstatement and conflation of the actual malice inquiry. *St. Amant* makes it clear that good faith will not be found "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call…" or "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). *Kaelin* stands for the proposition that the court will examine the totality of the circumstances *of the publication* where the headline presents as potentially defamatory, but the body of the work is not. (*Kaelin v. Globe Communications Corp.,* 162 F.3d 1036, 1040-1041 (9th Cir.1998).)

- Defendant objects to Plaintiff's Proposed 9th Circuit Model Jury Instruction No. 4.4 on the grounds that it is irrelevant. That instruction is part of the instructions related to the liability of corporations and partnerships and has no bearing on this case. Plaintiff only sued Defendant in his capacity as an individual, and sued no other party, and named no DOE defendants. Whether Defendant operated as an agent or principal of anyone else, or whether anyone operated as his agent or principal is entirely irrelevant to the subject matter of this litigation. Such an instruction would only serve to confuse the jury. There are no allegations in the complaint alleging any principal-agent relationship between Defendant and anyone else.

**PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**

- Defendant objects to Plaintiff's Proposed 9th Circuit Model Jury Instruction No. 4.5 on the grounds that it is irrelevant. That instruction is part of the instructions related to the liability of corporations and partnerships and has no bearing on this case. Plaintiff only sued Defendant in his capacity as an individual, and sued no other party, and named no DOE defendants. Whether Defendant operated as an agent of anyone else, or whether anyone operated as his agent is entirely irrelevant to the subject matter of this litigation. Such an instruction would only serve to confuse the jury. There are no allegations in the complaint alleging anyone acted as an agent for or on behalf of Defendant.

- Defendant objects to Plaintiff's Proposed 9th Circuit Model Jury Instruction No. 4.7 on the grounds that it is irrelevant. That instruction is part of the instructions related to the liability of corporations and partnerships and has no bearing on this case. Plaintiff only sued Defendant in his capacity as an individual, and sued no other party, and named no DOE defendants. There are no allegations in the complaint that any party ratified Defendant's conduct, or that he ratified the conduct of anyone else.

- Defendant objects to Plaintiff's Proposed 9th Circuit Model Jury Instruction No. 4.8 on the grounds that it is irrelevant. That instruction is part of the instructions related to the liability of corporations and partnerships and has no bearing on this case. Plaintiff only sued Defendant in his capacity as an individual, and sued no other party, and named no DOE defendants. Plaintiff made no allegations of any principal-agency relationship between Defendant and anyone else. Therefore, this instruction is entirely irrelevant to the subject matter of the litigation.

- Defendant objects to Plaintiff's Proposed 9th Circuit Model Jury Instruction No. 4.10 on the grounds that it is irrelevant. That instruction is part of the instructions related to the liability of corporations and partnerships and has no bearing on this case. Plaintiff only sued Defendant in his capacity as an individual, and sued no other party, and named no DOE defendants. Whether any individuals operated as an agent for Defendant in posting on his social media accounts is entirely irrelevant to the subject matter of the litigation. Furthermore, the evidence presented from Defendant's alleged social accounts has been objected to by Defendant as irrelevant.

PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

- • Plaintiff's objection to Defendant's request for Special Jury Instruction No. 3 is without merit. The instruction is a proper summation of the actual malice standard as it pertains to Defendant's duty to investigate. Plaintiff cites the very section on which Defendant relied to prepare the instruction.

- • Plaintiff's objection to Defendant's request for Special Jury Instruction No. 4 is without merit. The instruction is a proper summation of the subjective manner of the actual malice standard. Plaintiff cites the very section on which Defendant relied to prepare the instruction, which clearly states that negligence, gross or otherwise, and lack of due care, cannot establish defamatory liability.

The Parties reserve all rights relating to jury instructions and verdict forms.

Dated: February 21, 2025

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP

By:  */s/ Zachary C. Hansen*

BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

PAUL B. SALVATY (State Bar No. 171507)
PSalvaty@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave., 38th Fl.
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

ABBE DAVID LOWELL (*pro hac vice* forthcoming)

23

PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

1  AbbeLowellPublicOutreach@winston.com
2  WINSTON & STRAWN LLP
   1901 L St., N.W.
3  Washington, D.C. 20036-3508
   Telephone:   (202) 282-5000
4  Facsimile:   (202) 282-5100

5  *Attorney for Plaintiff*
   *Robert Hunter Biden*
6

7  Dated:  February 21, 2025        LAW OFFICES OF MICHAEL C. MURPHY

8                           By: /s/ Michael C. Murphy, Esq.
9                               Michael C. Murphy, Esq.
                                Michael C. Murphy, Jr., Esq.
10                              Attorneys for Defendant,
11                              Patrick Byrne

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>AGREED UPON JURY INSTRUCTIONS</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1  ## <u>Judicial Council Of California Civil Jury Instruction 1706</u>

2  ### Definition of Statement

3  The word "statement" in these instructions refers to any form of communication or

4  representation, including spoken or written words or pictures or social media posts.



1

## **Judicial Council Of California Civil Jury Instruction 1707**

2

### **Fact Versus Opinion**

3  For Plaintiff Robert Hunter Biden to recover, Defendant Patrick M. Byrne's

4  statement must have been a statement of fact, not opinion. A statement of fact is one

5  that can be proved to be true or false. In some circumstances, Plaintiff Robert

6  Hunter Biden may recover if a statement phrased as an opinion implies that a false

7  statement of fact is true.  In deciding this issue, you should consider whether the

8  average reader or listener would conclude from the language of the statement and its

9  context that Defendant Patrick M. Byrne was implying that a false statement of fact

10  is true.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **Judicial Council Of California Civil Jury Instruction 1720**

2

### **Affirmative Defense—Truth**

3 Defendant Patrick M. Byrne is not responsible for Plaintiff Robert Hunter Biden's

4 harm, if any, if Defendant Patrick M. Byrne proves that his statement about Plaintiff

5 Robert Hunter Biden was true. Defendant Patrick M. Byrne does not have to prove

6 that the statement was true in every detail, so long as the statement was substantially

7 true.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

1      **<u>Judicial Council Of California Civil Jury Instruction 1700</u>**

2      **Defamation per se—Essential Factual Elements**

3      **(Public Figure)**

| | | | | | | |
|---|---|---|---|---|---|---|
| Request by Plaintiff | X | Request by Defendant | | Requested by | | |
| Given as Proposed | | Given as Modified | | Given on Court's Motion | | |
| Refused | | | | | | |
| Withdrawn | | | _____ Honorable Stephen V. Wilson Judge | | | |

10 Plaintiff Robert Hunter Biden claims that Defendant Patrick M. Byrne harmed him

11 by making one or more of the following statement(s):

12              So in November 2021, I went back to the Middle East. I

13              met with a group including a special Iranian figure, an

14              old friend who let me know a World War was coming, and had a proposal to avert it. I told them I would relay

15              the proposal but I did not think it would fly.

16              In the course of being there, and through a mechanism I am not going to explain here, I became aware of an

17              additional situation. Hunter Biden was reaching out to the Iranian government in the fall of 2021 with the following

18              offer: *You Iranians have $8 billion frozen in a bank*

19              *account in South Korea. My father will unfreeze it in return for $800 million being funneled into a numbered*

20              *account for us. And if you do this deal with us, it will*

21              *lubricate other negotiations which have recently started between us.* By that, the Iranians believed that Hunter

22              meant the JCPOA talks, which had restarted in Geneva a

23              month or two previously. In other words, something along the lines of, "Pay us $100 million and we let you

24              keep 10 nukes, $200 million for 20 nukes," etc. But I am making up the pricing. Hunter was doing this through a

25              middleman, the son of the Minister of Defense of

26              Pakistan. That son was meeting with Hunter, then relaying messages to someone in Iran. And he was being

27              reckless enough to leave voicemails in Iran about it.

28

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

When I returned, the agencies went to work over the
weekend. I was told a week later that they had confirmed
it all. The voice on the voicemail that I had acquired was
voice-matched to the son of the Minister of Defense of
Pakistan, who had a connection to Hunter Biden.
Anyway, in December, 2021, I was told that the scheme
was confirmed across the agencies.

To establish this claim, Plaintiff Robert Hunter Biden must prove that all of the

following are more likely true than not true:

*Liability*

1.    That Defendant Patrick M. Byrne made the statement to persons other

than Plaintiff Robert Hunter Biden;

2.    That these people reasonably understood that the statement was about

Plaintiff Robert Hunter Biden;

3.    That these people reasonably understood the statement to mean that

Plaintiff Robert Hunter Biden had committed a crime; and

4.    That the statement was false.

In addition, Plaintiff Robert Hunter Biden must prove by clear and convincing

evidence that Defendant Patrick M. Byrne  knew the statement was false or had

serious doubts about the truth of the statement.

*Actual Damages*

Plaintiff Robert Hunter Biden has proved all of the above, then he is entitled to

recover his actual damages if he proves that Defendant Patrick M. Byrne's wrongful

conduct was a substantial factor in causing any of the following:

a.  Harm to Plaintiff Robert Hunter Biden's property, business, trade,
    profession, or occupation;

b.  Expenses Plaintiff Robert Hunter Biden's had to pay as a result of the
    defamatory statements;

c.  Harm to Plaintiff Robert Hunter Biden's reputation; or

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1        d.  Shame, mortification, or hurt feelings.

2    *Assumed Damages*

3    Even if Plaintiff Robert Hunter Biden has not proved any actual damages for harm

4    to reputation or shame, mortification, or hurt feelings, the law nonetheless assumes

5    that he has suffered this harm. Without presenting evidence of damage, Plaintiff

6    Robert Hunter Biden is entitled to receive compensation for this assumed harm in

7    whatever sum you believe is reasonable. You must award at least a nominal sum,

8    such as one dollar.

9    *Punitive Damages*

10       Plaintiff Robert Hunter Biden may also recover damages to punish Defendant

11   Patrick M. Byrne if he proves by clear and convincing evidence that Defendant

12   Patrick M. Byrne acted with malice, oppression, or fraud.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## Judicial Council Of California Civil Jury Instruction 1723

## Common Interest Privilege—Malice (Civ.Code, § 47(c)

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | | |
| | | | | | Judge |

Plaintiff Robert Hunter Biden cannot recover damages from Defendant Patrick M. Byrne, even if the statement was false, unless Plaintiff Robert Hunter Biden also proves either:

1. That in making the statement(s), Defendant Patrick M. Byrne acted with hatred or ill will toward Plaintiff Robert Hunter Biden, showing Defendant Patrick M. Byrne's willingness to vex, annoy, or injure Plaintiff Robert Hunter Biden; or

2. That Defendant Patrick M. Byrne had no reasonable grounds for believing the truth of the statement.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| Plaintiff's Special Instruction No. 1 | | | | | |
|---|---|---|---|---|---|
| Request by Plaintiff | X | Request by Defendant | | Requested by | |
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Honorable Stephen V. Wilson | |
| | | | | Judge | |

A defendant cannot automatically ensure a favorable verdict by testifying that he published with a belief that the statements were true. Rather, the finder of fact must determine whether the publication was indeed made in good faith. Because direct evidence to this effect is extremely difficult to obtain, actual malice may be proven by circumstantial evidence, given the totality of the circumstances surrounding the publication.

Authorities:

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Kaelin v. Globe Communications Corp.,* 162 F.3d 1036, 1040 (9th Cir.1998).

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1

## <u>Ninth Circuit Model Civil Jury Instruction 4.4</u>

2

## Agent and Principal - Definition

3

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Honorable Stephen V. Wilson | |
| | | | | Judge | |

9  An agent is a person who performs services for another person under an express or

10  implied agreement and who is subject to the other's control or right to control the

11  manner and means of performing the services. The other person is called a principal.

12  One may be an agent without receiving compensation for services. The agency

13  agreement may be oral or written.

PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

### Ninth Circuit Model Civil Jury Instruction 4.5

**Agent – Scope of Authority Defined**

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | | |
| | | | Judge | | |

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**<u>Ninth Circuit Model Civil Jury Instruction 4.7</u>**

**Ratification**

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | | |
| | | | | Judge | |

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

5802889.2

**PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## Ninth Circuit Model Civil Jury Instruction 4.8

### Act of Agent is Act of Principal – Scope of Authority Not in Issue

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Honorable Stephen V. Wilson | |
| | | | | Judge | |

Any act or omission of an agent within the scope of authority is the act or omission of the principal.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## Ninth Circuit Model Civil Jury Instruction 4.10

### Principal Sued but Not Agent – No Issue as to Agency or Authority

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | | |
| | | | Judge | | |

The individuals Patrick Byrne authorized to post on social media on his behalf were the agents of the defendant Patrick Byrne, and, therefore, any act or omission of those individuals was the act or omission of Patrick Byrne.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## Judicial Council Of California Verdict Form VF-1700

### Defamation per se

### (Public Figure)

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | |

Judge

We answer the questions submitted to us as follows:

1.      Did Defendant Patrick M. Byrne make the following statement to persons] other than Plaintiff Robert Hunter Biden:

> So in November 2021, I went back to the Middle East. I met with a group including a special Iranian figure, an old friend who let me know a World War was coming, and had a proposal to avert it. I told them I would relay the proposal but I did not think it would fly.
>
> In the course of being there, and through a mechanism I am not going to explain here, I became aware of an additional situation. Hunter Biden was reaching out to the Iranian government in the fall of 2021 with the following offer: *You Iranians have $8 billion frozen in a bank account in South Korea. My father will unfreeze it in return for $800 million being funneled into a numbered account for us. And if you do this deal with us, it will lubricate other negotiations which have recently started between us.* By that, the Iranians believed that Hunter meant the JCPOA talks, which had restarted in Geneva a month or two previously. In other words, something along the lines of, "Pay us $100 million and we let you keep 10 nukes, $200 million for 20 nukes," etc. But I am making up the pricing. Hunter was doing this through a middleman, the son of the Minister of Defense of Pakistan. That son was meeting with Hunter, then

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

relaying messages to someone in Iran. And he was being
reckless enough to leave voicemails in Iran about it.
When I returned, the agencies went to work over the
weekend. I was told a week later that they had confirmed
it all. The voice on the voicemail that I had acquired was
voice-matched to the son of the Minister of Defense of
Pakistan, who had a connection to Hunter Biden.
Anyway, in December, 2021, I was told that the scheme
was confirmed across the agencies.

___ Yes ___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.      Did the people to whom the statement was made reasonably understand that the statement was about Plaintiff Robert Hunter Biden?

___ Yes ___ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.      Did these people reasonably understand the statement to mean that Plaintiff Robert Hunter Biden committed a crime?

___ Yes ___ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.      Was the statement false?

___ Yes ___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5.      Did Plaintiff Robert Hunter Biden prove by clear and convincing evidence that Defendant Patrick M. Byrne knew the statement was false or had serious doubts about the truth of the statement?

___ Yes ___ No

If your answer to question 5 is yes, then answer questions 6, 7, and 8. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

ACTUAL DAMAGES

6.      Was Defendant Patrick M. Byrne's conduct a substantial factor in causing Plaintiff Robert Hunter Biden actual harm?

___ Yes ___ No

If your answer to question 6 is yes, then answer question 7. If you answered no, skip question 7 and answer question 8.

7.      What are Plaintiff Robert Hunter Biden's actual damages for:

a.      Harm to Plaintiff Robert Hunter Biden's property, business, trade, profession, or occupation?

$_____

b.      Expenses Plaintiff Robert Hunter Biden had to pay as a result of the defamatory statements?

$_____

c.      Harm to Plaintiff Robert Hunter Biden's reputation?

$_____

d.      Shame, mortification, or hurt feelings?

$_____

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

If Plaintiff Robert Hunter Biden has not proved any actual damages for either c or d, then answer question 8. If Plaintiff Robert Hunter Biden has proved actual damages for both c and d, skip question 8 and answer question 9.

ASSUMED DAMAGES

8.    What are the damages you award Plaintiff Robert Hunter Biden for the assumed harm to his reputation, and for shame, mortification, or hurt feelings? You must award at least a nominal sum.

$_____

PUNITIVE DAMAGES

9.    Did Plaintiff Robert Hunter Biden prove by clear and convincing evidence that Defendant Patrick M. Byrne acted with malice, oppression, or fraud? ___ Yes ___ No

If your answer to question 9 is yes, then answer question 10. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

10.    What is your award of punitive damages, if any, against Defendant Patrick M. Byrne?

$_____

Signed: _____

Presiding Juror

Dated: _____

After this verdict form has been signed, notify the clerk of the Court.



1   **<u>DEFENDANT'S PROPOSED JURY INSTRUCTIONS</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Special Jury Instruction No. 2 | | Authorities *Melaleuca, Inc., v Clark* (1998) 66 Cal.Appl.4th 1344, 1365 | | | |
|---|---|---|---|---|---|
| Requested by Plaintiff | | Requested by Defendant | X | Requested by | |
| Requested by Cross-Complaint | | Requested by Cross-Defendant | | Given on Court's Motion | |
| Given as Requested | | Given as Modified | | | |
| Refused | | | | | |
| Withdrawn | | | | Judicial Officer | |

Special Jury Instruction No. 2

The actual malice standard for defamation looks to the subjective state of mind of the Defendant to determine whether Defendant knowingly published false statements, or harbored serious doubts about veracity of the statements. California law provides that constitutional malice is subjective recklessness or doubt. It is not an objective standard.


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| Special Jury Instruction No. 3 | | Authorities *Bindrim v Mitchell* (1979) 92 Cal.App.3d 61, 73 | | | |
|---|---|---|---|---|---|
| Requested by Plaintiff | | Requested by Defendant | X | Requested by | |
| Requested by Cross-Complaint | | Requested by Cross-Defendant | | Given on Court's Motion | |
| Given as Requested | | Given as Modified | | | |
| Refused | | | | | |
| Withdrawn | | | Judicial Officer | | |

Special Jury Instruction No. 3

Defendant was under no obligation to conduct any personal investigation of the facts prior to publishing the statements so long as he relied on information obtained from reliable sources, and the circumstances did not suggest the unreliability of those sources.

**PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| Special Jury Instruction No. 4 | | Authorities *St. Amant v Thompson*, 390 U.S. 727, 730-731 (1968) | | | |
|---|---|---|---|---|---|
| Requested by Plaintiff | | Requested by Defendant | X | Requested by | |
| Requested by Cross-Complainant | | Requested by Cross-Defendant | | Given on Court's Motion | |
| Given as Requested | | Given as Modified | | | |
| Refused | | | | _____ Judicial Officer | |
| Withdrawn | | | | | |

Special Jury Instruction No. 4

Whether Defendant had a high degree of awareness of the falsity of the statements is not measured by whether a reasonably prudent person would have published the statements. Lack of due care or gross or extreme negligence during the investigation or in publishing the statements cannot establish liability for defamation.

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP ATTORNEYS AT LAW

5802889.2

**PROPOSED JURY INSTRUCTIONS AND VERDICT FORM**

Defendant's Request that the attached Ninth Circuit Jury Instructions Be Read to the Jury

## Jury Instruction 1.2 Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

1

**Jury Instruction 1.3 Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

2

## Jury Instruction 1.4 Duty of Jury (Court Reads and Provides Written Instructions at End of Case)

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*Or*

[A copy of these instruction swill be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

3

## Jury Instruction 1.5 Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff asserts that [*plaintiff's claims*]. The plaintiff has the burden of proving these claims.

The defendant denies those claims [and also contend that [*defendant's counterclaims and/or affirmative defenses*]]. [The defendant has the burden of proof on these [*counterclaims and/or affirmative defenses.*]]

[*the plaintiff denies [defendant's counterclaims and/or affirmative defenses*].]

4

**Jury Instruction 1.7 Burden of Proof— Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

6

## Jury Instruction 1.9 What is Evidence

The evidence you are to consider in deciding what the facts are consists of:

1.  The sworn testimony of the any witness;

2.  The exhibits that are admitted into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts I [may instruct] [have instructed] you to accept as proved.

8

## Jury Instruction 1.10 What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

9

## Jury Instruction 1.11 Evidence for Limited Purpose

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

10

## Jury Instruction 1.12 Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

11

### Jury Instruction 1.13 Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I  sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

12

## Jury Instruction 1.14 Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) The opportunity and ability of the witness to see or hear or know the things testified to;
(2) The witness's memory;
(3) The witness's manner while testifying;
(4) The witness's interest in the outcome of the case, if any;
(5) The witness's bias or prejudice, if any;
(6) Whether other evidence contradicted the witness's testimony;
(7) The reasonableness of the witness's testimony in light of all the evidence; and
(8) Any other factors that bear on believability

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these difference, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said, on the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

13

## Jury Instruction 1.15 Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decides this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any new or media accounts or commentary about the case or anything to do with it [,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other research materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for view any place discussed during the trial.

14

Also, do not do any research about this case, the law, or the people involved-including the parties, the witnesses or the lawyers-until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this is case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very

Important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [,and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

15

## Jury Instruction 1.16 Publicity during Trial

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

16

## Jury Instruction 1.17 No Transcript Available to Jury

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

17

## Jury Instruction 1.18 Taking Notes

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

18

## Jury Instruction 1.19 Questions to Witnesses by Jurors During Trial

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. [Specific reasons for not allowing jurors to ask questions may be explained.] If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

### Option 2

When attorneys have finished their examination of a witness, you may ask questions of the witness. [Describe procedure to be used.] If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.

19

## Jury Instruction 1.20 Bench Conferences and Recesses

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

20

## Jury Instruction 1.21 Outline of Trial

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expect the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

21

## Jury Instruction 2.0 Cautionary Instructions

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

22

## Jury Instruction 2.2 Stipulations of Fact

The parties have agreed to certain facts [to be placed in evidence as exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

24

**Jury Instruction 2.3 Judicial Notice**

The court has decided to accept as proved the fact that [*state fact*]. You must accept this fact as true.

25

## Jury Instruction 2.4 Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should consider deposition testimony, presented to you I court in lieu of live testimony, in the same way as if the witness had been present to te3stify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

26

**Jury Instructions 2.5 transcript of recording in English**

You [are about to [hear] [watch] [have read] [watched]] a recording that has been received in evidence. [Please listen to it very carefully.] Each of you [has been] [was] given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you [hear] [heard] something different from what [appears] [appeared] in the transcript, what you heard is controlling. [After] [Now that] the recording has been played, the transcript will be taken from you.

27

## Jury Instruction 2.9 Impeachment Evidence—Witness

The evidence that a witness [*e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.]* may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

31

**Jury Instructions 2.11 Use of Interrogatories**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

33

Defendant's Request that the attached Addendum to Ninth Circuit Jury Instruction 2.11 Be Read to the Jury

**Jury Instruction 2.11(a): Incomplete, Evasive and/or Objections to Interrogatories**

If Responses have been served to interrogatories but they contain objections, or evasive or incomplete answers, the party serving the interrogatories must file a motion to compel and obtain a court order to obtain further responses to these interrogatories.

Case 2:23-cv-09430-SVW-PD    Document 193    Filed 02/21/25    Page 77 of 123    Page ID #:4730

If responses have been served but they contain *objections* or *evasive or incomplete* answers, the proper procedure is a motion to compel under Rule 37(a)

## Jury Instruction 2.12 Use of Requests for Admission

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before trial, in response to requests that were submitted under established court procedure. You must treat these facts as having been proved.

34

## Jury Instruction 2.13 Expert Opinion

You [have heard] [are about to hear] testimony from [name] who [testified] [will testify] about [his] [her]opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training or education, the reasons given for the opinion, and all the other evidence in the case.

35

## Jury Instruction 2.14 Charts and Summaries Not Received in Evidence

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the content of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them., You should, therefore, give them only such weight as you think the underlying evidence deserves.

36

### Jury Instruction 2.15 Charts and Summaries Received in Evidence

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trail. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

37

## Jury Instruction 2.16 Evidence in electronic Format

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view in the jury room. A compute, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

38

## Jury Instruction 3.1 Duty to Deliberate

Before you begin your deliberations, elect on member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, or course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

39

## Jury Instruction 3.2 Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issue it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog website, or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other form of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the content

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it [,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place disused in this case, and do not use internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved-including the parties, the witnesses, or the lawyers-- until you have been excused as jurors. If you happen to read or hear anything touching ono this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an

40

impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

*Revised Dec. 2020*

41

## Jury Instruction 3.3 Communication with Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time, You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone-including the court-how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

42

## Jury Instruction 3.4 Readback or Playback

### Comment

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

Because a request has been made for a [readback] [playback] of

the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgement, the testimony [read] [played] cannot be considered in isolation but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above. *See United States v. Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); see also JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.C (2013).

43

## Jury Instruction 3.5 Return of Verdict

A verdict form has been prepared for you. [*Explain verdict form as needed*.] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

44

## Jury Instruction 3.6 Additional Instructions of Law

At this point I will give you an additional instruction. By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this instruction was read separately to you. You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction*.]

You will now retire to the jury room and continue your deliberations.

45

## Jury instruction 3.7 Deadlock Jury

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors. During your deliberations, you should be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now return to the jury room and continue your deliberations.

46

**Jury Instruction 3.8 Continuing Deliberations after Juror is Discharged**

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

47

## Jury Instruction 3.9 Post-Discharge Instruction

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

[If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.]

[Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.]

[Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me, and I will assist.]

48

## Jury Instruction 5.1 Damages – Proof

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not meant to suggest for which party your verdict should be rendered.

If you find for the plaintiff [on the plaintiff's [specify type of claim] claim], you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

[*Insert types of damages. See Instruction 5.2 (Measures of Types of Damages*)]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

49

Defendant requests that the marked changes be made to Ninth Circuit Jury Instruction 5.2 to reflect Plaintiff's claimed damages in the instruction

## Jury Instruction 5.2 Measures of Types of Damages

In determining the measure of damages, you should consider:

[The nature and extent of the injuries;]

[The [disability] [disfigurement] [loss of enjoyment of life] experienced [and that with reasonable probability will be experienced in the future];]

[The [mental,] [physical,] [emotional] pain and suffering experienced [and that with reasonable probability will be experienced in the future];]

[The reasonable value of necessary medical care, treatment, and services received to the present time;]

[The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future;]

[The reasonable value of [wages] [earnings] [earning capacity] [salaries] [employment] [business opportunities] [employment opportunities] lost up to the present time;]

[The reasonable value of [wages] [earnings] [earning capacity] [salaries] [employment] [business opportunities] [employment opportunities] that with reasonable probability will be lost in the future;]

[The reasonable value of necessary [household help] [services other than medical] [and] [expenses] required up to the present time;]

[The reasonable value of necessary [household help] [services other than medical] [and] [expenses] that with reasonable probability will be required in the future;]

[The reasonable value of necessary repairs to any property that was damaged;]

[The difference between the fair market value of any damaged property immediately before the occurrence and its fair market value immediately thereafter;] [and]

[The reasonable value of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired.]

50

[The lesser of the following:

1.  the reasonable cost of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

2.  the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.]

[Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its [repair] [replacement].]

51

### Jury Instruction 5.3 Damages--Mitigation

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1. that the plaintiff failed to use reasonable efforts to mitigate damages; and
2. the amount by which damages would have been mitigated.

52

## Jury Instruction 5.4 Damages Arising in the Future—Discount to Present Cash Value

[Any award for future economic damages must be for the present cash value of those damages.]

[Noneconomic damages [such as [pain and suffering] [disability] [disfigurement] [and] [*specify other noneconomic damages*]] are not reduced to present cash value.]

Present cash value means the sum of money needed now, which, when invested at a reasonable rate or return, will pay future damages at the times and in the amounts that you find the damages [will be incurred] [or] [would have been received].

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. [You should also consider decreases in the value of money that may be caused by future inflation.]

53

Defendant requests that the marked changes be made to Ninth Circuit Jury Instruction 5.5 for punitive damages:

## Jury Instruction 5.5 Punitive Damages

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden or proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

[In addition, you ~~may~~ *must* consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

[Punitive damages may not be awarded against [*specify defendant.*] [You may impose punitive damages against one of more of the defendants and not others and may award different amounts against different defendants.] [Punitive damages

54

may be awarded even if you award plaintiff only nominal, and not compensatory, damages.]

55

| Special Jury Instruction No. 1 | | Authorities | | | |
|---|---|---|---|---|---|
| Preliminary Admonitions | | Liodas v. Sahadi (1977) 19 Cal.3d 278, 284;<br>Finney v. Lockhart (1950) 35 Cal.2d 161, 164 | | | |
| Requested by Plaintiff | | Requested by Defendant | X | Requested by | |
| Requested by Cross-Complainant | | Requested by Cross-Defendant | | Given on Court's Motion | |
| Given as Requested | | Given as Modified | | | |
| Refused | | | | | |
| Withdrawn | | | | | |

_____
Judicial Officer

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Special Jury Instruction No.1


Punitive damages must bear a reasonable relationship to the actual damages sustained by the plaintiff.

## Jury Instruction 5.6 Nominal Damages

The law that applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

56

Defendant requests pursuant to Federal Rule of Evidence 302 the following CACI Instructions:

## CACI 203. __Party Having Power to Produce Better Evidence__

| Requested by Plaintiff | X | Requested by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Requested | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| | | | | | Judge |
| Withdrawn | | | | | |

RECYCLED PAPER

      You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

{00492861.DOCX}

RECYCLED PAPER

## CACI 204. Willful Suppression of Evidence

| Requested by Plaintiff | X | Requested by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Requested | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| | | | | | Judge |

RECYCLED PAPER

You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.

{00492861.DOCX}

RECYCLED PAPER

## CACI 205. <u>Failure to Explain or Deny Evidence</u>

| Requested by Plaintiff | X | Requested by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Requested | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| | | | | | Judge |

RECYCLED PAPER ♻

If a party failed to explain or deny evidence against [him/her/it] when [he/she/it] could reasonably be expected to have done so based on what [he/she/it] knew, you may consider that party's failure to explain or deny in evaluating that evidence.

It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.

{00492861.DOCX}

RECYCLED PAPER ♻

Defendant Objects to Plaintiff's Proposed CACI Instruction 1700 and requests that the references made to punitive damages at page two be deleted because of bifurcation of that issue

1

## Judicial Council Of California Civil Jury Instruction 1700

2

### Defamation per se—Essential Factual Elements

3

### (Public Figure)

4

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
5
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
6
| Refused | | | | | |
7
| Withdrawn | | | | | |

Honorable Stephen V. Wilson

8
Judge

9

10  Plaintiff Robert Hunter Biden claims that Defendant Patrick M. Byrne harmed him

11  by making one or more of the following statement(s):

12  So in November 2021, I went back to the Middle East. I
13  met with a group including a special Iranian figure, an
    old friend who let me know a World War was coming,
14  and had a proposal to avert it. I told them I would relay
15  the proposal but I did not think it would fly.
    In the course of being there, and through a mechanism I
16  am not going to explain here, I became aware of an
17  additional situation. Hunter Biden was reaching out to the
    Iranian government in the fall of 2021 with the following
18  offer: *You Iranians have $8 billion frozen in a bank
19  account in South Korea. My father will unfreeze it in
    return for $800 million being funneled into a numbered
20  account for us. And if you do this deal with us, it will
21  lubricate other negotiations which have recently started
    between us.* By that, the Iranians believed that Hunter
22  meant the JCPOA talks, which had restarted in Geneva a
23  month or two previously. In other words, something
    along the lines of, "Pay us $100 million and we let you
24  keep 10 nukes, $200 million for 20 nukes," etc. But I am
25  making up the pricing. Hunter was doing this through a
    middleman, the son of the Minister of Defense of
26  Pakistan. That son was meeting with Hunter, then
27  relaying messages to someone in Iran. And he was being
    reckless enough to leave voicemails in Iran about it.

28



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5792656.2

4

> When I returned, the agencies went to work over the
> weekend. I was told a week later that they had confirmed
> it all. The voice on the voicemail that I had acquired was
> voice-matched to the son of the Minister of Defense of
> Pakistan, who had a connection to Hunter Biden.
> Anyway, in December, 2021, I was told that the scheme
> was confirmed across the agencies.

To establish this claim, Plaintiff Robert Hunter Biden must prove that all of the following are more likely true than not true:

*Liability*

    1.    That Defendant Patrick M. Byrne made the statement to persons other than Plaintiff Robert Hunter Biden;

    2.    That these people reasonably understood that the statement was about Plaintiff Robert Hunter Biden;

    3.    That these people reasonably understood the statement to mean that Plaintiff Robert Hunter Biden had committed a crime; and

    4.    That the statement was false.

In addition, Plaintiff Robert Hunter Biden must prove by clear and convincing evidence that Defendant Patrick M. Byrne knew the statement was false or had serious doubts about the truth of the statement.

*Actual Damages*

Plaintiff Robert Hunter Biden has proved all of the above, then he is entitled to recover his actual damages if he proves that Defendant Patrick M. Byrne's wrongful conduct was a substantial factor in causing any of the following:

    a.  Harm to Plaintiff Robert Hunter Biden's property, business, trade, profession, or occupation;

    b.  Expenses Plaintiff Robert Hunter Biden's had to pay as a result of the defamatory statements;

    c.  Harm to Plaintiff Robert Hunter Biden's reputation; or



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5792656.2

5

**PLAINTIFF ROBERT HUNTER BIDEN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

110

d.  Shame, mortification, or hurt feelings.

*Assumed Damages*

Even if Plaintiff Robert Hunter Biden has not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, the law nonetheless assumes that he has suffered this harm. Without presenting evidence of damage, Plaintiff Robert Hunter Biden is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable. You must award at least a nominal sum, such as one dollar.

*Punitive Damages*

Plaintiff Robert Hunter Biden may also recover damages to punish Defendant Patrick M. Byrne if he proves by clear and convincing evidence that Defendant Patrick M. Byrne acted with malice, oppression, or fraud.

5792656.2

**PLAINTIFF ROBERT HUNTER BIDEN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Defendant approves Plaintiff's Proposed CACI Instructions 1706, 1707, and 1720

1

## Judicial Council Of California Civil Jury Instruction 1706

2

## Definition of Statement

3

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

Honorable Stephen V. Wilson
Judge

The word "statement" in these instructions refers to any form of communication or representation, including spoken or written words or pictures or social media posts.



## Judicial Council Of California Civil Jury Instruction 1707

### Fact Versus Opinion

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | | |
| | | | | | Judge |

For Plaintiff Robert Hunter Biden to recover, Defendant Patrick M. Byrne's statement must have been a statement of fact, not opinion. A statement of fact is one that can be proved to be true or false. In some circumstances, Plaintiff Robert Hunter Biden may recover if a statement phrased as an opinion implies that a false statement of fact is true. In deciding this issue, you should consider whether the average reader or listener would conclude from the language of the statement and its context that Defendant Patrick M. Byrne was implying that a false statement of fact is true.

5792656.2

8

**PLAINTIFF ROBERT HUNTER BIDEN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

## Judicial Council Of California Civil Jury Instruction 1720

### Affirmative Defense—Truth

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

_____
Honorable Stephen V. Wilson
Judge

Defendant Patrick M. Byrne is not responsible for Plaintiff Robert Hunter Biden's harm, if any, if Defendant Patrick M. Byrne proves that his statement about Plaintiff Robert Hunter Biden was true. Defendant Patrick M. Byrne does not have to prove that the statement was true in every detail, so long as the statement was substantially true.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Defendant objects to Plaintiff's Proposed CACI 1723 because it is inconsistent with the malice that Plaintiff must prove to recover damages which is Defendant made a statement knowing it was false or had serious doubts that the statement was true and published it. (*New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 286-288.) It will just confuse the jury.

## Judicial Council Of California Civil Jury Instruction 1723

### Common Interest Privilege—Malice (Civ.Code, § 47(c))

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Honorable Stephen V. Wilson | |
| | | | | | Judge |

Plaintiff Robert Hunter Biden cannot recover damages from Defendant Patrick M. Byrne, even if the statement was false, unless Plaintiff Robert Hunter Biden also proves either:

1. That in making the statement(s), Defendant Patrick M. Byrne acted with hatred or ill will toward Plaintiff Robert Hunter Biden, showing Defendant Patrick M. Byrne's willingness to vex, annoy, or injure Plaintiff Robert Hunter Biden; or

2. That Defendant Patrick M. Byrne had no reasonable grounds for believing the truth of the statement.

5792656.2

10

**PLAINTIFF ROBERT HUNTER BIDEN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

The proof presented by a public official must be of convincing clarity in order to demonstrate constitutional malice and overcome the privilege [New York Times Co. v. Sullivan (1964) 376 U.S. 254, 286–288, 84 S. Ct. 710, 11 L. Ed. 2d 686]. In evaluating claims by public officials that a defendant recklessly disregarded the truth of a publication, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his or her publication [St. Amant v. Thompson (1968) 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262].

Defendant objects to Plaintiff's Proposed Special Verdict Form VF-1700 and marks where on the form adjustments need to be made to it.

# Judicial Council Of California Verdict Form VF-1700

## Defamation per se

## (Public Figure)

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Honorable Stephen V. Wilson | | |
| | | | Judge | | |

We answer the questions submitted to us as follows:

1.    Did Defendant Patrick M. Byrne make the following statement to persons] other than Plaintiff Robert Hunter Biden:

> So in November 2021, I went back to the Middle East. I met with a group including a special Iranian figure, an old friend who let me know a World War was coming, and had a proposal to avert it. I told them I would relay the proposal but I did not think it would fly.
> In the course of being there, and through a mechanism I am not going to explain here, I became aware of an additional situation. Hunter Biden was reaching out to the Iranian government in the fall of 2021 with the following offer: *You Iranians have $8 billion frozen in a bank account in South Korea. My father will unfreeze it in return for $800 million being funneled into a numbered account for us. And if you do this deal with us, it will lubricate other negotiations which have recently started between us.* By that, the Iranians believed that Hunter meant the JCPOA talks, which had restarted in Geneva a month or two previously. In other words, something along the lines of, "Pay us $100 million and we let you keep 10 nukes, $200 million for 20 nukes," etc. But I am making up the pricing. Hunter was doing this through a middleman, the son of the Minister of Defense of Pakistan. That son was meeting with Hunter, then



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5792656.2

11

**PLAINTIFF ROBERT HUNTER BIDEN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

relaying messages to someone in Iran. And he was being reckless enough to leave voicemails in Iran about it. When I returned, the agencies went to work over the weekend. I was told a week later that they had confirmed it all. The voice on the voicemail that I had acquired was voice-matched to the son of the Minister of Defense of Pakistan, who had a connection to Hunter Biden. Anyway, in December, 2021, I was told that the scheme was confirmed across the agencies.

___ Yes ___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.    Did the people to whom the statement was made reasonably understand that the statement was about Plaintiff Robert Hunter Biden?

___ Yes ___ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.    Did these people reasonably understand the statement to mean that Plaintiff Robert Hunter Biden committed a crime?

___ Yes ___ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.    Was the statement false?

___ Yes ___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.      Did Plaintiff Robert Hunter Biden prove by clear and convincing evidence that Defendant Patrick M. Byrne knew the statement was false or had serious doubts about the truth of the statement?

___ Yes ___ No

If your answer to question 5 is yes, then answer questions 6, 7, and 8. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

## ACTUAL DAMAGES

6.      Was Defendant Patrick M. Byrne's conduct a substantial factor in causing Plaintiff Robert Hunter Biden actual harm?

___ Yes ___ No

If your answer to question 6 is yes, then answer question 7. If you answered no, skip question 7 and answer question 8.

7.      What are Plaintiff Robert Hunter Biden's actual damages for:

a.      Harm to Plaintiff Robert Hunter Biden's property, business, trade, profession, or occupation?

$_____

b.      Expenses Plaintiff Robert Hunter Biden had to pay as a result of the defamatory statements?

$_____

c.      Harm to Plaintiff Robert Hunter Biden's reputation?

$_____

d.      Shame, mortification, or hurt feelings?

$_____

13

**PLAINTIFF ROBERT HUNTER BIDEN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

If Plaintiff Robert Hunter Biden has not proved any actual damages for either c or d, then answer question 8. If Plaintiff Robert Hunter Biden has proved actual damages for both c and d, skip question 8 and answer question 9.

## ASSUMED DAMAGES

8.    What are the damages you award Plaintiff Robert Hunter Biden for the assumed harm to his reputation, and for shame, mortification, or hurt feelings? You must award at least a nominal sum.

$_____

## PUNITIVE DAMAGES

9.    Did Plaintiff Robert Hunter Biden prove by clear and convincing evidence that Defendant Patrick M. Byrne acted with malice, oppression, or fraud? ___ Yes ___ No

If your answer to question 9 is yes, then answer question 10. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

10.    What is your award of punitive damages, if any, against Defendant Patrick M. Byrne?

$_____

Signed: _____

Presiding Juror

Dated: _____

After this verdict form has been signed, notify the clerk of the Court.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW