# EXHIBIT A

```
                    UNITED STATES OF AMERICA
                  UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
                        WESTERN DIVISION

                            - - -
                 HONORABLE STEPHEN V. WILSON
            UNITED STATES DISTRICT JUDGE PRESIDING
                            - - -


   ROBERT HUNTER BIDEN,                )
                                        )
                PLAINTIFF,              )
                                        )
   VS.                                  )   CASE NO.:
                                        )   CV 23-9430-SVW
   PATRICK M. BYRNE,                    )
                                        )
                DEFENDANT.              )
                                        )
   _____)




                REPORTER'S TRANSCRIPT OF PROCEEDINGS

                  MONDAY, FEBRUARY 24, 2025

                     LOS ANGELES, CALIFORNIA








                 LAURA MILLER ELIAS, CSR 10019
                 FEDERAL OFFICIAL COURT REPORTER
               350 WEST FIRST STREET, ROOM 4455
                  LOS ANGELES, CALIFORNIA 90012
                      PH:  (213)894-0374
```

UNITED STATES DISTRICT COURT

```
 1    APPEARANCES OF COUNSEL:
 2
 3    ON BEHALF OF PLAINTIFF:
 4
 5            EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
 6            BY: BRIAN SULLIVAN, ESQ.
 7                ZACHARY HANSEN, ESQ.
 8            6420 WILSHIRE BOULEVARD
 9            17TH FLOOR
10            LOS ANGELES, CA 90048
11
12
13    ON BEHALF OF DEFENDANT:
14
15            LAW OFFICE OF MICHAEL MURPHY
16            BY:  MICHAEL MURPHY, ESQ.
17            2625 TOWNSGATE ROAD
18            SUITE 330
19            WESTLAKE, CA 91361
20
21
22
23
24
25
```

```
 1    LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 24, 2025; 3:06 P.M.
 2                              - - -
 3              THE CLERK:  Calling Item No. 9.
 4              Case No. 23-9430-SVW.
 5              Robert Hunter Biden versus Patrick M. Byrne.
 6              Counsel, please state your appearances.
 7              MR. SULLIVAN:  Brian Sullivan on behalf of
 8    plaintiff.
 9              MR. HANSEN:  And Zachary Hansen on behalf of the
10    plaintiff from the law firm Early Sullivan Wright Gizer &
11    McRae.
12              MR. MURPHY:  Good afternoon, Your Honor.  Michael
13    Murphy appearing on behalf of defendant Patrick Byrne.
14              THE COURT:  Okay.  This is the time for pretrial
15    conference.  Before we begin, when we had our last hearing,
16    there were some unresolved questions, uh, maybe that's not
17    the way to put it, but there were additional facts to be
18    determined.  I thought that there was going to be the
19    deposition of Moynihan and there was going to be a deposition
20    of Smith, David Smith, the FBI agent.
21              Did those things occur?
22              MR. HANSEN:  And Your Honor, you are correct.
23    Those were the issues that we were determining.  We did take
24    the deposition of John Moynihan.  That occurred last week.
25              THE COURT:  And I recall that Moynihan was reputed
```

1  to be the defendant's handler.  The defendant represents that
2  he is a covert operative.  And that after the defendant had
3  this meeting, just using the terms that have been used in the
4  case so far, the Iranian actor made those recordings of the
5  conversation with the actor which included some other tape
6  recordings that the Iranian actor played for the defendant.
7           The defendant said that he went to his handler
8  Moynihan with that information and that Moynihan then said he
9  would forward that to an FBI Agent Smith.  And then there was
10 another aspect of it that I don't know if Moynihan was
11 involved in this or I guess he was, where Smith said that the
12 FBI had some means of identifying the person through voice
13 identification.
14          And that there was something offered by the
15 defendant that there was some sort of meeting, I'm not clear
16 chronologically whether it was a first or second meeting,
17 where there was something said to the effect this seems to be
18 something like the voice that the Iranian actor played on the
19 tapes that the Iranian actor had of some Pakistani official
20 who was, I don't know how to put it, some sort of operative
21 of some kind.
22          How the Pakistani situation gets involved is hard
23 to process at this point because the moneys were seized by
24 the South Korean government.  But what I'm trying to get at
25 by way of a little background is what did Moynihan say about

1 all of this?

2 MR. HANSEN: Well, Your Honor, and I'll start by
3 saying that your recitation of the defendant's allegations
4 and claims is for the most part correct. Generally correct.
5 Mr. Moynihan testified to the extent that there was a meeting
6 as Mr. Byrne claimed between himself, Mr. Byrne and this FBI
7 Agent David Smith at Ronald Reagan National Airport in
8 Washington, DC in the parking lot.

9 THE COURT: Is that the first meeting they had?

10 MR. HANSEN: Uh, no, that wasn't the first meeting
11 that they had the three of them together.

12 THE COURT: That was the first meeting of the three
13 of them together.

14 MR. HANSEN: No, I believe that there was at least
15 one other meeting prior to that. But this was the first
16 meeting where these allegations were discussed in detailed
17 and where Mr. Byrne presented a recording that allegedly
18 contained, uh, there were three voicemails being played on
19 the recording and a conversation between Mr. Byrne and this
20 Iranian official discussing the recordings.

21 Mr. Moynihan said that what he heard generally was
22 a kind of a telephone call of sorts is how he described it.
23 He described there being a mention of the name Hunter Biden
24 on that recording, although the voicemails that have been
25 produced in this case do not contain the name Hunter Biden as

1       agent may have been involved with in various investigations.
2               THE COURT: What I'm not fully understanding --
3               MR. SULLIVAN: But I think Your Honor is right that
4       the Court can review this on a motion to compel and
5       potentially narrowly tailor the deposition to what the
6       government is willing to give.
7               THE COURT: What could happen is, uh, there could
8       be, I mean like in any case, there could be a deposition, and
9       then if there are objections, in other words, assuming
10      there's a deposition of Smith, somebody from the Justice
11      Department would be there and they could make appropriate
12      objections and they could be ruled upon at the time.
13              MR. SULLIVAN: That's exactly my thinking,
14      Your Honor.
15              THE COURT: But on the other hand, uh, let's say
16      that Smith, I'm just being hypothetical now, denies
17      everything. He says -- was he recorded being in of these
18      meetings, Smith?
19              MR. HANSEN: My understanding is there's no
20      recording of Agent Smith himself, no. He just listened to
21      the recording.
22              THE COURT: So let's say Smith disputes Byrne and
23      Moynihan. He says this is all fiction. I was never there or
24      he says I was there, but I never got the tapes. Or he says I
25      never said that I could identify a person from voice or that

1       I identified this Pakistani person.
2               Then, I mean, it's an adversarial system.
3       Mr. Murphy could, I guess, try to establish that he's not
4       telling the truth and he's just saying these things to
5       protect his cover or the government's role or whatever.  I
6       don't know.  I mean, this is beyond the norm so I don't know
7       what.  But it would seem like under the adversarial system,
8       uh, to -- I mean, if Smith answers the questions or says I
9       was at the meeting and I said all those things, then that is
10      something that would benefit the defendant.
11              Let me ask Mr. Murphy cause he's been listening to
12      all of this to weigh in on just what we talked about now.
13              MR. MURPHY:  We don't oppose discovery as to
14      Mr. Smith.  We believe it will be beneficial.  I just can't
15      agree to ten questions and get some random answers and no
16      follow-up.
17              THE COURT:  What do you propose?
18              MR. MURPHY:  Well, if counsel is right and I
19      haven't had time to research this and I didn't know what the
20      Court wanted to do, we're willing to cooperate in the
21      interest of justice.
22              Our position would be counsel should meet and
23      confer, look up the statute, look up the case law, and if
24      there is a basis for bringing a motion and serving the
25      government with it and having them participate in a hearing

```
 1
 2                    CERTIFICATE OF REPORTER
 3
 4   COUNTY OF LOS ANGELES      )
 5                              )  SS.
 6   STATE OF CALIFORNIA        )
 7
 8   I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED
 9   STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,
10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE
11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET
12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN
13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO
14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION
15   OF MY STENOGRAPHIC NOTES.
16
17
18   DATE:  FEBRUARY 27, 2025
19
20      /s/   LAURA MILLER ELIAS
21   LAURA MILLER ELIAS, CSR 10019
22   FEDERAL OFFICIAL COURT REPORTER
23
24
25
```