Richard A. Harpootlian, *pro hac vice*
rah@harpootlianlaw.com
Phillip Barber, *pro hac vice*
pdb@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

Bryan M. Sullivan, State Bar Number 209743
 bsullivan@earlysullivan.com
Zachary C. Hansen, State Bar Number 325128
 zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT
 GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for PLAINTIFF
ROBERT HUNTER BIDEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>PATRICK M. BYRNE, an individual,<br><br>          Defendant. | Case No. 2:23-cv-09430-SVW-PD<br><br>**PLAINTIFF ROBERT HUNTER BIDEN'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE THE DEPOSITION TESTIMONY OF SPECIAL AGENT DAVID SMITH**<br><br>[*Declaration of Zachary C. Hansen filed and served concurrently herewith*]<br><br>Date: July 21, 2025<br>Time: 3:00 P.M.<br>Place: Ctrm. 10A<br><br>Judge: Hon. Stephen V. Wilson |



## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this motion, Defendant Patrick M. Byrne ("Defendant") seeks to prevent Plaintiff Robert Hunter Biden ("Plaintiff") from presenting the Rule 31 deposition testimony of FBI Special Agent David Smith at trial.  Agent Smith testified that Defendant never played a recording confirming Defendant's libelous statements that Plaintiff illegally colluded with a foreign enemy of the United States in exchange for a bribe, that he never asked Defendant to delete any such recording, and that he never confirmed the identify of any voices on the non-existent recording.  As explained below, Defendant's objections to Agent Smith's deposition are frivolous nonsense. The Court should deny the motion.

## II.    ARGUMENT

### A.    DEFENDANT'S OBJECTIONS WERE NOT OMITTED FROM THE DEPOSITION RECORD.

Defendant asserts his objections to Plaintiff's questions for Agent Smith were omitted from the deposition record.  That is not true.  Defendant's objections to Plaintiff's questions are Exhibit 4 to the deposition.  Defendant further objects that the court reporter did not read the objections to the witness.  In a deposition, objections to questions are directed to the questioning party and to court, not to the witness, who is required to answer the question truthfully without regard to the objection unless instructed not to answer.  Defendant argues Agent Smith's testimony should be excluded because Defendant's speaking objections, had they been read to the witness by the court reporter, might have changed Agent Smith's testimony in a way that would have benefited Defendant.  (ECF No. 233, at 5:16-18 ("Had the objections been read on the record, the witness might have provided a different answer because the objection would have alerted the witness to issues in the question.").  That is an absurdly improper argument which reveals a lack of even a rudimentary understanding of federal practice.  "Speaking objections and coaching objections are

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8**

simply not permitted in depositions in federal cases." *Browne v. Clark*, No. 2:21-CV-02840-AB-AJR, 2025 WL 1683640, at *3 (C.D. Cal. June 12, 2025); *see also* Civility and Professionalism Guidelines § B.4, U.S. District Court for the Central District of California (am. Jan. 10, 2022), *available at* https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines# (prohibiting speaking objections at depositions).

## B.    IT IS LOGICALLY IMPOSSIBLE THAT THE MINOR TYPOGRAPHIC ERRORS IN THE REPRODUCTION OF THREE OF HIS CROSS-QUESTIONS COULD HAVE CHANGED THE DEPONENT'S ANSWERS IN ANY WAY.

Defendant argues typographical errors in the reproduction of his questions for the court reporter might have changed the deponent's answers. Instead of providing his cross-questions in a separate document as anticipated by Rule 31, Defendant provided his questions at the end of a PDF file containing his objections to Plaintiff's questions. Thus, the questions had to be retyped into the notice and some irrelevant typographical errors occurred.

The complained-of typographical errors are indicated in brackets:

Question 2: "If Mr. Byrne provided any recording[s] to you, did you ask him to delete the recording[s] from any device still in his possession?"

Defendant does not explain how "any recording" and "any recordings" could possibly have different meanings in this question because it is semantically impossible. "Any" in this question is used as a grammatical determiner, "a modifying word that determines the kind of reference a noun or noun group has." DETERMINER, Oxford Languages English Dictionary. "Any," used as a determiner, means "one or some of a thing or number of things, no matter how much or how many." ANY, Oxford Languages English Dictionary. "Any recording" and "any recordings" are semantically identical because "any" *removes* the grammatical number from the noun it modifies. Moreover, the question begins with an "if"

conditional referring to Question 1, which asks, "Do you recall receiving any recording from Mr. Byrne related to or involving Hunter Biden and Iranian officials?" Agent Smith answered "no" to that question. (Dep. FBI Special Agent David Smith 6:22.) The idea that he would have answered "yes" when asked whether he asked Defendant to delete the non-existent recording had he been asked about "any recording" rather than "any recordings" is preposterous.

> Question 4: Did the National Security Agency confirm the voice identification of the individual on the three voicemails included[ing] on the recording provided to you by Mr. Byrne?

> Question 5: Did the National Security Agency confirm that the identified individual [omitted "individual"] acted as a proxy for Hunter Biden?

The minor typographic errors in these two questions—"including" instead of "included" and omitting "individual" from "identified individual"—necessarily had no impact on the answers Agent Smith gave because Agent Smith never answered these questions at all. Government counsel instructed him not to answer because (1) these questions about the National Security Agency—a signals-intelligence agency of the Department of Defense currently led by a U.S. Army lieutenant general—go beyond the scope of Plaintiff's *Touhy* request for an FBI agent's testimony, (2) Defendant's counsel did not bother to submit his own a *Touhy* request despite Plaintiff's suggestion that he do so (ECF No. 220, p. 3), and (3) regardless, the Government would never have agreed to allow Agent Smith to answer these questions because, as Government lawyer stated on the record, an FBI agent is not an appropriate witness to testify about the activities of a military agency. (Dep. FBI Special Agent David Smith 11:22–12:22.)

///

///

///

///



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    PLAINTIFF HAD NO CONTROL OVER THE DEPOSITION DATE, WHICH HAS NO POSSIBLE RELEVANCE TO THE PROBATIVE VALUE OF AGENT SMITH'S TESTIMONY.

Defendant argues he was somehow prejudiced by the deposition occurring on April 21, 2025, instead of April 15, 2025. Plaintiff's counsel had no control over the deposition date, which was determined exclusively by the United States, based on the schedules of its own officers including the witness. Originally, the United States selected April 15, 2025, for the deposition. On April 8, 2025, a Department of Justice lawyer informed Plaintiff's counsel that Agent Smith was no longer available that day, and that the deposition would need to occur on April 21, 2025. As a result, a different court reporter from the same court reporting company, Esquire Reporting Solutions, attended the deposition. Neither Plaintiff's counsel nor Defendant's counsel were permitted to attend the deposition regardless of the date, which has no possible relevance to any evidentiary issue in this case. That the deposition occurred on April 21 instead of April 15 does not make any material fact more or less probable, so it is unclear how the date could give rise to any issue cognizable in a motion in limine. *See Ochoa v. County of Kern*, 628 F. Supp. 3d 1006, 1010 (E.D. Cal. 2022) ("The Ninth Circuit explained motions in limine allow parties to resolve evidentiary disputes ahead of trial 'before attempted use of the evidence before the jury.'" (quoting *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009))).

Defendant also objects to the court reporter's qualifications. Steven Poulakos is certified as a registered professional reporter by the National Court Reporters Association. Defendant does not explain why that makes him unqualified to transcribe the word "no" when Agent Smith was asked whether Defendant ever produced any recording implicating Plaintiff in any scheme with Iran. Defendant only complains that Mr. Poulakos is not a "certified shorthand reporter," but that is just a California-specific term for the same qualification that the NCRA describes as "registered professional reporter." The deposition occurred in Washington, D.C., not

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5815461.1

5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8

California.  Sometimes other jurisdictions use slightly different names for the same thing.

### D.    DEFENDANT'S FORM OBJECTIONS ARE MERITLESS.

Defendant asserts form objections to Plaintiff's questions 6, 9, 10, 11, 12, and 13.  As explained below, those objections are without merit.  Further, as a threshold matter, Defendant's objection that "all of Plaintiff's questions to SA Smith were compound" is manifestly false.  For example, question 1, "state your name," is not compound.  Defendant must identify specific objections to specific questions; where he does so, Plaintiff below addresses his objections.

> Question 6. Mr. Byrne testified in this action that in late 2021 or early 2022 you met with him and John Moynihan at a parking lot at Reagan National Airport where Mr. Byrne played you an audio recording in which there was a conversation between someone and Mr. Byrne in which it was stated that Mr. Robert Hunter Biden, through an intermediary, had approached the Iranian government with an offer to have his father, President Joe Biden, unfreeze $8 billion in Iranian funds in South Korea in return for the Iranians paying the Biden's 10% of those funds which would go into a numbered account for his family. Is that accurate?

Defendant objects to the question as compound and misrepresents his deposition testimony.  However, it is not confusingly compound.  It describes the purported recording that is the crux of this case, and asks whether Defendant played it for Agent Smith in an airport parking lot, as Defendant testified.  Agent Smith's answer was "no."  Defendant further objects that it misrepresents his deposition testimony because,

> "Defendant made it clear in Volume 3 of his deposition that the recording was 60-70 percent of the voicemails and there was "some overtalk" between Defendant and Movie Star.  Further, the question fails to acknowledge that the recording in request consisted of an audio recording of two people talking while additional recordings are being played. Therefore, any response to the question would beg the question as to which part of the question SA Smith's answer relates."

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

(ECF No. 233, 8:15-21.)   Undersigned counsel cannot respond to that objection because he honestly has no idea what that means.

> Question 9.   Mr. Byrne testified in this action that you confirmed, through various actions by various government agencies, the identity of the voice on the voicemails played on the recording and communicated that to Mr. Byrne either directly or through Mr. Moynihan. Is that accurate?

Defendant objects the question misrepresents his testimony because it "fails to clarify who worked to verify the identity of the person on the voicemails, which mentioned such person for the first time in the question itself."  Defendant testified:

> "Specific identity.  Other than I was also told by Dave Smith and John Moynihan that they had run that tape when I brought it back and that people had worked through the weekend at National Geo Reconnaissance in Bethesda and NSA and CIA.

> And they had -- there was even a word they used, like, "voiceprint." But it wasn't "voiceprint." It was the name of some system, like televoiceprint or something, that they – the voice on the tape.

> They identified the voice on the tape and that it was, in fact, the son of some – some poobah in Pakistan. And that they tied -- that he was linked to Hunter Biden."

(Declaration of Zachary C. Hansen ("Hansen Decl."), ¶4, Ex. 3, at 549:9–550:1.) Plaintiff fails to see how the question misrepresents that testimony.

> "Question 10. Mr. Byrne testified in this action that you confirmed the voice on the voicemails played on the recording was identified as the son of a high-ranking official with the Pakistani Minister of Defense and communicated that to Mr. Byrne either directly or through Mr. Moynihan. Is that accurate?

> Question 11. Mr. Byrne testified in this action that you confirmed the voice on the voicemails played on the recording was identified as someone who had close ties to Mr. Hunter Biden and communicated that to Mr. Byrne either directly or through Mr. Moynihan. Is that accurate?

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

> Question 12. Mr. Byrne testified in this action that you confirmed the voice on the voicemails played on the recording was identified as someone who acted as a proxy for Hunter Biden and communicated that to Mr. Byrne either directly or through Mr. Moynihan. Is that accurate?"

Defendant objects "Questions 10, 11, and 12 have the same issues because they imply that SA Smith identified the speaker when in fact he did not." (ECF No. 233, at 8:27-28.)  Plaintiff is unsure what that means; if Defendant means the questions misrepresent his testimony, they do not.  (*See, e.g.*, Hansen Decl., at ¶3, Ex. 2, at 263:19–264:1 (confirming son of official in Pakistani Ministry of Defense); Hansen Decl. at ¶2, Ex. 1, at 225:2–226:19 (confirming close ties with and proxy of Hunter Biden).

> Question 13. Mr. Byrne testified in this action that you described to Mr. Byrne a letter that FBI Director Christopher Wray sent out to every FBI agent in the bureau saying not to have any contact with Mr. Byrne. Is that accurate?

Defendant objects this "misrepresents Defendant's testimony, which clarified that it was Moynihan that informed Defendant of the contents from the letter of Christopher Wray, and not SA Smith.  Defendant testified that SA Smith told Moynihan of the contents of the letters." (ECF No. 233, at 9:3-5.)  Unfortunately, it is Defendant's counsel who misrepresents Defendant's testimony.  Defendant testified:

> A. Christopher Wray put out a letter to the FBI about me after I came back with -- after I came back with – I'm not sure if it -- well, it was after I came back with this stuff but also with some other stuff that is described in my book.
>
> Q. Okay. Did you see a copy of this letter?
>
> A. No, but I had it described to me.
>
> Q. Okay. Who described it to you?
>
> A. Dave Smith.

(Hansen Decl., ¶4, Ex. 3, at 554:6–15.)

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

### E.    THE COURT REPORTER DID NOT FAIL TO ATTACH THE NOTICE OF DEPOSITION AND QUESTIONS TO THE DEPOSITION.

Defendant complains the court reporter did not attach the notice of deposition and the questions to the transcript. That is false. Exhibit 1 to the transcript is the deposition notice, which includes both parties' questions. Exhibit 2 is Defendant's letter to the court reporter. Exhibit 3 is the Court's order denying Defendant's ex parte application to prevent the deposition. Exhibit 4 is Defendant's objections to Plaintiff's deposition questions, which include Defendant's deposition questions. It does appear that the court reporter attached the original deposition notice, dated April 15, and not the amended notice identical in every respect except for the date and reporter's name. Plaintiff's counsel will ensure the court reporter corrects the error before trial.

Defendant's demands for sanctions and jury instructions are nothing more than arm-waving and table-pounding in a pitiful attempt to distract the Court from the truth. Defendant did not file this motion because Plaintiff's counsel did anything inappropriate. Defendant filed it because he is a liar who, along with his counsel, views these proceedings and this Court as a joke. Defendant did not play any recording about Hunter Biden for a counterintelligence FBI agent in an airport parking lot. The reason he cannot produce that recording now is that it never existed, not that he was instructed to delete every copy he had. Defendant was never a secret agent in the "League of Shadows." The FBI does not give its agents a 3-day course about Defendant's exploits. (*Cf.* Hansen Decl., ¶3, Ex. 2, at, 310:1–11 (testifying the FBI does so). The President of the United States did not personally approve a plan for Defendant to rape a woman before murdering her. (*Cf. Id.*, at 444:8–448:5 (testifying President Obama personally signed off on such a plan).

Defendant is a crackpot whose lawyer has filed endless evidentiary motions and ex parte applications because he is terrified the truth will come out at trial—which

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

is exactly the point of a trial.  *See Portuondo v. Agard*, 529 U.S. 61, 73 (2000) (describing "the central function of the trial, which is to discover the truth").  Of course, if Defendant disputes Agent Smith's sworn testimony, he can come to trial and offer his own sworn testimony, and a jury of his peers will determine who is telling the truth.  But Plaintiff strongly suspects Mr. Byrne will not have the courage to sit in the witness chair in a federal courtroom and baldly lie while looking twelve jurors and a black-robed judge in the eyes.  Instead, he files the instant motion, which the Court should deny.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion in Limine No. 8.

Dated:  July 7, 2025

EARLY SULLIVAN WRIGHT
GIZER & MCRAE LLP

By:  */s/ Zachary C. Hansen*

BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Richard A. Harpootlian, *pro hac vice*
rah@harpootlianlaw.com
Phillip Barber, *pro hac vice*
pdb@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

*Attorney for Plaintiff*
*Robert Hunter Biden*