UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   PRETRIAL ORDER

### I. Introduction

Defendant Patrick M. Byrne claimed in an interview that Plaintiff Robert Hunter Biden attempted to secure a bribe from the Iranian government in exchange for favors from the U.S. Government. In response, Plaintiff brought defamation claims against Defendant.

Trial on Plaintiff's defamation claims is set for July 29, 2025. On July 21, 2025, the Court held a pretrial conference, at which the Court discussed the parties' various pretrial motions as well as other issues. This order constitutes the Court's pretrial rulings. To the extent this order conflicts with any of the Court's oral rulings at the pretrial conference, this order controls.

### II. Discussion

#### A. Defamation Per Se

Plaintiff represents that his theory of liability is that Defendant's allegedly defamatory statements constituted defamation per se. Pl.'s Mot. in Limine #1 at 3, ECF No. 30. Consistent with this theory,

:
Initials of Preparer        DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|
| Title | *Robert Hunter Biden v. Patrick M. Byrne* | | |

Plaintiff is only seeking nominal damages in the amount of $1—not emotional, reputational, or special damages of any kind. If the jury finds defamation per se and awards $1 in nominal damages, Plaintiff will seek punitive damages.

The Court accepts Plaintiff's representation but considers the matter settled: having chosen to proceed solely on a defamation per se theory, Plaintiff may not change course later. The Court's evidentiary rulings will be made on the premise that Plaintiff is committed to this theory and is seeking only nominal and punitive damages.

### B. Bifurcation

Per the parties' agreement, the Court will bifurcate trial into two phases: liability and damages. In the first phase, the parties will contest liability—i.e., whether Defendant's statements constituted defamation per se of Plaintiff. The second phase will concern punitive damages. To spell out the logistics, if the jury finds for Plaintiff on per se defamation, the Court will reopen for additional evidence on punitive damages. The jury will then determine whether to award punitive damages, and if so, in what amount.

### C. Plaintiff's Reputation

Evidence of Plaintiff's reputation for engaging in corruption with foreign entities is relevant to the issue of actual malice. After all, the stronger Plaintiff's reputation for engaging in foreign corruption, the more likely Defendant genuinely believed that Plaintiff engaged in the alleged bribery scheme with Iran, as the scheme would seem consistent with Plaintiff's past behavior. If Defendant made the allegedly defamatory statements while genuinely believing they were true, then he did not act with actual malice. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (explaining that a defendant acts with actual malice if he makes statements "with knowledge that [they] were false or with reckless disregard of whether [they were] false or not").

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

Defendant may therefore introduce evidence of Plaintiff's reputation for foreign corruption. For example, he may submit news articles suggesting that Plaintiff accepted bribes from foreign entities. However, such evidence is admissible only to show Defendant's state of mind, not to prove that Plaintiff actually engaged in corruption.[1] Accordingly, to be relevant, Defendant must first demonstrate that he was aware of the specific evidence at the time he made the allegedly defamatory statements. Indeed, a news article Defendant never read sheds no light on his state of mind and is therefore inadmissible.

Evidence of Plaintiff's reputation for anything beyond foreign corruption is not admissible.

### D.  Garret Ziegler

Defendant's witness list includes Garret Ziegler. Mr. Ziegler is the author of a publication called the "Report on the Biden Laptop." Joint Witness List at 6, ECF No. 264. Defendant represents that this report, which he will offer through the testimony of Mr. Ziegler, "is relevant to show Plaintiff has a long-standing bad reputation." *Id.*

Mr. Ziegler cannot testify in this case. His report is only relevant to the extent that Defendant read it and it influenced his state of mind. Accordingly, Defendant should admit any relevant portions of Ziegler's report through his own testimony. It is Defendant, not Mr. Ziegler, who can best speak to whether Defendant read Mr. Ziegler's report on Plaintiff's laptop and, if so, what portions he reviewed. Additionally, as the parties agreed at the pretrial conference, any portions of the Ziegler report that relate to issues other than Plaintiff's reputation for foreign corruption are not admissible.

---

[1] Hypothetically, evidence that Plaintiff previously committed acts of foreign corruption could be circumstantial evidence that Plaintiff did in fact engage in the Iranian bribery scheme Defendant described. This would be relevant to the issue of whether the statements were false, a necessary element of Plaintiff's defamation claim. Defendant, however, said he would not argue that his statements were true, only that he genuinely believed they were when he made them. The Court will hold Defendant to that representation. Accordingly, whether Plaintiff actually engaged in foreign corruption is not relevant to this case. Rather, what matters is his reputation for doing so.

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

### E. Plaintiff's Status as a Public Figure

At the pretrial conference, the parties agreed that Plaintiff was a public figure for the purposes of Plaintiff's defamation claim. Given this, in the interest of efficiency, the parties are to stipulate to Plaintiff's public figure status. The Court will not allow any evidence on this point.

### F. Melissa Cohen-Biden, Nathan Lavid, Konstantinos Dimitrelos

The parties' joint witness list includes Melissa Cohen-Biden, Nathan Lavid, and Konstantinos Dimitrelos. The parties did not mention these people when telling the Court their witness lists at the pretrial conference.

No matter, their testimony appears inadmissible. Ms. Cohen-Biden and Mr. Lavid will purportedly testify regarding Plaintiff's emotional damages (or in Mr. Lavid's case, the lack thereof). But emotional damages are not relevant in this case now that Plaintiff seeks nominal damages.

Defendant's witness list states that Mr. Konstantinos will testify "regarding the authenticity of the information contained on Plaintiff's laptop." Joint Witness List at 6, ECF No. 264. The authenticity of Plaintiff's laptop, however, is not relevant. The only question that matters is whether Defendant was exposed to its contents—either directly or through sources like Mr. Ziegler's report. Whether the laptop's contents are authentic has no bearing on Defendant's state of mind, which is the sole issue relevant to actual malice. In any event, Defendant did not provide sufficient evidence that Konstantinos had any foundation for his testimony.

|  | : |  |
|---|---|---|
|  | Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

### G. Impeachment Evidence

On cross-examination, Defendant may inquire into alleged instances of Plaintiff engaging in foreign corruption, as such behavior is probative of his character for truthfulness or unartfulness. *See* Fed. R. Evidence 608(b); *United States v. Nelson*, No. 17-c-00533, 2024 WL 1244262, at *36 (N.D. Cal. Mar. 11, 2024) (listing "bribery" and "fraud" as "instances of misconduct that are clearly probative of the character for truthfulness or untruthfulness) (citing 3 Federal Evidence Practice Guide § 15.04). But if Plaintiff denies engaging in any such behavior, Defendant cannot impeach his answer with any extrinsic evidence that violates the rule against hearsay. *See* Fed. R. Evidence 802. For example, if Defendant asks if Plaintiff has engaged in corrupt business dealings in Ukraine and he answers "no," Defendant cannot impeach him with a Wall Street Journal article accusing Plaintiff of that behavior.

At the pretrial conference, Defendant suggested he might impeach Plaintiff using evidence related to a "Mr. Ho." While further discussion of that evidence casted serious doubt on its effectiveness as impeachment evidence, it is also almost certainly hearsay, as "Mr. Ho" is not testifying in this case. Accordingly, any evidence related to "Mr. Ho" submitted on cross examination is inadmissible unless Defendant can present the evidence in a form that avoids hearsay, legitimately impeaches Plaintiff's testimony, and complies with the limits imposed by Federal Rule of Evidence 608(b).

Defendant may, of course, impeach Plaintiff's credibility through reference to his tax crimes, as Federal Rule of Evidence 609 permits impeachment by evidence of a criminal conviction—especially one related to a "dishonest act or false statement." *See* Fed. R. Evidence 609(a).

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

### H. Defendant's Mooted Motions in Limine

Defendant filed motions in limine moving to exclude: (1) a previously identified doctor who was going to testify regarding Plaintiff's mental health; (2) evidence of emotional damages; evidence of Plaintiff's lost book sales and business opportunities; (3) evidence of Plaintiff's lost business opportunities in the Jewish community. *See* Def.'s Motions in Limine #1-4, ECF Nos. 96-99. Each of these motions is moot.

First, the doctor that was the subject of Defendant's first motion in limine is no longer testifying. Second, because Plaintiff now seeks only nominal and punitive damages, he will not admit any evidence regarding his mental health, his emotional damages, his lost book sales and business opportunities, or his lost business opportunities in the Jewish community. The Court therefore denies all four of these motions in limine as moot.

### I. David Smith's Deposition

Defendant moves to exclude David Smith's written deposition on multiple grounds. For the reasons explained below, most of these reasons do not hold merit.

Defendant's first reason for excluding Smith's deposition is that Defendant made some minor changes to Defendant's cross-questions before sending them to the court reporter. The Court already addressed this contention in its summary judgment order. The changes to Defendant's cross-questions—which Plaintiff claims stem from typographical errors—are inconsequential and do not affect the meaning of Defendant's questions or the reliability of Smith's answers. They are therefore not reason to exclude the deposition.

Second, Defendant complains that Plaintiff failed to send Defendant's objections to Plaintiff's deposition questions to the court reporter to be read into record. This, too, is not reason to exclude Smith's deposition. Plaintiff had no obligation to forward those objections to the court reporter. The only relevant

:

Initials of Preparer       DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

requirement regarding objections to written questions is that a party must serve its objections to written questions on the noticing party to avoid waiver. Fed. R. Civ. P. 32(d)(3)(c). Defendant complied with that rule by sending its objections directly to Plaintiff.

Third, Defendant notes that Smith's deposition occurred on a different date and with a different court reporter than described by Plaintiff's original deposition notice. While these last-minute changes might have rendered Plaintiff's deposition notice technically deficient under Rule 31, they caused no prejudice to Defendant. Accordingly, they do not provide a basis for excluding Smith's deposition.

Fourth, Defendant accuses the court reporter who took Smith's deposition of being unqualified. But this assertion appears to rest solely on the accusation that the court reporter failed to attach the deposition notice and deposition questions to the Court transcript. Even if this is true (Plaintiff denies any deficiency), it is not prejudicial. Defendant already had copies of the deposition questions and the deposition notice. How could he be prejudiced by the court reporter failing to attach those materials to the deposition transcript?

Fifth and finally, Defendant takes issue with the form of the questions Plaintiff asked Smith. After receiving Plaintiff's deposition questions, Defendant objected to each substantive question as "compound," "vague," "ambiguous," "assumes facts not in evidence," and "misrepresents and mischaracterizes testimony." Upon review of Plaintiff's questions, the Court holds that most of these objections are not reason to exclude any of David Smith's testimony.

The one exception is Plaintiff's sixth question. It reads:

Mr. Byrne testified in this action that in late 2021 or early 2022 you met with him and John Moynihan at a parking lot at Reagan National Airport where Mr. Byrne played you an audio recording in which there was a conversation between someone and Mr. Byrne in which it was stated that Mr. Robert Hunter Biden, through an intermediary, had approached the Iranian government with an offer to have his father, President Joe Biden, unfreeze $8

:

Initials of Preparer      DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

billion in Iranian funds in South Korea in return for the Iranians paying the Biden's 10% of those funds which would go into a numbered account for his family. Is that accurate?

ECF No. 225-5.

This is a compound and confusing question that risks misleading the jury. For example, Smith responded with a simple, "no," but it is impossible to determine which part of the multi-faceted question he was denying. Was he disputing that the meeting occurred at Reagan National Airport? That Defendant played an audio recording? That the recording referenced a bribery scheme involving Plaintiff and Iran? Or some other detail? Because the jury cannot discern what Smith's answer actually addressed, the question is inadmissible. *See* Fed. R. Evidence 403.

Plaintiff's remaining deposition questions to Mr. Smith—and his answers—are admissible. Likewise, most of Defendant's deposition questions to Mr. Smith are also admissible, with one exception: any question to which Smith asserted privilege. Allowing a jury to hear those exchanges poses a substantial risk of confusion, as the jury may attach undue significance to the assertion of privilege. Given that these questions have little to no probative value, they are inadmissible. *See* Fed. R. Evidence 403 ("the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury[.]").

### J. Punitive Damages

As a threshold matter, punitive damages are available even though Plaintiff only seeks nominal damages. *See Contento v. Mitchell*, 28 Cal. App. 3d 356, 359 (Ct. App. 1972) ("Where the trier of fact has found the existence of slander per se, and has found the requisite malice in fact, an award of punitive damages is proper despite the absence of a specific award of nominal damages."); *see also Arizona v. ASARCO LLC*, 773 F.3d 1050, 1053, 1060 (9th Cir. 2014) (en banc) (affirming the award of $300,000 in punitive damages in a case with $1 in nominal damages and no compensatory damages).

:

Initials of Preparer      DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

The next question is more difficult: what is the constitutional bound on punitive damages in a case that only involves nominal damages? This is an open area of law, and one the Court need not settle now. It is clear that punitive damages are available. The Court will not evaluate the constitutionality of a punitive damages award that the jury has not yet awarded. That issue is best reserved for post-trial briefing.[2]

While addressing punitive damages, the Court clarifies that Plaintiff may introduce evidence of Defendant's past defamatory conduct and prior punitive damages awards during the punitive damages phase. Such evidence is relevant because "[p]unitive damages previously imposed for the same conduct are relevant in determining the amount of punitive damages required to sufficiently punish and deter." *Stevens v. Owens-Corning Fiberglas Corp.*, 49 Cal. App. 4th 1645, 1661 (1996); *see also* California Civil Jury Instructions No. 3940 (discussing *Stevens*, noting that consideration of other punitive damages awards for the same conduct is appropriate, and suggesting an instruction to limit the jury from using the amount of the past punitive damages award to determine the amount of the current award). Indeed, "a civil defendant's recidivism remains pertinent to an assessment of culpability" when determining punitive damages. *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1204 (2005). This approach is consistent with

---

[2] For the parties' clarity, should the issue arise later in this case, the Court will outline the legal principles governing constitutional challenges to punitive damages awards in nominal damages cases. In a typical case, courts evaluate whether punitive damages are constitutionally proper by reference to the *Gore* factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mutual Automobile Insurance CO. v. Campbell*, 538 U.S. 408, 418 (2003). Of these three guidelines, "the most important guidepost is reprehensibility." *ASARCO LLC*, 773 F.3d at 1054.

Often, the *Gore* analysis is boiled down to a requirement that the punitive damages award not "excee[d] a single-digit ratio between punitive and compensatory damages[.]" *State Farm*, 538 U.S. at 425. But "[w]hen only nominal damages are awarded, application of a *Gore* ratio analysis is not appropriate." *ASARCO*, 773 F.3d at 1058. Indeed, "[b]ecause nominal damages measure neither damage nor severity of conduct, it is not appropriate to examine the ratio of a nominal damages award to a punitive damages award." *Id.* Accordingly, rather than apply a standard ratio analysis, courts determine punitive damages by "compar[ing] [the award] to punitive awards examined by courts in similar cases to find limits and proportions." *Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019) (collecting cases).

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

constitutional limitations on punitive damages, as the United States Supreme Court has made clear that "due process does not prohibit state courts, in awarding or reviewing punitive damages, from considering the defendant's illegal or wrongful conduct toward others that was similar to the tortious conduct that injured the plaintiff[.]" *Id.* discussing *BMW*[3] and *State Farm*[4]).

Finally, the Court clarifies that, while punitive damages are **available** in cases where the jury awards only nominative damages, they are not presumed. Even if the jury found that Defendant acted with "actual malice"—and thus defamed Plaintiff—it would still need to find that Defendant did so "with malice, oppression, or fraud" to warrant punitive damages. CACI No. 3940.

Importantly, the "malice" standard for punitive damages is not the same as actual malice. Actual malice in the defamation context means that Defendant made the statements at issue with knowledge of their falsity or with reckless disregard for their truth. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991). In contrast, "malice" in the punitive damages context means that Defendant "acted with intent to cause injury or that Defendant's conduct was despicable and was done with a willful or knowing disregard of Plaintiff's rights or safety." CACI 3940. The standards are not the same. So even if the jury finds "actual malice" sufficient to support liability, it must still separately find "malice, oppression, or fraud" before awarding punitive damages.

### K. Opening Statements

Finally, the Court reminds the parties that opening statements are not the time for argument. This rule is often ignored under the guise of phrases like "the evidence will show" or "we will prove," but such rhetorical sleight of hand will not be permitted here. As the Supreme Court has emphasized, "[a]n opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the

---

[3] *BMW of North America v. Gore*, 517 U.S. 559 (1996)
[4] *State Farm v. Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW | Date | July 23, 2025 |
|---|---|---|---|
| Title | *Robert Hunter Biden v. Patrick M. Byrne* | | |

whole; ***it is not an occasion for argument***." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, J., concurring (emphasis added). The Court may interrupt a party's opening statement if it determines that a party is using it to argue rather than to preview evidence.

### III. Conclusion

The above rulings constitute the Court's pretrial orders. If further evidentiary or trial-related issues arise, the parties shall raise them at the July 28, 2025 pretrial conference or at trial.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | DTA |