Michael C. Murphy, Esq. (S.B. No. 104872)
Michael@murphlaw.net
Michael C. Murphy, Jr. Esq. (S.B. No. 305896)
Michael.jr@murphlaw.net
LAW OFFICES OF MICHAEL C. MURPHY
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361
Tel.: 818-558-3718
Fax: 805-367-4506

Attorneys for Defendant,
Patrick Byrne

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK M. BYRNE, an individual,<br><br>Defendant. | Case No.: 2:23-cv-09430-SVW-PD<br>Judge: Honorable Stephen V. Wilson<br>Courtroom: "10A"<br><br>**DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR *PRO HAC VICE*; DECLARATION OF MICHAEL C. MURPHY, ESQ.**<br><br>Date:  July 28, 2025<br>Time:  1:30 p.m.<br>Courtroom: "10A" |

i.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RECONSIDERATION
Case No. 2:23-cv-09430-SVW-PD

The Defendant, Patrick M. Byrne, by and through his undersigned counsel, hereby files this Response in Opposition to the Plaintiff's *Ex Parte* Application for Reconsideration of Order Granting Defendant's Application of Non-Resident Attorney to Appear *Pro Hac Vice*, and in support thereof states:

## Background

On July 24, 2025, counsel for the Defendant, Patrick M. Byrne, filed a *pro hac vice* application on behalf of Peter Ticktin so that Mr. Ticktin may represent Mr. Byrne in the litigation against Mr. Byrne.

**The Application of Mr. Ticktin Was Truthful and Appropriate**

When the application process was developed, the drafters of the application were smart. They knew that it was necessary to know who was presently suspended and disbarred, and they purposefully did not ask lawyers who were previously suspended to discuss those previous suspensions. Also, no inquiry was made as to sanctions.

Obviously, there is a huge difference between those presently suspended, and those who are permitted to practice law. On the other hand, there is pretty well done difference between those who never had a bar problem and those who previously had gotten suspended and who were readmitted.

Once a lawyer is readmitted, especially after a suspension which required a whole process of discovery and trial prior to being reinstated, he or she is a full

1.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RECONSIDERATION
Case No. 2:23-cv-09430-SVW-PD

fledged member of the bar who can have trust accounts, and who is trusted.

In this Court, the *pro hac vice* application requested that the applicant certify that "I am not **currently suspended** from and have never been disbarred from practice in any court." The *pro hac vice* application also requested whether Mr. Ticktin had in the last three years been denied any application for *pro hac vice* status to the Central District of California.

Mr. Ticktin has never been disbarred from any state bar, and Mr. Ticktin is not currently suspended by any state bar. Moreover, Mr. Ticktin has been admitted to practice law *pro hac vice* in this district numerous other times without incident, *GS Holistic, LLC v. Samila Group et al.* Civil Case No. 2:22-cv-08527; *GS Holistic, LLC v. One Stop Vape et al.*, Civil Case No. 2:22-cv-04628; *GS Holistic, LLC v. Bro's Inc et al.*, Civil Case No. 2:22-cv-08717;  and *Phillip Madison Jones v. Twentieth Century Fox et al.* Civil Case No. 2:21-cv-05890.

It is true that Mr. Ticktin was disciplined for having a conflict of interest and for paying a New York lawyer a referral fee in a Florida case. As some courts do require an explanation for all suspensions, Mr. Ticktin always provides an explanation, a copy of which, is attached hereto and marked as Exhibit "A."

It should be noted that in all of the following courts, whether the admission did not ask, or if inquiry was made, or if there was a full scale hearing, Mr. Ticktin was never denied admission in any request for admission *pro hoc vice*.

Moreover, Mr. Ticktin has been admitted to, and remains a member of the following courts: The Supreme Court of the United States, U.S. Court Of Appeals, D.C. Circuit, U.S. Court Of Appeals, Eleventh Circuit, Colorado District Court, District Of Columbia District Court, Florida Middle District Court, Florida Northern District Court, Florida Southern District Court, Illinois Northern District Court, Michigan Western District Court, North Carolina Middle District Court, Texas Eastern District Court, Texas Southern District Court, and the Eastern District of Wisconsin Court.

## Legal Standard

In the federal courts, an applicant, *pro hoc vice*, who is a member in good standing of a state bar may not be denied *pro hac vice* admission except on a showing of unethical conduct of such a nature as to justify disbarment of a lawyer admitted generally to the bar of the court. *United States v. United States Dist. Court for the Dist. of Nev.* (In re United States), 791 F.3d 945, 956 (9th Cir. 2015) (quoting *Sanders v. Russell,* 401 F.2d 241, 247-48 (5th Cir. 1968). Courts must articulate specific reasons for denying *pro hac vice* admission, and mechanistic or arbitrary denials are improper. *Bundy v. United States Dist. Court (In re Bundy)*, 840 F.3d 1034, 1042 (9th Cir. 2016).

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RECONSIDERATION
Case No. 2:23-cv-09430-SVW-PD

## Argument

**Mr. Ticktin's Disciplinary History Does Not Justify Denial of *Pro Hac Vice* Admission**

The Plaintiff argues that Mr. Ticktin's disciplinary history, including past sanctions and ongoing ethics probes, warrants denial of his *pro hac vice* application. However, federal courts have consistently held that an applicant may not be denied *pro hac vice* admission unless the alleged misconduct rises to the level of unethical conduct that would justify disbarment. *See Schlumberger Techs. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997).

Moreover, Mr. Ticktin was truthful in his responses in his *pro hac vice* Application to the Court. Mr. Ticktin is not currently suspended from any court, nor has ever been disbarred from any court. Although Mr. Ticktin was suspended from The Florida Bar in 2009, his conduct at that time was mitigated by the absence of dishonest intent. This does not meet the high threshold for denial of *pro hac vice* admission.

Moreover, Mr. Ticktin has been admitted *pro hac vice* in the Central District of California in multiple cases without incident, demonstrating his ability to comply with the ethical and procedural standards of this jurisdiction. The Plaintiff's reliance on ongoing ethics probes is speculative and does not constitute a valid basis for denying *pro hac vice* admission. *Bundy v. United States Dist. Court (In re Bundy)*, 840 F.3d 1034, 1042 (9th Cir. 2016).

**Allegations of Disruptive Litigation Tactics Are Speculative and False**

Mr. Ticktin is the founder of The Ticktin Law Group, which has made its form of history. For instance, when defending homeowners in 2010, it was the law firm which unearthed the robo-signers. There are seminal cases involving topics from Child support, the law of laches, to the law of resulting trusts. Mr. Ticktin even appeared before the Supreme Court of the State of California where new law was developed as to how one is to agree to a summary judgment while keeping his or her right to appeal. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (Cal. 1999).

Mr. Ticktin is a senior member of the Bar with over 53 years of legal practice and is a nationally recognized trial lawyer who has litigated on Court TV and in other famous cases, representing clients as high as the President of the United States and others well known persona, to the middle class and lower class.

The idea that this respected man in his 80th year of life would be likely to engage in disruptive or performative litigation tactics would be laughable if the allegations were not so serious and denigrative. In fact, the allegation says far more of the one who would recklessly make such an allegation, than it tells of Peter Ticktin.

Federal courts have held that *pro hac vice* admission may only be denied based on specific and substantiated concerns about the applicant's ability to comply with the court's rules and practices. *United States v. United States Dist. Court for*

*the Dist. of Nev. (In re United States)*, 791 F.3d 945, 957 (9th Cir. 2015). *See also United States v. Ries*, 100 F.3d 1469, 1472 (9th Cir. 1996).

Here, the Plaintiff has not provided any evidence that Mr. Ticktin's conduct in this case would disrupt the orderly administration of justice.

**The Timing of the Pro Hac Vice Application Does Not Warrant Denial**

The Plaintiff argues that Mr. Ticktin's *pro hac vice* application is untimely because it was filed five days before trial. However, the Local Rules of the Central District of California place no such restriction on the timing of a *pro hac vice* application. Moreover, the timing of a *pro hac vice*, application is within the discretion of the court, and untimeliness alone is not a sufficient basis for denial unless it results in prejudice to the opposing party or disrupts the proceedings.

The Plaintiff has not demonstrated any prejudice or disruption caused by the timing of Mr. Ticktin's application. The Defendant, Patrick M. Byrne, has not requested a continuance to the trial date set for July 29, 2025. There is no unfair prejudice or delay caused by Mr. Ticktin's representation of Mr. Byrne in the case *sub judice*.

**Alleged Non-Disclosure of Disciplinary History Does Not Justify Reconsideration**

The Plaintiff contends that Mr. Ticktin failed to disclose his disciplinary history in his pro hac vice application. However, Mr. Ticktin's application accurately states that he is not currently suspended from any court, nor has Mr.

6.

Ticktin been disbarred from any court, which is the criterion for the Central District of California's *pro hac vice* admission. Any alleged omissions regarding past disciplinary actions do not rise to the level of misconduct that would justify denial of *pro hac vice* admission.

## Conclusion

The Plaintiffs Application for Reconsideration is litigation strategy and a bad faith attempt to prevent the Defendant, Patrick M. Byrne, from being represented by counsel of his choice. Mr. Ticktin meets the legal requirements for *pro hac vice* admission, and the Plaintiffs objections are either legally insufficient or unsupported by evidence. For these reasons, the Court should deny the Plaintiffs Application for Reconsideration.

Dated: July 25, 2025

                    LAW OFFICES OF MICHAEL C. MURPHY

                    By: /s/ Michael C. Murphy, Esq.

                        Michael C. Murphy, Esq.
                        Michael C. Murphy, Jr., Esq.
                        Attorneys for Defendant,
                        Patrick Byrne

LAW OFFICES OF MICHAEL C. MURPHY
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361

# DECLARATION OF MICHAEL C. MURPHY

I, Michael C. Murphy, Esq, declares as follows:

1. I am an attorney at law duly licensed to practice law in the State of California and I am the attorney of record for Defendant, Patrick Byrne in this action. I am personally familiar with the facts set forth in this Declaration and if called upon I could and would competently testify to the foregoing.

2. I received the Plaintiff's Ex Parte Application asking the court to reconsider its order granting the Application of Peter D. Ticktin's to represent Defendant, Patrick Byrne in Haec Vice in this action. Due to the unreasonable amount of notice given by Plaintiff for Defendant and Mr. Ticktin to oppose his application, I was not able to obtain a Declaration from Mr. Ticktin to oppose the Application. However, I was able to obtain a letter from him that he has directed I attach to this Declaration and submit to the court in response to Plaintiff's Ex Parte Application. A true and correct copy of that letter is attached hereto, designated Exhibit "A" and incorporated by reference herein.

3. Defendant is not requesting a continuance of the trial of the case. He and his counsel are ready to proceed with the jury trial of this case on July 29, 2025, at 9:00 a.m. in Courtroom 10C before this court. Plaintiff has not included any evidence with his application that Mr. Ticktin has made any false statements on his application or information that he was required to provide the court. The Plaintiff's Ex Parte Application is based on unsupported conjecture, inadmissible hearsay and innuendo. Defendant has a right to have the counsel of his choice represent him in this case. Plaintiff has no standing to determine what counsel should be represented Defendant because he has a conflict of interest in attempting to make that selection for Defendant.

4. I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct and that this Declaration was executed this
///

25th day of July, 2025, at Westlake Village, California.

_____
Michael C. Murphy, Esq.

Exhibit "A"

# THE TICKTIN LAW GROUP
"The lawyers you want between you and your problems"

July 25, 2025

To:   The Honorable Stephen V. Wilson

Re: Defendant's Opposition To Ex Parte Application For Reconsideration Of Order Granting Defendant's Application Of Non-Resident Attorney To Appear Pro Hac Vice

Dear Judge Stephen V. Wilson,

I have been advised that the Plaintiff, Robert Hunter Biden, has filed an ex parte application for reconsideration of my application to appear *pro hac vice* on behalf of the Defendant, Patrick M. Byrne due to disciplinary action for conduct that occurred in 2002.

I have practiced law since 1972, and in all that time, he had never been disciplined except for two suspensions which occurred in 2009 and 2010.

The first suspension stemmed from a venture, in which I had a client, Paul Johnson, who had been running a package delivery business in a company called "The Pony Express," which he had purchased out of bankruptcy. I represented Mr. Johnson in an SEC action and did some collection defense work for him. The Pony Express was a publicly traded company on the OTC market.

Unfortunately, Mr. Johnson had previously defrauded investors, involving a different company, out of approximately $20 Million. Eventually, he was found guilty, and he was sentenced to 20 years in a federal facility.

When it became apparent that Mr. Johnson was going to be charged for his fraudulent conduct by the U.S. Attorney, Mr. Johnson could not find anyone who would take over The Pony Express. He asked me, and I saw the offer as an opportunity. It was a chance to save about 100 jobs for its employees; to help the investors who had been defrauded who had been given shares in The Pony Express; and to make a good investment for himself. On January 7, 2002, I took over The

The Honorable Stephen V. Wilson
July 24, 2025
Page 2

Pony Express with Mr. Johnson's blessings.

    Shortly thereafter, Mr. Johnson was arrested. As I was aware that Mr. Johnson had voluntarily returned from Canada after he knew that he would be arrested, I testified at a bail hearing before a federal Magistrate Judge that Mr. Johnson was not a flight risk. While Mr. Johnson was awaiting trial, I took the reins of the company, only to find that there were no records, no bank accounts, no accountants, and everything had been run on cash. There was a need for funding, and no investors would invest so long as Paul Johnson was involved, so I had meetings with Mr. Johnson at the detention center in which he was held without bail.

    On one occasion, Mr. Johnson told me that he had just learned that if he was convicted, he would be going to a medium-security or a maximum-security facility because he was a foreign national. From what Mr. Johnson said, and the way he said it, I became convinced that if Mr. Johnson's feet ever hit the ground outside, they would be running to avoid further incarceration.

    Shortly thereafter, on a call from the Assistant U.S. Attorney who was handling the case, I was advised that the Federal Court Judge, The Honorable Wilke Ferguson, was about to review the bail hearing and that he was going to read the transcripts. This put me into a difficult predicament, in that he was personal friends with Judge Ferguson, who knew that I would never give false evidence. The problem was that I had come to a conclusion that his prior testimony untrue.

    To deal with the matter, I wrote a letter to the court, simply withdrawing all of his testimony. Of course, I knew that Mr. Johnson would see the letter, and that Mr. Johnson would feel betrayed. I dreaded the idea of writing the letter, but I knew that there was no choice. It was not an action taken lightly. I made one more trip to the detention center, and Mr. Johnson refused to meet with me.

    Upon return to my office, I gathered the Board members of The Pony Express and I advised that I could no longer have any involvement with Mr. Johnson, as Mr. Johnson was still a client on a minor collection issue, but he was a client, nevertheless. Therefore, I made sure that any actions to have Mr. Johnson removed

The Honorable Stephen V. Wilson
July 24, 2025
Page 3

from the company were done by hiring outside counsel, and I was screened off from anything to do with Mr. Johnson.

Ultimately, the lawyers hired by the other officers of The Pony Express, had Mr. Johnson's shares nullified, and I was advised only of the end result. That was when I made a major mistake. I wrote a letter to all the shareholders, and to specific investors, and advised that Mr. Johnson was no longer a part of The Pony Express. I wrote that Mr. Johnson was "as gone as gone could be."

Almost 6 years later, Mr. Johnson made a bar complaint, and The Florida Bar proceeded on two counts against me, alleging that by providing the letter to Judge Ferguson, I had violated attorney-client confidentiality, and that I had a conflict of interest for advising the shareholders and investors of The Pony Express that Mr. Johnson was no longer a part of company.

After a 2-day trial before a circuit court judge sitting as a Referee, I was found to be not guilty of sending the letter, as it was, in fact, my duty to do so. However, I was found guilty of a conflict of interest, for advising the investors that Mr. Johnson was "as gone as gone could be," and the Referee recommended the lightest punishment, an admonition.

It should be noted that in his Report, the Referee found that I was "of high moral character and reputation." In fact, my honesty surrounding the circumstances of the events in 2002, and my honesty in the proceedings were mitigating factors.

The Florida Bar appealed, and the Florida Supreme Court found that the conflict of interest was "egregious." The Court agreed with the conclusions of the Referee as to guilt and innocence, but increased the penalty "as an example" to the bar, to a 91-day suspension. (Any suspension greater than 90 days required a Petition for Reinstatement for a suspended lawyer to resume practice.)

During the period while all this had been investigated by bar counsel of The Florida Bar, it came to my attention that in my dealings with a New York attorney, I had

The Honorable Stephen V. Wilson
July 24, 2025
Page 4

paid the attorney a referral fee. The law was unclear as to referral fees in Florida,[1] paid to out of state attorneys, and I was offered a 15-day suspension to run immediately following the 91 day suspension, while the reinstatement procedure was ongoing. As the process of reinstatement takes many months, the 15-day suspension ran concurrently with the post 91 day suspension. I accepted the punishment.

After my suspension, I petitioned the Florida Supreme Court for reinstatement, and that began a whole new process. It was another full investigation, and another full day hearing before another Circuit Court judge sitting as a Referee. After a period of more than 10 months, I was reinstated as an attorney with The Florida Bar.

Then, another full inquiry was made in the Southern District of Florida for me to be reinstated to the federal court in the that district in 2010. Since then, I have resumed my full practice of law, without being disciplined again. On several occasions, I was admitted, since as *pro hac vice*, where my suspensions were considered. However, I have never been denied admission *pro hac vice*.

Ultimately, I have applied for admission and have been readmitted or admitted in the following federal courts:

The Supreme Court of the United States
U.S. Court Of Appeals, D.C. Circuit
U.S. Court Of Appeals, Eleventh Circuit
California Central District Court
California Eastern District Court
California Southern District Court
Colorado District Court
District Of Columbia District Court

---

[1] Although there were no cases which dealt with referral fees to out of state attorneys, at all, in regard to the New York attorney to whom Mr. Ticktin had paid a referral fee the referred cases were of Florida clients found by the New York attorney while he was in Florida.

The Honorable Stephen V. Wilson
July 24, 2025
Page 5

Florida Middle District Court
Florida Northern District Court
Florida Southern District Court
Illinois Northern District Court
Michigan Western District Court
North Carolina Middle District Court
Texas Eastern District Court
Texas Southern District Court

  I have also had occasion to be admitted in various state courts around the country, including in Colorado and Nevada, where there was opposition due to my disciplinary record, and, after hearing, the trial judges permitted my appearance *pro hac vice*.

  I know and understand that I did something unethical years ago, in an effort to do good for investors of a company which I took over, the legendary Pony Express. I made no gain from the venture and ultimately was punished for an indiscretion I just did not understand to be wrongful at the time.

  Nevertheless, I was punished and have remained totally ethical in all the years since my reinstatement n 2010.

  Therefore, I ask that your Honor to deny the Plaintiff's application to reconsider my *pro hac vice* admission for the purpose of the case *sub judice*.

Respectfully submitted,

Peter Ticktin, Esquire

PT:ms