Peter Ticktin, Esq.
**THE TICKTIN LAW GROUP**
270 S.W. Natura Avenue
Deerfield Beach, FL 33441
Telephone: (954) 570-6757

Stefanie L. Lambert, Esq.
Law Office of Stefanie L. Lambert PLLC
400 Renaissance Drive, 26th Floor
Detroit, Michigan 48243

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# Western Division

| | |
|---|---|
| **ROBERT HUNTER BIDEN,** an individual,<br><br>Plaintiff<br><br>v.<br><br>**PATRICK M. BYRNE,** an individual,<br><br>Defendant. | Case No. 2:23-cv-09430<br><br>*PRO* SE PETITIONERS PETER TICKTIN'S AND STEFANIE LAMBERT'S NOTICE AND MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL TO U.S. SUPREME COURT<br><br>Date:    November 10, 2025<br><br>Time:   1:30 PM<br><br>Courtroom: 10A, 10th Floor First Street U.S. Courthouse, Los Angeles, California<br><br>Before the Honorable Stephen V. Wilson |

- 1 -
STAY ON APPEAL OF DENIAL OF RIGHT TO COUNSEL

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure Rule 8, the Petitioners attorney Peter Ticktin, Esquire, will and hereby does move on the above-mentioned date to stay this case.

According to Judge Wilson's website page, the hearing should take place at the First Street U.S. Courthouse, Los Angeles, California, Courtroom 10A, 10th Floor, on Monday, November 10, 2025, at 1:30 PM PST or at such time thereafter as the case may be called before the Court, among other cases.  Parties are advised that any court may modify the scheduling of a motion and they may wish to monitor any possible changes.

The Petitioners make this motion on the following grounds:

The Petitioners have noted their Notice of Appeal to the U.S. Supreme Court in the U.S. District Court for the Ninth Circuit and also request a stay pending that appeal.  The Petitioners will of course file for a Petition of Writ of Certioari expeditiously and if necessary an application for stay in the U.S. Supreme Court.

I. **Background And General Facts**

1. The District Court processed the *pro hac vice* application duly filed of Peter Ticktin to appear in this case in the then-imminent trial and entered Peter Ticktin as attorney for Defendant Patrick Byrne.

2. Subsequently, the District Court reversed that decision on motion for

reconsideration by lawyers for Biden.

3. On July 29, 2025, and August 5, 2025, at the request of Hunter Biden's attorneys, the District Court issued separate orders disqualifying Petitioners and refusing to let them appear *pro hac vice* on behalf of the Defendant, Dr. Byrne, in the underlying case.

4. With regard to Attorney Stefanie Lambert, related issues underlying this appeal have already been filed with the U.S. Supreme Court as a separate case and Lambert is awaiting possible certiorari on some of the same issues. Specifically, this Court was led to believe certain foundational facts as true which are in fact being disputed right now. The Court should have awaited the resolution of those disputes before assuming a certain scenario.

5. Attorney Peter Ticktin, however, was officially admitted *pro hac vice* and then removed by the Court upon the request of Biden's attorneys.

6. And yet, as a former attorney, however briefly, the Court has not sent any of the filings or Court orders to Peter Ticktin, to Patrick Byrne, or any of Byrne's former attorneys.

7. Upon the removal of Ticktin and Lambert as Byrne's lead trial attorneys, all of Byrne's other local lawyers withdrew and quit because they could not reach the ethically-required level of preparation and capability in the absence of Bryne's long-term lawyer Lambert and Ticktin.

8. Not taking a case when one is not prepared to manage the case in a jury trial is not just an opinion in response to the trial judge but an ethically-required standard under professional rules for attorneys. The Defendant, Patrick Byrne, personally relieved his primary local attorney upon learning that the attorney was not preparing for trial and was not following Byrne's trial litigation plans. For example, Michael Murphy told Patrick Byrne not to appear at the trial but instead Murphy wanted to use Byrne's video deposition. Petitioners learned the night before trial that he didn't have the video. Byrne went through the effort and expense of hiring trial consultants ready to help move and display each exhibit during the trial. The consultants showed up at trial with all of the exhibits they were responsible for prepared and organized and ready to facilitate the progress of the trial. The local attorney Michael Murphy wanted to rely upon a video deposition in lieu of Bryne's personal appearance, but everyone on Byrne's team became very concerned when it emerged that the lawyer had not requested a copy of the video deposition. Therefore, it would not be possible to rely on the video deposition that was never ordered. Even if the video could have been obtained from Biden's attorneys at the trial, it would not be ready to go with time stamps, marking the time stamps, and clips to be ready to show to the jury the relevant portions. This would be important to address the case in chief and in closing. This is just

one example of Murphy misrepresenting his readiness for trial. Byrne and Petitioners felt Murphy was misrepresenting trial strategy to his client.

9. Furthermore, Murphy gratuitously shared the cost of printing Hunter Biden's attorneys' 7 binders of exhibits for their case without Byrne's permission or Byrne receiving any benefit. Murphy failed to provide any exhibits for Byrne to be included in exhibits at trial. Murphy did not scan the <u>Marco Polo</u> book which contains the contents of the Hunter Biden laptop, meant to be included in the exhibits or identify relevant portions or have it ready for use at trial.

10. Murphy did not prepare a Witness list on Byrne's behalf but provided to Petitioners a copy of opposing Hunter Biden's list including the introduction and descriptions of the witnesses to the jury from Biden's perspective.

11. Also, in a case involving some sensitive national security issues including Iran and nuclear weapons, Michael Murphy's associate showed up in court the day before trial for hearing on pre-trial rulings, wearing old muddy tennis shoes, but on her jacket a large "Free Palestine" pin. Her positioning in the courtroom would have had her facing the jury. Also, news media was present because it was the eve of trial. All of this would show to the jury a negative impression of Byrne's case, by showing that Bryne's legal team did not believe in his own case. The combination of lack of readiness and

appearance of associate counsel with a "Free Palestine" pin seemed to possibly cross the line into deliberate sabotage. Her pantsuit was covered in cat hair. This is not compatible with taking a case in Federal Court seriously especially involving national security issues and high profile media attention.

12. Unlike common procedure (whether planned or accidental) where former attorneys (and various interested parties including news media, amicus curiae, or would-be intervenors) usually remain on the ECF distribution list of most if not all District Courts unless they specifically request being removed, the Central District of California deleted all of Byrne's prior attorneys from the distribution list.

13. As a result, none of the filings by Mr. Biden's attorneys since August 5, 2025, have been served upon the Defendant Byrne or any of his representatives or former attorneys.

14. As a result, none of the Court's orders since August 5, 2025, have been served upon the Defendant Byrne or any of his representatives or former attorneys.

15. The Court held several status hearings focused on what to do after the Plaintiff Biden moved to have the Defendant Byrne's attorneys removed, and presently the Plaintiff takes issue with the lack of counsel on behalf of Dr. Byrne to confer with.

16. That is, all of this is a tempest of Mr. Biden's own making.

17. However, no one communicated or served any of this to Defendant Byrne or any representative on his behalf, at least not that Petitioners have been informed about.

18. It would have been most natural for the Court to provide informal notice to Ticktin who was actually admitted to the case even if only for a day or two.

## II. Urgency And Need For A Stay Of Proceedings

19. Apparently, subsequent orders involve the fact that the Defendant, Dr. Byrne does not have a lawyer, after the Court removed his lawyers at the Plaintiff, Mr. Biden's request.

20. This is a civil case for defamation, brought by the Plaintiff Robert Hunter Biden. In other words, as the Complainant, it was Biden's burden and challenge to serve the Defendant with Notice and Service of Process in the first instance to begin the lawsuit.

21. If the Plaintiff, Mr. Biden did not know how to serve the Defendant, Dr. Byrne, then this civil case would never have gotten started by service of process. The attempt to use contempt to force the Defendant Byrne to bear Mr. Biden's burden to serve him after Mr. Biden removed the Defendant, Dr. Byrne's attorneys is abusive and conducted in bad faith.

22. There is nothing in this case that suggests that anything other than the Plaintiff, Mr. Biden's continued bad faith will unfold.

### III. Right To Counsel Of One's Choice Requires Over-Turning, Modification, Alteration, Or Clarification Of Existing Precedent To Correct Excesses.

23. The denial of a litigant's counsel of choice raises significant constitutional concerns warranting scrutiny and review.

24. Over the years, judges have created for themselves exceptions to the right to counsel and the counsel of one's choice under the Due Process clause and the Sixth Amendment of the U.S. Constitution.

25. Those exceptions are unconvincing in the first instance, because they depend crucially and exclusively on speculation free of any facts.

26. Those exceptions have continually expanded to the point where they must be revised by the U.S. Supreme Court, lest the exception swallows entirely the Sixth Amendment.

27. The Petitioners dispute that the discretion, not unbounded, of a trial judge to deny a defendant's right to not only counsel but the counsel of his or her choice can be denied based on raw and groundless speculation.

28. Pure speculation about the future cannot abridge the Constitutional rights of the defendant.

29. Thus, the exception asserted in judge-made law that the Constitution's guarantee does not apply has been radically transformed from a fact-based inquiry of removing a *pro hac vice* attorney due to actual misbehavior before the court in question into a boundless exercise in raw imagination.

30. An attorney who has made a mistake in the past, the argument goes, <u>might not</u> do everything perfectly in the case before the judge in question. But on the other hand he or she might. What might happen is not a proper answer to a command of the U.S. Constitution.

31. Contrast this with the approach consistent with American jurisprudence of removing an attorney who actually, in fact, misbehaves, violates court rules, or doesn't follow a judge's orders.

32. One is based on actual events. The modern trend flips this on its head and leans on guesswork of what might happen (or might not).

33. For example, Stefanie Lambert routinely tries all manner of cases without anything remarkable occurring, <u>except</u> when they involve elections matters and weaponization of the Government.

34. It is irrational to speculate when nearly every case goes through without a hitch, except when certain vested interests want to silence critics.

35. That is, if 0.1% of a lawyers' cases have had some controversy, but 99.9% have not, is that a rational basis for speculating that an attorney will be

*unable* (the legal test asserted, that a lawyer is so problematic that he or she will lack the capacity to follow rules) to conform to court orders and local rules in a particular court?

36. And when those cases with allegations are all associated only with the same company or its allies should that highly-motivated incentive to complain be considered?

37. The same is true of Ticktin who has practiced for almost 4 decades and has had only a very small few complaints.

38. Meanwhile, these issues have also grown and expanded over the years so that what was originally accepted in precedent is now very different.

IV. **Lack Of Prejudice To Opposing Party**

Despite the fact that every plaintiff would wish to achieve their hoped for victory sooner rather than later, this Complaint was filed on November 8, 2023, from allegedly defamatory statements much earlier, renewed and reposted on October 13, 2023, (which does not necessarily extend the time when the action accrued earlier).

Furthermore, it was the Plaintiff Biden who caused the removal of the Defendant Byrne's attorneys, creating the problem here. Regardless of whether that was right or wrong, Mr. Biden surely had to consider the likely effect of further delay to the case.

V.     **The Public Interest**

While the public might not have a favorite between Biden and Byrne, the continuous erosion of Constitutional rights, here the Sixth Amendment, does profoundly affect the public interest.  When one side or a court can control the legal representation of another party and essentially dictate what a person's attorney can or cannot argue to the jury, then justice has become nothing but a mirage.  Raw discretion over a person's choice of their attorney, forgetting that discretion is not unbounded and discretion must not be abused, that is any decision must be founded in reason and logic, places the legal rights and freedoms of all Americans in doubt.  An Appellate review of these matters is appropriate for the continued health and vigor of our justice systems.

WHEREFORE, the Petitioners move this Court to enter an Order for a Stay of Proceedings in the District Court pending review of the Petition for a Writ of certiorari being filed herewith.

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel which took place on October 14, 2025.  Counsel for the Plaintiffs opposed the relief sought in the instant motion.

| | |
|---|---|
| Dated: October 15, 2025 | Respectfully submitted, |
| | /s/   *Peter Ticktin* |
| | Peter Ticktin, Esquire |
| | **THE TICKTIN LAW GROUP** |
| | 270 S.W. Natura Avenue |
| | Deerfield Beach, FL 33441 |
| | Serv512@LegalBrains.com |
| | Telephone: (954) 570-6757 |

STAY ON APPEAL OF DENIAL OF RIGHT TO COUNSEL

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025, I electronically filed the foregoing *Pro* Se Petitioners Peter Ticktin's And Stefanie Lambert's Motion For Stay Of Proceedings Pending Appeal To U.S. Supreme Court document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to opposing counsel registered on CM/ECF.

/s/   Peter Ticktin
Peter Ticktin

/s/   Stefanie Lambert
Stefanie Lambert