Richard A. Harpootlian, *pro hac vice*
rah@harpootlianlaw.com
Phillip Barber, *pro hac vice*
pdb@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

BRYAN M. SULLIVAN (SBN 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (SBN 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for PLAINTIFF
ROBERT HUNTER BIDEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK M. BYRNE, an individual,<br><br>Defendant. | **Case No. 2:23-cv-09430-SVW-PD**<br><br>*Hon. Stephen V. Wilson*<br><br>**PLAINTIFF ROBERT HUNTER BIDEN'S OPPOSITION TO PRO SE PETITIONERS' MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL TO U.S. SUPREME COURT**<br><br>Date: November 10, 2025<br>Time: 1:30 P.M.<br>Place: Courtroom 10A |

**PLAINTIFF'S OPPOSITION TO PRO SE PETITIONERS' MOTION FOR STAY**

## MEMORANDUM OF POINTS AND AUTHORITIES

After months of delay and multiple pretrial conferences, jury selection and trial of this case was set to begin on July 29, 2025. Prospective jurors were summoned; exhibits and transcripts filling many boxes were printed and brought to the courtroom. The presiding judge and chambers and courtroom staff were present in the courtroom. Plaintiff Robert Hunter Biden and his lawyers were present in the courtroom. But Defendant Patrick M. Byrne and his counsel since nearly the commencement of this action, Michael Murphy, were not present. Neither was Peter Ticktin, whose *pro hac vice* application had been approved the previous week. Stefanie Lambert was present and attempted to appear for Defendant, filing a motion for admission *pro hac vice* that morning, but her motion was denied because of numerous incidents of recent and severe misconduct. ECF No. 295. Mr. Ticktin's *pro hac vice* admission was reconsidered and denied based on his "history of discarding his ethical obligations in the name of pursuing political objectives" and his failure to appear for trial. ECF No. 310. Defendant then terminated all his lawyers, disobeyed repeated orders to retain new counsel and to appear personally before the Court, and as a result was placed in default. ECF Nos. 343 & 344.

Having been placed in default, Defendant now wishes to move to stay all proceedings in this case. Unable to file a motion on behalf of Defendant because they are not admitted to practice before this Court, Petitioners Peter Ticktin and Stefanie Lambert instead have filed a motion as "pro se" petitioners with a declaration from Defendant requesting the Court stay all proceedings in this case. ECF No. 347-1 ¶ 12. Plaintiff respectfully submits two points in opposition to this motion.

*First*, to facilitate Defendant's continued defiance of the Court's orders to appear personally or through counsel, Petitioners have filed a motion so procedurally defective that it calls into question their fitness to practice law. Petitioners apparently forgot to sign their motion. They only signed the certificate of conferral and the certificate of service. Petitioners claim the motion is filed "pursuant to Federal Rules of Civil

2
**PLAINTIFF'S OPPOSITION TO PRO SE PETITIONERS' MOTION FOR STAY**

Procedure Rule 8," but Rule 8 concerns the general of pleading, not motion practice. Petitioners' statement that they "noticed their Notice of Appeal to the U.S. Supreme Court in the U.S. District Court for the Ninth Circuit" [*sic*] is bizarre. One does not notice an appeal to the Supreme Court. The Supreme Court's appellate jurisdiction is purely discretionary, exercised upon a granted petition for a writ from the Supreme Court, not a notice filed in a lower court.[1] Regardless, a motion for a stay pending an appeal must first be made in the district court. Fed. R. App. P. 8(a)(1). But to do that someone would have to appear in the district court on behalf of the party seeking a stay. Defendant however decided not to appear in this court to seek a stay before moving for a stay in the Ninth Circuit, because there would then be a lawyer to accept service of discovery requests and other process on his behalf. His motion to stay in the Ninth Circuit was defective for this reason, and his second motion to stay pending his "appeal" to the Supreme Court was denied and he was denied permission to make any other filings in this matter in the Ninth Circuit. *In re Attorneys Peter Ticktin and Stefanie Lambert*, Case No. 25-5811, Dkt. Entry 8.1 (Oct. 2, 2025). If Petitioners ever actually file a petition for certiorari, any request for a stay likewise will be denied because Defendant never moved for a stay before this Court. Sup. Ct. R. 23(3).

Perhaps recognizing this, Defendant wants to move this Court for a stay but cannot do so without obeying the Court's order to appear before the Court either in person or through counsel admitted in California. Defendant however has made plain his resolve to flout the Court's orders for him to appear, which is the reason he is in default, so he instead has Petitioners file a motion to stay on his behalf as "pro se" litigants rather than as his attorneys. Plaintiff respectfully submits the fitness to practice of any attorney willing to do so is questionable. Petitioners cannot move to stay a case to which they are not a party, do not represent a party, and are not the subject of any

---

[1] The only remaining appeal of right to the U.S. Supreme Court is an appeal from an order granting or denying injunctive relief in a case required by law to be heard in the district court by a three-judge panel. 28 U.S.C. § 1253. The only remaining three-judge district court cases are certain legislative apportionment cases.

process like a subpoena.

There are over 190,000 attorneys in active status with the California bar. https://www.calbar.ca.gov/About-Us/Who-We-Are/Historic-Demographics. It is inconceivable that none are available to be retained by Defendant. But if that is indeed the case, Defendant may appear and proceed pro se. There is no right to be represented by a person not admitted to practice before the tribunal in which the case is pending. The Court, not Defendant and not state bar of Florida or Michigan, maintains the roll of attorneys admitted to practice before it.

*Second*, Mr. Ticktin and Ms. Lambert's repeated *ad hominem* attacks on Carmen Selame, an associate of Defendant's former counsel, Mr. Murphy, are reprehensible and would be sufficient cause to revoke *pro hac vice* admission had it been granted. This sort of attack is another example of conduct that calls into question Mr. Ticktin's and Ms. Lambert's fitness to practice law.

Defendant's previous counsel presumably was not prepared to present his video deposition at trial because Defendant had forever insisted that he would attend trial in person. Defendant made a last-minute strategic decision not to attend trial because he realized he would be questioned about his finances. Defendant has stated publicly that he keeps his assets in untraceable overseas assets "scattered in other locations that are even more outside the reach of the Deep State" than a Swiss bank account. Patrick M. Byrne, *A Message to My Former Colleagues at Overstock*, https://www.deepcapture.com/2019/09/a-message-to-my-former-colleagues-at-overstock/. By "the Deep State," Defendant apparently means the Internal Revenue Service (IRS), which is the government agency most concerned with where Defendant makes and keeps his money. The real risk to Defendant from discovery into his financial condition is not that such discovery might result in a judgment against him in this case larger than it otherwise would be—any judgment in this case will be small change to a billionaire like Defendant. The real risk is that discovery would expose his failure to report overseas income and assets to the IRS as required by law. The

consequences of intentionally concealing hundreds of millions of dollars of income and assets from the IRS are severe and life-changing for anyone, even a billionaire.

This is the apparent reason Defendant is now defaming his former attorney's innocent associate—to conceal that real reason he fired his attorneys and defaulted in this action is tax evasion. Petitioners assert Ms. Selame wore "muddy tennis shoes" to court, that she had "cat hair on her pantsuit," had some sort of "Free Palestine" pin on her jacket, and she appeared to "possibly cross the line into deliberate sabotage" by not taking the case seriously. ECF No. 347 ¶ 11. Defendant made similar allegations regarding tennis shoes and a Palestinian pin in his declaration regarding a motion for Mr. Ticktin's admission pro hac vice. ECF No. 297-1 ¶ 12. Plaintiff's counsel never witnessed any inappropriate conduct or political messaging from Ms. Selame. Her appearance and conduct were always entirely professional. Defendant, according to Petitioners, never even met her. Mr. Ticktin never met her. Yet Mr. Ticktin filed a declaration signed by Defendant stating that her appearance was unprofessional. Mr. Ticktin repeated this defamation in the Ninth Circuit mandamus petition, *In re Attorneys Peter Ticktin and Stefanie Lambert*, Case No. 25-5811, Dkt. Entry 2.1 at 13 (Sept. 15, 2025), and again in their most recent frivolous filing, ECF No. 347.

Mr. Ticktin's and Ms. Lambert's allegations about Ms. Selame are racist. "Selame" is surname of Lebanese origin, most closely identified with members of the Maronite Church, which is in communion with the Catholic Church. Ms. Selame attended Loyola Law School, which is part of a Jesuit university. Her law firm website biography states that she is learning Arabic in her spare time. Plaintiff does not know or speculate about Ms. Selame's actual ethnic or religious origins. The point is that Defendant, through his disgraced want-to-be counsel, is continuing the same racist defamation for which he was sanctioned in Canada.

In 2011, Defendant became angry with Canadian businessman Altaf Nazerali because he believed Mr. Nazerali was short-selling stocks. Because Mr. Nazerali, a man of Indian ethnicity born in Kenya, has a Middle Eastern-sounding name, Defendant

published articles declaring that Mr. Nazerali was an arms dealer and financier for Osama Bin Laden and Al-Qaeda, with close links to Saudi Arabian and Pakistani intelligence agencies.  The Supreme Court of British Columbia held that Defendant and his associates "engaged in a calculated and ruthless campaign to inflict as much damage on Nazerali's reputation as they could achieve.  It is clear on the evidence that their intention was to conduct a vendetta in which the truth about Nazerali himself was of no consequence."  5/6/16 *Nazerali v. Mitchell*, No. S116979, 2016 BCSC 810, Correct Judgment (Sup. Ct. of British Columbia).  Mr. Nazerali was awarded over $1 million in damages for defamation, including punitive and aggravated damages.

Ms. Selame likewise has a Middle Eastern name, so Defendant defames her too, again to advance his own pecuniary interests in a calculated and ruthless fashion.  She is a young lawyer who graduated law school in 2020.  This is, presumably, the highest profile case of her career to date.  The repeated racist and personal attacks by her former client and his confederates Mr. Ticktin and Ms. Lambert are defamation per se because they state she is unfit for her profession. Cal. Civ. Code § 46.  Petitioners' defamation of Ms. Selame is not privileged because Petitioners are not parties to this action and are not attorneys authorized to practice before this Court.  *See Silberg v. Anderson*, 786 P.2d 365, 369 (Cal. 1990) (holding the litigation privilege to defamation "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) *by litigants or other participants authorized by law*; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action" (emphasis added)).

Mr. Ticktin and Ms. Lambert have intentionally engaged in racist and actionable defamation of an innocent young lawyer through frivolous filings to achieve an illegitimate purpose.  Plaintiff therefore respectfully requests the Court refer Mr. Ticktin's conduct to the Florida Bar's Division of Lawyer Regulation.  Mr. Ticktin has been there before.[2]  *Fla. Bar v. Ticktin*, No. SC07-369 (Fla. May 21, 2009).

---

[2] Ms. Lambert is under felony indictment in Michigan, so it unlikely a referral to the Michigan Attorney Discipline Board would matter to her.

Dated: October 18, 2025

RICHARD A. HARPOOTLIAN, PA

By: */s/ Phillip D. Barber*

Richard A. Harpootlian, *pro hac vice*
rah@harpootlianlaw.com
Phillip Barber, *pro hac vice*
pdb@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

*Attorneys for Plaintiff*
*Robert Hunter Biden*

**PLAINTIFF'S OPPOSITION TO PRO SE PETITIONERS' MOTION FOR STAY**