Biden v. Byrne
C/A No. 2:23-cv-09430-SVW-PD
Plaintiff Robert Hunter Biden's Motion for Entry of Default Judgment

# EXHIBIT A

# (Decl. of David Cawley, CPA)

Richard A. Harpootlian, *pro hac vice*
rah@harpootlianlaw.com
Phillip Barber, *pro hac vice*
pdb@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

BRYAN M. SULLIVAN (SBN 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (SBN 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for PLAINTIFF
ROBERT HUNTER BIDEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK M. BYRNE, an individual,<br><br>Defendant. | Case No. 2:23-cv-09430-SVW-PD<br><br>**DECLARATION OF DAVID CAWLEY, CPA, CVA, CFE**<br><br>Date: October 20, 2025<br>Time: 1:00 p.m.<br>Crtrm.: 10A<br><br>Judge: Hon. Stephen V. Wilson, Ctrm. 10A |

5827575.1

**DECLARATION OF DAVID CAWLEY, CPA, CVA, CFE**

# DECLARATION OF DAVID CAWLEY, CPA, CVA, CFE

I, David Cawley, CPA, CVA, CFE, declare and state as follows:

1. The defendant in this matter is Patrick M. Byrne. The plaintiff in this matter is Robert Hunter Biden.

2. I have been retained by Richard A. Harpootlian, PA, counsel to Mr. Biden, to consider the defendant's ability to pay a damage award in this matter. Forensic accountants generally rely upon financial information obtained through the discovery process but, due to the lack of cooperation by the defendant, I have been asked to consider information contained in publicly available documents and statements.

3. I am a partner at Fraim, Cawley and Company, Certified Public Accountants PLLC. I am a Certified Public Accountant, Certified Valuation Analyst, and Certified Fraud Examiner, and I have been qualified as a forensic accounting and economic expert in multiple legal jurisdictions. My curriculum vitae and testimony history is attached as **Appendix A**.

4. Payment of my professional fees and expenses is not contingent upon my findings or on the outcome of any action. My hourly rate is $350 per hour in this matter.

5. My analysis and opinions are given with a reasonable degree of economic and accounting certainty. The following opinions are based on information that was available to me as of the date of declaration. I reserve the right to update my analysis and opinions should additional information become available.

6. I have reviewed and relied upon public documents and statements, and standard references relied upon by forensic economists and accountants, which are cited with footnotes when applicable.

7. The defendant founded the company Overstock.com, where he acted as CEO until 2019. Mr. Byrne made public comments about working as a secret intelligence agent, which made it impossible for Overstock.com to obtain Directors

& Officers insurance. As a result, he was forced to resign.[1]

8.  Following his resignation, Mr. Byrne sold his remaining position in Overstock.com on September 18, 2019, for $90,075,165.99 before taxes.[2]

9.  Mr. Byrne claims that he paid "tens of millions in taxes" on the sale.[3] A taxpayer's capital gain is computed by subtracting the cost basis of the securities sold from the sales proceeds of the securities sold. Mr. Byrne's true cost basis, capital gain, and tax liability from the sale would be included on his 2019 tax returns, of which I do not have a copy. I did not attempt to tax-effect this sale, primarily because of the uncertainty his cost basis in the stock. Mr. Byrne's cost basis is undeterminable for the following reasons:

   a.  In regard to stock-based compensation, cost basis is generally established as a product of the market value of the security at the time of vesting, exercise and/or grant. Over his approximately 20 years at Overstock, the establishment of Mr. Byrne's cost basis in shares acquired through stock-based compensation was intermittent and at different market values, making it difficult to estimate his initial cost basis.

   b.  There may also be alternative minimum tax (AMT) adjustments with stock awards, unique to the individual grantee, that are unknown absent the taxpayer's tax returns.

---

[1] Metz & Creswell, *Patrick Byrne, Overstock C.E.O., Resigns After Disclosing Romance With Russian Agent,* N.Y. Times (Aug. 22, 2019). [https://www.nytimes.com/2019/08/22/business/overstock-ceo-patrick-byrne.html]

[2] Overstock.com, Inc, Form 4 Dated September 18, 2019. [https://www.sec.gov/Archives/edgar/data/1130713/000117911019010461/xslF345X03/edgar.xml]

[3] Byrne, *A Message to My Former Colleagues at Overstock*, from DeepCapture.com (Sep. 18, 2019). [https://www.deepcapture.com/2019/09/a-message-to-my-former-colleagues-at-overstock/]

c. Once cost basis is established, Mr. Byrne and/or his financial professionals, such as a tax accountant, may be able to use the specific identification method in calculating capital gains for tax purposes. This method allows for a taxpayer to track and record the actual cost of each identifiable unit of property and, upon disposition, identify exactly which unit is sold or otherwise disposed of. This information would only be held by Mr. Byrne and his financial professionals.

d. Of the 4,703,459 units Mr. Byrne sold on September 18, 2019, the average share price was $19.1508. The average share price of Overstock common stock from IPO to September 2019 was approximately $20.76 per share.[4] This is not substantive enough to develop an estimate as to Mr. Byrne's tax liability on the sale of his Overstock position, and I offer no opinion to his actual tax liability. However, this fact introduces the possibility that Mr. Byrne's cost basis may have bee substantial, resulting in a limited capital gain and tax liability. Ultimately, Mr. Byrne's tax liability from the sale of his Overstock position can only be verified by reviewing his 2019 tax returns.

10. On that same day, Mr. Byrne posted a letter on his blog, deepcapture.com, titled "A Message to My Former Colleagues at Overstock." In his letter, Mr. Byrne described "what I am doing with the capital generated by the sale of my stock." He later states that all of it will be placed in "gold, silver, and two flavors of crypto[currency]."[5]

11. Mr. Byrne states that the "gold and silver are stored outside of the United States, in Switzerland, and within two weeks, will be scattered in other locations that are even more outside of the reach of the Deep State."

12. Mr. Byrne states that his cryptocurrency is "stored in the place where all

---

[4] Bed Bath & Beyond, Inc. (BBBY), Sep. 2019. [https://finance.yahoo.com/quote/BBBY/history/]

[5] *Id.* At 3

crypto is stored: in mathematical mist, behind long keys held only in the memory of someone who is quite good at storing such things in memory (with paper backups in the hands of a priest I met 35 years ago who never sits foot in the West)."

13. A Swiss bank customer can voluntarily waive their right to secrecy by consenting the release of information. Absent that consent, account information is unverifiable.

14. Cryptocurrencies act as both a medium of exchange and store of value. Instead of using central authorities, cryptocurrencies use cryptographic techniques to record and verify the transfer of funds. The decentralized nature of cryptocurrency makes it very difficult, if not impossible, for any person or entity other than the asset holder to determine account balances or asset worth.

15. The statements made by Mr. Byrne demonstrate deliberate and intentional placement of funds outside of the reach of governmental and legal authority. Placing funds in such a manner has made it impossible for a forensic accountant to assess asset values without his consent. However, I am able to estimate the value of his assets using his public statements and growth in the assets he claims to have purchased in September 2019.

16. On September 18, 2019, the price of gold was $1,510.50 per ounce[6]. As of October 10, 2025, the price of gold was $4,003.30 per ounce, representing a 381% total increase in value over that period.

17. On September 18, 2019, the price of silver was $17.93 per ounce[7]. As of October 10, 2025, the price of silver was $50.23 per ounce, representing a 280% total increase in value over that period.

---

[6] APMEX, Gold Spot Price (last visited Oct. 10, 2025), available at https://www.apmex.com/gold-price

[7] APMEX, Silver Spot Price (last visited Oct. 10, 2025), available at https://www.apmex.com/silver-price



5827575.1

4

**DECLARATION OF DAVID CAWLEY, CPA, CVA, CFE**

18. In the aforementioned letter, Mr. Byrne states he placed his capital from the sale of his position in Overstock into cryptocurrency but does not specify which two cryptocurrencies. The most popular cryptocurrencies in terms of market capitalization are Bitcoin and Ethereum.[8]

19. On September 18, 2019, the price of Bitcoin was $10,198.25 per coin[9]. As of October 10, 2025, the price of Bitcoin was $117,539.60 per coin, representing a 1153% total increase in value over that period.

20. On September 18, 2019, the price of Ethereum was $211.39 per coin[10]. As of October 10, 2025, the price of Ethereum is $4,078.98 per coin, representing a 1930% total increase in value over that period.

21. Mr. Byrne does not appear to have a current, physical address in the United States. It is possible that Mr. Byrne owns residential or commercial property concealed through limited liability companies.[11] However, those limited liability companies can be structured in a way that prevents any connection to him, personally, absent documentation obtained through the discovery process. For example, Mr. Byrne can own property through a Florida based LLC, nested within a Nevada based LLC. Nevada does not publicly list the names of its LLC's owners,[12] which makes it

---

[8] Bankrate, (last visited Oct. 10, 2025), available at https://www.bankrate.com/investing/types-of-cryptocurrency/

[9] Yahoo! Finance, Bitcoin Price History (last visited Oct. 10, 2025), available at https://finance.yahoo.com/quote/BTC-USD/history/

[10] Yahoo! Finance, Ethereum Price History (last visited Oct. 10, 2025), available at https://finance.yahoo.com/quote/ETH-USD/history/

[11] Anderson, *Column: The secret moves of the Cyber Ninjas moneyman*, Sarasota Herald-Tribune (Sep. 9, 2021). [https://www.heraldtribune.com/story/opinion/columns/2021/09/09/conspiracy-kooks-flocking-sarasota-county/5749142001/]

[12] Nev. NRS 86.263

difficult to tie ownership to an individual.

22. A Uniform Commercial Code-1 (UCC-1) is a public notice filed by a lender to declare their security interest in a debtor's personal property as collateral for a loan. I performed a UCC search and was unable to find any UCC-1 notices in the name of Patrick M. Byrne since 2019, which suggests that Mr. Byrne did not personally finance any real estate purchases in the United States since 2019.

23. The last SEC record of Mr. Byrne is the Form 4 reporting his sale of his Overstock position in September 2019, which suggests that he has not purchased a substantial ownership percentage of a public company since that time.

24. On February 11, 2024, Mr. Byrne made a post on X.com (formerly Twitter.com) that he has spent approximately $40M on political activities. I have searched Mr. Byrne's X account and his blog Deepcapture.com and this appears to be the only existing public statement made by Mr. Byrne regarding spending and large purchases.

25. I have made the following estimates as to Mr. Byrne's ability to pay a damage award in this matter under the assumption that the above statement by Mr. Byrne regarding political spending is true and that this is the only major purchase or expense he has made since 2019. The spread of the range of estimates is driven primarily by unknown position sizes, timing, and whether he retained or later sold large precious metals and/or cryptocurrency holdings acquired in 2019. Key factual anchors and the scenario math to support my opinion are below.

26. The most conservative estimate considers Mr. Byrne immediately spending all $40M following the sale of his Overstock position in 2019 and using 100% of the remaining funds to purchase silver, the investment with the lowest growth of the four aforementioned investments since that time. If this were the case, the value of Mr. Byrne's remaining silver position would be approximately $140.28M. This is an unlikely scenario for the following reasons:

    a. First, Mr. Byrne stated that the proceeds from the sale of his

Overstock position would be placed into gold, silver, and cryptocurrency. Given this statement and that Mr. Byrne has been a long-time advocate of Bitcoin, it is unlikely that he allocated all his sale proceeds to a single precious metal.

        b.    Second, Mr. Byrne's spending on political activities would more likely occur on an intermittent basis and not immediately following the sale of his Overstock position. Making the assumption that all $40M in spending occurred in 2019 forgoes any growth on that amount prior to the actual timing of those expenditures.

        c.    Lastly, this estimate only considers Mr. Byrne's net value of the assets he purchased when he sold his position in Overstock in September 2019 without considering his net worth prior to that transaction. Mr. Byrne and his affiliates purchased Overstock for approximately $7M in 1999.[13][14] Mr. Byrne held Bitcoin at least as early as 2014 when he stated "I'm holding [Bitcoin] like I hold gold. I want a robust safety net as things play out. I've always had misgivings about fiat currencies. Gold was the answer but it doesn't translate as well in the digital age."[15] I was unable to find public statements regarding the extent of Mr. Byrne's Bitcoin holdings in 2014, but it is likely that the "Bitcoin Messiah"[16] had a material interest in the cryptocurrency at that time. At the end of 2014, the price of Bitcoin was $320.14 per

---

[13] Overstock.com, Inc Form S-1/A Dated May 6, 2002

[14] Overstock.com, Inc Schedule 13D Dated November 14, 2002

[15] Hill, *For Overstock CEO, Bitcoin Isn't Just A Publicity Stunt,* Forbes Magazine (Feb. 21, 2014). [https://www.forbes.com/sites/kashmirhill/2014/02/21/for-overstock-ceo-bitcoin-isnt-just-a-publicity-stunt/]

[16] Metz, *Meet Patrick Byrne: Bitcoin Messiah, CEO of Overstock, Scourge of Wall Street,* Wired Magazine (Feb. 10, 2014). [https://www.wired.com/2014/02/rise-fall-rise-patrick-byrne/]

coin,[17] compared to $117,539.60 per coin as of October 10, 2025. A $100,000 position in Bitcoin in 2019 would equate to a nearly $37M position in Bitcoin today. Likewise, a $1,000,000 position in Bitcoin in 2019 would equate to a nearly $370M position in Bitcoin today.

27. The most likely estimate considers Mr. Byrne spending the $40M on a blended, intermittent basis from September 2019 to February 2024 and a mixed allocation of the funds from the sale of his Overstock position to purchase an equal amount of the four aforementioned investments. If this were the case, the value of Mr. Byrne's remaining position in the aforementioned assets would be $686.64M. This estimate does not consider Mr. Byrne's net worth prior to the sale of his Overstock position in 2019.

28. The most aggressive estimate would consider Mr. Byrne spending all $40M in early 2024 and assuming he used 100% of the sale of his Overstock position to purchase Ethereum, the investment with the highest growth of the four aforementioned investments since that time. If this were the case, the value of Mr. Byrne's remaining Ethereum position would be at least $1B. This is also an unlikely scenario, but should be considered the ceiling value of Mr. Byrne's remaining position in the aforementioned assets. This estimate does not consider Mr. Byrne's net worth prior to the sale of his Overstock position in 2019.

29. Each of the above estimates do not consider Mr. Byrne's spending on everyday living expenses, such as housing, food, travel, etc. Given that each of the above estimates are greater than $100M, I believe his routine living expenses to be immaterial in estimating his ability to pay.

30. Based on the information that is available to me as of October 10, 2025, I believe the value of the assets Mr. Byrne purchased with the proceeds from the sale of his Overstock position to be between $140.28M and $1B, with a "most likely"

---

[17] *Id.* At 5

estimate of $686.64M.

31. Mr. Byrne's aforementioned investments, whether all in precious metals, all in cryptocurrency, or a blend of the two, are liquid, readily marketable, and easily convertible to USD.

32. I considered Mr. Byrne's ability to pay a damage award upon the liquidation of these assets. Considering only the most conservative estimate of $140.28M, I believe Mr. Byrne would have the ability to pay up to approximately $106M after taxes. I believe this to be a conservative estimate given it was made under the following assumptions:

    a. Mr. Byrne's cost basis in the investments is $50,075,165.99, the original purchase price of the investments under the most conservative estimate.

    b. Instead of being taxed at the more favorable federal long-term capital gains rate of 23.8%, Mr. Byrne's silver holdings would be taxed at the collectible rate of 28%.

    c. Given that I have been unable to determine Mr. Byrne's tax home, I used a conversative estimate of 10% for state taxes. Only five states have a higher top tax rate, and nine states have no income tax. Utah, a state where Mr. Byrne previously resided, has a current tax rate of 4.55%.[18]

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Executed on this 17th day of October 2025, at Roanoke, Virginia.

                                                */s/ David Cawley*
                                                David Cawley, CPA, CVA, CFE

---

[18] Utah State Tax Commission. (n.d.). *Tax Rates*. Retrieved from https://incometax.utah.gov/paying/tax-rates



# APPENDIX A – CV AND TESTIMONY HISTORY

## David Cawley, CPA

Fraim, Cawley and Company, Certified Public Accountants, PLLC
325 Mountain Ave SW
Roanoke, VA 24016
Phone: (540) 314-0345
David@fraimcpa.com

---

**Relevant Education**:

*Southern New Hampshire University*, Manchester, NH
Masters of Science (MSA), Accounting and Finance          Graduated April 2017
Master of Business Administration (M.B.A)                Graduated September 2013

*Saint Leo University*, Saint Leo, FL                     Graduated May 2008
B.A. in Sport Management – School of Business, Honors Program
A.A. in Business Administration

**Relevant Professional Certifications and Associations**:

- Licensed Certified Public Accountant (CPA) in the state of Virginia since 2016
- Certified Valuation Analyst (CVA) as recognized by the National Association of Certified Valuators and Analysts (NACVA)
- Certified Fraud Examiner (CFE) as recognized by the Association of Certified Fraud Examiners
- Member of the Virginia Society of Certified Public Accountants
- Member of the National Association of Certified Valuators and Analysts (NACVA)
- Member of the Association of Certified Fraud Examiners

**Relevant Professional Experience**:

Fraim, Cawley and Company, Certified Public Accountants, PLLC
August 2018 – Present
Roanoke, VA
*Managing Partner*

**Research Data Group**
June 2013 – August 2018
Roanoke, VA
*Senior Accounting Manager*

**List of Testimony in Prior Three Years (updated 10/20/2025)**

| Case # | Parties | Hired By | Attorney | Law Firm | Date |
|---|---|---|---|---|---|
| 21SL-CC04038 | MARY JULIAN v. SSM HEALTHCARE CORPORATION | Plaintiff | Justin Collins | Collins Law Firm | 1/16/2023 |
| 2111-CC00346 | KRISTY AMES v. SSM HEALTHCARE ST. LOUIS | Plaintiff | Justin Collins | Collins Law Firm | 2/8/2023 |
| 21SL-CC03308 | WILLIAM H. SCHAEG v. ST. LUKE'S EPISCOPAL-PRESBYTERIAN HOSPITALS | Plaintiff | Justin Collins | Collins Law Firm | 2/10/2023 |
| 3:22-cv-00070 | JAD KHORAKI v. DERRICK LONGORIA | Plaintiff | Miriam Airington | Airington Law | 4/24/2023 |
| 21SL-CC04038 | MARY JULIAN v. SSM HEALTHCARE CORPORATION | Plaintiff | Justin Collins | Collins Law Firm | 4/25/2023 |
| 21SL-CC04038 | MARY JULIAN v. SSM HEALTHCARE CORPORATION | Plaintiff | Justin Collins | Collins Law Firm | 4/29/2023 |
| 2222-CC00163 | ADAM EBINGER v. SAINT LOUIS UNIVERSITY | Plaintiff | Justin Collins | Collins Law Firm | 6/16/2023 |
| 2131-CC01372 | KENT WOOD and TAMMI WOOD v. NATHANIEL POPOVICH | Plaintiff | Justin Collins | Collins Law Firm | 8/3/2023 |
| 21SL-CC02884 | AMBER DAVIS v. GEORGE P. AHLERING | Plaintiff | Justin Collins | Collins Law Firm | 9/13/2023 |
| 2111-CC00770 | NAHEB WAHBA v. PROGRESS WEST HEALTHCARE CENTER | Plaintiff | Justin Collins | Collins Law Firm | 9/25/2023 |
| 21SL-CC02884 | AMBER DAVIS v. GEORGE P. AHLERING | Plaintiff | Justin Collins | Collins Law Firm | 11/15/2023 |
| 21SL-CC03308 | WILLIAM H. SCHAEG v. ST. LUKE'S EPISCOPAL-PRESBYTERIAN HOSPITALS | Plaintiff | Justin Collins | Collins Law Firm | 12/1/2023 |
| 2146-CC00084 | JULEE FORTNER v. THE SKAGGS COMMUNITY HOSPITAL ASSOCIATION | Plaintiff | Justin Collins | Collins Law Firm | 12/6/2023 |
| 2111-CC00770 | NAHEB WAHBA v. PROGRESS WEST HEALTHCARE CENTER | Plaintiff | Justin Collins | Collins Law Firm | 1/25/2024 |
| CL23000187-00 | ELIJAH GAMBRELL v. TITUS TRANSPORT SERVICES, LLC | Defendant | Michael Montgomery | Eckert Seamans Cherin & Mellott | 4/24/2024 |
| CL22-1101 | ROBERT PARKER WATERS, JR., v. KIMBERLY ANN WILLARD | Defendant | Brooke Rosen | Woods Rogers Vandeventer Black PLC | 8/8/2024 |
| N/A | KEVIN GREER, MD v. HESS ORTHOPAEDIC CENTER AND SPORTS MEDICINE | Plaintiff | Elizabeth Coleman | Goodman Allen Donnelly | 8/29/2024 |
| 2122-CC09513 | TAMMY PORTER v. BARNES-JEWISH HOSPITAL, WASHINGTON UNIVERSITY, et. All | Plaintiff | Justin Collins | Collins Law Firm | 9/19/2024 |
| 2231-CC00141 | BECKY CROSS v. MERCY HOSPITAL SPRINGFIELD AND MERCY CLINIC SPRINGFIELD | Plaintiff | Justin Collins | Collins Law Firm | 11/19/2024 |
| 23SL-CC05447 | DANYELL BRINKER v. MID-WEST PODIATRY AND ASSOCIATES LLC et. All | Plaintiff | Justin Collins | Collins Law Firm | 5/29/2025 |
| 24SL-CC02367 | HEATHER KNIGHT v. HILL VISION SERVICES and GEOFFREY M. HILL, M.D. | Plaintiff | Justin Collins | Collins Law Firm | 6/5/2025 |
| CL24002099-00 | SUSAN GUALTIERI BRANAN v. GREGORY KNIGHT BRANAN | Defendant | Devon Slovensky | Slovensky Law | 9/15/2025 |