<u>Biden v. Byrne</u>
C/A No. 2:23-cv-09430-SVW-PD
Plaintiff Robert Hunter Biden's Motion for Entry of Default Judgment

# EXHIBIT C

# (Statement of Undisputed Facts in Support of His Motion for Default Judgment)

Richard A. Harpootlian, *pro hac vice*
*rah@harpootlianlaw.com*
Phillip Barber, *pro hac vice*
*pdb@harpootlianlaw.com*
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

Bryan M. Sullivan, State Bar Number 209743
 *bsullivan@earlysullivan.com*
Zachary C. Hansen, State Bar Number 325128
 *zhansen@earlysullivan.com*
EARLY SULLIVAN WRIGHT
 GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for PLAINTIFF
ROBERT HUNTER BIDEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>PATRICK M. BYRNE, an individual,<br><br>                Defendant. | Case No. 2:23-cv-09430-SVW-PD<br><br>**PLAINTIFF ROBERT HUNTER BIDEN'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HIS MOTION FOR DEFAULT JUDGMENT**<br><br>Judge:   Hon. Stephen V. Wilson |

        Plaintiff Robert Hunter Biden ("Plaintiff") hereby submits this Statement of

Undisputed Facts In Support Of His Motion For Default Judgment, as follows:

1

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF
CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. This lawsuit arises from the false and defamatory statements that Defendant made about Plaintiff in an "interview" that appeared in the "inaugural" issue of "Capitol Times Magazine," which appears originally to have been published on or about June 27, 2023 (the "Article"). | Dkt No. 85-1 [10/17/2024 Declaration of Michael Murphy ("10/17/2024 Murphy Decl."), ¶2, Ex. A]; Dkt No. 89-1 [11/04/2025 Declaration of Zachary C. Hansen ("11/04/25 Hansen Decl."), at ¶2, Ex. 1 at Responses to Requests for Admissions ("RFA's") Nos. 1, 2, 8, and 14]. |
| 2. On page 72 of the Article, Defendant makes the following statements about Plaintiff (i.e., the Defamatory Statements): "So in November 2021, I went back to the Middle East. I met with a group including a special Iranian figure, an old friend who let me know a World War was coming, and had a proposal to avert it. I told them I would relay the proposal but I did not think it would fly. In the course of being there, and through a mechanism I am not going to explain here, I became aware of an additional situation. Hunter Biden was reaching out to the Iranian government in the fall of 2021 with the following offer: *You Iranians have $8 billion frozen in a bank account in South Korea. My father will unfreeze it in return for $800 million being funneled into a numbered account for us. And if you do this deal with us, it will lubricate other negotiations which have recently started between us.* By that, the Iranians believed that Hunter meant the JCPOA talks, which had | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶3, Ex. 2 at pg. 73]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| restarted in Geneva a month or two previously. In other words, something along the lines of, "Pay us $100 million and we let you keep 10 nukes, $200 million for 20 nukes," etc. But I am making up the pricing. Hunter was doing this through a middleman, the son of the Minister of Defense of Pakistan. That son was meeting with Hunter, then relaying messages to someone in Iran. And he was being reckless enough to leave voicemails in Iran about it. When I returned, the agencies went to work over the weekend. I was told a week later that they had confirmed it all. The voice on the voicemail that I had acquired was voice-matched to the son of the Minister of Defense of Pakistan, who had a connection to Hunter Biden. Anyway, in December, 2021, I was told that the scheme was confirmed across the agencies." | |
| 3. In response to the Defamatory Statements, the unidentified "interviewer" for "Capitol Times Magazine" asked Defendant to confirm what he was saying: "Patrick, you are claiming that 18 months ago, the Biden Family was seeking a bribe from Iran to release funds frozen in South Korea, and to go easy in nuclear talks, and that the United States Government has been aware of this since December, 2021?" Byrne responded: "100% correct." | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶3, Ex. 2 at pg. 74]. |

3

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 4. On March 20, 2022, Defendant posted on Telegram boasting and celebrating about a possible criminal indictment of Biden with demeaning pictures. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶4, Ex. 3]. |
| 5. On April 7, 2022, Defendant reposted on Telegram a Tweet from another person saying "As it stands: Hunter's laptop is real, the Biden family sells access to the President[.]" | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶5, Ex. 4]. |
| 6. On October 20, 2022, Defendant posted a video on Telegram with a headline that states "HUNT IS ON Hunter Biden laptop report with evidence of sex & drug 'crimes' sent to Congress & lawmakers are ready to investigate" that included a link to the "Biden Laptop Report" published by right-wing radicals Marco Polo USA and Garrett Ziegler. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶6, Ex. 5]. |
| 7. On December 12, 2022, Defendant reposted a post on Telegram with accusations against the Biden family, a demeaning picture of Plaintiff, and a screenshot of a private text thread between Plaintiff and his daughter. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶7, Ex. 6]. |
| 8. On February 10, 2023, Defendant | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶8, |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| posted on X a taunt to Plaintiff saying "Hunter: here's the secret. It was I. Rudy [Guiliani] had only acquired a defective copy [of the laptop]. Working with a hacker, I acquired a forensic copy, caused the 400,000 file you bleached to be recovered, and gave it all to Garrett Ziegler." | Ex. 7]. |
| 9. On February 12, 2023, Byrne posted on X a video of an interview he previously gave about Plaintiff in which he made disparaging remarks and in the post stated "Oldie but Goodie. Patrick Byrne Weights In On Jack Maxey's Hunter Biden Laptop Story" | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶9, Ex. 8]. |
| 10. On February 24, 2023, Defendant posted on X taunting Plaintiff about Defendant's possession of files that he claims Plaintiff tried to delete and bragging that Defendant handed them over to the ring-wing radical organization Marco Polo USA. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶10, Ex. 9]. |
| 11. On March 17, 2023, Defendant posted on X taunting Plaintiff and alluding to his Defamatory Statements that underline this lawsuit by saying | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶11, Ex. 10]. |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| "Hey Hunter, I acquired the forensic copy [of the laptop] add [sic] got it distributed to Garrett [Ziegler]. Sue me. While we are at it, let's talk about Iran and the son of the minister of defense of Pakistan." | |
| 12. On March 17, 2023, Defendant posted a comment to his own post on X from the same day accusing Plaintiff of having and creating child pornography. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶11, Ex. 10]. |
| 13. On March 28, 2023, Defendant posted on X taunting Plaintiff by saying "Hunter Biden threatens to sue me. Hunter: be ready to answers [sic] questions about the son of the Pakistani Minister of Defense you used as a go-between & your offer through him (10% X $8 billion + "lubricate other discussions"). He was careless + I have recordings." | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶12, Ex. 11]. |
| 14. On May 12, 2023 Defendant posted 'X' stating: "I have drop [sic] some major truth bombs about Iran and Hunter Biden in the last two days on Emerald Robinson. Start here at minute, 28:45." | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶13, Ex. 12]. |
| 15. On June 24, 2023, Defendant | Dkt No. 89-1 [11/04/25 Hansen Decl. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| reposted an article calling for Plaintiff to be sent to prison. | ¶14, Ex. 13]. |
| 16. On May 10, 2023, Defendant appeared on *The Absolute Truth with Emerald Robinson* and promoted the Article, and also aired his Defamatory Statements about Plaintiff. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶15, Ex. 14]. |
| 17. On May 11, 2023, Defendant appeared on *The Absolute Truth with Emerald Robinson* and promoted the Article, and also aired his Defamatory Statements about Plaintiff. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶16-17, Ex. 15-16]. |
| 18. Following Defendant's appearance on *The Absolute Truth with Emerald Robinson* on May 10 and 11, 2023, Defendant promoted his appearances on social media. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶13, 18, Ex. 12, 17]. |
| 19. After publishing the Defamatory Statements in the Article, Defendant then repeatedly reposted the Article on various social media platforms encouraging his followers to share it to as many people as possible and promoted the Article during right-wing media appearances, encouraging people to read and purchase copies of the | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶19-27, Ex. 18-26]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| magazine for themselves. | |
| 20. Byrne made a July 21, 2023 appearance on *The Alex Jones Show*, with infamous host Alex Jones. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶28-29, Ex. 27-28]. |
| 21. In Defendant's appearance on *The Alex Jones Show*, on July 21, 2023, Defendant promoted the Article containing the Defamatory Statements about Plaintiff. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶28-29, Ex. 27-28 at pg. 26-28, 35, 49]. |
| 22. In Defendant's appearance on *The Alex Jones Show*, on July 21, 2023, Defendant described his ongoing fight to "de-Nazi-fy" our federal "institutions" and to rescue America from an ongoing plot by "globalists" to "colonize" the United States and turn it into a "vassal state" that will serve as "a farm to China." | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶28-29, Ex. 27-28 at pg. 44, 46]. |
| 23. On July 21, 2023, Defendant posted on X several photographs of a large utility truck driving around Washington, D.C., with TV screens on all sides displaying and promoting the Article and Defendant's Defamatory Statements about Plaintiff. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶30, Ex. 29]. |
| 24. On September 8, 2023, Defendant | Dkt No. 89-1 [11/04/25 Hansen Decl. |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| appeared on *The Courtenay Turner Podcast* to promote the Article and his Defamatory Statements about Plaintiff, in which he noted that there was talk of a book and a movie coming out based on the Article. | ¶¶31-32, Ex. 30-31, at pg. 1-4, 57]. |
| 25. After Defendant's September 8, 2023 appearance on *The Courtenay Turner Podcast*, Defendant posted a link to the interview on his Telegram page to promote it as well. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶33, Ex. 32]. |
| 26. On October 8, 2023, shortly after news broke of the horrific terrorist attacks by Hamas against Israel on October 7th, Defendant reposted the Defamatory Statements on his social media account on X suggesting that Plaintiff and his alleged criminal dealings with Iran had contributed to the terrorist attacks by Hamas against Israel, which caused more than 1,400 civilian deaths and led to what is currently a massive armed conflict in the Middle East. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶2, 34-35, Ex. 1 at RFA's Nos. 26-30, 33-34]. |
| 27. On October 17, 2023, Defendant twice responded to U.S. Rep. Eric | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶36-37, Ex. 35-36]. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Swalwell's posts on social media platform X about in response to Defendant's October 8, 2023 posts with the Defamatory Statements and included a link to the Article on his deepcapture.com website. | |
| 28. Defendant's X posts on October 8, 2023 and October 17, 2023 as set forth in Plaintiff's Controverts Facts Nos. 26-27, have been viewed by more than 100,000 people. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶34-37, Ex. 33-36]. |
| 29. The day after Plaintiff filed this lawsuit, on November 9, 2023, Defendant posted on X taunting Plaintiff over the lawsuit stating "Hunter's lawsuit against me (my interpretation): "Now that I've got Daddy's DOJ under control… Let's silence Byrne with a lawsuit + gag order." Good luck with that. PS Hunter, my 1st witness is a 35 year federal agent who will attest I told the truth and FBI verified it" and over 72,000 people viewed that post. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶38, Ex. 37]. |
| 30. On November 13, 2023, Defendant appeared on Roger Stone's podcast, *The StoneZONE with Roger Stone*, and | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶39-40, Ex. 38-39, at pg. 1-5]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5825609.1

10

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Defendant once again promoted the Article, taunted Plaintiff about the lawsuit, and reiterated all of the same Defamatory Statements he asserted in the Article. | |
| 31. In his November 13, 2023, Defendant appearance on *The StoneZONE with Roger Stone*, Defendant made taunting statements such as "I won't lose two minutes of sleep on his lawsuit against me. … I have him dead to rights. … I'll meet Hunter in any court in the land. … So good luck to you, Hunter." | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶39-40, Ex. 38-39, at pg. 2, 4]. |
| 32. On November 9, 2023, the same day he appeared on *The StoneZONE with Roger Stone*, Defendant posted a link to the interview on X and promoted the interview across his social media platforms. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶41, Ex. 40]. |
| 33. In February 2024, Defendant published a book called *Danger Close: Domestic Extremist #1 Comes Clean* (the "Book"), which contains the same Defamatory Statements about Plaintiff that were published in the Article. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶42, Ex. 41]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 34. Since the publication of Defendant's Book in February 2024, Defendant has repeatedly promoted and advertised his Book across social media and in various interviews with ring-wing media members. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶43-48, Ex. 42-47]. |
| 35. Defendant has continued his taunting of Plaintiff since the commencement of this litigation, which included a post on X on July 22, 2024 before Plaintiff's deposition and directed at Plaintiff in which Defendant stated "Hi Hunter. I understand [sic] am going to be deposing you in about three weeks? Hoorah! Wait until you see what I have on you. Let us see how much more prison time I can get you." | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶49, Ex. 48]. |
| 36. Defendant has continued his taunting of Plaintiff since the commencement of this litigation, which included post on Telegram on June 5, 2024 in which Defendant taunted Plaintiff and posted derogatory statements directed at Plaintiff, stating "Hey Hunter, don't forget: I was the guy who got the unredacted version of your hard drive | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶50, Ex. 49]. |

5825609.1

**12**

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| into the hands of Marco Polo" and finished the post with calling Plaintiff "beeyatch." | |
| 37. Defendant has continued his taunting of Plaintiff since the commencement of this litigation, which included a post on Telegram on October 7, 2024 in which Defendant included derogatory statements about Plaintiff and stated "stated that he was "starting to doubt Biden loyalty to USA", that "I think (and hope) Biden knows he got ass-rape-humiliated by Obama this year", and then compared him to Darth Vader from the Star Wars franchise. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶51, Ex. 50]. |
| 38. Plaintiff denies all of the allegations by Defendant in the Defamatory Statements. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶58, Ex. 57 at 30:17-18 and 53:16-54:9]. |
| 39. In response to Plaintiff's written discovery requests asking for Defendant to identify each and every source upon which he relied in making the Defamatory Statements, Defendant admitted that, in making the Defamatory Statements, he only relied on the information set forth in the Affidavit of | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶2, 52-53, Ex. 1 at RFA's Nos. 3-4, 6, 9-10, 12, 15-16, 18, 21-22, 24, 33-34, 39-40, 44-45; Ex. 51 at Interrogatories ("ROG's") Nos. 9, 14-16, 18; and Ex. 52 at Requests for the Production of Documents ("RFP's") Nos. 6, 9-13, 15-19, 22-23]. |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| John Moynihan, information provided to him by David Smith, and the telephone voicemail recordings (the "Voicemails"). | |
| 40. The Affidavit of Mr. Moynihan does not contain any supporting information about the Defamatory Statements other than just reiterating Defendant's Defamatory Statements, and Mr. Moynihan actually admits his knowledge of the same is based off a recording on a cell phone that Defendant showed him and not from independent sources. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶¶52-54, Ex. 51 at ROG's No. 9, 15, 18; Ex. 52 at RFP Nos. 6, 9-13, 15-19, 22-23; Ex. 53]. |
| 41. The unauthenticated Voicemails do not identify who the caller is nor do they contain any information about Plaintiff or the Defamatory Statements and do not even mention the name Hunter Biden or any bribe or any information in the statements made by Defendant. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶¶52-53, 55-57, Ex. 51 at ROG's No. 18; Ex. 52 at RFP Nos. 6, 9-13, 15-19, 22-23; Ex. 54-56]. |
| 42. David Smith was identified by Defendant in discovery responses as being an FBI agent and listed the Washington DC field office as contact, but no evidence has been presented as to | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶52, Ex. 51 at ROG's Nos. 9, 15, 18]. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| what Mr. Smith told Plaintiff about Plaintiff or the Defamatory Statements. | |
| 43. Defendant claims to have played important roles in various clandestine "operations" conducted on behalf of the "United States Government." | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶¶3, 28-29, 31-32, 39-40, Ex. 2, 27-28, 30-31, 38-39]. |
| 44. According to Defendant, he has carried out numerous secret spy "missions" for "Uncle Sam" (with cloak-and-dagger nicknames such as "Operation Snow Globe") to advance United States interests around the world, including helping to restore "peaceful relations" in Vietnam in 1994, helping to prevent a war with Iran in 2006, assessing the "computer science capabilities" of Venezuela in 2018, and, of course, entering into an intimate relationship with 26 year-old Maria Butina, apparently as a means to help the FBI gather "intel" on Russia. (Defendant claims he let his FBI handlers know: "I am not seeing Maria unless you folks use the word 'greenlight' with me. I got back a simple message: 'Greenlight.'") | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶¶3, 28-29, 31-37, 39-40, Ex. 2 at pg. 28-32, 34-41, 47-59, 77-78, 82-88, ; Ex. 27; Ex. 28 at pg. 49; Ex. 30; Ex. 31 at pg. 16, 18-20, 25; Ex. 38; Ex. 39 at pg. 8-18]. |
| 45. Defendant claims that, at times, the | Dkt No. 89-1 [11/04/25 Hansen Decl., |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| requests for him to deploy his "unique" skills to help the United States have come directly from the highest levels of the U.S. government, including, without limitation, President Barack Obama and FBI Director James Comey, personally, although they were communicated to Defendant verbally by unnamed special agents for the FBI. | ¶¶3, 28-29, 31-32, 39-40, Ex. 2 at pg. 37-40, 50-51, 53; Ex. 27; Ex. 28 at pg. 49; Ex. 30; Ex. 31 at pg. 16-20, 28-29; Ex. 38; Ex. 39 at pg. 8-14]. |
| 46. Defendant frequently admits he has no documentation to support his self-aggrandizing claims—his "patriotic" activities have been too secret and dangerous for documentation. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶¶3, 28-29, 31-32, 39-40, Ex. 2 at pg. 37-38, 74; Ex. 30; Ex. 31 at pg. 18-20; Ex. 38; Ex. 39 at pg. 4-7]. |
| 47. At Plaintiff's deposition, Plaintiff testified that "Mr. Byrne's statements are patently fiction, completely made up[.]" | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶58, Ex. 57 at 30:17-18]. |
| 48. Defendant is a leading promoter of unsupported conspiracy theories relating to the so-called "Deep State" and to his claim that the 2020 presidential election was "stolen" from former President Donald Trump by Plaintiff's father, President Joe Biden. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶59, Ex. 58]. |
| 49. Defendant published a book called "*The Deep Rig: How Election Fraud* | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶59, Ex. 58]. |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

5825609.1

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| *Cost Donald J. Trump the White House, By a Man Who did not Vote for Him: (or what to send friends who ask, "Why do you doubt the integrity of the Election 2020?")*" in March 2021. | |
| 50. On April 17, 2023, Defendant posted on his X account "The insurrection was November 3" in response to an X post that stated "There was NO "insurrection" on January 6th What actually happened was the INTENTIONAL DISRUPTION of the public examination of the MASSIVE VOTER FRAUD that had occurred in November." | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶60, Ex. 59]. |
| 51. On April 8, 2024, Defendant posted on his X account "Humd'allah! The insurrection was November 3" in response to an X post that stated "Jan 6 was not an insurrection. It was the reaction to one." | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶61, Ex. 60]. |
| 52. On January 5, 2023, Defendant posted on his X account "The Insurrection did not occur January 6, 2021. The Insurrection occurred on November 3, 2020. There I said it. Give | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶62, Ex. 61]. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| me a retweet if you agree" with a poll asking whether "The Insurrection occurred on: January 6, 2021 [or] November 3, 2020." | |
| 53. On June 25, 2023, Defendant posted on his X account "All of us should know this story. It is the single clearest story of the Fedsurrection" in response to a post on X about the January 6, 2021 events in Washington, D.C. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶63, Ex. 62]. |
| 54. On May 10, 2023, Defendant posted on his X account "Newsflash, Tapper: The Insurrection was Nov 3 (J6 was the Fedsurrection); Pence COULD have remanded issue to states; Officer Michael White is a pussy-thug; Kaitlin Collins was indeed nasty. What else you got." | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶64, Ex. 63]. |
| 55. On January 7, 2023, Defendant posted on his X account "FINAL RESULTS: 96.8% believe "The Insurrection" occurred November 3, 2020. I guess that makes January 6… "the Fedsurrection"?" | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶65, Ex. 64]. |
| 56. On October 26, 2024, Defendant posted on his X account "Biden says the | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶66, Ex. 65]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| election is dead and buried. Anybody involved in cheating better get this joke: you're not going to win, and this time you'll have committed treason. Stop flogging a dead horse. You're making it worse for yourselves." | |
| 57. Defendant recently announced that his Book with the Defamatory Statements is being turned into a mini-series called "*The Enemy Within*" that viewers must pay to watch, and which is advertised on Defendant's X account. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶67, Ex. 66]. |
| 58. Defendant recently announced that his Book with the Defamatory Statements is being turned into a mini-series called "*The Enemy Within*" that viewers must pay to watch, and there is a dedicated website for the mini-series. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶68, Ex. 67]. |
| 59. On September 2, 2024, Defendant's counsel and Plaintiff's counsel spoke about scheduling Defendant's deposition for the month of September 2024 in person in Florida, which is Defendant's state of residence. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶69, Ex. 68]. |
| 60. On September 2, 2024, when Defendant's counsel and Plaintiff's | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶69, Ex. 68]. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

5825609.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| counsel spoke about scheduling Defendant's deposition in Florida, Defendant's counsel offered to find a location in Florida for Defendant's deposition to take place. | |
| 61. On September 11, 2024, Defendant's counsel stated any in-person deposition of Defendant would have to be in Dubai or via zoom from Dubai, which Plaintiff had an issue with because of the time it takes to travel to Dubai and, upon legal research, the legality of a deposition in Dubai and lack of legal authority authorizing a deposition to occur in Dubai for use in a District Court case in the United States. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶69, Ex. 68]. |
| 62. Since September 11, 2024, the scheduling of Defendant's deposition and the location thereof has been the subject of two different Informal Discovery Conferences on September 18, 2024, and October 4, 2024. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶69; Court's Docket Nos. 67 & 79]. |
| 63. Since September 11, 2024, the scheduling of Defendant's deposition and the location thereof was also the subject of a discovery motion that was | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶69; Court's Docket No. 87]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| filed on October 9, 2024, and which the Court ruled on October 30, 2024, that Defendant would be required to return to the United States for his deposition before trial and was required to inform Plaintiff's counsel by November 4, 2024, what federal district he will choose to appear for his deposition in. | |
| 64. In discovery motions in this litigation, Defendant gave wild and differing claims about why he was now residing in Dubai. First, Defendant's counsel said he was informed by an unidentified DEA agent that the Venezuelan government placed a $25 million bounty on him, and he did not want to return to the United States due to safety issues. Then Defendant claimed in a declaration that he was in Ghana cooperating with an official with the Ghanian Ministry of Security who informed Defendant that criminals in West Africa were cooperating to get him in a position where he could be kidnapped. | Dkt No. 89-1 [11/04/25 Hansen Decl., ¶70]; Court's Docket Nos. 67 & 76. |
| 65. Defendant admitted to having | Dkt No. 185-2 [2/3/2025 Supplemental |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| negative feelings about Plaintiff. | Declaration of Zachary C. Hansen ("2/3/2025 Hansen Decl."), at ¶3, Exh. "71" [Byrne Deposition at 385:11-386:2 and 400:1-6]. |
| 66. Defendant admitted he was behind the public release of the data on Plaintiff's laptop that made headlines several years ago. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 377:9-378:19; 388:20-389:7; 390:7-392:15)]. |
| 67. Byrne admitted he repeatedly reposted the Article on various social media platforms encouraging his followers to share it to as many people as possible and promoted the Article during right-wing media appearances, encouraging people to read and purchase copies of the magazine for themselves. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 351:9-352:24, 355:11-12, 357:1-17, 369:15-371:4, 372:4-373:14, and 358:28-359:6)]. |
| 68. On October 8, 2023, shortly after news broke of the horrific terrorist attacks by Hamas against Israel on October 7th, Byrne literally "double-downed" by twice reposting the Defamatory Statements on his social media account on X suggesting that Plaintiff and his alleged criminal dealings with Iran had contributed to the terrorist attacks by Hamas against Israel, | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 403:15-404:3)]. |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

5825609.1

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| which caused more than 1,400 civilian deaths and led to what is currently a massive armed conflict in the Middle East. | |
| 69. Byrne claims that he twice met with an Iranian government official (at least once in 2021) who he only identified by the covert codename "Movie Star," and who he identified as "Doe 1" in written discovery responses. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 247:13-19; 255:1-4; 259:2-13; 350:2-19)]. |
| 70. In these meetings, Byrne stated that "Movie Star" said that, through "Doe 2", Plaintiff sought a bribe from Iran to release $8 billion frozen in South Korea, and to go easy in nuclear talks in 2021 to benefit himself and his family. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 247:13-19; 255:1-4; 259:2-13; 263:19-266:13; 269:15-270:2)]. |
| 71. According to Byrne, "Movie Star" identified "Doe 2" as someone who is close to Plaintiff and who is the son of a high ranking Pakistani official in the ministry of defense. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 263:19-266:13; 268:1-14; 269:15-270:2; 272:9-275:17; 350:2-19)]. |
| 72. Byrne does not know the identity of "Doe 2" or "Doe 2's" father. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 261:21-25; 263:19-266:13; 269:15-270:2)]. |
| 73. Byrne claims to have surreptitiously | Dkt No. 185-2 [2/3/2025 Hansen Decl., |



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| recorded a conversation with "Movie Star" (the "Recording") in which "Movie Star" made these claims while playing the Voicemails. | at ¶3, Exh. "71" (Byrne Deposition at 259:2-13; 261:8-25; 312:18-315:7; 316:24-317:18; 320:18-321:1; 337:4-14; 337:16-338:9)]. |
| 74. Byrne claimed to have surreptitiously obtained the Voicemails from "Movie Star's" smartphone. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 261:8-25; 312:18-315:7; 316:24-317:18; 337:16-338:9)]. |
| 75. Byrne claims to have played the Recording and the Voicemails to John Moynihan. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 224:14-227:5). |
| 76. Byrne claims that John Moynihan is Byrne's contact to an interagency intelligence group within the U.S. government that Byrne calls the "League of Shadows." | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 224:14-227:5; 230:24-232:10; 308:12-309:5)]. |
| 77. Byrne claims that FBI Special Agent David Smith, is a member of the "League of Shadows." | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 224:14-227:5; 230:24-232:10; 308:12-309:5)]. |
| 78. Byrne retained copies of the Voicemails. | Dkt No. 89-1 [11/04/25 Hansen Decl. ¶¶2, 52-53, Ex. 1 at RFA's Nos. 3-4, 6, 9-10, 12, 15-16, 18, 21-22, 24, 33-34, 39-40, 44-45; Ex. 51 at Interrogatories ("ROG's") Nos. 9, 14-16, 18; and Ex. 52 at Requests for the Production of |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| | Documents ("RFP's) Nos. 6, 9-13, 15-19, 22-23]. |
| 79. Byrne testified that he gave the only copy of the Recording to FBI Special Agent David Smith and does not have a copy of it. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 224:14-227:5; 268:1-14; 272:9-275:17; 305:4-25)]. |
| 80. Byrne claims that he was told by FBI Special Agent David Smith that several agencies worked on identifying "Doe 2" using voice recognition technology. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 224:14-227:5; 268:1-14; 270:20-271:19; 272:9-275:17; 275:18-277:13)]. |
| 81. Byrne claims that FBI Special Agent David Smith informed him that the agencies verified "Doe 2" was someone who was close to Plaintiff. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 224:14-227:5; 230:24-232:10; 268:1-14; 270:20-271:19; 272:9-275:17; 275:18-277:13)]. |
| 82. FBI Special Agent David Smith did not tell Byrne the identity of "Doe 2." | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 261:21-25)]. |
| 83. Nothing in the Recording, Voicemails, or Byrne's purported conversation with "Movie Star" actually shows any direct involvement of Plaintiff with "Doe 2." | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 325:16-329:22)]. |
| 84. Byrne claims that he was told that "Doe 2" was the son of some unidentified high ranking Pakistani | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 261:21-25; 263:19-266:13). |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| defense ministry official. | |
| 85. "Doe 2" is not identified. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 261:21-25; 263:19-266:13). |
| 86. "Doe 2's" father is not identified. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 261:21-25; 263:19-266:13)]. |
| 87. "Movie Star" never said he spoke with Plaintiff. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 247:13-19; 255:1-4; 259:2-13; 263:19-266:13; 269:15-270:2). |
| 88. Byrne claims to have told Congressman James Comer about the Defamatory Statements for whom Byrne played the Voicemails. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 206:4-18; 408:16-409:22)]. |
| 89. Congressman Comer spent two years investigating Plaintiff for, among other things, influence peddling and never mentioned any connection between Plaintiff and Iran let alone an attempt to obtain a bribe. | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶3, Exh. "71" (Byrne Deposition at 206:4-18; 408:16-409:22)]. |
| 90. At the November 25, 2024 hearing, the Court found that Byrne's reasons for delaying his depositions were "fantastic without believability." | Dkt No. 185-2 [2/3/2025 Hansen Decl., at ¶4, Exh. "72" (November 25, 2024 Hearing 7:24-8:23). |
| 91. Byrne testified that he found that | Dkt No. 185-2 [2/3/2025 Hansen Decl., |

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| multiple parts of the Moynihan Affidavit mischaracterized the facts or were not accurate. | at ¶3, Exh. "71" (Byrne Deposition at 298:13-300:8; 303:21)]. |
| 92. At the February 24, 2025 hearing, this Court recognized that key evidence in determining whether Defendant Patrick Byrne ("Byrne") acted with actual malice in publishing the statements that Plaintiff Robert Hunter Biden ("Biden") solicited a bribe from Iran to have his father, then President Joe Biden, release billions of dollars in sanctioned funds (the "Defamatory Statements") was the testimony of FBI Special Agent David Smith ("Smith") and John Moynihan ("Moynihan"). | Dkt No. 225-2 [5/20/2025 Additional Declaration of Zachary C. Hansen ("5/20/2025 Hansen Decl."), Exh. "A" [2/24/25 Transcript, 4:25-6:1, 18:22-19:10]. |
| 93. As the Court further recognized, the foregoing was because Byrne claimed Smith and Moynihan provided him with material information that supported the Defamatory Statements or that they heard material information that confirmed the Defamatory Statements, which would have supported the inference that Byrne had a basis to make the Defamatory Statements and did not | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "A" (2/24/25 Transcript, 4:25-6:1, 18:22-19:10)]. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| act with actual malice in making them. | |
| 94. Byrne testified that Smith instructed Byrne to delete the Recording from his device after sending it to Smith and watched him do so. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "B" (Byrne Depo. Trans. Vol 3 at 511:8-515:8)]. |
| 95. Byrne testified that Smith described to Byrne a letter that FBI Director Christopher Wray sent out to every FBI agent in the bureau saying not to have any contact with Byrne. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "B" (Byrne Depo. Trans. Vol 3 at 525:2-24, 554:4-24)]. |
| 96. Smith testified that Byrne's testimony about the late 2021/early 2022 meeting at a parking lot at Reagan National Airport was not accurate. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "C" (Smith Depo, 5:21-6:22)]. |
| 97. Smith did not recall receiving any recording from Byrne related to or involving Hunter Biden and Iranian Officials, and Byrne's testimony that Smith told Byrne to delete the Recording and not keep a copy of it was not accurate. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "C" (Smith Depo, 6:23-7:20, 7:21-8:6, and 11:2-7)]. |
| 98. Smith testified that Byrne's testimony that Smith confirmed, through various actions by various government agencies, that the identity of the voice on the Voicemails played on the Recording | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "C" (Smith Depo, 8:7-20)]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| was (1) the son of a high-ranking official with the Pakistani Minister of Defense, (2) someone who had close ties to Biden, and (3) someone who was acting as a proxy for Biden, was not accurate. | |
| 99. Smith testified that Byrne's testimony that Smith communicated to Byrne either directly or through Moynihan the identity of the voice on the Voicemails was not accurate. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "C" (Smith Depo, 8:7-20)]. |
| 100. Smith testified that Byrne's testimony that Smith described to Byrne a letter that FBI Director Christopher Wray sent out to every FBI agent in the bureau saying not to have any contact with Mr. Byrne was not accurate. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "C" (Smith Depo, 10:13-25)]. |
| 101. Moynihan testified that the Recording did not say Biden was already involved in the bribery scheme or even knew about the scheme, but that they would need to eventually seek Biden's assistance. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "D" (Moynihan Depo. Trans., at 116:23-117:17)]. |
| 102. Moynihan testified that he does not remember that the recording mentioned the words "bribe," "father," "10%," "$8 billion"—all facts stated by Byrne in his | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh.: "D" (Moynihan Depo. Trans., at 118:9-119:1)]. |



**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| article. | |
| 103. Moynihan did not see Byrne give the recording to Smith in the car meeting at Ronald Reagan National Airport. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "D" (Moynihan Depo. Trans. at 119:10-16, 121:3-8)]. |
| 104. Moynihan does not know what Smith did with the recording or whether he had the recording authenticated in any way. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "D" (Moynihan Depo. Trans. at 123:3-16)]. |
| 105. Moynihan was never told by Smith that the voice of the purported middleman on the recording was identified as someone close to Biden, nor did he communicate any such statements to Byrne. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "D" (Moynihan Depo. Trans, at 133:4-21)]. |
| 106. Byrne's claim that the Affidavit of John Moynihan supports the Defamatory Statements is contradicted by Moynihan himself, who admitted that his knowledge of the Defamatory Statements is based on the Recording and not from independent sources. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "D" (Moynihan Depo. Trans, at 110:10-111:17)]. |
| 107. Byrne testified that in August of 2021, Moynihan told Byrne the FBI had a two- to three-day course about the intelligence career of Patrick Byrne and Moynihan had gone through it. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "E" (Byrne Depo. Trans, at 310:1-11)]. |

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| | UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 108. | Moynihan testified that he did not have any knowledge of two- to three-day course that the FBI organized about the intelligence career of Mr. Byrne, nor had he gone through any such course. | Dkt No. 225-2 [5/20/2025 Hansen Decl., Exh. "D" (Moynihan Depo, 69:13-21)]. |
| 109. | Based on Byrne's lack of credibility, on July 18, 2025, this Court denied Byrne's summary judgment motion ("MSJ Denial Order") stating that "[a] reasonably jury could believe that [Byrne's] story is made up" and that Byrne's "story is far-fetched." | Dkt No. 268, p. 13-14. |
| 110. | In the MSJ Denial Order, the Court stated:<br><br>Finally, the substance of Firouzian's claims themselves is an obvious reason to doubt their veracity. While technically possible, they are undoubtedly far-fetched and fantastical. The son of the sitting President accepting a nearly one-billion-dollar bribe from one of the United States' foreign adversaries would be one of the most blatant instances of political corruption in United States history. In other words, Firouzian's claims "are so inherently improbable that only a reckless man would have put them in circulation." *See St. Amant,* 390 U.S. at 732.<br>Finally, the substance of Firouzian's claims themselves is an obvious reason to doubt their veracity. While technically possible, they are undoubtedly far- | Dkt No. 268, at p. 12. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| fetched and fantastical. The son of the sitting President accepting a nearly one-billion-dollar bribe from one of the United States' foreign adversaries would be one of the most blatant instances of political corruption in United States history. In other words, Firouzian's claims "are so inherently improbable that only a reckless man would have put them in circulation." *See St. Amant,* 390 U.S. at 732.<br><br>In sum, Firouzian's complete lack of evidence supporting his story, his identity as an Iranian government official, and the sheer outlandishness of his claims were all obvious reasons to doubt the truth of his claims. From these obvious reasons a rational jury could reasonably find that Defendant did in fact doubt the truth of Firouzian's claims, and yet published the statements at issue regardless. Such reckless disregard for the truth would support a finding of actual malice. *See St. Amant,* 390 U.S. at 733 ("[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant"). | |
| 111. In the MSJ Denial Order, the Court concluded that "a jury could reasonably conclude that Defendant's story is fabricated based on material contradictions between his account and the testimony of Mr. Moynihan and Agent Smith-the very witnesses Defendant relies upon to corroborate his | Dkt No. 268, at p. 16. |

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

5825609.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| extraordinary claims." | |
| 112. In the MSJ Denial Order, the Court concluded that "Defendant has exhibited ill-will toward Plaintiff in the past." SUD, ¶ 109 | Dkt No. 268, at p. 13. |
| 113. In the MSJ Denial Order, the Court noted: <br> To start, the entire premise of Defendant's story-that he has for decades acted as a covert agent for the United States government-strains credulity, especially since he fails to support this claim with any evidence. | Dkt No. 268, at p. 14. |

Dated:  October 9, 2024

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP


By:  /s/ Zachary C. Hansen

BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Richard A. Harpootlian, *pro hac vice*
rah@harpootlianlaw.com
Phillip Barber, *pro hac vice*
pdb@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201

5825609.1

33

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**

1

Telephone: (803) 252-4848
Facsimile: (803) 252-4810

2

3

*Attorney for Plaintiff*
*Robert Hunter Biden*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5825609.1                                              34

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND STATEMENT OF CONTROVERTED FACTS**