1  TYLER LAW, LLP
   Robert H. Tyler (SBN 179572)
2  rtyler@tylerlawllp.com
3  25026 Las Brisas Road
   Murrieta, California 92562
4  Telephone: (951) 304-7583

5  Attorneys for Defendant Patrick M. Byrne

6

7               UNITED STATES DISTRICT COURT

8         FOR THE CENTRAL DISTRICT OF CALIFORNIA

9
   ROBERT HUNTER BIDEN, an          Case No.: 2:23-cv-09430-SVW-PD
10 individual,
                                     *Hon. Stephen V. Wilson*
11          Plaintiff
                                     **DEFENDANT'S NOTICE OF
12       v.                          MOTION AND MOTION TO SET
                                     ASIDE THE ENTRY OF DEFAULT
13  PATRICK M. BYRNE, an individual, AND MINUTE ORDER RE
                                     DEFAULT JUDGMENT; AND
14                                   MEMORANDUM OF POINTS AND
           Defendant                 AUTHORITIES IN SUPPORT OF**
15
                                     Date:    April 13, 2026
16                                   Time:    1:30 p.m.
                                     Dept.:   Courtroom 10A
17

18     NOTICE OF MOTION TO SET ASIDE THE CLERK'S ENTRY OF

19 DEFAULT AND MINUTE ORDER OF DEFAULT JUDGEMNT.

20       The Defendant, PATRICK BYRNE ("Defendant"), by and through his

21 undersigned counsel, hereby respectfully moves this Court to set aside the Clerk's

22 Entry of Default on October 8, 2025, Docket Entry 344, and the January 12, 2026,

23 Minute Order Granting Plaintiff's Motion for Default Judgment Docket Entry, 354,

24 and set this case for jury trial to proceed on the merits. In support of this Motion,

25 Defendant files this Notice of Motion and Motion, the Declaration of Defendant

26 Patrick M. Byrne in Support of Defendant's Motion to Set Aside Entry of Default

27 and the Minute Order re Default Judgment (the "Decl. of Byrne"), the Declaration

28 of Robert H. Tyler in Support of Defendant's Motion to Set Aside Entry of Default

and the Minute Order re Default Judgment (the "Decl. of Tyler"), the Declaration of Bradley R. Greenman in Support of Defendant's Motion to Set Aside Entry of Default and the Minute Order re Default Judgment (the "Decl. of Greenman"), the Declaration of Roger Roots in Support of Defendant's Motion to Set Aside Entry of Default and the Minute Order re Default Judgment (the "Decl. of Roots"), and the Declaration of Peter Ticktin in Support of Defendant's Motion to Set Aside Entry of Default and the Minute Order re Default Judgment (the "Decl. of Ticktin").

DATED:  March 3, 2026          TYLER LAW, LLP

                                By: /s/ Robert Tyler
                                    Robert Tyler

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT**
**2:23-CV-09430-SVW-PD**

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS....................................................................................i

TABLE OF AUTHORITIES ...........................................................................i

MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE  CLERK'S
ENTRY OF DEFAULT AND MINUTE ORDER RE  DEFAULT JUDGMENT.... 1

I. INTRODUCTION .....................................................................................1

II. STATEMENT OF FACTS ........................................................................2

II. ARGUMENT ...........................................................................................9

    A.    Standard for Relief from Default Orders .............................9

            1.    Good Cause Exists Because From the Onset, Defendant has Vigorously and Adamantly Defended His Free Speech Rights in this Case ..............................................10

            2.    Good Cause Exists Because After Defendant Terminated his Attorneys on July 29, 2025, Defendant Stopped Receiving Service of the Filing of Pleadings and Documents Related to this Case. ..............................................12

            3.    Good Cause Exists Because Defendant's Other Attorneys Withdrew or were Denied Their Pro Hoc Vice Applications and were Subsequently Removed from the Court's ECF System by the Court. ..............................................13

            4.    Good Cause Exists Because Mr. Murphy's Withdrawal as Counsel of Record was Never Ordered and the Court Never Issued an Order Permitting Defendant to Appear Pro Se ..........14

            5.    Defendant Became Aware of the Status of the Case and Docket Upon Retaining New Counsel in January 2026 ............15

            6.    Good Cause Exists Because Defendant was Denied Representation at the Hearing on Plaintiff's Motion for Default Judgment. ..............................................16

    B.    Defendant Has Meritorious Defenses.................................17

    C.    Plaintiff Would Not Be Unfairly Prejudiced by Vacating the Default ..............................................19

    E.    Public Policy Favors Resolution on the Merits....................20

III. CONCLUSION.........................................................................................21

CERTIFICATE OF COMPLIANCE..............................................................22

CERTIFICATE OF SERVICE.......................................................................23

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*American Alliance Ins. Co. v. Eagle Ins. Co.,*
  92 F.3d 57 (2d Cir.1996) ...............................................................................10

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*,
  375 F.3d 922 (9th Cir. 2004) .........................................................................10

*Gregorian v. Izvestia,*
  871 F.2d 1515 (9th Cir. 1989) .......................................................................20

*H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,*
  432 F.2d 689 (D.C. Cir. 1970)......................................................................... 6

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) .......................................................................................14

*Jackson v Mayweather*,
  (2017) 10 Cal.App.5th 1240 ..........................................................................17

*Jackson v Paramount Pictures Corp.,*
  68 Cal.App.4th 10 (1998) .........................................................................18, 19

*New York Times Co. v Sullivan,*
  376 U.S. 254 (1964) .................................................................................17, 18

*Philadelphia Newspapers, Inc. v Hepps*,
  475 U.S. 767 (1986) .......................................................................................18

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993) ......................................................................................... 9

*Sanborn v. Chronicle Pub. Co.,*
  18 Cal.3d 406 (1976) ......................................................................................18

*St. Amant v Thompson,*
  390 U.S. 727 (1968) .......................................................................................18

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
  615 F.3d 1085 (9th Cir. 2010) ....................................................................9, 10

**Statutes**

California Civil Code §45 ..................................................................................17

**Rules**

Fed. R. Civ. P. 55...........................................................................................9, 10

Fed. R. Civ. P. 60(b)(6)....................................................................................10

i

Federal Rules of Civil Procedure, Rule 55(a) ............................................................ 9

Federal Rules of Civil Procedure, Rule 55(c) ...................................................... 9, 10

Federal Rules of Civil Procedure, Rule 60(b) ..................................................... 9, 10

Federal Rules of Civil Procedure, Rule 60(b)(1) ................................................ 9, 10

Rule 60 ................................................................................................................. 10

**Other Authorities**

L.R. 5-3.2.1 ............................................................................................................. 6

L.R. 83-2.3.1 .............................................................................. 1, 11, 14, 17

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT**
**2:23-CV-09430-SVW-PD**

## MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT AND MINUTE ORDER RE DEFAULT JUDGMENT

### I. INTRODUCTION

Defendant Patrick Byrne ("Mr. Byrne" or "Defendant") is an American whistleblower in its truest sense. His defense here is significant because it implicates serious national security concerns. He presented audio tapes to the Federal Bureau of Investigation during President Joseph Biden's administration evidencing the veracity of his assertion Plaintiff Hunter Biden ("Mr. Biden" or "Plaintiff") attempted to negotiate an illicit deal during President Barak Obama's administration to unfreeze millions of dollars, if not billions of dollars, of Iranian assets in exchange for receiving millions of dollars in cash from Iranian agents. The FBI agent was deposed, and his deposition transcript was to be used at trial. Plaintiff Hunter Biden then obtained a pardon from his father eliminating the threat of criminal prosecution as it pertains to the facts of this case – an event providing a guilt-ridden exoneration but relevant to the veracity of Mr. Byrne's factual statements.

Mr. Byrne actively defended himself for years and was ready to defend himself when his new counsel arrived at trial.  But this Court retroactively and outright denied his new counsels' respective *pro-hac vice* applications after initially granting one of those applications.  Mr. Byrne's witness to the FBI interaction, former FBI agent John Moynihan, was flown into Los Angeles to testify. Mr. Byrne did not want the trial to be continued, though it was continued.

A cascade of events led to Mr. Byrne's prior counsel, Michael C. Murphy ("Mr. Murphy"), remaining as attorney of record but was erroneously removed by this Court from receiving ECF notices. Mr. Murphy failed to provide Mr. Byrne's address as required by this Court but was still permitted to later disassociate from the case, all without Mr. Byrne's knowledge. To compound the failure of due process, this Court did not comply with L.R. 83-2.3.1, which, if followed, would

have ensured Mr. Byrne was authorized to represent himself *pro se* and he would have received all notices and filings here. During this time, knowing Mr. Byrne was not being served with notices and filings and while an interlocutory appeal was underway, Plaintiff engaged in an aggressive litigation strategy to obtain a default judgment based on Mr. Byrne's purported failure to appear in court at subsequent hearings. But the evidence in the docket reveals Mr. Byrne received no notices from this Court or opposing counsel, was unaware of these court hearings, and was left naïve to his lack of legal representation in this Court.  That confusion regarding service of notices was readily exploited by Plaintiff, leading to sanctions against Mr. Byrne, and subsequent entry of Clerks Default followed by a Minute Order granting Default Judgment.

By this motion, Mr. Byrne moves this Court to set aside the Clerk's Entry of Default on October 8, 2025, Docket Entry 344, and January 12, 2026, Minute Order Granting Plaintiff's Motion for Default Judgment Docket Entry, 354, and set this case for jury trial to proceed on the merits. As of today, no judgment has been served.

## II. STATEMENT OF FACTS

Despite Mr. Byrne's adamant defense of his rights in this matter, a default judgment was entered against him after a cascade of events took place resulted in Mr. Byrne's lack of knowledge and notice of the filings on the docket in this matter. This cascade began at trial on July 29, 2025, when Defendant terminated his counsel of record Mr. Murphy and Carmen Rosa Selame ("Ms. Selame") for good cause. Decl. of Byrne, at p. 2, ¶ 4. After Mr. Murphy's termination, he was removed from ECF service by the Court on July 30, 2025. Decl. of Greenman, at p. 1, ¶ 3, Ex. B. Consequently, after Mr. Byrne fired his attorneys, he was prepared to go to trial with attorneys Peter Ticktin ("Mr. Ticktin") and Stefanie Lambert ("Ms. Lambert") who attempted to obtain admission to the Central District *pro hoc vice*. Dk. 274; 291.

Although the Court had previously approved the *pro hac vice* application of Peter Ticktin on July 24, 2025, Docket Entry, 278, it later rescinded approval and

denied it on July 30, 2025, *after* Mr. Byrne had already fired his attorney of record, Mr. Murphy. Dk. 307; *see also* Dk. 310 (discussing the reasons for the retroactive withdrawal of approval of Mr. Ticktin's application). Prior to denying Mr. Ticktin's application, the Court also denied the *pro hac vice* application of Ms. Lambert on July 29, 2025. Dk. 295. (The respective *pro hoc vice* applications of Mr. Ticktin and Ms. Lambert are referred to collectively as the "Applications").

Concurrent with the denials of Mr. Ticktin's and Ms. Lambert's Applications, attorney Tom Yu, who was serving as associated counsel related to Ms. Lambert's Application and who represented Defendant at hearing on July 30, 2025, filed a Notice of Withdrawal from the Case and was also removed from the Court's ECF System effective July 30, 2025. *See* Decl. of Greenman, at p. 4, ¶ 18, Exhibit "B" (referred to hereinafter as "Ex. B"). At this point, Mr. Byrne had no attorney of record involved in the case he had not already terminated for cause. Yet, the two attorneys he wanted to defend his constitutional rights in court, Mr. Ticktin and Ms. Lambert, were barred by the Court from practicing law before it. As a practical matter, this made litigating before this Court extremely difficult, if not impossible for Mr. Burns.

To compound the difficulties arising from Defendant not having attorneys of record receiving ECF notice in this Case, aware of Defendant's position, and also aware Defendant was not registered in the ECF system, Plaintiff then pursued an aggressive litigation strategy initiating a flurry of filings as soon as Defendant's counsel of record was terminated. The filings and related orders from the Court regarding them include:

- On July 30, 2025, the Court entered a minute order (the "July 30 Order") among other things, continued the trial to October 14, 2025, and retroactively denied Mr. Ticktin's Application. Dk. 307;

- Concurrently with the July 30 Order, the Court also removed Mr. Ticktin from receiving ECF service. See Decl. of Ticktin, at p. 2, ¶ 6; Ex. B, at

3

p. 3 (showing Mr. Ticktin's ECF status as "ELIMINATED" effective July 30, 2025);

- The Court then entered a pair of orders dated August 5, 2025. The first order granted Plaintiff's Ex Parte Application for Reconsideration of Peter Ticktin's Application and explained the reasons for the retroactive denial in the July 30 Order. Dk. 310. The second order, among other items, ordered Defendant to provide the Court with an active email address for electronic service or a physical address for overnight delivery/service of documents noting Mr. Murphy could not withdraw until such information was provided. Dk. 311, Pg.ID 7738. (Docket Entry 311 is referred to hereinafter as the "August 5 Order");

- On August 13, 2025, Plaintiff filed an Ex Parte Application to enforce the Court's August 5 Order related to the portion of the Order concerning the mandate Mr. Murphy provide the Court with Defendant's active email and/or service address. Dk. 316. Critically, Plaintiff's August 13, 2025, motion acknowledges Plaintiff was unable to serve Defendant as of that date. Dk. 316, Pg.ID 7750–51;

- On August 14, 2025, this Court set a status conference regarding Plaintiff's Ex Parte Application to enforce the August 5 Order and ordered Defendant to personally appear. Dk. 318;

- On August 18, 2025, Plaintiff filed a Notice of Defendant's Non-Compliance with the Court's Orders. Dk. 325;

- On August 25, 2025, Plaintiff filed an application for an Order to Show Cause re: Requiring Defendant to Show Cause Why He Should Not be Held in Contempt. Dk. 327;

- On August 25, 2025, Plaintiff filed a Notice of Motion and Motion for Sanctions Against Patrick M. Byrne. Dk. 328;

4

1      • On August 28, 2025, the Court entered a minute order for Defendant
2        Patrick Byrne to show cause why he should not be sanctioned or held in
3        civil Contempt. Dk. 330;

4      • On August 29, 2025, Plaintiff filed an *Ex Parte* Application to Compel
5        Responses to Document Request, or in the Alternative, Sanctions
6        Against Defendant Patrick Byrne. Dk. 329;

7      • On September 13, 2025, an *Ex Parte* Application for Issuance of a Bench
8        Warrant for the Arrest of Defendant Patrick Byrne was filed by the
9        Plaintiff. Dk. 331;

10     • On September 29, 2025, the Motion for Sanctions Against Defendant
11       Patrick Byrne based on the Court's August 5 Order was heard and the
12       Court granted the Motion for Sanctions. Dk. 341;

13     • On October 6, 20925, Plaintiff filed an *Ex Parte* Application for Entry
14       of Default Judgment against Defendant. Dk. 342;

15     • On October 8, 2025, the Court granted the *Ex Parte* Application for Entry
16       of Default. Dk. 343. On that same day, the Clerk entered an entry of
17       Default. Dk. 344;

18     • On November 18, 2025, Plaintiff filed a notice of motion and motion for
19       default judgment against Defendant, set for hearing on January 12, 2026.
20       Dk. 350;

21     This aggressive litigation campaign would have been time consuming even
22 for lawyers of record to defend against. But this campaign was being waged against
23 a party who was now effectively unrepresented in court given his chosen lawyers'
24 *pro hac vice* Applications had been denied (with one of them being *retroactively*
25 denied). Moreover, none of these various *ex parte* motions, motions, or minute
26 entries from the Court were served on Mr. Byrne by Plaintiff or by the Court.
27 Plaintiff himself acknowledges he was unable to serve Defendant because Mr.
28 Murphy had not complied with the Court's August 5 Order. Dk. 316. Critically, no

proof of service was ever filed related to any of the above-mentioned entries under L.R. 5-3.2.1, particularly as it relates to parties who are not registered for service under the ECF System, like Mr. Byrne.

The law abhors default judgments, especially when the default occurs in a matter where the party has not been served and the party has been actively involved in the matter up to that point. *See H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691–92 (D.C. Cir. 1970) (noting: "[D]efault judgment must normally be viewed as available *only* when the adversary process has been halted because of an essentially unresponsive party." (Emphasis added.)). Here, Defendant not only answered, but he was actively engaged in this case from the very outset and continues to be.

Critically, Mr. Michael Murphy, and Ms. Carmen Selame were the attorneys of record on the original date of trial, and they both continue to be the attorneys of record for Mr. Byrne. Yet, at the date set for the entry of a Default Judgment, Mr. Murphy and Ms. Selame did not appear in Court on January 12, 2026, for the scheduled hearing on Plaintiff's Motion to Enter Default Judgment. Mr. Robert Tyler was the only attorney present at the hearing for Mr. Byrne, and Mr. Tyler was not permitted to address the Court on behalf of Mr. Byrne. As a result, the Court only heard arguments from the Plaintiff related to his Motion to Enter Default Judgment.

The Court docket report in the instant case reflects Ms. Selame, of the Law Office of Michael C. Murphy, has never stopped receiving electronic notice on the instant case, and continues to this day to receive copies of court documents. Mr. Michael Murphy was terminated for electronic notice on August 1, 2024. Exhibit 1. The Court has never issued an order removing Mr. Murphy or Ms. Selame as counsel of record in this case.

The Court stated: "Defendant must provide Plaintiff was an email address for electronic service or a physical address for mail or overnight delivery service of

documents.    Until Defendant does so, the Court will not allow Mr. Murphy to withdraw from the case." Dk 316.  To date, Mr. Murphy never provided the Court with Mr. Byrne's physical address for mail or overnight delivery service of documents, nor his email address.  In fact, this Court never issued an Order granting Mr. Murphy's Motion to Withdraw.

Mr. Murphy stated in the "Notice of Compliance with Court Order of July 30, 2025", he is not legally obligated to accept service of any documents or communications on behalf of Mr. Byrne, and he has been terminated by Mr. Byrne. Mr. Murphy stated he was unable to provide Mr. Byrne with a transcript of July 30, 2025, hearing because the court reporter had not responded to his request.  Dk 313.

It appears after attorneys Stefanie Lambert and Peter Ticktin were disqualified, they were both removed from the service list and were no longer advised when court documents were filed in the above styled lawsuit.

On October 8, 2025, pursuant to a motion by the Plaintiff, which was never served on any of the attorneys for Defendant, except for Mr. Murphy and Ms. Selame, a Clerk's Default was entered, despite Defendant having filed papers in the above-style lawsuit.

Subsequently, this Court scheduled a hearing on the Plaintiff's Motion for a Default Judgment on January 12, 2026.  As Defendant learned of that hearing, he hired new counsel and Mr. Tyler appeared to argue on behalf of Mr. Byrne at the hearing on Plaintiff's Motion to Enter a Default Judgment.  Mr. Tyler filed a Motion for Limited Appearance indicating he was retained to represent Mr. Byrne at the January 12, 2026, hearing.

Mr. Tyler's Limited Appearance stated Mr. Tyler was not able to proceed to trial on the scheduled January 20, 2026, jury trial, but he could represent Mr. Byrne at trial if a different date was set by the Court.  If Mr. Tyler had been able to speak on January 12, 2026, he would have advised the Court his client is requesting an

Order granting pro se status if the trial cannot be moved from the January 20, 2026, date, and Mr. Byrne would try the case himself.

It appears this Court believed Mr. Murphy had been removed as counsel of record, and Mr. Byrne had been placed by Order in pro se status, but the docket report reflects otherwise. There is no Order granting pro se status nor has Mr. Murphy been alleviated of obligation to Mr. Byrne. Mr. Tyler was prepared to clarify events for the Court, and at the beginning of the hearing he stated: "Robert Tyler on behalf of the defendant Patrick Byrne." The Court replied that this Motion for Limited Appearance was a "last minute ploy, and, frankly, at this point in the proceedings, I find Dr. Byrne totally incredible and not believable, and you all know, all he has done throughout, and the record will support it, is evade and avoid. So I'm not granting your limited appearance."

On August 5, 2025, this Court issued an Order stating "Defendant must provide Plaintiff with an email address for electronic service or a physical address for mail or overnight delivery service of documents. Until defendant does so, the Court will not allow Mr. Murphy to withdraw from the case." Dk 311. To date, Mr. Murphy has not filed an email address for electronic service or a physical address for mail or overnight delivery service of documents consistent with the August 5, 2025, Order. Mr. Murphy was removed from receiving electronic service on July 30, 2025. No Order has been issued granting pro se status to Mr. Byrne nor has the removal of Mr. Murphy been granted by this Court.

Mr. Byrne retained Mr. Tyler for he very purpose of opposing Plaintiff's Motion for Entry of Default and advising the Court he wished to try the case himself, if necessary. After Hunter Biden's attorneys argued the Plaintiff's position, Mr. Tyler requested to address the court and asked "Your Honor, may I—" and the Court responded "No, you may not." The Court concluded the hearing stating "I am – haven't finalized my thinking but I am thinking that an award of somewhere around

5 million is probably more appropriate in terms of dealing with what punitive damages is designed to ensure, but I'll give it some more thought and issue an order."

No argument was permitted on behalf of Mr. Byrne. Following the hearing, Mr. Tyler filed a Notice of Appearance on January 15, 2026, as there was no longer a concern over an imminent trial date. The Court should set aside the Clerk's Entry of Default on October 8, 2025, Docket Entry 344, and January 12, 2026, Minute Order Granting Plaintiff's Motion for Default Judgment, Docket Entry 354.

## II. ARGUMENT

### A.    Standard for Relief from Default Orders

Federal Rules of Civil Procedure, Rule 55(c), provides "for good cause shown" the Court may set aside an entry of default made under Federal Rules of Civil Procedure, Rule 55(a), and if a judgment by default has been entered, the Court may set the judgment aside in accordance with Federal Rules of Civil Procedure, Rule 60(b). Federal Rules of Civil Procedure, Rule 60(b)(1), in turn provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...."

Evaluation of the excusable neglect standard of Federal Rules of Civil Procedure, Rule 60(b)(1), is generally instructed by the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). Where a default has been entered or a default judgment has issued, "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55.

When setting aside an entry of default under Rule 55(c), the Ninth Circuit evaluates "good cause" based on three factors: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. *United*

*States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). Where a final default judgment is being set aside under Rule 60(b), a court may set aside the default judgment because of "mistake, inadvertence, surprise, or excusable neglect…" Fed. R. Civ. P. 60(b)(1). *See also American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 58 (2d Cir.1996) (requiring "excusable neglect [] to be construed generously" in Rule 55 motions). Further, Rule 60 does not limit a court's power to set aside a default judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

In the Ninth Circuit, "the 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). In discussing the good cause standard, the Ninth Circuit has noted that, "[c]rucially … 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Yubran*, at 1091. Additionally, when it comes to analyzing mistake, inadvertence, surprise, or excusable neglect, the Ninth Circuit has also noted that such an analysis "largely overlaps with the [Rule 55(c) good cause] issue of culpability." *Franchise*, at 927.Good Cause Exists To Set Aside The Entry of Default And Minute Order Re Default In This Case Because The Entry Of Default Was Not The Result Of Culpable Conduct By Mr. Byrne

> 1.    *Good Cause Exists Because From the Onset, Defendant has Vigorously and Adamantly Defended His Free Speech Rights in this Case*

When the 2024 presidential election season was just getting underway, Plaintiff Hunter Biden filed this lawsuit on November 8, 2023, alleging Mr. Byrne defamed him with statements allegedly made on "The Absolute Truth" show with Emerald Robinson on May 10 and 11, 2023, and in a "Capitol Times Magazine" article, dated June 27, 2023. Dk. 1. Since Plaintiff initiated this lawsuit, Mr. Byrne has consistently defended his free speech rights in this matter and defended himself

10

against these allegations. Examples of his active defense of his case include but are not limited to:

- On February 13, 2024, Mr. Byrne, through his attorney, timely filed an Answer, requesting a trial by jury in this matter. Dk. 25;

- On March 11, 2024, Plaintiff and Defendant (referred to sometimes hereinafter collectively as the "Parties") filed a Joint Report Concerning Rule 26(f) Discovery Plan. Dk. 31;

- The Parties engaged in discovery, with multiple interrogatory requests, requests for production of documents, and depositions, including the deposition of Mr. Byrne, and discovery disputes. Dk. 86;

- Mr. Byrne attended the deposition of Mr. Biden on August 16, 2024. Decl. of Byrne at p. 4, ¶ 18;

- On October 28, 2024, Plaintiff filed a Notice of Motion and Motion for Summary Judgment. Dk. 85;

- Defendant filed various motions in limine. Dk. 120–130;

- On July 24, 2025, Defendant filed his Trial Brief and proposed voir dire questions. Dk. 280; 281.

The list could go on. This is not a situation where default was entered against a party who utterly failed to show up to court. Clearly, Mr. Byrne wanted to defend himself, and in fact defended himself throughout. This is a case where due to a cascade of events, Mr. Byrne stopped receiving service of the various court filings and hearings occurring on the docket, and was left in a situation where he was denied being able to appoint counsel to represent him while simultaneously being unable to represent himself *pro se* given the Court never issued the necessary orders to remove his former counsel (Mr. Yu, Mr. Murphy, and Ms. Selame) and to permit Defendant to represent himself *pro se*. L.R. 83-2.3.1 Mr. Byrne's conduct was not culpable in the sense of being willful, deliberate, or in bad faith. Rather, it stemmed from his

11

attorneys of choice being removed from electronic service, and strict orders from this court they shall not act as Mr. Byrne's attorneys in this matter.

>    2.    *Good Cause Exists Because After Defendant Terminated his Attorneys*
>          *on July 29, 2025, Defendant Stopped Receiving Service of the Filing of*
>          *Pleadings and Documents Related to this Case.*

Mr. Murphy, and Ms. Selame were Defendant's attorneys of record on the original date of trial, July 29, 2025. Mr. Byrne terminated Mr. Murphy on the morning of trial because he had legitimate concerns about Mr. Murphy's preparation and representation.   As Mr. Byrne explained in his January 12, 2026, filing, Mr. Murphy failed to order all of Mr. Byrne's deposition videos, failed to properly prepare for trial, and made misrepresentations about whether Defendant needed to appear in person.  Moreover, Ms. Selame, of Mr. Murphy's law firm, arrived wearing a "Free Palestine" pin when the case involved Iran, and Mr. Byrne's jury consultants believed Ms. Selame was intending to signal to the jury she did not support her client at trial. Decl. of Byrne, at p. 2, ¶ 4.

Despite the termination of his lawyers, Mr. Byrne was prepared to proceed to trial through Mr. Ticktin and Ms. Lambert. In fact, Mr. Ticktin's Application had already been approved by the Court. Dk. 278. But after Mr. Byrne firing his lawyers of record, the Court then rescinded its order approving Mr. Ticktin's Application. Dk. 307; 310. Ms. Lambert's Application was also denied. Dk. 295.

A hearing was held before the Court on July 30, 2025, (the "July 30 Hearing"). Mr. Yu, an attorney who was serving as associated counsel for Mr. Byrne, and who also filed a notice of appearance on behalf of Defendant, appeared on his behalf at the July 30 Hearing with Mr. Murphy also in attendance. *See* Dk. 307 (noting Mr. Yu's appearance on behalf of Defendant at the July 30 Hearing); Dk. 290 (noting Mr. Yu's entry into the case as Defendant's counsel). At hearing, Mr. Murphy was ordered to provide Defendant with a copy of the Court's rulings from the July 30 Hearing, a transcript of the July 30 Hearing, and to appoint new counsel by August

12

15, 2025. Dk. 307, Pg.ID 7718; Dk. 313 (referred to hereinafter as Mr. Murphy's "Notice of Compliance"); Dk. 317 (referred to hereinafter as Mr. Murphy's "Opposition to Plaintiff's *Ex Parte* re Service"). Mr. Murphy, however, never provided Defendant with a copy of the transcript from the July 30 Hearing, and as the docket shows, he never provided the Court with Defendant's contact information to ensure service of the various filings here. Moreover, Mr. Murphy, like Defendant's attorneys of choice, was removed from the Court's ECF system and was no longer receiving filings from the Court regarding the Case after July 30, 2025. Dk. 317, Pg.ID. 7765.

   3.   *Good Cause Exists Because Defendant's Other Attorneys Withdrew or were Denied Their Pro Hoc Vice Applications and were Subsequently Removed from the Court's ECF System by the Court.*

Leading up to the July Trial Date, Defendant made various attempts to retain counsel to represent him related to this case, but those applications were ultimately denied by the Court. *See* Dk. 295, Pg.ID 7616–22 (denying Ms. Lambert's Application); Dk.'s 307 &. 310, Pg.ID 7722–27 (*retroactively* denying attorney Mr. Ticktin's Application). In the process of denying the Applications, Mr. Ticktin was removed from the Court's ECF System related to this case and Ms. Lambert was never added; meaning, neither received service of filings related to this case after their respective removals on July 29 and August 5, 2025. **Ex. B**, at p. 3; Decl. of Ticktin, at p. 2, ¶ 6. Additionally, attorney Tom Yu was also removed from the Court's ECF System on July 30 despite his attempt to withdraw from the case being stricken and no order issuing from the Court granting his withdrawal. **Ex. B**, at p. 4; *see* Dk. 314 (striking Mr. Yu's Notice of Withdrawal and ordering him to refile it in accordance with the Court's instruction).

As a result, effective as of July 30, 2025, *all* of Defendants prior counsel of record had either been terminated by Defendant and told they were not to correspond or accepts service on his behalf, or they were removed by the Court from the Court's

ECF System, meaning, Defendant was not being served the various filings being made since date.

Mr. Byrne's failure to comply with subsequent Court orders regarding providing contact information and appearing at hearings was not due to willful disregard but rather confusion about representation after the Court denied his preferred counsel's application to appear *pro hac vice*.

4.  *Good Cause Exists Because Mr. Murphy's Withdrawal as Counsel of Record was Never Ordered and the Court Never Issued an Order Permitting Defendant to Appear Pro Se*

In addition to the various service issues created by the removal of Defendant's attorneys from the ECF System, issues also arose here on the status of Mr. Murphy's withdrawal as counsel of record for Defendant.

Under L.R. 83-2.3.1, "[w]henever a party has appeared by an attorney, the party may not then appear or act *pro se*, except upon order made by the Court after notice to such attorney and to any other parties who have appeared in the action." Further, where a district court has adopted local rules, "[t]hose rules have 'the force of law.' [Citation.]" *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010). Additionally, as noted above, the Court ordered on August 5, 2025, "Defendant must provide Plaintiff with an email address for electronic service or a physical address for mail or overnight delivery service of documents. Until Defendant does so, *the Court will not allow Mr. Murphy to withdraw from the case*." Dk. 311, Pg.ID 7738.

To date, Mr. Murphy has never filed defendant's email address or physical address for the delivery of overnight service of documents with the Court. Further, the Court has never issued an order granting Mr. Murphy's, Ms. Selame's, or Mr. Yu's withdrawals from the case, nor has it ever issued an order permitting Defendant to appear *pro se* in this Case in compliance with L.R. 83-2.3.1. Application of this rule by this Court would have ensured Mr. Byrne received court notices, filings, and proper service.

5.    *Defendant Became Aware of the Status of the Case and Docket Upon Retaining New Counsel in January 2026*

After the rejection of Mr. Ticktin's and Ms. Lambert's Applications as of July 30, 2025, Defendant operated under the belief that service of any ECF filings would be sent directly to him by Plaintiff's Counsel and/or the Court. Decl. of Byrne, at p. 3, ¶ 8.

While the flurry of unserved August 2025 filings was occurring, Defendant was searching for counsel to challenge the denials of the Applications of Mr. Ticktin and Ms. Lambert. He then retained attorney Roger Roots ("Mr. Roots") to appeal the denial of their Applications. Decl. of Byrne, at p. 3, ¶ 9–10; Decl. of Roots, p. 1, ¶ 3. Upon retaining Mr. Roots, it was Defendant's understanding Mr. Roots would be receiving ECF notice of the filings in this Case given Mr. Roots contacted both the Court and Plaintiff's counsel to serve them Defendant's appeal of the denials of the Applications of Mr. Ticktin and Ms. Lambert and the related Motion to Stay regarding this case. Decl. of Byrne, at p. 3, ¶ 11; *see* Decl. of Roots, at p. 2, ¶ 5 (noting Mr. Roots served the Court Defendant's Writ of Mandamus re the denial of the Applications of Mr. Ticktin and Ms. Lambert and Defendant's Motion to Stay on September 15, 2025). Defendant was unaware Mr. Roots was in fact not receiving ECF notice of the filings in this Case. Byrne, at p. 3, ¶ 11. Thereafter, from the time Mr. Roots was retained to appeal the denial of the Applications, Defendant believed this Case had been stayed pending the appeal and no action was necessary on his behalf. Decl. of Byrne at pp. 3, ¶¶ 11–12.

It was not until January 9, 2026, when Defendant engaged Tyler Law, LLP, and learned that default was entered here through his new attorney Robert H. Tyler ("Mr. Tyler"). Decl. of Byrne, at p. 4, ¶ 17. Mr. Byrne, in trying to find counsel who was competent in First Amendment law and could handle this magnitude of case, diligently searched for an attorney to represent him at trial from early August 2025 through January 2026. Decl. of Byrne, at p. 4–5, ¶ 19. Given the subject matter of

the case and the public profile of the parties involved, obtaining new counsel took longer than expected. *Id.* Ultimately, Defendant located Mr. Tyler to represent him at the Default Hearing and potentially at the trial as it was scheduled for January 20, 2026. Decl. of Tyler, at p. 2, ¶ 6.

> 6.   *Good Cause Exists Because Defendant was Denied Representation at the Hearing on Plaintiff's Motion for Default Judgment.*

Subsequent to the entry of default in October 2025, Plaintiff filed a Motion for Default Judgment ("Plaintiff's Motion for Default"), and a hearing on the same was set for January 12, 2026 (the "Default Hearing"). Dk. 350. Notwithstanding that no order issued from the Court permitting Mr. Murphy and Ms. Selame to withdraw from the case, and despite no order has issued from the Court permitting Defendant to appear *pro se*, neither Mr. Murphy nor Ms. Selame appeared in Court for the Default Hearing and Mr. Tyler, who Defendant hired to represent him at the Default Hearing, was not permitted to speak. *See* Dk. 354, Pg.ID 8321 (noting no attorneys were present on behalf of Defendant).

As reflected on the docket, Mr. Tyler was the only attorney present at the hearing for Mr. Byrne, however, Mr. Tyler was not permitted to address the Court on behalf of Mr. Byrne, and his Motion for Limited Appearance was denied.  A true and accurate copy of the transcript of the Default Hearing is attached as **Exhibit "A"** (referred to hereinafter as "**Ex. A**") in support of the Decl. of Tyler. Decl. of Tyler, at p. 4, ¶ 17. As a result, the Court only heard argument from the Plaintiff on his Motion for Default. **Ex. A**. Thereafter, the Court granted Plaintiff's Motion for Default and vacated all future hearings pending the issuance of an order concerning the same. Dk. 354.

While it appears this Court believed Mr. Murphy had been removed as counsel of record, Mr. Byrne had been placed by Order in *pro se* status, and Defendant had been served the various filings and hearings taking place, the docket reflects otherwise, and Mr. Tyler intended to discuss this with the Court but the Court replied

Mr. Tyler's Motion for Limited Appearance was a "last minute ploy, and, frankly, at this point in the proceedings, I find Dr.  Byrne totally incredible and not believable, and you all know, all he has done throughout, and the record will support it, is evade and avoid.  So I'm not granting your limited appearance." **Ex. A**, at p. 4, ln.'s 3–8. No argument was permitted on behalf of Mr. Byrne.

Had Mr. Tyler's Limited Appearance been approved, Mr. Tyler would have informed the Court that while he was not able to proceed to trial on the scheduled January 20, 2026, jury trial, he could represent Mr. Byrne at trial if a different date was set by the Court. Dk. 353; Decl. of Tyler, at pp. 2–3, ¶¶ 8–11. If no continuance was granted, however, he was prepared to advise the Court that his client was requesting an Order granting *pro se* status under L.R. 83-2.3.1, and Mr. Byrne was ready, willing, and able to try the case himself, if necessary, on the January 20, 2026, Decl. of Tyler, at p. 3, ¶ 11. But again, Mr. Tyler was not permitted by the Court to speak to these issues and Defendant was effectively denied an opportunity to be heard at the default Hearing.

## B.    Defendant Has Meritorious Defenses

Mr. Byrne has meritorious defenses against the Plaintiff's defamation claims. To prevail on his claim for defamation *per se*, Plaintiff must prove Defendant (1) published a statement, (2) the statement was false, (3) defamatory, (4) and unprivileged, (5) which has a natural tendency to injure or cause special damages. (California Civil Code §45; *Jackson v Mayweather* (2017) 10 Cal.App.5th 1240, 1259.) Furthermore, if the plaintiff is a public figure, the plaintiff must prove the defendant acted with "actual malice." (*Ibid.*)

Plaintiff must prove Defendant acted with "actual malice." A statement is made with "actual malice" if Defendant made the statement with knowledge the statement was false, or if Defendant made the statement with reckless disregard of the truth or falsity of the statement. *New York Times Co. v Sullivan,* 376 U.S. 254, 270 (1964). While publishing a false statement may give rise to a claim for

17

defamation, falsity alone is not enough to establish Defendant made the allegedly defamatory statements with "actual malice." *Id*. at 279–80. To prove Defendant made the defamatory statement with reckless disregard of the truth of the statement, Plaintiff must prove Defendant harbored "serious doubts" of the truth of the statement. *St. Amant v Thompson*, 390 U.S. 727, 731 (1968). Furthermore, if the alleged defamatory matter involves a matter of public concern, then Plaintiff must satisfy the actual malice standard. *Philadelphia Newspapers, Inc. v Hepps*, 475 U.S. 767, 770–77 (1986). Actual malice cannot be implied and must be proven by direct evidence. *Sanborn v. Chronicle Pub. Co*., 18 Cal.3d 406, 413 (1976).

Should Defendant harbor any good-faith belief in the truth of the statements, has evidence to support his belief, or is otherwise ignorant of the falsity of the statements, then Defendant will defeat Plaintiff's claim Defendant acted with actual malice. *See Jackson v Paramount Pictures Corp.,* 68 Cal.App.4th 10, 33 (1998).

Plaintiff has produced no such evidence during the pendency of the case and cannot meet his high burden. In addition, in his January 12, 2026, filing, Mr. Byrne indicated he has evidence supporting his statements, including recordings provided to government officials. Dk. 357, Pg.ID 8328. Specifically, Mr. Byrne referenced evidence he provided to the government and suggested government officials may have manipulated or destroyed evidence. *Id.*

Additionally, Mr. Byrne has alleged several affirmative defenses to warrant full adjudication at a trial before a jury. First, Mr. Byrne contends the alleged defamatory statements are true, which would serve as an absolute defense of all claims. Dk. 25, Pg.ID 99. Second, Mr. Byrne was engaging in protected constitutional speech, and any damages for such activity would be a violation of the United States and California constitutions. *Id.* Third, at all times, Mr. Byrne was acting in good faith and thus lacked the requisite intent to defame a public figure. *Id.* In addition, Mr. Byrne has preserved the defenses Plaintiff has failed to state a claim;

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT**
**2:23-CV-09430-SVW-PD**

his claims are time-bared; he has failed to mitigate his damages, and he has unclean hands. *Id.*

Mr. Byrne did not abandon his defense.  He had three attorneys (in good standing) as well as two trial consultants ready and present in courtroom on July 29, 2025.  His witness, John Moynihan, was also present and ready to testify.  This irrefutably demonstrated Dr.  Byrne's intent to proceed with trial.

The merits of this case should be decided through trial rather than by default. This is particularly important given the significant amount of punitive damages sought by the Plaintiff ($33.33 million) and the First Amendment implications of this defamation case.

## C.    Plaintiff Would Not Be Unfairly Prejudiced by Vacating the Default

Vacating the Default would not unfairly prejudice the Plaintiff.  This case has been actively litigated for over two years, and the parties have completed substantial discovery. There is nothing to suggest any evidence would be lost or destroyed by setting aside the Default. The Court has already ruled on summary judgment and held multiple pretrial conferences.  Proceeding to trial on the merits would not require the Plaintiff to duplicate efforts already undertaken.

Moreover, any prejudice to the Plaintiff can be mitigated through appropriate conditions on vacating the default, such as requiring Defendant to pay the costs incurred by the Plaintiff due to the delay of trial (which the Court has already ordered as a sanction). Dk. 341. This Court has already imposed sanctions on Defendant, including reopening discovery for the Plaintiff to investigate Mr. Byrne's financial condition and ordering Mr. Byrne to pay the Plaintiff's costs related to the delayed

1  trial. Dk. 307; 341.[1] These sanctions sufficiently address any unfair prejudice to

2  Plaintiff without the severe consequence of default judgment.

3  **E.  Public Policy Favors Resolution on the Merits**

4      There is a strong public policy favoring resolution of cases on their merits

5  rather than through default. *Gregorian v. Izvestia*, 871 F.2d 1515, 1523 (9th Cir.

6  1989). This is particularly true in cases involving significant damages and important

7  constitutional issues such as free speech – especially where the defendant has

8  actively and vigorously defended the case.  As the Court noted in its August 5, 2025,

9  Order, "default judgments are generally disfavored, and whenever it is reasonably

10 possible, cases should be decided upon their merits." Dk. 311, Pg.ID 7732.

11     Here, Defendant has not abandoned the litigation. He was cut off from service

12 of the underlying litigation taking place on the docket. Defendant was left in the dark

13 regarding the status of the docket in this Case due to the removal of Defendant's

14 attorneys from ECF notice, Mr. Murphy's failure to provide Defendant's contact

15 information to Plaintiff's counsel and the Court, and Defendant's good faith but

16 mistaken belief Mr. Roots would be receiving service of ECF filings upon giving

17 notice to the Court he was Defendant's attorney related to the Appeal. Decl. of

18 Byrne, at pp. 2–4, 7–14.

19     Upon realizing the status of the entry of default from Mr. Tyler, Defendant

20 immediately tried to defend his case by retaining Mr. Tyler to argue the Default

21 Hearing and potentially represent him at trial. Decl. of Byrne, at pp. 4–5, ¶ 19; Decl.

22 of Tyler at p. 2, ¶ 6. Defendant was prepared to defend his case *pro se* at the January

23 Trial and intended to ask the Court to issue an order permitting him to do so if the

24

25

---

26 [1] While Defendant has not yet paid the sanctions, Plaintiff's counsel initiated Meet and Confer
efforts regarding payment on January 28, 2026, in response to Defendant's request for all prior
27 pleadings and discovery in this Case. Decl. of Greenman, at pp. 2–3, ¶¶ 11–13. Defendant's counsel
responded noting they were still reviewing the docket, pleadings, and evidence underlying the
28 sanctions. *Id.*

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT**
**2:23-CV-09430-SVW-PD**

January Trial were not continued. The Court, however, denied Mr. Tyler's Notice of Limited Appearance and denied him the opportunity to speak, preventing Defendant from being able to defend his case and preventing Defendant from presenting the facts and issues discussed herein to the Court during the Default Hearing.

On these facts, public policy strongly favors deciding this Case on its merits, and the Entry of Default and Minute Order Granting Plaintiff's Motion for Default should be overturned and a new trial date set.

### III. CONCLUSION

Default judgments are generally disfavored, and this is especially true where Defendant has consistently and adamantly defended the matter. Here, Mr. Byrne has vigorously defended his free speech rights. Default only came about after a cascade of events resulted in him not receiving service of filings. Moreover, Mr. Byrne's did not engage in culpable conduct that led to the entry of default, he has meritorious defenses to the claims against him, and Plaintiff will not be prejudiced if this case is to go to trial. Therefore, Mr. Byrne should be allowed to present those defenses at trial in front of a jury.

Consequently, Mr. Byrne moves to set aside the Clerk's Entry of Default on October 8, 2025, Docket Entry, 344, and January 12, 2026, Minute Order Granting Plaintiff's Motion for Default Judgment Docket Entry 354, and set this case for jury trial to proceed on the merits.

DATED:  March 3, 2026          TYLER LAW, LLP


                              By:  /s/ Robert Tyler_____
                                   Robert Tyler

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT**
**2:23-CV-09430-SVW-PD**

1

## CERTIFICATE OF COMPLIANCE

2

The undersigned, counsel of record for Defendant Patrick M. Bryne, certifies

3   that this brief contains 6,989 words, which complies with the word limit of L.R. 11-

4   6.1.

5

6                                                      /s/ Robert H. Tyler
                                                       Robert H. Tyler

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT**
**2:23-CV-09430-SVW-PD**

**CERTIFICATE OF SERVICE**

I am employed in the county of Riverside, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 25026 Las Brisas Road, Murrieta, California 92562

On March 3, 2026, I caused to be served the foregoing documents described below on the following interested parties in this action:

**DEFENDANT'S MOTION FOR RECONSIDERATION OF COUNSEL ON JANUARY 12, 2026, HEARING ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT, REQUEST TO VACATE JANUARY 16, MINUTE ORDER, AND SET THIS CASE FOR JURY TRIAL TO PROCEED ON MERITS**

☒   Via **ELECTRONIC CASE FILING**, by which listed counsel will automatically receive e-mail notices with links to true and correct copies of said documents:

- **Bryan M. Sullivan**
  bsullivan@earlysullivan.com
- **Richard A. Harpootlian**
  rah@harpootlianlaw.com
- **Zachary Hansen**
  zhansen@earlysullivan.com
- **Carmen Rosa Selame**
  carmen@murphlaw.net

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am an employee in the office of a member of the bar of this Court who directed this service

/s/ Robert H. Tyler
Robert H. Tyler

**MOTION TO SET ASIDE ENTRY OF DEFAULT AND THE MINUTE ORDER RE DEFAULT JUDGMENT
2:23-CV-09430-SVW-PD**