# EXHIBIT B

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              WESTERN DIVISION

4                 - - -

5   HONORABLE STEPHEN V. WILSON, DISTRICT JUDGE PRESIDING

6

7   ROBERT HUNTER BIDEN,              )
                                      )
8          Plaintiffs,               )
                                      )
9                                     )
                                      )
10      vs.                           ) NO. CV 23-09430-SVW
                                      )
11                                    )
                                      )
12   PATRICK M. BYRNE,                )
                                      )
13          Defendant.               )
    _____)

14

15

      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS
16                      (CONTINUED)

17          *ORDER TO SHOW CAUSE [307]*

18              LOS ANGELES, CALIFORNIA

19          WEDNESDAY, JULY 30, 2025

20  _____

               MARIA R. BUSTILLOS
21           OFFICIAL COURT REPORTER
                 C.S.R. 12254
22           UNITED STATES COURTHOUSE
               350 WEST 1ST STREET
23                 SUITE 4455
          LOS ANGELES, CALIFORNIA 90012
24              (213) 894-2739
               MADAMREPORTER.COM
25

1                    A P P E A R A N C E S

2

3

4        ON BEHALF OF THE PLAINTIFFS,
         ROBERT HUNTER BIDEN:              EARLY SULLIVAN WRIGHT GIZER
5                                          and McRAE, LLP
                                           BY:  BRYAN M. SULLIVAN, ESQ.
6                                          6420 WILSHIRE BOULEVARD
                                           SEVENTEENTH FLOOR
7                                          LOS ANGELES, CA 90048
                                           (323)301-4660
8

9                                          EARLY SULLIVAN WRIGHT GIZER
                                           and McRAE, LLP
10                                         BY:  ZACHARY HANSEN, ESQ.
                                           6420 WILSHIRE BOULEVARD
11                                         SEVENTEENTH FLOOR
                                           LOS ANGELES, CA 90048
12                                         (323)301-4660

13
                                           RICHARD A. HARPOOTLIAN, P.A.
14                                         BY:  RICHARD A. HARPOOTLIAN
                                           1410 LAUREL STREET
15                                         COLUMBIA, SC 29201
                                           (803)252-4848
16

17                                         RICHARD A. HARPOOTLIAN, P.A.
                                           BY:  PHILLIP D. BARBER
18                                         (803)252-4848

19

20

21

22

23

24

25

1          **A P P E A R A N C E S (CONT'D)**

2

3

4    **ON BEHALF OF THE DEFENDANT,**
   **PATRICK M. BYRNE:**         LAW OFFICES OF TOM YU, APC

5                        BY:  TOM YU, ESQ.
                       10803 FOOTHILL BOULEVARD
                       SUITE 112

6                        RANCHO CUCAMONGA, CA 91730
                       (844)998-1033

7

8

9  ALSO APPEARING:  DANIEL REYES, TRIAL CONSULTANT
                  MARTA KISS, TRIAL CONSULTANT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# I N D E X

PAGE

JURY TRIAL DAY ONE (CONTINUED)......        6
ORDER TO SHOW CAUSE [307]

PLAINTIFF'S WITNESSES:    DIRECT   CROSS   REDIRECT   RECROSS

(None)

- - -



**E X H I B I T S**

PLAINTIFF'S                           RECEIVED      MARKED

(None)

- - -

1          LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 30, 2024

2                              -o0o-

3                    (COURT IN SESSION AT 9:10 A.M.)

4          THE COURTROOM DEPUTY:  Calling item number one,

5     CV 23-09430-SVW-PD: *Robert Hunter Biden v. Patrick M.*

6     *Byrne.*

7          Counsel, please stand and state your

8     appearances, please.

9          MR. SULLIVAN:  Brian Sullivan on behalf of

10     plaintiff.

11          MR. HANSEN:  Zachary Hansen on behalf of

12     plaintiff.

13          MR. BARBER:  Phillip Barber on behalf of

14     plaintiff.

15          MR. HARPOOTLIAN:  Richard Harpootlian on behalf

16     of plaintiff.

17          MR. YU:  Good morning, Your Honor.  Tom Yu on

18     behalf of defendant.

19          THE COURT:  Okay.  This is the time for trial.

20     And given my rulings yesterday, there was no appearance

21     by the defendant.  In fact, defendant has never appeared

22     in this case and up till today has never -- well, he

23     filed one declaration with the deposition, but he has

24     filed a -- a declaration.

25          I made rulings yesterday.  The principle one

1    being that I did not admit Ms. Lambert in her

2    application for pro hac vice.  She has made a motion to

3    reconsider that.  I'm denying the motion for

4    reconsideration.

5         And as things stand now, as they did yesterday,

6    there is no lawyer of record for the plaintiff -- for

7    the defendant because Mr. Yu and -- said that

8    essentially he was hired last Friday in the capacity of

9    assisting Ms. Lambert and he was dismissed from the case

10   or dismissed himself.  I think Neff was in the same

11   position.  Murphy, who has been the lawyer for the

12   entire litigation, was fired Monday morning -- this past

13   Monday morning.  Today is Wednesday.

14        Ticktin was the lawyer that the Court

15   reluctantly admitted to practice pro hac vice.  He also

16   was of serious concern to the Court for character

17   reasons, but Court allowed him do be a lawyer in the

18   case.  So technically, he's a lawyer of record, but he

19   isn't here.  And this is the second day that we were

20   supposed to be in trial.

21        We had 60 jurors waiting yesterday, and I have

22   called the same 60 jurors back today.  And I issued an

23   order yesterday why the case should not be -- the

24   basis of -- why the record should not be the basis of a

25   default judgment for the plaintiff.  And I'll hear some

```
1    argument on that question.
2           Even though, Mr. Yu, you're not a lawyer of
3    record, for these purposes, I will hear from you.  So
4    take lectern.
5           MR. YU:  Thank you, Your Honor.  Thank you,
6    Your Honor.  The Court received the declaration of
7    Patrick Byrne?
8           THE COURT:  Yes, sir.  I mean, I received it,
9    and I mean, on its face, it is inherently contradictory.
10   I mean, on the one hand, it said that I can't probe this
11   because of obvious privilege questions.  But just what
12   he said, that he dismissed Murphy for several reasons,
13   which are, in his declaration, essentially incompetence
14   and then in the same breath, he says he just realized
15   all these things because Ms. Lambert came out here, I
16   guess, a few days ago or a week ago and noticed these
17   things or she was at pretrial conference -- second
18   pretrial conference.
19          And that is facially contradicted by her
20   position that she's been his lawyer -- his go-to lawyer
21   historically, that she has been following this case
22   closely.  She's been interfacing with Mr. Murphy.  And
23   what he says, as a surprise, is not credible.
24          But beyond that, let me hear what you're
25   saying.
```

1          MR. YU:  Yes, Your Honor.  I want to just pivot

2    very briefly and point the Court to paragraph 4 of the

3    declaration in where -- I will summarize that Mr. Byrne

4    was relying on Mr. Murphy's representation, that he did

5    not need to appear for trial, and that the plaintiff, in

6    Mr. Byrne not showing up, would not be prejudiced.

7          For the purposes of the Rule 55 --

8          THE COURT:  Well, I mean, let's take it one

9    step at a time.

10         MR. YU:  Yes, Your Honor.

11         THE COURT:  I mean, that wasn't incorrect.  A

12    party doesn't have to appear.  There is no requirement

13    that Byrne appear.  And I mean, I don't know if this was

14    the strategy, but the -- the -- there was an explanation

15    for his not appearing in that he was supposed to be the

16    link for the plaintiffs to establish punitive damages.

17    And if he's not here and he wasn't asked questions

18    regarding punitive damages in his deposition, then a

19    reasonable Defense lawyer would think that would

20    handicap the plaintiff, if they didn't have other

21    probative evidence.  And they didn't appear to at time.

22         So -- but I never -- in terms of his appearing

23    today, now, Murphy can't be accountable for that because

24    he was fired.  And someone, either you or whoever was

25    fired, could have said to him, "Show up."  I mean, the

```
 1    last we heard, even though he's in Ghana and Dubai on
 2    other times, a week or two ago, he was in the East
 3    Coast.  So he's not here to tell me anything.  He has
 4    his declaration.  And I'm hearing this now from a lawyer
 5    I shouldn't even listen to because you're not his
 6    lawyer.  But I am going to listen to you.  So go ahead.
 7              MR. YU:  Thank you, Your Honor.  And I really
 8    appreciate the Court's indulgence on this issue.  The --
 9    under the excusable neglect prong, as far as Mr. Byrne's
10    absence, I think a reliance of counsel's advice not to
11    appear --
12              THE COURT:  Who told him not to appear?
13              MR. YU:  My understanding is Mr. Murphy told
14    him --
15              THE COURT:  Well, he told him he didn't have to
16    appear for the reason that I just gave.  That was when
17    Murphy was the lawyer, and -- and I mean, it was obvious
18    that that was a strategy.  And there was nothing wrong
19    with the strategy.  Actually, it -- it was perhaps a
20    wise strategy.  Because on the defamation part of the
21    case, the plaintiff limited themselves to $1 nominal
22    damages.
23              MR. YU:  Sure.
24              THE COURT:  So the big prize here was punitive
25    damages.  And -- and Murphy took the position that this
```

```
 1   was the best strategy.  So I see -- I mean, I'm reading
 2   into it, but it seems pretty obvious.  That seems like
 3   it was.  I mean, there is no -- nothing in the record
 4   that says Murphy told him not to be here today.
 5           Murphy -- how could Murphy do that?  Murphy was
 6   given a -- so Murphy said, not even a phone call -- some
 7   kind of fax or something or e-mail Monday morning that
 8   he's terminated.  So -- so as far as Murphy's concerned,
 9   he had no obligation to interface with the client beyond
10   that.  Plus, he knew that the client had chosen a host
11   of new lawyers.
12           MR. YU:  Yes, Your Honor.  I am -- and I
13   apologize if I --
14           THE COURT:  Who -- who retained you?  Was it
15   Byrne, or was it someone else?
16           MR. YU:  Yes, Your Honor.
17           THE COURT:  So you spoke to Byrne?
18           MR. YU:  I -- I don't want to break -- I --
19           THE COURT:  Well, I mean, where is the
20   privilege?  I'm just asking you who retained you?
21           MR. YU:  Through Ms. Lambert, I was retained by
22   Mr. Byrne.
23           THE COURT:  So he never -- so you never spoke
24   to Mr. Byrne?
25           MR. YU:  Correct.
```

UNITED STATES DISTRICT COURT

```
 1                THE COURT:  All right.
 2                MR. YU:  But the issue before the Court is the
 3      absence of a defendant.  I'm not here to analyze or
 4      evaluate the trial strategies by Mr. Michael Byrne.
 5                THE COURT:  All right.  Well, let's get to -- I
 6      mean, it is a multi-factor test.
 7                MR. YU:  Yes, yes.
 8                THE COURT:  And you don't have to emphasize the
 9      importance of the factor regarding that trial should be
10      decided on the merits.  That's -- you know, a very
11      important factor in the analysis.  And if I grant the
12      default, a trial would not be determined on the merits.
13      But there are other factors.  Go through them one by
14      one.  Do you have the factors before you?
15                MR. YU:  I do have the factors.
16                THE COURT:  Well, go through them.
17                MR. YU:  Well, I want to -- I want to emphasize
18      a particularity of the reliance on counsel.  And I think
19      that is where we -- I say we have a difference --
20                THE COURT:  Reliance on counsel in what regard?
21                MR. YU:  Well, because -- well, reliance --
22                THE COURT:  Counsel, you mean Mr. Murphy?
23                MR. YU:  Yes.  Of -- not --
24                THE COURT:  Hold on.  Tell me how that shapes
25      this analysis.
```

1          MR. YU:  It shapes this analysis for the

2     following reasons, Your Honor:  Number one, if, yes,

3     Mr. Murphy was Mr. Byrne's counsel up until Monday

4     morning, the reliance of not showing up, I believe,

5     should not be used against Mr. Byrne just because he

6     fired Mr. Murphy.  That trial strategy and the trial

7     appearance was formulated way before the decision not to

8     appear.

9          And when the Court -- obviously saying, "Well,

10    you're not his counsel today.  Why are you here?  Why

11    you're not here?"  The Defense team, through Mr. Murphy

12    and Mr. Byrne, made that strategy.  That was a

13    commitment and a trial strategy that was formulated

14    before the termination of that attorney-client

15    relationship.

16         And so in reliance on that, I think we, as the

17    Defense, just speaking on this issue alone of the

18    nonappearance, which is the essence of the default -- I

19    think we just want to make sure the record is crystal

20    clear that I believe, on behalf of Mr. Byrne,

21    representing to the Court, that Mr. Byrne will be

22    prejudiced now because he has relied on his former

23    counsel's advice not to appear at trial.

24         THE COURT:  All right.

25         MR. YU:  And specifically, the -- the reasons I

 1    think the Court, I'm sure, has reviewed prior to issuing

 2    the denial of reconsideration are some of grave concerns

 3    that was brought to Ms. Lambert's attention recently

 4    concerning --

 5         THE COURT:  That -- that seems so unbelievable

 6    because she says she's been following the case closely.

 7    She's been interfacing with Murphy.  She's his go-to

 8    lawyer and has been.  And in other words, she made it

 9    appear from her remarks yesterday that he trusts her.

10         And there's -- the decision that we're talking

11    about -- in other words, he was going to appear, then

12    not.  And probably, that was based upon what happened at

13    the pretrial conference, based upon the Court's ruling

14    about all the newspaper articles and -- that are nonuse.

15    How is it that she wasn't a part of that decision?  I

16    mean, I'm not speculating.  I'm just looking at what I

17    know.

18         MR. YU:  Your Honor, for -- the main reason is:

19    It wasn't until the 28th of July, on Monday, that

20    Ms. Lambert discovered the contradicting inconsistencies

21    from Mr. Murphy's representation.  And so here we are.

22         THE COURT:  What -- what representation?

23         MR. YU:  Well, first, Ms. Lambert discovered

24    that Mr. Murphy did not have the video depositions that

25    Mr. Murphy had promised Mr. -- Mr. Byrne that was going

1    to be produced.  There were -- and there were also an

2    e-mail that we -- Ms. Lambert did not find out until

3    yesterday that Mr. Murphy never ordered the depositions

4    in order to save Mr. Byrne money.  Those factors wasn't

5    discovered until a day ago.

6           THE COURT:  I mean, but all the depositions are

7    here.  I mean, is there some -- are the depositions not

8    here?

9           MR. YU:  The video deposition, my

10   understanding, Your Honor, is that it was not ordered

11   from their text -- the court reporter company.  You

12   actually have to order it.

13          THE COURT:  All right.  Let's get beyond that

14   and get to -- in my view, the defendant had no

15   reasonable belief that Ms. Lambert would be his lawyer

16   because it was a motion made at the eleventh hour.  As

17   the record shows, she committed gross ethical violations

18   before a Court in Colorado and was sanctioned $50,000.

19   I think she's either under investigation or under

20   charges in a criminal case.  She was denied pro hac vice

21   formally in Florida.  She was denied, as of a month ago,

22   a pro hac vice in that case in Colorado.

23          And it would be unreasonable to think that she

24   would blithely appear the day before trial, make her

25   application before the day before trial, and be his

1　lawyer.  That, to me, isn't a reasonable -- that isn't

2　what a reasonable person would do.  And I take that in

3　the context of someone like Byrne who is familiar with

4　litigation, who is an educated man.  And I mean, that's

5　just -- that's not a finding.  That's just my

6　impression.  So -- so go ahead.

7　　　　　MR. YU:  Your Honor, I just want to make sure

8　the Court understands.  I did not know anything about

9　the things that the Court just indicated; however, what

10　I do know undisputed is that Ms. Lambert is an active

11　member of the Michigan State Bar.

12　　　　　THE COURT:  I know that.  Let's not reargue the

13　case.  The fact that she's a member of -- of the bar, in

14　good standing of another state's bar is -- is a factor.

15　But it's also -- a -- a -- one factor.  And if the Court

16　that she's applying to has serious concerns about her

17　ethical conduct and her ability to try the case

18　ethically, then the Court can deny her application.  And

19　other courts have in other instances.  It's not

20　surprising.  So I'm not accusing you of lying.  You

21　don't have to defend yourself.

22　　　　　MR YU:  I just -- I'll say one thing, and I'll

23　move on to the five factors, Your Honor.

24　　　　　THE COURT:  Yes.

25　　　　　MR. YU:  I think in the -- in the context of

UNITED STATES DISTRICT COURT

1   the pro hac vice denial, investigations doesn't mean --

2   I mean, anybody can be investigated.  And so I'll

3   move --

4           THE COURT:  Don't argue that.  Move on.  I'm

5   listening to you.  I don't have to.

6           MR. YU:  Yes, Your Honor.

7           THE COURT:  So make your remarks permanent.

8           MR. YU:  I will, Your Honor.  The factors under

9   the default, I want to focus on the fifth factor because

10  I think --

11          THE COURT:  Go through them all.

12          MR. YU:  Very well, Your Honor.  On the public

13  interest, I think every case has its own set of public

14  interest for expeditious litigation.  Every case has

15  that.  This is a very unique case, as the Court made

16  some remarks yesterday about the context and the

17  circumstances surrounding --

18          THE COURT:  It is only unique because the

19  defendant has made it unique.  There is nothing unique

20  about the case.  Defamation cases are common-law cases.

21  They have been tried in courts hundreds of years.  There

22  is nothing unique about a defamation case.  The case is

23  unique because of all the manipulations that the Court

24  has to -- has had to endure.

25          So, yes, in the first factor, there is an

```
 1   interest in the expeditious culmination of trials.  The
 2   case has been continued a number of times.  There have
 3   been four pretrial conferences.  The original trial was
 4   set, I think, at a trial setting conference in March of
 5   2024, which is 15 or 16 months ago.  There were some
 6   delays, and I acknowledge some of those delays.  We're
 7   not unreasonable in that the effort to gain access to
 8   FBI Agent Smith was necessitated by the Justice
 9   Department wanting to grant permission to, but...
10            Okay.  That's factor one.  Go to factor two.
11            MR. YU:  And just on that issue, before I move
12   on, Your Honor, is that, you know, we've -- in relying
13   on this case going forward, we've also subpoenaed one of
14   our other witnesses who is prepared to testify.  On that
15   second prong --
16            THE COURT:  What other witness is that?
17            MR. YU:  We had Mr. Moynihan subpoenaed, and
18   he's --
19            THE COURT:  Oh, that's right.
20            MR. YU:  Right.  And so on the second prong of
21   the Court's need to match the docket, there is -- I'm
22   not going to dispute that, Your Honor.  That speaks for
23   it itself.  The Court has a busy docket.  The prejudice
24   prong, I think --
25            THE COURT:  Well, I do have a busy docket,
```

1    and -- and the -- the Court allowed a substantial time

2    for this case to the exclusion of other cases and did

3    that with other trial settings.  So that factor has been

4    met.  But move on to the next factor.

5         MR YU:  Thank you, Your Honor.  And the

6    prejudice factor, that prong, I think it's the -- I

7    think the hardest for my colleagues under this other

8    side to satisfy because we're essentially asking this

9    case to be put over for a 60-day pretrial hearing so

10   Mr. Ticktin can get his trials that he's engaged in and

11   complete the case on the merit.

12        I think seeking a $1 nominal damages, plaintiff

13   will be very challenged to make a prejudice showing that

14   how he is seeking the $1 damage will be prejudiced by a

15   60-day delay for this case.

16        The --

17        THE COURT:  The plaintiff is seeking more than

18   $1.  The plaintiff is going to be seeking punitive

19   damages.

20        MR. YU:  And without kind of diverting too much

21   on that issue, I think there will be a huge hurdle for

22   them to overcome on the issue of directed verdict.  And

23   also, there is no financial net worth discovery

24   propounded, no evidence of such.  And I think the trial

25   brief and the California cases control that issue.  And

1    I believe the Court has addressed that in his pretrial

2    orders in some of remarks the Court has made.

3            THE COURT:  All right.

4            MR. YU:  And so I think that prong heavily

5    favors our side, which -- which kind of transitions to

6    the next prong, which is the public policy in -- in

7    really trying this case on the merit.  And so I think

8    they kind of go hand in hand in the bid.  In this case,

9    there's -- this case has been in this Court's docket for

10   a long time.  There is various issues.  I know it is not

11   a very uncommon case to the Court, but there are very

12   specific issues that I think should favor resolving it

13   by a jury on its merit.

14           And really, the last drastic sanction -- I'm

15   going into the fifth prong -- is that the less drastic

16   sanction should be granting Mr. Byrne a one-time final

17   continuance to put this case on a 60-day continuance for

18   a pretrial conference sometime in October.  I did speak

19   last night, Your Honor, with Mr. Ticktin to inform him

20   of the proceeding that happened yesterday.  And I was

21   told that he is free in October to try this case.

22           THE COURT:  All right.

23           MR. YU:  Thank you, Your Honor.

24           THE COURT:  All right.  Thank you.

25           Does the plaintiff want to be heard?

1          MR. BARBER:  Yes, Your Honor.  May it please

2     the Court before I begin, I would just like to maybe

3     correct the record.  It was actually Tuesday morning

4     that Mr. Murphy was fired.  He was here for pretrial

5     conference.

6          THE COURT:  That's right, the morning of trial.

7          MR. BARBER:  The issue here is defendant firing

8     his counsel -- all of his counsel on the first day of

9     trial.  I believe that is the issue.  He made his

10    decision to not appear at trial.  That was his decision.

11    The first day of trial, he fired all of his lawyers.  He

12    has no lawyers here.

13         The declaration that he filed this morning

14    while we've been in court specifically says that Mr. Yu

15    is not authorized to represent him.  That is a sworn

16    statement, that Mr. Yu cannot represent him.  He has no

17    lawyers present.  So he has left the Court with no

18    options except a continuance or default because if we

19    proceed, the table will be empty.  He's -- he has stated

20    that no one is authorized to represent him.  So that's

21    the question --

22         THE COURT:  And the lawyer who is a lawyer of

23    record has not weighed in on this matter.

24         MR. BARBER:  Your Honor, our two points on

25    that:  First, you know Mr. Ticktin is here pro hac, and

 1    there are no retained local lawyers.

 2            THE COURT:  Well, I mean, that -- that could be

 3    remedied because, I mean -- but on the other hand,

 4    Mr. Ticktin, as we speak now, I've granted his motion.

 5    So he's a lawyer of record.  And the one lawyer of

 6    record has not addressed this issue.

 7            MR. BARBER:  Correct, Your Honor.  The one

 8    lawyer of record has not appeared in this courtroom.  He

 9    did not appear for trial even though he made a motion to

10    be admitted to do exactly that.  We just heard that he

11    is occupied with other trials and asking for a

12    continuance so he could finish those because he's

13    engaged with those -- were the exact words used -- and

14    come here.

15            Your Honor -- and this goes to the prejudice

16    prong.  Plaintiff's counsel are engaged in this trial

17    today.  We're here today ready for this trial and to

18    show up to trial and be told that someone who only

19    appeared the day before or the week before has decided

20    to not appear and so we need to come back in 60 days

21    is -- would be highly prejudicial to plaintiff.

22            THE COURT:  Well, I mean, in going through the

23    factors that the Court has to consider, I mean, some of

24    them are not necessary to review again.  I mean,

25    shortly, the Court has an interest in expeditiously

1    moving cases, and that is a factor.  And the Court has

2    been dislocated by all the shenanigans here.

3          The preference is clear that trial should be

4    decided on the merits.  So I mean, that's not

5    controversial.  So the -- maybe the best thing to do

6    would be to deal with the other three factors.

7          MR. BARBER:  Yes, Your Honor, and of course, we

8    filed a brief that went through all the factors.  You

9    know, I just mentioned the -- the public interest and

10   the management of the docket.  I spoke to prejudice.  I

11   would say the prejudice to plaintiff is preparing for

12   trial, being here for trial, and then the trial not

13   happening because defendant chose not to show up.  It's

14   not a matter of a delay of 60 days in receiving final

15   relief.  That is not the prejudice the cases speak to on

16   the prong.

17         THE COURT:  Say that again.

18         MR. BARBER:  The prejudice to plaintiff is that

19   we are here.  We prepared to present our case.  We

20   cannot present our case because defendant chose not to

21   appear personally or through counsel.  And the cases

22   speak to that.  That is the prejudice under that prong.

23   It is not that we have to wait the length of a

24   continuance to actually receive final relief on the

25   claim; it is that we prepared to be here.  We have a

```
 1    case.  We have everything prepared to go, and we can't
 2    go because defendant simply chose not to show up.  That
 3    is highly prejudicial.
 4          THE COURT:  What about the argument that the --
 5    I mean, defendant not showing up, meaning the defendant
 6    has no lawyer and has not appeared himself to represent
 7    himself as he could?
 8          MR. BARBER:  That's correct, Your Honor.  He
 9    made a decision to not be here.  I would note that he
10    has publicly posted last Friday he was in Washington
11    D.C.  So he's on the East Coast at the moment.  So he
12    could easily have come here even -- even after the
13    events of yesterday, he could still have been here
14    today, if he chose to be here.
15          THE COURT:  Well, he did file a declaration.
16          MR. BARBER:  Yes.
17          THE COURT:  So...
18          MR. BARBER:  And again, that declaration --
19    he -- he has no lawyers here.  He could have lawyers
20    here.  Mr. Ticktin, when he appear- -- filed his motion
21    last Friday of last week to appear pro hac, obviously
22    was aware of the commitments -- the trial commitments
23    that were just mentioned to you today.  And he
24    nonetheless appeared knowing he could not be here when
25    he filed that motion to be admitted.
```

```
 1              THE COURT:  Well, I mean, what you say appears
 2      to be so.  But what is the -- the fallout from you, in
 3      your view?
 4              MR. BARBER:  Well, Your Honor --
 5              THE COURT:  How should I view that?  That
 6      Ticktin was just toying with the Court or what?
 7              MR. BARBER:  Well, I --
 8              THE COURT:  I mean, apparently, he made a
 9      motion that -- that had no reality because he has to
10      appear in a case that he knew he wouldn't appear in?
11              MR. BARBER:  That is correct, Your Honor.  I
12      believe it's been clear.  I don't think it's been
13      controverted or is admitted, in other words, that the
14      intent was that Ms. Lambert would be lead counsel.  The
15      intent was that she would try this case.  That was his
16      expectation when he fired -- when Mr. Ticktin, who is
17      her personal lawyer in a criminal matters in Michigan,
18      and he fired all of his lawyers.  As Your Honor is
19      already --
20              THE COURT:  Say that last part again, something
21      about Michigan.
22              MR. BARBER:  Mr. Ticktin represents Ms. Lambert
23      as the criminal defense lawyer in the felony charges
24      that are pending against her in Michigan.
25              THE COURT:  Mr. who?
```

```
 1              MR. BARBER:  Mr. Ticktin, the man who
 2    appear- --
 3              THE COURT:  Oh, I see.
 4              MR. BARBER:  Yes.  So my point is that there is
 5    an association and that the expectation was that
 6    Ms. Lambert would be lead counsel.
 7              THE COURT:  When is that case going to trial?
 8              MR. BARBER:  That is not known.  The trial date
 9    has been put off twice.  Most recently, I think it was
10    going to be called in July, but they've gotten
11    continuances, and a third trial date has not been set.
12              THE COURT:  What is the charge in that case?
13              MR. BARBER:  There are charges of use -- felony
14    charges for use of a computer to commit a crime,
15    conspiracy to use a computer to commit a crime --
16    basically, breaking into a computer.  It relates to
17    election --
18              THE COURT:  It relates to -- it sounds like --
19    does it relate to the sanction?
20              MR. BARBER:  Yes, Your Honor.  It relates to
21    allegations regarding the 2020 election.  The criminal
22    allegations are that she obtained voter --
23              THE COURT:  That was the -- the -- the basis of
24    that case against Dominion; correct?
25              MR. HARPOOTLIAN:  Absolutely.  Dominion as a --
```

1   as a voter machine -- voter software company.  The

2   allegations -- the criminal allegations in Michigan are

3   that Ms. Lambert and another person obtained --

4   illegally obtained voter tabulation --

5           THE COURT:  I mean, whatever it is -- as I said

6   in my order, I -- I --

7           MR. BARBER:  Yes.

8           THE COURT:  There's a charge.  I have to

9   presume that she's innocent of the charge and that

10  wasn't the basis of my -- my decision.

11          MR. BARBER:  Yes, Your Honor.  And returning to

12  the factors, we're on third factor, prejudice, and we

13  cited a case in our brief, a recent case out of this

14  Court, you know, *Thompson v. Gomez*, which is a 2022

15  case.

16          THE COURT:  Is it this Court?  Do you mean me

17  or somebody else?

18          MR. BARBER:  I apologize.  It is not this

19  Court.  I -- that was a misstatement by mean.  It is the

20  Eastern District.  I apologize for that error.

21          But that recent case here in California found

22  the parties unquestionably -- that is a quote -- were

23  prejudiced by the opposing party's failure to appear at

24  trial because they, quote, "expended time and incurred

25  substantial cost in preparing their case, appeared in

1    person on the first day of trial and were ready to

2    proceed."  That's -- I mean, that is the case law.  That

3    is the prejudice.  When you don't show up to trial, you

4    prejudiced the people who relied upon you to show up to

5    have an adversarial proceeding.

6            THE COURT:  Well, I mean, like I said,

7    prejudice is a factor, and it is an important factor.

8    But it has to be considered not in isolation, but with

9    other factors.  So...

10           MR. BARBER:  Yes, Your Honor.

11           THE COURT:  So that's what courts have to do.

12           MR. BARBER:  And then proceeding, the fourth

13   factor of the case law says, "Always weighs against the

14   default, which is the presumption for the merits."  I

15   would suggest that in this case, that is a little --

16   weighs a little less because punitive damages prove up.

17   The only disputed element of defamation, actual malice,

18   would be litigated.  Evidence would be presented.  It

19   wouldn't be adversarial, so the factor does weigh

20   against a default but maybe a little bit less.

21           THE COURT:  You said something in your most

22   recent filing of maybe yesterday, that you were of the

23   view -- and you didn't cite authority -- that if default

24   was granted, that the Court would have to hold a -- a

25   jury trial on punitive damages?  Was that what you were

```
 1    trying to say?  I -- I couldn't quite grasp it.

 2            MR. BARBER:  We're requesting that, Your Honor.

 3    So under Rule 50, if a default were entered -- default

 4    judgment were entered, we would suggest that there would

 5    be a -- an evidentiary hearing on punitive damages under

 6    Rule 55 B with a jury present, which the rule requires

 7    maintaining the right to jury trial.

 8            THE COURT:  Well, I mean, the jury trial

 9    issue -- I mean, generally speaking, when a Court

10    considers a default, it looks at the -- at the pleadings

11    and -- and the prayer.  And it says:  Does the pleading,

12    consistent with what is asked for mesh?  Is it

13    reasonable?  You're saying here it's different?

14            MR. BARBER:  Yes, Your Honor, we can provide

15    supplemental briefing on this, if you would like.  But

16    the rule is:  If you have an unliquidated damages claim,

17    the finder of fact has to make a finding of evidence --

18            THE COURT:  Well, do you have those cases -- do

19    you have those cases now?

20            MR. BARBER:  I can have them very quickly,

21    Your Honor.  That's -- it's a -- but --

22            THE COURT:  I mean, I'd like to have all the

23    relevant information before me before I make a decision.

24            So can you e-mail those cases to my chambers,

25    Mr. Hansen?
```

1           MR. HANSEN:  Yes, Your Honor.

2           THE COURT:  Can you do it now, or do you have

3    to -- need some time.

4           MR. HANSEN:  I need just a little bit of time,

5    Your Honor.  I don't think it will take much time.

6           THE COURT:  I see.  Anything else you want to

7    add to your argument?

8           MR. BARBER:  Yes, Your Honor.  Of course, the

9    most important factor would be the fifth factor, which

10   is the less drastic sanctions because, again, the only

11   option really before the Court would be to enter a

12   default or a continuance since there would be no one

13   here.  I didn't quite understand defendant's argument.

14   A continuance is not a less drastic sanction.  It is the

15   relief they're asking for.

16          The available sanctions are either evidentiary

17   or monetary or, in this case, terminating.  An

18   evidentiary sanction doesn't really help if you're not

19   going to have a trial.  As we argued in our brief, I

20   don't think a monetary sanction would be helpful.  It

21   would probably result in prolonged litigation to come up

22   with an amount and try to collect it.  There's -- and we

23   cited a lot of cases when parties don't show up at

24   trial, it is -- it is a usual result of that decision,

25   is entry of judgment against them.

```
 1           THE COURT:  I mean, there are cases where there
 2   has been lengthy litigation and -- and a party doesn't
 3   show up, and default has been granted.  And of course,
 4   the easier cases are when someone just lays down and
 5   doesn't put up a fight.  Courts have granted default
 6   under both circumstances.
 7           What about the -- I said yesterday in order to
 8   show cause, Rule 37 -- and I mean, they're related but
 9   the inherent power of the Court.  In other words, the
10   inherent power of the Court is related to upholding the
11   dignity of -- of the process of the Court and not
12   letting the Court be a -- be a backboard for tomfoolery.
13           MR. BARBER:  Yes, Your Honor.  Plaintiff
14   believes that in this situation the inherent power of
15   the Court would be the appropriate source of authority
16   for a sanction.  The cases speak to Rule 37 sanctions
17   being more appropriate to violations of discovery
18   orders.  There's -- it's Black Letter Law that a
19   terminating sanction could be issued under an inherent
20   power of the Court.
21           It is cited in our brief, quote, "This is the
22   Ninth Circuit firmly established the Courts have
23   inherent power to dismiss an action or enter a default
24   judgment to ensure the oral administration of justice
25   integrity of their orders."  There's plenty of cases
```

1  including the U.S. Supreme Court that say that is within

2  the inherent power of the Court.  The only requirement

3  is that the Court, to exercise inherent power of

4  sanctions, needs to make a specific finding of bad faith

5  conduct.

6          I believe that we've outlined, you know, an

7  extensive list of issues.  But just in our brief -- but

8  just looking at what's happened here, you know, the

9  past, you know, few days, firing all the lawyers,

10  lawyers took the podium and said that they were prepared

11  to try the case.  Your Honor asked questions.  The first

12  question you asked:  What will you cross-examine the

13  plaintiff on?  The answer showed that there was no

14  knowledge of the Court's order in that regard.

15          Then you sent counsel back to look up a

16  specific citation that you had been assured existed.

17  Counsel came out, said that that citation did not exist

18  but said that they had been fired.  So we were back left

19  with no lawyers.  Now today, with no lawyer, there's an

20  asking for a continuance.  The basis for the continuance

21  is nothing more than a voluntary decision by the

22  defendant to fire his lawyers on the first day of trial.

23          There's no -- there's certainly -- I don't

24  understand that -- how that can be good cause under good

25  cause order.  We've cited a case -- cases in here that's

```
 1    actually come up before.  A decision to fire your lawyer
 2    is not cause for -- to avoid a default judgment.  If you
 3    fire your lawyers and don't have one when trail comes up
 4    and you knew when the trial was, that's your decision.
 5    Mr. Byrne, the defendant, there is no allegation that
 6    he's incompetent.  He made a decision to fire all of his
 7    lawyers on first day of trial.  That was his decision.
 8            And plaintiff asked that he be held to his
 9    decision.
10            THE COURT:  All right.  I think I have the
11    arguments.  I'm going to recess and think about the
12    arguments, and you're going to send me, Mr. Hansen, the
13    cases that you have.
14            MR. HANSEN:  Yes, Your Honor.
15            THE COURT:  Okay.
16            MR. HANSEN:  I don't believe it will take much
17    time.
18                    (Recess.)
19            THE COURT:  All right.  Thank you all for your
20    indulgence and waiting so long, but I had to think hard
21    and long about the issue.  I mean, there's no question
22    that the defendant has delayed the proceedings.  And
23    there's no question that I have to consider the factors
24    that relate to default.  And my -- my view is that given
25    the framework that I have, the sanction of default would
```

1    be too severe.

2          I say that because the defendant has been

3    defending the case for over a year and a half,

4    notwithstanding the episodes which I'm not going to

5    repeat about terminating lawyers and trying to insert a

6    lawyer who he had -- or should have had serious doubts

7    about whether she would be admitted.  He has indicated

8    a -- a desire to litigate the case and has litigated the

9    case.  And, of course, there is a most important factor

10   of a public policy that trials should be decided on the

11   merits.  And -- and the -- the conclusion the Court has

12   reached that for examining the evidence and the

13   applicable case law is that under these circumstances,

14   it would not be -- the Court would not be on firm ground

15   in granting default for improper conduct alone.

16          Having said that, I am going to give the

17   defendant an opportunity to try the case.  There was a

18   representation that October would be a date.  And if the

19   defendant has to be inconvenienced, it's of the

20   defendant's making.  And so I'm going to set a trial

21   date of October 14th.  And the lawyer that is selected

22   by defendant to represent him must be a lawyer admitted

23   to practice in this court, or if not, a lawyer who makes

24   a motion pro hac vice no later than August 15th.

25          I am going to make a further ruling about what

```
1    can occur on this intervening period.  In this
2    intervening period, I am going to allow the plaintiff to
3    take further discovery of -- of the -- of the defendant
4    regarding his financial condition.  That would include a
5    demand for documents and a deposition.  The plaintiff
6    should do that promptly.  And unlike -- and since this
7    case is before me now, all discovery matters will be
8    handled by me, not the magistrate.
9            And I mean, when it comes down to it, while
10   we've had a tremendous amount of briefing and -- and
11   rulings, like most cases, it -- it isn't that
12   complicated.  I mean, the defendant said that he had
13   this meeting with this Iranian undercover government
14   person and that this broad -- was arranged with some
15   Pakistani person, and I'm not going to get into the
16   details, but then he went on to say that he met his
17   handler, Moynihan.  And defendant represents himself as
18   some sort of unpaid and undocumented agent, undercover
19   or -- foreign agent or government agent.  And then that
20   he told these things to Moynihan.  Moynihan introduced
21   him to this FBI agent.  The plaintiff spoke about the
22   secret recording he made with the Iranian.  His claim,
23   in part, was that it supported the -- his version of
24   what the Iranian person told him.  At least my view of
25   the tapes, is it doesn't.  And -- but I'm not the
```

UNITED STATES DISTRICT COURT

1    factfinder.

2         And that -- then there are all contradictions

3    with Moynihan and the agent, which are not

4    insignificant.  And then -- then there's the question of

5    whether he acted with malice.  And that is whether under

6    the facts that anyone could think that he truly believed

7    what he said to Moynihan, or what his story is now and

8    whether it was the type of story that required more

9    investigation before publishing it.  He republished it.

10   That's one aspect of malice.

11        And then -- I mean, as we pointed out in the

12   pretrial:  Unless he testifies, all the reports,

13   newspaper article, and Ziegler report, et cetera, are

14   not relevant, unless he testifies and testifies that he

15   read these reports.  And they shaped some of his views

16   of the legitimacy of what the Iranian told him, if, in

17   fact, the Iranian told him those things.  And there

18   aren't many witnesses.  It's Smith, Moynihan -- I mean,

19   they're -- they've deposed.  So whoever comes into the

20   case knows what they have said.  Whether he testifies or

21   not is up to the new lawyer.  I'm confident about my

22   ruling that if he doesn't testify, all these articles

23   are not relevant.

24        And if he doesn't appear, he's more than a

25   hundred miles from the courthouse.  He can't use his

```
 1   deposition testimony.  And the only way he could use the
 2   deposition testimony would be if plaintiff designated
 3   parts of his deposition testimony.  And he could point
 4   to parts that they haven't designated that, in the
 5   Court's view, would make the parts the plaintiff has
 6   designated unfair or misleading.  He can't use parts of
 7   the deposition or otherwise to bolster his position.
 8         Punitive damages is -- is a different matter.
 9   There were some concerns about what type of financial
10   evidence the plaintiff would need to argue punitive
11   damages.  But given the delay caused by the defendant,
12   whatever deficiencies, the plaintiff has time to remedy
13   that.
14         And I'm firm about the trial date.  And I -- I
15   give fair notice, even though he's not represented by
16   anyone here.  I am directing Mr. Murphy to make sure
17   that he gets a copy of this proceeding, specifically my
18   remarks, and that if he doesn't comply with -- with
19   discovery, if it is -- if it is within the bounds of the
20   rules, I will reconsider sanctions, which at that point,
21   hopefully not, but may evolve to default.
22         So that's it.  It was something I had to
23   consider carefully.  I could have gone the other way,
24   but I think this is the better way.
25         All right.  That's it.
```

```
 1              THE COURTROOM DEPUTY:  All rise.  This Court is
 2    adjourned.
 3              THE COURT:  Oh, and the fact that I am allowing
 4    the plaintiff to take this additional discovery, does
 5    not open the door to the defendant to take any
 6    additional discovery.
 7              MR. HARPOOTLIAN:  Your Honor, could I ask one
 8    question?
 9              THE COURTROOM DEPUTY:  You all may be seated.
10              THE COURT:  There's something I didn't say that
11    I wanted to say:  When I admitted Ticktin, it was
12    provisional that he would just be at table as an adjunct
13    to Mr. Murphy to advise him.  In light of new
14    developments, I am not admitting Ticktin.  I am not
15    going to grant his motion pro hac vice.  And to the
16    extent I will -- I'll make that a clearer order.  So the
17    plaintiff, because of these delays, has got to get a new
18    lawyer.  And that's the last thing I have to say.
19              Did you have a question?
20              MR. HARPOOTLIAN:  Yes, sir, Your Honor, two
21    questions.  I want to make sure I understand.
22              So the only additional discovery you're
23    allowing is discovery on the defendant's financial
24    conditions?
25              THE COURT:  Yes.
```

```
 1              MR. HARPOOTLIAN:  So we're not going to have --
 2    okay.  You've answered that.
 3              Secondly, and I say this because we have been
 4    working very hard to get ready for this trial.  Three of
 5    us -- four of us have flown across the country here
 6    twice in the last two -- last week basically.  And --
 7              THE COURT:  I think I know where you're going.
 8    If you think that a further sanction is in order, make a
 9    motion --
10              MR. HARPOOTLIAN:  Yes, sir.  Yes, sir, and we
11    will be making a motion.
12              THE COURT:  -- and I'll consider it.
13              MR. HARPOOTLIAN:  Thank you, Your Honor.
14              THE COURTROOM DEPUTY:  All rise.  This court is
15    adjourned.
16                   (Whereupon, proceeding adjourned.)
17                              - - -
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5     ROBERT HUNTER BIDEN                    :

 6               vs.                          :   No. ^

 7     PATRICK M. BYRNE                       :

 8

 9

10     I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

11     UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

12     CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13     TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14     CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15     PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16     TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

17     OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18     FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

19     REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

20     REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

21

22     _____/S/_____        __07/30/2026__

23     MARIA R. BUSTILLOS                  DATE
       OFFICIAL REPORTER
24

25
```

41

## $

**$1** [1] - 19:18
**$50,000** [1] - 15:18

## /

**/S** [1] - 40:22

## 0

**07/30/2026** [1] - 40:22

## 1

**1** [3] - 10:21, 19:12, 19:14
**10803** [1] - 3:5
**112** [1] - 3:5
**12254** [1] - 1:21
**1410** [1] - 2:14
**14th** [1] - 34:21
**15** [1] - 18:5
**15th** [1] - 34:24
**16** [1] - 18:5
**1ST** [1] - 1:22

## 2

**2020** [1] - 26:21
**2022** [1] - 27:14
**2024** [2] - 6:1, 18:5
**2025** [1] - 1:19
**213** [1] - 1:24
**23-09430-SVW** [1] - 1:10
**23-09430-SVW-PD** [1] - 6:5
**28** [1] - 40:13
**28th** [1] - 14:19
**29201** [1] - 2:15

## 3

**30** [2] - 1:19, 6:1
**307** [2] - 1:17, 4:3
**323)301-4660** [2] - 2:7, 2:12
**350** [1] - 1:22
**37** [2] - 31:8, 31:16

## 4

**4** [1] - 9:2
**4455** [1] - 1:23

## 5

**50** [1] - 29:3
**55** [2] - 9:7, 29:6

## 6

**6** [1] - 4:3
**60** [4] - 7:21, 7:22, 22:20, 23:14
**60-day** [3] - 19:9, 19:15, 20:17
**6420** [2] - 2:6, 2:10

## 7

**753** [1] - 40:12

## 8

**803)252-4848** [2] - 2:15, 2:18
**844)998-1033** [1] - 3:6
**894-2739** [1] - 1:24

## 9

**90012** [1] - 1:23
**90048** [2] - 2:7, 2:11
**91730** [1] - 3:6
**9:10** [1] - 6:3

## A

**A.M** [1] - 6:3
**ability** [1] - 16:17
**ABOVE** [1] - 40:15
**ABOVE-ENTITLED** [1] - 40:15
**absence** [2] - 10:10, 12:3
**absolutely** [1] - 26:25
**access** [1] - 18:7
**accountable** [1] - 9:23
**accusing** [1] - 16:20
**acknowledge** [1] - 18:6
**acted** [1] - 36:5
**action** [1] - 31:23
**active** [1] - 16:10
**actual** [1] - 28:17
**add** [1] - 30:7
**additional** [3] - 38:4, 38:6, 38:22
**addressed** [2] - 20:1, 22:6
**adjourned** [3] - 38:2, 39:15, 39:16
**adjunct** [1] - 38:12
**administration** [1] - 31:24
**admit** [1] - 7:1
**admitted** [7] - 7:15, 22:10, 24:25, 25:13, 34:7, 34:22, 38:11
**admitting** [1] - 38:14
**adversarial** [1] - 28:5,

28:19
**advice** [2] - 10:10, 13:23
**advise** [1] - 38:13
**Agent** [1] - 18:8
**agent** [5] - 35:18, 35:19, 35:21, 36:3
**ago** [6] - 8:16, 10:2, 15:5, 15:21, 18:5
**ahead** [2] - 10:6, 16:6
**allegation** [1] - 33:5
**allegations** [4] - 26:21, 26:22, 27:2
**allow** [1] - 35:2
**allowed** [2] - 7:17, 19:1
**allowing** [2] - 38:3, 38:23
**alone** [2] - 13:17, 34:15
**ALSO** [1] - 3:9
**amount** [2] - 30:22, 35:10
**analysis** [3] - 12:11, 12:25, 13:1
**analyze** [1] - 12:3
**AND** [3] - 40:10, 40:13, 40:15
**AND/OR** [1] - 40:19
**ANGELES** [5] - 1:18, 1:23, 2:7, 2:11, 6:1
**answer** [1] - 32:13
**answered** [1] - 39:2
**ANY** [1] - 40:18
**APC** [1] - 3:4
**apologize** [3] - 11:13, 27:18, 27:20
**appear** [23] - 9:5, 9:12, 9:13, 9:21, 10:11, 10:12, 10:16, 13:8, 13:23, 14:9, 14:11, 15:24, 21:10, 22:9, 22:20, 23:21, 24:20, 24:21, 25:10, 26:2, 27:23, 36:24
**appearance** [2] - 6:20, 13:7
**appearances** [1] - 6:8
**appeared** [6] - 6:21, 22:8, 22:19, 24:6, 24:24, 27:25
**APPEARING** [1] - 3:9
**appearing** [2] - 9:15, 9:22
**applicable** [1] - 34:13
**application** [3] - 7:2, 15:25, 16:18
**applying** [1] - 16:16
**appreciate** [1] - 10:8
**appropriate** [2] - 31:15, 31:17
**ARE** [1] - 40:19
**argue** [2] - 17:4, 37:10
**argued** [1] - 30:19
**argument** [4] - 8:1,

24:4, 30:7, 30:13
**arguments** [2] - 33:11, 33:12
**arranged** [1] - 35:14
**article** [1] - 36:13
**articles** [2] - 14:14, 36:22
**aspect** [1] - 36:10
**assisting** [1] - 7:9
**association** [1] - 26:5
**assured** [1] - 32:16
**AT** [1] - 6:3
**attention** [1] - 14:3
**attorney** [1] - 13:14
**attorney-client** [1] - 13:14
**August** [1] - 34:24
**authority** [2] - 28:23, 31:15
**authorized** [2] - 21:15, 21:20
**available** [1] - 30:16
**avoid** [1] - 33:2
**aware** [1] - 24:22

## B

**backboard** [1] - 31:12
**bad** [1] - 32:4
**Bar** [1] - 16:11
**bar** [2] - 16:13, 16:14
**BARBER** [30] - 2:17, 6:13, 21:1, 21:7, 21:24, 22:7, 23:7, 23:18, 24:8, 24:16, 24:18, 25:4, 25:7, 25:11, 25:22, 26:1, 26:4, 26:8, 26:13, 26:20, 27:7, 27:11, 27:18, 28:10, 28:12, 29:2, 29:14, 29:20, 30:8, 31:13
**Barber** [1] - 6:13
**based** [2] - 14:12, 14:13
**basis** [5] - 7:24, 26:23, 27:10, 32:20
**begin** [1] - 21:2
**behalf** [5] - 6:9, 6:11, 6:13, 6:15, 6:18, 13:20
**BEHALF** [2] - 2:4, 3:3
**belief** [1] - 15:15
**believes** [1] - 31:14
**best** [2] - 11:1, 23:5
**better** [1] - 37:24
**beyond** [3] - 8:24, 11:9, 15:13
**bid** [1] - 20:8
**Biden** [1] - 6:5
**BIDEN** [3] - 1:7, 2:4, 40:5
**big** [1] - 10:24
**bit** [2] - 28:20, 30:4
**Black** [1] - 31:18

**blithely** [1] - 15:24
**bolster** [1] - 37:7
**BOULEVARD** [3] - 2:6, 2:10, 3:5
**bounds** [1] - 37:19
**break** [1] - 11:18
**breaking** [1] - 26:16
**breath** [1] - 8:14
**Brian** [1] - 6:9
**brief** [6] - 19:25, 23:8, 27:13, 30:19, 31:21, 32:7
**briefing** [2] - 29:15, 35:10
**briefly** [1] - 9:2
**broad** [1] - 35:14
**brought** [1] - 14:3
**BRYAN** [1] - 2:5
**BUSTILLOS** [3] - 1:20, 40:10, 40:23
**busy** [2] - 18:23, 18:25
**but..** [1] - 18:9
**BY** [5] - 2:5, 2:10, 2:14, 2:17, 3:4
**Byrne** [19] - 6:6, 8:7, 9:3, 9:6, 9:13, 11:15, 11:17, 11:22, 11:24, 12:4, 13:5, 13:12, 13:20, 13:21, 14:25, 15:4, 16:3, 20:16, 33:5
**BYRNE** [3] - 1:12, 3:4, 40:7
**Byrne's** [2] - 10:9, 13:3

## C

**C.S.R** [1] - 1:21
**CA** [3] - 2:7, 2:11, 3:6
**California** [2] - 19:25, 27:21
**CALIFORNIA** [5] - 1:2, 1:18, 1:23, 6:1, 40:12
**cannot** [2] - 21:16, 23:20
**capacity** [1] - 7:8
**carefully** [1] - 37:23
**case** [55] - 6:22, 7:9, 7:18, 7:23, 8:21, 10:21, 14:6, 15:20, 15:22, 16:13, 16:17, 17:13, 17:14, 17:15, 17:20, 17:22, 18:2, 18:13, 19:2, 19:9, 19:11, 19:15, 20:7, 20:8, 20:9, 20:11, 20:17, 20:21, 23:19, 23:20, 24:1, 25:10, 25:15, 26:7, 26:12, 26:24, 27:13, 27:15, 27:21, 27:25, 28:22, 28:13, 28:15, 30:17, 32:11, 32:25, 34:3,

34:8, 34:9, 34:13, 34:17, 35:7, 36:20
**cases** [18] - 17:20, 19:2; 19:25, 23:1, 23:15, 23:21, 29:18, 29:19, 29:24, 30:23, 31:1, 31:4, 31:16, 31:25, 32:25, 33:13, 35:11
**CAUSE** [2] - 1:17, 4:3
**caused** [1] - 37:11
**CENTRAL** [2] - 1:2, 40:11
**certainly** [1] - 32:23
**CERTIFY** [1] - 40:12
**cetera** [1] - 36:13
**challenged** [1] - 19:13
**chambers** [1] - 29:24
**character** [1] - 7:16
**charge** [3] - 26:12, 27:8, 27:9
**CHARGED** [1] - 40:18
**charges** [4] - 15:20, 25:23, 26:13, 26:14
**chose** [4] - 23:13, 23:20, 24:2, 24:14
**chosen** [1] - 11:10
**CIRCUIT** [1] - 40:18
**Circuit** [1] - 31:22
**circumstances** [3] - 17:17, 31:6, 34:13
**citation** [2] - 32:16, 32:17
**cite** [1] - 28:23
**cited** [4] - 27:13, 30:23, 31:21, 32:25
**claim** [3] - 23:25, 29:16, 35:22
**clear** [3] - 13:20, 23:3, 25:12
**clearer** [1] - 38:16
**client** [3] - 11:9, 11:10, 13:14
**closely** [2] - 8:22, 14:6
**Coast** [2] - 10:3, 24:11
**CODE** [1] - 40:13
**colleagues** [1] - 19:7
**collect** [1] - 30:22
**Colorado** [2] - 15:18, 15:22
**COLUMBIA** [1] - 2:15
**commit** [2] - 26:14, 26:15
**commitment** [1] - 13:13
**commitments** [2] - 24:22
**committed** [1] - 15:17
**common** [1] - 17:20
**common-law** [1] - 17:20
**company** [2] - 15:11, 27:1
**complete** [1] - 19:11
**complicated** [1] -

35:12
**comply** [1] - 37:18
**computer** [3] - 26:14, 26:15, 26:16
**concern** [1] - 7:16
**concerned** [1] - 11:8
**concerning** [1] - 14:4
**concerns** [3] - 14:2, 16:16, 37:9
**conclusion** [1] - 34:11
**condition** [1] - 35:4
**conditions** [1] - 38:24
**conduct** [2] - 16:17, 32:5, 34:15
**conference** [6] - 8:17, 8:18, 14:13, 18:4, 20:18, 21:5
**CONFERENCE** [2] - 40:17, 40:20
**conferences** [1] - 18:3
**confident** [1] - 36:21
**CONFORMANCE** [2] - 40:16, 40:19
**consider** [4] - 22:23, 33:23, 37:23, 39:12
**considered** [1] - 28:8
**considers** [1] - 29:10
**consistent** [1] - 29:12
**conspiracy** [1] - 26:15
**CONSULTANT** [2] - 3:9, 3:9
**CONT'D** [1] - 3:1
**context** [3] - 16:3, 16:25, 17:16
**continuance** [9] - 20:17, 21:18, 22:12, 23:24, 30:12, 30:14, 32:20
**continuances** [1] - 26:11
**CONTINUED** [1] - 1:16
**continued** [1] - 18:2
**CONTINUED)..... ** [1] - 4:3
**contradicted** [1] - 8:19
**contradicting** [1] - 14:20
**contradictions** [1] - 36:2
**contradictory** [1] - 8:9
**control** [1] - 19:25
**controversial** [1] - 23:5
**controverted** [1] - 25:13
**copy** [1] - 37:17
**CORRECT** [1] - 40:14
**correct** [6] - 11:25, 21:3, 22:7, 24:8, 25:11, 26:24
**cost** [1] - 27:25
**counsel** [6] - 6:7, 12:18, 12:20, 12:22, 13:3, 13:10, 21:8,

22:16, 23:21, 25:14, 26:6, 32:15, 32:17
**counsel's** [2] - 10:10, 13:23
**country** [1] - 39:5
**course** [4] - 23:7, 30:8, 31:3, 34:9
**Court** [45] - 7:14, 7:16, 7:17, 8:6, 9:2, 12:2, 13:9, 13:21, 14:1, 15:18, 16:8, 16:9, 16:15, 16:18, 17:15, 17:23, 18:23, 19:1, 20:1, 20:2, 20:11, 21:2, 21:17, 22:23, 22:25, 23:1, 25:6, 27:14, 27:16, 27:19, 28:24, 29:9, 30:11, 31:9, 31:10, 31:11, 31:12, 31:15, 31:20, 32:1, 32:2, 32:3, 34:11, 34:14, 38:1
**court** [4] - 15:11, 21:14, 34:23, 39:14
**COURT** [79] - 1:1, 1:21, 6:3, 6:19, 8:8, 9:8, 9:11, 10:12, 10:15, 10:24, 11:14, 11:17, 11:19, 11:23, 12:1, 12:5, 12:8, 12:16, 12:20, 12:22, 12:24, 13:24, 14:5, 14:22, 15:6, 15:13, 16:12, 16:24, 17:4, 17:7, 17:11, 17:18, 18:16, 18:19, 18:25, 19:17, 20:3, 20:22, 20:24, 21:6, 21:22, 22:2, 22:22, 23:17, 24:4, 24:15, 24:17, 25:1, 25:5, 25:8, 25:20, 25:25, 26:3, 26:7, 26:12, 26:18, 26:23, 27:5, 27:8, 27:16, 28:6, 28:11, 28:21, 29:8, 29:18, 29:22, 30:2, 30:6, 31:1, 33:10, 33:15, 33:19, 38:3, 38:10, 38:25, 39:7, 39:12, 40:10, 40:11
**Court's** [6] - 10:8, 14:13, 18:21, 20:9, 32:14, 37:5
**courthouse** [1] - 36:25
**COURTHOUSE** [1] - 1:22
**COURTROOM** [4] - 6:4, 38:1, 38:9, 39:14
**courtroom** [1] - 22:8
**Courts** [1] - 31:22
**courts** [4] - 16:19, 17:21, 28:11, 31:5
**credible** [1] - 8:23

**crime** [2] - 26:14, 26:15
**criminal** [5] - 15:20, 25:17, 25:23, 26:21, 27:2
**CROSS** [1] - 4:5
**cross** [1] - 32:12
**cross-examine** [1] - 32:12
**crystal** [1] - 13:19
**CUCAMONGA** [1] - 3:6
**culmination** [1] - 18:1
**CV** [2] - 1:10, 6:5

**D**

**D.C** [1] - 24:11
**damage** [1] - 19:14
**damages** [12] - 9:16, 9:18, 10:22, 10:25, 19:12, 19:19, 28:16, 28:25, 29:5, 29:16, 37:8, 37:11
**DANIEL** [1] - 3:9
**date** [5] - 26:8, 26:11, 34:18, 34:21, 37:14
**DATE** [1] - 40:23
**DAY** [1] - 4:3
**days** [4] - 8:16, 22:20, 23:14, 32:9
**deal** [1] - 23:6
**decided** [4] - 12:10, 22:19, 23:4, 34:10
**decision** [15] - 13:7, 14:10, 14:15, 21:10, 24:9, 27:10, 29:23, 30:24, 32:21, 33:1, 33:4, 33:6, 33:7, 33:9
**declaration** [6] - 6:23, 6:24, 8:6, 8:13, 9:3, 10:4, 21:13, 24:15, 24:18
**defamation** [4] - 10:20, 17:20, 17:22, 28:17
**default** [20] - 7:25, 12:12, 13:18, 17:9, 21:18, 28:14, 28:20, 28:23, 29:3, 29:10, 30:12, 31:3, 31:5, 31:23, 33:2, 33:24, 33:25, 34:15, 37:21
**defend** [1] - 16:21
**Defendant** [1] - 1:13
**defendant** [25] - 6:18, 6:21, 7:7, 12:3, 15:14, 17:19, 21:7, 23:13, 23:20, 24:2, 24:5, 32:22, 33:5, 33:22, 34:2, 34:17, 34:19, 34:22, 35:3, 35:12, 35:17, 37:11, 38:5

**DEFENDANT** [1] - 3:3
**defendant's** [3] - 30:13, 34:20, 38:23
**defending** [1] - 34:3
**Defense** [3] - 9:19, 13:11, 13:17
**defense** [1] - 25:23
**deficiencies** [1] - 37:12
**delay** [3] - 19:15, 23:14, 37:11
**delayed** [1] - 33:22
**delays** [3] - 18:6, 38:17
**demand** [1] - 35:5
**denial** [2] - 14:2, 17:1
**denied** [2] - 15:20, 15:21
**deny** [1] - 16:18
**denying** [1] - 7:3
**Department** [1] - 18:9
**deposed** [1] - 36:19
**DEPOSIT** [1] - 40:19
**deposition** [8] - 6:23, 9:18, 15:9, 35:5, 37:1, 37:2, 37:3, 37:7
**depositions** [4] - 14:24, 15:3, 15:6, 15:7
**DEPUTY** [4] - 6:4, 38:1, 38:9, 39:14
**designated** [3] - 37:2, 37:4, 37:6
**desire** [1] - 34:8
**details** [1] - 35:16
**determined** [1] - 12:12
**developments** [1] - 38:14
**difference** [1] - 12:19
**different** [2] - 29:13, 37:8
**dignity** [1] - 31:11
**DIRECT** [1] - 4:5
**directed** [1] - 19:22
**directing** [1] - 37:16
**discovered** [3] - 14:20, 14:23, 15:5
**discovery** [9] - 19:23, 31:17, 35:3, 35:7, 37:19, 38:4, 38:6, 38:22, 38:23
**dislocated** [1] - 23:2
**dismiss** [1] - 31:23
**dismissed** [3] - 7:9, 7:10, 8:12
**dispute** [1] - 18:22
**disputed** [1] - 28:17
**DISTRICT** [5] - 1:1, 1:2, 1:5, 40:11
**District** [1] - 27:20
**diverting** [1] - 19:20
**DIVISION** [1] - 1:3
**DO** [1] - 40:12
**docket** [5] - 18:21,

43

18:23, 18:25, 20:9,
23:10
**documents** [1] - 35:5
**Dominion** [1] - 26:24
**dominion** [1] - 26:25
**door** [1] - 38:5
**doubts** [1] - 34:6
**down** [2] - 31:4, 35:9
**drastic** [4] - 20:14,
20:15, 30:10, 30:14
**Dubai** [1] - 10:1

## E

**e-mail** [3] - 11:7, 15:2,
29:24
**EARLY** [2] - 2:4, 2:9
**easier** [1] - 31:4
**easily** [1] - 24:12
**East** [2] - 10:2, 24:11
**Eastern** [1] - 27:20
**educated** [1] - 16:4
**effort** [1] - 18:7
**either** [3] - 9:24,
15:19, 30:16
**election** [2] - 26:17,
26:21
**element** [1] - 28:17
**eleventh** [1] - 15:16
**emphasize** [2] - 12:8,
12:17
**empty** [1] - 21:19
**endure** [1] - 17:24
**engaged** [3] - 19:10,
22:13, 22:16
**ensure** [1] - 31:24
**enter** [2] - 30:11,
31:23
**entered** [2] - 29:3,
29:4
**entire** [1] - 7:12
**ENTITLED** [1] - 40:15
**entry** [1] - 30:25
**episodes** [1] - 34:4
**error** [1] - 27:20
**ESQ** [3] - 2:5, 2:10,
3:4
**essence** [1] - 13:18
**essentially** [2] - 7:8,
8:13, 19:8
**establish** [1] - 9:16
**established** [1] -
31:22
**et** [1] - 36:13
**ethical** [2] - 15:17,
16:17
**ethically** [1] - 16:18
**evaluate** [1] - 12:4
**events** [1] - 24:13
**evidence** [6] - 9:21,
19:24, 28:18, 29:17,
34:12, 37:10
**evidentiary** [3] - 29:5,
30:16, 30:18
**evolve** [1] - 37:21

**exact** [1] - 22:13
**exactly** [1] - 22:10
**examine** [1] - 32:12
**examining** [1] - 34:12
**except** [1] - 21:18
**exclusion** [1] - 19:2
**excusable** [1] - 10:9
**exercise** [1] - 32:3
**exist** [1] - 32:17
**existed** [1] - 32:16
**expectation** [2] -
25:16, 26:5
**expeditious** [2] -
17:14, 18:1
**expeditiously** [1] -
22:25
**expended** [1] - 27:24
**explanation** [1] - 9:14
**extensive** [1] - 32:7
**extent** [1] - 38:16

## F

**face** [1] - 8:9
**facially** [1] - 8:19
**fact** [5] - 6:21, 16:13,
29:17, 36:17, 38:3
**factfinder** [1] - 36:1
**factor** [21] - 12:6, 12:9,
12:11, 16:14, 16:15,
17:9, 17:25, 18:10,
19:3, 19:4, 19:6,
23:1, 27:12, 28:7,
28:13, 28:19, 30:9,
34:9
**factors** [12] - 12:13,
12:14, 12:15, 15:4,
16:23, 17:8, 22:23,
23:6, 23:8, 27:12,
28:9, 33:23
**facts** [1] - 36:6
**failure** [1] - 27:23
**fair** [1] - 37:15
**faith** [1] - 32:4
**fallout** [1] - 25:2
**familiar** [1] - 16:3
**far** [2] - 10:9, 11:8
**favor** [1] - 20:12
**favors** [1] - 20:5
**fax** [1] - 11:7
**FBI** [2] - 18:8, 35:21
**FEE** [1] - 40:18
**FEES** [1] - 40:18
**felony** [2] - 25:23,
26:13
**few** [2] - 8:16, 32:9
**fifth** [3] - 17:9, 20:15,
30:9
**fight** [1] - 31:5
**file** [1] - 24:15
**filed** [6] - 6:23, 6:24,
21:13, 23:8, 24:20,
24:25
**filing** [1] - 28:22
**final** [3] - 20:16, 23:14,

23:24
**financial** [4] - 19:23,
35:4, 37:9, 38:23
**finder** [1] - 29:17
**finish** [1] - 22:12
**fire** [4] - 32:22, 33:1,
33:3, 33:6
**fired** [9] - 7:12, 9:24,
9:25, 13:6, 21:4,
21:11, 25:16, 25:18,
32:18
**firing** [2] - 21:7, 32:9
**firm** [2] - 34:14, 37:14
**firmly** [1] - 31:22
**first** [9] - 14:23, 17:25,
21:8, 21:11, 21:25,
28:1, 32:11, 32:22,
33:7
**five** [1] - 16:23
**FLOOR** [2] - 2:6, 2:11
**Florida** [1] - 15:21
**flown** [1] - 39:5
**focus** [1] - 17:9
**following** [3] - 8:21,
13:2, 14:6
**FOOTHILL** [1] - 3:5
**FOR** [3] - 40:10,
40:11, 40:18
**FOREGOING** [1] -
40:13
**foreign** [1] - 35:19
**formally** [1] - 15:21
**FORMAT** [1] - 40:16
**former** [1] - 13:22
**formulated** [2] - 13:7,
13:13
**forward** [1] - 18:13
**four** [2] - 18:3, 39:5
**fourth** [1] - 28:12
**framework** [1] - 33:25
**free** [1] - 20:21
**Friday** [3] - 7:8, 24:10,
24:21

## G

**gain** [1] - 18:7
**generally** [1] - 29:9
**Ghana** [1] - 10:1
**given** [4] - 6:20, 11:6,
33:24, 37:11
**GIZER** [2] - 2:4, 2:9
**go-to** [2] - 8:20, 14:7
**Gomez** [1] - 27:14
**government** [2] -
35:13, 35:19
**grant** [2] - 12:11, 18:9,
38:15
**granted** [4] - 22:4,
28:24, 31:3, 31:5
**granting** [2] - 20:16,
34:15
**grasp** [1] - 29:1
**grave** [1] - 14:2
**gross** [1] - 15:17

**ground** [1] - 34:14
**guess** [1] - 8:16

## H

**hac** [9] - 7:2, 7:15,
15:20, 15:22, 17:1,
21:25, 24:21, 34:24,
38:15
**half** [1] - 34:3
**hand** [4] - 8:10, 20:8,
22:3
**handicap** [1] - 9:20
**handled** [1] - 15:8
**handler** [1] - 35:17
**Hansen** [3] - 6:11,
29:25, 33:12
**HANSEN** [6] - 2:10,
6:11, 30:1, 30:4,
33:14, 33:16
**hard** [2] - 33:20, 39:4
**hardest** [1] - 19:7
**HARPOOTLIAN** [10] -
2:13, 2:14, 2:17,
6:15, 26:25, 38:7,
38:20, 39:1, 39:10,
39:13
**Harpootlian** [1] - 6:15
**hear** [3] - 7:25, 8:3,
8:24
**heard** [3] - 10:1,
20:25, 22:10
**hearing** [3] - 10:4,
19:9, 29:5
**heavily** [1] - 20:4
**HELD** [1] - 40:15
**held** [1] - 33:8
**help** [1] - 30:18
**helpful** [1] - 30:20
**HEREBY** [1] - 40:12
**highly** [2] - 22:21,
24:3
**himself** [4] - 7:10,
24:6, 24:7, 35:17
**hired** [1] - 7:8
**historically** [1] - 8:21
**hold** [2] - 12:24, 28:24
**Honor** [45] - 6:17, 8:5,
8:6, 9:1, 9:10, 10:7,
11:12, 11:16, 13:2,
14:18, 15:10, 16:7,
16:23, 17:6, 17:8,
17:12, 18:12, 18:22,
19:5, 20:19, 20:23,
21:1, 21:24, 22:7,
22:15, 23:7, 24:8,
25:4, 25:11, 25:18,
26:20, 27:11, 28:10,
29:2, 29:14, 29:21,
30:1, 30:5, 30:8,
31:13, 32:11, 33:14,
38:7, 38:20, 39:13
**HONORABLE** [1] - 1:5
**hopefully** [1] - 37:21
**host** [1] - 11:10

**hour** [1] - 15:16
**huge** [1] - 19:21
**hundred** [1] - 36:25
**hundreds** [1] - 17:21
**HUNTER** [3] - 1:7, 2:4,
40:5
**Hunter** [1] - 6:5
**hurdle** [1] - 19:21

## I

**illegally** [1] - 27:4
**importance** [1] - 12:9
**important** [4] - 12:11,
28:7, 30:9, 34:9
**impression** [1] - 16:6
**improper** [1] - 34:15
**IN** [5] - 6:3, 40:10,
40:15, 40:16, 40:19
**include** [1] - 35:4
**including** [1] - 32:1
**incompetence** [1] -
8:13
**incompetent** [1] - 33:6
**inconsistencies** [1] -
14:20
**inconvenienced** [1] -
34:19
**incorrect** [1] - 9:11
**incurred** [1] - 27:24
**indicated** [2] - 16:9,
34:7
**indulgence** [1] - 10:8,
33:20
**inform** [1] - 20:19
**information** [1] -
29:23
**inherent** [7] - 31:9,
31:10, 31:14, 31:19,
31:23, 32:2, 32:3
**inherently** [1] - 8:9
**innocent** [1] - 27:9
**insert** [1] - 34:5
**insignificant** [1] - 36:4
**instances** [1] - 16:19
**integrity** [1] - 31:25
**intent** [2] - 25:14,
25:15
**interest** [5] - 17:13,
17:14, 18:1, 22:25,
23:9
**interface** [1] - 11:9
**interfacing** [2] - 8:22,
14:7
**intervening** [2] - 35:1,
35:2
**introduced** [1] - 35:20
**investigated** [1] - 17:2
**investigation** [2] -
15:19, 36:9
**investigations** [1] -
17:1
**Iranian** [5] - 35:13,
35:22, 35:24, 36:16,
36:17

44

**IS** [2] - 40:13, 40:16
**isolation** [1] - 28:8
**issue** [12] - 10:8, 12:2, 13:17, 18:11, 19:21, 19:22, 19:25, 21:7, 21:9, 22:6, 29:9, 33:21
**issued** [2] - 7:22, 31:19
**issues** [3] - 20:10, 20:12, 32:7
**issuing** [1] - 14:1
**item** [1] - 6:4
**itself** [1] - 18:23

**J**

**JUDGE** [1] - 1:5
**judgment** [5] - 7:25, 29:4, 30:25, 31:24, 33:2
**JUDICIAL** [2] - 40:17, 40:20
**JULY** [2] - 1:19, 6:1
**July** [2] - 14:19, 26:10
**jurors** [2] - 7:21, 7:22
**jury** [5] - 20:13, 28:25, 29:6, 29:7, 29:8
**JURY** [2] - 1:15, 4:3
**justice** [1] - 31:24
**Justice** [1] - 18:8

**K**

**kind** [4] - 11:7, 19:20, 20:5, 20:8
**KISS** [1] - 3:9
**knowing** [1] - 24:24
**knowledge** [1] - 32:14
**known** [1] - 7:22
**knows** [1] - 36:20

**L**

**Lambert** [13] - 7:1, 7:9, 8:15, 11:21, 14:20, 14:23, 15:2, 15:15, 16:10, 25:14, 25:22, 26:6, 27:3
**Lambert's** [1] - 14:3
**last** [11] - 7:8, 10:1, 20:14, 20:19, 24:10, 24:21, 25:20, 38:18, 39:6
**LAUREL** [1] - 2:14
**law** [4] - 17:20, 28:2, 28:13, 34:13
**LAW** [1] - 3:4
**Law** [1] - 31:18
**lawyer** [31] - 7:6, 7:11, 7:14, 7:17, 7:18, 8:2, 8:20, 9:19, 10:4, 10:6, 10:17, 14:8, 15:15, 16:1, 21:2,

22:5, 22:8, 24:6, 25:17, 25:23, 32:19, 33:1, 34:6, 34:21, 34:22, 34:23, 36:21, 38:18
**lawyers** [15] - 11:11, 21:11, 21:12, 21:17, 22:1, 24:19, 25:18, 32:9, 32:10, 32:19, 32:22, 33:3, 33:7, 34:5
**lays** [1] - 31:4
**lead** [2] - 25:14, 26:6
**least** [1] - 35:24
**lectern** [1] - 8:4
**left** [2] - 21:17, 32:18
**legitimacy** [1] - 36:16
**length** [1] - 23:23
**lengthy** [1] - 31:2
**LESS** [1] - 40:18
**less** [5] - 20:15, 28:16, 28:20, 30:10, 30:14
**Letter** [1] - 31:18
**letting** [1] - 31:12
**light** [1] - 38:13
**limited** [1] - 10:21
**link** [1] - 9:16
**list** [1] - 32:7
**listen** [2] - 10:5, 10:6
**listening** [1] - 17:5
**litigate** [1] - 34:8
**litigated** [2] - 28:18, 34:8
**litigation** [5] - 7:12, 16:4, 17:14, 30:21, 31:2
**LLP** [2] - 2:5, 2:9
**local** [1] - 22:1
**look** [1] - 32:15
**looking** [2] - 14:16, 32:8
**looks** [1] - 29:10
**LOS** [5] - 1:18, 1:23, 2:7, 2:11, 6:1
**lying** [1] - 16:20

**M**

**machine** [1] - 27:1
**MADAMREPORTER.COM** [1] - 1:24
**magistrate** [1] - 35:8
**mail** [3] - 11:7, 15:2, 29:24
**main** [1] - 14:18
**maintaining** [1] - 29:7
**malice** [3] - 28:17, 36:5, 36:10
**man** [2] - 16:4, 26:1
**management** [1] - 23:10
**manipulations** [1] - 17:23
**March** [1] - 18:4
**MARIA** [3] - 1:20,

40:10, 40:23
**MARKED** [1] - 5:2
**MARTA** [1] - 3:9
**match** [1] - 18:21
**MATTER** [1] - 40:15
**matter** [3] - 21:23, 23:14, 37:8
**matters** [2] - 25:17, 35:7
**McRAE** [2] - 2:5, 2:9
**mean** [43] - 8:8, 8:9, 8:10, 9:8, 9:11, 9:13, 9:25, 10:17, 11:1, 11:3, 11:19, 12:6, 12:22, 14:16, 15:6, 15:7, 16:4, 17:1, 17:2, 22:2, 22:3, 22:22, 22:23, 22:24, 23:4, 24:5, 25:1, 25:8, 27:5, 27:16, 27:19, 28:2, 28:6, 29:8, 29:9, 29:22, 31:1, 31:8, 33:21, 35:9, 35:12, 36:11, 36:18
**meaning** [1] - 24:5
**meeting** [1] - 35:13
**member** [2] - 16:11, 16:13
**mentioned** [2] - 23:9, 24:23
**merit** [3] - 19:11, 20:7, 20:13
**merits** [5] - 12:10, 12:12, 23:4, 28:14, 34:11
**mesh** [1] - 29:12
**met** [2] - 19:4, 35:16
**Michael** [1] - 12:4
**Michigan** [5] - 16:11, 25:17, 25:21, 25:24, 27:2
**miles** [1] - 36:25
**misleading** [1] - 37:6
**misstatement** [1] - 27:19
**moment** [1] - 24:11
**Monday** [5] - 7:12, 7:13, 11:7, 13:3, 14:19
**monetary** [1] - 30:17, 30:20
**money** [1] - 15:4
**month** [1] - 15:21
**months** [1] - 18:5
**morning** [8] - 6:17, 7:12, 7:13, 11:7, 13:4, 21:3, 21:6, 21:13
**most** [5] - 26:9, 28:21, 30:9, 34:9, 35:11
**motion** [12] - 7:2, 7:3, 7:16, 22:4, 22:9, 24:20, 24:25, 25:9, 34:24, 38:15, 39:9, 39:11

**move** [5] - 16:23, 17:3, 17:4, 18:11, 19:4
**moving** [1] - 23:1
**Moynihan** [7] - 18:17, 35:17, 35:20, 36:3, 36:7, 36:18
**MR** [78] - 6:9, 6:11, 6:13, 6:15, 6:17, 8:5, 9:1, 9:10, 10:7, 10:13, 10:23, 11:12, 11:16, 11:18, 11:21, 11:25, 12:2, 12:7, 12:15, 12:17, 12:21, 12:23, 13:1, 13:25, 14:18, 14:23, 15:9, 16:7, 16:22, 16:25, 17:6, 17:8, 17:12, 18:11, 18:17, 18:20, 19:5, 19:20, 20:4, 20:23, 21:1, 21:7, 21:24, 22:7, 23:7, 23:18, 24:8, 24:16, 24:18, 25:4, 25:7, 25:11, 25:22, 26:1, 26:4, 26:8, 26:13, 26:20, 26:25, 27:7, 27:11, 27:18, 28:10, 28:12, 29:2, 29:14, 29:20, 30:1, 30:4, 30:8, 31:13, 33:14, 33:16, 38:7, 38:20, 39:1, 39:10, 39:13
**multi** [1] - 12:6
**multi-factor** [1] - 12:6
**Murphy** [23] - 7:11, 8:12, 8:22, 9:23, 10:13, 10:17, 10:25, 11:4, 11:5, 11:6, 12:22, 13:3, 13:6, 13:11, 14:7, 14:24, 14:25, 15:3, 21:4, 37:16, 38:13
**Murphy's** [3] - 9:4, 11:8, 14:21
**must** [1] - 34:22

**N**

**necessary** [1] - 22:24
**necessitated** [1] - 18:8
**need** [6] - 9:5, 18:21, 22:20, 30:3, 30:4, 37:10
**needs** [1] - 32:4
**Neff** [1] - 7:10
**neglect** [1] - 10:9
**net** [1] - 19:23
**never** [6] - 6:21, 6:22, 9:22, 11:23, 15:3
**new** [4] - 11:11, 36:21, 38:13, 38:17
**newspaper** [2] - 14:14, 36:13
**next** [2] - 19:4, 20:6

**night** [1] - 20:19
**Ninth** [1] - 31:22
**NO** [1] - 1:10
**nominal** [2] - 10:21, 19:12
**nonappearance** [1] - 13:18
**None** [2] - 4:6, 5:3
**nonetheless** [1] - 24:24
**nonuse** [1] - 14:14
**note** [1] - 24:9
**nothing** [5] - 10:18, 11:3, 17:19, 17:22, 32:21
**notice** [1] - 37:15
**noticed** [1] - 8:16
**notwithstanding** [1] - 34:4
**number** [3] - 6:4, 13:2, 18:2

**O**

**obligation** [1] - 11:9
**obtained** [3] - 26:22, 27:3, 27:4
**obvious** [3] - 8:11, 10:17, 11:2
**obviously** [2] - 13:9, 24:21
**occupied** [1] - 22:11
**occur** [1] - 35:1
**October** [4] - 20:18, 20:21, 34:18, 34:21
**OF** [11] - 1:2, 1:15, 2:4, 3:3, 3:4, 40:11, 40:14, 40:17, 40:20
**OFFICES** [1] - 3:4
**OFFICIAL** [3] - 1:21, 40:10, 40:23
**ON** [2] - 2:4, 3:3
**one** [20] - 6:4, 6:23, 6:25, 8:10, 9:8, 12:13, 12:14, 13:2, 16:15, 16:22, 18:10, 18:13, 20:16, 21:20, 22:5, 22:7, 30:12, 33:3, 36:10, 38:7
**ONE** [1] - 4:3
**one-time** [1] - 20:16
**open** [1] - 38:5
**opportunity** [1] - 34:17
**opposing** [1] - 27:23
**option** [1] - 30:11
**options** [1] - 21:18
**oral** [1] - 31:24
**ORDER** [2] - 1:17, 4:3
**order** [9] - 7:23, 15:4, 15:12, 27:6, 31:7, 32:14, 32:25, 38:16, 39:8
**ordered** [2] - 15:3, 15:10

**orders** [3] - 20:2, 31:18, 31:25
**original** [1] - 18:3
**otherwise** [1] - 37:7
**outlined** [1] - 32:6
**overcome** [1] - 19:22
**own** [1] - 17:13

**P**

**P.A** [2] - 2:13, 2:17
**PAGE** [2] - 4:2, 40:16
**Pakistani** [1] - 35:15
**paragraph** [1] - 9:2
**part** [4] - 10:20, 14:15, 25:20, 35:23
**particularity** [1] - 12:18
**parties** [2] - 27:22, 30:23
**parts** [4] - 37:3, 37:4, 37:5, 37:6
**party** [2] - 9:12, 31:2
**party's** [1] - 27:23
**past** [2] - 7:12, 32:9
**Patrick** [2] - 6:5, 8:7
**PATRICK** [3] - 1:12, 3:4, 40:7
**pending** [1] - 25:24
**people** [1] - 28:4
**perhaps** [1] - 10:19
**period** [2] - 35:1, 35:2
**permanent** [1] - 17:7
**permission** [1] - 18:9
**person** [6] - 16:2, 27:3, 28:1, 35:14, 35:15, 35:24
**personal** [1] - 25:17
**personally** [1] - 23:21
**PHILLIP** [1] - 2:17
**Phillip** [1] - 6:13
**phone** [1] - 11:6
**pivot** [1] - 9:1
**Plaintiff** [1] - 31:13
**plaintiff** [27] - 6:10, 6:12, 6:14, 6:16, 7:6, 7:25, 9:5, 9:20, 10:21, 19:12, 19:17, 19:18, 20:25, 22:21, 23:11, 23:18, 32:13, 33:8, 35:2, 35:5, 35:21, 37:2, 37:5, 37:10, 37:12, 38:4, 38:17
**plaintiff's** [1] - 22:16
**PLAINTIFF'S** [2] - 4:5, 5:2
**plaintiffs** [1] - 9:16
**Plaintiffs** [1] - 1:8
**PLAINTIFFS** [1] - 2:4
**pleading** [1] - 29:11
**pleadings** [1] - 29:10
**plenty** [1] - 31:25
**plus** [1] - 11:10
**podium** [1] - 32:10

**point** [4] - 9:2, 26:4, 37:3, 37:20
**pointed** [1] - 36:11
**points** [1] - 21:24
**policy** [2] - 20:6, 34:10
**position** [4] - 7:11, 8:20, 10:25, 37:7
**posted** [1] - 24:10
**power** [7] - 31:9, 31:10, 31:14, 31:20, 31:23, 32:2, 32:3
**practice** [2] - 7:15, 34:23
**prayer** [1] - 29:11
**preference** [1] - 23:3
**prejudice** [12] - 18:23, 19:6, 19:13, 22:15, 23:10, 23:11, 23:15, 23:18, 23:22, 27:12, 28:3, 28:7
**prejudiced** [5] - 9:6, 13:22, 19:14, 27:23, 28:4
**prejudicial** [2] - 22:21, 24:3
**prepared** [5] - 18:14, 23:19, 23:25, 24:1, 32:10
**preparing** [2] - 23:11, 27:25
**present** [4] - 21:17, 23:19, 23:20, 29:6
**presented** [1] - 28:18
**PRESIDING** [1] - 1:5
**presume** [1] - 27:9
**presumption** [1] - 28:14
**pretrial** [9] - 8:17, 8:18, 14:13, 18:3, 19:9, 20:1, 20:18, 21:4, 36:12
**pretty** [1] - 11:2
**principle** [1] - 6:25
**privilege** [2] - 8:11, 11:20
**prize** [1] - 10:24
**pro** [9] - 7:2, 7:15, 15:20, 15:22, 17:1, 21:25, 24:21, 34:24, 38:15
**probative** [1] - 9:21
**probe** [1] - 8:10
**proceed** [2] - 21:19, 28:2
**proceeding** [5] - 20:20, 28:5, 28:12, 37:17, 39:16
**PROCEEDINGS** [2] - 1:15, 40:15
**proceedings** [1] - 33:22
**process** [1] - 31:11
**produced** [1] - 15:1
**prolonged** [1] - 30:21
**promised** [1] - 14:25

**promptly** [1] - 35:6
**prong** [11] - 10:9, 18:15, 18:10, 18:24, 19:6, 20:4, 20:6, 20:15, 22:16, 23:16, 23:22
**propounded** [1] - 19:24
**prove** [1] - 28:16
**provide** [1] - 35:17
**provisional** [1] - 38:12
**public** [5] - 17:12, 17:13, 20:6, 23:9, 34:10
**publicly** [1] - 24:10
**publishing** [1] - 36:9
**punitive** [9] - 9:16, 9:18, 10:24, 19:18, 28:16, 28:25, 29:5, 37:8, 37:10
**purposes** [2] - 8:3, 9:7
**PURSUANT** [1] - 40:12
**put** [4] - 19:9, 20:17, 26:9, 31:5

**Q**

**questions** [4] - 8:11, 9:17, 32:11, 38:21
**quickly** [1] - 29:20
**quite** [2] - 29:1, 30:13
**quote** [3] - 27:22, 27:24, 31:21

**R**

**RANCHO** [1] - 3:6
**reached** [1] - 34:12
**read** [1] - 36:15
**reading** [1] - 11:1
**ready** [3] - 22:17, 28:1, 39:4
**reality** [1] - 25:9
**realized** [1] - 8:14
**really** [5] - 10:7, 20:7, 20:14, 30:11, 30:18
**reargue** [1] - 16:12
**reason** [2] - 10:16, 14:18
**reasonable** [5] - 9:19, 15:15, 16:1, 16:2, 29:13
**reasons** [4] - 7:17, 8:12, 13:2, 13:25
**receive** [1] - 23:24
**RECEIVED** [1] - 5:3
**received** [2] - 8:6, 8:8
**receiving** [1] - 23:14
**recent** [3] - 27:13, 27:21, 28:22
**recently** [2] - 14:3, 26:9
**recess** [1] - 33:11

**Recess** [1] - 33:18
**reconsider** [2] - 7:3, 37:20
**reconsideration** [2] - 7:4, 14:2
**record** [12] - 7:6, 7:18, 7:24, 8:3, 11:3, 13:19, 15:17, 21:3, 21:23, 22:5, 22:6, 22:8
**recording** [1] - 35:22
**RECROSS** [1] - 4:5
**REDIRECT** [1] - 4:5
**REDUCTION** [1] - 40:19
**regard** [2] - 12:20, 32:14
**regarding** [4] - 9:18, 12:9, 26:21, 35:4
**REGULATIONS** [2] - 40:16, 40:20
**relate** [2] - 26:19, 33:24
**related** [2] - 31:8, 31:10
**relates** [3] - 26:16, 26:18, 26:20
**relationship** [1] - 13:15
**relevant** [3] - 29:23, 36:14, 36:23
**reliance** [6] - 10:10, 12:18, 12:20, 12:21, 13:4, 13:16
**relied** [2] - 13:22, 28:4
**relief** [3] - 23:15, 23:24, 30:15
**reluctantly** [1] - 7:15
**relying** [2] - 9:4, 18:12
**remarks** [5] - 14:9, 17:7, 17:16, 20:2, 37:18
**remedied** [1] - 22:3
**remedy** [1] - 37:12
**repeat** [1] - 34:5
**report** [1] - 36:13
**REPORTED** [1] - 40:14
**REPORTER** [3] - 1:21, 40:10, 40:23
**reporter** [1] - 15:11
**REPORTER'S** [1] - 1:15
**reports** [2] - 36:12, 36:15
**represent** [5] - 21:15, 21:16, 21:20, 24:6, 34:22
**representation** [4] - 9:4, 14:21, 14:22, 34:18
**represented** [1] - 37:15
**representing** [1] - 13:21
**represents** [2] - 25:22,

35:17
**republished** [1] - 36:9
**requesting** [1] - 29:2
**required** [1] - 36:8
**requirement** [2] - 9:12, 32:2
**requires** [1] - 29:6
**resolving** [1] - 20:12
**result** [2] - 30:21, 30:24
**retained** [4] - 11:14, 11:20, 11:21, 22:1
**returning** [1] - 27:11
**review** [1] - 22:24
**reviewed** [1] - 14:1
**REYES** [1] - 3:9
**Richard** [1] - 6:15
**RICHARD** [3] - 2:13, 2:14, 2:17
**rise** [2] - 38:1, 39:14
**ROBERT** [3] - 1:7, 2:4, 40:5
**Robert** [1] - 6:5
**Rule** [5] - 9:7, 29:3, 29:6, 31:8, 31:16
**rule** [2] - 29:6, 29:16
**rules** [1] - 37:20
**ruling** [3] - 14:13, 34:25, 36:22
**rulings** [3] - 6:20, 6:25, 35:11

**S**

**sanction** [10] - 20:14, 20:16, 26:19, 30:14, 30:18, 30:20, 31:16, 31:19, 33:25, 39:8
**sanctioned** [1] - 15:18
**sanctions** [5] - 30:10, 30:16, 31:16, 32:4, 37:20
**satisfy** [1] - 19:8
**save** [1] - 15:4
**SC** [1] - 2:15
**seated** [1] - 38:9
**second** [4] - 7:19, 8:17, 18:15, 18:20
**secondly** [1] - 39:3
**secret** [1] - 35:22
**SECTION** [1] - 40:12
**see** [3] - 11:1, 26:3, 30:6
**seeking** [4] - 19:12, 19:14, 19:17, 19:18
**selected** [1] - 34:21
**send** [1] - 33:12
**sent** [1] - 32:15
**serious** [3] - 7:16, 16:16, 34:6
**SESSION** [1] - 6:3
**set** [4] - 17:13, 18:4, 26:11, 34:20
**setting** [1] - 18:4
**settings** [1] - 19:3

**SEVENTEENTH** [2] - 2:6, 2:11
**several** [1] - 8:12
**severe** [1] - 34:1
**shaped** [1] - 36:15
**shapes** [2] - 12:24, 13:1
**shenanigans** [1] - 23:2
**shortly** [1] - 22:25
**SHOW** [2] - 1:17, 4:3
**Show** [1] - 9:25
**show** [8] - 22:18, 23:13, 24:2, 28:3, 28:4, 30:23, 31:3, 31:8
**showed** [1] - 32:13
**showing** [4] - 9:6, 13:4, 19:13, 24:5
**shows** [1] - 15:17
**side** [2] - 19:8, 20:5
**simply** [1] - 24:2
**situation** [1] - 34:14
**Smith** [2] - 18:8, 36:18
**so...** [2] - 24:17, 28:9
**software** [1] - 27:1
**someone** [5] - 9:24, 11:15, 16:3, 22:18, 31:4
**sometime** [1] - 20:18
**sort** [1] - 35:18
**sounds** [1] - 26:18
**source** [1] - 31:15
**speaking** [2] - 13:17, 29:9
**speaks** [1] - 18:22
**specific** [3] - 20:12, 32:4, 32:16
**specifically** [3] - 13:25, 21:14, 37:17
**speculating** [1] - 14:16
**stand** [2] - 6:7, 7:5
**standing** [1] - 16:14
**state** [1] - 6:7
**State** [1] - 16:11
**state's** [1] - 16:14
**statement** [1] - 21:16
**STATES** [6] - 1:1, 1:22, 40:11, 40:13, 40:17, 40:20
**STENOGRAPHICAL LY** [1] - 40:14
**step** [1] - 9:9
**STEPHEN** [1] - 1:5
**still** [1] - 24:13
**story** [2] - 36:7, 36:8
**strategies** [1] - 12:4
**strategy** [8] - 9:14, 10:18, 10:19, 10:20, 11:1, 13:6, 13:12, 13:13
**STREET** [2] - 1:22, 2:14
**subpoenaed** [2] -

18:13, 18:17
**substantial** [2] - 19:1, 27:25
**suggest** [2] - 28:15, 29:4
**SUITE** [2] - 1:23, 3:5
**SULLIVAN** [4] - 2:4, 2:5, 2:9, 6:9
**Sullivan** [1] - 6:9
**summarize** [1] - 9:3
**supplemental** [1] - 29:15
**supported** [1] - 35:23
**supposed** [2] - 7:20, 9:15
**Supreme** [1] - 32:1
**surprise** [1] - 8:23
**surprising** [1] - 16:20
**surrounding** [1] - 17:17
**sworn** [1] - 21:15

**T**

**table** [2] - 21:19, 38:12
**tabulation** [1] - 27:4
**tapes** [1] - 35:25
**team** [1] - 13:11
**technically** [1] - 7:18
**terminated** [1] - 11:8
**terminating** [3] - 30:17, 31:19, 34:5
**termination** [1] - 13:14
**terms** [1] - 9:22
**test** [1] - 12:6
**testifies** [1] - 36:12, 36:14, 36:20
**testify** [2] - 18:14, 36:22
**testimony** [3] - 37:1, 37:2, 37:3
**text** [1] - 15:11
**THAT** [2] - 40:12, 40:15
**THE** [92] - 2:4, 3:3, 6:4, 6:19, 8:8, 9:8, 9:11, 10:12, 10:15, 10:24, 11:14, 11:17, 11:19, 11:23, 12:1, 12:5, 12:8, 12:16, 12:20, 12:22, 12:24, 13:24, 14:5, 14:22, 15:6, 15:13, 16:12, 16:24, 17:4, 17:7, 17:11, 17:18, 18:16, 18:19, 18:25, 19:17, 20:3, 20:22, 20:24, 21:6, 21:22, 22:2, 22:22, 23:17, 24:4, 24:15, 24:17, 25:1, 25:5, 25:8, 25:20, 25:25, 26:3, 26:7, 26:12, 26:18, 26:23, 27:5, 27:8, 27:16,

28:6, 28:11, 28:21, 29:8, 29:18, 29:22, 30:2, 30:6, 31:1, 33:10, 33:15, 33:19, 38:1, 38:3, 38:9, 38:10, 38:25, 39:7, 39:12, 39:14, 40:10, 40:11, 40:13, 40:14, 40:15, 40:16, 40:17, 40:19, 40:20
**themselves** [1] - 10:21
**they've** [2] - 26:10, 36:19
**third** [2] - 26:11, 27:12
**THIS** [1] - 40:18
**Thompson** [1] - 27:14
**three** [2] - 23:6, 39:4
**ticktin** [9] - 7:14, 19:10, 20:19, 21:25, 22:4, 24:20, 25:16, 25:22, 26:1
**Ticktin** [3] - 25:6, 38:11, 38:14
**TITLE** [1] - 40:13
**TO** [3] - 1:17, 4:3, 40:12
**today** [11] - 6:22, 7:13, 7:22, 9:23, 11:4, 13:10, 22:17, 24:14, 24:23, 32:19
**TOM** [2] - 3:4, 3:4
**Tom** [1] - 6:17
**tomfoolery** [1] - 31:12
**took** [1] - 10:25, 32:10
**toying** [1] - 25:6
**trail** [1] - 33:3
**TRANSCRIPT** [4] - 1:15, 40:14, 40:16, 40:18
**transitions** [1] - 20:5
**tremendous** [1] - 35:10
**TRIAL** [4] - 1:15, 3:9, 3:9, 4:3
**trial** [46] - 6:19, 7:20, 9:5, 12:4, 12:9, 12:12, 13:6, 13:13, 13:23, 15:24, 15:25, 18:3, 18:4, 19:3, 19:24, 21:6, 21:9, 21:10, 21:11, 22:9, 22:16, 22:17, 22:18, 23:3, 23:12, 24:22, 26:7, 26:8, 26:11, 27:24, 28:1, 28:3, 28:25, 29:7, 29:8, 30:19, 30:24, 32:22, 33:4, 33:7, 34:20, 37:14, 39:4
**trials** [4] - 18:1, 19:10, 22:11, 34:10
**tried** [1] - 17:21
**TRUE** [1] - 40:13
**truly** [1] - 36:6
**trusts** [1] - 14:9
**try** [6] - 16:17, 20:21,

25:15, 30:22, 32:11, 34:17
**trying** [3] - 20:7, 29:1, 34:5
**Tuesday** [1] - 21:3
**twice** [2] - 26:9, 39:6
**two** [5] - 10:2, 18:10, 21:24, 38:20, 39:6
**type** [2] - 36:8, 37:9

**U**

**U.S** [1] - 32:1
**unbelievable** [1] - 14:5
**uncommon** [1] - 20:11
**under** [13] - 10:9, 15:19, 17:8, 19:7, 23:22, 29:3, 29:5, 31:6, 31:19, 32:24, 34:13, 36:5
**undercover** [2] - 35:13, 35:18
**undisputed** [1] - 16:10
**undocumented** [1] - 35:18
**unfair** [1] - 37:6
**unique** [6] - 17:15, 17:18, 17:19, 17:22, 17:23
**UNITED** [6] - 1:1, 1:22, 40:11, 40:13, 40:17, 40:20
**unless** [2] - 36:12, 36:14
**unlike** [1] - 35:6
**unliquidated** [1] - 29:16
**unpaid** [1] - 35:18
**unquestionably** [1] - 27:22
**unreasonable** [2] - 15:23, 18:7
**up** [20] - 6:22, 9:6, 9:25, 13:3, 13:4, 22:18, 23:13, 24:2, 24:5, 28:3, 28:4, 28:16, 30:21, 30:23, 31:3, 31:5, 32:15, 33:1, 33:3, 36:21
**upholding** [1] - 31:10
**usual** [1] - 30:24

**V**

**various** [1] - 20:10
**verdict** [1] - 19:22
**version** [1] - 35:23
**vice** [7] - 7:2, 7:15, 15:20, 15:22, 17:1, 34:24, 38:15
**video** [2] - 14:24, 15:9
**view** [7] - 15:14, 25:3, 25:5, 28:23, 33:24,

35:24, 37:5
**views** [1] - 36:15
**violations** [2] - 15:17, 31:17
**voluntary** [1] - 32:21
**voter** [4] - 26:22, 27:1, 27:4
**vs** [2] - 1:10, 40:6

**W**

**wait** [1] - 23:23
**waiting** [2] - 7:21, 33:20
**Washington** [1] - 24:10
**WEDNESDAY** [2] - 1:19, 6:1
**Wednesday** [1] - 7:13
**week** [5] - 8:16, 10:2, 22:19, 24:21, 39:6
**weigh** [1] - 28:19
**weighed** [1] - 21:23
**weighs** [2] - 28:13, 28:16
**WEST** [1] - 1:22
**WESTERN** [1] - 1:3
**WILSHIRE** [2] - 2:6, 2:10
**WILSON** [1] - 1:5
**wise** [1] - 10:20
**WITH** [2] - 40:16, 40:19
**witness** [1] - 18:16
**WITNESSES** [1] - 4:5
**witnesses** [2] - 18:14, 36:18
**words** [5] - 14:8, 14:11, 22:13, 25:13, 31:9
**worth** [1] - 19:23
**WRIGHT** [2] - 2:4, 2:9

**Y**

**year** [1] - 34:3
**years** [1] - 17:21
**yesterday** [12] - 6:20, 6:25, 7:5, 7:21, 7:23, 14:9, 15:3, 17:16, 20:20, 24:13, 28:22, 31:7
**yourself** [1] - 16:21
**Yu** [5] - 6:17, 7:7, 8:2, 21:14, 21:16
**YU** [38] - 3:4, 3:4, 6:17, 8:5, 9:1, 9:10, 10:7, 10:13, 10:23, 11:12, 11:16, 11:18, 11:21, 11:25, 12:2, 12:7, 12:15, 12:17, 12:21, 12:23, 13:1, 13:25, 14:18, 14:23, 15:9, 16:7, 16:22, 16:25,

17:6, 17:8, 17:12,
18:11, 18:17, 18:20,
19:5, 19:20, 20:4,
20:23

## Z

**Zachary** [1] - 6:11
**ZACHARY** [1] - 2:10
**Ziegler** [1] - 36:13