# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

- - -

HONORABLE STEPHEN V. WILSON, DISTRICT JUDGE PRESIDING


ROBERT HUNTER BIDEN,           )
                               )
        Plaintiffs,            )
                               )
                               )
                               )
    vs.                        ) NO. CV 23-09430-SVW
                               )
                               )
                               )
PATRICK M. BYRNE,              )
                               )
        Defendant.             )
_____)


REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

*TRIAL DAY ONE*

LOS ANGELES, CALIFORNIA

TUESDAY, JULY 29, 2025

MARIA R. BUSTILLOS
OFFICIAL COURT REPORTER
C.S.R. 12254
UNITED STATES COURTHOUSE
350 WEST 1ST STREET
SUITE 4455
LOS ANGELES, CALIFORNIA 90012
(213) 894-2739
MADAMREPORTER.COM

UNITED STATES DISTRICT COURT

2

**A P P E A R A N C E S**

**ON BEHALF OF THE PLAINTIFFS,**
**ROBERT HUNTER BIDEN:**                    EARLY SULLIVAN WRIGHT GIZER
                                            and McRAE, LLP
                                            BY:  BRYAN M. SULLIVAN, ESQ.
                                            6420 WILSHIRE BOULEVARD
                                            SEVENTEENTH FLOOR
                                            LOS ANGELES, CA 90048
                                            (323)301-4660


                                            EARLY SULLIVAN WRIGHT GIZER
                                            and McRAE, LLP
                                            BY:  ZACHARY HANSEN, ESQ.
                                            6420 WILSHIRE BOULEVARD
                                            SEVENTEENTH FLOOR
                                            LOS ANGELES, CA 90048
                                            (323)301-4660


                                            RICHARD A. HARPOOTLIAN, P.A.
                                            BY:  RICHARD A. HARPOOTLIAN
                                            1410 LAUREL STREET
                                            COLUMBIA, SC 29201
                                            (803)252-4848


                                            RICHARD A. HARPOOTLIAN, P.A.
                                            BY:  PHILLIP D. BARBER
                                            (803)252-4848

UNITED STATES DISTRICT COURT

**A P P E A R A N C E S (CONT'D)**

**ON BEHALF OF THE DEFENDANT, PATRICK M. BYRNE:**                    LAW OFFICES OF TOM YU, APC
                                  BY:  TOM YU, ESQ.
                                  10803 FOOTHILL BOULEVARD
                                  SUITE 112
                                  RANCHO CUCAMONGA, CA 91730
                                  (844)998-1033


                                  LAW OFFICES OF STEFANIE L. LAMBERT PLLC
                                  BY:  STEPHANIE L. LAMBERT, ESQ.
                                  400 RENAISSANCE DRIVE
                                  TWENTY-SIXTH FLOOR
                                  DETROIT, MI 48243
                                  (212)555-0127


                                  ERIC NEFF LAW FIRM
                                  BY:  ERIC V. NEFF
                                  2600 POINT DEL MAR
                                  CORONA, CA 92625
                                  (949)500-8084


ALSO APPEARING:  DANIEL REYES, TRIAL CONSULTANT

                 MARTA KISS, TRIAL CONSULTANT

4

# I N D E X

|                          | PAGE |
| JURY TRIAL DAY ONE......................... | 6 |

| PLAINTIFF'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
| --- | --- | --- | --- | --- |

(None)

- -

UNITED STATES DISTRICT COURT

5

# **E X H I B I T S**

PLAINTIFF'S                                              RECEIVED        MARKED

(None)

UNITED STATES DISTRICT COURT

LOS ANGELES, CALIFORNIA; TUESDAY, APRIL 10, 2024

-o0o-

(COURT IN SESSION AT 9:10 A.M.)Tuesday, July 29, 2025;

trial day one

THE COURTROOM DEPUTY:  Calling item one, 2:23-CV-09430-SVW-PD: *Robert Hunter Biden v. Patrick Byrne*.

Counsel, please stand and state your appearances for the record.

MR. SULLIVAN:  Bryan Sullivan on behalf of plaintiff.

MR. HANSEN:  Zachary Hansen on behalf of plaintiff.

MR. BARBER:  Phillip Barber on behalf of plaintiff.

MR. HARPOOTLIAN:  Richard Harpootlian on behalf of plaintiff.

MR. NEFF:  Eric Neff on behalf of defendant, Your Honor.

MS. LAMBERT:  Good morning, Your Honor. Stefanie Lambert Junttila on behalf of Dr. Byrne.  I filed a pro hac vice for the Court to consider.

MR. YU:  Good morning, Your Honor.  Tom Yu on behalf of defendant.

THE COURT:  Well, I mean, you may be seated.

We have a totally new cast of -- of lawyers who have appeared for the first time.  I mean, I've never seen these lawyers.  Mr. Murphy, who is not here -- and he should be here.  He didn't receive the Court's permission not to be here.  And I've messaged him and directed him to be here immediately.  I mean, this is becoming, well, circus-like.  And it's not the way things should be.

Who will be questioning the witnesses and arguing from the Defense side?

MS. LAMBERT:  Your Honor, if I may, we have divided up each witness, opening argument, and closing argument.  So one attorney will do one witness, and one attorney will open.  One attorney will close.  One attorney will object during the cross of a witness so you won't have the back and forth that I know frustrated the Court yesterday.

THE COURT:  I -- I -- you need -- one, two, three, four -- five lawyers?

MS. LAMBERT:  Your Honor, there is three lawyers.  This is our trial team.  I have been Dr. Byrne's attorney since day one.  My office --

THE COURT:  What is your name?

MS. LAMBERT:  My name is Stefanie Lambert, Your Honor.  I filed the pro hac vice.

THE COURT:  When did you file it?

MS. LAMBERT:  It was filed on Pacer, Your Honor.

THE COURT:  But -- but we -- we never had a hearing.  Why was Mr. Murphy representing the defendant for as long as I have been presiding on this case, which was at beginning?  He was the lawyer from the outset. That's over a a two-year period.

MS. LAMBERT:  Sure.  I can possibly alleviate some of the Court's concerns.  I have been working hand in hand with Mr. Murphy.  My office hired Mr. Murphy's office since day one.  We are not seeking a continuance. We are ready for trial.  We don't want to delay --

THE COURT:  Are you familiar with all the Court's rulings?

MS. LAMBERT:  Correct, Your Honor.  All three attorneys at this table have read all of the Court's rulings, and we're familiar with the entire file.

THE COURT:  And, Mr. Yu, have you -- are you -- do you know of all the Court's rulings?

MR. YU:  I have, Your Honor.  I've reviewed --

THE COURT:  When did you first enter this case?

MR. YU:  Yesterday, Your Honor.

THE COURT:  When?

MR. YU:  Yesterday morning.

THE COURT:  Well, how could you have you read and digested every aspect of the case?

MR. YU:  Well, just to be fully transparent --

THE COURT:  Take the lectern.  Take the lectern.

MR. YU:  Absolutely, Your Honor.  I've -- I've read all the Court's rulings as far as the -- there's -- there was a lot of -- there's a lot of rulings to go through, yes.  I am --

THE COURT:  The Court has spent days and many hearings and four pretrial conferences trying to make rulings on so many different motions and motions in limine.  You did appear, I remember, in another case before me less than a year ago.  But notwithstanding that you, I thought, represented your client well in that case, the -- you have to understand all rulings of the Court, and some of rulings were -- I wouldn't say complex, but they were -- they -- they limited a lot of what the Defense intended to do.

I mean, defendant Byrne is not here.  Who -- who is the lead lawyer in the case?  Is there a lead lawyer, or is this, you know, a politburo?

MS. LAMBERT:  Your Honor, if you -- if's okay for me to address the Court from here?  I can go to the lectern.  We intend to work as a team.  I have been

10

Dr. Byrne's attorney for several years now, and I have been on this case with Michael Murphy, working with him every step of the way since day one.

THE COURT:  Why haven't you informed the Court until recently about your being -- your -- your being co-counsel for years?  Why -- why in -- why the secret? Why operate incognito?

MS. LAMBERT:  There's no secret, Your Honor. Mr. Murphy was to try the case.  That's what he was hired to do.  There has been a breakdown between Mr. Murphy and Dr. Byrne that I don't want to go into, client confidential information.  But the -- the pro hac should have been filed earlier, but Mr. Murphy said that there were filing complications and he wasn't going to get it on Pacer.  I wasn't quite sure what he was trying to explain.

THE COURT:  Who said -- who said that?

MS. LAMBERT:  Mr. Murphy.  I asked that he bring it to the Court yesterday and -- and hand it to the Court.

THE COURT:  Well, has Mr. Murphy -- there was no motion before me to have Mr. Murphy replaced, and he didn't seek the Court's permission at the morning of trial to withdraw.  So what is Mr. Murphy's status now?

MS. LAMBERT:  The status is -- and I've been

copied on communications where I don't want go into the substance --

THE COURT:  Take the lectern.

MS. LAMBERT:  Yes, Judge.

Your Honor, I've been copied on communications, and I don't want to go into the substance of attorney-client information.  But it was very clear that there was a -- a permanent breakdown of communication and the attorney-client relationship between Dr. Byrne and Mr. Murphy.  And Dr. Byrne has fired Mr. Murphy in writing.  And I have read that.

THE COURT:  You call him Dr. Byrne?

MS. LAMBERT:  That's correct, Your Honor.

THE COURT:  Is that how you intend to call him at the trial?

MS. LAMBERT:  With the Court's permission.

THE COURT:  No.  Call him by his name.

MS. LAMBERT:  Okay.

THE COURT:  The Court does recognize that means of identifying a person when they're a medical doctor.  Likewise, the Court recognizes that type of description if someone is actively a senator or a governor or something else or a priest or a minister or a rabbi.  But otherwise, the Court prefers that -- that people be identified by their names.

12

MS. LAMBERT:  Yes, Your Honor.

THE COURT:  I mean, this is very upsetting to the Court, I must say.  This is not the way things should be.  One second.  I'll give you a chance.  Be seated for a moment.

MR. BARBER:  Yes, Judge.  I just have the right information.  I'm sorry.

THE COURT:  And so you're saying that -- that -- in terms of -- of -- of examining or cross-examining the plaintiff, how do you, -- without telling me line and verse, in light of my prior rulings, who's going to cross-examine the plaintiff?

MS. LAMBERT:  Your Honor, one of the attorneys -- I'm prepared to cross-examine.

THE COURT:  I didn't ask you who's prepared. Who is going to do it?  You don't seem to know at this point.

MS. LAMBERT:  We're all prepared.  Mr. Yu would -- would like to do it.  It is his preference.

THE COURT:  Well, this -- this sounds like a carnival.

Take the lectern, Mr. Yu.

MS. LAMBERT:  We're -- we're all prepared --

THE COURT:  Sit down, please.

Now, how, just generally, do you intend to

13

cross-examine the plaintiff in light of my rulings?  A lot of my rulings concern that.  What areas do you intend to get into?

MR. YU:  Well, I think, first, Your Honor, we are seeking to --

THE COURT:  I'm only asking you that because I want to make sure that you understand all these rulings. You got into the case yesterday.  And I don't want this to become mayhem.

MR. YU:  I understand.

THE COURT:  So tell me how you intend to do it.

MR. YU:  Sure.  The Court wants kind of the subject area, matters that I intend to get into?

THE COURT:  Well, I mean, what areas?  For example, I've already ruled -- I'll give you the broad strokes --

MR. YU:  Sure.

THE COURT:  -- that -- that the articles -- newspaper articles and the Ziegler report are -- you can't use those because you would be cross-examining him and inferring to the jury that there is some truth in those reports, and there is no evidence of any of that being truthful.

And you can, I said, cross-examine him with his prior conviction.  You could ask him if he -- he made

UNITED STATES DISTRICT COURT

14

any specific statements that a reasonable jury could -- could accept as a prior act of corruption because a prior act of corruption is -- is some indicia of veracity, of truthfulness.  But you can't just float innuendo.  You have to ask the questions, and you'll be stuck with the answer in a way that doesn't allow innuendo but is specific.

Do you intend to get into that?

MR. YU:  Well, my -- my first intention, Your Honor, is to get into the representation prong of -- of this case.

THE COURT:  What representation?  Meaning what?

MR. YU:  Well, I mean, the plaintiff is seeking damages that purport he caused harm to his reputation.

THE COURT:  See, already, you have not -- you have indicated to me you don't understand the rulings because I -- if -- plaintiff has -- has informed the Court -- and not just yesterday -- that he intends to only seek a dollar in damages, that he's seeking per se defamation.  And in that regard, damages that -- reputation is not at issue.

And then the Court has bifurcated punitive damages from liability.  And -- and so in this phase of the case, there is no evidence that would relate to -- to punitive damages.  In fact, the jury shouldn't even

15

be told about punitive damages; they should just be told at this phase of case that this case is about defamation.

So you've already shown me that you are not familiar with what has -- with what the Court has ruled on.

MR. YU:  Sure.  So --

THE COURT:  You're telling me under oath, as a lawyer, that you have, overnight -- when were you first contacted to be in this case?

MR. YU:  On Friday, Your Honor.  Last Friday.

THE COURT:  And I made some rulings yesterday. Are you -- then why did you start out by saying you're going to cross-examination him on reputation?

MR. YU:  Because I think it's important for the punitive damages --

THE COURT:  I just told that punitive damages are going to be bifurcated.

MR. YU:  I understand.  But I think we're entitled to seek some evidence of causation, of whether or not the act of our client caused a particular reputation.  That goes into malice and --

THE COURT:  But -- but he's -- he's only -- it is whether -- how do you respond to that?

MR. BARBER:  I'm sorry, Your Honor?

16

THE COURT:  He is saying that reputation of -- of -- of the plaintiff, even though the case has, in phase I, been limited to per se defamation, is still relevant because of -- of malice.  I don't see the connection.  Do you?

MR. BARBER:  Your Honor, not only do I not see a connection, if these folks had been here during the hearings when we discussed that, they would understand not just what you wrote, but how you got there.

Your Honor, this is -- and if I could just pivot and ask the Court one -- or explain something to the Court, I think it would make a lot of this easier for you to deal with.  May I do that.

THE COURT:  You want to ask me a question?

MR. BARBER:  No.  I want to give you some information to add to that.

THE COURT:  All right. Go ahead.

MR. BARBER:  This young lady --

THE COURT:  Her name is?

MR. BARBER:  Stefanie Lambert.  I believe she was in the courtroom yesterday.

THE COURT:  Her name is Stefanie Lambert, right.

MR. BARBER:  She was in the courtroom not -- well, she may have been at the table yesterday.  I

UNITED STATES DISTRICT COURT

believe she was at the table yesterday.

THE COURT:  She was?

MR. BARBER:  Yes, sir.

THE COURT:  I mean, I -- I don't recognize her. I do recognize the -- the woman with the blond hair and -- and this gentleman sitting close to me.

What is your name, sir?

MR. REYES:  Dan Reyes, Your Honor.

THE COURT:  You're -- what was your name again?

MR. REYES:  Dan Reyes.

THE COURT:  Dan?  Dan?

MR. REYES:   Yes, sir.  Daniel.  Dan, for short.

THE COURT:  I don't even see you.  Are you a lawyer in this case?

MR. REYES:  No, sir.  I'm here to assist with jury selection and --

THE COURT:  You're a jury selection expert?

MR. REYES:  I'm a trial consultant, Your Honor.

THE COURT:  Oh, I see.

And so what about -- so you said Ms. -- Ms. Lambert was here yesterday?

MR. BARBER:  Yes, sir, she was.

THE COURT:  What -- what -- and the -- and the blond-haired woman, are you named Carmen Selame?  Is

UNITED STATES DISTRICT COURT

that...

MS. KISS:  No, Your Honor.  My name is Marta Kiss.  I'm --

THE COURT:  What is your name?

MS. KISS:  Marta Kiss.  I'm also a trial consultant.

THE COURT:  Oh, she's a trial consultant. Okay.  I'm not concerned about them.

MR. BARBER:  Your Honor, what I would like to bring to your attention is:  Ms. Lambert indicated on her pro hac vice application that she'd never been denied a motion to appear pro hac, which is not true.  I have a -- a ruling, and I'd like to hand up a copy of this to you.  These are the orders -- copies of the orders issued in June of this year where a federal district court in Florida denied her pro hac.  And I think --

THE COURT:  Let me just read it first.  Okay? And then you can tell me what your argument is.

MR. BARBER:  Yes, sir.

Do y'all need a copy?

THE COURT:  Okay.  Go ahead.  What did you want to say?

MR. BARBER:  May it please the Court.  You read the order.  She was denied pro hac in Florida and --

19

which was not based on the fact -- they make it clear that she is out on bond on two felony charges.

THE COURT:  I mean, as the judge in the very order you gave me said -- and that appears to be the law in the Ninth Circuit also -- the fact that there are pending charges in and of itself is not a basis for denying a pro hac vice.

MR. BARBER:  Yes, sir.

THE COURT:  So...

MR. BARBER:  But what he does say is --

THE COURT:  What?

MR. BARBER:  What he does say is she violated orders in another case, disclosed confidential --

THE COURT:  Well, I read -- I read that. And -- and --

MR. BARBER:  Okay.  So, Your Honor, you used the word "circus" a moment ago.  Here we are -- and by the way, Mr. Yu here filed her application knowing full well that she been denied pro hac previously.

THE COURT:  But as we said with -- with the other applicant -- he's not even here.  What is his name?

MR. BARBER:  Inkin.

THE COURT:  Who?

MR. BARBER:  Inkin.

THE COURT:  Inkin.  He is not here today, but I did have some hearings about whether he should be admitted.  And I didn't publish an order, but I indicated somewhat reluctantly that given the case law, while I could deny his application, I chose to --

MR. BARBER:  Yes, sir.

THE COURT:  -- allow it.  He's not even here. I don't know what his role in this case is.

What else do you have to add?

MR. BARBER:  She submitted this under penalty of perjury.

THE COURT:  Submitted what under penalty of perjury?

MR. BARBER:  Her pro hac application, she submitted it under penalty of perjury.  And there is a specific -- specific question:  Have you ever been denied pro hac before?  No.

THE COURT:  Was that on our --

MR. BARBER:  Your form.

THE COURT:  Okay.

MR. BARBER:  And so --

THE COURT:  So in other words, the -- the form does say that?  It does ask?

MR. BARBER:  Yes, sir.  Yes, sir.

THE COURT:  I thought that when we had the

21

hearing regarding Mr. Inkin, it was that -- that the form didn't specifically ask that question?

MR. BARBER:  No.  The form does ask that question.  Mr. Inkin was whether or not he had been disciplined before.  And clearly, he had been, but it was some time ago.  And -- and so that --

THE COURT:  Well, what is the specific question in the pro hac vice application?

MS. LAMBERT:  Your Honor, if I may address.

THE COURT:  Just one moment.  I'll give you a chance.

MS. LAMBERT:  Thank you, Your Honor.

MR. BARBER:  Let me make sure -- Your Honor, we're going to put it up on the screen for Your Honor.

THE COURT:  Okay.

MR. BARBER:  Your Honor, while he is hooking that up, I apologize for the -- the -- we didn't get notice of this until this morning.  And again --

THE COURT:  All right.  Let me get Ms. Lambert -- well, you have -- you have the --

MR. BARBER:  Oh, I think we put it up.  Here we -- here we go.  So as you can see, "List all cases in which applicant has applied to this Court for for pro hac."  Didn't apply.  "If any proc hac applications submitted within the past three years have been denied

UNITED STATES DISTRICT COURT

by the Court."  Now, I would --

THE COURT:  Well, I mean, "the Court" could be interpreted to mean "this Court."

MR. BARBER:  Well, except for -- above, it says, "List all cases in which the applicant has applied to this Court."  The next paragraph down, it states --

THE COURT:  I get it.  I get it.

MR. BARBER:  And -- and, Your Honor, I'd point out --

THE COURT:  Well, let -- there are other reasons.  I mean, she's only been here one time before.  She says she's been following the case closely, but that doesn't equal her presence in the -- in the courtroom and the -- the back-and-forth, which was extensive.  And there's so many things that I instructed that it is almost inconceivable to me that anyone would fully digest them.  Mr. Yu says he got into the case yesterday.

And what I'm -- I'm -- I'm getting to is Mr. Murphy is the lawyer now, and in order for him to be relieved, there has to be a motion.  There is no motion before me to have him relieved.  And the question is:  Would I relieve him under these circumstances?  And I would be very reluctant to do so.  And I've ordered him to be here.  I mean, he -- he -- I don't know where he

23

is.  But when I found out maybe a half hour ago that he wasn't here and that the -- that there were these new developments, I ordered him to be here.  And...

MR. BARBER:  Your --

THE COURT:  Yes?

MR. BARBER:  Your Honor, two things:  One, I think -- is there somebody from Mr. Murphy's office here?

THE COURT:  I don't -- I don't know.

MR. BARBER:  That works for him or related to him in some way?  No?

Well, number one, I think Your Honor's correct assessment is:  Here we are getting ready to pick a jury.  These folks have not been here, number one. Number two, we take --

THE COURT:  I mean, it would seem to me that -- that even from what they've said -- I mean, what Ms. Lambert has said, they -- they don't even, at this point, have a -- a plan for exactly how the work will be divided, except that it will be divided.  And that's a very awkward thing.  You'll have -- one, two, three -- what, four lawyers?  Three lawyers?  Three lawyers?

MS. LAMBERT:  Your Honor, we're all prepared to do every aspect of this case.  And to be fair, we don't know how the plaintiff intends to divide its work.  It

has multiple lawyers, as well.  They've not disclosed --

THE COURT:  But they've been here throughout, and it is clear to me how they intend to divide it. Mr. Hansen is basically their -- their -- their brain trust, I'll call him.  He's the guy who knows what's -- what -- it's in the interstices.  And -- and the only lawyers who I think will appear -- and they have told me how they've divided it up.  Mr. -- Mr. Barber?

MR. BARBER:  Barber.

THE COURT:  He was going handle the punitive damages part of it.  And the -- and Mr. --

MR. HARPOOTLIAN:  Harpootlian.

THE COURT:  -- Harpootlian will be handling the other part, and that's -- that's the division.  And it's been that way for quite a while.

I'm going to call a brief recess here and -- because this is just put in my face, and I want to give it some careful thought.  So...

MS. LAMBERT:  Your Honor, if I may add one more thing to consider?

THE COURT:  Yes.

MS. LAMBERT:  Mr. Inkin filed his pro hac vice because the breakdown had begun, and the goal was to avoid disrupting this Court's --

THE COURT:  I knew nothing about a breakdown.

MS. LAMBERT:  Right.

THE COURT:  This is the first I hear about a breakdown.  It is five to 10:00.  We're supposed -- on Tuesday.  We're supposed to be picking a jury now.  The first time I've heard about a breakdown.  And like I said, there is no motion before me to -- to allow Mr. Murphy to withdraw.

And I will take a brief recess.

MR. BARBER:  Thank you, Your Honor.

MS. LAMBERT:  Thank you, Your Honor.

THE COURT:  This document that you gave me should be marked as Exhibit A.

(Whereupon, Plaintiff's Exhibit A is admitted hereto.)

(Recess.)

THE COURT:  Before I give you my rulings, there's one lawyer who I didn't question, Mr. Neff.

Who is Mr. Neff?  You -- you are?

MR. NEFF:  Yes, Your Honor.

THE COURT:  Stand up.  When were you first -- when were you first asked to be in this case?

MR. NEFF:  I was initially contacted about a week ago.

THE COURT:  All right.  By whom?

MR. NEFF:  By Ms. Lambert.  And I informed her based on my schedule, I would not be able to do it

unless it happened right away.  And when -- I believe I heard on Friday, something could happen right away.  So I came on about the same time as Mr. Yu.

THE COURT:  Are you a member of the California Bar?

MR. NEFF:  I am, Your Honor.

THE COURT:  And are you -- do you -- have you studied all of the rulings?

MR. NEFF:  I have.  I read everything I could in the Pacer file and everything that was given to me by --

THE COURT:  But your reason for getting in the case primarily is -- is Ms. Lambert?

MR. NEFF:  Correct.

THE COURT:  And you've worked with her before?

MR. NEFF:  I have never worked with her on a case before, no.  But we have a professional relationship.

THE COURT:  Yeah.  Okay.  All right.  You may be seated.

MR. NEFF:  Thank you.

THE COURT:  Okay.  So here's -- these are my rulings.  And I'll get to some of what I asked you about, Mr. Yu, in a moment.

But first, I want to clarify where we are:

Under California -- under federal law, a client has the right to terminate or fire a lawyer at any point. There are factors in that context that need not be addressed, but under the circumstances, I am inclined to grant his motion to fire Mr. Murphy. But I don't have any evidence that that is what his intention is. He -- defendant Byrne has not filed a motion or declaration. Mr. Murphy hasn't. I've ordered him to be here.

With regard to Mr. Yu, he is a member in good standing of the California Bar and of this court. So I am going to allow him to try the case. He's taking a risk by coming in at this late stage just days ago and risking violating court rules and rulings. If he does do that, I won't -- I will not take into consideration that he just came into the case. And if he abuses my prior rulings, he will suffer the consequences.

With regard to Ms. Lambert, I'm denying her motion to enter the case pro hac vice for some of the same reasons as indicated in the ruling that was given to me and for others, which I will issue and order.

With regard to Mr. Neff, now that I have not allowed Ms. Lambert to be in the case, are you still in the case?

MR. NEFF: Yes, Your Honor.

THE COURT: Okay. Stand up when you address

28

the Court.

MR. NEFF:  Apologies, Your Honor.

THE COURT:  Have you been in federal court before?

MR. NEFF:  I have not, no.

THE COURT:  This is your first appearance in federal court?

MR. NEFF:  This is my first appearance in this federal courthouse, yes.

THE COURT:  In other federal courthouses, they don't ask you to stand up?

MR. NEFF:  I was trying to remember.  It's been a while.

THE COURT:  Have you ever tried a case in federal court?

MR. NEFF:  Never in federal court.

THE COURT:  How long you have you been a member of the California Bar?

MR. NEFF:  For 12 years.

THE COURT:  Have you tried cases in the Superior Court?

MR. NEFF:  I've tried about 50 cases to verdict, yes.

THE COURT:  And have you tried cases in this area of defamation?

MR. NEFF:  In defamation, no.

THE COURT:  Okay.  You can participate in the trial.  You may be seated.

With regard to Mr. Yu, take the lectern again. I started to ask you how you would cross-examine plaintiff, and you said reputation.  Reputation for truth and veracity?

MR. YU:  No, Your Honor.  I was trying -- I didn't want to cut the Court off.  I was trying to address the Court.  I was reviewing the Court's pretrial order, which is docket number 276, and I was essentially reviewing it over the weekend and last night to ensure that I don't violate the Court's order.  I saw that in the Court's order there was some mentioning that we can go into the evidence of plaintiff's reputation in the area of corruption dealing with foreign entities, which is relevant to actual malice.  And so --

THE COURT:  What -- what malice -- but the malice is -- in defamation, is from the standpoint of the -- of the defendant.  Why is the -- are you arguing that whatever plaintiff's reputation is relates to malice?

MR. YU:  It relates to actual malice, Your Honor.

THE COURT:  What do you mean "actual malice?"

MR. YU:  Well, that's the standard in which --

THE COURT:  But I mean, malice is from the standpoint of the defendant.

MR. YU:  Well, right.  And if our client, Mr. Byrne, had reasons to believe -- general reason to believe that these statements are true, then he wouldn't have acted with actual malice.

THE COURT:  But how -- what evidence will there be that he believed them to be true?

MR. YU:  I believe there is deposition transcripts that will highlight that plaintiff will put on, at least that is my understanding from reviewing the exhibit list.

THE COURT:  Well, are there transcripts where there -- the plaintiff has not objected to parts of the transcript where defendant said he believed something to be true?

MR. BARBER:  Your Honor, as -- as you know, we have cut the transcript dramatically, number one. Number two, cross-designations, you reviewed those yesterday.  And I don't believe there's anything that has been cross-designated.  Or I'll be happy --

THE COURT:  What specific designation are you referring to when you say that there's a part of the transcript where Byrne said he believed certain things

31

to be true -- certain -- certain alleged prior acts of corruption to be true?

MR. YU:  Well, I think it's throughout --

THE COURT:  What -- give us the page and line number.

MR. YU:  I don't have that at this moment, Your Honor.

THE COURT:  What's that?

MR. YU:  I don't have that page and line number.

THE COURT:  Then take the transcript right now -- I'll call another recess -- and tell me exactly where it is, and the plaintiff should look at the transcript themselves.

MR. YU:  Very well, Your Honor.

THE COURT:  Mr. Hansen, do you -- you seem to have the most familiarity with things.  Do you know what he is talking about?

MR. BARBER:  I frankly do not, Your Honor.  And as the Court ruled yesterday --

THE COURT:  Well, then -- then sit down right now and -- and find the part of the transcript that you rely on.

I'll take a recess.

MR. BARBER:  Your Honor, during your recess, is

32

Ms. Lambert -- she's off the team; is that correct?

THE COURT:  Yeah.

Remove yourself from counsel table, Ms. Lambert.

MS. LAMBERT:  Yes, Your Honor.

(Recess.)

THE COURT:  The question I asked, have you resolved that question?

MR. YU:  I was -- I'm sorry.  Go ahead.

I did not find it, Your Honor.  However, I'd like to -- there is some changes in our attorney-client relationship.  I just want to address the Court on something, if I may.

THE COURT:  Are you changing your relationship with defendant Byrne?

MR. YU:  Yes.

THE COURT:  I mean, that must have happened in the last hour.

MR. YU:  It happened in the last ten minutes, Your Honor.

THE COURT:  I mean, how do things -- I mean, there is a limit to all of this.  I mean, I'm not pointing the arrow at you, but somebody has to take responsibility.  It can't be a moving target.

MR. YU:  It is not a moving target, Your Honor.

And I don't plan to --

THE COURT:  Well, tell me before I --

MR. YU:  When me and Mr. Neff were retained on this case from Ms. Lambert, we came on with the expressed understanding that we were going to know our respective role, which is a support role of this trial. As the Court noted, we just came on the case, and I want to just to be completely candid with the Court.  When I came on case, it was with the 100 percent understanding that our roles are going to be supporting Ms. Lambert.

Now, I did not believe that the pro hac vice would get denied.  Quite frankly, she has a good standing with the Michigan Bar.  I did not expect the Court's denial.  I respect the Court's ruling.  However, Mr. Byrne has informed us that without Ms. Lambert on -- being off the case, we're not authorized to represent him.

THE COURT:  All right.  So you're off the case.

MR. YU:  I would ask, without prejudicing Mr. Byrne, if we -- obviously, with me and Mr. Neff off the case, we would like to put this case off so he can find adequate competent counsel that is ready to proceed.  There are various logistical issues with the designation of transcript that was not resolved that I know of.

THE COURT:  Well, you know, if there was something in -- there are major problems with the cross-designations.  I mentioned those yesterday that they were untimely and very untimely.  And not only untimely, but misleading because in the first instance, they agreed with the designations of the plaintiff and then changed their minds as -- happens almost hourly here.  And -- but I said I would nevertheless consider it.

But the plaintiff is the master of what it wants to designate.  So if there's something in the designations that you made that you want to eliminate, you can always say, "I'm not going to use it."  In other words, when you designate something, that doesn't mean that you have to use it.  You can decide, well, I don't want to use it, or I don't want to use any of it or some of it.

So what is the -- what is the plaintiff's position regarding where we are right now?  I mean -- I mean, the -- the rule is that the plaintiff can fire -- or a party can fire their lawyer at -- whenever they want.  But you know, context is always important.

And -- and are there limits to -- to the shenanigans that's going on.  And I don't use the word "shenanigans" lightly.  This is -- I used the term

35

before.  This is really like a three-ring circus.  I mean, I've never seen this type of -- of -- of -- of -- of procedures.  And I mean, not that I'm an oracle, but I've been at this quite a while.  And this is really even shocking to me.  And like I've said, I've been exposed to a lot of shocking things.

So given -- knowing that you want to protect your client's interest, what do you suggest the Court address at this time?

MR. BARBER:  Your Honor --

THE COURT:  Take the lectern.  Whoever wants to speak to it can.  I mean, I'm not necessarily going to follow what you say, but at least I want to hear your viewpoint.

MR. BARBER:  Thank you, Your Honor.  At this time, it appears defendant has failed to appear for trial either in person or through counsel.  There is no lawyer here authorized to represent him.  Mr. Murphy did not appear.  There's no one else here authorized to defend him.  It would appear under Rule 55, he has failed to plead or otherwise defend that an action for affirmative relief that he should be placed in default.

THE COURT:  I'll consider that.

Let's -- the jury, you know -- we have, as I said yesterday, 60 ready to be here.  But given what

we've experienced this morning, I had to hold them, and then the jury department asked if they could send them to lunch.  So what I suggest we do is we reconvene at 1:00 o'clock.

MR. BARBER:  Yes, Your Honor.

THE COURT:  Maybe we'll have a better idea of where we're going then.  And it gives me a little more time to think about the moving ball.  Okay.  Thank you.

MR. BARBER:  Yes, Your Honor.

THE COURTROOM DEPUTY:  All rise.  This court is in recess.

(Whereupon, lunch was taken.)

THE COURT:  I'm back with the parties and counsel.  I asked Mr. Murphy to be here.  I understand he is.

Would you come forward, Mr. Murphy?  Would you take the lectern.

MR. MURPHY:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.  I want to know when you were first notified that you were being replaced.

MR. MURPHY:  I was notified by e-mail this morning.

THE COURT:  This morning?

MR. MURPHY:  Yes.  And I was instructed that --

I was not to do any other work and I was done.

THE COURT:  And was the e-mail from defendant Byrne?

MR. MURPHY:  It was from Mr. Byrne.  I complied with his instructions.

THE COURT:  I see.  I see.  I turned over all the files by Dropbox, provided counsel with all the information I had so they should be ready to go.

THE COURT:  And before that, you were not -- you had not turned over your files?

MR. MURPHY:  Well, because I only found out this morning and I had to go back to the office.  We have a Dropbox.

THE COURT:  I see.

MR. MURPHY:  So once I got back to the office, we were able to Dropbox everything over.

THE COURT:  I see.

Mr. MURPHY:  It was a simple task, but I just couldn't do it being here.

THE COURT:  All right.  Thank you.  You may be seated.

MR. MURPHY:  Thank you.

THE COURT:  Okay.  I'm going to issue an order to show cause why a default shouldn't be entered for the plaintiff on the basis of Rule 37 and the inherent power

of the Court.  And I'll have a hearing on that tomorrow morning at 9:30.

And of course, whether Mr. Murphy, you're -- by the way, were you instructed to make a motion to withdraw?

MR. MURPHY:  No.  My understanding was because counsel had filed a notice of association, that motion was not necessary.

THE COURT:  I see.

MR. MURPHY:  Because they'd be here and were competent to represent --

THE COURT:  Nevertheless, I want you to inform Mr. Byrne that there is this order to show cause, and the Court will have a hearing tomorrow morning at 9:30 why default should not be entered against him for violations of Rule 37 and for conduct which is -- which is offensive to the inherent power of the Court.

MR. MURPHY:  Is the Court requiring me to be here, or am I excused?

THE COURT:  I want you to be here.

MR. MURPHY:  I -- okay.  I just wanted to know what you wanted me to do.

THE COURT:  Well, that's what has to happen.

MR. MURPHY:  Okay.

THE COURT:  And I'll deal with it then,

and the -- and I know anyone can weigh in.  Okay.

MR. MURPHY:  Thank you.

THE COURT:  Thank you.

(Whereupon, proceeding adjourned.)

- - -

UNITED STATES DISTRICT COURT

40

# C E R T I F I C A T E

ROBERT HUNTER BIDEN                      :

                    vs.                  :   No. CV-09430-SVW-PD

PATRICK M. BYRNE                         :

I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

_____/S/_____          _07/29/2025_

MARIA R. BUSTILLOS                    DATE
OFFICIAL REPORTER

UNITED STATES DISTRICT COURT