# EXHIBIT D

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

- - -

**HONORABLE STEPHEN V. WILSON, DISTRICT JUDGE PRESIDING**

ROBERT HUNTER BIDEN,                )
                                    )
        Plaintiffs,                 )
                                    )
                                    )
                                    )
    vs.                             ) NO. CV 23-09430-SVW
                                    )
                                    )
                                    )
PATRICK M. BYRNE,                   )
                                    )
        Defendant.                  )
_____ )

**REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS
(CONTINUED)**

*ORDER TO SHOW CAUSE [307]*

LOS ANGELES, CALIFORNIA

WEDNESDAY, JULY 30, 2025

MARIA R. BUSTILLOS
OFFICIAL COURT REPORTER
C.S.R. 12254
UNITED STATES COURTHOUSE
350 WEST 1ST STREET
SUITE 4455
LOS ANGELES, CALIFORNIA 90012
(213) 894-2739
MADAMREPORTER.COM

# A P P E A R A N C E S

**ON BEHALF OF THE PLAINTIFFS,**
**ROBERT HUNTER BIDEN:**                     EARLY SULLIVAN WRIGHT GIZER
                                             and McRAE, LLP
                                             BY:  BRYAN M. SULLIVAN, ESQ.
                                             6420 WILSHIRE BOULEVARD
                                             SEVENTEENTH FLOOR
                                             LOS ANGELES, CA 90048
                                             (323)301-4660


                                             EARLY SULLIVAN WRIGHT GIZER
                                             and McRAE, LLP
                                             BY:  ZACHARY HANSEN, ESQ.
                                             6420 WILSHIRE BOULEVARD
                                             SEVENTEENTH FLOOR
                                             LOS ANGELES, CA 90048
                                             (323)301-4660


                                             RICHARD A. HARPOOTLIAN, P.A.
                                             BY:  RICHARD A. HARPOOTLIAN
                                             1410 LAUREL STREET
                                             COLUMBIA, SC 29201
                                             (803)252-4848


                                             RICHARD A. HARPOOTLIAN, P.A.
                                             BY:  PHILLIP D. BARBER
                                             (803)252-4848

UNITED STATES DISTRICT COURT

3

**A P P E A R A N C E S (CONT'D)**

**ON BEHALF OF THE DEFENDANT,**
**PATRICK M. BYRNE:**            LAW OFFICES OF TOM YU, APC
                                BY:  TOM YU, ESQ.
                                10803 FOOTHILL BOULEVARD
                                SUITE 112
                                RANCHO CUCAMONGA, CA 91730
                                (844)998-1033


ALSO APPEARING:  DANIEL REYES, TRIAL CONSULTANT
                 MARTA KISS, TRIAL CONSULTANT

4

**I N D E X**

PAGE

JURY TRIAL DAY ONE (CONTINUED)...... 6
ORDER TO SHOW CAUSE [307]

PLAINTIFF'S WITNESSES:    DIRECT   CROSS   REDIRECT   RECROSS

(None)

- - -

UNITED STATES DISTRICT COURT

5

**E X H I B I T S**

PLAINTIFF'S                                          RECEIVED      MARKED

(None)

- - -

UNITED STATES DISTRICT COURT

6

LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 30, 2024

-oOo-

(COURT IN SESSION AT 9:10 A.M.)

THE COURTROOM DEPUTY:  Calling item number one, CV 23-09430-SVW-PD: *Robert Hunter Biden v. Patrick M. Byrne.*

Counsel, please stand and state your appearances, please.

MR. SULLIVAN:  Brian Sullivan on behalf of plaintiff.

MR. HANSEN:  Zachary Hansen on behalf of plaintiff.

MR. BARBER:  Phillip Barber on behalf of plaintiff.

MR. HARPOOTLIAN:  Richard Harpootlian on behalf of plaintiff.

MR. YU:  Good morning, Your Honor.  Tom Yu on behalf of defendant.

THE COURT:  Okay.  This is the time for trial. And given my rulings yesterday, there was no appearance by the defendant.  In fact, defendant has never appeared in this case and up till today has never -- well, he filed one declaration with the deposition, but he has filed a -- a declaration.

I made rulings yesterday.  The principle one

UNITED STATES DISTRICT COURT

being that I did not admit Ms. Lambert in her application for pro hac vice.  She has made a motion to reconsider that.  I'm denying the motion for reconsideration.

And as things stand now, as they did yesterday, there is no lawyer of record for the plaintiff -- for the defendant because Mr. Yu and -- said that essentially he was hired last Friday in the capacity of assisting Ms. Lambert and he was dismissed from the case or dismissed himself.  I think Neff was in the same position.  Murphy, who has been the lawyer for the entire litigation, was fired Monday morning -- this past Monday morning.  Today is Wednesday.

Ticktin was the lawyer that the Court reluctantly admitted to practice pro hac vice.  He also was of serious concern to the Court for character reasons, but Court allowed him do be a lawyer in the case.  So technically, he's a lawyer of record, but he isn't here.  And this is the second day that we were supposed to be in trial.

We had 60 jurors waiting yesterday, and I have called the same 60 jurors back today.  And I issued an order yesterday why the case should not be -- the basis of -- why the record should not be the basis of a default judgment for the plaintiff.  And I'll hear some

8

argument on that question.

Even though, Mr. Yu, you're not a lawyer of record, for these purposes, I will hear from you.  So take lectern.

MR. YU:  Thank you, Your Honor.  Thank you, Your Honor.  The Court received the declaration of Patrick Byrne?

THE COURT:  Yes, sir.  I mean, I received it, and I mean, on its face, it is inherently contradictory. I mean, on the one hand, it said that I can't probe this because of obvious privilege questions.  But just what he said, that he dismissed Murphy for several reasons, which are, in his declaration, essentially incompetence and then in the same breath, he says he just realized all these things because Ms. Lambert came out here, I guess, a few days ago or a week ago and noticed these things or she was at pretrial conference -- second pretrial conference.

And that is facially contradicted by her position that she's been his lawyer -- his go-to lawyer historically, that she has been following this case closely.  She's been interfacing with Mr. Murphy.  And what he says, as a surprise, is not credible.

But beyond that, let me hear what you're saying.

UNITED STATES DISTRICT COURT

MR. YU:  Yes, Your Honor.  I want to just pivot very briefly and point the Court to paragraph 4 of the declaration in where -- I will summarize that Mr. Byrne was relying on Mr. Murphy's representation, that he did not need to appear for trial, and that the plaintiff, in Mr. Byrne not showing up, would not be prejudiced.

For the purposes of the Rule 55 --

THE COURT:  Well, I mean, let's take it one step at a time.

MR. YU:  Yes, Your Honor.

THE COURT:  I mean, that wasn't incorrect.  A party doesn't have to appear.  There is no requirement that Byrne appear.  And I mean, I don't know if this was the strategy, but the -- the -- there was an explanation for his not appearing in that he was supposed to be the link for the plaintiffs to establish punitive damages.  And if he's not here and he wasn't asked questions regarding punitive damages in his deposition, then a reasonable Defense lawyer would think that would handicap the plaintiff, if they didn't have other probative evidence.  And they didn't appear to at time.

So -- but I never -- in terms of his appearing today, now, Murphy can't be accountable for that because he was fired.  And someone, either you or whoever was fired, could have said to him, "Show up."  I mean, the

last we heard, even though he's in Ghana and Dubai on other times, a week or two ago, he was in the East Coast.  So he's not here to tell me anything.  He has his declaration.  And I'm hearing this now from a lawyer I shouldn't even listen to because you're not his lawyer.  But I am going to listen to you.  So go ahead.

MR. YU:  Thank you, Your Honor.  And I really appreciate the Court's indulgence on this issue.  The -- under the excusable neglect prong, as far as Mr. Byrne's absence, I think a reliance of counsel's advice not to appear --

THE COURT:  Who told him not to appear?

MR. YU:  My understanding is Mr. Murphy told him --

THE COURT:  Well, he told him he didn't have to appear for the reason that I just gave.  That was when Murphy was the lawyer, and -- and I mean, it was obvious that that was a strategy.  And there was nothing wrong with the strategy.  Actually, it -- it was perhaps a wise strategy.  Because on the defamation part of the case, the plaintiff limited themselves to $1 nominal damages.

MR. YU:  Sure.

THE COURT:  So the big prize here was punitive damages.  And -- and Murphy took the position that this

UNITED STATES DISTRICT COURT

11

was the best strategy.  So I see -- I mean, I'm reading into it, but it seems pretty obvious.  That seems like it was.  I mean, there is no -- nothing in the record that says Murphy told him not to be here today.

Murphy -- how could Murphy do that?  Murphy was given a -- so Murphy said, not even a phone call -- some kind of fax or something or e-mail Monday morning that he's terminated.  So -- so as far as Murphy's concerned, he had no obligation to interface with the client beyond that.  Plus, he knew that the client had chosen a host of new lawyers.

MR. YU:  Yes, Your Honor.  I am -- and I apologize if I --

THE COURT:  Who -- who retained you?  Was it Byrne, or was it someone else?

MR. YU:  Yes, Your Honor.

THE COURT:  So you spoke to Byrne?

MR. YU:  I -- I don't want to break -- I --

THE COURT:  Well, I mean, where is the privilege?  I'm just asking you who retained you?

MR. YU:  Through Ms. Lambert, I was retained by Mr. Byrne.

THE COURT:  So he never -- so you never spoke to Mr. Byrne?

MR. YU:  Correct.

12

THE COURT:  All right.

MR. YU:  But the issue before the Court is the absence of a defendant.  I'm not here to analyze or evaluate the trial strategies by Mr. Michael Byrne.

THE COURT:  All right.  Well, let's get to -- I mean, it is a multi-factor test.

MR. YU:  Yes, yes.

THE COURT:  And you don't have to emphasize the importance of the factor regarding that trial should be decided on the merits.  That's -- you know, a very important factor in the analysis.  And if I grant the default, a trial would not be determined on the merits.  But there are other factors.  Go through them one by one.  Do you have the factors before you?

MR. YU:  I do have the factors.

THE COURT:  Well, go through them.

MR. YU:  Well, I want to -- I want to emphasize a particularity of the reliance on counsel.  And I think that is where we -- I say we have a difference --

THE COURT:  Reliance on counsel in what regard?

MR. YU:  Well, because -- well, reliance --

THE COURT:  Counsel, you mean Mr. Murphy?

MR. YU:  Yes.  Of -- not --

THE COURT:  Hold on.  Tell me how that shapes this analysis.

13

MR. YU:  It shapes this analysis for the following reasons, Your Honor:  Number one, if, yes, Mr. Murphy was Mr. Byrne's counsel up until Monday morning, the reliance of not showing up, I believe, should not be used against Mr. Byrne just because he fired Mr. Murphy.  That trial strategy and the trial appearance was formulated way before the decision not to appear.

And when the Court -- obviously saying, "Well, you're not his counsel today.  Why are you here?  Why you're not here?"  The Defense team, through Mr. Murphy and Mr. Byrne, made that strategy.  That was a commitment and a trial strategy that was formulated before the termination of that attorney-client relationship.

And so in reliance on that, I think we, as the Defense, just speaking on this issue alone of the nonappearance, which is the essence of the default -- I think we just want to make sure the record is crystal clear that I believe, on behalf of Mr. Byrne, representing to the Court, that Mr. Byrne will be prejudiced now because he has relied on his former counsel's advice not to appear at trial.

THE COURT:  All right.

MR. YU:  And specifically, the -- the reasons I

14

think the Court, I'm sure, has reviewed prior to issuing the denial of reconsideration are some of grave concerns that was brought to Ms. Lambert's attention recently concerning --

THE COURT:  That -- that seems so unbelievable because she says she's been following the case closely. She's been interfacing with Murphy.  She's his go-to lawyer and has been.  And in other words, she made it appear from her remarks yesterday that he trusts her.

And there's -- the decision that we're talking about -- in other words, he was going to appear, then not.  And probably, that was based upon what happened at the pretrial conference, based upon the Court's ruling about all the newspaper articles and -- that are nonuse. How is it that she wasn't a part of that decision?  I mean, I'm not speculating.  I'm just looking at what I know.

MR. YU:  Your Honor, for -- the main reason is: It wasn't until the 28th of July, on Monday, that Ms. Lambert discovered the contradicting inconsistencies from Mr. Murphy's representation.  And so here we are.

THE COURT:  What -- what representation?

MR. YU:  Well, first, Ms. Lambert discovered that Mr. Murphy did not have the video depositions that Mr. Murphy had promised Mr. -- Mr. Byrne that was going

UNITED STATES DISTRICT COURT

to be produced.  There were -- and there were also an
e-mail that we -- Ms. Lambert did not find out until
yesterday that Mr. Murphy never ordered the depositions
in order to save Mr. Byrne money.  Those factors wasn't
discovered until a day ago.

THE COURT:  I mean, but all the depositions are
here.  I mean, is there some -- are the depositions not
here?

MR. YU:  The video deposition, my
understanding, Your Honor, is that it was not ordered
from their text -- the court reporter company.  You
actually have to order it.

THE COURT:  All right.  Let's get beyond that
and get to -- in my view, the defendant had no
reasonable belief that Ms. Lambert would be his lawyer
because it was a motion made at the eleventh hour.  As
the record shows, she committed gross ethical violations
before a Court in Colorado and was sanctioned $50,000.
I think she's either under investigation or under
charges in a criminal case.  She was denied pro hac vice
formally in Florida.  She was denied, as of a month ago,
a pro hac vice in that case in Colorado.

And it would be unreasonable to think that she
would blithely appear the day before trial, make her
application before the day before trial, and be his

lawyer.  That, to me, isn't a reasonable -- that isn't what a reasonable person would do.  And I take that in the context of someone like Byrne who is familiar with litigation, who is an educated man.  And I mean, that's just -- that's not a finding.  That's just my impression.  So -- so go ahead.

MR. YU:  Your Honor, I just want to make sure the Court understands.  I did not know anything about the things that the Court just indicated; however, what I do know undisputed is that Ms. Lambert is an active member of the Michigan State Bar.

THE COURT:  I know that.  Let's not reargue the case.  The fact that she's a member of -- of the bar, in good standing of another state's bar is -- is a factor.  But it's also -- a -- a -- one factor.  And if the Court that she's applying to has serious concerns about her ethical conduct and her ability to try the case ethically, then the Court can deny her application.  And other courts have in other instances.  It's not surprising.  So I'm not accusing you of lying.  You don't have to defend yourself.

MR YU:  I just -- I'll say one thing, and I'll move on to the five factors, Your Honor.

THE COURT:  Yes.

MR. YU:  I think in the -- in the context of

the pro hac vice denial, investigations doesn't mean --
I mean, anybody can be investigated.  And so I'll
move --

THE COURT:  Don't argue that.  Move on.  I'm
listening to you.  I don't have to.

MR. YU:  Yes, Your Honor.

THE COURT:  So make your remarks permanent.

MR. YU:  I will, Your Honor.  The factors under
the default, I want to focus on the fifth factor because
I think --

THE COURT:  Go through them all.

MR. YU:  Very well, Your Honor.  On the public
interest, I think every case has its own set of public
interest for expeditious litigation.  Every case has
that.  This is a very unique case, as the Court made
some remarks yesterday about the context and the
circumstances surrounding --

THE COURT:  It is only unique because the
defendant has made it unique.  There is nothing unique
about the case.  Defamation cases are common-law cases.
They have been tried in courts hundreds of years.  There
is nothing unique about a defamation case.  The case is
unique because of all the manipulations that the Court
has to -- has had to endure.

So, yes, in the first factor, there is an

18

interest in the expeditious culmination of trials.  The case has been continued a number of times.  There have been four pretrial conferences.  The original trial was set, I think, at a trial setting conference in March of 2024, which is 15 or 16 months ago.  There were some delays, and I acknowledge some of those delays.  We're not unreasonable in that the effort to gain access to FBI Agent Smith was necessitated by the Justice Department wanting to grant permission to, but...

Okay.  That's factor one.  Go to factor two.

MR. YU:  And just on that issue, before I move on, Your Honor, is that, you know, we've -- in relying on this case going forward, we've also subpoenaed one of our other witnesses who is prepared to testify.  On that second prong --

THE COURT:  What other witness is that?

MR. YU:  We had Mr. Moynihan subpoenaed, and he's --

THE COURT:  Oh, that's right.

MR. YU:  Right.  And so on the second prong of the Court's need to match the docket, there is -- I'm not going to dispute that, Your Honor.  That speaks for it itself.  The Court has a busy docket.  The prejudice prong, I think --

THE COURT:  Well, I do have a busy docket,

and -- and the -- the Court allowed a substantial time for this case to the exclusion of other cases and did that with other trial settings.  So that factor has been met.  But move on to the next factor.

MR YU:  Thank you, Your Honor.  And the prejudice factor, that prong, I think it's the -- I think the hardest for my colleagues under this other side to satisfy because we're essentially asking this case to be put over for a 60-day pretrial hearing so Mr. Ticktin can get his trials that he's engaged in and complete the case on the merit.

I think seeking a $1 nominal damages, plaintiff will be very challenged to make a prejudice showing that how he is seeking the $1 damage will be prejudiced by a 60-day delay for this case.

The --

THE COURT:  The plaintiff is seeking more than $1.  The plaintiff is going to be seeking punitive damages.

MR. YU:  And without kind of diverting too much on that issue, I think there will be a huge hurdle for them to overcome on the issue of directed verdict.  And also, there is no financial net worth discovery propounded, no evidence of such.  And I think the trial brief and the California cases control that issue.  And

20

I believe the Court has addressed that in his pretrial orders in some of remarks the Court has made.

THE COURT: All right.

MR. YU: And so I think that prong heavily favors our side, which -- which kind of transitions to the next prong, which is the public policy in -- in really trying this case on the merit. And so I think they kind of go hand in hand in the bid. In this case, there's -- this case has been in this Court's docket for a long time. There is various issues. I know it is not a very uncommon case to the Court, but there are very specific issues that I think should favor resolving it by a jury on its merit.

And really, the last drastic sanction -- I'm going into the fifth prong -- is that the less drastic sanction should be granting Mr. Byrne a one-time final continuance to put this case on a 60-day continuance for a pretrial conference sometime in October. I did speak last night, Your Honor, with Mr. Ticktin to inform him of the proceeding that happened yesterday. And I was told that he is free in October to try this case.

THE COURT: All right.

MR. YU: Thank you, Your Honor.

THE COURT: All right. Thank you.

Does the plaintiff want to be heard?

UNITED STATES DISTRICT COURT

MR. BARBER: Yes, Your Honor. May it please the Court before I begin, I would just like to maybe correct the record. It was actually Tuesday morning that Mr. Murphy was fired. He was here for pretrial conference.

THE COURT: That's right, the morning of trial.

MR. BARBER: The issue here is defendant firing his counsel -- all of his counsel on the first day of trial. I believe that is the issue. He made his decision to not appear at trial. That was his decision. The first day of trial, he fired all of his lawyers. He has no lawyers here.

The declaration that he filed this morning while we've been in court specifically says that Mr. Yu is not authorized to represent him. That is a sworn statement, that Mr. Yu cannot represent him. He has no lawyers present. So he has left the Court with no options except a continuance or default because if we proceed, the table will be empty. He's -- he has stated that no one is authorized to represent him. So that's the question --

THE COURT: And the lawyer who is a lawyer of record has not weighed in on this matter.

MR. BARBER: Your Honor, our two points on that: First, you know Mr. Ticktin is here pro hac, and

22

there are no retained local lawyers.

THE COURT:  Well, I mean, that -- that could be remedied because, I mean -- but on the other hand, Mr. Ticktin, as we speak now, I've granted his motion. So he's a lawyer of record.  And the one lawyer of record has not addressed this issue.

MR. BARBER:  Correct, Your Honor.  The one lawyer of record has not appeared in this courtroom.  He did not appear for trial even though he made a motion to be admitted to do exactly that.  We just heard that he is occupied with other trials and asking for a continuance so he could finish those because he's engaged with those -- were the exact words used -- and come here.

Your Honor -- and this goes to the prejudice prong.  Plaintiff's counsel are engaged in this trial today.  We're here today ready for this trial and to show up to trial and be told that someone who only appeared the day before or the week before has decided to not appear and so we need to come back in 60 days is -- would be highly prejudicial to plaintiff.

THE COURT:  Well, I mean, in going through the factors that the Court has to consider, I mean, some of them are not necessary to review again.  I mean, shortly, the Court has an interest in expeditiously

moving cases, and that is a factor.  And the Court has been dislocated by all the shenanigans here.

The preference is clear that trial should be decided on the merits.  So I mean, that's not controversial.  So the -- maybe the best thing to do would be to deal with the other three factors.

MR. BARBER:  Yes, Your Honor, and of course, we filed a brief that went through all the factors.  You know, I just mentioned the -- the public interest and the management of the docket.  I spoke to prejudice.  I would say the prejudice to plaintiff is preparing for trial, being here for trial, and then the trial not happening because defendant chose not to show up.  It's not a matter of a delay of 60 days in receiving final relief.  That is not the prejudice the cases speak to on the prong.

THE COURT:  Say that again.

MR. BARBER:  The prejudice to plaintiff is that we are here.  We prepared to present our case.  We cannot present our case because defendant chose not to appear personally or through counsel.  And the cases speak to that.  That is the prejudice under that prong. It is not that we have to wait the length of a continuance to actually receive final relief on the claim; it is that we prepared to be here.  We have a

24

case. We have everything prepared to go, and we can't go because defendant simply chose not to show up. That is highly prejudicial.

THE COURT: What about the argument that the -- I mean, defendant not showing up, meaning the defendant has no lawyer and has not appeared himself to represent himself as he could?

MR. BARBER: That's correct, Your Honor. He made a decision to not be here. I would note that he has publicly posted last Friday he was in Washington D.C. So he's on the East Coast at the moment. So he could easily have come here even -- even after the events of yesterday, he could still have been here today, if he chose to be here.

THE COURT: Well, he did file a declaration.

MR. BARBER: Yes.

THE COURT: So...

MR. BARBER: And again, that declaration -- he -- he has no lawyers here. He could have lawyers here. Mr. Ticktin, when he appear- -- filed his motion last Friday of last week to appear pro hac, obviously was aware of the commitments -- the trial commitments that were just mentioned to you today. And he nonetheless appeared knowing he could not be here when he filed that motion to be admitted.

25

THE COURT:  Well, I mean, what you say appears to be so.  But what is the -- the fallout from you, in your view?

MR. BARBER:  Well, Your Honor --

THE COURT:  How should I view that?  That Ticktin was just toying with the Court or what?

MR. BARBER:  Well, I --

THE COURT:  I mean, apparently, he made a motion that -- that had no reality because he has to appear in a case that he knew he wouldn't appear in?

MR. BARBER:  That is correct, Your Honor.  I believe it's been clear.  I don't think it's been controverted or is admitted, in other words, that the intent was that Ms. Lambert would be lead counsel.  The intent was that she would try this case.  That was his expectation when he fired -- when Mr. Ticktin, who is her personal lawyer in a criminal matters in Michigan, and he fired all of his lawyers.  As Your Honor is already --

THE COURT:  Say that last part again, something about Michigan.

MR. BARBER:  Mr. Ticktin represents Ms. Lambert as the criminal defense lawyer in the felony charges that are pending against her in Michigan.

THE COURT:  Mr. who?

UNITED STATES DISTRICT COURT

MR. BARBER:  Mr. Ticktin, the man who appear- --

THE COURT:  Oh, I see.

MR. BARBER:  Yes.  So my point is that there is an association and that the expectation was that Ms. Lambert would be lead counsel.

THE COURT:  When is that case going to trial?

MR. BARBER:  That is not known.  The trial date has been put off twice.  Most recently, I think it was going to be called in July, but they've gotten continuances, and a third trial date has not been set.

THE COURT:  What is the charge in that case?

MR. BARBER:  There are charges of use -- felony charges for use of a computer to commit a crime, conspiracy to use a computer to commit a crime -- basically, breaking into a computer.  It relates to election --

THE COURT:  It relates to -- it sounds like -- does it relate to the sanction?

MR. BARBER:  Yes, Your Honor.  It relates to allegations regarding the 2020 election.  The criminal allegations are that she obtained voter --

THE COURT:  That was the -- the -- the basis of that case against Dominion; correct?

MR. HARPOOTLIAN:  Absolutely.  Dominion as a --

as a voter machine -- voter software company.  The allegations -- the criminal allegations in Michigan are that Ms. Lambert and another person obtained -- illegally obtained voter tabulation --

THE COURT:  I mean, whatever it is -- as I said in my order, I -- I --

MR. BARBER:  Yes.

THE COURT:  There's a charge.  I have to presume that she's innocent of the charge and that wasn't the basis of my -- my decision.

MR. BARBER:  Yes, Your Honor.  And returning to the factors, we're on third factor, prejudice, and we cited a case in our brief, a recent case out of this Court, you know, *Thompson v. Gomez*, which is a 2022 case.

THE COURT:  Is it this Court?  Do you mean me or somebody else?

MR. BARBER:  I apologize.  It is not this Court.  I -- that was a misstatement by mean.  It is the Eastern District.  I apologize for that error.

But that recent case here in California found the parties unquestionably -- that is a quote -- were prejudiced by the opposing party's failure to appear at trial because they, quote, "expended time and incurred substantial cost in preparing their case, appeared in

28

person on the first day of trial and were ready to proceed." That's -- I mean, that is the case law. That is the prejudice. When you don't show up to trial, you prejudiced the people who relied upon you to show up to have an adversarial proceeding.

THE COURT: Well, I mean, like I said, prejudice is a factor, and it is an important factor. But it has to be considered not in isolation, but with other factors. So...

MR. BARBER: Yes, Your Honor.

THE COURT: So that's what courts have to do.

MR. BARBER: And then proceeding, the fourth factor of the case law says, "Always weighs against the default, which is the presumption for the merits." I would suggest that in this case, that is a little -- weighs a little less because punitive damages prove up. The only disputed element of defamation, actual malice, would be litigated. Evidence would be presented. It wouldn't be adversarial, so the factor does weigh against a default but maybe a little bit less.

THE COURT: You said something in your most recent filing of maybe yesterday, that you were of the view -- and you didn't cite authority -- that if default was granted, that the Court would have to hold a -- a jury trial on punitive damages? Was that what you were

trying to say?  I -- I couldn't quite grasp it.

MR. BARBER:  We're requesting that, Your Honor. So under Rule 50, if a default were entered -- default judgment were entered, we would suggest that there would be a -- an evidentiary hearing on punitive damages under Rule 55 B with a jury present, which the rule requires maintaining the right to jury trial.

THE COURT:  Well, I mean, the jury trial issue -- I mean, generally speaking, when a Court considers a default, it looks at the -- at the pleadings and -- and the prayer.  And it says:  Does the pleading, consistent with what is asked for mesh?  Is it reasonable?  You're saying here it's different?

MR. BARBER:  Yes, Your Honor, we can provide supplemental briefing on this, if you would like.  But the rule is:  If you have an unliquidated damages claim, the finder of fact has to make a finding of evidence --

THE COURT:  Well, do you have those cases -- do you have those cases now?

MR. BARBER:  I can have them very quickly, Your Honor.  That's -- it's a -- but --

THE COURT:  I mean, I'd like to have all the relevant information before me before I make a decision.

So can you e-mail those cases to my chambers, Mr. Hansen?

30

MR. HANSEN:  Yes, Your Honor.

THE COURT:  Can you do it now, or do you have to -- need some time.

MR. HANSEN:  I need just a little bit of time, Your Honor.  I don't think it will take much time.

THE COURT:  I see.  Anything else you want to add to your argument?

MR. BARBER:  Yes, Your Honor.  Of course, the most important factor would be the fifth factor, which is the less drastic sanctions because, again, the only option really before the Court would be to enter a default or a continuance since there would be no one here.  I didn't quite understand defendant's argument.  A continuance is not a less drastic sanction.  It is the relief they're asking for.

The available sanctions are either evidentiary or monetary or, in this case, terminating.  An evidentiary sanction doesn't really help if you're not going to have a trial.  As we argued in our brief, I don't think a monetary sanction would be helpful.  It would probably result in prolonged litigation to come up with an amount and try to collect it.  There's -- and we cited a lot of cases when parties don't show up at trial, it is -- it is a usual result of that decision, is entry of judgment against them.

31

THE COURT:  I mean, there are cases where there has been lengthy litigation and -- and a party doesn't show up, and default has been granted.  And of course, the easier cases are when someone just lays down and doesn't put up a fight.  Courts have granted default under both circumstances.

What about the -- I said yesterday in order to show cause, Rule 37 -- and I mean, they're related but the inherent power of the Court.  In other words, the inherent power of the Court is related to upholding the dignity of -- of the process of the Court and not letting the Court be a -- be a backboard for tomfoolery.

MR. BARBER:  Yes, Your Honor.  Plaintiff believes that in this situation the inherent power of the Court would be the appropriate source of authority for a sanction.  The cases speak to Rule 37 sanctions being more appropriate to violations of discovery orders.  There's -- it's Black Letter Law that a terminating sanction could be issued under an inherent power of the Court.

It is cited in our brief, quote, "This is the Ninth Circuit firmly established the Courts have inherent power to dismiss an action or enter a default judgment to ensure the oral administration of justice integrity of their orders."  There's plenty of cases

32

including the U.S. Supreme Court that say that is within the inherent power of the Court. The only requirement is that the Court, to exercise inherent power of sanctions, needs to make a specific finding of bad faith conduct.

I believe that we've outlined, you know, an extensive list of issues. But just in our brief -- but just looking at what's happened here, you know, the past, you know, few days, firing all the lawyers, lawyers took the podium and said that they were prepared to try the case. Your Honor asked questions. The first question you asked: What will you cross-examine the plaintiff on? The answer showed that there was no knowledge of the Court's order in that regard.

Then you sent counsel back to look up a specific citation that you had been assured existed. Counsel came out, said that that citation did not exist but said that they had been fired. So we were back left with no lawyers. Now today, with no lawyer, there's an asking for a continuance. The basis for the continuance is nothing more than a voluntary decision by the defendant to fire his lawyers on the first day of trial.

There's no -- there's certainly -- I don't understand that -- how that can be good cause under good cause order. We've cited a case -- cases in here that's

actually come up before.  A decision to fire your lawyer is not cause for -- to avoid a default judgment.  If you fire your lawyers and don't have one when trail comes up and you knew when the trial was, that's your decision.  Mr. Byrne, the defendant, there is no allegation that he's incompetent.  He made a decision to fire all of his lawyers on first day of trial.  That was his decision.

And plaintiff asked that he be held to his decision.

THE COURT:  All right.  I think I have the arguments.  I'm going to recess and think about the arguments, and you're going to send me, Mr. Hansen, the cases that you have.

MR. HANSEN:  Yes, Your Honor.

THE COURT:  Okay.

MR. HANSEN:  I don't believe it will take much time.

(Recess.)

THE COURT:  All right.  Thank you all for your indulgence and waiting so long, but I had to think hard and long about the issue.  I mean, there's no question that the defendant has delayed the proceedings.  And there's no question that I have to consider the factors that relate to default.  And my -- my view is that given the framework that I have, the sanction of default would

34

be too severe.

I say that because the defendant has been defending the case for over a year and a half, notwithstanding the episodes which I'm not going to repeat about terminating lawyers and trying to insert a lawyer who he had -- or should have had serious doubts about whether she would be admitted.  He has indicated a -- a desire to litigate the case and has litigated the case.  And, of course, there is a most important factor of a public policy that trials should be decided on the merits.  And -- and the -- the conclusion the Court has reached that for examining the evidence and the applicable case law is that under these circumstances, it would not be -- the Court would not be on firm ground in granting default for improper conduct alone.

Having said that, I am going to give the defendant an opportunity to try the case.  There was a representation that October would be a date.  And if the defendant has to be inconvenienced, it's of the defendant's making.  And so I'm going to set a trial date of October 14th.  And the lawyer that is selected by defendant to represent him must be a lawyer admitted to practice in this court, or if not, a lawyer who makes a motion pro hac vice no later than August 15th.

I am going to make a further ruling about what

can occur on this intervening period.  In this intervening period, I am going to allow the plaintiff to take further discovery of -- of the -- of the defendant regarding his financial condition.  That would include a demand for documents and a deposition.  The plaintiff should do that promptly.  And unlike -- and since this case is before me now, all discovery matters will be handled by me, not the magistrate.

And I mean, when it comes down to it, while we've had a tremendous amount of briefing and -- and rulings, like most cases, it -- it isn't that complicated.  I mean, the defendant said that he had this meeting with this Iranian undercover government person and that this broad -- was arranged with some Pakistani person, and I'm not going to get into the details, but then he went on to say that he met his handler, Moynihan.  And defendant represents himself as some sort of unpaid and undocumented agent, undercover or -- foreign agent or government agent.  And then that he told these things to Moynihan.  Moynihan introduced him to this FBI agent.  The plaintiff spoke about the secret recording he made with the Iranian.  His claim, in part, was that it supported the -- his version of what the Iranian person told him.  At least my view of the tapes, is it doesn't.  And -- but I'm not the

factfinder.

And that -- then there are all contradictions with Moynihan and the agent, which are not insignificant.  And then -- then there's the question of whether he acted with malice.  And that is whether under the facts that anyone could think that he truly believed what he said to Moynihan, or what his story is now and whether it was the type of story that required more investigation before publishing it.  He republished it.  That's one aspect of malice.

And then -- I mean, as we pointed out in the pretrial:  Unless he testifies, all the reports, newspaper article, and Ziegler report, et cetera, are not relevant, unless he testifies and testifies that he read these reports.  And they shaped some of his views of the legitimacy of what the Iranian told him, if, in fact, the Iranian told him those things.  And there aren't many witnesses.  It's Smith, Moynihan -- I mean, they're -- they've deposed.  So whoever comes into the case knows what they have said.  Whether he testifies or not is up to the new lawyer.  I'm confident about my ruling that if he doesn't testify, all these articles are not relevant.

And if he doesn't appear, he's more than a hundred miles from the courthouse.  He can't use his

deposition testimony.  And the only way he could use the deposition testimony would be if plaintiff designated parts of his deposition testimony.  And he could point to parts that they haven't designated that, in the Court's view, would make the parts the plaintiff has designated unfair or misleading.  He can't use parts of the deposition or otherwise to bolster his position.

Punitive damages is -- is a different matter.  There were some concerns about what type of financial evidence the plaintiff would need to argue punitive damages.  But given the delay caused by the defendant, whatever deficiencies, the plaintiff has time to remedy that.

And I'm firm about the trial date.  And I -- I give fair notice, even though he's not represented by anyone here.  I am directing Mr. Murphy to make sure that he gets a copy of this proceeding, specifically my remarks, and that if he doesn't comply with -- with discovery, if it is -- if it is within the bounds of the rules, I will reconsider sanctions, which at that point, hopefully not, but may evolve to default.

So that's it.  It was something I had to consider carefully.  I could have gone the other way, but I think this is the better way.

All right.  That's it.

THE COURTROOM DEPUTY:  All rise.  This Court is adjourned.

THE COURT:  Oh, and the fact that I am allowing the plaintiff to take this additional discovery, does not open the door to the defendant to take any additional discovery.

MR. HARPOOTLIAN:  Your Honor, could I ask one question?

THE COURTROOM DEPUTY:  You all may be seated.

THE COURT:  There's something I didn't say that I wanted to say:  When I admitted Ticktin, it was provisional that he would just be at table as an adjunct to Mr. Murphy to advise him.  In light of new developments, I am not admitting Ticktin.  I am not going to grant his motion pro hac vice.  And to the extent I will -- I'll make that a clearer order.  So the plaintiff, because of these delays, has got to get a new lawyer.  And that's the last thing I have to say.

Did you have a question?

MR. HARPOOTLIAN:  Yes, sir, Your Honor, two questions.  I want to make sure I understand.

So the only additional discovery you're allowing is discovery on the defendant's financial conditions?

THE COURT:  Yes.

39

MR. HARPOOTLIAN:  So we're not going to have -- okay.  You've answered that.

Secondly, and I say this because we have been working very hard to get ready for this trial.  Three of us -- four of us have flown across the country here twice in the last two -- last week basically.  And --

THE COURT:  I think I know where you're going.  If you think that a further sanction is in order, make a motion --

MR. HARPOOTLIAN:  Yes, sir.  Yes, sir, and we will be making a motion.

THE COURT:  -- and I'll consider it.

MR. HARPOOTLIAN:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  All rise.  This court is adjourned.

(Whereupon, proceeding adjourned.)

- - -

**C E R T I F I C A T E**

ROBERT HUNTER BIDEN                            :

                    vs.                       :  No. ^

PATRICK M. BYRNE                              :

I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

_____/S/_____        _07/30/2026_

MARIA R. BUSTILLOS                    DATE
OFFICIAL REPORTER

UNITED STATES DISTRICT COURT