# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |

| | |
|---|---|
| Title | *Robert Hunter Biden v. Patrick M. Byrne* |

Present: The Honorable      STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**      ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [350], [351], AWARDING NOMINAL AND PUNITIVE DAMAGES, GRANTING PLAINTIFF'S MOTION TO ENFORCE SANCTIONS [365], DENYING DEFENDANT'S REQUEST TO APPEAR [359] AND MOTION TO SET ASIDE DEFAULT [369], AND DENYING AS MOOT VARIOUS PENDING MOTIONS AND APPLICATIONS [96], [97], [98], [99], [100], [101], [102], [124], [230], [231], [232], [233], [285], AND [316].

## I.      Introduction

Before the Court is a motion for default judgment against Defendant Patrick Byrne ("Defendant"), filed by Plaintiff Robert Hunter Biden ("Plaintiff") on December 12, 2025. ECF No. 350. For the following reasons, the motion is GRANTED. Also before the Court is a motion by Defendant to vacate default. ECF No. 369. For the following reasons, the motion is DENIED. Finally, before the Court is a motion by Plaintiff to enforce the Court's prior order granting monetary sanctions. ECF No. 365. For the following reasons, the motion is GRANTED.

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

## II.     Relevant Background

### A.  Underlying Factual Background

The Court provided a comprehensive summary of the background in this case and some relevant analysis in its order of July 18, 2025, denying Defendant's motion for summary judgment. ECF No. 268. In the interest of efficiency, the following summary is abridged.

On June 27, 2023, the *Capitol Times Magazine* published an article containing an interview with Defendant. In that interview, Defendant claimed that Plaintiff had attempted to leverage Plaintiff's filial connection with President Biden to secure an $800 million bribe from the government of Iran in exchange for favors from the government of the United States—namely, unfreezing $8 billion in frozen Iranian funds and favoring Iran in negotiations related to the Iran-nuclear deal.

In response to the publication of that accusation, Plaintiff filed the instant lawsuit on November 8, 2023, alleging defamation by Defendant. Defendant, however, disputed that Defendant had made the statements with "actual malice." Defendant asserted that he had thought the statements to be true because Defendant had been told about the alleged bribery scheme by Mehdi Firouzian, an Iranian government official. However, Defendant did not allege that Firouzian had claimed to have had any direct contact with Plaintiff, nor that Firouzian had provided Defendant with any direct evidence to support the story. Defendant merely alleged that Firouzian claimed an unnamed associate of Plaintiff's, whose father was an official in Pakistan's defense ministry, had represented that that unnamed associate was seeking a bribe on Plaintiff's behalf. For his part, Defendant did little to further investigate the alleged allegations before publication, nor could Defendant provide to this Court, throughout the course of litigation, any documentary evidence that could allow a reasonable person to believe the story to be true.

When ruling on the summary judgment motion in July 2025, it was incumbent on the Court to determine whether there was sufficient evidence to find that Defendant had acted with actual malice. The Court found that even if Firouzian *had* told Defendant the story about Plaintiff's involvement in a bribery

:

| | Initials of Preparer | DTA |
|---|---|---|

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

scheme, as Defendant alleged, there still existed significant reasons for Defendant to doubt that story's veracity. To believe the story, which in itself was farfetched, Defendant needed to take on faith the word of an official, working for a foreign government with adverse geopolitical interests to the United States (Iran), who himself was recklessly relying on hearsay evidence from an unknown source with ties to another foreign government with adverse geopolitical interests to the United States (Pakistan). Without further investigation or directly corroborating evidence, the Court found that a reasonable jury could easily find Defendant acted at least recklessly with regard to the truth of the defamatory statements, again, even if Defendant *had* been told the story by an Iranian government official, as Defendant claimed.

Moreover, the Court further found that ample evidence supported a finding that Defendant *knew* the story to be false, and much of the narrative describing the covert meeting with an Iranian government official was fabricated. Defendant's story of the meeting and representations about Firouzian's communications were contradicted by the sworn depositions of two witnesses, contained internal inconsistencies, and were inherently implausible. Although Defendant alleged to have once possessed a recording of the conversation, Defendant claims he has since destroyed that evidence. Meanwhile, John Moynihan, who Defendant claims was his "handler," testified that the recording shared with him by Defendant did not implicate Plaintiff as a contemporaneous part of a bribery scheme at all. In Moynihan's recollection, although the unidentified speakers in the recording did mention Plaintiff, they indicated that Plaintiff was not aware of any bribery scheme at that time. ECF No. 225 Ex. D at 117: 4-17. FBI Special Agent David Smith, to whom Defendant claims to have sent the recording, and who Defendant claims instructed Defendant to delete the recording, testified that he does not recall receiving or hearing any such recording from Defendant, and he gave no such instruction to Defendant. ECF No. 225 Ex. C at 6:23-8:6. Furthermore, a reasonable jury could find that Defendant's outspoken hostility toward Plaintiff prior to publication of the statements was evidence of bias and discredited Defendant's testimony and allegations.

Given the posture at the time of that order, the Court left to the jury final factual determinations on those issues but found that Plaintiff had produced more than enough evidence to survive summary judgment against him.

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

### B.  Factual and Procedural Background During and After the Scheduled Trial

The case was scheduled for a jury trial on July 29, 2025. That morning, the Court, Plaintiff, and the jury pool were prepared to begin. However, Defendant failed to appear. Furthermore, in absentia and without warning, Defendant terminated his lead trial attorney, Michael Murphy.[1] This last-minute termination delayed proceedings at the expense of the Plaintiff and this Court.

Defendant initially attempted to replace Mr. Murphy with three new lawyers: Eric Neff, Tom Yu, and Stefanie Lynn Lambert Junttila. ECF Nos. 290, 291, 292. Ms. Lambert was not a member of the California Bar, and her application to appear pro hac vice was denied[2] due to her recent history of unethical conduct, which gave the Court reason to doubt she would abide by the Court's rules and practices. ECF No. 295. When Defendant learned that Ms. Lambert was not qualified to represent him in this case, Defendant also instructed Mr. Neff and Mr. Yu to remove themselves. ECF No. 311.

Moreover, Defendant himself, now unrepresented, still failed to appear at trial. Accordingly, the Court issued an order to show cause why it should not enter default judgment against Defendant and ordered the parties to return the following day. At that hearing, on July 30, 2025, Defendant again failed to appear. Mr. Yu, who was not authorized to represent Defendant at trial, argued on Defendant's behalf for a continuance, in lieu of default judgment. *See* ECF No. 307. After hearing arguments, the Court

---

[1] In the early stages of the case, Defendant retained various lawyers, appointing and terminating attorneys Nabil Abu-Assan, Douglas P. Roy, Daniel Corren, Michael Smith, Scott James Street, and John Howard. ECF Nos. 17, 18, 19, 24, 33, 34, 68, and 74. However, from September 17, 2024, until trial, through most pre-trial proceedings, Murphy was Defendant's lead attorney. ECF No. 68. Shortly before trial, Defendant also retained out-of-state attorney Peter Ticktin. The Court initially allowed attorney Ticktin to appear—but only in a supporting role. Ticktin also failed to appear at trial, and for several carefully considered reasons, Ticktin's application to appear pro hac vice was later, retroactively denied. ECF Nos. 278, 307.

[2] Attorney Lambert sought a Writ of Mandamus from the Ninth Circuit Court of Appeals challenging denial of her pro hac vice application, but the Ninth Circuit denied Attorney Lambert's Petition. *Ticktin, et al. v. United States District Court for the Central District of California, Los Angeles*, 25-5811, (9th Cir.) at Dkt. Nos. 2, 5.

:

| | |
|---|---|
| Initials of Preparer | DTA |

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

weighed relevant public interest factors, declined to issue default judgment, and instead allowed a continuance until October 14, 2025, so that Defendant could retain counsel. *Id.*

As a sanction for Defendant's delay of trial, however, the Court reopened limited discovery to allow Plaintiff to investigate Defendant's financial condition and correspondingly ordered Defendant to (1) provide Plaintiff with an email address for electronic service or a physical address for mail or overnight delivery service of documents, and (2) respond to any written discovery requests from Plaintiff within fourteen days. *Id.* However, in direct violation of the Court's order, Defendant provided neither email nor physical address to Plaintiff and remained unresponsive to Plaintiff and the Court. *See* ECF No. 327 at 3:9-11.

On August 14, 2025, the Court set a status conference for August 18, 2025, and specifically ordered Defendant to appear *personally*. ECF No. 318. To ensure Defendant had actual notice, the Court sent copies of the above orders to Defendant's current, active email address, as confirmed by Mr. Murphy, Defendant's erstwhile attorney.[3] However, Defendant *again* failed to appear at the status conference on August 18, 2025, in direct violation of the Court's order. ECF No. 326.

On August 28, 2025, the Court issued an order for Defendant to show cause why Defendant should not be sanctioned or held in civil contempt for violating multiple court orders. ECF No. 330. In that order, the Court specifically warned Defendant of possible sanctions that might follow from Defendant's continued refusal to provide the requested discovery materials, including that the Court may render default judgment against Defendant or hold Defendant in contempt of court. *Id*. The Court allowed Defendant fourteen days to respond. *Id*. However, Defendant *again* violated the Court's order, ignoring the Court's

---

[3] Mr. Murphy furnished this Court with Defendant's active email address within days of serving as Defendant's counsel of record. Moreover, Defendant is a highly educated, sophisticated litigant, with pending lawsuits in two other district courts. Defendant's active engagement in replacing counsel and pursuing appeals in these proceedings also demonstrates Defendant's particular attentiveness to this case. These facts militate to establish that Defendant was actually and timely made aware of this and future orders, and Defendant willfully violated them.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |

| | |
|---|---|
| Title | *Robert Hunter Biden v. Patrick M. Byrne* |

deadline, and entirely failing to make a filing as ordered.[4] Instead, Defendant's erstwhile attorneys filed a petition for a writ of mandamus from the Ninth Circuit Court of Appeals, requesting that the Ninth Circuit force a stay in this matter and direct this Court to reverse its prior decisions on the pro hac vice applications. *Ticktin, et al. v. United States District Court for the Central District of California, Los Angeles*, 25-5811, (9th Cir.) at Dkt. Nos. 1-2. On September 25, 2025, the Ninth Circuit promptly rejected the Petition and motion to stay. *Id.* at Dkt. No. 5.

On September 29, 2025, the Court held a hearing to discuss Plaintiff's motion that sanctions should be issued against Defendant for failure to comply with the Court's prior order alongside other pending requests by Plaintiff for the Court to accommodate the impacts of Defendant's general refusal to cooperate. *Again*, Defendant failed to appear at the hearing. At this point, the continuance previously allowed by the Court to spare Defendant default judgment had nearly elapsed—the delayed jury trial was approximately two weeks away, and Defendant had still not informed the Court about retaining new counsel despite a Court-ordered deadline, nor had Defendant complied with any of the Court's orders providing Defendant with physical and electronic contact information, complying with ordered discovery, personally appearing before the Court, and making necessary filings. Meanwhile, Defendant's preferred attorney was attempting interlocutory appeals to attempt to stay the case and delay proceedings even further. At that juncture, it was evident to the Court that Defendant's open and repeated acts of defiance toward the Court were unambiguous attempts to delay proceedings indefinitely, making it impossible for litigation to proceed. The Court therefore granted the motion for sanctions and instructed Plaintiff to request entry of default.

---

[4] The Court is confident that Defendant received adequate notice of the Court's Order to Show Cause because not only was it sent to Defendant's active email address, but copies of the Order were also posted repeatedly and expeditiously as comments under posts under many of Defendant's posts on the x.com website—an account which has been previously authenticated by Defendant, and which Defendant uses daily. The copies of the Order commented under Defendant's post 'tagged' Defendant and were generally posted within hours or minutes of the posts by Defendant to which they responded. *See* ECF No. 331 Ex. A. It is therefore apparent that Defendant's violation of the Court's order was deliberate.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

On October 8, 2025, default was entered against Defendant. ECF No. 344. Only then did Defendant respond—not substantively, but procedurally, filing a motion to stay proceedings pending an interlocutory appeal to the United States Supreme Court on October 15, 2025. ECF No. 347. On October 18, 2025, Plaintiff opposed the motion. In the context of Defendant's participation in the case since failing to appear at trial, the Court found this motion to be yet another dilatory tactic and declined the requested stay on October 20, 2025. ECF No. 349. On November 18, 2025, Plaintiff filed the instant motion for default judgment against Defendant. ECF No. 350. The motion was set for hearing on January 12, 2026. Under the local rules of this District and the Court's standing order, Defendant's opposition, if any, was due by December 22, 2025. L.R. 7-9; ECF No. 14. *Again*, Defendant failed to file any response. Then, *again*, Defendant did not appear at the scheduled hearing to present an oral opposition. Instead, without warning, a new attorney, Robert H. Tyler, arrived in court, filing a motion less than one hour before the scheduled hearing to make a limited appearance on behalf of Defendant. ECF No. 354. This last-minute appearance of new counsel on the morning of the hearing followed precisely the playbook of dilatory tactics employed by Defendant to avoid trial the previous year, so the Court denied Mr. Tyler's motion to appear. In Defendant's absence, the Court granted Plaintiff's motion for default judgment. ECF No. 354.

## III. Legal Standard

Under Rule 55(b) of the Federal Rules of Civil Procedure, the Court may enter a default judgment following the entry of default. Courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Elektra Entertainment Group Inc. v. Bryant*, 2004 WL 783123, \*1-2 (C.D. Cal. Feb. 13, 2004).

"Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo,*

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

*Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174–75 (C.D. Cal. 2002) (citing *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). "Thus, the plaintiff is required to provide proof of all damages sought in the complaint." *Id.* Moreover, regarding relief to be granted, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed R. Civ. P. 54(c).

## IV. Discussion

### A. The Eitel Factors

The Court has reviewed each of the factors enumerated in *Eitel* and finds that they all support default judgment.

#### i. Possibility of Prejudice to Plaintiff

Defendant has sustained a campaign of dilatory tactics that have indefinitely extended this years-long litigation, while denying Plaintiff his day in court. Meanwhile, Defendant's failure to appear both at trial and the subsequent ordered hearings have come at financial cost to Plaintiff, requiring not only futile trial preparation and travel for Plaintiff, but also extended motion practice, as Plaintiff has sought orders for contempt, sanctions, and other methods to compel Defendant to appear as ordered, participate in discovery, comply with ordered sanctions, and face trial.

Meanwhile, while Plaintiff has been burdened by the need to respond to Defendant's dilatory tactics, Defendant has flagrantly continued to engage in the underlying conduct at issue in this case. For example, on December 9, 2025, Defendant appeared on a show hosted by Alex Jones, where Defendant publicly restated the same statements at issue in this case and played for the public a voicemail discovered in this action and designated as "HIGHLY CONFIDENTIAL," in violation of a stipulated protective order.[5] Defendant's indefinite delay of proceedings has therefore allowed Defendant to continue to freely engage in the conduct for which he is being sued.

---

[5] An account of x.com attributed to Alex Jones posted a fourteen-minute video of this interview ("the Alex Jones

:

| | Initials of Preparer | DTA |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

ii.      Merits of the Substantive Claim

"Defamation is the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or that causes special damage." *Grenier v. Taylor*, 234 Cal. App. 4th 471, 586 (Ct. App. 2015). Importantly, under First Amendment jurisprudence, a public figure, such as Plaintiff in this case, "cannot recover [in a defamation case] unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice, i.e., with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

It is not genuinely disputed that Defendant intentionally published the statements at issue when he unequivocally communicated them in an interview for publication in The *Capitol Times Magazine*. Nor is it disputed that the challenged accusations were statements of fact and unprivileged. The Court also finds no genuine dispute that the statements had a natural tendency to injure the reputation of Plaintiff as they accused him of treasonous, criminal behavior. *See Barnes-Hind, Inc. v. Superior Court,* 181 Cal. App. 3d 377, 385 (1986) ("Perhaps the clearest example of libel per se is an accusation of crime").

Furthermore, clear and convincing evidence shows that the statements were false. Defendant has not been able to provide any documentary evidence to support their veracity, so the only evidence that Plaintiff was involved in a near-billion-dollar bribery scheme is the uncorroborated word of an Iranian government official in a covert meeting, the occurrence of which is only evidenced by the demonstrably uncredible word of Defendant. In fact, even the evidence proffered by Defendant as the basis for

---

clip") on December 9, 2025. As of the date of this Order, this post has been viewed more than 123,000 times and can be found at https://x.com/realalexjones/status/1998532699636539411?s=46. A photograph of the post was also submitted by Plaintiff as ECF No. 351 Ex. C. The following day, Defendant reposted a one-minute clip of the interview, containing a portion of the same defamatory statements. As of the date of this Order, this post has been viewed more than 25,000 times and can be found at https://x.com/patrickbyrne/status/1998830299262710105?s=46. A photograph of the post was also submitted by Plaintiff as ECF No. 351 Ex. B.

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

Defendant's statements tends to show that the statements were false.[6] On the other hand, Plaintiff denies the allegations in the challenged statements. Statement of Undisputed Facts ("SUF"), ECF No. 350, Ex. C ¶ 38. In the totality of the circumstances, after full opportunity for discovery, the evidence is clear and convincing that the statements published by Defendant were false.

### iii.    Sufficiency of the Complaint

Unlike a default judgment issued against a Defendant, who never filed an initial pleading, this case proceeded through discovery until the day of a scheduled jury trial. As a result, the Court need not rely only on the Complaint, which is not only sufficient in its pleading, but is now supported by ample evidence, having already survived a motion for summary judgment.[7] This factor therefore heavily favors Plaintiff.

---

[6] During discovery, Defendant plainly asserted that the only available sources by which to establish the truth of the defamatory statements were: (1) information provided by third parties John Moynihan and FBI Special Agent David Smith, and (2) voicemail recordings of the unnamed son of an official in the government of Pakistan, which were allegedly shared with Defendant by Firouzian. However, neither the affidavit of Mr. Moynihan nor the testimony of Mr. Smith supports this assertion. Moynihan's affidavit does not mention any independent evidence to corroborate the story; in fact, Moynihan admits he lacks any independent knowledge beyond the materials shared with him by Defendant. Moreover, Moynihan's recollection of the recording shared with him by Defendant substantially contradicts Defendant's representations about it. In Agent Smith's deposition testimony, Smith also did not corroborate Defendant's claim that Smith had provided independent intelligence to Defendant, and instead directly contradicted the substance of Defendant's representations as to any communication they may have had. As for the anonymous voicemails, they do not mention a bribe, implicate contemporaneous involvement in any illegal scheme by Plaintiff, or otherwise independently corroborate Defendant's story. Statement of Undisputed Facts ("SUF"), ECF No. 350, Ex. C ¶¶ 39-41, 83.

[7] Plaintiff never filed a motion for summary judgment and sought summary judgment only in the context of an ex parte application for sanctions, filed on the eve of trial, based on Defendant's pretrial conduct. ECF No. 285. The Court never ruled on that application and denies it now as moot. However, it is likely that Plaintiff would have been successful in a motion for summary judgment as to liability, considering the strength of the evidence in Plaintiff's favor. As for the question of damages, as discussed, in depth, *infra*, Defendant is generally estopped from arguing the issue.

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

### iv.    Sum of Money at Stake in the Action

There is a significant sum of money at stake in this action in the form of punitive damages. Generally, this factor would therefore favor Defendant. However, in this case, as is discussed, *infra* IV(B)(ii)(a), Defendant has already waived his ability to argue on the matter of damages by flagrantly disobeying the Court's order to allow discovery on that issue. *See Garcia v. Myllyla*, 40 Cal.App.5th 990, 996; *see also Mike Davidov Co. v. Issod,* 78 Cal. App. 4th 597*, 608-09 (2000). This factor therefore favors Plaintiff.

### v.    Whether Defendant's Default was the Product of Excusable Neglect

Default was entered against Defendant as a sanction for the repeated, intentional disobedience of court orders and unceasing efforts to delay proceedings. When Defendant fired his attorney and failed to appear on the morning of trial, the Court considered entering default immediately. However, instead, the Court allowed Defendant a continuance of several months based on Defendant's representations that he would promptly retain counsel. During that time, not only did Defendant fail to retain counsel in this case as he had represented he would within the timeline ordered by the Court, but Defendant also failed to appear personally before the Court, in direct defiance of multiple court orders, failed to participate in discovery as ordered, and failed to make filings as ordered.

This was not a product of excusable neglect but rather of coordinated strategy. While defying this Court's orders to comply with discovery, appear at hearings, provide information for the Court, meet the Court's deadline for retention of counsel, and make timely filings, Defendant continued to engage in the challenged, defamatory conduct, while his attorneys sought continuances or stays from the Ninth Circuit and the Supreme Court. Defendant is a sophisticated party, who has demonstrated noted attentiveness to this case. The Court and Plaintiff were also rigorous in ensuring that Defendant was made timely aware of the orders and hearings through direct communications via email and Defendant's active x.com account. Furthermore, Defendant's former attorneys were demonstrably aware of the orders as Defendant defied

:

|  | Initials of Preparer | DTA |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

them. Defendant's failure to appear when ordered and general defiance of the Court were calculated and intentional. This is not a case of excusable neglect, and the factor favors Plaintiff.

### vi.    Public Policy Considerations

Strong public policy favors decisions on the merits. In most instances of default judgment, this factor therefore favors the party in default. However, in this somewhat unusual circumstance, robust discovery and argumentation have already proceeded, and Defendant has had every opportunity to proffer evidence in his defense for a decision on the merits. Here, Defendant's evidence is clearly weak. The Court need not find on this posture that no reasonable jury could find the evidence sufficient to defend against Plaintiff's claim. However, in the view of the Court, weighing the evidence, Plaintiff has established his case clearly and convincingly, and Defendant's contention that he harbored a good faith belief in the truth of the statements, even at the time of initial publication, strains credulity. Moreover, sanctioning Defendant's dilatory tactics serves the interest of judicial efficiency, judicial authority, and a Plaintiff's right to have his day in Court. Therefore, on the whole, public policy actually favors default judgment here.

### vii.    Actual Malice

As the Court already discussed, in depth, in its order denying summary judgment, there is substantial evidence that Defendant knew the defamatory statements he made about Plaintiff were false at the time of publication or at least acted with reckless disregard as to their falsity. This is sufficient to establish actual malice. *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1260 (2017).

Given the inherent difficulty in proving the knowledge or doubts of a defamation defendant, "[a] defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice. A failure to investigate, anger and hostility toward the plaintiff, reliance upon sources known to be unreliable, or known to be biased against the plaintiff —such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication." *Sanders v. Walsh*,

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

219 Cal. App. 4th 855, 873 (2013) (citations and internal marks omitted). All such circumstantial evidence is present here.

*First*, Defendant allegedly relied upon sources known to be unreliable or biased against the plaintiff. As discussed, *supra*, Defendant's only alleged basis for believing the bribery accusation to be true was a story told by a government official of a country with adverse geopolitical interests to the United States. The only independent 'corroborating' documentary evidence, to the extent any exists (because it does not actually implicate Plaintiff as a contemporaneous participant in any scheme nor does it describe any plan to commit an act of bribery) are voicemails left by an anonymous party. The evidence is sufficient to show that these sources are unreliable and Defendant's alleged reliance on them as a sole basis for believing a story would be fundamentally reckless.

*Second*, there is sufficient evidence to show that Defendant abjectly failed to investigate. Notwithstanding Defendant's communications with Mr. Moynihan and Agent Smith, which the record indicates Defendant misrepresented, Defendant never authenticated the story before publication. Although Defendant has claimed that Agent Smith identified the speaker on the voicemails as an associate of Plaintiff, the record directly refutes this assertion. In Agent Smith's sworn deposition, not only did he deny identifying the voice on the voicemails, but he denied possessing the voicemails at all. SUF ¶¶ 75, 79, 80, 81, 98, 99.

*Third*, Defendant's prior behavior indicates preexisting anger and hostility toward Plaintiff. On several occasions within a year before publishing the defamatory statements, Defendant made social media posts, celebrating a possible criminal indictment of Plaintiff, making various accusations against Plaintiff, boasting about Defendant's participation in attempts to publicize private information about Plaintiff, speaking about Plaintiff using demeaning language, and sharing private photographs related to Plaintiff. SUF ¶¶ 4-10. After the defamatory statements were published, Defendant continued to publicly manifest hostility toward Plaintiff, perhaps most notably insinuating in a public social media post that Plaintiff's actions had contributed to the terrorist attacks in Israel on October 7, 2023, which resulted in over 1,400 civilian deaths. SUF ¶ 26.

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

In all, Defendant either published the defamatory statements at issue with some belief in their truth or Defendant fabricated them entirely. If, as Defendant contends, he *did* believe at the time of publication that Plaintiff had engaged in the bribery scheme, that belief was based solely on a story communicated by Firouzian, which itself relied on anonymous hearsay. Even in that case, there would be clear and convincing evidence that Defendant acted with actual malice, in the form of recklessness. The record would still show through circumstantial evidence that Defendant harbored hostility toward Plaintiff, relied on an inherently unreliable source, and then failed to investigate before publishing a fundamentally unbelievable accusation against Plaintiff.

However, there is substantial evidence that Defendant *did not* believe the story at the time of publication and merely fabricated the story about meeting with Firouzian and the story Defendant was allegedly told there. Defendant claims to have possessed a recording of the meeting and shown it to both Mr. Moynihan and Agent Smith, but Defendant could not produce the recording for the Court. Moreover, Mr. Moynihan's testimony contradicted Defendant's representations as to the substance of the recording, and Agent Smith denied having received the recording at all. SUF ¶¶ 97, 101-02. Defendant has also claimed, with absolutely no supporting evidence, that he has worked for decades as a covert agent for the United States government.[8] Moreover, Defendant has been dishonest with the Court as he was endeavored to persist in sanctionable conduct, challenging his credibility, generally. The evidence of Defendant's hostility toward Plaintiff also indicates bias and a particular motive for dishonesty in this case. Overall, in the totality of circumstances, by far the most plausible explanation is that Defendant is not credible, fabricates awesome and farfetched narratives to garner attention in the media, and fabricated the defamatory story at issue in this case to damage Plaintiff's reputation.

---

[8] Among other claims, Defendant unironically asserts without evidence that he has carried out numerous secret spy missions to advance American interests, including helping to restore "peaceful relations" in Vietnam in 1994, helping to prevent a war with Iran in 2006, assessing the "computer science capabilities" of Venezuela in 2018, and entering an intimate relationship with 26 year-old Maria Butina to help the FBI gather "intel" on Russia. SUF ¶ 44. Defendant claims that his skills as an intelligence asset have been requested by President Barack Obama and FBI Director James Comey. SUF ¶ 45.

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

In context, the evidence is more than sufficient to show that any insistence by Defendant of a good faith belief in the veracity of the defamatory statements does not overcome the overwhelming evidence of actual malice. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation").

### B. Damages

#### i.    Actual Damages

Plaintiff does not seek actual damages above a nominal amount. Moreover, since Defendant's defamation amounted to an accusation of criminal conduct by Plaintiff, it constitutes defamation *per se* and entitles Plaintiff to nominal damages. *See Barnes-Hind, Inc.,* 181 Cal. App. 3d at 385 ("Perhaps the clearest example of libel per se is an accusation of crime"); *Thompson v. Karen Civ.*, 2:19-cv-5690-RSWL-AS, 2020 WL 8610841, at *9 (C.D. Cal. 2020), *aff'd sub nom. Thompson v. Civ.*, No. 20-55955, 2023 WL 3562968 (9th Cir. 2023) ("in an action for damages based on language defamatory per se, damage to Plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages" and "without presenting evidence of damage, Plaintiff is entitled to receive compensation for this assumed harm in whatever sum the Court believes is reasonable . . . . but at least a nominal sum, such as one dollar") (citing *Contento v. Mitchell*, 104 Cal. Rptr. 591, 592 (1972); Judicial Council of California Civil Jury Instruction 1704) (cleaned up). Accordingly, the Court awards nominal damages to Plaintiff in the amount of $1.

#### ii.    Punitive Damages

"Under California law, punitive damages are appropriate where a plaintiff establishes by *clear and convincing evidence* that the defendant is guilty of (1) fraud, (2) oppression or (3) malice.'" *In re First*

:

| | | |
|---|---|---|
| | Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

*Alliance Mortg. Co.*, 471 F.3d 977, 998 (9th Cir. 2006) (citing Cal. Civ. Code § 3294(a)). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.'" Cal. Civ. Code § 3294(c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.'" Cal. Civ. Code § 3294(c)(3).

Here, the evidence is clear and convincing that Defendant has engaged in intentional misrepresentation with conscious disregard towards Plaintiff's rights. Defendant's defamation went far beyond mere negligence. In fact, Defendant has admitted that after the offending article was published, Defendant repeatedly reposted the article across social media platforms and encouraged his followers on those platforms to promote it further. SUF ¶ 67. In fact, during the pendency of this litigation, even while Defendant was defying the Court's orders and failing to appear at hearings, Defendant appeared on talk shows and restated the same defamatory statements at issue in the case. *See* The Alex Jones clip (where Defendant not only repeated the defamatory statements but also added, explicitly, "[Plaintiff] is suing me for saying this" at "0:49-0:52"). Defendant then promoted those appearances, spreading the defamatory statements to an even broader audience.

Even after extensive discovery has precluded the veracity of the defamatory statements, Defendant has persisted in publishing intentional misrepresentations to the public. Referencing the pending lawsuit while persisting in the defamation, while simultaneously ignoring orders of the Court, demonstrates more than conscious disregard for Plaintiff's rights. Punitive damages are therefore not only appropriate but necessary.

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

**a.** Proper Measure of Punitive Damages

The purpose of punitive damages is "to punish the defendant and deter the commission of similar acts." *Rufo v. Simpson*, 86 Cal. App. 4th 573, 619-20 (2001) (citing *Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 928 fn. 13 (1978). Under California law, "[t]hree primary considerations govern the amount of punitive damages: (1) the reprehensibility of the defendant's conduct; (2) the injury suffered by the victims; and (3) the wealth of the defendant. *Id.* (citing *Neal*, 21 Cal.3d at 928-29).

Generally, then, an award of punitive damages requires analyzing Defendant's wealth, and the record must therefore "contain evidence of the defendant's financial condition." *Id.* (citing *Adams v. Murakami* 54 Cal.3d 105, 110 (1991)). However, California recognizes an exception to the *Adams* rule when a defendant has thwarted plaintiff's ability to supply the requisite evidence. *See Garcia v. Myllyla*, 40 Cal.App.5th 990, 996 (holding that defendant was estopped from arguing that Plaintiff could not argue for punitive damages without evidence of defendant's financial condition where defendant had not provided such documentary evidence despite a notice from the court to do so); *see also Mike Davidov Co. v. Issod,* 78 Cal. App. 4th 597*, 608-09 (2000) (holding that Plaintiff did not need to prove defendant's financial condition to establish that punitive damages were not excessive where such financial records were unavailable due to defendant's failure to comply with an order to produce them).

Here, as in *Myllyla* and *Davidov*, any absence of documentary evidence regarding Defendant's finances is due to Defendant's misconduct. As a sanction for delaying trial, the Court ordered Defendant to comply with discovery, specifically on the issue of Defendant's finances. However, Defendant failed to abide by the Court's order, refusing to provide Plaintiff with an address for service of requests and otherwise failing to comply with the ordered discovery. When the Court warned Defendant that this conduct would estop Defendant from arguing that his financial condition rendered punitive damages excessive, Defendant ignored the Court. ECF No. 330. Since Defendant has thwarted Plaintiff's ability to collect documentary evidence to establish Defendant's financial condition, Plaintiff need not bear a burden

:

| | Initials of Preparer | DTA |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |

| | |
|---|---|
| Title | *Robert Hunter Biden v. Patrick M. Byrne* |

of establishing Defendant's financial condition to prove that a punitive damages award is not excessive.[9] Therefore, the central analysis of what amount of punitive damages is appropriate is narrowed to an analysis of what damages will effect deterrence in the context of the reprehensibility of Defendant's conduct and the extent of Plaintiff's injury.

The Court is also mindful of limitations to punitive damage awards under constitutional due process protections. The United States Supreme Court has clarified that "notions of fairness enshrined in our constitutional jurisprudence" require courts to analyze three "guideposts" to prevent punitive damages awards that are "grossly excessive." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). These are: (1) the degree of reprehensibility of the nondisclosure; (2) the disparity between the harm or potential harm suffered by plaintiff and the punitive damages award; (3) and the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Id.* at 575; *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 418 (2003). However, the Ninth Circuit Court of Appeals has also noted that in cases where capped or nominal damages are awarded, it may be inappropriate to conduct a strict, ratio-based analysis because the nominal damages are not a measure of the damage or severity of a defendant's conduct. *See Arizona v. ASARCO LLC,* 773 F.3d 1050, 1058 (9th Cir. 2014) (citing cases from the fourth, fifth, sixth, and ninth circuits).

Here, Defendant's defamatory conduct was, on its face, highly reprehensible. First, the defamatory statements themselves were of a strikingly reprehensible nature, *see i.e. Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1127 (2003) ("wrongful accusations of criminal conduct...are among the most clear and egregious types of defamatory statements"). Specifically, the criminal conduct Plaintiff has been accused of—treason—is a distinctly heinous crime. Second, the circumstantial evidence strongly indicates that

---

[9] Notwithstanding the fact that Plaintiff no longer bears this burden, Plaintiff has nonetheless provided evidence of Defendant's financial condition through the declaration of a forensic accountant. ECF No. 350 Ex. A. For example, Plaintiff emphasizes that Defendant sold his ownership position in his online retail website for over $90 million, *Id.* ¶ 8, and that in 2024, Defendant publicly posted on social media that he had spent approximately $40 million on political activities. *Id.* ¶ 24. Although the precise net worth of Defendant is unknown, it is evident that Defendant presently possesses substantial wealth. Defendant has also presented no evidence to contradict the above.

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |

Defendant was motivated to defame Plaintiff by hostility and anger toward Plaintiff and Plaintiff's family. Finally, and perhaps most significantly, Defendant's methodical persistence in actively disseminating and promoting these defamatory statements, even after discovery has revealed their falsity (despite stipulated protective orders and while defying the Court's authority), reveals an intent to harm that compounds the reprehensibility of the original publication. Moreover, although the damage to Plaintiff's reputation is difficult to calculate, the extremity of the allegations and the likely size of the audience after repeated publication suggest substantial reputational harm has likely occurred.[10] A sizeable punitive damages award for Defendant's intentional and malicious misrepresentations is therefore unlikely to be excessive.

The Court has also considered the argument that prior tarnishing of Plaintiff's reputation may reduce the reprehensibility of Defendant's conduct. However, under the damages theory of this case, the record is excusably undeveloped as to the relationship between Defendant's conduct and Plaintiff's actual reputational harm. Moreover, it is well established that the purpose of punitive damages is not to compensate a *plaintiff* for an injury but rather to serve the interests of the *public* by deterring future conduct either by the present defendant or others. *Adams*, 54 Cal. 3d at 110 (1991) (explaining the purpose of punitive damages "is a purely *public* one. The public's goal is to punish wrongdoing and thereby to protect itself from future misconduct, either by the same defendant or other potential wrongdoers"); *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757, 810 (1981) ("The primary purposes of punitive damages are punishment and deterrence of like conduct by the wrongdoer and others."). The Court's analysis of punitive damages endeavors, in the public interest, to determine the minimum award necessary to effect deterrence of future, plainly reprehensible conduct by Defendant.

Defendant's prior conduct is instructive to calculate what punitive damages award may be necessary for effective such deterrence. In 2016, Defendant and an associate Mark Mitchell were already found liable by the Supreme Court of British Columbia for writing and publishing articles defaming

---

[10] The Court notes that the reprehensibility of Defendant's conduct and the harmfulness of the defamatory statements at issue is not measured against Plaintiff's particular reputation. The harmful nature of the conduct is a discrete issue, and its reprehensibility is measured irrespective of whether Plaintiff's reputation has been otherwise tarnished elsewhere.

:

| | |
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

Canadian businessman Altaf Nazerali by accusing him falsely, without evidence, and after notice of falsity, among other allegations, of being an arms dealer and a financier of Al-Qaeda and Osama Bin Laden, with ties to Pakistani intelligence. 2016 BCSC 810. The Canadian court found that Byrne and his associate had "engaged in a calculated and ruthless campaign to inflict as much damage on [the plaintiff's] reputation as they could achieve," and that "[i]t [wa]s clear on the evidence that [Defendant and his associate's] intention was to conduct a vendetta in which the truth about [the plaintiff] himself was of no consequence." *Id.* at 97. The Canadian court found Defendant and his associate jointly and severally liable for $1,205,000 Canadian dollars, including $250,000 in punitive damages. This total judgment is equal to over $1.134 million USD today.[11]

The case at bar demonstrates that Defendant was not deterred by that judgment. The behavior—expressing hostility and malice toward a prominent public figure by repeatedly and intentionally damaging his reputation through the repeated publication of accusations that the individual engaged in high-stakes criminal activity with extensive implications internationally—is precisely what Defendant was already found liable for in Canada. Yet Defendant has persisted in that behavior.[12] The Court can therefore confidently surmise that a $1.134 million award would be inadequate to deter this particular Defendant. The Court therefore calculates a punitive damages award of $1.7 million, approximately 50% greater than the total judgment in the prior case. In light of Defendant's history, it is the considered opinion of the Court that this figure represents the smallest punitive damages award that might still accomplish the central public interest of effective deterrence. Moreover, given the relatively marginal increase between the award in the Canadian case for comparable conduct and the award presently calculated by the Court, the Court is confident that such a figure was reasonably foreseeable as a consequence at the time of

---

[11] The Court's calculation assumes a 30% cumulative inflation rate and a conversion rate of .72 U.S. Dollar per Canadian dollar.

[12] It may be noted that Defendant is also being sued in the United States District Court in the District of Columbia for defamation of Dominion Voting Systems, accusing the company not only of rigging the 2016 Presidential election but also of murdering a member of the Democratic National Committee to cover it up. *See* 1:21-cv-02131 at Dkt. 1.

:

| | | |
|---|---|---|
| | Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

Defendant's defamatory publication and therefore could not offend the Constitution's due process protections against excessive punishment.

### C. Default as a Sanction

It is well-established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). The contempt power is necessary to protect a court's ability to prevent the disruption of its proceedings and to enable it to enforce its judgments and orders. *Young v. United States*, 481 U.S. 787, 798 (1987). As such, a party may be held in civil contempt when it "fail[ed] to take all reasonable steps within [its] power to comply [with a specific and definite court order]." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Civil contempt has a remedial purpose. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911). Moreover, unlike criminal contempt, civil contempt contains no willfulness requirement. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). However, a finding of civil contempt must be supported by clear and convincing evidence. *In re Dyer*, 32 F.3d 1178, 1190-91 (9th Cir. 2003).

Defendant Byrne appears to have failed to take all reasonable steps within his power to comply with several specific and definite orders issued by this court. *First*, Defendant—after terminating all his attorneys without warning on the day of trial—requested and obtained a continuance for the express purpose of retaining new counsel, but failed to comply, despite notice, with the Court's deadline that Defendant must do so by August 15, 2025. ECF No. 307. *Second*, Defendant violated the Court's order for sanctions that required Defendant to provide Plaintiff with an email or physical address for service of documents and respond to written discovery requests from Plaintiff within fourteen days. ECF No. 311. *Third*, Defendant violated the Court's order of August 14, 2025, when he failed to appear personally at a hearing held on August 18, 2024. ECF Nos. 318, 326. *Fourth*, Defendant violated the Court's August 28, 2025 Order to Show Cause when Defendant failed to file a response to the Court explaining why he should not be held in contempt or subject to sanctions. ECF No. 330. Defendant's repeated, unequivocal violations of four separate orders by this Court constitutes clear and convincing evidence that Defendant

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

failed to take any reasonable steps within his power to comply with specific and definite orders. It is therefore appropriate for the Court to hold Defendant in contempt.

Furthermore, the Federal Rules of Civil Procedure ("FRCP") specifically mandate that all parties comply with discovery. See Fed. R. Civ. P. 37. As such, when a party fails to obey an order to provide or permit discovery, the court where the action is pending may issue further orders, including: (1) directing that designated facts be taken as established for purposes of the action, (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, (3) striking pleadings in whole or in part, (4) staying further proceedings, (5) dismissing the action in whole or in part, (6) rendering a default judgment against the disobedient party, or (7) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed R. Civ. P. 37(b)(2)(A). In its order on August 5, 2025, the Court sanctioned Defendant for dilatory conduct at trial by reopening limited discovery for Plaintiffs. ECF No. 311. However, despite adequate notice, Defendant ignored this sanction and failed to respond to Plaintiff's requests, furnish Plaintiff with current mailing and email addresses to efficiently administer the process, or otherwise comply with the ordered discovery. In the Court's Order of August 28, 2025, the Court unambiguously warned Defendant that default Judgment may enter against Defendant as a sanction for continued noncompliance. ECF No. 330 at 3-4. Therefore, Defendant's violation of court-ordered discovery independently supports remedial sanctions against him.

Here, as discussed in depth, *supra*, Defendant's violations of Court orders and failure to comply with discovery were accompanied by a general campaign of dilatory litigation tactics and refusal to cooperate with the Court or attend hearings. Moreover, summary judgment would be appropriate in Plaintiff's favor, considering the present record, at least as to liability. On the issue of damages, Defendant's refusal to comply with financial discovery has also estopped him from arguing that point. Therefore, default judgment is non-excessive and appropriate as a remedial sanction against Defendant both for direct violations of Rule 37 and under the Court's broader, discretionary contempt authority.

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
| Title | *Robert Hunter Biden v. Patrick M. Byrne* | | |

### D.  Other Pending Matters

  i.  <u>Defendant's Motion to Set Aside Default</u>

At the hearing on January 12, 2026, when Defendant failed to appear, and the Court granted Plaintiff's motion for default judgment, written order to issue, the Court expressed that it was considering substantial punitive damages. Since that hearing, Defendant finally became responsive to the Court, filing a request to appear and a motion to vacate default. ECF Nos. 359, 363, 369. Plaintiff opposed the motion on March 23, 2026. ECF No. 367. Defendant replied on March 30, 2026. ECF No. 371. In short, Defendant denies knowledge or intent concerning his violation of court orders and blames his misconduct on inadequate service.

Under Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for "good cause shown." In analyzing whether good cause has been shown, courts consider the following three factors: (1) whether the defendant engaged in culpable conduct leading to the default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default would prejudice the plaintiff. *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004). If any one of these three factors weighs against setting the default aside, the Court may refuse to set aside an entry of default. *Id*. at 926. A defendant bears the burden of proving that the default should be set aside. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). The Court has considered these factors and finds that none support vacating default.

The weakness of Defendant's defense and the prejudice to Plaintiff of continued delay have already been sufficiently outlined, *supra*. Moreover, the Court is confident that Defendant was adequately noticed of every order and hearing since he failed to appear at trial. Defendant is a sophisticated litigant, who has shown attention to this case. Filings made by Defendant's attorneys before the Ninth Circuit, seeking to stay the case, also reveal that Defendant's attorneys had contemporaneous knowledge of these proceedings and the relevant orders as Defendant was defying them. Plaintiff effected service to Defendant through an

                   :

          Initials of Preparer  DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

active email address provided by Defendant's former attorney and also applied rigorous effort to notice Defendant through Defendant's active account on x.com.

Whether Defendant actively evaded service or simply received and ignored it is actually irrelevant to the present analysis. In either case, Defendant's persistent dilatory tactics and flagrant violations of this Court's instructions led to default. Therefore, the Court does not find good reason to vacate it. *See Akkelian v. Gevorkyan*, 833 F. App'x 467, 468 (9th Cir. 2021) ("the trial court's denial of a motion to vacate a default judgment will be affirmed if the defendant's own culpable conduct prompted the default") (citations omitted). It is true that Defendant has now begun to respond to the Court, but it has come too late. The Court has already granted a continuance in lieu of default, which Defendant exploited. Given the record in this case, it is evident that were the Court to vacate default, dilatory conduct would continue.

ii.    Plaintiff's Motion to Enforce Sanctions

On September 29, 2026, the Court granted Plaintiff's motion requiring Defendant to pay Plaintiff $34,969.20 as reimbursement for costs incurred by Plaintiff due to Defendant's delay of trial. It should be noted that these costs were calculated to include only the expenses incurred unnecessarily in light of the trial continuance, rather than, for example, copying trial exhibits and depositions, which may have been useful at a future trial.

However, over six months have elapsed since that order, and Defendant has yet to pay Plaintiff the amount owed. Defendant argues that payment is not presently necessary because of inadequate service and because payment should be deferred until after a final judgment has been appealed. As discussed, *supra*, Defendant was sufficiently noticed about Plaintiff's motion for sanctions. Regardless, Defendant has not presented any argument that, if presented at the time, would have changed the Court's disposition on the question. Due to Defendant's culpable conduct in delaying trial, Plaintiff incurred needless expense, a reasonable portion of which is now owed by Defendant in sanctions. Furthermore, such orders for monetary sanctions are immediately enforceable and need not wait for a final judgment to be appealed. *See Newland v. Superior Ct.,* 40 Cal. App. 4th 608, 615 ("monetary sanction orders are enforceable through

:

| | Initials of Preparer | DTA |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-09430-SVW-PD | Date | July 10, 2026 |
|---|---|---|---|

| Title | *Robert Hunter Biden v. Patrick M. Byrne* |
|---|---|

the execution of judgment laws…and are immediately enforceable through execution") (citations omitted). Accordingly, Defendant must pay the full $34,969.20 owed within 14 days of this order or will otherwise be subject to additional penalties.

### iii.     Miscellaneous Matters

Over the course of litigation, several other motions and applications have collected, which have not yet been formally ruled on by the Court. These include several motions in limine. ECF Nos. 96-102, 124, 230-33, an ex parte application for sanctions, ECF No. 285, an ex parte application to enforce the Court's order of August 5, 2025, ECF No. 316, and an ex parte application to compel responses to document requests. ECF No. 329. At this stage, these motions and applications are all moot.

## V.     Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED. ECF No. 350, 351. Default judgment is hereby ORDERED in favor of Plaintiff. Plaintiff is AWARDED $1 in nominal damages and $1,700,000 in punitive damages. Plaintiff's motion to enforce sanctions is GRANTED. ECF No. 365. Defendant is ORDERED to pay to Plaintiff the $34,969.20 owed in monetary sanctions pursuant to the Court's prior order within 14 days of this Order. If Defendant fails to timely comply with this Order, the total amount of monetary sanctions owed by Defendant will increase by $1,000 each day after the 14-day deadline has expired. Defendant's request to appear and motion to vacate default are DENIED. ECF Nos. 359, 369. The remaining pending motions and applications are DENIED AS MOOT. ECF Nos. 96-102, 124, 230-233, 285, 316.

**IT IS SO ORDERED.**

:

| Initials of Preparer | DTA |
|---|---|