Richard A. Harpootlian, *pro hac vice*
*rah@harpootlianlaw.com*
Phillip Barber, *pro hac vice*
*pdb@harpootlianlaw.com*
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

Bryan M. Sullivan, State Bar Number 209743
*bsullivan@earlysullivan.com*
Zachary C. Hansen, State Bar Number 325128
*zhansen@earlysullivan.com*
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for PLAINTIFF
ROBERT HUNTER BIDEN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ROBERT HUNTER BIDEN, an individual,

Plaintiff,

vs.

PATRICK M. BYRNE, an individual,

Defendant.

Case No. 2:23-cv-09430-SVW-PD

**PLAINTIFF ROBERT HUNTER BIDEN'S NOTICE OF MOTION AND MOTION TO DETERMINE THE INVALIDITY OF, AND TO STRIKE, THE NOTICE OF ATTORNEYS' LIEN FILED BY FORMER COUNSEL WINSTON TAYLOR LLP (ECF NO. 379); MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed concurrently with Declaration of Robert Hunter Biden; Declaration of Phillip D. Barber; and [Proposed] Order]

Judge: Hon. Stephen V. Wilson
Date: February 8, 2027
Time: 1:30 p.m.
Ctrm.: 10A

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, THEIR ATTORNEYS OF RECORD, AND TO WINSTON TAYLOR LLP, FORMERLY KNOWN AS WINSTON & STRAWN LLP:

PLEASE TAKE NOTICE that on February 8, 2027, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the First Street Courthouse, 350 West First Street, Los Angeles, California 90012, before the Honorable Stephen V. Wilson, Plaintiff Robert Hunter Biden ("Plaintiff" or "Mr. Biden") will and hereby does move the Court for an order:

1. Determining that Winston Taylor LLP, formerly known as Winston & Strawn LLP ("Former Counsel"), holds no valid or enforceable lien upon the Judgment entered in this action on July 15, 2026 (ECF No. 380), upon the costs taxed on August 26, 2026 (ECF No. 387), upon the monetary sanctions awarded to Plaintiff, or upon any other sum recovered or to be recovered by Plaintiff in this action;
2. Striking the Notice of Attorneys' Lien filed by Former Counsel on July 14, 2026 (ECF No. 379), and declaring that it is of no force or effect; and
3. Declaring that any claim of Former Counsel for attorney's fees or costs is unsecured as to the proceeds of this action, and that no person holding or disbursing such proceeds need account to Former Counsel before paying them to Plaintiff.

The motion is made on the following grounds. First, the sole source of the asserted lien, a single sentence in a December 23, 2022, engagement letter, grants the lien only "subject to applicable law," and the applicable law, rule 1.8.1 of the California Rules of Professional Conduct, was not satisfied; no lien therefore arose. Second, under *Fletcher v. Davis*, 33 Cal. 4th 61 (2004), a charging lien securing hourly fees is an interest adverse to the client that is unenforceable unless the attorney advised the client in writing to seek the advice of an independent lawyer, fully

disclosed the transaction, and obtained the client's informed written consent; Former Counsel did none of these things, and Mr. Biden has avoided the lien. Third, the engagement letter by its terms does not extend to this action, no written fee agreement covers this action, and California recognizes no attorney's lien arising by operation of law. Fourth, and in the alternative, the Notice of Attorneys' Lien identifies no amount owed and asserts a security interest for fees incurred in other matters, which is not a charging lien on this Judgment.

The motion is made under the Court's ancillary jurisdiction over matters collateral to the Judgment, *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 379–80 (1994); *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968–70 (9th Cir. 2014); *Federal Savings & Loan Insurance Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004), and the Court's inherent authority over its own docket and the enforcement of its own judgment. It is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Robert Hunter Biden and the Declaration of Phillip D. Barber filed concurrently herewith, the Notice of Attorneys' Lien and its exhibits (ECF No. 379), the Court's Order of July 10, 2026 (ECF No. 376), the Judgment (ECF No. 380), the pleadings and papers on file in this action, and such further evidence and argument as may be presented at or before the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 24, 2026. Barber Decl. ¶ 2.

# TABLE OF CONTENTS

Page

I. Introduction .......... 1
II. Statement of Facts .......... 2
  A. The Engagement Letter .......... 2
  B. Former Counsel's Representation in This Action .......... 3
  C. The Judgment and the Notice of Attorneys' Lien .......... 3
  D. The District of Columbia Action .......... 4
  E. Mr. Biden's Election .......... 5
III. The Court has jurisdiction to determine whether a lien encumbers its Judgment. .......... 5
  A. The motion falls within the Court's ancillary jurisdiction. .......... 5
  B. The California rule requiring a separate action does not bind this Court. .......... 7
  C. The pending appeal and the stay of enforcement do not divest the Court of authority. .......... 8
IV. California law governs the validity of the lien. .......... 9
V. No enforceable lien exists. .......... 9
  A. The lien was granted only "subject to applicable law," and the applicable law was not satisfied. .......... 9
  B. The lien is unenforceable under *Fletcher v. Davis* and rule 1.8.1. .......... 10
    1. A charging lien securing hourly fees is an interest adverse to the client. 10
    2. Former Counsel satisfied none of the rule's requirements. .......... 11
    3. The burden rests on Former Counsel, and the lien has been avoided. .. 14
  C. The Engagement Letter does not reach this action, and no lien arises by operation of law. .......... 15
  D. In the alternative, the Notice asserts no charging lien on this Judgment. .......... 17
VI. The Court should strike the Notice and declare the Judgment unencumbered. .......... 18
VII. Conclusion .......... 18

# TABLE OF AUTHORITIES

Page

Cases

*BGJ Assocs., LLC v. Wilson*,
113 Cal. App. 4th 1217 (2003) .......... 14

*Bourbeau v. Cognitive Code Corp.*,
693 F. App'x 499 (9th Cir. 2017) .......... 9

*Brown v. Superior Court*,
116 Cal. App. 4th 320 (2004) .......... 7

*Carroll v. Interstate Brands Corp.*,
99 Cal. App. 4th 1168 (2002) .......... 7, 9, 16

*Cetenko v. United Cal. Bank*,
30 Cal. 3d 528 (1982) .......... 16

*Curry v. Del Priore*,
941 F.2d 730 (9th Cir. 1991) .......... 6

*Doherty v. City of Alameda*,
No. 09-4961-EDL, 2011 WL 2429364 (N.D. Cal. June 13, 2011) .......... 6, 8

*Fed. Sav. & Loan Ins. Corp. v. Ferrante*,
364 F.3d 1037 (9th Cir. 2004) .......... 5, 6

*Felton v. Le Breton*,
92 Cal. 457 (1891) .......... 14

*Ferguson v. Yaspan*,
233 Cal. App. 4th 676 (2014) .......... 14

*Fletcher v. Davis*,
33 Cal. 4th 61 (2004) .......... passim

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) .......... 8

*Hawk v. State Bar*,
45 Cal. 3d 589 (1988) .......... 11, 15, 17

*Huskinson & Brown, LLP v. Wolf*,
32 Cal. 4th 453 (2004) .......... 16

*In re Modtech Holdings, Inc.*,
505 F. App'x 668 (9th Cir. 2013) .......... 13

*In re Segovia*,
387 B.R. 773 (Bankr. N.D. Cal. 2008) .......... 12, 14, 15, 18

*Inland Concrete Enters., Inc. v. Kraft*,
318 F.R.D. 383 (C.D. Cal. 2016) .......... 8

*Isrin v. Superior Court*,
63 Cal. 2d 153 (1965) .......... 10, 17

*K.C. ex rel. Erica C. v. Torlakson*,
762 F.3d 963 (9th Cir. 2014) .......... 5, 7, 8

*KBK, Inc. v. Am. Induction Techs., Inc.*,
No. LA CV12-04843 JAK (RNBx), 2013 WL 12086319 (C.D. Cal. Mar. 29, 2013) .......... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 5, 7, 8

*Leighton v. Forster*,
8 Cal. App. 5th 467 (2017) .......... 16

*Moore v. Permanente Med. Grp., Inc.*,
981 F.2d 443 (9th Cir. 1992) .......... 8

*Odish v. Cognitive Code Corp.*,
No. CV 12-9069 FMO (JCGx), 2015 WL 11347592 (C.D. Cal. May 27, 2015) .......... 9, 12, 14

*Plummer v. Day/Eisenberg, LLP*,
184 Cal. App. 4th 38 (2010) .......... 11

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) .......... 9

*Schroeder ex rel. Schroeder v. San Diego Unified Sch. Dist.*,
No. 07cv1266-IEG(RBB), 2010 WL 1948235 (S.D. Cal. May 12, 2010) .. 6, 8, 18

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,
6 Cal. 5th 59 (2018) .......... 15

*Smith v. Cimmet*,

199 Cal. App. 4th 1381 (2011) .......... 9

*Stein v. Farmers Ins. Co. of Ariz.*, 734 F. Supp. 3d 1021 (S.D. Cal. 2024) .......... 6, 8

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989) .......... 6

*Yagman v. Galipo*, No. CV 12-7908-GW(SHx), 2013 WL 4414849 (C.D. Cal. Aug. 15, 2013) 12

Statutes

Cal. Bus. & Prof. Code § 6148 .......... 16

Cal. Civ. Code § 1638 .......... 10

Cal. Civ. Code § 1654 .......... 10

Cal. Civ. Code § 2872 .......... 17

Rules

Cal. R. Prof. Conduct 1.8.1 (formerly rule 3-300) .......... passim

Cal. R. Prof. Conduct 8.5 .......... 9

Fed. R. Civ. P. 62 .......... 8

Other Authorities

Restatement (Third) of the Law Governing Lawyers § 43 (2000) .......... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Four days after the Court granted Plaintiff's motion for default judgment, and the day before the Judgment was entered, Plaintiff's former lawyers filed a notice on the docket claiming a lien on everything Plaintiff has recovered or may recover in this action. ECF No. 379. The notice directs every party, every lawyer, and every "third-party holding or disbursing funds" to withhold payment to Plaintiff until Former Counsel is satisfied. *Id.* ¶¶ 13–14. It does not say what Former Counsel claims to be owed. It does not say that any of the fees it claims were incurred in this case. And the only document it offers as the source of the lien is an engagement letter that, on its face, covers other matters entirely and states that litigation "would have to" be the subject of "a new engagement letter." *Id.* at 13.

The purported lien fails under California law for multiple reasons. The engagement letter grants a lien only "subject to applicable law." The applicable law is rule 1.8.1 of the California Rules of Professional Conduct, which, as construed in *Fletcher v. Davis*, 33 Cal. 4th 61 (2004), governs a charging lien securing hourly fees and requires, among other things, that the client be "advised in writing to seek the advice of an independent lawyer of the client's choice." The engagement letter contains no such advisement, no disclosure that the lien is an interest adverse to the client, and no separate consent to it. The lien is therefore unenforceable, and Mr. Biden has elected to avoid it. Independently, the engagement letter does not reach this litigation at all, and California does not recognize a charging lien that arises by operation of law from the mere fact of representation. What remains is an unsecured claim for fees that Former Counsel is already litigating in the Superior Court of the District of Columbia, where it belongs.

Plaintiff asks the Court to determine, under its ancillary jurisdiction over matters collateral to its Judgment, that no lien encumbers the Judgment in this case, to strike the Notice of Attorneys' Lien from the docket, and to declare that Former

Counsel's claim, whatever its ultimate merit, is unsecured as to the proceeds of this action. Plaintiff does not ask the Court to decide what, if anything, he owes Former Counsel. That question is pending elsewhere, and nothing in this motion touches it.

## II. STATEMENT OF FACTS

### A. The Engagement Letter

On December 23, 2022, Abbe David Lowell of Winston & Strawn LLP sent Mr. Biden an engagement letter by e-mail (the "Engagement Letter"). ECF No. 379 at 13–17; Biden Decl. ¶ 3. Mr. Biden, then a resident of Los Angeles, California, initialed the acceptance block on its final page. Biden Decl. ¶¶ 3–4. The Engagement Letter is the only written fee agreement between Mr. Biden and Former Counsel. *Id.* ¶ 13.

Paragraph 1 of the Engagement Letter, captioned "Nature of Engagement," defines the scope of the representation as advising Mr. Biden "with respect to any congressional oversight and investigation events in which you are involved," helping to "coordinate the work of other attorneys, advisors, related parties on pending issues and communications strategy," and assisting "in the investigation by the U.S. Department of Justice and U.S. Attorney for the District of Delaware" (together, the "Assignment Matters"). ECF No. 379 at 13. It continues: "We have agreed that our present engagement is limited to performance of services related to these matters. Should the Assignment Matters proceed to any litigation, we would have to do a new engagement letter." *Id.*

Paragraph 2, captioned "Fees," provides for hourly billing. Mr. Lowell's rate was $1,510 per hour; the letter recites ranges of hourly rates for partners, of counsel, associates, and paralegals. *Id.* at 13–14. No part of the fee was contingent on any result. Biden Decl. ¶ 5.

The lien appears once, in the third paragraph under the caption "Billing Arrangements," after two paragraphs concerning monthly statements and a late charge of one percent per month:

> Further, subject to applicable law, you are granting us a lien on all retainers, escrow accounts, trust accounts, real and personal property, documents, intangible property, insurance proceeds, claims and causes of action and on all proceeds of any recovery obtained by you (by settlement, arbitration, court judgment or otherwise) in this matter or any other matter to secure the attorney's fees and costs for which you have, or will be, invoiced by us, relating to our representation of you in this matter or any other matter.

ECF No. 379 at 14. The sentence has no caption of its own. It is not set apart, initialed, or separately signed. Nothing in the Engagement Letter explains that the lien is an interest adverse to Mr. Biden, describes the firm's role in acquiring it, or advises Mr. Biden that he may seek the advice of an independent lawyer about it. Biden Decl. ¶¶ 6–7, 12. The Engagement Letter refers to independent representation once, in paragraph 5, which concerns whether Mr. Biden should consent to a third party paying his fees; that paragraph does not mention the lien. ECF No. 379 at 15; Biden Decl. ¶ 8. The Engagement Letter contains no choice-of-law provision.

**B. <u>Former Counsel's Representation in This Action</u>**

Former Counsel filed the Complaint in this action on November 8, 2023, and appeared as counsel of record for Plaintiff until March 12, 2025. ECF Nos. 1, 204; ECF No. 379 ¶ 1; Biden Decl. ¶ 2. Early Sullivan Wright Gizer & McRae LLP has represented Plaintiff since the Complaint was filed, and Richard A. Harpootlian, P.A. appeared for Plaintiff in March 2025, when Former Counsel's lawyers withdrew. ECF Nos. 1, 197, 201, 204, 215. Former Counsel never presented Mr. Biden with a new engagement letter for this action, and Mr. Biden never signed one. Biden Decl. ¶ 13. Apart from the Engagement Letter, Former Counsel never gave Mr. Biden any writing concerning a lien, never advised him in writing or orally that he could consult an independent lawyer about a lien, and never asked him to sign or initial anything concerning a lien. *Id.* ¶¶ 9–12. Mr. Biden was not represented by any other lawyer in connection with the Engagement Letter. *Id.* ¶ 11.

**C. <u>The Judgment and the Notice of Attorneys' Lien</u>**

On July 10, 2026, the Court granted Plaintiff's motion for default judgment,

awarded nominal damages of $1.00 and punitive damages of $1,700,000.00, granted Plaintiff's motion to enforce the Court's prior sanctions order, and denied Defendant's motion to set aside the default. ECF No. 376. Judgment was entered on July 15, 2026. ECF No. 380. Costs of $36,816.63 were taxed on August 26, 2026. ECF No. 387. Defendant has appealed, and enforcement of the Judgment is stayed on his supersedeas bond. ECF Nos. 382, 384.

On July 14, 2026, the day before Judgment was entered, Former Counsel filed the Notice of Attorneys' Lien (the "Notice"). ECF No. 379. The Notice asserts a lien on "any and all proceeds, judgments, settlements, awards, sanctions payments, or other recovery obtained by or on behalf of Plaintiff in this action," including the Judgment, the sanctions award, and post-judgment interest, "until Former Counsel's fee claim is satisfied in full." *Id.* ¶¶ 10–11. It asserts the lien on two grounds: the sentence from the Engagement Letter quoted above, and a "traditional attorneys' charging lien" said to arise because Former Counsel "appeared as counsel of record in this action." *Id.* ¶¶ 4–5, 12. The Notice "demands that no disbursement, payment, transfer, or distribution of any proceeds" be made to Plaintiff "without first accounting for and satisfying Former Counsel's charging lien," and "direct[s]" all parties, their counsel, and "any third-party holding or disbursing funds" to withhold from Plaintiff "an amount sufficient to satisfy Former Counsel's claim." *Id.* ¶¶ 13–14.

The Notice does not state the amount of Former Counsel's claim. It says only that Plaintiff owes fees and costs "substantially in excess of the amounts set forth in Paragraphs 8-10," which are the amounts of the Judgment and the sanctions award. *Id.* ¶ 6. It does not allege that any unpaid fee was incurred in this action.

**D. <u>The District of Columbia Action</u>**

On June 20, 2025, Winston & Strawn LLP sued Mr. Biden for unpaid fees in the Superior Court of the District of Columbia, *Winston & Strawn LLP v. Robert Hunter Biden*, No. 2025-CAB-003962, now captioned *Winston Taylor LLP v. Robert Hunter Biden* (the "D.C. Action"). ECF No. 379 ¶ 7 & Ex. A. The D.C. complaint,

which Former Counsel attached to the Notice, describes the engagement as "several complex matters, including a criminal trial in the United States District Court for the District of Delaware," and describes the services rendered as representation "in various investigations" and "in a lengthy public trial in the United States District Court for the District of Delaware," with "related post-trial services." ECF No. 379 at 7, 9 (Compl. ¶¶ 2, 16). It does not mention this action. It pleads the amount owed only as "substantially in excess of $50,000." *Id.* at 7, 9 (Compl. ¶¶ 4, 20). It characterizes the Engagement Letter as having "granted W&S a lien on virtually all of his assets as a further security interest for the payment of the legal fees and costs." *Id.* at 9 (Compl. ¶ 14). And its prayer asks the D.C. court to award "[a] lien on all Mr. Biden's assets." *Id.* at 10 (Compl. ¶ 27(d)). Mr. Biden has answered in the D.C. Action, which remains pending and is not the subject of this motion.

**E. <u>Mr. Biden's Election</u>**

Mr. Biden has never signed any document confirming or reaffirming the lien. Biden Decl. ¶ 14. He does not consent to it, and to the extent the lien provision of the Engagement Letter is voidable at his election, he has elected to avoid it. *Id.*

## III. <u>The Court has jurisdiction to determine whether a lien encumbers its Judgment.</u>

### A. <u>The motion falls within the Court's ancillary jurisdiction.</u>

Ancillary jurisdiction exists, among other reasons, "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994). The Ninth Circuit has held that "[t]here is no debate that a federal court properly may exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation.'" *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (quoting *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)). That authority is "broad" and "inherent," extends beyond the disposition of the underlying suit, and "need not have been explicitly 'retained.'" *Id.*

at 968–70. Fee disputes "arising from litigation pending before a district court fall within that court's ancillary jurisdiction," which is reinforced by "[t]he district court's inherent authority to regulate members of its own bar." *Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991).

*Ferrante* addressed attorney liens specifically. The court there declined ancillary jurisdiction over a law firm's suit on a promissory note "wholly unrelated to the underlying actions," but explained that "[h]ad [the firm] attempted to assert its attorney liens for services performed in connection with a particular action, it might have successfully invoked ancillary jurisdiction." 364 F.3d at 1041. District courts in this Circuit accordingly resolve the validity of a former attorney's lien on the recovery by motion in the underlying case. *See Stein v. Farmers Ins. Co. of Ariz.*, 734 F. Supp. 3d 1021, 1026–27 (S.D. Cal. 2024) (exercising ancillary jurisdiction, after appeal, over client's motion to determine fees owed to former counsel); *Doherty v. City of Alameda*, No. 09-4961-EDL, 2011 WL 2429364, at *2–3 (N.D. Cal. June 13, 2011) ("Attorney's liens may be enforced in federal actions," but "the validity of specific liens are analyzed under state law"; adjudicating former counsel's lien under rule 3-300); *Schroeder ex rel. Schroeder v. San Diego Unified Sch. Dist.*, No. 07cv1266-IEG(RBB), 2010 WL 1948235, at *4–6 (S.D. Cal. May 12, 2010) (on client's motion to strike former counsel's lien, deciding the rule 3-300 question on the merits and striking the lien for fees on other grounds); *see also Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989) (remanding for the district court to decide, under California law, former counsel's motion to confirm a lien on the judgment), *aff'd on other grounds sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990).

This motion sits within that jurisdiction. It concerns a lien asserted on this Court's docket, against this Court's Judgment, by lawyers who appeared before this Court as counsel of record, and it asks only whether that Judgment is encumbered. Determining whether a security interest attaches to the Court's own decree is a matter of managing the Court's proceedings and effectuating its decree in the most direct

sense. *Kokkonen*, 511 U.S. at 380. And the question is narrow. Plaintiff does not ask the Court to fix the amount of any fee, to construe the Engagement Letter's billing terms, or to decide the contract claim pending in the D.C. Action. *Cf. K.C.*, 762 F.3d at 970. He asks whether a lien exists. That is a question of California lien law and California's rules of professional conduct, applied to a Judgment of this Court, and it is one that no other court can answer with the same authority. A judgment in the D.C. Action, whatever its outcome, would establish a debt; it would not establish an encumbrance on a judgment of the U.S. District Court for the Central District of California.

Former Counsel, moreover, chose this forum. It filed the Notice here, invoked the Court's docket to give the lien effect against the parties and third parties, and "reserve[d] all rights to seek judicial determination of the amount owed, to intervene in any proceedings affecting the distribution of proceeds, and to pursue any other remedies." ECF No. 379 ¶ 15.

**B. <u>The California rule requiring a separate action does not bind this Court.</u>**

California's Courts of Appeal hold that a California trial court "has no jurisdiction to determine the existence or validity of an attorney's lien on the judgment" in the underlying action, because the attorney "is not a party to the underlying action and has no right to intervene," and that the lien must instead be litigated in a separate action. *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1173, 1176–77 (2002); *Brown v. Superior Court*, 116 Cal. App. 4th 320, 328–29, 333–34 (2004) (declaratory relief action under Code of Civil Procedure section 1060 is the vehicle). Plaintiff anticipates that Former Counsel may invoke that rule.

It does not apply here. *Carroll* is a rule about the jurisdiction of California trial courts and the standing of non-parties to intervene in California actions; it rests on the absence of a California statutory procedure, which the *Carroll* court declined to create "by judicial fiat." 99 Cal. App. 4th at 1177. The jurisdiction of a federal court is a matter of federal law. Whether this Court may determine a matter collateral to its

own judgment is governed by *Kokkonen* and *Torlakson*, not by *Carroll*, and "California rules of court apply only in state court, not federal court." *Stein*, 734 F. Supp. 3d at 1030 n.3 (quoting *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 405 (C.D. Cal. 2016)). A federal court exercising ancillary jurisdiction applies California substantive law to the validity of the lien, *Doherty*, 2011 WL 2429364, at *2, and California substantive law is what Plaintiff invokes. Federal courts in this Circuit have decided precisely this question by motion in the underlying action, without any suggestion that *Carroll* stood in the way. *Schroeder*, 2010 WL 1948235, at *4–6; *Doherty*, 2011 WL 2429364, at *2–3.

**C. <u>The pending appeal and the stay of enforcement do not divest the Court of authority.</u>**

A notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). The validity of a lien on the Judgment is not an aspect of the case involved in the appeal; it is a collateral matter, and attorney's fees are "a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits." *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992); *see K.C.*, 762 F.3d at 969 (ancillary jurisdiction over fee matters "extends beyond dismissal of the underlying lawsuit"). The stay of enforcement under Rule 62 stays "execution on a judgment and proceedings to enforce it," Fed. R. Civ. P. 62(a), (b); it does not suspend the Court's authority to determine who holds an interest in the Judgment. Indeed, the appeal is a reason to decide the question now. If the Judgment is affirmed and the bond is called upon, a surety or judgment debtor confronted with the Notice's demand that it withhold payment may refuse to pay or may interplead, and the recovery will be "tied up" exactly as *Fletcher* warned. 33 Cal. 4th at 69. Resolving the lien before the funds move avoids that result.

## IV. California law governs the validity of the lien.

The Engagement Letter contains no choice-of-law clause. ECF No. 379 at 13–17. The lien is asserted in a matter pending before a tribunal sitting in California, against a judgment of that tribunal, by lawyers who appeared before it, on behalf of a client who resided in California when he signed the Engagement Letter and who resides in California today. Biden Decl. ¶ 4; ECF No. 379 at 8 (Compl. ¶ 8) (alleging that Mr. Biden "is, on information and belief, a California resident"). California's rules provide that "for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits" apply. Cal. R. Prof. Conduct 8.5(b)(1). Under California's governmental interest analysis, the party urging foreign law bears the burden of showing a material difference and a true conflict, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994–95 (9th Cir. 2010), and California "does have an interest in regulating attorneys practicing here, even those attorneys retained by" clients from other jurisdictions. *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1400 (2011). Courts in this District have applied California's rule to an out-of-state lawyer's agreements with clients on that basis. *Odish v. Cognitive Code Corp.*, No. CV 12-9069 FMO (JCGx), 2015 WL 11347592, at *4–6 (C.D. Cal. May 27, 2015), *aff'd in part, rev'd in part on other grounds sub nom. Bourbeau v. Cognitive Code Corp.*, 693 F. App'x 499 (9th Cir. 2017).

## V. No enforceable lien exists.

### A. The lien was granted only "subject to applicable law," and the applicable law was not satisfied.

In California, "an attorney's lien is created only by contract," and "is not created by the mere fact that an attorney has performed services in a case." *Fletcher*, 33 Cal. 4th at 66 (quoting *Carroll*, 99 Cal. App. 4th at 1172). The contract here is the one sentence of the Engagement Letter quoted above, and that sentence grants the lien on an express condition: "subject to applicable law, you are granting us a lien . . . ." ECF No. 379 at 14. The words are Former Counsel's. They must be given effect

according to their plain meaning, Cal. Civ. Code § 1638, and any uncertainty in them is construed against the party that drafted them, *id.* § 1654.

The applicable law governing an attorney's acquisition of a lien on a client's recovery to secure hourly fees is rule 1.8.1 of the California Rules of Professional Conduct, formerly rule 3-300, as construed in *Fletcher*. As shown in Part V.B below, the requirements of that rule were not met. The consequence follows from the contract itself, without resort to any question of professional discipline or of whether the rule supplies a private remedy: the parties agreed that the lien would arise only in conformity with applicable law, the applicable law was not followed, and no lien arose. Former Counsel cannot claim a lien that its own instrument conditioned on compliance it never gave.

**B. The lien is unenforceable under *Fletcher v. Davis* and rule 1.8.1.**

***1. A charging lien securing hourly fees is an interest adverse to the client.***

In *Fletcher*, the California Supreme Court held that "an attorney who secures payment of hourly fees by acquiring a charging lien against a client's future judgment or recovery has acquired an interest that is adverse to the client, and so must comply with the requirements of rule 3-300." 33 Cal. 4th at 71. A charging lien is a "security interest" in the proceeds of the litigation, *id.* at 67 (citing *Isrin v. Superior Court*, 63 Cal. 2d 153, 158 (1965)), and it is adverse because it "grants the attorney considerable authority to detain all or part of the client's recovery whenever a dispute arises over the lien's existence or its scope," which "would unquestionably be detrimental to the client." *Id.* at 69. The Notice illustrates the point: it directs everyone holding funds for Plaintiff to withhold them. ECF No. 379 ¶¶ 13–14.

Rule 1.8.1 carries forward former rule 3-300 without material change. It provides that a lawyer "shall not . . . knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: (a) the transaction or acquisition and its terms are fair and reasonable to the client and the terms and the lawyer's role in the transaction

or acquisition are fully disclosed and transmitted in writing to the client in a manner that should reasonably have been understood by the client; (b) the client either is represented in the transaction or acquisition by an independent lawyer of the client's choice or the client is advised in writing to seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and (c) the client thereafter provides informed written consent to the terms of the transaction or acquisition, and to the lawyer's role in it." Cal. R. Prof. Conduct 1.8.1. The official comment confirms that the rule reaches charging liens, citing *Fletcher*, and that the only lien it does not reach is "a charging lien given to secure payment of a contingency fee." *Id.* cmt. [1] (citing *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38 (2010)); *see Plummer*, 184 Cal. App. 4th at 48–50. Former Counsel billed by the hour. ECF No. 379 ¶ 3; Biden Decl. ¶ 5. The contingency exception has no application.

The lien here is, if anything, more adverse than the one in *Fletcher*. It is not confined to the recovery in the matter for which the firm was engaged. It reaches "all retainers, escrow accounts, trust accounts, real and personal property, documents, intangible property, insurance proceeds, claims and causes of action," and the proceeds of any recovery "in this matter or any other matter," to secure fees "relating to our representation of you in this matter or any other matter." ECF No. 379 at 14. Former Counsel itself describes it as "a lien on virtually all of his assets as a further security interest." *Id.* at 9 (Compl. ¶ 14). A blanket security interest in the client's property, taken to secure fees, is the paradigm of an adverse interest. *See Fletcher*, 33 Cal. 4th at 67–68 (collecting cases); *Hawk v. State Bar*, 45 Cal. 3d 589, 593–94, 599–601 (1988) (note secured by deed of trust on client's property to secure fees).

**2. *Former Counsel satisfied none of the rule's requirements.***

*Fletcher* summarized what the rule demands: the attorney must "explain the transaction fully, . . . offer fair and reasonable terms, . . . provide a copy of the agreement, . . . give the client an opportunity to seek independent legal advice, and .

. . secure the client's written consent." 33 Cal. 4th at 71. The Engagement Letter fails each requirement that matters.

*No written advisement to seek independent counsel.* Rule 1.8.1(b) requires that the client either be represented by an independent lawyer in the transaction or be "advised in writing to seek the advice of an independent lawyer of the client's choice" and given a reasonable opportunity to do so. The Engagement Letter contains no such advisement with respect to the lien. Biden Decl. ¶¶ 7, 9. Former Counsel never gave Mr. Biden any other writing concerning the lien, never told him orally that he could consult an independent lawyer about it, and never discussed the lien provision with him at all. *Id.* ¶¶ 9–10. He was not represented by any other lawyer in connection with the Engagement Letter. *Id.* ¶ 11. Courts in this District treat that omission as dispositive. In *Odish*, the court held that because it was "undisputed that Odish violated Rule 3-300 by failing to advise defendants 'in writing that [they] may seek the advice of an independent lawyer of the client's choice[,]'" his "failure to comply with Rule 3-300 is sufficient to void the agreements." 2015 WL 11347592, at *7 (citing *Fletcher*, 33 Cal. 4th at 71–72), *aff'd in relevant part*, 693 F. App'x at 501. In *Yagman v. Galipo*, the court described *Fletcher* as holding that an attorney's lien "is enforceable against a client only if the client is informed of his or her right to seek independent legal advice about granting the lien," and held a lien securing hourly fees unenforceable where the advisement was not given before the client signed. No. CV 12-7908-GW(SHx), 2013 WL 4414849, at *2, *4–6 (C.D. Cal. Aug. 15, 2013). And in *In re Segovia*, the court held an hourly-fee attorney's lien unenforceable because the lien instrument "does not inform the clients that they may consult with an independent attorney" regarding the lien, refused to cure the defect by reading the lien instrument together with a separate fee agreement, and allowed the attorney's claim "only as a general unsecured claim." 387 B.R. 773, 784 (Bankr. N.D. Cal. 2008), *aff'd*, 2008 WL 8462967 (B.A.P. 9th Cir. Oct. 22, 2008), *aff'd*, 346 F. App'x 156 (9th Cir. 2009).

The single reference to independent representation in the Engagement Letter does not help Former Counsel. It appears in paragraph 5, which concerns the risk that a third party paying Mr. Biden's fees might influence the representation, and it advises Mr. Biden to consider "whether, instead, you wish to seek independent representation at your own expense" on that question. ECF No. 379 at 15; Biden Decl. ¶ 8. It says nothing about the lien. Its presence shows that Former Counsel knew how to write an independent-counsel advisement when it chose to, and chose not to write one for the lien. *Compare In re Modtech Holdings, Inc.*, 505 F. App'x 668, 669–70 (9th Cir. 2013) (lien enforceable where the firm "advised [the client] in writing that it could seek the advice of independent counsel regarding the terms of the lien," offered time to do so, and obtained the client's written consent to the lien), *and KBK, Inc. v. Am. Induction Techs., Inc.*, No. LA CV12-04843 JAK (RNBx), 2013 WL 12086319, at *11 (C.D. Cal. Mar. 29, 2013) (lien provision in engagement letter "subject to Rule 3-300"; requirement met where the letter told the client it was "entitled to consult other attorneys for advice prior to entering into this fee agreement"), *with* ECF No. 379 at 13–17 (no advisement).

*No disclosure of the transaction or of the firm's role.* Rule 1.8.1(a) requires that the terms of the acquisition "and the lawyer's role in the transaction or acquisition" be "fully disclosed and transmitted in writing to the client in a manner that should reasonably have been understood by the client." The lien sentence sits unmarked in a paragraph about monthly statements and late charges. It does not say that the firm is acquiring a security interest adverse to its client, that the lien could be used to detain the client's recovery in a dispute, or that the client might decline it. ECF No. 379 at 14; Biden Decl. ¶¶ 6, 12. *Fletcher* explained that the purpose of informed written consent is to ensure "that the client truly agrees to the creation of the lien and its scope" and to impress "upon the client the importance of his or her consent and of the right to withhold it." 33 Cal. 4th at 69. Nothing in the Engagement Letter serves that purpose.

*No informed written consent to the lien.* Rule 1.8.1(c) requires that the client "thereafter" provide "informed written consent to the terms of the transaction or acquisition, and to the lawyer's role in it." Mr. Biden's initials appear once, in a general acceptance block at the end of a six-page letter. ECF No. 379 at 17; Biden Decl. ¶ 12. He was not asked to initial, acknowledge, or separately consent to the lien, and he did not. Biden Decl. ¶ 12. A general acceptance of "the terms of this letter," given without any explanation of the lien and without the advisement the rule requires, is not informed consent to the lien. *See Segovia*, 387 B.R. at 784.

**3. *The burden rests on Former Counsel, and the lien has been avoided.***

Because the lien is a transaction by which an attorney obtained an advantage from a client during the representation, it is presumed to be the product of undue influence and a breach of fiduciary duty, and "the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised." *BGJ Assocs., LLC v. Wilson*, 113 Cal. App. 4th 1217, 1227–28 (2003) (quoting *Felton v. Le Breton*, 92 Cal. 457, 469 (1891)); *see Ferguson v. Yaspan*, 233 Cal. App. 4th 676, 684–85, 688 (2014) (noncompliance with rule 3-300 triggers the presumption); *Odish*, 2015 WL 11347592, at *7. Former Counsel cannot carry that burden on this record. The Engagement Letter is what it is, and Mr. Biden has testified without contradiction that nothing else was ever said or written. Biden Decl. ¶¶ 9–12.

A transaction that fails the rule is "voidable, not void," at the election of the client. *BGJ Assocs.*, 113 Cal. App. 4th at 1229; *Ferguson*, 233 Cal. App. 4th at 684–85. Mr. Biden has made that election. He has never ratified the lien, does not consent to it, and has avoided it. Biden Decl. ¶ 14. The result is the one *Fletcher* reached: the lien "may not be enforced in this proceeding," because to enforce it would be to "countenanc[e] and contribut[e] to a violation of a rule" adopted "to protect the public and to promote respect and confidence in the legal profession." 33 Cal. 4th at 71–72 (quotation omitted). What remains to Former Counsel is a claim for its fees, which it

is free to pursue, unsecured, in the forum it chose. *See Segovia*, 387 B.R. at 784; *cf. Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 73–74, 87–96 (2018) (agreement that violates the Rules of Professional Conduct is unenforceable; attorney may seek the reasonable value of services in quantum meruit).

The rule imposes no hardship on lawyers who follow it. Rule 1.8.1 "does not bar attorneys from obtaining liens on future recoveries"; it "merely requires the attorney who wishes to obtain such a lien to explain the transaction fully, to offer fair and reasonable terms, to provide a copy of the agreement, to give the client an opportunity to seek independent legal advice, and to secure the client's written consent," which "is not a great deal more than is now required for most fee agreements." *Fletcher*, 33 Cal. 4th at 71; *see Hawk*, 45 Cal. 3d at 601 ("We do not think that this interpretation of the rule is unduly onerous.").

**C. <u>The Engagement Letter does not reach this action, and no lien arises by operation of law.</u>**

The lien fails for a further reason that is independent of rule 1.8.1. The Engagement Letter is, by its own terms, limited to the Assignment Matters: congressional oversight and investigation events, coordination of other advisors, and the investigation by the Department of Justice and the United States Attorney for the District of Delaware. ECF No. 379 at 13. It states that the "present engagement is limited to performance of services related to these matters" and that "[s]hould the Assignment Matters proceed to any litigation, we would have to do a new engagement letter." *Id.* This action, a defamation suit brought by Mr. Biden as plaintiff against Mr. Byrne, is not an Assignment Matter, and it is not even the litigation the letter contemplated. No new engagement letter was ever prepared or signed. Biden Decl. ¶ 13.

Two consequences follow. First, there is no written contract creating a lien for services in this action. The lien sentence speaks of a recovery "in this matter or any

other matter," but "this matter" is defined by paragraph 1, and the Engagement Letter itself declares that litigation would require a new agreement. Whatever the sentence's reach as to the Assignment Matters, it cannot be read to create a lien on the proceeds of a lawsuit that the letter expressly excludes from the engagement. And an attorney's lien in California "is created only by contract." *Fletcher*, 33 Cal. 4th at 66. Second, the absence of any written fee agreement for this action means that whatever fees Former Counsel might claim for its work here are governed by Business and Professions Code section 6148, which requires a written contract, signed by both attorney and client, in any non-contingency matter in which the expense to the client is reasonably expected to exceed $1,000, and provides that noncompliance "renders the agreement voidable at the option of the client," leaving the attorney "entitled to collect a reasonable fee." Cal. Bus. & Prof. Code § 6148(a), (c); *see Leighton v. Forster*, 8 Cal. App. 5th 467, 483–85 (2017) (absence of the required writing is "a material failure to comply with a crucial statutory requirement," not a technicality; attorney limited to the reasonable value of services); *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458, 460–62 (2004). Mr. Biden is an individual, and none of section 6148's exceptions applies. A reasonable fee recoverable in quantum meruit is an unsecured claim; it carries no lien.

Former Counsel's alternative theory, that it holds a "traditional attorneys' charging lien" simply because it "appeared as counsel of record in this action," ECF No. 379 ¶¶ 5, 12, is foreclosed by California law. "In most jurisdictions, a charging lien is established by operation of law," but "in California . . . 'an attorney's lien is created only by contract. . . . [A]n attorney's lien is not created by the mere fact that an attorney has performed services in a case.'" *Fletcher*, 33 Cal. 4th at 66 (quoting *Carroll*, 99 Cal. App. 4th at 1172); *see Cetenko v. United Cal. Bank*, 30 Cal. 3d 528, 531–32 (1982). There is no "traditional" charging lien in California apart from the contract, and the contract here creates none.

**D. <u>In the alternative, the Notice asserts no charging lien on this Judgment.</u>**

Even if the lien sentence were enforceable, what the Notice asserts is not a charging lien on this Judgment. A charging lien is a lien "upon the fund or judgment which [the attorney] has recovered for his compensation as attorney in recovering the fund or judgment." *Fletcher*, 33 Cal. 4th at 66 (quotation omitted); *see Isrin*, 63 Cal. 2d at 158 (lien is a security interest "in the proceeds of the litigation"); Restatement (Third) of the Law Governing Lawyers § 43(2)(a) (2000) (lawyer may contract "for a lien on the proceeds of the representation to secure payment for the lawyer's services and disbursements in that matter"), *quoted in Fletcher*, 33 Cal. 4th at 70. The D.C. complaint describes the fees Former Counsel seeks as fees for investigations and for the criminal trial in Delaware; it does not mention this action. ECF No. 379 at 7, 9 (Compl. ¶¶ 2, 16). The Notice does not claim otherwise. What Former Counsel asserts against this Judgment is a security interest for fees incurred elsewhere, which is a general lien on the client's property of exactly the kind *Fletcher* and *Hawk* condemn absent strict compliance with the rule, not a charging lien for services in recovering the fund. *See Fletcher*, 33 Cal. 4th at 70 n.3 (noting that a Los Angeles County Bar opinion exempting contingency-fee liens "did require a written agreement if the attorney's lien secured hourly fees 'incurred in an unrelated case'").

The Notice also states no amount. It says only that the debt is "substantially in excess of" the Judgment, ECF No. 379 ¶ 6, and the D.C. complaint says only "substantially in excess of $50,000," *id.* at 7, 9 (Compl. ¶¶ 4, 20). A lien is "a charge . . . upon specific property by which it is made security for the performance of an act," Cal. Civ. Code § 2872; *Fletcher*, 33 Cal. 4th at 66, and a notice that identifies neither the obligation secured nor its amount, while directing third parties to withhold "an amount sufficient to satisfy Former Counsel's claim," ECF No. 379 ¶ 14, gives the Judgment debtor, the surety, and the Court nothing to act upon. It functions as a cloud on the Judgment rather than as security for any identified obligation, and it should not be permitted to remain on the docket in that form.

## VI. The Court should strike the Notice and declare the Judgment unencumbered.

The relief Plaintiff seeks is narrow. Plaintiff asks the Court to determine that Former Counsel holds no valid or enforceable lien on the Judgment, the taxed costs, the sanctions award, or any other sum recovered in this action; strike the Notice from the docket and declare it of no force or effect; and declare that Former Counsel's claim for fees, if any, is unsecured as to the proceeds of this action, so that the judgment debtor, his surety, and any other person holding funds for Plaintiff may pay them to Plaintiff without accounting to Former Counsel. *See Segovia*, 387 B.R. at 784 (ordering that recorded lien "shall have no force or effect" and allowing the claim only as unsecured); *Schroeder*, 2010 WL 1948235, at *6 (striking lien for fees). That relief leaves the D.C. Action exactly where it is. Former Counsel may prove whatever it can prove there; it simply may not encumber this Court's Judgment while it does so.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion, determine that Winston Taylor LLP holds no valid or enforceable lien upon the Judgment or any other recovery in this action, strike the Notice of Attorneys' Lien (ECF No. 379), and declare that any claim of Winston Taylor LLP for fees or costs is unsecured as to the proceeds of this action.

Dated: October 1, 2026

RICHARD A. HARPOOTLIAN, PA

By: */s/ Phillip D. Barber*

Richard A. Harpootlian, *pro hac vice*
*rah@harpootlianlaw.com*
Phillip Barber, *pro hac vice*
*pdb@harpootlianlaw.com*
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

BRYAN M. SULLIVAN (State Bar No. 209743)

bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

*Attorneys for Plaintiff Robert Hunter Biden*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Robert Hunter Biden, certifies that the memorandum of points and authorities contains 6,484 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 1, 2026

RICHARD A. HARPOOTLIAN, PA

By: */s/ Phillip D. Barber*

Richard A. Harpootlian, *pro hac vice*
*rah@harpootlianlaw.com*
Phillip Barber, *pro hac vice*
*pdb@harpootlianlaw.com*
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, South Carolina 29201
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

BRYAN M. SULLIVAN (State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN (State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

*Attorneys for Plaintiff*
*Robert Hunter Biden*